IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| PAYSON PETROLEUM 3 WELL L.P., | § § § § | CASE NO. 17-40179 |
| | § | Chapter 7 |
| Debtor. | § § | |
| | § § | |
| JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., | § § § § § | |
| Plaintiff, | § § | |
| v. | § § § | Adversary Proceeding No. 18-04074 |
| ACME ENERGY COMPANY, LLC, *ET. AL.*, | § § § | |
| Defendants. | § | |

**MOTION OF VARIOUS DEFENDANTS TO WITHDRAW THE REFERENCE**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE SHOWN IN THE CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING WITH APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.   SUMMARY .........................................................................................................................1

II.  BACKGROUND .................................................................................................................1

III. ARGUMENT AND AUTHORITIES ...................................................................................3

    A.  Claims are Non-Core ..................................................................................................3
    B.  Jury Rights ..................................................................................................................6
    C.  Withdrawal of the Reference ......................................................................................8

IV. PRAYER ............................................................................................................................10

## **TABLE OF AUTHORITIES**

### **STATUTES AND RULES**

11 U.S.C. § 541(A)(3) ........................................................................................................3

11 U.S.C. § 723(A) ............................................................................................................5

28 U.S.C. § 157(B)(2) ........................................................................................................3

28 U.S.C. § 157(D) ............................................................................................................8

28 U.S.C. § 1334 ................................................................................................................3

### **CASES**

*Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476-78 (1962) ................................................7

*Ehrenberg v. WSCR, Inc. (In re Hoover WSCR Assocs., Ltd.)*, 268 B.R. 227, 234
(Bankr. C.D. Cal. 2001) .....................................................................................................5

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) ....................................................6

*Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985) ........3

*In re Owensboro Distilling Co.*, 108 B.R. 572, 574 (Bankr. W.D. Ky. 1989) ..................7

*In re United Sec. & Comms. Inc.*, 93 B.R. 945, 957 (Bankr. S.D. Ohio 1988) ................3

*Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990) .............................................................6

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) ....3

*Stern v. Marshall*, 564 U.S. 462 (2011) ...................................................................3, 4, 5

*Tatge v. Chandler (In re Judiciary Tower Assocs.)*, 170 B.R. 8 (Bankr. D.C. 1994) .......7

*Texas Capital Bank, N.A. v. Dallas Roadster, Ltd. (In re Dallas Roadster, Ltd.)*, Adv. No. 13-
4033, 2013 WL 5758632 (Bankr. E.D. Tex. Sept. 27, 2013) ............................................8

*Whitehead v. Shattuck*, 138 U.S. 146, 151 (1891) ............................................................7

## MOTION OF VARIOUS DEFENDANTS TO WITHDRAW THE REFERENCE

COME NOW the defendants listed on Exhibit "A" hereto (the "Movants"),[1] all defendants in the above styled and numbered adversary proceeding (the "Adversary Proceeding") filed by Jason R. Searcy, Chapter 11 Trustee (the "Plaintiff"), and file this their *Motion of Various Defendants to Withdraw the Reference* (the "Motion"), respectfully stating as follows:

### I. SUMMARY

1. This is an action to collect alleged debts of millions of dollars against persons who have not filed proofs of claim in the underlying bankruptcy case and persons who have jury rights regarding the same. The Court should therefore withdraw the reference of this Adversary Proceeding because, *inter alia*, the Bankruptcy Court does not have Constitutional or statutory authority to adjudicate the non-core claims asserted herein, the Bankruptcy Court does not have authority to conduct a jury trial, and because there is nothing about this Adversary Proceeding that suggests any particularized need for the Bankruptcy Court's expertise or for it to manage and administer an estate within its jurisdiction. Accordingly, the Bankruptcy Court should recommend, and the District Court should order, that the reference of this Adversary Proceeding be immediately withdrawn for all purposes and that this Adversary Proceeding should be placed on a jury trial setting.

### II. BACKGROUND

2. Payson Petroleum 3 Well, L.P. (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 31, 2017 (the "Petition Date"), thereby

---

[1] For ease, Exhibit "A" matches the defendant names as listed by the Plaintiff in his complaint. The Movants do not, by so listing themselves, represent that the Plaintiff has correctly spelled their names or that any of the artificial entities listed on Exhibit "A" exist or are in good standing.

