IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | CASE NO. 17-40179 |
| | § | |
| | § | Chapter 7 |
| Debtor. | § | |
| | § | |
| | § | |
| JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adversary Proceeding No. 18-04074 |
| v. | § | |
| | § | |
| ACME ENERGY COMPANY, LLC, *ET. AL.*, | § | |
| | § | |
| Defendants. | § | |

## MOTION OF VARIOUS DEFENDANTS TO DISMISS AND BRIEF IN SUPPORT

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE SHOWN IN THE CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING WITH APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER**.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

SUMMARY ............................................................................................................................. 1

BACKGROUND ...................................................................................................................... 4

ARGUMENTS AND AUTHORITIES ...................................................................................... 6

   A.   No Standing Under Section 723 .......................................................................... 6

   B.   Violation Of Automatic Stay ............................................................................... 8

   C.   The Settlement Order Does Not Change The Result ............................................ 8

   D.   The Joint Motion And Settlement Order Did Not Satisfy Due Process For Movants ................... 14

   E.   Effects Of Movants Not Signing Bankruptcy Petition ....................................... 18

PRAYER ................................................................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).................................................................. 12
*Enterprise Fin. Group Inc. v. Curtis Mathes Corp.*, 197 B.R. 40, 46 (E.D. Tex. 1996)........... 13
*First St. Holdings NV. LLC v. MS Mission Holdings, LLC (In re First St. Holdings NV, LLC)*, 2012
    LEXIS 5636 *27-28 (9th Cir. BAP 2012) .......................................................................... 17
*Graham v. Hill*, 444 F. Supp. 584, 588 (S.D. Tex. 1978) ....................................................... 13
*Hartford Underwriters Ins. Co. v. Union Planters Bank N.A.*, 530 U.S. 1 (2000) ...................... 7
*In re Astroline Comms. Co. Lts. P'ship*, 188 B.R. 98, 103 (Bankr. D. Conn. 1995) ................... 7
*In re Century/ML Cable Venture*, 294 B.R. 9, 29 (Bankr. S.D.N.Y. 2003) ............................ 18
*In re Cooper*, 405 B.R. 801, 812 (Bankr. N.D. Tex. 2009) .................................................. 11
*In re Memphis-Friday's Ass'n*, 88 B.R. 821, 825-26 (Bankr. W.D. Tenn. 1988)..................... 18
*In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999) .................................................. 19
*In re United Operating LLC*, 540 F.3d 351, 354 (5th Cir. 2008)......................................... 8, 12
*Insurance Group of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)... 13, 14
*Jacuzzi v. Pimienta*, 762 F.3d 419, 420 (5th Cir. 2014)....................................................... 14
*Law v. Siegel*, 571 U.S. 415, 421 (2014) ...................................................................... 10, 11
*Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)...................................... 4
*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950) ......................... 16
*Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001)............................................................... 4
*Recreational Props. Inc. v. Southwest Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986) ............... 16
*Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987) ............................... 14, 17
*Securities and Exchange Commission v. Matthew Carl Griffin and William Daniel Griffin*, Civil Action
    No. 4:16-cv-902 ........................................................................................................... 3
*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998)............................... 12
*Stern v. Marshall*, 564 U.S. 462, 488-89 (2011)................................................................. 13
*Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 870 (9th Cir. 2004) .................................. 16
*Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152-53 (2009)............................................. 14
*U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)......................................................... 10
*United Student Aid Funds Inc. v. Espinosa*, 559 U.S. 260, 272-74 (2010) ............................ 14
*Warth v. Seldin*, 422 U.S. 490, 499-500 (1975)................................................................ 12
*Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).............................................................. 13
*Zerand-Bernal Group Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994) ................................... 13

**Statutes**

11 U.S.C. .............................................................................................................. 10, 11, 21
11 U.S.C. § 103(g) ...................................................................................................... 11
11 U.S.C. § 105(a) ...................................................................................................... 10
11 U.S.C. § 303 (g) ...................................................................................................... 19
11 U.S.C. § 303(b)(3)(A) ............................................................................................. 18
11 U.S.C. § 303(f) ...................................................................................................... 19
11 U.S.C. § 322 .......................................................................................................... 11
11 U.S.C. § 362(a)(3).................................................................................................... 8
11 U.S.C. § 541 ..................................................................................................... 3, 7, 8
11 U.S.C. § 541(a) ................................................................................................. 3, 7, 8
11 U.S.C. § 59 ............................................................................................................ 8
11 U.S.C. § 60 ............................................................................................................ 8
11 U.S.C. § 60(b) ............................................................................................... 6, 9, 14
11 U.S.C. § 701(a) ...................................................................................................... 19

---

11 U.S.C. § 723(a) ................................................................................................................... 3, 5, 6, 16
28 U.S.C. .................................................................................................................................................. 19
28 U.S.C. § 1334 ...................................................................................................................................... 4, 13
28 U.S.C. § 157 ......................................................................................................................................... 13
TEX. BUS. ORG. CODE ANN. § 152.304(b) ............................................................................................. 20
TEX. BUS. ORG. CODE ANN. §153.152(b) ............................................................................................. 20
TEX. BUS. ORG. CODE ANN. §153.161 ................................................................................................... 20

## Constitutional Provisions
14th Amendment .......................................................................................................................................... 14
5th Amendment ............................................................................................................................................ 14
Article III of the United States Constitution ......................................................................................... 12, 19

## Federal Rules of Bankruptcy Procedure
Rule 7012 ..................................................................................................................................................... 4
Rule 9014(b) ................................................................................................................................................ 15
Rule 9019 ..................................................................................................................................................... 11
Rule 9024 ..................................................................................................................................................... 6

## Federal Rules of Civil Procedure
Rule 12(b)(1) ............................................................................................................................................... 4
Rule 12(b)(6) ............................................................................................................................................... 4, 8

## MOTION OF VARIOUS DEFENDANTS TO DISMISS AND BRIEF IN SUPPORT

TO THE HONORABLE BRENDA T. RHOADES, U.S. BANKRUPTCY JUDGE:

COME NOW the defendants listed on Exhibit "A" hereto (the "Movants"),[1] all of whom are defendants in the above styled and numbered adversary proceeding (the "Adversary Proceeding") filed by Jason R. Searcy, Chapter 11 Trustee (the "Plaintiff"), and file this their *Motion of Various Defendants to Dismiss and Brief In Support* (the "Motion"), respectfully stating as follows:

## I.

## SUMMARY

1.      The Adversary Proceeding is a lawsuit by the perpetrator of a large securities fraud against its victims.  It is a disgrace, something for which the Trustee should be ashamed.  The Plaintiff is the Chapter 11 Trustee for Payson Petroleum, Inc. ("Payson").  The Movants were mostly mom and pop investors, scattered around the country, who invested in an oil and gas drilling venture organized by Payson and its principals, Matthew Carl Griffin and William Daniel Griffin (the "Griffins").  Between November 2013 and July 2014, Payson and the Griffins conducted a two-phase offering of interests in two limited partnerships to develop three oil and gas wells (the "3 Well Program").  The investors/Movants in this Adversary Proceeding invested in the first phase of the offering, through a limited partnership called Payson 3 Well, L.P.  The investors/Movants in Adversary Proceeding No. 18-04076 invested in the 2014 limited partnership, called Payson 3 Well, 2014, L.P.  The Griffins controlled Payson and the two limited

---

[1] For ease, Exhibit "A" matches the defendant names as listed by the Plaintiff in his Complaint. The Movants do not, by so listing themselves, represent that the Plaintiff has correctly spelled their names or that any of the artificial entities listed on Exhibit "A" exist or are in good standing.

---

partnerships.  The investors controlled nothing.  They had no managerial rights, at all.  They did not even know who the other investors were.  The investors relied entirely on the managerial skills and honesty of Payson and the Griffins.  That reliance was betrayed.