MOTION OF VARIOUS DEFENDANTS TO WITHDRAW THE REFERENCE—Page 1

initiating Bankruptcy Case No. 17-40180 (the "Bankruptcy Case") and creating its bankruptcy estate (the "Estate"). Christopher Moser (the "Trustee") is the Chapter 7 Trustee of the Estate.

3.  The Plaintiff is the Chapter 11 trustee for Payson Petroleum, Inc. ("Payson Petroleum"). As such, he has alleged that the Debtor and the Estate owed Payson Petroleum millions of dollars under an alleged subscription turn-key agreement.

4.  The District Court, in a separate proceeding, has very recently entered a judgment that Payson Petroleum was used to commit a fraud against numerous people, including the Movants here, and that the turn-key agreements at issue were fraudulent. *See* Civil Action 4:16-cv-902, E.D. Tex. (October 9, 2018 at docket no. 16).

5.  On October 27, 2017, the Bankruptcy Court entered an order approving a settlement between the Plaintiff and the Trustee, whereby, among other things, the Plaintiff would have a claim in the Bankruptcy Case in the allowed amount of $2,671,900.50.

6.  On September 12, 2018, the Plaintiff filed his complaint, thereby initiating this Adversary Proceeding, pursuant to which he seeks a money judgment against all defendants (229 of them) for $2,474,900.50. This is the amount allegedly remaining unpaid on the allowed $2,671,900.50 claim once the Estate has exhausted its other assets in an attempt to pay the allowed claim. Asserting a claim under 11 U.S.C. § 723(a), the Plaintiff alleges that each of the Movants was a general partner of the Debtor and that, accordingly, they (and all defendants) are jointly and severally liable to him for the allowed claim remaining unpaid.

7.  Only one of the Movants, Acme Energy Company, LLC, filed a proof of claim in the Bankruptcy Case.

8.  Of the 109 defendants in this Adversary Proceeding, only 1, Acme Energy Company, LLC, filed a proof of claim in the Bankruptcy Case.

### III. ARGUMENT AND AUTHORITIES

**A.  CLAIMS ARE NON-CORE**

9. The Movants do not deny that the Bankruptcy Court has jurisdiction under 28 U.S.C. § 1334 over this Adversary Proceeding, as an action that is "related to" the Bankruptcy Case because it may increase the assets of the Estate. *See* 11 U.S.C. § 541(a)(3) (providing that a recovery under section 723(a) is property of the estate). However, this Adversary Proceeding is not a core proceeding, and the Movants do not consent to the Bankruptcy Court entering a final judgment.

10. It is not a core proceeding pursuant to 28 U.S.C. § 157(b)(2), because the section 723(a) claim is not listed in this statute and because the claim is nothing more than an attempt to augment the Estate. It is also not a core proceeding pursuant to the Constitution. While the Plaintiff invokes the catch-all language of section 157(b)(2)(A) and (O), which calls for heightened scrutiny, s*ee In re United Sec. & Comms. Inc.*, 93 B.R. 945, 957 (Bankr. S.D. Ohio 1988), ultimately it is the Constitution that determines which causes of action may be core claims and which cannot.

11. As the Supreme Court has made clear, the mere fact that Congress might label something to be core does not mean that the Bankruptcy Court has Constitutional authority over the claim. *See Stern v. Marshall*, 564 U.S. 462 (2011), *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). Thus, lower courts "must keep one eye cocked toward" the *Marathon* decision, which held that "bankruptcy courts may not have original jurisdiction over adversary proceedings that do not intimately involve the debtor-creditor relationship and rest solely in issues of state law." *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985). In *Stern*, the Supreme Court expanded on *Marathon* and

explained that core proceedings are those that either arise under title 11 or in a title 11 case, whereas non-core proceedings are those merely related to a title 11 case. *Stern*, 564 U.S. at 476-77.