2.      Payson and the Griffins made materially false and misleading statements and omissions to induce the investors to put in their money.  Specifically, Payson and the Griffins misled Movants by making the following material misrepresentations and omissions:

   a.  Payson would contribute 20% of the $27 million offering amount, or $5.4 million, and this capital infusion would cover 20% of the drilling and completion costs of the wells;

   b.  Failing to disclose that Payson lacked the financial means to make the $5.4 million payment;

   c.  Failing to disclose that Payson would keep the $23 million in offering proceeds it raised as its "turn-key fee" (that it would keep), regardless of the actual cost of the wells, while mischaracterizing the cost of the wells as an estimate rather than a fixed cost;

   d.  Misrepresenting that Payson has raised the projected $27 million that Payson represented to investors was necessary to pay for the 3 Well Program ($24 million to drill and complete the wells and $3 million in marketing and administrative costs); and,

   e.  Misrepresenting that Payson would cover any cost overruns, beyond the estimated $24 million to drill and complete the wells, without disclosing that Payson lacked the financial resources to pay any cost overruns.

In reality, Payson lacked the funds to make the $5.4 million payment and contributed no money to the 3 Well Program.  However, Payson raised $23,019,444 from investors, the Movants herein, and the rest of the Defendants in the two Adversary Proceedings.  The investors paid what they were required to pay under the Subscription Turn-Key Agreements for Payson 3 Well, L.P. and Payson 3 Well 2014, L.P.

3.      Payson did not contribute the $5.4 million it was required to contribute under the Private Placement Memoranda used to solicit the investment.  Payson took the $6,987,965.38 difference between the $23,019,444 raised from investors and $16,031,487.62 cost of drilling and

completing the wells as its undisclosed "fee" for the transaction.  The United States District Court for the Eastern District of Texas has already found this transaction to be a security fraud on the very investors the Trustee now sues.  *See Securities and Exchange Commission v. Matthew Carl Griffin and William Daniel Griffin*, Civil Action No. 4:16-cv-902 [Docket No 16], October 9, 2018.  The District Court ordered disgorgement of $6,987,965.38, plus pre-judgment interest and a civil penalty of $100,000 for each of the Griffins.  A true correct copy of the District Court's Memorandum Opinion and Order in the SEC action is attached hereto, incorporated herein by this reference, and marked as Exhibit "B."

4.      The two limited partnerships, Payson 3 Well, L.P. and Payson 3 Well 2014, L.P., paid Payson what they were required to pay under the Subscription Turn-Key Agreements. Payson defrauded them by misappropriating the investors' money.  The Plaintiff, as Chapter 11 Trustee for Payson, stands directly in its shoes and has no greater rights.  *See* 11 U.S.C. § 541(a). He is subject to all defenses that would be applicable to Payson.  The Movants, already defrauded once by Payson, are now sued by the perpetrator of that fraud to recover the same money Payson misappropriated.

5.      Those issues will be addressed in detail at the proper time.  For now, the Court should dismiss this action for two reasons that appear as issues of law.  First, because the Plaintiff is not the trustee for Payson 3 Well, L.P., he has no standing under 11 U.S.C. § 723(a) to assert his claim, and the Court has no jurisdiction to grant the Plaintiff the requested relief.  Indeed, the assertion of the claim violates the automatic stay in the Payson 3 Well, L.P. bankruptcy case. Second, because the Movants did not sign the bankruptcy petition, the Court has necessarily found that they are not general partners, such that collateral estoppel and *res judicata* now apply; alternatively, the bankruptcy case must be dismissed as having been unauthorized, again leaving

the Court without jurisdiction.  These defects are not curable.  Therefore, the Movants seek a dismissal with prejudice.

## II.

## <u>BACKGROUND</u>

6.      Because this Motion is predicated on Rule 12(b)(1), as incorporated by Bankruptcy Rule 7012, it is appropriate to consider evidence on this motion with respect to the Plaintiff's standing.  *See, e.g., Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).  Unlike Rule 12(b)(6), this may include deciding disputed facts.  *See id.*  Importantly, the burden of proving jurisdiction rests on the party asserting jurisdiction, meaning that the "plaintiff bears the burden of proof that jurisdiction does in fact exist." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  There are two types of jurisdictional attacks: a facial attack and a factual attack.  *See id*. A facial attack, "requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his Complaint are taken as true for the purposes of the motion." *Id*. "A 'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

7.      Here, the Movants make a "factual" attack, meaning that the Court does not presume the Plaintiff's allegations to be true and meaning that the Plaintiff bears the full burden of proof on the issue of jurisdiction. The issue is not subject matter jurisdiction as is usually considered under 28 U.S.C. § 1334—the Movants admit that there is general "related to" jurisdiction, albeit non-core—but rather Constitutional jurisdiction because the Plaintiff lacks standing to assert his claims and this Court's order purporting to grant that standing is

Constitutionally void.  The only evidence needed is evidence that appears of record and of which the Court should, and for jurisdictional purposes must, take judicial notice.

8.      The Plaintiff's claim is simple: the Plaintiff claims that he has an allowed claim against the debtor's estate, and that the Movants, as alleged general partners of the debtor, are jointly and severally liable for that debt under 11 U.S.C. section 723(a).  However:

(i)      Payson Petroleum 3 Well, L.P. (the "Debtor") filed its petition on January 31, 2017 under Chapter 7;

(ii)     Christopher Moser (the "Trustee") is the duly appointed Chapter 7 trustee of the Debtor and its bankruptcy estate (the "Estate");

(iii)    the Plaintiff (Searcy) is not the trustee of the Debtor or the Estate;

(iv)     the Debtor's bankruptcy petition was signed only by 3 Well MGP, LLC, as the only general partner of the Debtor, *see* Bankruptcy Case Docket No. 1 at p. 4;

(v)      the Debtor's statement of financial affairs lists only two general partners, 3 Well MGP, LLC and Payson Petroleum Grayson, LLC, *see* Debtor's Bankruptcy Case Docket No. 3 at p. 32; and,

(vi)     the debt that the Plaintiff sues on arose either as of the petition date or October 27, 2017, when the Court entered its order approving the settlement agreement between the Plaintiff and the Trustee that is the basis of the Plaintiff's claims as pled in his Complaint.

9.      This Court entered an Order approving a proposed settlement agreement between the Plaintiff and the Trustee [Payson Bankruptcy Docket No. 265] (the "Settlement Order"). The Settlement Order provides that the Plaintiff will have standing to pursue section 723(a) claims and that the Plaintiff is appointed the "representative" of the Estate for that purpose.  However, as

Movants explain below, the Settlement Order is void insofar as it purports to grant the Plaintiff standing.[2]  If the Settlement Order is not void, it should be set aside or at least not enforced against the Defendants.  Movants are aware that other Defendants have filed a Motion under Rule 60(b) or Bankruptcy Rule 9024 seeking relief from the Settlement Order.  The Motion has merit and Movants support it.  The Settlement Order in total, together with the judgment agreed to pursuant to that Order, should be set aside as fraudulent, including the claims allowed by this Court to the Plaintiff.  The Movants doubt the Court would have allowed those claims had it known of Payson's securities fraud against the Defendants or of the recent fraud judgment against the Griffins, Payson's insiders and control persons.  *See* Exhibit "B."  The Trustee stands in Payson's shoes.  Even if the Settlement Order were not fraudulent, the entry of the Settlement Order violated Movants' due process rights for reasons set forth below.