12. Notwithstanding this statutory distinction, however, a Bankruptcy Court does not have Constitutional authority to adjudicate "a state law action independent of the federal bankruptcy law and not necessarily resolvable by ruling on a creditor's proof of claim in bankruptcy." *See id.* at 487. The Supreme Court recognized a "distinction between actions that seek to augment the bankruptcy estate and those that seek a pro rata share of the bankruptcy res …." *Id.* at 499 (quotations omitted). And that distinction "reaffirms that Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.*

13. The Plaintiff's claim here is clearly to augment the Estate. He is a creditor of the Estate seeking simply to bring more money into the Estate to enlarge his anticipated recovery. This Adversary Proceeding does not involve the debtor-creditor relationship or even the allowance of a claim against the Estate, but rather an affirmative cause of action by the Estate against non-creditors for a money judgment. It is not even the Trustee seeking the recovery, but rather a creditor. For this reason, the Bankruptcy Court lacks core jurisdiction over this Adversary Proceeding even though it may have some bearing on the Bankruptcy Case or the Estate.

14. Additionally, although the cause of action is phrased in terms of the Bankruptcy Code, it is Texas law that will determine the outcome. The statute asserted by the Plaintiff provides that:

> If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner *to the extent that under applicable nonbankruptcy law such general partner is personally liable* for such deficiency.

11 U.S.C. § 723(a) (emphasis added).[2]  The statute expressly provides that nonbankruptcy law will determine the alleged liabilities of the Movants.

15.   This is in accordance with the general law that "property interests are created and defined by state law, and unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Stern*, 564 U.S. at 495 (quotations omitted).  The same is true of section 723(a), which merely gives a trustee standing to pursue state-law causes of action against general partners:

> a trustee is entitled to judgment against partners under § 723(a) only to the extent that partnership creditors have recovered or could recover judgment against those partners under nonbankruptcy law.  It is clear from the legislative history of § 723(a), that in enacting that section Congress did not intend to thereby create new liabilities for partners of a partnership in bankruptcy, and it is also clear that the existence and extent of a partner's liability for partnership debts under § 723(a) is limited by applicable state law.

*Ehrenberg v. WSCR, Inc. (In re Hoover WSCR Assocs., Ltd.)*, 268 B.R. 227, 234 (Bankr. C.D. Cal. 2001).

16.   Like in *Stern*, therefore, the Plaintiff's claim "is in no way derived from or dependent on bankruptcy law; it is a state … action that exists without regard to any bankruptcy proceeding." *See Stern*, 564 U.S. at 499 (referring to a state tort action).  The Plaintiff brought the claim to augment the Estate.  It does not "stem[] from the bankruptcy itself" and will not "necessarily be resolved in the claims allowance process." *See id.*

---

[2] The Plaintiff does not have standing under this statute, and therefore no court has subject matter jurisdiction, as the Movants have otherwise briefed in their motion to dismiss.

17. And, to reiterate, none of the Movants filed a proof of claim in the Bankruptcy Case, thereby arguably subjecting themselves to the Bankruptcy Court's jurisdiction, and only one other defendant did. While that other defendant may have correspondingly different legal rights, it is unthinkable that two courts would try the same lawsuit, the District Court with 228 defendants, and the Bankruptcy Court with 1 defendant.

18. Accordingly, because the Plaintiff's claim is in reality a state law claim, because it is brought merely to augment the Estate, and because the Movants have not filed proofs of claim in the Bankruptcy Case, the Bankruptcy Court cannot adjudicate the claim as a core claim even if there is otherwise "related to" jurisdiction.

**B.     JURY RIGHTS**

19. For similar reasons, the Movants have jury rights, and they do not consent to the Bankruptcy Court conducting a jury trial. It is clear that the Seventh Amendment applies in bankruptcy and that the Movants, by not filing proofs of claim in the Bankruptcy Case, have not waived those rights.[3] *See Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990). Accordingly, the analysis is a straight forward, Seventh Amendment analysis which the Supreme Court has summarized as follows:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) (citations and quotations omitted).

---

[3] The Movants do not concede that the filing of a proof of claim waives all jury rights, as *Langenkamp* makes clear. Rather, they contend that, by not filing a proof of claim at all, there can be no waiver.