## III.

## ARGUMENTS AND AUTHORITIES

### A.   NO STANDING UNDER SECTION 723

10.   The Plaintiff's sole cause of action is under 11 U.S.C. § 723(a).  *See* Complaint at ¶ 16.  That section also, by its express terms, applies to and encapsulates any non-bankruptcy claim against a general partner for the partnership's debts. *See* 11 U.S.C. § 723(a). Under 11 U.S.C. § 723:

> If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, **the trustee** shall have a claim against such general partner to the extent that under applicable nonbankruptcy law such general partner is personally liable for such deficiency.

11 U.S.C. § 723(a) (emphasis added).

---

[2] *See* Civil Action 4:16-cv-902, E.D. Tex. (October 9, 2018 at docket no. 16)

11.     The plain language of the statute provides that the Trustee, and only the trustee, has standing to assert a claim under section 723(a).  *See In re Astroline Comms. Co. Lts. P'ship*, 188 B.R. 98, 103 (Bankr. D. Conn. 1995).  Here, the Plaintiff is obviously not the Trustee.  He is "a" trustee in his own Chapter 11 case, but he is not "the" trustee in this bankruptcy case.  Section 723(a) could not be clearer that **only the Chapter 7 trustee** appointed in the underlying Chapter 7 bankruptcy case has standing to assert a recovery against an alleged general partner.

12.     The Supreme Court's opinion in *Hartford Underwriters Ins. Co. v. Union Planters Bank N.A.*, 530 U.S. 1 (2000) answers the balance of the inquiry.  First, as the Supreme Court confirms, "Congress says in a statute what it means and means in a statute what it says there." *Id.* at 6.  Second, when Congress provides that a trustee may do something, in that case seek recovery for a surcharge under section 506(c), it is the role of the courts to enforce this requirement according to its terms. *See id.* Third, and equally as importantly, where the statute provides that the trustee may do something, it is providing that "others may not" and that "the trustee is the only party empowered to invoke the provision." *Id.*

13.     Therefore, as Congress created the right of action, and Congress provided that the Trustee can bring the action, no other person has standing to seek relief under the action.  *See id.* This is further confirmed by 11 U.S.C. § 541 of the Bankruptcy Code, which expressly provides that a recovery under section 723(a) is property of the Estate.  *See* 11 U.S.C. § 541(a)(3). The Trustee and only the Trustee serves as the representative of the Estate. *See* 11 U.S.C. § 323(a). The Trustee is required to collect and monetize property of the Estate.  *See* 11 U.S.C. § 704(a)(1). No one else has that power, and it cannot be sold.  Any contrary reading of Section 723(a), as permitting standing to any person other than the Trustee, is inconsistent with, and in actual conflict with, these other provisions of the Bankruptcy Code.

14.     Thus, the Plaintiff lacks standing to assert his claims in this Adversary Proceeding. Standing is a jurisdictional requirement and, without standing, this Court lacks subject matter jurisdiction.  *See, e.g., In re United Operating LLC*, 540 F.3d 351, 354 (5th Cir. 2008).  Therefore, the Court should dismiss this Adversary Proceeding without leave to re-plead.

## B.   VIOLATION OF AUTOMATIC STAY

15.     As noted, section 723(a) authorizes only the Trustee to seek recovery.  Funds recovered under section 723(a) of the Bankruptcy Code are expressly defined as property of the estate.  *See* 11 U.S.C. § 541(a)(3). It is a violation of the automatic stay "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and the Court has not entered any order granting the Plaintiff relief from the stay.  Thus, the Movant has asserted a claim upon which relief cannot be granted within the meaning of Rule 12(b)(6), because the Plaintiff is violating the automatic stay and committing statutory contempt by doing so.

## C.   THE SETTLEMENT ORDER DOES NOT CHANGE THE RESULT

16.     If the above were the only considerations at issue, the Movants would submit that the analysis is simple.  However, the complicating factor here is the Settlement Order.  The Plaintiff and the Trustee together sought the Settlement Order, which included seeking to grant the Plaintiff standing over the Estate cause of action. They served the underlying motion (but apparently not the settlement agreement and proposed order) on some of the Defendants. The Settlement Order is final and non-appealable.[3]  The Plaintiff will raise these issues in response to this Motion, as indeed he has referenced the Settlement Order in his Complaint.  For the reasons

---

[3] For the avoidance of doubt, the Movants are in no way conceding proper service of the settlement motion or due process, and they reserve all arguments and rights with respect to the same and to seek relief under Rules 59 or 60 .

stated below, the Settlement Order is void in these respects and the Plaintiff may not rely on it for

standing, as this Court cannot confer jurisdiction on itself, or the Plaintiff, and the Trustee cannot

agree to jurisdiction.  Nor may estoppel be used to create jurisdiction.

17.     The Settlement Order provides, in pertinent part, the following, as also stated in

the underlying settlement agreement:

> Payson Petroleum is hereby granted standing and authority to enforce and prosecute
> the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related
> Claims … without further order of this Court.

> Payson Petroleum is hereby appointed the representative of the 3 Well LP
> bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action
> Claims and the 3 Well LP Partnership Related Claims pursuant to the 3 Well LP
> Subject Claims Assignment and Participation Agreement…[.]

> Pursuant to the 3 Well Subject Claims Assignment and Participation Agreement
> and this Order, Payson Petroleum shall have exclusive authority to file suit,
> prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP
> Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.
> Payson Petroleum is under no duty to initiate any litigation or to take any action
> with respect to the 3 Well LP Partnership Related Claims or the 3 Well LP
> Avoidance Action Claims that in its judgment would not be cost justified.

Payson Petroleum Bankruptcy Docket No. 265 at ¶¶ 12, 13, and 15.

18.     The foregoing definitional phrases arguably include the current section 723(a)

claims, as more fully defined in the underlying settlement agreement.  Thus, as the Plaintiff will

argue, this Court entered a specific order granting him standing, and nothing can be done about

this order now without relief under Rule 60 (b) or Bankruptcy Rule 9024, which has been sought

by some Defendants, but not yet granted.  Importantly, however, the Trustee's claims and causes

of action under section 723(a) have <u>not</u> themselves been assigned to the Plaintiff.  Instead, the

Settlement Order and settlement agreement assigned to the Plaintiff a fifty percent (50%) interest

in the "net recovery" on the claims.  *See* Bankruptcy Case Docket No. 31-1 at pp. 22-25 of 236.

In other words, the Estate still owns the causes of action, even if the Plaintiff has been sold an

interest in the net proceeds.  The Settlement Order purports to cloak the Plaintiff with standing to prosecute the Trustee's cause of action under section 723(a), but the Trustee is not the Plaintiff in this case.  The actual Plaintiff does not own the Estate's cause of action under section 723(a) and has no authority under section 723(a), or anywhere else in Title 11, to pursue it.

19.     The Bankruptcy Court cannot override or change the language of the Bankruptcy Code as it did with the Settlement Order, any more than the Bankruptcy Court could change the insider preference lookback to 4 years from 1, or increase the number of petitioning creditors for an involuntary bankruptcy from 3 to 5, or reduce the number of votes needed for a class to carry from 50% to 35%: "a bankruptcy court may not contravene specific statutory provisions." *Law v. Siegel*, 571 U.S. 415, 421 (2014).  In each of these examples, as with *Law v. Siegel*, and as with the Settlement Order, the Court would be changing the language of the statute itself, as opposed to augmenting it, or fashioning a remedy to enforce it, or filling-in a point or answering a question that may not be in the statute or that may not be clear.  That is a legislative function that the Court simply cannot do under the Constitution, given the separation of powers.  It is also something that this Court cannot do prudentially, because then there is no purpose to having a statute in the first place.  *See id*. at 421-22 (additionally concluding that bankruptcy court's equitable powers cannot override a specific statutory provision, no matter how compelling).