20. Here, the complicating issue is that the claim on which the Plaintiff seeks relief is a claim seemingly created by Congress within the Bankruptcy Code. Arguably, it is therefore an equitable claim that does not implicate the Seventh Amendment, especially since it is appears to have been created by Congress and Congress can therefore limit jury rights. Indeed, one bankruptcy court has concluded that there are no jury rights with respect to a section 723(a) claim. *See Tatge v. Chandler (In re Judiciary Tower Assocs.)*, 170 B.R. 8 (Bankr. D.C. 1994). Yet that court ignored the admonition that so concluding results in a "wolf in sheep's clothing," since all that Congress did was to create a conduit for what are otherwise state-law, legal rights. *See In re Owensboro Distilling Co.*, 108 B.R. 572, 574 (Bankr. W.D. Ky. 1989). Indeed, if the fact that the claim is created by Congress, even though it is based on state law, controls, then Congress could do away with all jury rights by simply taking common law and state-law claims and codifying them as federal statutes.

21. Rather, the conclusion turns on the Supreme Court's well defined analysis of what is a legal claim versus what is an equitable claim, with the test being the form of relief sought:

> The seventh amendment . . . would be defeated if an action at law could be tried by a court of equity . . . And so it has been held by this court 'that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury. It would be difficult, and perhaps impossible, to state any general rule which would determine in all cases what should be deemed a suit in equity as distinguished from an action at law, for particular elements may enter into consideration which would take the matter from one court to the other; *but this may be said, that where an action is simply for the recovery and possession of specific, real, or personal property, or for the recovery of a money judgment, the action is one at law*.

*Whitehead v. Shattuck*, 138 U.S. 146, 151 (1891) (emphasis added) (internal citations omitted).

*Accord Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476-78 (1962) ("[p]etitioner's contention … is

that insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal. We agree with that contention.")

22. Therefore, because all that the Plaintiff seeks is a money judgment based on a state-law, legal claim, and because the Movants have not filed proofs of claim, the Movants are entitled to a trial by jury which the Bankruptcy Court cannot conduct.

C. **WITHDRAWAL OF THE REFERENCE**

23. The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. *See* 28 U.S.C. § 157(d). "[T]he Fifth Circuit stated that in ruling on motions to withdraw the reference for cause, a court should consider several factors, including whether the matter involves core or non-core issues, judicial economy, uniformity in bankruptcy administration, the economical use of the parties' resources, the effect of withdrawal on the goal of expediting the bankruptcy process, and forum shopping." *Texas Capital Bank, N.A. v. Dallas Roadster, Ltd. (In re Dallas Roadster, Ltd.)*, Adv. No. 13-4033, 2013 WL 5758632 (Bankr. E.D. Tex. Sept. 27, 2013 (citing *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)). The Fifth Circuit also suggested that the presence of jury demand could factor into the Court's decision. *See Holland America*, 777 F.2d at 999. These factors all support withdrawal of the reference in this case.

24. Most fundamentally, the Bankruptcy Court cannot try this Adversary Proceeding to finality. Only the District Court can enter a final judgment, and only the District Court can conduct the jury trial. Since the trial will be a jury trial, the Bankruptcy Court cannot even enter proposed findings of fact and conclusions of law to assist the District Court or, even if somehow it could or would, in no event would they be admissible to a jury. It would be a complete waste

of the Bankruptcy Court's time and efforts, of the District Court's time and efforts, and of the parties' resources. Thus, as the District Court will have to withdraw the reference eventually anyway, both courts and all parties are best served by that happening now, such that the District Court can also address all pretrial matters that will arise. This is especially the case given that those pretrial matters will directly impact the jury trial that the District Court will conduct, meaning that either the District Court will have to "reinvent the wheel" anyway, or it will be limited by what the Bankruptcy Court, which by design has little to no experience conducting jury trials, does.

25. With respect to the Fifth Circuit's factors, "cause" exists to withdraw the reference for this Adversary Proceeding *in toto* for at least the following reasons:

(i) Non-core issues predominate and there are no core issues. While not itself determinative, this is the most important factor. As the Supreme Court and the Fifth Circuit have repeatedly admonished the lower courts, care must be taken to ensure that Constitutional problems are avoided on the front end. All courts "must keep one eye cocked toward" *Marathon* and *Stern v. Marshall*.