20.     Nor does section 105(a) of the Bankruptcy Code empower the Court to override the text of section 723(a).  Section 105(a) cannot be used to create new rights and is not "a roving commission to do equity." *See id*.  *See also U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986). Likewise with respect to the Settlement Order naming the Plaintiff the "representative" of the Estate. This is possible under 11 U.S.C. § 1123(b)(3)(B), which provides for an estate representative to prosecute estate causes of action, but that section expressly applies only in

Chapter 11. *See* 11 U.S.C. § 103(g).  The absence of any comparable provision in Chapter 7 is not only telling, it is determinative.  Again, as with *Law v. Siegel*, the Court cannot simply read a provision into the statute that is not there, notwithstanding the potential facts and equities involved. And, unlike with Chapter 11, there is no possibility of derivative standing for estate causes of action in Chapter 7. [4]

     21.      The Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 [Docket No. 154] (the "Joint Motion") that led to the Settlement Order was an improper effort to fabricate standing to sue the (already defrauded) investors when none existed under Title 11.  The Plaintiff represents an estate (Payson) with an abundance of claims and unpaid creditors but no standing to sue the investors in the Debtor.  The Trustee in this bankruptcy case has statutory standing under section 723(a) to sue general partners to satisfy partnership obligations if there is a deficiency, but the Debtor partnership has very little deficiency, if any, other than the investors' own claims for securities fraud. [5]  The Debtor owed nothing to Payson's creditors.  The Joint Motion was contrived to "marry" the Trustee's standing to sue the investors for a deficiency in the Debtor's assets with the Plaintiff's substantial creditor claims in the Payson case.  This was a conscious effort to defeat the statutory scheme created by Congress when it enacted Title 11.  It was also a breach of the Trustee's duties to his own Estate of defrauded investors, each of whom

---

[4] As one court aptly explained:  In Chapter 7, unlike Chapter 11, there is always a trustee in place. There is not the potential for a conflicted board of directors pulling its punches. There is no risk of the proverbial fox guarding the henhouse. The trustee does not have the potential for conflicts of interest that a debtor-in-possession sometimes has, since the trustee has no prepetition relationship with the debtor's management, shareholders or creditors.  The trustee has a unique role as an independent fiduciary, with a completely different perspective and interest in a bankruptcy estate than either a debtor or an individual creditor. The trustee also is expected to be a gatekeeper and to exercise reasonable business judgment in deciding what actions to bring and what are not worth the expense. In theory at least (and hopefully in reality), the trustee is a fair, balanced, and experienced (not to mention bonded, see 11 U.S.C. § 322) official who can be depended upon to exercise good litigation judgment.  Because of the unique role of a trustee, there would seem to be no equitable rationale to deviate from the Bankruptcy Code's apparent remedial scheme vis-a-vis avoidance actions and other estate causes of action.  If creditors do not like the job the trustee is doing, they can file a motion to compel him or her to act, or a motion for removal of the trustee.

*In re Cooper*, 405 B.R. 801, 812 (Bankr. N.D. Tex. 2009).

[5] The SEC sued the Griffins for that very securities fraud and won a substantial judgment for disgorgement.

lost 100% of his investment due to Payson's now proven fraud.  Rather than serve their interests, the Trustee contrived to defraud them again.  The fact that the Trustee and the Plaintiff agreed to split the proceeds of any recovery (and collect their fees from those proceeds) creates a corrupt bargain that the Court would not have approved had it known the whole truth.

22.     The Court erred when it entered the Settlement Order because this Court lacked the authority to do what it did.  This is not the end of the discussion, because the Movants acknowledge the body of case law holding that a bankruptcy court order cannot be collaterally attacked even if it is wrong on its face.  However, this does not apply to the Constitutional jurisdictional analysis, which is the fundamental problem with both the Settlement Order and the Plaintiff's argument.

23.     With respect to the fact that this Court entered the Settlement Order and the Settlement Order says what is says, the Movants' response is simple: standing is a Constitutional issue and one that may be raised at any time. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 499-500 (1975).  Standing goes to the Court's subject matter jurisdiction, which itself is Constitutional in part, since the Court exercises the District Court's Article III jurisdiction. *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998); *In re United Operating LLC*, 540 F.3d 351, 354 (5th Cir. 2008) ("[s]tanding is a jurisdictional requirement").  This Court has an independent duty to examine its subject matter jurisdiction. *See, e.g., Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party").

24.     In this respect, several principles are elemental.  First, this Court cannot—indeed, no court can—enter an order that overrules the Constitution.  Second, this Court cannot enter an order that confers jurisdiction on itself: "the fact that the bankruptcy court, in the orders approving the bankruptcy sale and later in the plan of reorganization, purported expressly to assume

jurisdiction to entertain such proceedings could not confer jurisdiction.  A court cannot write its

own jurisdictional ticket." *Zerand-Bernal Group Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994).  By

analogy with respect to a confirmed plan, as the District Court has held, "[a] bankruptcy court

cannot write its own jurisdictional ticket by including such a provision in a confirmed plan of

reorganization."  *Enterprise Fin. Group Inc. v. Curtis Mathes Corp.*, 197 B.R. 40, 46 (E.D. Tex.

1996).  Third, the action of the parties and an agreement between them, even if approved by a

court, cannot confer jurisdiction where that jurisdiction does not otherwise exist.  *See, e.g.,*

*Graham v. Hill*, 444 F. Supp. 584, 588 (S.D. Tex. 1978).  Simply put, "no action of the parties can

confer subject-matter jurisdiction upon a federal court." *Insurance Group of Ireland Ltd. v.*

*Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

25.      In sum, no action or agreement of the Plaintiff, the Trustee, and this Court can

change the jurisdictional issue.  No order entered by this Court can change the jurisdiction issue

or confer jurisdiction.  The Settlement Order simply does not matter for purposes of subject matter

jurisdiction because subject matter jurisdiction is determined by Congress.  And, since subject

matter jurisdiction is an ongoing issue that the Court must itself analyze at each stage, all that

matters is that Congress provided that the Trustee—and only the Trustee—can recover under

section 723(a).  Congress has named the sole person who can come before this Court for redress

under that statutory provision.  The Plaintiff is not that person.  There is no redress to be had and

therefore no present case or controversy to try.  As there is no present case or controversy to try,

there is no Constitutional jurisdiction. *See, e.g., Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

As such, the jurisdictional statute—whether 28 U.S.C. § 157 or 28 U.S.C. § 1334—does not

control, since there can be no statutory jurisdiction without Constitutional jurisdiction.  *See Stern*

*v. Marshall*, 564 U.S. 462, 488-89 (2011).

26.     The Plaintiff may point out that bankruptcy court orders are to be enforced unless and until set aside, and that they cannot be collaterally attacked, even if wrong. *See, e.g., Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987). This is generally true, and one sees it occasionally with respect to confirmed plans, discharge orders, and third party releases. *See, e.g., United Student Aid Funds Inc. v. Espinosa*, 559 U.S. 260, 272-74 (2010); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152-53 (2009). But this cannot and does not apply to questions of Constitutional jurisdiction—a jurisdictional attack is not a collateral attack because of the Court's ongoing, ever present, and independent duty to analyze its jurisdiction. *See, e.g., Jacuzzi v. Pimienta*, 762 F.3d 419, 420 (5th Cir. 2014) ("any judgment may be collaterally attacked if it is void for lack of jurisdiction").  In other words, Movants do not need to first seek relief under Rule 60 (b) with respect to this Court's order, since this Court's order, to the extent the Court conferred standing on the Plaintiff, is void on its face.  *See id*.  Some Defendants have sought that relief, and Movants support their motion.