(ii) There are jury rights.

(iii) Judicial economy is favored by having the District Court handle and try all matters. Not only is duplication avoided, but potentially years of appeals and post-judgment proceeds are avoided. One need only look to the length of time, cost, and jurisdictional uncertainty that arose because the reference in *Stern v. Marshall* was not withdrawn.

(iv) There is no need for the Bankruptcy Court's expertise. Many times, it is preferable for the Bankruptcy Court to address bankruptcy matters, as the subject

matter expert, even if for only a report and recommendation to the District Court. Here, it is Texas state law that will control whether the Movants are liable as alleged general partners.

(v) There is no concern regarding uniformity in bankruptcy administration, for the simple reason that this Adversary Proceeding does not involve any bankruptcy administration. It is purely a state law claim asserted to augment the Estate.

(vi) The Movants are not engaged in forum shopping. The Movants did not choose where to file this Adversary Proceeding; the Plaintiff did. The Movants seek to conserve their resources and to engage in one suit with one trial and one judgment, which it is undisputable only the District Court can grant everyone. That is not forum shopping. It is what the Constitution and Congress demand.

(vii) With respect to expediting the process, the Movants doubt how much the process—with two lawsuits and over 300 defendants—can be expedited. This Adversary Proceeding is likely to take as long to adjudicate in the Bankruptcy Court as in the District Court. What is certain, however, is that ongoing and repeated jurisdictional questions, questions of authority, questions of a report and recommendation, and another intermediate level of appeals court, such as would result if the reference is not withdrawn, can only slow down the process and create additional work for both courts.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Movants respectfully request that the Bankruptcy Court enter a report and recommendation recommending the immediate withdrawal

of the reference, that the District Court so order, and that the Movants be granted such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 24th day of October, 2018.

**MUNSCH HARDT KOPF & HARR P.C.**

/s/  Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
500 N. Akard St., Ste. 3800
Dallas, TX 75201
214-855-7500 Tel.
214-855-7584 Fax
Email: drukavina@munsch.com
Email: jvasek@munsch.com

**COUNSEL FOR MOVANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 24th day of October, 2018, a true and correct copy of the foregoing document was served upon the attached service list via the Court's CM/ECF system on counsel for the Plaintiff.

/s/  Davor Rukavina
Davor Rukavina, Esq.

# EXHIBIT "A"

| | |
|---|---|
| 1 | Acme Energy Company, LLC |
| 2 | Gary W. Amerson |
| 3 | Jeffrey D. Carter |
| 4 | Flynt Family Incorporated |
| 5 | Ryan Grossman |
| 6 | Luis Gonzalez |
| 7 | Marc Henn |
| 8 | Thomas J. Hinshaw |
| 9 | Thomas J. Hoppe |
| 10 | KAPAA LLC |
| 11 | Timothy H. Moore |
| 12 | Gerald L. Myer |
| 13 | Thomas Partridge |
| 14 | Lois Partridge |
| 15 | Jay Pond |
| 16 | Rose Sobel Revocable Trust |
| 17 | Kelly Dean Sanders |
| 18 | Janys Schroeder (c/o Stephen Brown) |
| 19 | Raymond A. Smith |
| 20 | Janet S. Smith |
| 21 | Trewitt Living Trust |
| 22 | Wailua LLC |
| 23 | Jimmie R. Walker |
| 24 | Steven Wiesenfeld |
| 25 | Carolyn Wiesenfeld |
| 26 | Wildflower LLC |
| 27 | David J. Zawisha |
| 28 | 3 Well MGP, LLC |
| | |
| 29 | 4 in 1 LLC |
| 30 | Warren V. Bush |
| 31 | Fay L. Bush |
| 32 | Carrie R. Dahmer Revocable Trust |
| 33 | The Kurt & Linda Erickson Estate Trust |
| 34 | Hupakoe, LLC |
| 35 | Michael Niemann |
| 36 | Julie Wakeman |
| 37 | Riverstone Resources, Ltd. |