27.     Likewise, the Plaintiff may note that he served the underlying Joint Motion leading to the Settlement Order on some of the Defendants in this action, who did not object or whose objections were overruled.  This too is immaterial, for principles of estoppel, and a party's action or inaction, cannot confer jurisdiction where it does not exist.  *See Insurance Group of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

## D.     THE JOINT MOTION AND SETTLEMENT ORDER DID NOT SATISFY DUE PROCESS FOR MOVANTS

28.     Furthermore, *Republic Supply* and the cases that follow it, assume compliance with 5th Amendment or 14th Amendment due process.  The Joint Motion and Settlement Order did not satisfy the requirements of due process because the Plaintiff's service of the Joint Motion did not fairly or constitutionally inform any Defendant of the relief the Plaintiff was seeking.  None of the

Movants filed proofs of claim in the Payson bankruptcy case.  None of the Movants is scheduled as a creditor in this bankruptcy case.  None of the Movants filed a proof of claim.  None of the Movants voluntarily submitted to the personal jurisdiction of the Court.  This means that, to confer personal jurisdiction over them, the Plaintiff would have had to do something more than simply mail a copy of a routine motion to them.  He would have had to serve a summons with the motion.[6] Apparently, some of the Defendants were served with a copy of it.  None of the Movants appears on the Certificate for the Joint Motion filed in the Payson Chapter 11 case [Bankruptcy Docket No. 154].  Unlike in the 3 Well 2014, LP, the Certificate of Service filed with the Joint Motion in this bankruptcy case indicates that the Trustee served a copy of the Joint Motion (apparently without exhibits) on most of the Movants on September 21, 2017 [Bankruptcy Docket No. 34].

29.     However, merely receiving a copy of the Joint Motion in the mail did not satisfy the Movants' due process rights.  The Joint Motion's opaque and technical language did not fairly inform the Movants that the Plaintiff would be seeking standing to sue them individually to satisfy Payson's unpaid debts.  While the motion uses phrases such as "standing to prosecute . . . Partnership Related Claims in the 3 Well LP bankruptcy case," these phrases are not defined in the Joint Motion nor in Title 11.  They may be defined somewhere in the couple hundred pages of exhibits to the motion, but those exhibits were not served (according to the certificate of service to the motion).  Nor would that be sufficient, without some further explanation in plain English.  Without a clear definition or explanation of the term "3 Well LP Partnership Related Claims," a recipient of the Joint Motion would have to interpret the words based upon their common meaning.

---

[6] The Movants acknowledge that Bankruptcy Rule 9014(b) does not require a summons.  Where a creditor files a proof of claim or a notice of appearance, simple service of a pleading seeking affirmative relief by mail, without a summons, would usually suffice.  However, the Movants are entitled to more due process.  They were strangers to the bankruptcy case and were entitled to clear notice of what the Plaintiff was trying to do.

---

**Motion Of Various Defendants To Dismiss And Brief In Support**                    **15**

The term "Partnership Related Claims" has no commonly understood meaning.  While an experienced bankruptcy lawyer **might** intuit that "Partnership Related Claims" referred to 11 U.S.C. § 723(a) claims, that term is opaque legalese to most Americans.  Nothing in the Joint Motion fairly informed the Defendant-investors in Payson 3 Well L.P. that the Joint Motion sought authority to sue them for the Payson's unpaid debts to trade creditors.  They were not given fair notice and an opportunity to object and be heard on the issue.  While the Joint Motion was filed in "plain sight" in the Bankruptcy Court, the deal was done in the dark of night as to the Defendants, who were not scheduled as creditors in the Payson case or the Debtor' case and were not fairly notified (if at all) of what the Trustee had planned for them.  While many of the Defendants in the Adversary Proceedings objected to the Joint Motion, a review of those objections reveals of that **none of the Defendants in either Adversary Proceeding**, i.e. the investors in Payson 3 Well, L.P. or Payson 3 Well 2014, L.P., understood that the Plaintiff was seeking standing to sue them pursuant to 11 U.S.C. § 723(a) to satisfy claims against Payson Petroleum.[7]

30.      "If a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void."  *Recreational Props. Inc. v. Southwest Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986).  Due process requires reasonable notice and meaningful opportunity to be heard.  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."); *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 870 (9th Cir. BAP 2004) (due process requires that a party must receive sufficient notice of any potentially adverse action and an opportunity to be heard).   For

---

[7] The Court may take judicial notice of the objections, which are the Payson bankruptcy case Docket.  The Court will see that none of the investors understood that the Plaintiff was seeking authority to sue them to satisfy Payson's unpaid obligations to its trade creditors.

due process purposes, notice does not have to be perfect but it must be reasonably calculated to inform. *See Mullane,* 339 U.S. at 314-15. Where due process fails, an order obtained in violation of due process is not enforceable. *First St. Holdings NV. LLC v. MS Mission Holdings, LLC (In re First St. Holdings NV, LLC)*, 2012 LEXIS 5636 *27-28 (9th Cir. BAP 2012).

31.     Simply mailing a copy of a motion without exhibits to a stranger to the proceeding, without any summons or court order requiring a response, when that motion does not clearly inform the stranger to the bankruptcy case of what relief is being sought, and instead uses vague defined terms without explaining them, cannot comply with this requirement as a matter of law. The Plaintiff's and the Trustee's Joint Motion stated that they were resolving contested claims by allowing them in various amounts and dividing various mineral interests between them. Nowhere does the Joint Motion inform the alleged general partners that they may be sued for the "agreed debt" and that they may be sued by a different person for the "agreed" debt.

32.     This case is not remotely similar to *Republic Supply.* In that case, the debtor's plan unambiguously provided that Dr. Shoaf's guaranty to Republic Supply would be released. Republic Supply did not object to that provision during the plan confirmation process and afterward sought to enforce the guaranty. The Fifth Circuit determined that the confirmation of the plan released the guaranty, relying on *res judicata. Republic Supply*, 815 F.2d at 1050-54. One critical element of *res judicata* is that that parties must be identical in both proceedings. *Id.* at 1051. That element was satisfied in *Republic Supply*: "There is no dispute that the parties before this court and those before the bankruptcy court are identical." *Republic Supply*, 815 F.2d at 1051. Here, the Movants were not parties to the proceeding in which the Settlement Order was entered, even though some filed objection, and they had no idea what the Plaintiff and the Trustee were doing to them in the Bankruptcy Court, as the objections themselves show. The Joint Motion and

Settlement Order do not satisfy the rudiments of constitutional due process as to the Movants. They did not give receive fair notice to the Defendants and a meaningful opportunity to be heard in opposition. The Agreed Order is valid as between the two trustees, but it cannot bind the Movants. It provides no constitutional basis for the Trustee's claim of standing to sue.

### E.     EFFECTS OF MOVANTS NOT SIGNING BANKRUPTCY PETITION

33.     The Bankruptcy Code is clear that a case involving a partnership is an involuntary case if the petition is signed "by fewer than all of the general partners in such partnership." 11 U.S.C. § 303(b)(3)(A). A petition signed by fewer than all general partners cannot be a voluntary petition and cannot constitute the "order for relief," instead at best being treated as a *de facto* involuntary petition until the bankruptcy court actually conducts the involuntary trial. *See, e.g., In re Century/ML Cable Venture*, 294 B.R. 9, 29 (Bankr. S.D.N.Y. 2003); *In re Memphis-Friday's Ass'n*, 88 B.R. 821, 825-26 (Bankr. W.D. Tenn. 1988). Here, the Movants are now alleged to have been general partners of the Debtor, but none of them signed the petition. Hence the paradox: either they are not general partners, or the bankruptcy case itself was not properly filed and must be dismissed, or it must be considered a still pending *de facto* involuntary bankruptcy. Indeed they were not general partners. The 3 Well Program offering materials stated that all general partner units would automatically convert to limited partner units upon the completion of the three (3) wells. That conversion occurred on September 11, 2015, once the wells were completed.

34.     This Court has entered a number of orders in the Bankruptcy Case at the behest of the Trustee and others, including the Settlement Order, as well as multiple claim disallowance orders. The Court has proceeded, certainly believed, and entered orders, as though the case was a voluntary filing signed off by the appropriate authorities. The Court entered an order granting the

Trustee's application to employ counsel, for example, in which application the Trustee represented that the Debtor filed a voluntary petition.  *See* Bankruptcy Case Docket No. 10 at ¶ 3.  The Plaintiff made the same representation to the Court in the Joint Motion to the Settlement Order.  *See* Bankruptcy Case Docket No. 31 at ¶ 3.  Everything would have been different, and the Court would not have entered any of the orders that it did, if all of these pleadings began with "on such and such date an involuntary petition was filed against the alleged debtor."

35.     Collateral estoppel requires that "(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action." *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999).

36.     In the Settlement Order, for example, the Court found that it had jurisdiction under Title 28 and additionally that "the Court may enter a final order consistent with Article III of the United States Constitution."  The Court also found that the Trustee was the trustee of the Debtor. The Court also found that "the legal and factual basis set forth in the Motion . . . establish just cause for the relief granted herein."  Yet, to make any of these findings, the Court would have had to conclude that the Debtor's petition was proper; *i.e.* that an order for relief had been entered. Otherwise, the Court could not conclude that the Trustee was the Chapter 7 trustee of the Debtor. The mere act of filing an involuntary petition does not lead to the appointment of a trustee unless expressly requested and granted *See* 11 U.S.C. § 303(f) & (g).  Who was the Trustee who filed the Joint Motion unless he represented the Estate?  Since he was automatically appointed by the U.S. Trustee, he was appointed not pursuant to section 303(g), but rather section 701(a), which applies after entry of the "order for relief."  Thus, the Debtor's petition must have effectuated the "order for relief" itself, as certainly everyone believed, and as this Court clearly found and

concluded.  If so, that means that the Debtor had only the one general partner who signed the petition. Otherwise, there could have been no order for relief, only an involuntary petition still not ruled on, and no Trustee and so on.

37.     Therefore, the same issue is involved now as then: who are the Debtor's general partners?  The issue was actually litigated in the prior action because the Plaintiff and the Trustee sought precisely the order that they received, and made precisely the arguments concerning the Court's jurisdiction and authority and the appropriateness of the Joint Motion and proceedings. And, the determination of the issue was a part of the judgment both implicitly and explicitly due to the Court's actual finding.

38.     The Court should therefore conclude one of two things. The Court can conclude that the Debtor's petition was a valid, voluntary petition, as the Court has necessarily found, in which case that finding is binding and none of the Movants can be a general partner.  Or, the Court can conclude that, if the Plaintiff's claim is correct, then the petition was at best a *de facto* involuntary petition and the Court had no jurisdiction to enter the Settlement Order and has no jurisdiction now over the current claims, and may never have that jurisdiction unless and until the *de facto* involuntary petition is adjudicated.  But in no event can the Court conclude, based on collateral estoppel and the integrity of its own orders, that the petition was a valid voluntary petition and that the Movants were general partners of the Debtor.

39.     On the issue of timing, a general partner is not liable for partnership debts arising prior to becoming a general partner. *See* TEX. BUS. ORG. CODE ANN. §§ 152.304(b); 153.152(b). A general partner of a limited partnership is not liable for the debts of the partnership incurred after he is no longer a general partner.  *See id*. at § 153.161.  The only basis for the Movants' alleged liability arises under the Settlement Order (approving the contract between the Plaintiff

and the Trustee) entered by the Court *after* the petition date.  The Court has necessarily found that none of the Movants were general partners as of the petition date, since the petition was not an involuntary petition, and the Trustee was appointed automatically by the U.S. Trustee.  Under the offering materials, the Movants were no longer general partners after September 11, 2015.  Thus, as a matter of law none of the Movants was a general partner on the petition date and cannot be liable for the alleged debt.

40.     Therefore, for several reasons the Court had no jurisdiction to enter the Settlement Order and create "standing" for the Plaintiff where none exists under Title 11.  The entry of the Settlement Order flouted the due process rights of the Movants, who were not adequately notified of a proceeding (the Joint Motion) that profoundly affected their interests and legal rights and sought relief that plainly contradicts Title 11.  Furthermore, the Complaint fails to state a claim upon which relief can be granted because the Movants were no longer general partners when their "debt" was created by the Settlement Order.  No amount of re-pleading can cure the jurisdictional issues or the due process issue.  Leave to re-plead the Complaint should be denied in that respect.  If there is an issue was to when the alleged debt arose, and if the Plaintiff can plead the elements required for such alleged date and liability, any leave to re-plead should be so limited solely to that issue.

## IV.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, the Movants respectfully request that the Court enter an order dismissing this Adversary Proceeding with prejudice and granting them such other and further relief to which they may be justly entitled.

November 6, 2018.

Respectfully submitted,

**WHITAKER CHALK SWINDLE & SCHWARZ PLLC**

By: /s/ ***Robert A. Simon***　　　　　　　　
　　　　　　Robert A. Simon
　　　　　　Texas Bar No. 18390000
　　　　　　301 Commerce Street, Suite 3500
　　　　　　Fort Worth, Texas 76102
　　　　　　Telephone:　(817) 878-0543
　　　　　　Facsimile:　(817) 878-0501
　　　　　　rsimon@whitakerchalk.com
　　　　　　**Attorneys for Movants/Defendants shown
　　　　　　on Exhibit "A."**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 6th day of November, 2018, a true and correct copy of the foregoing document was served upon the parties listed below by first-class U.S. mail, postage prepaid, electronic mail and/or via the Court's CM/ECF system.

　　　　　　　　　　　　　　/s/ Robert A. Simon
　　　　　　　　　　　　　　Robert A. Simon

Davor Rukavina, Esq　　　　　　　　Office of the U.S. Trustee
drukavina@munsch.com　　　　　　　 Eastern District of Texas
Julian P. Vasek, Esq.　　　　　　　Bank of America Building
jvasek@munsch.com　　　　　　　　　110 North College Avenue, Room 300
Munsch, Hardt, Kopf & Harr P.C.　　　Tyler, TX  75702
500 N. Akard St., Ste. 3800
Dallas, TX 75201
*Attorneys for Various Defendants*

 Blake Hamm
 blakeharnm@snowspencelaw.com
 Aaron Guerrero
 aaronauerrero@snowspencelaw.com
 Bryan Prentice,
 brvanprentice@snowspencelaw.corn
 Snow Spence Green, LLP
 2929 Allen Parkway, Suite 2800
 Houston, Texas 77019
 *Attorneys for Jason R. Searcy, Trustee for Payson Petroleum. Inc.*

---

**Motion Of Various Defendants To Dismiss And Brief In Support**　　　　　　　　**22**

## EXHIBIT A

Adams, Ronald and Marie L.

Arpino, Joseph and Carol

Barfield, Ronald E.

Bowland, Bobby J. and Terri A.

Bridges, Janis

Brumley, Carl R.

Carman, Timothy L.

Carse, Albert and Audrey

Cepetelli, Brian

Donner, Gary G.

Dow, Joel

Edwards, Albert and Mary Louise

Faris, George W. III

Kloster, William

Kusheba, Michael N.

Lowe, Kenneth and Patricia

Lowe, Rebecca

Lung, Theodore

Lynch, Estate of Barbara Fraus Jacquin

Lyons, David and Lora

Markovics, Dana

Markovics, Glen M.

Markovics, Monica

Modlin, Mark

Phelps, George

Propst, Don and Margaret

Radcliff Living Trust

Rector, Richard and Sue

Richardson, Sharolyn N.

Roland E. Lentz RLT dated January 3, 2013

Swift Revocable Qualified Spousal Trust DTD 02/20/2013

Terry, Charles L. and Katherine G.

Waggoner Family Revocable Living Trust

Watkins,  Judith

Whelpley, William and Joann

Wilshire, Jeffrey T.

Wise Family Trust

Wu, Peili

Zimmet, Laddie

Weaver, George Lee

---

**Motion Of Various Defendants To Dismiss And Brief In Support**                    23

# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION | § | |
| | § | Civil Action No. 4:16-cv-902 |
| v. | § | Judge Mazzant |
| | § | |
| MATTHEW CARL GRIFFIN and | § | |
| WILLIAM DANIEL GRIFFIN | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Plaintiff Securities and Exchange Commission's (the "SEC") Motion for Monetary Remedies and to Enter Final Judgment (Dkt. #9), on which Defendants Matthew Carl Griffin ("Matthew Griffin") and William Daniel Griffin ("Dan Griffin") have requested a hearing. After carefully considering the motion and the corresponding response (Dkt. #12), reply, (Dkt. #13), and sur-reply (Dkt. #14), the Court concludes that the motion should be granted, without the need for a hearing.[1]

## BACKGROUND

The following facts are taken from (1) the allegations in the SEC's Complaint, which are accepted as true on this motion, *see supra* footnote 1, and (2) the parties' exhibits.

Matthew and Dan Griffin (collectively, the "Griffins"), who are proceeding pro se, have worked as executives in various oil and gas companies for much of the past decade. In 2010, Matthew Griffin incorporated Payson Petroleum, Inc. ("Payson Petroleum"), another oil and gas

---

[1] The Griffins seek a hearing "to give all the facts regarding this case" (Dkt. #12 at 2). However, the Court finds a hearing unnecessary because, as explained in more detail below, the Griffins have already stipulated that the facts alleged in the Complaint will be taken as true for purposes of this motion (Dkt. #3; Dkt. #4; Dkt. #5; Dkt. #6). Additionally, the Griffins have had ample opportunity to provide supporting evidence in their response (Dkt. #12) and sur-reply (Dkt. #14).

## EXHIBIT B

business.  Matthew Griffin served as its president, chief executive officer, and chairman while Dan

Griffin served as its Chief Administrative Officer and a member of its board of directors.  From

November 2013 to July 2014, the Griffins solicited investments for Payson Petroleum to develop

three oil and gas wells (the "Three Well Program") by widely disseminating a "private placement

memoranda" (the "Memo") outlining this investment opportunity.  The Memo contained

statements the Griffins knew were false and misleading.  For instance, the Memo indicated that

Payson Petroleum would invest millions of its own dollars to drill and complete the wells when,

in fact, Payson Petroleum had been operating at a deficit for years and was not in a position to

invest.  The Memo also indicated that Payson Petroleum would use roughly $24 million of any

investments raised to drill and complete the wells, suggesting that this was simply a pass-through

cost, when the Griffins knew it would only cost roughly $16 million to do so.  This allowed Payson

Petroleum to, unbeknownst to the investors, treat any additional money raised up to $24 million

as a turn-key fee that Payson Petroleum could keep as profit.  The Griffins ultimately raised

roughly $23 million from approximately 150 investors, none of whom had experience in oil and

gas.  By June 10, 2016, Payson Petroleum and Dan Griffin would file for bankruptcy.  The

bankruptcy trustee projects that, after administrative expenses, Payson Petroleum will not have the

funds necessary to pay its unsecured creditors.

     The SEC filed suit against Matthew and Dan Griffin on November 23, 2016, a few weeks

after the bankruptcy court discharged Dan Griffin of his outstanding debts.  *See* 11 U.S.C. §

362(c)(2) (explaining that, generally, "the stay of any other act under subsection (a) of this section

continues until the earliest of … the time a discharge is granted or denied).  The SEC alleges that

the Griffins violated Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of

the Exchange Act, 15 U.S.C. § 78u(d), citing the Griffins' knowing misrepresentations in the

EXHIBIT B

Memo. The SEC simultaneously moved for judgments against the Griffins pursuant to a partial-settlement, which left the amount the Griffins would owe unresolved for the Court to determine, on motion from the SEC, accepting the allegations in the Complaint as true.[2] More specifically, the parties agreed that (1) the Court would determine if the Griffins were liable for disgorgement and, if so, what amount, (2) the Griffins would pay prejudgment interest on any disgorgement damages based on the underpayment tax rate used by the Internal Revenue Service (the "IRS"), and (3) the Griffins would pay a civil penalty in an amount decided by the Court. The parties also agreed that, for purposes of this motion, the Griffins are precluded from arguing that they violated federal securities laws or that the settlement was void or invalid (Dkt. #2; Dkt. #3; Dkt. #4). The Court subsequently entered interlocutory judgments against the Griffins reflecting this agreement (Dkt. #5; Dkt. #6) (the "Agreed Judgments"), prompting the SEC to file the Motion for Monetary Remedies and to Enter Final Judgment (Dkt. #9).

## ANALYSIS

In the motion, the SEC seeks roughly (1) $7 million in disgorgement (the difference between the $23 million raised and the $16 million it actually cost to drill and complete the wells), (2) $500,000 in prejudgment interest, and (3) a civil penalty in an amount determined by the Court. The Griffins, on the other hand, insist that they should not have to pay any amount. The Court agrees with the SEC.

I.  **Disgorgement**

The district court has "broad discretion" not only in determining whether to order disgorgement but also in calculating the amount to be disgorged. *See Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 805 (5th Cir. 2018). The purpose of disgorgement "is to

---

[2] The Griffins are not required to admit or deny the allegations in the Complaint, otherwise.

**EXHIBIT B**

deprive the party or parties responsible for the fraud of their gains and to deter future violations of the law," *SEC v. Helms*, No. A-13-CV-01306, 2015 WL 5010298, at *19 (W.D. Tex. Aug. 21, 2015) (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993)), "not to compensate the victims of fraud," *see SEC v. Kahlon*, 873 F.3d 500, 509 (5th Cir. 2017) (quoting *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)). Accordingly, in actions brought by the SEC involving a securities violation, the starting point is whether the amount to be disgorged is "a reasonable approximate of profits causally connected to the violation." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007) (quoting *SEC v. First City Fin. Corp.*, 890 F.3d 1215, 1231 (D.C. Cir. 1989)). The plaintiff bears the initial burden of showing that its requested disgorgement amount reasonably approximates the amount of profits connected to the violation. *First City*, 890 F.2d at 1232; *SEC v. Rockwall Energy of Tex., LLC*, No. H-09-4080, 2012 WL 360191, at *3 (S.D. Tex. Feb. 1, 2012). Once this burden is met, the defendant may then "demonstrate that the disgorgement figure was not a reasonable approximation." *First City*, 890 F.2d at 1232. In attempting to mitigate their liability, "'securities laws violators may not offset such liability with business expenses.'" *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 746 (5th Cir. 2004) (citing *SEC Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 16 (D.D.C. 1998)). Defendants will be held joint and several liable when the defendants "collaborate or have close relationships engaging in illegal conduct." *Id.* at 747.

The SEC argues that $6,987,965.38 in disgorgement should be awarded in this case. The Court agrees. The record reflects that the Griffins misled investors into believing that Payson Petroleum needed $24 million as a pass-through cost to complete and drill the wells, which allowed it to (secretly) retain any amount raised above the $16,031,478.62 it cost to do so. Since the Griffins raised $23,019,444 in investments, the $6,987,965.38 the SEC requests in disgorgement is, at a minimum, a reasonable approximation of the profits the Griffins obtained for Payson

EXHIBIT B

Petroleum due to their wrongdoing. The burden thus shifts to the Griffins to demonstrate that the SEC's calculation is unreasonable, which they have failed to do. The Griffins argue that, because these funds went to Payson Petroleum and not directly to them, disgorgement is wholly improper.[3] The Court disagrees. As the Supreme Court recently noted, disgorgement may be ordered even when the benefit "'accrues to third parties'" if those "'gains can be attributed to the wrongdoer's conduct.'" *See Kokesh v. S.E.C.*, 137 S.Ct. 1635, 1644 (2017) (quoting *SEC v. Contorinis*, 743 F.3d 296, 302 (2nd Cir. 2014)). Disgorgement is thus surely proper where, as here, the defendants' wrongful conduct benefited a company in which they plainly had a financial interest. The Griffins also argue that disgorgement is improper because any misrepresentations made were due to negligence rather than fraud. This argument is similarly unavailing, even if the Griffins had supported this assertion with evidence. As stated, the Griffins agreed that the allegations in the Complaint are true for purposes of this motion, and the Complaint plainly states that the Griffins knowingly deceiving those who invested in the Three Well Program (Dkt. #1 at pp. 9, 11, 12). *See SEC v. Reynolds*, No. 3:08-cv-0438-B, 2013 WL 3479825, at *1-*2 (N.D. Tex. July 11, 2013) ("Based on his consent … Fleming is now precluded from arguing that he did not violate the federal securities laws as alleged in the Amended Complaint. Also, based on the Final Judgment of Permanent Injunction, the Court accepts the allegations of the Amended Complaint as true."). The SEC's request for $6,987,965.38 in disgorgement will thus be granted. Because Matthew and Dan Griffin closely collaborated in their scheme to defraud investors, they will be jointly and severally liable for such disgorgement.

---

[3] In particular, the Griffins note that they did not personally benefit from the investors, citing their tax statements.

5

**EXHIBIT B**

II.    **Prejudgment Interest**

A court may award prejudgment interest based on securities violations. *See SEC v. Gunn*, No. 3:08-CV-1013-G, 2010 WL 3359465, at *2 (N.D. Tex. Aug. 25, 2010). This ensures that the defendant does not "obtain[] the benefit of what amounts to an interest free loan procured as a result of illegal activity." *See id.* (quoting *SEC v. Sargent*, 329 F.3d 34, 40-41 (1st Cir. 2003)). Such an award "rests within the equitable discretion of the district court to be exercised according to considerations of fairness." *Helms*, 2015 WL 5010298, at *19 (citations omitted). Similar to disgorgement, a court is likely to order joint and several liability against defendants as to prejudgment interest on disgorgement when the defendants "collaborate or have close relationships in engaging in the illegal conduct." *Hughes Capital Corp.*, 124 F.3d at 455; *First Jersey*, 101 F.3d at 1475.

In this case, the parties have agreed that, if disgorgement is ordered, prejudgment interest will be calculated from July 1, 2014, based on the rate of interest used by the IRS for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2) (Dkt. #3 at p. 2; Dkt. #4 at p. 2). *See id.* (explaining that, in calculating prejudgment interest, courts "generally turn[] to the Internal Revenue Service's ("IRS") underpayment rate related to income tax arrearages") (citing 26 U.S.C. § 6621(a)(2); *SEC v. Koenig*, 532 F. Supp. 2d 987, 995(N.D. Ill. 2007)). Because the SEC has calculated its request for $499,456.63 using the IRS underpayment tax rate (Dkt. #9, Exhibit 1 at p. 29), and the Griffins do not contest the SEC's interest calculation, the SEC's request will be granted. The Griffins will be jointly and severally liable for this amount because, as stated, they closely collaborated in their scheme to defraud investors.

EXHIBIT B

III. **Civil Penalty**

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act authorizes the Court to issue civil penalties based on the severity of the underlying violation. 15 U.S.C. §§ 77t(d), 78u(d). Such penalties "are designed to serve as deterrents against securities law violations, in contrast with disgorgement, which primarily aims to remove a defendant's profit from illegal transactions and which 'merely places the offender in the same position he would have been had he not committed the offense.'" *Helms*, 2015 WL 5010298, at *21 (quoting *SEC v. Lipson*, 129 F. Supp. 2d 1148, 1159 (N.D. Ill. 2001)). There are three tiers of penalties, each with a required evidentiary burden. While all violations are subject to first-tier sanctions, second-tier sanctions are warranted when violations involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and third-tier sanctions are appropriate for violations that involve fraud and "result[] in substantial losses to other persons or create[] a significant risk of substantial losses." *See* 15 U.S.C. §§ 77t(d), 78u(d).

A third-tier penalty is appropriate because the Griffins have admitted to engaging in fraudulent conduct which created a significant risk of substantial losses to the investors, as evidenced by Payson Petroleum's recent bankruptcy. The issue, then, is the amount that the Griffins should be penalized. Although the tier determines the maximum penalty amount, the actual amount imposed is left to the Court's discretion. *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005). To decide the appropriate amount of sanctions, the Court considers the following factors:

> (1) The egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

**EXHIBIT B**

*Helms*, 2015 WL 5010298, at \*21 (quoting *SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 1138622, at \*3 (N.D. Tex. Apr. 5, 2012)).

The Court finds that the Griffins should each be assessed a civil penalty for $100,000, $60,000 less than the maximum amount for a third-tier violation. The Griffins acted highly egregiously (Factor No. 1) and knowingly (Factor No. 2) when they induced roughly 150 people into making large investments in a company which, unbeknownst to them, had a poor financial track record (Factor No. 3) by widely disseminating the misleading Memo over the course of eight months (Factor No. 4). However, a penalty in the maximum amount would be improper in light of the Griffin's poor financial circumstances (Factor No. 5). The Griffins have repeatedly maintained that they lacked the funds necessary to hire a lawyer, as demonstrated by their pro se status in this case. Additionally, Matthew Griffin's tax returns from 2012-15 and Dan Griffin's individual bankruptcy, which resulted in discharge of his debts, suggest that the Griffins will find it difficult to pay the amounts already imposed on them in disgorgement and prejudgment interest, let alone a maximum civil penalty on top of those amounts.

The SEC suggests (without advocating) that the Court could find that the Griffins committed multiple violations, *see SEC v. E-Smart Techs, Inc.*, 139 F.Supp.3d 170, 192 (D.D.C. 2015) (explaining that "courts have taken widely divergent approaches to this question"), which would allow the Court to impose multiple civil penalties against them, *see id.* (explaining that "[t]he civil-penalty provisions permit imposition of a fixed penalty 'for each violation.'") (quoting 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B)). But the Court sees no reason to do so. Each of the Griffins' misrepresentations and omissions were part of a single scheme to raise funds for the Three Well

8

**EXHIBIT B**

Program,[4] and the Court has already considered the Griffins' recurring conduct when deciding that a $100,000 penalty is appropriate. *See id.* (finding a single violation where there were multiple misrepresentations on one document concerning one product).[5]

## CONCLUSION

The Securities and Exchange Commission's Motion for Monetary Remedies and to Enter Final Judgment (Dkt. #9) is **GRANTED**, making the Griffins' request for a hearing on the motion moot. Accordingly, the Court **ORDERS** that:

1. Defendants are jointly and severally liable for disgorgement in the amount of $6,987,965.38;

2. Defendants are jointly and severally liable for prejudgment interest in the amount of $499,456.63; and

3. Defendants are each separately liable for a civil penalty in the amount of $100,000.

A final judgment reflecting the Court's determinations in this Order is forthcoming.

---

[4] The SEC acknowledges that the Court has the discretion "to count the Griffins' violations as a single violation, as they engaged in a single fund-raising scheme for a single project, the 3 Well Program" (Dkt. #9 at 25).

[5] *See also SEC v. Sethi Petroleum, LLC*, No. 4:15-cv-00338, 2017 WL 3386047, at *9 (E.D. Tex. Aug. 7, 2017) (finding a single violation where the defendant induced ninety people to invest in a single joint venture).

**EXHIBIT B**