

**EXHIBIT**

**B**

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

<u>**AFFIDAVIT OF PAT CARPENTER**</u>

BEFORE ME, the undersigned authority, on this day personally appeared Pat Carpenter, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

1.     "My name is Pat Carpenter.  I am over the age of eighteen years and have personal knowledge of the facts stated herein, and such facts are true and correct. I have never been convicted of a crime involving moral turpitude.  I am the V.P. of Sales (Encase Legal Division) of The Document Group, Inc., a Texas corporation ('TDG').  I am a custodian of records for TDG with respect to documents related to services TDG provided to Snow Spence Green LLP ('SSG') in connection with the service of the (i) *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* filed in Case No. 16-41044 at Docket No. 154, which is attached hereto as **Exhibit 1**, (ii) *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* filed in Case No. 17-40179 at Docket No. 34, attached hereto as **Exhibit 2**, and (iii) *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* filed in Case No. 17-40180 at Docket No. 31, attached hereto as **Exhibit 3** (collectively the '9019 Motions')."

2.     "SSG retained TDG to make copies of the 9019 Motions and exhibits thereto and serve those motions and exhibits via first class mail on the persons and companies identified in the Certificates of Service and Service Lists attached to the 9019 Motions.  On September 21, 2017, TDG served copies of the documents attached hereto as Exhibits 1, 2, and 3, including all exhibits, in accordance with the Certificates of Service attached to the 9019 Motions."

3.     "TDG billed SSG for the services it provided as set forth in the invoices attached hereto as **Exhibit 4**.  SSG timely paid TDG's invoices."

Further, Affiant sayeth not.

Pat Carpenter
_____
Pat Carpenter

SWORN AND SUBSCRIBED TO BEFORE ME on this 12th day of November, 2018, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

> CHANDRA D. YOUNG-PIERCE
> My Notary ID # 129437439
> Expires May 28, 2021



## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | JOINTLY ADMINISTERED |
| MARICOPA RESOURCES, LLC, | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

---

### JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to

Compromise"), and in support thereof, respectfully show unto the Court the following:

## I.
## PROCEDURAL STATUS

1.  <u>Payson Debtor Bankruptcy Filings</u>.  On June 10, 2016, Payson Petroleum, Inc. ("<u>Payson Petroleum</u>"), Payson Operating, LLC ("<u>Payson Operating</u>"), and Maricopa Resources, LLC ("<u>Maricopa</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in this Bankruptcy Court.[1]  *See* Docket No. 1 in Bankruptcy Case Nos. 16-41043, 16-40144, *and* 16-40145.  On July 12, 2016, the Bankruptcy Court entered orders converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy Code.  *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket No. 41 in Case No. 16-40145.  On July 18, 2016, the Bankruptcy Court entered orders approving the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee in the Payson Debtors' bankruptcy cases.  *See* Docket No. 55 in Case No. 16-41043, Docket No. 50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045.  On August 11, 2016, the Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under Case No. 16-41044.  *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-41044, *and* Docket No. 81 in Case No. 16-41045.

2.  <u>Adversary Proceeding</u>.  On November 1, 2016, the Payson Trustee filed his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in Adversary Proceeding No. 16-04106 (the "<u>Adversary Proceeding</u>") against Payson Petroleum 3 Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>").

3.  <u>LP Debtor Bankruptcy Filings</u>.  On January 31, 2017, 3 Well LP and 2014 LP (collectively, the "<u>LP Debtors</u>") filed voluntary petitions under Chapter 7 of the Bankruptcy Code.

---

[1]  Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "<u>Payson Debtors</u>."

*See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180.  LP Trustee was appointed as Chapter 7 Trustee for the LP Debtors.

4.      <u>Stay Issues</u>.  On February 21, 2017, LP Trustee filed his *Certificate of Notice of Bankruptcy Filing and Stay* in the Adversary Proceeding.  *See* Docket No. 24 in Adversary Proceeding.  On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion to Lift Stay* in LP Debtor's bankruptcy cases which, *inter alia*, provides that the parties are "granted relief from the automatic stay … to continue with and fully litigate claims that are or could be pled" in the Adversary Proceeding.  Docket No. 26 in Case No. 17-40180 *and* Docket No. 29 in Case No. 17-40179.

5.      <u>Amended Complaint</u>.  On July 13, 2017, Payson Trustee filed his *First Amended Complaint* in the Adversary Proceeding.  *See* Docket No. 25 in Adversary Proceeding.

6.      <u>Jurisdiction & Venue</u>.  This Court has jurisdiction over the subject matter of this Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## FACTUAL BACKGROUND

7.      <u>Nature of Payson Debtors' Businesses</u>.      Matthew C. Griffin ("<u>Griffin</u>") formed Payson Petroleum in 2008 to, *inter alia*, (i) promote the sale of interests in limited partnerships and (ii) operate oil and gas wells for such limited partnerships.  Griffin formed Payson Operating in 2010 to act as a contract operator for Payson Petroleum.  Griffin formed Maricopa in 2012 to, *inter alia*, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8.      <u>Nature of 3 Well LP's and 2014 LP's Businesses</u>.  Payson Petroleum Grayson, LLC formed 3 Well LP in 2013 and 2014 LP in 2014 to, *inter alia*, drill, complete, and own interests in the Subject Wells.

9. <u>Turnkey Agreements</u>. On or about October 13, 2013, Payson Petroleum and 3 Well LP entered into a Subscription Turn Key Agreement under which 3 Well LP agreed to pay Payson Petroleum certain amounts for the drilling and completion of the Subject Wells (the "<u>3 Well LP Turnkey Agreement</u>"). On or about January 12, 2014, Payson Petroleum and 2014 LP entered into a Subscription Turn Key Agreement under which 2014 LP agreed to pay Payson Petroleum certain amounts for the drilling and completion of the Subject Wells (the "<u>2014 LP Turnkey Agreement</u>" and collectively with the 3 Well LP Turnkey Agreement the "<u>Turnkey Agreements</u>"). In the Adversary Proceeding, Payson Petroleum asserts claims for breach of the Turnkey Agreements against 3 Well LP in the amount of $17,115,777 and 2014 LP in the amount of $5,343,803 (the "<u>Breach of Turnkey Agreement Claims</u>").

10. <u>Working Interest Assignments</u>. On or about Marcy 28, 2016, Maricopa assigned certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine #1 (API #181-31547) (collectively the "<u>Subject Wells</u>") to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066. The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "<u>Working Interest Assignments</u>"). In the Adversary Proceeding, Maricopa asserts claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce

Code against 3 Well LP and 2014 LP for avoidance of the Working Interest Assignments and recovery of the interests transferred or their value. Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("Traton"), the Payson Trustee's approved contract operating company.

11.    Additional Avoidable Transfers.  In addition to the Working Interest Assignments, Payson Petroleum transferred $1,274,310 to 3 Well LP and $2,862,000 to 2014 LP between January and February 2014 in exchange for interests in those limited partnerships that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "Investment Transfers").  In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfers from 3 Well LP and 2014 LP (the "Investment Transfer Claims").

### III.
### PROPOSED SETTLEMENT

12.    The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties.  Attached hereto as **Exhibit A** is a copy of the Settlement Agreement.[2]

13.    Agreed Final Judgment.  As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, *inter alia*, provide that the Wellbore Interest Assignments are

---

[2]    To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control.  This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement.  Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson Petroleum on its Breach of Turnkey Agreement Claims against 3 Well LP in the amount of $8,557,888.50 and 2014 LP in the amount of $2,671,900.50. *See* Exhibit 3 to Settlement Agreement.

14. <u>Conveyance of Interests in Subject Wells</u>. 3 Well LP and 2014 LP will reassign the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by Traton until Maricopa sells those interests under 11 U.S.C. § 363. As explained in further detail in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed as follows: (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP. Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the Subject Wells.

15. <u>Allowed Claims</u>. The Settlement Agreement also provides that the parties will agree to the following allowed unsecured claims:

- Payson Petroleum shall hold (i) an allowed unsecured claim in the 3 Well LP bankruptcy case in the amount of $8,557,888.50 and (ii) an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50;

- 3 Well LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement; and

- 2014 LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

16. <u>Prosecution of and Participation in Avoidance Action Claims</u>. The Settlement Agreement further provides that the parties will enter into (i) the 3 Well LP Subject Claims Assignment and Participation Agreement and (ii) the 2014 LP Subject Claims Assignment and

Participation Agreement (collectively the "Claims Assignment and Participation Agreements").

Pursuant to the Claims Assignment and Participation Agreements:

- 3 Well LP will assign a fifty percent (50%) interest in net recoveries from litigation of 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims, as defined in the 3 Well LP Subject Claims Assignment and Participation Agreement, with 3 Well LP retaining the remaining fifty percent (50%) interest; and

- 2014 LP will assign a fifty percent (50%) interest in net recoveries from litigation of 2014 LP Avoidance Action Claims and 2014 Partnership Related Claims, as defined in the 2014 LP Subject Claims Assignment and Participation Agreement, with 2014 LP retaining the remaining fifty percent (50%) interest.

Payson Petroleum shall be granted standing to prosecute 3 Well LP and 2014 LP Avoidance Action Claims and Partnership Related Claims in the 3 Well LP and 2014 LP bankruptcy cases, and 3 Well LP and 2014 LP shall enter into engagement agreements with special litigation counsel for the Payson Trustee to prosecute such claims for the benefit of the Payson Petroleum, 3 Well LP, and 2014 LP bankruptcy estates.

17.    <u>Releases</u>.  Except for claims expressly reserved in the Settlement Agreement, all claims or causes action between the parties will be released.

<div align="center">

**IV.**
**RATIONALE**

</div>

18.    <u>Benefit to Maricopa Estate</u>.  The Maricopa bankruptcy estate receives the following benefits from the settlement:

- the interests assigned to 3 Well LP and 2014 LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 3 Well LP and/or 2014 LP.

19. <u>Benefit to Payson Petroleum Estate</u>. The Payson Petroleum bankruptcy estate receives the following benefits from the settlement:

- an allowed general unsecured claim in the 3 Well LP bankruptcy case in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 3 Well LP;

- an allowed general unsecured claim in the 2014 LP bankruptcy case in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 2014 LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 3 Well LP Avoidance Action Claims, 2014 LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, and 2014 LP Partnership Related Claims (the "<u>Subject Claims</u>") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement, 3 Well LP Subject Claims Assignment and Participation Agreement and 2014 LP Subject Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 3 Well LP and/or 2014 LP.

20. <u>Benefit to Payson Operating Estate</u>. Except for claims expressly preserved under the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which have been or could have been asserted against Payson Operating by 3 Well LP and/or 2014 LP.

21. <u>Benefit to 3 Well LP Estate</u>. The 3 Well LP bankruptcy estate receives the following benefits from the settlement:

- 3 Well LP will obtain 12.5055% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 3 Well LP will retain a fifty percent (50%) interest in all 3 Well LP Avoidance Action Claims Net Recovery and 3 Well LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and 3 Well LP Subject Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, 3 Well LP's bankruptcy estate is released from claims which have been or could have been asserted against 3 Well LP by Payson Petroleum, Payson Operating, and/or Maricopa.

22.    <u>Benefit to 2014 LP Estate</u>.  The 2014 LP bankruptcy estate receives the following benefits from the settlement:

- 2014 LP will obtain 32.4945% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 2014 LP will retain a fifty percent (50%) interest in all 2014 LP Avoidance Action Claims Net Recovery and 2014 LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and 3 Well LP Subject Claims Assignment and Participation Agreement; *and*

- except for claims expressly preserved under the Settlement Agreement, 2014 LP's bankruptcy estate is released from claims which have been or could have been asserted against 2014 LP by Payson Petroleum, Payson Operating, and/or Maricopa.

## V.
## <u>RELIEF REQUESTED</u>

23.    The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

# VI.
# BASIS FOR RELIEF

24.     Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id.* (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id.*

25.     The factors support granting the Joint Motion to Compromise. First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors. Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates. The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa, 3 Well LP, and 2014 LP. Additionally, the Settlement

Agreement (i) reduces 3 Well LP and 2014 LP's liability for failing to pay Payson Petroleum amounts owed under the Turnkey Agreements by fifty percent (50%), (ii) provides an arrangement for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii) eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar claims against partners of 3 Well LP and 2014 LP in different proceedings and forums. In sum, the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of their respective bankruptcy estates and should be approved. *See* Affidavit of Jason R. Searcy, attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

26. A proposed agreed order is attached hereto as **Exhibit D**.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estates of Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. respectfully request that the Court approve the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: September 21, 2017      Respectfully submitted,

By:   */s/ Blake Hamm*
      Phil Snow
      State Bar No. 18812600
      Blake Hamm
      State Bar No. 24069869
      SNOW SPENCE GREEN LLP
      2929 Allen Parkway, Suite 2800
      Houston, Texas 77019
      (713) 335-4800
      (713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

By:   */s/ Keith W. Harvey*
      Keith W. Harvey
      State Bar No. 09180100
      THE HARVEY LAW FIRM, P.C.
      6510 Abrams Road
      Suite 280
      Dallas, Texas 75231
      (972) 243-3960 Phone
      (972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P. AND PAYSON PETROLEUM 3 WELL 2014, L.P.**

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* was duly served as follows:

- On September 21, 2017 via the Court's electronic case filing system for the Eastern District of Texas upon all parties requesting electronic notice of all filings or by email as listed below.

- On September 21, 2017 via first class mail, properly addressed and postage prepaid, upon all parties listed on the Service List attached hereto.

Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC
Mark A. Weisbart
12770 Coil Road, Suite 541
Dallas, TX 75251
weisbartm@earthlink.net,
TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;
tarah_simmons@earthlink.net

Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP
1757 Harpsichord Way
Henderson, NV 89012
Via First Class Mail

Dan Chern
The Law Offices of Dan Chern
12801 N. Central Expressway, Suite 1558
Dallas, Texas 75243
dbc@dchern.com

Daniel P. Winikka
12377 Merit Drive, Ste. 900
Dallas, TX 75251
danw@LFDSlaw.com

US Trustee
Office of the US Trustee
110 N. College Ave, #300
Tyler, TX 75702
USTPRegion06.TY.ECF@USDOJ.GOV

/s/ Blake Hamm
Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\16-41044\20170905 9019 Motion-Payson Petroleum 16-41044.docx

Label Matrix for local noticing
0540-4
Case 16-41044
Eastern District of Texas
Sherman
Wed Sep 20 14:38:49 CDT 2017

5J Oilfield Services LLC
4090 N US Hwy 79
Palestine TX 75801-7065

ADISA
10401 N  Meridian St
Ste  202
Indianapolis IN 46290-1090

Mark I. Agee
Mark Ian Agee, Attorney at Law
6318 E. Lovers Lane
Dallas, TX 75214-2016

David C. Alford
Pakis Giotes Page & Burleson, P.C.
P.O. Box 58
Waco, TX 76703-0058

Allen M Tonkin Jr Revocable Trust
412 San Pasquale SW
Albuquerque NM 87104-1135

Allied Fence Co
1895 Calloway Drive NW
Atlanta GA 30314-1823

Allied Wireline Services LLC
Dept 236
PO Box 4346
Houston TX 77210-4346

Alpha Omega Bit LLC
9917 Paisley Road
Yukon OK 73099-7919

Amanda Speer
Dore Law Group PC
17171 Park Row Suite 160
Houston TX 77084-4927

American Express
Starwood Business Card
PO Box 360001
Fort Lauderdale FL 33336-0001

American Express
TrueEarnings Business Card
PO Box 360001
Fort Lauderdale FL 33336-0001

American Express Bank FSB
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

Anadarko E&P Onshore, LLC
PO Box 730875
Dallas TX 75373-0875

Anderson Perforating Services
PO Box 2037
Albany TX 76430-8001

Anderson Perforating Services L
PO Box 2037
Albany TX 76430-8001

Anita Anderson, POA Gary Looney
3916 Georgian Dr
Haltom City TX 76117-2636

Arbuckle Wireline
PO Box 817
Lone Grove OK 73443-0817

Arbuckle Wireline
c/o Steven McBride
14323 US-70
Ardmore OK 73401

Arbuckle Wireline - L
PO Box 817
Lone Grove OK 73443-0817

Atex Exploration & Operating
12353 FM 678
Whitesboro TX 76273-6854

Atlas Machine & Welding Inc
860 S Broadway St
Joshua TX 76058-3153

Atlas Tubular LLC
PO Box 4312
Robstown TX 78380

Atoka Fishing & Rental Inc
PO Box 898
Gainesville TX 76241-0898

Atoka Fishing & Rental Inc - L
PO Box 898
Gainesville TX 76241-0898

Atoka Operating Inc
16200 Addison Rd #155
Addison TX 75001-5333

Atoka Operating Inc
16200 Addison Road, Suite 155
Addison TX 75001-5333

Brandon K. Bains
Langley LLP
1301 Solana Blvd
Bldg 1, Ste 1545
Westlake, TX 76262-1689

Baker Hughes Oilfield Operations Inc
PO Box 301057
Dallas TX 75303-1057

Baker Hughes Oilfield Operations, Inc.
c/o Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX 77019-7100

Baker Hughes Oilfield Operations, Inc.
c/o William R. Sudela
Crady, Jewett & McCulley, LLP
2727 Allen Parkway, Suite 1700
Houston, TX 77019-2125

Banner Life Insurance Company
3275 Bennett Creek Ave
Frederick MD 21704-7608

Barber Exploration Co
8774 S Richmond Ave
Tulsa OK 74137-2715

Becket and Lee
16 General Warren Blvd
Malvern PA 19355-1245

Beckman Law
1900 Enchanted Way, Suite 125
Grapevine TX 76051-1023

Bell Nunnally
3232 McKinney Ave
Ste  1400
Dallas TX 75204-7422

Bell Supply Company
PO Box 1597
Gainesville TX 76241-1597

Bell Supply Company - L
PO Box 1597
Gainesville TX 76241-1597

Benefit Mall
Payroll Operations
415 Duke Drive, Suite 345
Franklin TN 37067-2737

Blackgold Service Co Inc
PO Box 499
Lindsay OK 73052-0499

Brammer Pipe and Steel Inc
PO Box 243
Gainesville TX 76241-0243

Brammer Pipe and Steel Inc
c/o Larry Brammer
6178 US 82
Gainesville TX 76240-7167

Brandon Archer
Shannon Porter & Johnson
PO Box 1272
San Angelo TX 76902-1272

Brent Bull
Bull & Barrett LLP
Energy Centre
1127 Judson Rd, Suite 120
Longview TX 75601-5168

BroomTree International
607 E. College St
Denton, TX 76209-7317

Buchanan Jr , Burgess E
12110 Carlbad Dr
Austin TX 78738-5338

Buchanan, John Y
4401 Malaga Dr
Austin TX 78759-4922

Buechner, C Suzanne
PO Box 197
Haverford PA 19041-0197

Buechner, Steven
115 Weston Court
Bluffton SC 29910-9524

Byrd Oilfield Services LLC
PO Box 7269
Abilene TX 79608-7269

Byrd Oilfield Services LLC
c/o Kay Hight
PO Box 7269
Abilene TX 79608-7269

Byrne, Linda Buechner
100 Aspen St
Floral Park NY 11001-3431

CF & Co  LLP
8750 N  Central Expressway
Ste  300
Dallas TX 75231-6464

CM Henkel III
Fritz Byrne Head & Fitzpatrick PLLC
500 N Shoreline, Suite 901
Corpus Christi TX 78401-0342

CMS
PO Box 93945
Cleveland OH 44101-5945

Cain, Rosalind
600 Cinrose Ln
Sherman TX 75092-5411

Canary Drilling Services LLC
PO Box 670257
Dallas TX 75267-0257

Canon Safety Services Ltd
4911 Shed Road
Bossier City LA 71111-5418

Canon Safety Services, LTD
P.O. Box 5504
Longview TX 75608-5504

Canon Safety Services, Ltd
Attn: Rod Hammer
P.O. Box 1879
Kilgore, TX 75663-1879

Canon Safety Services, Ltd.
C/O Law Offices of Ronnie Horsley
P.O. Box 7017
Tyler, TX 75711-7017

(p)CAPITAL ONE
PO BOX 30285
SALT LAKE CITY UT 84130-0285

Capital One
Spark Visa Business
Attn: General Correspondence
PO Box 30285
Salt Lake City UT 84130-0285

Capital One Bank (USA), N.A.
PO Box 71083
Charlotte, NC  28272-1083

Castello Enterprises, Inc
c/o CRMP
PO Box 53567
Midland TX 79710-3567

Charles Gameros Jr PC
4514 Cole Avenue, Suite 1500
Dallas TX 75205-4220

Michelle Chow
PO Box 601389
Dallas, TX 75360-1389

Christopher J Ryan
Kristin McLaurin
Baker Hughes Oilfield Operations Inc
PO Box 4740
Houston TX 77210-4740

CleanNet
800 W  Airport Freeway
Ste  720
Irving TX 75062-6206

Eboney Cobb
Perdue Brandon Fielder Collins & Mott
500 E. Border Street, Suite 640
Arlington, TX 76010-7457

Cohen, Sandra R
7030 South Janmar
Dallas TX 75230-3119

Colonial Life
2800 LaFrontera Blvd
Round Rock TX 78681-7929

Comptel Communications
PO Box 462273
Garland TX 75046-2273

Core Laboratories LP
Attn: Dennis P Rohr, Credit Manager
6316 Windfern Rd
Houston TX 77040-4950

Core Laboratories LP
Attn: Dennis P Rohr, Credit Manager
PO Box 841787
Dallas TX 75284-1787

Core Laboratories LP
PO Box 841787
Dallas TX 75284-1787

Crescent Services LLC
5749 NW 132nd Street
Oklahoma City OK 73142-4437

Crow, Ricky Allen
1003 W Sycamore
Sherman TX 75092-5156

Darnell Jr , Frank L
527 W Acheson St
Denison TX 75020-6305

David Alster
Alster Miller & Greene LLC
10039 Bissonnet Street, Suite 216
Houston TX 77036-7852

David W Roth
PO Box 560326
Dallas TX 75356-0326

Dean III, Wilbur Lee
1200 Sonoma Dr
Allen TX 75013-3642

Dean, Joseph Glen
11127 Wyatt St
Dallas TX 75218-2547

Denmiss LLC
c/o Gina D. Shearer
Langley LLP
1301 Solana Blvd., Bldg. 1, Ste. 1545
Westlake, TX 76262-1689

Denmiss, LLC
2650 FM 407, Suite 200
Bartonville TX 76226-7016

Dialog Wireline Services LLC
3100 Maverick Drive
Kilgore TX 75662-9032

Dolezalek, Bessie A
2088 Southmayd Rd
Whitesboro TX 76273-5559

Dolezalek, Kenneth
255 Frog Pond Rd
Sherman TX 75092-5912

DrillingInfo, Inc
PO Box 5545
Austin TX 78763-5545

Duane G Crocker
The Law Office of Duane G Crocker PC
121 S Main Street Suite 300
Victoria TX 77901-8149

Eberhart, Berdine
Eberhart, Tom
689 Camp Creek Rd
Rockwall TX 75087-7347

Emily E Epperson
5210 Long Prairie Rd
Ste 1511
Flower Mound TX 75028-2279

Endeavor Energy Resources, L P
110 N Marienfeld Suite 200
Midland TX 79701-4412

Estis Compression
545 Huey Lenard Loop
West Monroe LA 71292-0466

Estis Compression
545 Huey Loenard Loop
West Monroe LA 71292-0466

Evans, Charles J
PO Box 7641
Myrtle Beach SC 29572-0015

Evans, John F
1104 Timberview Ln
Richardson TX 75080-1534

Ever Growing Energy Services
7322 Southwest Freeway Ste 868
Houston TX 77074-2137

Excel Star Energy Services LP
PO Box 857
Gainesville TX 76241-0857

Express Energy Services
PO Box 843971
Dallas TX 75284-3971

Frances M Brown Family Trust
Frances M Brown, TTEE
913 Lakeview
Richardson TX 75080-4909

(p)FRONTIER COMMUNICATIONS
BANKRUPTCY DEPT
19 JOHN STREET
MIDDLETOWN NY 10940-4918

Frontier Communications
PO Box 740407
Cincinnati OH 45274-0407

Garofalo, Terry Lee
11559 Hickory Hollow Lane
Menasha WI 54952

Gary S. Swindell
333B Barnes Bridge Rd.
Sunnyvale, TX 75182-9107

Gehrig, Peggy Ann
11 Wrana St
Medford NY 11763-3513

Gibbons Hughes & Associates
PO Box 168645
Irving TX 75016-8645

Gilbreath Tank Trucks Inc
PO Box 430
Whitesboro TX 76273-0430

Gilbreath Tank Trucks Inc - L
PO Box 430
Whitesboro TX 76273-0430

Gollob Morgan Peddy & Co., P.C.
1001 ESE Loop 323, Suite 300
Tyler, TX 75701-8609

Grant Harpold
Vincent Serafino Geary Waddell Jenevein
815 Walker, Suite 350
Houston TX 77002-5716

Grayson County
Linebarger Goggan Blair & Sampson, LLP
c/o Laurie A Spindler
2777 N Stemmons Frwy Ste 1000
Dallas, TX 75207-2328

Grayson County
Linebarger Goggan Blair & Sampson, LLP
c/o Laurie A Spindler
2777 N Stemmons Frwy Ste 1000
Dallas, Texas 75207-2328

Greenberg Traurig LLP
2200 Ross Avenue
Ste 5200
Dallas TX 75201-2794

Greene's Energy Group
PO Box 676263
Dallas TX 75267-6263

Greene's Energy Group, LLC
Jeffrey D. Stewart
c/o Wells & Cuellar, P.C.
440 Louisiana, Suite 718
Houston, TX 77002-1637

Greene, Susan R
480 Cloud Rd
Malvern AR 72104-2031

Gregory Meece
Michael Schneider
Thompson & Knight LLP
333 Clay Street, Suite 3300
Houston TX 77002-4499

Randy M. Griffin
3848 Grand Mesa Drive
Montrose, CO 81403-7117

Griffin, Matthew C
2221 Justin Rd #119-444
Flower Mound TX 75028-4848

Griffin, Randy M
3848 Grand Mesa Drive
Montrose, CO 81403-7117

Griffin, William C
2050 Sierra Place
Lewisville TX 75077-7535

Guerra, Sherwood & Tlanan PLLC
2501 Parkview Drive
Ste 123
Ft Worth TX 76102-5800


H Glory Petroleum, LLC
21406 Santa Clara Dr
Katy TX 77450-7606

H Miles Cohn
Crain Caton & James
1401 McKinney Street 17th Floor
Houston TX 77010-4037

HM Express
6591 FM 2622
Stony TX 76259-4041


Hallbach, Paula Marie Dean
7709 Bob White Dr
Rowlett TX 75088-7384

Halliburton Energy Services Inc
PO Box 301341
Dallas TX 75303-1341

Halliburton Energy Services Inc
c/o Evangelos Kleftakis, Director
10200 Bellaire Blvd #2NW-13E
Houston TX 77072-5206


Halliburton Energy Services Inc
c/o Timothy McKeon, VP & Treasurer
10200 Bellaire Blvd #2NW-13E
Houston TX 77072-5206

Halliburton Energy Services Inc - L
PO Box 301341
Dallas TX 75303-1341

James Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX 77019-7100


Keith William Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road
Suite 280
Dallas, TX 75231-7215

Hattensty, Jr , Louie A
1630 Crinnerville Rd
Ardmore OK 73401-7562

Hayes, Terry C
2909 Deerwood Dr
Waco TX 76710-1818


Charles B. Hendricks
Cavazos, Hendricks, Poirot & Smtiham, PC
900 Jackson Street, Suite 570
Dallas, TX 75202-2413

Hinckley Cook PC
5850 Town & Country Blvd. Suite 1304
Frisco TX 75034-6957

Holly Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston TX 77019-7100


Hooper, John Robert
PO Box 546
Walters OK 73572-0546

Hy-Bon Engineering Company Inc
2404 Commerce Drive
Midland TX 79703-7549

IHS Global Inc
PO Box 847193
Dallas TX 75284-7193


IOS
Dept 730029 PO Box 660919
Dallas TX 75266-0919

IPFS Corporation
c/o Mark W. Steirer
10330 White Rock Place
Dallas, TX 75238-1446

(p)IPFS CORPORATION
30 MONTGOMERY STREET
SUITE 1000
JERSEY CITY NJ 07302-3865


Ilva Wilson, TTE of Ilva Wilson TR
81 Prospect St #47
Northampton MA 01060-2173

Impac Exploration Services Inc
24306 E Road 1030
Weatherford TX 73096

Integrated Fluid Systems LLC
3817 NW Expressway
Ste 975
Oklahoma City OK 73112-1481


Integrated Fluid Systems LLC
c/o Chad T McDougall
1021 NW Grand Blvd
Oklahoma City OK 73118-6039

Integrated Fluid Systems LLC
c/o Kenneth Stohner, Jr.
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201-2725

Internal Revenue Service
P.O. Box 7346
Philadelphia PA 19101-7346

J Michael Carillo
Carrillo Tibbels PLLC
PO Box 207
Decatur TX 76234-0207

J&P Transport LLC
PO Box 459
Muenster TX 76252-0459

JMW Brown # 1 LLC
c/o Anderson Tobin, PLLC
13355 Noel Road, Suite 1900
Dallas TX 75240-6674

JMW Recovery LLC
c/o J. Seth Moore & Aaron Z. Tobin
One Galleria Tower
13355 Noel Rd., Ste. 1900
Dallas, TX 75240-6674

JMW Recovery, LLC
c/o Anderson Tobin, PLLC
13355 Noel Road, Suite 1900
Dallas TX 75240-6674

Jameson and Dunagan PC
5429 LBJ Freeway, Suite 700
Dallas TX 75240-2610

Jason Bernhardt
Winstead, PC
600 Travis Suite 1000
Houston TX 77002-3009

Jeffrey L Coe
PO Box 1157
Palestine TX 75802-1157

Jeffrey Stewart
D Brent Wells
Wells & Cuellar
440 Louisiana, Suite 718
Houston TX 77002-1637

Jeffrey Stewart
Wells & Cuellar
440 Louisiana, Suite 718
Houston TX 77002-1637

Jim Spoonts Trust
607 E. College St.
Denton, TX 76209-7317

Jonathan Henley
Adams Bennett Duncan & Henley
100 East Broadway
Gainesville TX 76240-4050

Justin Bryan Whitley
Parker Drilling
5 Greenway Plaza, Suite 100
Houston TX 77046-0506

KW Utility Construction Inc
PO Box 32
Whitesboro TX 76273-0032

Kathryn Michelle Looney Mathes
3621 Steeplechase Apt 7306
Sherman TX 75092-6131

Kenneth Stohner, Jr
Jackson Walker L L P
2323 Ross Avenue, Suite 600
Dallas TX 75201-2725

Kirkpatrick Oil & Gas, LLC
1001 West Wilshire Blvd #202
Oklahoma City OK 73116-7017

Knoop, Carin Isabel
136 Brattle St
Cambridge MA 02138-3425

Kyle Erwin Construction LLC
PO Box 643
Boyd TX 76023-0643

LG Networks Inc
8111 LBJ Freeway
Ste 625
Dallas TX 75251-1430

Lauderdale, Candis Ann
4201 Estancia Way
Fort Worth TX 76108-8315

Law Offices of Paul W Brown
5956 Sherry Lane
Ste 1000
Dallas TX 75225-8021

(c)LEMONS, ANEVA
2210 CARRIAGE ESTATES RD
SHERMAN TX 75092-4405

Kim Ellen Lewinski
17171 Park Row, Ste. 160
Houston, TX 77084-4927

Lewis, Jeffrey Charles
245 Whispering Valley Dr
Wimberley TX 78676-2100

Lewis, Joan Marie
108 Purple Sage Dr
Georgetown TX 78633-4853

Lewis, Lindsey Lamont
262 Wolfcreek Pass
Wimberley TX 78676-5931

Lide Industries LLC
aka Permian Tank & Mfg
c/o John Hanson
17101 Preston Road, Suite 230
Dallas, TX 75248-1374

Lide Industries LLC
c/o John Hanson
17101 Preston Road, Suite 230
Dallas, TX 75248-1374

(p)LIGHT TOWER RENTALS INC
2330 E INTERSTATE 20 SOUTH SERVICE RD
ODESSA TX 79766-8842

Lott, Linda D
4325 Village Woods Ln
Chester VA 23831-4803

M Cowie
Greenberg, Grant & Richards
PO Box 571811
Houston TX 77257-1811

M D Allison
PO Box 1376
Gainesville TX 76240-3524


M D Allison
PO Box 1376
Gainesville TX 76241-1376

MSM Environmental, LLC
Craig E. Brown
1900 Northwest Expressway, Suite 450
Oklahoma City, OK 73118-1849

MSM Oilfield Services
PO Box 13178
Oklahoma City OK 73113-1178


Magnum Oil Tools International LTD
5655 Bear Lane Ste 100
Corpus Christi TX 78405-4404

Maricopa Resources, LLC
2652 FM 407 E, Suite 250
Argyle TX 76226-7026

Maricopa Resources, LLC
2652 FM 407 E, Suite 250
Bartonville TX 76226-7026


Mark D Threadgill
3800 East 42nd Street, Suite 601
Odessa TX 79762-5930

Mark H Bennett
General Counsel of Crescent Services LLC
5721 NW 132nd Street
Oklahoma City OK 73142-4437

Mark P Blenden
2217 Harwood Road
Bedford TX 76021-3607


Matthew C  Griffin
8605 Doral Court W
Flower Mound TX 75022-6481

McCullough, Charles Joseph
28504 10th Ave S
Federal Way WA 98003-3138

McCullough, John Edward
PO Box 787
Pottsboro TX 75076-0787


McCullough, Mary Margaret
6466 N State Highway 289
Sherman TX 75092-7064

Merton Tracy TTE
Ann W Tracy RT
1039 300th St
Nashua IA 50658-9406

Metro-Repro Inc
PO Box 560092
Dallas TX 75356-0092


Michael S Crooks
171 Stonebridge Boulevard
Edmond OK 73013-4683

Mid-Central Energy Services LLC
727 N Morgan Road
Oklahoma City OK 73127-7142

Montgomery Joint Venture
4948 Stony Ford Dr
Dallas TX 75287-7235


J. Seth Moore
Condon Tobin Sladek Thornton, PLLC
8080 Park Lane
Suite 700
Dallas, TX 75231-5920

Morrow, Marilyn Teresa
7634 N State Hwy 289
Sherman TX 75092-7066

Christopher J. Moser
2001 Bryan Street
Suite 1800
Dallas, TX 75201-3070


Nancy P Tonkin Revocable Trust
c/o Nancy T Cutter
1524 Park Ave SW
Albuquerque NM 87104-1024

Nancy T Cutter Revocable Trust
1524 Park Ave SW
Albuquerque NM 87104-1024

National Association of Personal
Financial Advisors Inc
8700 W Bryn Mawr, Suite 700N
Chicago IL 60631-3509


National Oilwell Varco LP
7909 Parkwood Circle Drive
Houston, TX 77036-6757

National Oilwell Varco LP
PO Box 202631
Dallas TX 75320-2631

Nevill Document Solutions
2825 Story Road W
Irving TX 75038-5268

New Tech Global Ventures LLC
PO Box 4724 MSC 800
Houston TX 77210-4724

Norman's Well Service - L
PO Box 875
Gainesville TX 76241-0875

Norman's Well Service Inc
c/o Crystal McCann
3728 Highway 82 East
Gainesville TX 76240-7056


North Texas Sample Log Service
PO Box 1376
1010 N Grand
Gainesville TX 76240-3524

Number One RWM, Ltd
PO Box 758
Sherman TX 75091-0758

O'Neal, Norman D
128 Miller Dr
Sherman TX 75090-8987


Odle, Douglas Kent
10304 Big Thicket Dr
Austin TX 78747-2706

Odle, Gary Wayne
1001 West Munson St
Denison TX 75020-5127

Odle, Landon Boyd
3227 Mill House Run
Missouri City TX 77459-6514


Oil States Energy Services LLC
PO Box 203567
Dallas TX 75320-3567

Oil States Energy Services, LLC
c/o Grant P. Harpold
2229 San Felipe, Ste. 1000
Houston, TX 77019-5639

Old Aulacogen, L P
3053 Seneca
Frisco TX 75034-5971


PCS Ferguson
3771 Eureka Way
Frederick CO 80516-9446

PCS Ferguson - L
3771 Eureka Way
Frederick CO 80516-9446

PCS Ferguson, Inc.
c/o Dore Law Group, P.C.
17171 Park Row
Suite 160
Houston, TX 77084-4927


Paradise Springs, LLC
1900 E 15th St, Suite 600E
Edmond OK 73013-6691

Parker, Nedro
c/o Vera Ann Stewart
10526 Stone Canyon Rd #104
Dallas TX 75230-4401

Pason Systems USA Corp
16035 Table Mountain Pkwy
Golden CO 80403-1642


Patrick, Mike
2620 Sir Gawain Ln
The Colony TX 75056-5718

Payson Developmental
Drilling Fund 2014 II, LP
2652 FM 407 E, Suite 250
Argyle TX 76226-7026

Payson Developmental Drilling
Fund 2014 II, LP
2652 FM 407 E, Suite 250
Bartonville TX 76226-7026


Payson Drilling Fund 2015 I, LP
2652 FM 407 E, Suite 250
Bartonville TX 76226-7026

Payson Drilling Fund 2015 II, LP
2652 FM 407 E, Suite 250
Argyle TX 76226-7026

Payson Grayson 2 Well, LP
2652 FM 407 E, Suite 250
Argyle TX 76226-7026


Payson J C #1, LP
2652 FM 407 E, Suite 250
Argyle TX 76226-7026

Payson Operating, LLC
2652 FM 407 E, Suite 250
Argyle TX 76226-7026

Payson Petroleum 3 Well 2013, L P
2652 FM 407 E, Suite 250
Bartonville TX 76226-7026


Payson Petroleum 3 Well 2014 L P
2652 FM 407 E, Suite 250
Bartonville TX 76226-7026

Payson Petroleum 3 Well 2014, LP
2652 FM 407 E, Suite 250
Argyle TX 76226-7026

Payson Petroleum 3 Well LP
2652 FM 407 E, Suite 250
Bartonville TX 76226-7026

Payson Petroleum 3 Well, LP
2652 FM 407 E, Suite 250
Argyle TX 76226-7026

Payson Petroleum Crowe # 1, L P
2652 FM 407 E, Suite 250
Bartonville TX 76226-7026

Payson Petroleum Crowe 1, LP
2652 FM 407 E, Suite 250
Argyle TX 76226-7026

Payson Petroleum Grayson 2 Well, L P
2652 FM 407 E, Suite 250
Bartonville TX 76226-7026

Payson Petroleum Inc
2652 FM 407 E Suite 250
Bartonville TX 76226-7026

Payson Petroleum J C # 1 L P
2652 FM 407 E, Suite 250
Bartonville TX 76226-7026

Payson Petroleum LLC
dba Payson Petroleum Inc
2652 FM 407 E, Suite 250
Argyle TX 76226-7026

Payson Petroleum Management Partners LLC
2652 FM 407 E, Suite 250
Bartonville TX 76226-7026

Payson Petroleum Profit Sharing
2652 FM 407 E Suite 250
Bartonville TX 76226-7026

Payson Petroleum, Inc
2652 FM 407 E, Suite 250
Argyle TX 76226-7026

Peak Oilfield Services LLC
PO Box 203997
Dallas TX 75320-3397

Peak Oilfield Services LLC
c/o Darla Wolf, Collections Manager
1400 Post Oak Blvd Ste 400
Houston TX 77056-3009

Peak Oilfield Services, LLC
Dore Law Group, P.C.
17171 Park Row
Suite 160
Houston, TX 77084-4927

Philip C Brown TTE PCB Trust
PO Box 2464
Sherman TX 75091-2464

Phillip G Shaffer PC
230 West Main
Denison TX 75020-3025

Phoenix American Financial Services
2401 Kerner Blvd
San Rafael CA 94901-5569

Pilot Thomas Logistics LLC
d/b/a Simons Petroleum LLC
PO Box 676686
Dallas TX 75267-6686

Pilot Thomas Logistics LLC
d/b/a Simons Petroleum LLC
c/o Tyler Barnett, credit manager
777 Main Street Suite 2000
Fort Worth TX 76102-5332

Pottsboro Church of Christ
522 W FM 120
Pottsboro TX 75076-7478

Pottsboro ISD
% Perdue Brandon Fielder Et Al
500 E. Border Street
Suite 640
Arlington, TX 76010-7457

Premier Property Real Estate Group LLC
PO Box 678527
Dallas TX 75267-8527

Prescott Capital Group, Inc
2652 FM 407 E
Bartonville TX 76226-7018

Prescott Capital Group, Inc
2652 FM 407 E, Suite 250
Bartonville TX 76226-7026

Primoris Energy Services Corporation
1010 CR 59
Rosharon TX 77583-2566

Primoris Energy Services Corporation
dba Sprint Pipeline Services
1010 CR 59
Rosharon TX 77583-2566

Protechnics-A Core Laboratories LP
ATTN: JAY A. WALD, CCE
6316 Windfern Rd.
Houston,TX 77040-4950

Pruitt Tool & Supply Co Inc
PO Box 181359
Fort Smith AR 72918-1359

Quail Tools LP
PO Box 10739
New Iberia LA 70562-0739

Quasar Energy Services Inc
3288 FM 51
Gainesville TX 76240-0208

Quasar Energy Services Inc
c/o Tim Sicking, President
3288 FM 51
Gainesville TX 76240-0208

Quasar Energy Services Inc - L
3288 FM 51
Gainesville TX 76240-0208

Quasar Energy Services, Inc
1300 Norwood Drive, Suite 100
Bedford, Texas 76022-5246

RWJ Exploration LLC
1114 West Hull St
Denison TX 75020-5124


Ranger Consulting Company LLC
PO Box 18673
Oklahoma City OK 73154-0673

Ranger Consulting Company LLC
c/o Chad T McDougall
1021 NW Grand Blvd
Oklahoma City OK 73118-6039

Ranger Directional Services
PO Box 18673
Oklahoma City OK 73154-0673


Ranger Directional Services LLC
c/o Chad T McDougall
1021 NW Grand Blvd
Oklahoma City OK 73118-6039

Red Eagle Energy LLC
3848 Grand Mesa Drive
Montrose, CO 81403-7117

Red Eagle Energy, LLC
c/o Randy Griffin
3848 Grand Mesa Drive
Montrose, CO 81403-7117


Reed, Kathy
310 W Wilshire Blvd
Oklahoma City OK 73116-7704

Reed, Kirk E
PO Box 721918
Norman OK 73070-8462

Reesing, Phillip
13031 Park Crossing #1504
San Antonio TX 78217-1674


Reg D Resources
7333 West Jefferson Ave, Suite 225
Lakewood CO 80235-2017

Rick Browning
5050 E University Drive, Suite 1
Odessa TX 79762-8100

Ricky Allen Crow
1003 W Sycamore
Sherman TX 75092-5156


Rig Runners Inc
519 N Sam Houston Pkwy E
Ste 600
Houston TX 77060-4054

Ringgold, Hubert Charles
802 C R 2958
Alba TX 75410

Ringgold, Hubert Charles
802 CR 2958
Alba TX 75410-5725


Robert C Beasley
Weycer, Kaplan, Pulaski & Zuber, P C
1400 Summit Tower
11 Greenway Plaza, Suite 1400
Houston TX 77046-1130

Robert J Naudin
1221 Lamar Street, 16th Floor
Houston TX 77010-3039

Robin Lambourn
Lambourn Law Firm
PO Box 9123
Denver CO 80209-0123


Ronnie Horsley
PO Box 7017
Tyler TX 75711-7017

Ronnie Horsley
Ronnie Horsley, P C
PO Box 7017
Tyler TX 75711-7017

Row Plus LLC
PO Box 8
Alvord TX 76225-0008


Ryan J McNeel
Brockett & McNeel LLP
PO Box 1841
Midland TX 79702-1841

S&S Welding
PO Box 283
Poolville TX 76487-0283

SH Productions Inc
301 W Main Suite 600
Ardmore OK 73401-6322


Schlumberger Technology Corp
PO Box 732149
Dallas TX 75373-2149

Michael Isaac Schneider
Thompson & Knight LLP
811 Main Street, Suite 2500
Houston, TX 77002-6119

Jason R. Searcy
P. O. Box 3929
Longview, TX 75606-3929

| | | |
|---|---|---|
| Joshua P. Searcy<br>Searcy & Searcy, P.C.<br>PO Box 3929<br>Longview, TX 75606-3929 | Searcy & Searcy, P.C.<br>PO Box 3929<br>Longview, TX 75606-3929 | Jason Searcy.<br>P. O. Box 3929<br>Longview, TX 75606-3929 |
| Secore & Waller LLP<br>12222 Merit Drive<br>Ste 1350<br>Dallas TX 75251-3214 | Select Energy Services LLC<br>PO Box 1715<br>Gainesville TX 76241-1715 | Select Energy Services LLC<br>c/o Randy Friedsam, Direct<br>1400 Post Oak Blvd Ste 400<br>Houston TX 77056-3009 |
| Select Energy Services, LLC<br>Kim Lewinski<br>Dore' Law Group, P.C.<br>17171 Park Row, Suite 160<br>Houston, TX 77084-4927 | SemGas<br>6120 S Yale Ave Ste 700<br>Tulsa OK 74136-4216 | Gina D. Shearer<br>Strasburger & Price, LLP<br>2600 Dallas Parkway, Suite 600<br>Frisco, TX 75034-8698 |
| Sierra Engineering<br>105 Leighton Dr Apt D<br>Thibodaux LA 70301-8432 | Simons Petroleum - L<br>PO Box 676686<br>Dallas TX 75267-6686 | Smith International Inc<br>PO Box 732136<br>Dallas TX 75373-2136 |
| Snow Spence Green LLP<br>2929 Allen Pkwy., Ste. 2800<br>Houston, TX 77019-7100 | Snubco USA - L<br>Dept 169 PO Box 4458<br>Houston TX 77210-4458 | Solari Luz LLC<br>PO Box 1783<br>El Prado NM 87529-1783 |
| Southstar Energy Corp<br>301 W Main Suite 500<br>Ardmore OK 73401-6322 | Laurie A. Spindler<br>Linebarger, Goggan, Blair & Sampson<br>2777 N. Stemmons Frwy Ste 1000<br>Dallas, TX 75207-2328 | Mark W. Steirer<br>Law Office of Mark W. Steirer<br>10330 White Rock Place<br>Dallas, TX 75238-1446 |
| Stewart, Vera Ann<br>10526 Stone Canyon Rd #104<br>Dallas TX 75230-4401 | William R. Sudela<br>Crady Jewett & McCulley. LLP<br>2727 Allen Parkway, Suite 1700<br>Houston, TX 77019-2125 | Sunoco Energy Services LLC<br>PO Box 3445<br>San Angelo TX 76902-3445 |
| Susan M Baletka<br>Baker Hughes Oilfield Operations, Inc<br>PO Box 4740<br>Houston TX 77210-4740 | T Scott Smith<br>Attorney and Counselor at Law<br>PO Box 354<br>Sherman TX 75091-0354 | TGK, Inc.<br>800 W. Airport Frwy Suite 720<br>Irving, TX 75062-6206 |
| TNT Electric Inc<br>5240 E Hwy 82<br>Gainesville TX 76240 | TWL Holdings, L P<br>400 N Saint Paul St, Suite 800<br>Dallas TX 75201-6862 | Tamarisk Energy Corporation<br>11650 79th Ave #101<br>Edmonton, AB T6G 0P7<br>CANADA |
| Tanya Garrison<br>Weycer Kaplan Pulaski & Zuber<br>11 Greenway Plaza, Suite 1400<br>Houston TX 77046-1130 | Terry Jacobson<br>Jacobson Law Firm PC<br>733 West Second Avenue<br>Corsicana TX 75110-2942 | Terry, Johnny S<br>2501 W Coffin St<br>Denison TX 75020-7211 |

The Cox Law Firm PLLC
1300 Norwood Dr Suite 100
Bedford TX 76022-5246

The Wellington Group
606 Calle Embocadura
San Clemente CA 92673-3006

Thomas Claxton
Attorney at Law
PO Box 329
Gainesville TX 76241-0329


Thomas L Claxton
PO Box 329
Gainesville TX 76241-0329

Aaron Z. Tobin
Condon Tobin Sladek Thornton PLLC
8080 Park Ln., Suite 1900
Dallas, TX 75231-5930

Transamerica Employee Benefits
PO Box 74504
Cincinnati OH 45274-2504


Traton Engineering Associates, L.P.
1415 N. Loop W. Frwy. #1250
Houston, TX 77054

Trinidad Drilling LP
15015 Vickery Drive
Houston TX 77032-2554

Trinidad Drilling, LP
c/o Thompson & Knight LLP
333 Clay Street, Suite 3300
Houston, TX 77002-4104


Robert and Kitty Tunmire
P.O. Box 1691
Waco, TX 76703-1691

U.S. Attorney General
Department of Justice
Main Justice Building
10th & Constitution Ave., NW
Washington, DC 20530-0001

US Trustee
Office of the U.S. Trustee
110 N. College Ave.
Suite 300
Tyler, TX 75702-7231


United Rentals
1950 N Stemmons Fwy
Lockbox 840514
Dallas TX 75207-3134

United States Attorney s Office
110 North College Avenue, Suite 700
Tyler TX 75702-0204

John M. Vardeman
UST Office
110 N. College St., Suite 300
Tyler, TX 75702-7231


Vogelsang, Barbara B
1705 Crescent Dr
Sherman TX 75092-7519

Vrla, Patricia Ann
1719 Skyline Dr
Sherman TX 75092-3140

Emily Scott Wall
Cavazos Hendricks Poirot & Smitham PC
900 Jackson St., Ste. 570
Dallas, TX 75202-2413


Washita Mineral Co
PO Box 915
Ardmore OK 73402-0915

Weatherford U S LP
PO Box 301003
Dallas TX 75303-1003

Welmar Investments
PO Box 632
Nowata OK 74048-0632


Wheeler, J  Michael
c/o Anderson Tobin, PLLC
13355 Noel Road, Suite 1900
Dallas TX 75240-6674

White Stone Resources, LLC
PO Box 11
St Albert, AB T8N 1N2
CANADA

William Scazzero
Hayes Berry White Vanzant
512 W Hickory Street, Suite 100
Denton TX 76201-9074


Wilson, Bobby C
309 Cedar Creek Ct
Fort Worth TX 76103-1016

Wilson, Jessie Linda
PO Box 1261
Sherman TX 75091-1261

Wilson, Leslie Lashelle
3822 Pipers Meadow
San Antonio TX 78251-1644


Wilson, Thomas J
454 Peters Blvd
Brightwaters NY 11718-1721

Wilson, Vurlas Lane
327 Spoutspring Rd
Pottsboro TX 75076-7027

Sara G. Witmeyer
Cobb Martinez Woodward
1700 Pacific Avenue
Suite 3100
Dallas, TX 75201-7489

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Capital One                          Frontier Communications              IPFS Corporation
Attn: 63001-015                      Bankruptcy Dept                      PO Box 730223
15000 Capital One Dr                 19 John St                           Dallas TX 75373-0223
Richmond VA 23238                    Middletown, NY 10940


Light Tower Rentals Inc
2330 E I20 S Service Road
Odessa TX 79764




Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).


Lemons, Aneva
245 Carriage Estates Rd
Sherman TX 75092




The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(d)Allied Wireline Services LLC      (d)Amanda Speer                      (d)American Express Bank FSB
Dept 236 PO Box 4346                 Dore Law Group PC                    c/o Becket and Lee LLP
Houston TX 77210-4346                17171 Park Row, Suite 160            PO Box 3001
                                     Houston TX 77084-4927                Malvern  PA 19355-0701


(d)Atoka Operating, Inc              (d)Broomtree International            (d)Buchanan, Jr , Burgess E
16200 Addison Road, Suite 155        607 E. College St.                   12110 Carlbad Dr
Addison TX 75001-5333                Denton, TX 76209-7317                Austin TX 78738-5338


(d)Christopher J Ryan                (d)Core Laboratories LP               (u)Denmiss, LLC
Kristin McLaurin                     Attn: Dennis P Rohr, Credit Manager
Baker Hughes Oilfield Operations, Inc 6316 Windfern Road
PO Box 4740                          Houston TX 77040-4950
Houston TX 77210-4740


(d)H Miles Cohn                      (d)Hinckley Cook, PC                  (d)Integrated Fluid Systems LLC
Crain Caton & James                  5850 Town & Country Blvd             3817 NW Expressway Ste 975
1401 McKinney Street, 17th Floor     Suite 1304                           Oklahoma City OK 73112-1481
Houston TX 77010-4037                Frisco, TX 75034-6957

(u)Integrated Fluid Systems, L.L.C.

(d)Internal Revenue Service
P.O. Box 7346
Philadelphia PA 19101-7346

(d)Jim Spoonts Trust
607 E. College St.
Denton, TX 76209-7317


(d)Lide Industries, LLC
c/o John Hanson
17101 Preston Road, Suite 230
Dallas, TX 75248-1374

(d)Magnum Oil Tools International LTD
5655 Bear Lane, Suite 100
Corpus Christi TX 78405-4404

(d)Payson Petroleum LLC
dba Payson Petroleum, Inc
2652 FM 407 E, Suite 250
Argyle TX 76226-7026


(d)Payson Petroleum, Inc.
2652 FM 407 E, Suite 250
Bartonville, TX 76226-7026

(u)Ranger Consulting Company, L.L.C.

(u)Ranger Directional Services, L.L.C.


(d)Red Eagle Energy, LLC
3848 Grand Mesa Drive
Montrose, CO 81403-7117

(d)SH Productions, Inc
301 W Main Suite 600
Ardmore OK 73401-6322

(d)Jason Searcy.
P. O. Box 3929
Longview, TX 75606-3929


(d)Solari Luz LLC
PO Box 1783
El Prado NM 87529-1783

(d)Kenneth Stohner Jr.
Jackson Walker, LLP
2323 Ross Ave., Suite 600
Dallas, TX 75201-2725

(d)Wheeler, J Michael
c/o Anderson Tobin, PLLC
13355 Noel Road, Suite 1900
Dallas TX 75240-6674


End of Label Matrix
Mailable recipients   359
Bypassed recipients    27
Total                 386

# EXHIBIT A

# SETTLEMENT AGREEMENT

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of September 20, 2017 by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee for the Searcy Bankruptcy Cases, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee for the Moser Bankruptcy Cases, referred to individually herein as a "Party" and collectively as, the "Parties."

# R E C I T A L S

**WHEREAS**, Christopher J. Moser is the duly appointed Chapter 7 Trustee in the 3 Well LP Bankruptcy Case and the 2014 LP Bankruptcy Case.

**WHEREAS**, Jason R. Searcy is the duly appointed Chapter 11 Trustee in the Payson Petroleum Bankruptcy Case, the Payson Operating Bankruptcy Case and the Maricopa Bankruptcy Case.

**WHEREAS**, on or about October 10, 2013, Payson Petroleum and 3 Well LP entered into a Subscription Turn Key Agreement under which 3 Well LP agreed to pay Payson certain amounts for the drilling and completion of the Subject Wells.

**WHEREAS**, on or about January 12, 2014, Payson Petroleum and 2014 LP entered into a Subscription Turn Key Agreement under which 2014 LP agreed to pay Payson Petroleum certain amounts for the drilling and completion of the Subject Wells.

**WHEREAS**, on or about March 28, 2016, Maricopa assigned certain interests in the Subject Wells to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066. The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

**WHEREAS**, on November 1, 2016, suit was filed against 3 Well LP and 2014 LP in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) and asserts, *inter alia*, (i) breach of contract claims against 3 Well LP and 2014 LP to recover amounts owed under

the 3 Well LP Turnkey Agreement and the 2014 LP Turnkey Agreement, and (ii) fraudulent transfer and preference claims against 3 Well LP and 2014 LP (the "Adversary Proceeding").

**WHEREAS**, the Parties have agreed to resolve, compromise, and settle all claims, disputes and controversies between the Parties which have been or could have been asserted in any and all of the Bankruptcy Cases or the Adversary Proceeding in accordance with the terms set forth in this Agreement.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the Parties hereby agree as follows:

## ARTICLE 1

### Definitions

1.01    Defined Terms.  The following terms, as used in this Agreement, shall have the meanings indicated below, unless the context otherwise requires:

"**2014 LP**" means Payson Petroleum 3 Well 2014, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well 2014, L.P. and the Payson Petroleum 3 Well 2014 L.P. bankruptcy estate.

"**2014 LP Bankruptcy Case**" means Bankruptcy Case No. 17-40180 styled *In re Payson Petroleum 3 Well 2014, L.P., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**2014 LP Subject Claims Assignment and Participation Agreement**" means an agreement between 2014 LP and Payson Petroleum, substantially in the form attached hereto as **Exhibit 1**.

"**2014 LP and 3 Well LP Retained Claims**" has the meaning set forth in Section 4.04.

"**3 Well LP**" means Payson Petroleum 3 Well, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well, L.P. and the Payson Petroleum 3 Well L.P. bankruptcy estate.

"**3 Well LP Bankruptcy Case**" means Bankruptcy Case No. 17-40179 styled *In re Payson Petroleum 3 Well, L.P., Debtor,* pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**3 Well LP Subject Claims Assignment and Participation Agreement**" means an agreement between 3 Well LP and Payson Petroleum, substantially in the form attached hereto as **Exhibit 2**.

"**Agreed Final Judgment**" means an Agreed Final Judgment to be filed in the Adversary

2

Proceeding, substantially in the form attached hereto as **Exhibit 3**.

      "**Bankruptcy Cases**" means, collectively, the Payson Petroleum Bankruptcy Case, the Payson Operating Bankruptcy Case, the Maricopa Bankruptcy Case, the 3 Well LP Bankruptcy Case and the 2014 LP Bankruptcy Case.

      "**Bankruptcy Code**" means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

      "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

      "**Business Day**" means any day that is not a Saturday, Sunday, or other day on which banks are authorized or required to close pursuant to the rules and regulations of the Federal Reserve System.

      "**Closing**" shall have the meaning ascribed to it in Article 3 of this Agreement.

      "**Closing Date**" shall have the meaning ascribed to it in Article 3 of this Agreement.

      "**Direct Taxes**" means all ad valorem, property, gathering, transportation, pipeline regulating, gross receipts, windfall profit, severance, production, excise, eating content, carbon, value added, environmental, occupation, sales, use, fuel, and other taxes and governmental charges and assessments imposed on or as a result of all or any part of the Subject Wells, including any real or personal property, equipment or fixtures, to the extent used in connection with, or relating to, the Subject Wells, the Subject Hydrocarbons or the proceeds thereof. "**Direct Taxes**" do not include federal income taxes, state income taxes or franchise taxes or any penalty or interest surcharges thereon.

      "**Execution Date**" means September 20, 2017.

      "**Gas**" means natural gas and all other gaseous hydrocarbons, including casinghead gas, but excluding condensate and other liquid hydrocarbons removed by conventional mechanical field separation at the wellhead and also excluding the liquid products of any processing of Gas done prior to the sale of such Gas.

      "**Hydrocarbons**" means Gas and/or Oil.

      "**Joint Motion for Entry of Agreed Final Judgment**" shall mean the Joint Motion for Entry of Agreed Final Judgment, substantially in the form attached hereto as **Exhibit 4**.

      "**Maricopa**" means Maricopa Resources, LLC, Jason Searcy in his capacity of Chapter 11 trustee of Maricopa Resources, LLC and the Maricopa Resources, LLC bankruptcy estate.

"**Maricopa Bankruptcy Case**" means Bankruptcy Case No. 16-41043 styled *In re Maricopa Resources, LLC, Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Marketing Expenses**" mean the costs incurred in connection with the marketing and sale of the Subject Wells, including broker fees, legal fees and other expenses incurred in connection with preparation of marketing materials, negotiation of any potential sale, preparation of documents and pleadings and/or preparation and attendance at hearings.

"**Moser Bankruptcy Cases**" means the 3 Well LP Bankruptcy Case and the 2014 LP Bankruptcy Case.

"**Oil**" means crude oil, condensate and other liquid hydrocarbons, including liquid hydrocarbons removed by conventional mechanical field separation at the wellhead and also including the liquid products of any processing of Gas done prior to the sale of such Gas.

"**Operating Agreement**" means the Contract Operating Services Agreement attached here as **Exhibit 5**.

"**Operating Reserve**" means the sum of $50,000 to be used by Maricopa exclusively to satisfy Subject Wells Operating Costs incurred subsequent to the Payson Operating bankruptcy petition date.

"**Operator**" means Traton Operating Company in its capacity as Contract Operator for Payson Operating.

"**Payson Operating**" means Payson Operating, LLC, Jason Searcy in his capacity of Chapter 11 trustee of Payson Operating, LLC and the Payson Operating, LLC bankruptcy estate.

"**Payson Operating Bankruptcy Case**" means Bankruptcy Case No. 16-41045 styled *In re Payson Operating, LLC, Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Payson Petroleum**" means Payson Petroleum, Inc., Jason Searcy in his capacity of Chapter 11 trustee of Payson Petroleum, Inc. and the Payson Petroleum, Inc. bankruptcy estate.

"**Payson Petroleum Bankruptcy Case**" means Bankruptcy Case No. 16-41044 styled *In re Payson Petroleum, Inc., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Payson Petroleum, Payson Operating and Maricopa Retained Claims**" has the meaning set forth in Section 4.05.

"**Searcy Bankruptcy Cases**" means the Maricopa Bankruptcy Case, the Payson Operating Bankruptcy Case and the Payson Petroleum Bankruptcy Case.

"**Settlement Approval Orders**" means Orders, substantially in the form attached hereto as **Exhibit 6**, granting the relief requested in the Settlement Motion which is to be filed in each of the Bankruptcy Cases.

"**Settlement Motions**" means the Joint Motions for Approval of Settlement and Compromise, substantially in the form attached hereto as **Exhibit 7**, which are to be filed in each of the Bankruptcy Cases.

"**Settlement Transaction Documents**" means the Operating Agreement, Agreed Final Judgment, the Joint Motion for Entry of Agreed Final Judgment, Settlement Approval Order, Settlement Motions, 3 Well LP Subject Claims Assignment and Participation Agreement, 2014 LP Subject Claims Assignment and Participation Agreement, and any other documents and instruments entered into in connection with this Agreement.

"**Subject Wells**" mean, collectively, the William #1H (API # 181-31557), the Crowe #2 (API #181-31543), and the Elaine #1 (API #181-31547) oil and gas wells and related leasehold interests.

"**Subject Wells Account**" means a segregated account established by Jason Searcy as Chapter 11 Trustee of Maricopa at a commercial banking institution.

"**Subject Wells Assignments**" means assignments in the forms attached hereto as **Exhibit 8**.

"**Subject Wells Net Proceeds**" means the (i) Subject Wells Net Production Proceeds, plus (ii) Subject Wells Net Sales Proceeds, minus (iii) Direct Taxes and the Operating Reserve, as determined on a cumulative basis.

"**Subject Wells Net Production Proceeds**" means the amount (computed on a cumulative basis) by which the gross proceeds received by Maricopa from the sale of the Subject Wells Hydrocarbons exceeds Operating Costs, and the Operating Reserve.

"**Subject Wells Net Sales Proceeds**" means the amount by which the gross proceeds from the sale of the Subject Wells exceeds Marketing Expenses, Subject Wells Operating Costs and valid perfected liens which are not subject to avoidance pursuant to Chapter 5 of the Bankruptcy Code, as determined by an order entered in the Bankruptcy Cases.

"**Subject Wells Operating Costs**" means all expenses incurred in connection with (i) insuring, operating, producing, reworking and maintaining the Subject Wells, (ii) materials, supplies, equipment and other personal property and fixtures purchased for use and actually used on, or direction in connection with the Subject Wells, (iii) gathering, treating, processing, transportation and marketing hydrocarbons produced from the Subject Wells, (iv) plugging, abandonment and remediation (including the Operating Reserve), and (v) Operator fees and expenses related to the Subject Wells.

"**Suspended Revenues**" mean the Subject Wells Net Production Proceeds as of the

Closing Date less the Operating Reserve.

1.02 <u>Amendment of Defined Instruments</u>. Unless the context otherwise requires or unless otherwise provided herein, the terms defined in this Agreement which refer to a particular agreement, instrument or document also refer to and include all renewals, extensions, modifications, amendments and restatements of such agreement, instrument or document. Nothing contained in this Agreement will be construed to authorize any renewal, extension, modification, amendment or restatement of this Agreement or any agreement, instrument or document referred to herein.

1.03 <u>References and Titles</u>. All references in this Agreement to Exhibits, Articles, Sections, subsections and other subdivisions refer to the Exhibits, Articles, Sections, subsections and other subdivisions of this Agreement unless expressly provided otherwise. Titles appearing at the beginning of any subdivisions are for convenience only, do not constitute any part of those subdivisions and will be disregarded in construing the language contained in those subdivisions. The words "this Agreement," "this instrument," "herein," "hereof," "hereby," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited. The phrases "this section" and "this subsection" and similar phrases refer only to the sections or subsections of this Agreement in which those phrases occur. The word "or" is not exclusive; the word "including" (in its various forms) means "including without limitation." Pronouns in masculine, feminine and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires. The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless the context requires otherwise (a) any reference herein to any law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time; (b) any reference herein to any person shall be construed to include such person's successors and assigns (subject to the restrictions contained herein); (c) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including;" and (d) all dollar amounts refer to United States dollars. A reference herein to a number of "days" will be intended to refer to that number of calendar (as opposed to working) days, unless otherwise specifically provided. No provision of this Agreement or the Settlement Transaction Documents shall be interpreted or construed more strictly against any person solely because such person or its legal representative drafted such provision.

## ARTICLE 2

### Settlement Motions and Settlement Approval Orders

2.01 <u>Execution Date Deliveries</u>. On the Execution Date, each Party shall execute and deliver to the other Parties the following:

- The Settlement Motions;
- The proposed form of Settlement Approval Orders;
- The Joint Motion for Entry of Agreed Final Judgment; and

• The proposed form of Agreed Final Judgment.

2.02    Filing of Motions.  Counsel for Payson Petroleum, Payson Operating and Maricopa shall cause the Settlement Motions and proposed Settlement Approval Orders to be filed in the respective Bankruptcy Cases.  Counsel for Payson Petroleum, Payson Operating and Maricopa shall cause the Joint Motion for Entry of Agreed Final Judgment and proposed form of Agreed Final Judgment to be filed in the Adversary Proceeding.

2.03    Prosecution of Motions.  Each Party shall cooperate with the other Parties and use their good faith best efforts to support entry by the Bankruptcy Court of (i) the Settlement Approval Orders, and (ii) the Agreed Final Judgment.  The Parties stipulate that 2014 LP and 3 Well LP consent to entry of the Agreed Final Judgment is subject to Bankruptcy Court approval of the Settlement Motions.

## ARTICLE 3

## Closing

3.01    Time and Place.  The Closing on the transactions contemplated in this Agreement shall be conducted within three (3) Business Days after entry of the Settlement Approval Orders (the "Closing Date") at the office of Snow Spence Green LLP located at 2929 Allen Parkway, Suite 2800, Houston, Texas 77019 or such later date as may be agreed upon by the Parties (the "Closing").

3.02    Delivery by Maricopa to 3 Well LP.  On the Closing Date, Maricopa shall deliver to 3 Well LP the following:  (a) a sum equal to 27.79% of forty-five percent (45%) of the Suspended Revenues by wire transfer to the following account.

> BOK Financial
> 7500 College Blvd., Ste. 1450
> Overland Park, KS  66210
> ABA:  101015101
> Account Name:  Payson Petroleum 3 Well, L.P.
> Account Number:  1151505797

3.03    Delivery by Maricopa to 2014 LP.  On the Closing Date, Maricopa shall deliver to 2014 LP the following:  (a) a sum equal to 72.21% of forty-five percent (45%) of the Suspended Revenues by wire transfer to the following account.

> BOK Financial
> 7500 College Blvd., Ste. 1450
> Overland Park, KS  66210
> ABA:  101015101
> Account Name:  Payson Petroleum 3 Well 2014, L.P.
> Account Number:  1151505775

  3.04 <u>Delivery by 3 Well LP to Maricopa</u>.  On the Closing Date, 3 Well LP shall assign all right, title and interests in 55% of the Suspended Revenues and deliver to Maricopa the duly executed Subject Wells Assignments.

  3.05 <u>Delivery by 2014 LP to Maricopa</u>.  On the Closing Date, 2014 LP shall assign all right, title and interests in 55% of the Suspended Revenues and deliver to Maricopa the duly executed Subject Wells Assignments.

  3.06 <u>Delivery by 3 Well LP to Payson Petroleum</u>.  On the Closing Date, 3 Well LP shall deliver to Payson Petroleum the duly executed 3 Well LP Subject Claims Assignment and Participation Agreement.

  3.07 <u>Delivery by 2014 LP to Payson Petroleum</u>.  On the Closing Date, 2014 LP shall deliver to Payson Petroleum a duly executed 2014 LP Subject Claims Assignment and Participation Agreement.

  3.08 <u>Delivery by Payson Petroleum to 3 Well LP</u>.  On the Closing Date, Payson Petroleum shall deliver to 3 Well LP a duly executed 3 Well LP Subject Claims Assignment and Participation Agreement.

  3.09 <u>Delivery by Payson Petroleum to 2014 LP</u>.  On the Closing Date, Payson Petroleum shall deliver to 2014 LP a duly executed 2014 LP Subject Claims Assignment and Participation Agreement.

# ARTICLE 4

## Claims Stipulations and Releases

  4.01 <u>Allowed Claims of Payson Petroleum</u>.  The Parties stipulate and agree to allowance of (i) a general unsecured claim of Payson Petroleum in the 3 Well LP Bankruptcy Case in the amount of $8,557,888.50, and (ii) a general unsecured claim of Payson Petroleum in the 2014 LP Bankruptcy Case in the amount of $2,671,900.50.

  4.02 <u>Allowed Claim of 3 Well LP</u>.  The Parties stipulate and agree to allowance of a general unsecured claim of 3 Well LP in the Maricopa Bankruptcy Case in an amount equal to 27.78916% of the Subject Wells Net Proceeds actually disbursed to Maricopa pursuant to this Agreement.

  4.03 <u>Allowed Claim of 2014 LP</u>.  The Parties stipulate and agree to allowance of a general unsecured claim of 2014 LP in the Maricopa Bankruptcy Case in an amount equal to 72.21084% of the Subject Wells Net Proceeds actually disbursed to Maricopa pursuant to this Agreement.

4.04    Release by 2014 LP and 3 Well LP.  Effective as of the Closing Date, 2014 LP and 3 Well LP (except for the 2014 LP and 3 Well LP Retained Claims as defined in this section) hereby release, waive, and discharge Payson Petroleum, Payson Operating, Maricopa, the Operator and the bankruptcy estates of Payson Petroleum, Payson Operating and Maricopa, from and against any and all liabilities, claims, rights, debts, causes of action, suits, matters, issues, damages, costs, injuries and demands whatsoever, whether at law or in equity, whether by contract or tort, at law or under any statute, known or unknown, discovered or undiscovered, accrued or unaccrued, liquidated or non-liquidated, contingent or absolute, which 2014 LP and/or 3 Well LP ever had or now has, or may hereafter have, either directly or indirectly, individually, representatively, derivatively, by virtue of subrogation, or by virtue of any action, inaction, matter, event, representation or circumstances, transactions or occurrences prior to the Closing Date ("2014 LP and 3 Well LP Released Claims").  Notwithstanding the foregoing, the release provided for in this section does not extend to or include (i) allowed unsecured claims set forth in Sections 4.02 and 4.03, and (ii) the contractual obligations of Payson Petroleum, Payson Operating and Maricopa pursuant to this Agreement and the Settlement Transaction Documents ("2014 LP and 3 Well LP Retained Claims").

4.05    Release by Payson Petroleum, Payson Operating and Maricopa.  Effective as of the Closing Date, Payson Petroleum, Payson Operating and Maricopa (except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims as defined in this section), hereby release, waive, and discharge 2014 LP and 3 Well LP and the bankruptcy estates of 2014 LP and 3 Well LP, from and against any and all liabilities, claims, rights, debts, causes of action, suits, matters, issues, damages, costs, injuries and demands whatsoever, whether at law or in equity, whether by contract or tort, at law or under any statute, known or unknown, discovered or undiscovered, accrued or unaccrued, liquidated or non-liquidated, contingent or absolute, which Payson Petroleum, Payson Operating and/or Maricopa ever had or now has, or may hereafter have, by virtue of any action, inaction, matter, event, representation or circumstances, transactions or occurrences prior to the Closing Date.  Notwithstanding the foregoing, the release provided for in this section does not extend to or include (i) allowed unsecured claims set forth in Section 4.01, and (ii) the contractual obligations of 2014 LP and 3 Well LP pursuant to this Agreement and the Settlement Transaction Documents, (iii) claims and causes of action against any general partner or limited partner of 2014 LP or 3 Well LP, (iv) the Payson/3 Well LP Partnership Related Claims (as that term is defined in the 3 Well LP Subject Claims Assignment and Participation Agreement), (v) the Payson/2014 LP Partnership Related Claims (as that term is defined in the 2014 LP Subject Claims Assignment and Participation Agreement), and (vi) all rights with respect to all of the above, including as to third parties ("Payson Petroleum, Payson Operating and Maricopa Retained Claims").

# ARTICLE 5

## Operation of Subject Wells

5.01    Operator.    Traton Operating Company (an affiliate of Traton Engineering Associates, L.P.) ("Traton") shall serve as contract operator of the Subject Wells in accordance with the terms of the Operating Agreement until such time as Traton either resigns as Operator or

is removed as Operator by the unanimous decision of Maricopa, 2014 LP and 3 Well LP. Effective as of the Closing Date, 2014 LP and 3 Well LP ratify and agree to be bound by the terms of the Operating Agreement.

5.02    Operation Standards.  The Parties agree that Operator shall not be liable for any act or omission taken or omitted to be taken in its capacity as Operator of the Subject Wells, other than acts or omissions resulting from Operator's willful misconduct, gross negligence, or fraud.  The Operator may, in connection with the performance of its operation of the Subject Wells, and in its sole absolute discretion, consult with Payson Operating and/or Payson Operating's attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Operator shall be under no obligation to consult with Payson Operating and/or Payson Operating's the attorneys, accountants, or agents, and its determination to not do so shall not result in imposition of liability on the Operator unless such determination is based on willful misconduct, gross negligence, or fraud.  The bankruptcy estates of Maricopa, 3 Well LP, and 2014 LP shall, JOINTLY AND SEVERALLY, indemnify and hold harmless the Operator and his or her agents, representatives, professionals, and employees ("Operator Group") from and against and in respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to attorneys' fees and costs arising out of or due to Operator Group's actions or omissions, or consequences of such actions or omissions, with respect to the operation of the Subject Wells, irrespective of cause or negligence; provided, however, that no such indemnification will be made to the Operator Group for such actions or omissions as a result of willful misconduct, gross negligence, or fraud.

## ARTICLE 6

### Subject Wells Net Proceeds

6.01    Establishment of Accounts.  Within ten (10) Business Days following the Closing Date, Maricopa shall establish the Subject Wells Account.

6.02    Deposits into Subject Wells Account.  Except to the extent otherwise ordered by the Bankruptcy Court, Maricopa shall deposit into the Subject Wells Account (i) the gross proceeds which it receives from the sale of Hydrocarbons produced from the Subject Wells, and (ii) the Subject Wells Net Sales Proceeds.

6.03    Operating Costs.  Maricopa shall satisfy Subject Wells Operating Costs out of funds deposited in the Subject Wells Account.

6.04    Disbursement of Subject Wells Net Proceeds.  Unless otherwise ordered by the Bankruptcy Court, within forty-five (45) days of the end of each calendar quarter, the Subject Wells Net Proceeds on deposit in the Subject Wells Account shall be disbursed as follows:

(a)    55% to Maricopa;
(b)    32.4945% to 2014 LP; and

      (c)     12.5055% to 3 Well LP.

     6.05   <u>Accounting and Reporting</u>.  Within thirty (30) days of the end of each calendar month, the Operator shall provide the Parties with a report itemizing (i) Subject Wells Operating Costs and proceeds received by Maricopa from the sale of the Subject Wells Hydrocarbons, and, (ii) Marketing Expenses and, if applicable, the proceeds from the sale of the Subject Wells.

<div align="center">

**ARTICLE 7**

**<u>Marketing and Sales of Subject Wells</u>**

</div>

     7.01   <u>Covenant to Market and Sell Subject Wells</u>.  Maricopa will exert good faith commercially reasonable efforts to market and sell the Subject Wells.

     7.02   <u>Information</u>.  Maricopa will promptly provide a copy of any offer it receives to purchase the Subject Wells to 2014 LP and 3 Well LP.

     7.03   <u>Section 363 Sale</u>.  The Subject Wells will be sold by Maricopa under 11 U.S.C. § 363 pursuant to orders entered in the Bankruptcy Cases.

<div align="center">

**ARTICLE 8**

**<u>Representations and Warranties</u>**

</div>

     8.01   <u>Review and Approval</u>.  Each Party represents to the other Party that its representatives have reviewed this Agreement together with all exhibits and they (i) understand fully the terms of this Agreement and the consequences of the issuance thereof, (ii) have been afforded an opportunity to have this Agreement reviewed by legal counsel, and (iii) have entered into this Agreement of their own free will and accord and without threat or duress.

     8.02   <u>Authority</u>.  Each Party represents to the other Party that (i) the undersigned representative is fully authorized to execute this Agreement on its behalf, and (ii) upon entry of the Settlement Approval Orders, will have full authority to consummate the transactions provided for herein.

     8.03   <u>Disclaimer.</u> Each Party represents and warrants to the other Party that in executing and entering into this Agreement, it is not relying and has not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Agreement.  Each Party understands and expressly assumes the risk that any fact not recited, contained or embodied herein or therein may turn out hereafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true.

<div align="center">

11

</div>

# ARTICLE 9

## Miscellaneous

     9.01   Entire Agreement.  This Agreement, including all exhibits attached hereto and made a part hereof, constitute the entire agreement between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties with respect to such transactions.

     9.02   Survival.  All representations, warranties, covenants and agreements of the Parties made in this Agreement shall survive the execution and delivery of this Agreement until such time as all of the obligations of the signatories to such document shall have lapsed in accordance with their respective terms or shall have been discharged in full.

     9.03   Waiver.  No waiver by a Party of any of the provisions of this Agreement (a) shall be binding unless executed in writing by such party, (b) shall be deemed or shall constitute a waiver by such party of any other provision hereof (whether or not similar), and (c) shall not constitute a continuing waiver by such party.

     9.04   Further Assurances.  The Parties will take such actions and execute and deliver such other documents or agreements as may be necessary or desirable for the implementation of this Agreement and the consummation of the transactions contemplated hereby.

     9.05   Notices.  Any notice, request, consent, approval, waiver or other communication provided or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by U.S. mail, overnight courier, electronic mail or fax to the appropriate addresses set forth below.  Any such communication shall be effective upon actual receipt; provided, however, that in the case of delivery by fax after the normal business hours of the recipient, such communication shall be effective on the next business day following the transmission of such fax. For purposes of notice, the addresses of the Parties shall be as follows:

     If to Payson Petroleum, Payson Operating or Maricopa:

          Jason R. Searcy
          Searcy & Searcy, P.C.
          446 Forest Square
          Longview, Texas  75605
          Fax:  903.757.3399
          Email:  jsearcy@jsearcylaw.com

with a copy to:

Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX  77019
Fax:  713.335.4848
Email:  blakehamm@snowspencelaw.com

If to 3 Well LP or 2014 LP:

Christopher J. Moser
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Ste. 1800
Dallas, TX  75201
Fax:  214.871.2111
Email:  cmoser@qslwm.com

with a copy to:

Keith W. Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road, Ste. 280
Dallas, TX  75231
Fax:  972.241.3970
Email:  harvey@keithharveylaw.com

Each Party shall have the right, upon giving ten (10) days' prior notice to the other party in the manner provided in this section, to change its address for purposes of notice.

9.06   Governing Law and Venue.  This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, notwithstanding any applicable conflict of laws provision.  Any dispute regarding this Agreement shall be subject to mandatory venue in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

9.07   Multiple Counterparts.  The Parties agree that facsimile and electronic signatures shall have the same force and effect as original signatures.  This Agreement may be executed in counterparts and all counterparts so executed shall constitute one agreement which shall be binding on the Parties hereto.

9.08   Modification.  This Agreement cannot be altered, changed or modified except in writing executed by a duly authorized representative for each of the Parties.

9.09   Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions

13

of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner with respect to any Party. Upon determination of a court of competent jurisdiction that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the Parties as closely as possible. The obligations of the Parties hereunder are severable and not joint.

     9.10  <u>Costs and Attorneys' Fees</u>. If either Party retains an attorney in connection with any breach of this Agreement, the prevailing party is entitled to collect its reasonable costs and expenses incurred in any such suit or proceeding, including reasonable attorneys' fees.

*[Signature Pages Follow]*

14

**PAYSON PETROLEUM, INC.**

By: _____

    **Jason R. Searcy, Chapter 11 Trustee**


**PAYSON OPERATING, LLC**

By: _____

    **Jason R. Searcy, Chapter 11 Trustee**


**MARICOPA RESOURCES, LLC**

By: _____

    **Jason R. Searcy, Chapter 11 Trustee**


**PAYSON PETROLEUM 3 WELL, L.P.**


By: _____

    **Christopher J. Moser, Chapter 7 Trustee**


**PAYSON PETROLEUM 3 WELL 2014, L.P.**


By: _____

    **Christopher J. Moser, Chapter 7 Trustee**

15

PAYSON PETROLEUM, INC.

By:_____
    Jason R. Searcy, Chapter 11 Trustee

PAYSON OPERATING, LLC

By:_____
    Jason R. Searcy, Chapter 11 Trustee

MARICOPA RESOURCES, LLC

By:_____
    Jason R. Searcy, Chapter 11 Trustee

PAYSON PETROLEUM 3 WELL, L.P.

By:_____
    Christopher J. Moser, Chapter 7 Trustee

PAYSON PETROLEUM 3 WELL 2014, L.P.

By:_____
    Christopher J. Moser, Chapter 7 Trustee

15

STATE OF TEXAS        §
                      §
COUNTY OF GREGG       §

   BEFORE ME, the undersigned authority, on this _20th_ day of _September_ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON PETROLEUM, INC.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.



Notary Public in and for State of Texas
My Commission Expires: _04-14-2021_

STATE OF TEXAS        §
                      §
COUNTY OF GREGG       §

   BEFORE ME, the undersigned authority, on this _20th_ day of _September_ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON OPERATING, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.



Notary Public in and for State of Texas
My Commission Expires: _04-14-2021_

STATE OF TEXAS        §
                      §
COUNTY OF GREGG       §

   BEFORE ME, the undersigned authority, on this _20th_ day of _September_ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **MARICOPA RESOURCES, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

BETTY M. ALLEN
Notary Public, State of Texas
Comm. Expires 04-14-2021
Notary ID 7713174

Notary Public in and for State of Texas
My Commission Expires: _04-14-2021_

16

STATE OF TEXAS        §
                               §
COUNTY OF *Dallas*    §

       BEFORE ME, the undersigned authority, on this 20th day of September 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.



Notary Public in and for State of Texas
My Commission Expires: 1 - 9 - 2019

STATE OF TEXAS        §
                               §
COUNTY OF *Dallas*    §

       BEFORE ME, the undersigned authority, on this 20th day of September 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL 2014, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Notary Public in and for State of Texas
My Commission Expires: 1 - 9 - 2019

17

## EXHIBIT LIST

Exhibit 1    2014 LP Subject Claims Assignment and Participation Agreement
Exhibit 2    3 Well LP Subject Claims Assignment and Participation Agreement
Exhibit 3    Agreed Final Judgment
Exhibit 4    Joint Motion for Entry of Agreed Final Judgment
Exhibit 5    Contract Operating Services Agreement
Exhibit 6    Settlement Approval Order
Exhibit 7    Settlement Motions
Exhibit 8    Subject Wells Assignments

# EXHIBIT 1 TO SETTLEMENT AGREEMENT

# 2014 LP SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT

## SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT
### (2014 LP)

This Subject Claims Assignment and Participation Agreement (the "<u>Agreement</u>") is entered into as of _____, 2017 by and between Payson Petroleum, Inc. ("<u>Payson Petroleum</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>"), referred to individually herein as a "<u>Party</u>" and collectively as, the "<u>Parties</u>."

### R E C I T A L S

**WHEREAS**, Christopher J. Moser is the duly appointed Chapter 7 Trustee in the 2014 LP Bankruptcy Case (defined below).

**WHEREAS**, Jason R. Searcy is the duly appointed Chapter 11 Trustee in the Payson Petroleum Bankruptcy Case (defined below).

**WHEREAS**, 2014 LP and Payson Petroleum are parties to the Settlement Agreement (defined below) which provides for entry into this Agreement.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the Parties hereby agree as follows:

### ARTICLE 1

### Definitions

1.01    <u>Defined Terms</u>.  The following terms, as used in this Agreement, shall have the meanings indicated below, unless the context otherwise requires:

"**2014 LP**" means Payson Petroleum 3 Well 2014, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well 2014, L.P. and the Payson Petroleum 3 Well 2014, L.P. bankruptcy estate.

"**2014 LP Avoidance Action Claims**" means all claims and causes of action of 2014 LP arising under Chapter 5 of the Bankruptcy Code.

"**2014 LP Avoidance Action Claims Net Recovery**" means any Net Recovery for or on account of the 2014 LP Avoidance Action Claims.

"**2014 LP Bankruptcy Case**" means Bankruptcy Case No. 17-40180 styled *In re Payson Petroleum 3 Well 2014, L.P., Debtor,* pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**2014 LP Participation Interest**" means an undivided fifty percent (50%) interest.

"**2014 LP Partnership Related Claims**" means all rights, claims, causes of action and

rights of contribution of 2014 LP (independent of <u>Section 2.02</u> of this Agreement) against any current or former general partner or limited partner of 2014 LP, including but not limited to claims under 11 U.S.C. § 723.

"**<u>2014 LP Partnership Related Claims Net Recovery</u>**" means any Net Recovery for or on account of the 2014 LP Partnership Related Claims.

"**<u>Bankruptcy Code</u>**" means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

"**<u>Net Recovery</u>**" means the Recovery net of all expenses and fees (including Special Counsel fees) incurred in connection with investigation, prosecution and collection of the Subject Claims.

"**<u>Payson/2014 LP Partnership Related Claims</u>**" means all rights, claims and causes of action of Payson Petroleum (independent of <u>Section 2.01</u> of this Agreement) against any current or former general partner or limited partner of 2014 LP.

"**<u>Payson/2014 LP Partnership Related Claims Net Recovery</u>**" means the Net Recovery for and on account of the Payson/2014 LP Partnership Related Claims.

"**<u>Payson Petroleum</u>**" means Payson Petroleum, Inc., Jason Searcy in his capacity of Chapter 11 trustee of Payson Petroleum, Inc. and the Payson Petroleum, Inc. bankruptcy estate.

"**<u>Payson Petroleum Bankruptcy Case</u>**" means Bankruptcy Case No. 16-41044 styled *In re Payson Petroleum, Inc., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**<u>Payson Petroleum Participation Interest</u>**" means an undivided fifty percent (50%) interest.

"**<u>Recovery</u>**" means (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Parties for or on account of or in satisfaction or partial satisfaction thereof with respect to the Subject Claims.

"**<u>Settlement Agreement</u>**" means the Settlement Agreement entered into as of September ___, 2017 by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee for the Searcy Bankruptcy Cases, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee for the Moser Bankruptcy Cases.

"**<u>Settlement Approval Order</u>**" has the meaning defined in the Settlement Agreement.

"**<u>Special Counsel</u>**" means Snow Spence Green LLP.

"**<u>Special Counsel Engagement Agreements</u>**" means (i) the August 15, 2016 Engagement Letter Agreement by and between Snow Spence Green LLP and Jason R. Searcy, Chapter 11

Trustee of Payson Petroleum, Inc., Maricopa Resources, LLC and Payson Operating, LLC, (ii) the Engagement Letter Agreement between 2014 LP, 3 Well LP, Payson Petroleum and Snow Spence Green LLP substantially in the form of **Exhibit 1**, and (iii) the Engagement Letter Agreement between 2014 LP, Payson Petroleum and Snow Spence Green LLP in the form of **Exhibit 2**.

**"Subject Claims"** means all 2014 LP Avoidance Action Claims, all 2014 LP Partnership Related Claims and all Payson/2014 LP Partnership Related Claims.

1.02    Amendment of Defined Instruments.    Unless the context otherwise requires or unless otherwise provided herein, the terms defined in this Agreement which refer to a particular agreement, instrument or document also refer to and include all renewals, extensions, modifications, amendments and restatements of such agreement, instrument or document. Nothing contained in this Agreement will be construed to authorize any renewal, extension, modification, amendment or restatement of this Agreement or any agreement, instrument or document referred to herein.

1.03    References and Titles.    All references in this Agreement to Exhibits, Articles, Sections, subsections and other subdivisions refer to the Exhibits, Articles, Sections, subsections and other subdivisions of this Agreement unless expressly provided otherwise. Titles appearing at the beginning of any subdivisions are for convenience only, do not constitute any part of those subdivisions and will be disregarded in construing the language contained in those subdivisions. The words "this Agreement," "this instrument," "herein," "hereof," "hereby," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited. The phrases "this section" and "this subsection" and similar phrases refer only to the sections or subsections of this Agreement in which those phrases occur. The word "or" is not exclusive; the word "including" (in its various forms) means "including without limitation." Pronouns in masculine, feminine and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires. The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless the context requires otherwise (a) any reference herein to any law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time; (b) any reference herein to any person shall be construed to include such person's successors and assigns (subject to the restrictions contained herein); (c) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including;" and (d) all dollar amounts refer to United States dollars. A reference herein to a number of "days" will be intended to refer to that number of calendar (as opposed to working) days, unless otherwise specifically provided. No provision of this Agreement shall be interpreted or construed more strictly against any person solely because such person or its legal representative drafted such provision.

## ARTICLE 2

## Assignment

2.01    Assignment by 2014 LP of Participation Interest.    2014 LP hereby absolutely and unconditionally sells, transfers and assigns to Payson Petroleum, the Payson Petroleum Participation Interest in (i) the 2014 LP Avoidance Action Claims Net Recovery, and (ii) the 2014

LP Partnership Related Claims Net Recovery.

2.02    Assignment by Payson Petroleum of Participation Interest.  Payson Petroleum hereby absolutely and unconditionally sells, transfers and assigns to 2014 LP, the 2014 LP Participation Interest in the Payson/2014 LP Partnership Related Claims Net Recovery.

## ARTICLE 3

## Preservation, Prosecution and Authority

3.01    Preservation.  2014 LP retains all 2014 LP Avoidance Action Claims and all 2014 LP Partnership Related Claims subject to the Payson Petroleum Participation Interest and Payson Petroleum's rights hereunder.  Upon entry of the Settlement Approval Order in the 2014 LP Bankruptcy Case and execution of this Agreement, Payson Petroleum is vested with and may enforce and prosecute (or determine to do any of the foregoing) the 2014 LP Avoidance Action Claims and 2014 LP Partnership Related Claims without further order of the Bankruptcy Court. Payson Petroleum's right to commence, prosecute or settle 2014 LP Avoidance Action Claims and 2014 LP Partnership Related Claims shall be preserved.  No preclusion doctrine, including the doctrines of res judicata; collateral estoppel, issue preclusion, claim preclusion, estoppel shall apply to the 2014 LP Avoidance Action Claims or 2014 LP Partnership Related Claims by virtue of entry into this Agreement.  Payson Petroleum in connection with the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims shall constitute the representative of the 2014 LP bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims.

3.02    Standing.  The Parties stipulate and agree that Payson Petroleum shall have standing to assert and prosecute on behalf of 2014 LP all 2014 LP Avoidance Action Claims and all 2014 LP Partnership Related Claims.

3.03    Authority.    Subject to Section 6.01, Payson Petroleum shall have exclusive authority with respect to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  The exclusive authority of Payson Petroleum includes investigation, management and settlement of all litigation related to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.

## ARTICLE 4

## Special Counsel

4.01    Engagement of Counsel.  Snow Spence Green LLP is engaged pursuant to the Special Counsel Engagement Agreement, dated August 15, 2016 (approved by Bankruptcy Court order dated September 19, 2016), to investigate and prosecute the Payson/3Well LP Partnership Related Claims.

4.02    Engagement Agreement.  Snow Spence Green LLP (subject to Bankruptcy Court approval) is engaged to investigate and prosecute the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims pursuant to the terms of the Special Counsel Engagement Agreement attached as **Exhibit 2**.  2014 LP shall cause an order approving the engagement of Snow Spence Green LLP and the Special Counsel Engagement Agreement, attached as **Exhibit 2**, to be entered in the 2014 LP Bankruptcy Case.

## ARTICLE 5

## Application of Recoveries

5.01    Fees and Expenses.  Any Recovery shall be applied first, to satisfy fees pursuant to the Special Counsel Engagement Agreements and, second, to expenses incurred by Special Counsel and Payson Petroleum in connection with investigation, prosecution and collection of the Subject Claims.

5.02    Disbursement of Net Recoveries.  Payson Petroleum is hereby assigned and shall receive the Payson Petroleum Participation Interest in all (i) 2014 LP Partnership Related Claims Net Recoveries, (ii) 2014 LP Avoidance Action Claims Net Recoveries, and (iii) Payson/2014 LP Partnership Related Claims Net Recoveries.  2014 LP is hereby assigned and shall receive the 2014 LP Participation Interest in all (x) 2014 LP Partnership Related Claims Net Recoveries, (y) 2014 LP Avoidance Action Claims Net Recoveries, and (z) Payson/2014 LP Partnership Related Claims Net Recoveries.

## ARTICLE 6

## Miscellaneous

6.01    Settlement.  Any settlement of a Subject Claim is subject to Bankruptcy Court approval.

6.02    Discretion.  Payson Petroleum shall determine in its sole discretion the Subject Claims to investigate and prosecute.  Subsequent to October 1, 2018, Payson Petroleum shall, upon the written request of 2014 LP, release from this Agreement and assign back to 2014 LP any 2014 LP Partnership Related Claim or 2014 LP Avoidance Action Claim which Payson Petroleum which it has determined that it will not prosecute.

6.03    Indemnification.    2014 LP hereby indemnifies and holds harmless Payson Petroleum and its agents, representatives, professionals and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to its actions or omissions, or consequences of such actions or omissions, with respect to Payson Petroleum's investigation, management, prosecution or settlement of the Subject Claims; provided, however, that no such indemnification will be made to Payson Petroleum for actions or omissions resulting from willful misconduct, gross negligence or fraud.

6.04    Entire Agreement.  This Agreement, including all exhibits attached hereto and

made a part hereof, constitute the entire agreement between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties with respect to such transactions.

6.05   Survival.  All representations, warranties, covenants and agreements of the Parties made in this Agreement shall survive the execution and delivery of this Agreement until such time as all of the obligations of the signatories to such document shall have lapsed in accordance with their respective terms or shall have been discharged in full.

6.06   Waiver.  No waiver by a Party of any of the provisions of this Agreement (a) shall be binding unless executed in writing by such Party, (b) shall be deemed or shall constitute a waiver by such Party of any other provision hereof (whether or not similar), and (c) shall not constitute a continuing waiver by such Party.

6.07   Further Assurances.  The Parties will take such actions and execute and deliver such other documents or agreements as may be necessary or desirable for the implementation of this Agreement and the consummation of the transactions contemplated hereby.

6.08   Notices.  Any notice, request, consent, approval, waiver or other communication provided or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by U.S. mail, overnight courier, electronic mail or fax to the appropriate addresses set forth below.   Any such communication shall be effective upon actual receipt; provided, however, that in the case of delivery by fax after the normal business hours of the recipient, such communication shall be effective on the next business day following the transmission of such fax. For purposes of notice, the addresses of the Parties shall be as follows:

If to Payson Petroleum:

Jason R. Searcy
Searcy & Searcy, P.C.
446 Forest Square
Longview, Texas  75605
Fax:  903.757.3399
Email:  jsearcy@jsearcylaw.com

with a copy to:

Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX  77019
Fax:  713.335.4848
Email:  blakehamm@snowspencelaw.com

If to 2014 LP:

6

Christopher J. Moser
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Ste. 1800
Dallas, TX 75201
Fax: 214.871.2111
Email: cmoser@qslwm.com

with a copy to:

Keith W. Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road, Ste. 280
Dallas, TX 75231
Fax: 972.241.3970
Email: harvey@keithharveylaw.com

Each Party shall have the right, upon giving ten (10) days' prior notice to the other party in the manner provided in this section, to change its address for purposes of notice.

6.09    <u>Governing Law and Venue</u>.  This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, notwithstanding any applicable conflict of laws provision.  Any dispute regarding this Agreement shall be subject to mandatory venue in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

6.10    <u>Multiple Counterparts</u>.  The Parties agree that facsimile and electronic signatures shall have the same force and effect as original signatures.  This Agreement may be executed in counterparts and all counterparts so executed shall constitute one agreement which shall be binding on the Parties hereto.

6.11    <u>Modification</u>.  This Agreement cannot be altered, changed or modified except in writing executed by a duly authorized representative for each of the Parties.

6.12    <u>Severability</u>.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner with respect to any Party.  Upon determination of a court of competent jurisdiction that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the Parties as closely as possible.  The obligations of the Parties hereunder are severable and not joint.

6.13    <u>Costs and Attorneys' Fees</u>.  If either Party retains an attorney in connection with any default or to collect, enforce, or defend this Agreement in any lawsuit, reorganization, bankruptcy or other proceeding, the prevailing party is entitled to collect its reasonable costs and expenses incurred in any such suit or proceeding, including reasonable attorneys' fees.

*[Signature Pages Follow]*

**PAYSON PETROLEUM, INC.**


By: _____
      **Jason R. Searcy, Chapter 11 Trustee**


**PAYSON PETROLEUM 3 WELL 2014, L.P.**


By: _____
      **Christopher J. Moser, Chapter 7 Trustee**

STATE OF TEXAS       §
              §
COUNTY OF GREGG     §

   BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON PETROLEUM, INC.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.


          _____
          Notary Public in and for State of Texas
          My Commission Expires: _____


STATE OF TEXAS       §
              §
COUNTY OF _____    §

   BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 2014, L.P.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.


          _____
          Notary Public in and for State of Texas
          My Commission Expires: _____


I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\EX 1 2014 LP_SubjectClaimsAssignParticipationAgmt.docx



**EXHIBIT**
**1**

Re:     **Proposed Engagement Agreement**

**Bankruptcy Case No. 17-40179; *In re Payson Petroleum 3 Well, L.P.* in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")**

VIA EMAIL:  cmoser@qslwm.com                    VIA EMAIL:  jsearcy@jsearcylaw.com

Mr. Christopher J. Moser                                      Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.    Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800                               446 Forest Square
Dallas, TX  75201                                              Longview, TX  75605

Mr. Moser and Mr. Searcy:

      This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well, L.P. ("3 Well LP" or "Debtor").  This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval.  Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

      **Description of Engagement**.  The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 3 Well LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 3 Well LP.  The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

      a.     3 Well LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

      b.     3 Well LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 3 Well LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

      c.     objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

2929 ALLEN PARKWAY | SUITE 2800 | HOUSTON, TX 77019
MAIN: 713.335.4800 | FAX: 713.335.4848 | SNOWSPENCELAW.COM

_____, 2017

Page 2

(collectively, the "<u>Subject Matters</u>").  Claims, causes of action and/or objections with respect to a specific party are referred to as a "<u>Specific Subject Matter</u>").  SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful.  As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 3 Well LP (the "<u>3 Well LP Trustee</u>") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 3 Well LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 3 Well LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 3 Well LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters.  Client and the 3 Well LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

**<u>Legal Fees.</u>**  The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below.  The fees to be paid to SSG will be a percentage of the "<u>Recovery</u>" (as defined below) realized with respect to each Specific Subject Matter.  The Client and the 3 Well LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter. The agreed upon percentages and benchmarks are set forth below:

_____, 2017

Page 3

| Fees as a Percent of Recovery | Benchmark Event |
|---|---|
| 33% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter. |
| 35% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter. |
| 40% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order. |

The Client and the 3 Well LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 3 Well LP Trustee.

The term "Recovery" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 3 Well LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed. The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit. For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed. If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 3 Well LP with respect to the subject creditor which is released or disallowed. For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim. For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 3 Well LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.** Client and the 3 Well LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary. Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses. Such third party fees and expenses will be billed directly to Client. Client will be responsible for paying fees and expenses of third parties. In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

_____, 2017

Page 4

Client and the 3 Well LP Trustee further acknowledge that SSG will incur various expenses in providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG. Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be reimbursed by Client solely out of Recoveries.

**Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and the 3 Well LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received by Client and the 3 Well LP Trustee will be conveyed to SSG for notice purposes only.

**No settlement of any nature shall be made for the Subject Matters without the approval of Client and the United States Bankruptcy Court.** Client acknowledges that all communications from adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG, as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

**Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC* (Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well 2014, L.P.* (Bankruptcy Case No. 17-40180). While SSG does not anticipate that its prior and/or current representation of Client will adversely affect Client's or 3 Well LP Trustee's interests in the Subject Matters, applicable rules of professional conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject Matters. Client acknowledges his express and informed consent to SSG's representation of Client with respect to the Subject Matters as well as SSG's continuing representation of Client in other matters, including related matters. 3 Well LP Trustee acknowledges that he is aware that SSG represents Client in other matters, including the above-referenced related matters, and waives any conflict relating thereto.

If a controversy arises between you and any other client of SSG, SSG, after taking into account the applicable rules of professional ethics, may decline to represent you or such other client or both you and such other client. Following the conclusion of our representation of you in this matter, SSG reserves the right to represent other future clients on unrelated matters which may be adverse to your interests.

**Withdrawal/Termination of Representation.** Our representation may be terminated prior to the conclusion of the Subject Matters covered under this engagement letter by written notice to the other party. SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

**Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if appropriate), it is Client's and the 3 Well LP Trustee's obligation to advise us as to which, if any, documents

_____, 2017

Page 5

in our files they wish SSG to return.  SSG may keep copies thereof for our records to the extent we believe advisable.  SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter.  THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

**Email Communications.**  To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail.  The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents.  We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form.  The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties.  Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

**Approval of Terms of Engagement.**  If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature.  A copy of this agreement should be retained for your files.

**Bankruptcy Court Approval.  The parties acknowledge that the Bankruptcy Court must approve this agreement.**

Regards,

SNOW SPENCE GREEN LLP

By:_____
               Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:


By: _____
     Christopher J. Moser
     Chapter 7 Trustee for Payson Petroleum 3 Well, L.P.


By: _____
     Jason R. Searcy
     Chapter 11 Trustee for Payson Petroleum, Inc.


I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 1 to EX 1-3 Well LP Engagement Agreement.docx



**EXHIBIT 2**

**SNOW SPENCE GREEN LLP**

_____, 2017

VIA EMAIL:  cmoser@qslwm.com          VIA EMAIL:  jsearcy@jsearcylaw.com

Mr. Christopher J. Moser                       Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.   Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800                   446 Forest Square
Dallas, TX  75201                              Longview, TX  75605

Re:     Proposed Engagement Agreement

Bankruptcy Case No. 17-40180; *In re Payson Petroleum 3 Well 2014, L.P.* in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")

Mr. Moser and Mr. Searcy:

This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well 2014, L.P. ("2014 LP" or "Debtor").  This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval.  Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

**Description of Engagement**.  The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 2014 LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 2014 LP.  The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

a.   2014 LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

b.   2014 LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 2014 LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

c.   objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

_____, 2017

Page 2

(collectively, the "<u>Subject Matters</u>").  Claims, causes of action and/or objections with respect to a specific party are referred to as a "<u>Specific Subject Matter</u>").  SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful.  As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 2014 LP (the "<u>2014 LP Trustee</u>") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 2014 LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 2014 LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 2014 LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters.  Client and the 2014 LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

**<u>Legal Fees.</u>**  The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below.  The fees to be paid to SSG will be a percentage of the "<u>Recovery</u>" (as defined below) realized with respect to each Specific Subject Matter.  The Client and the 2014 LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter. The agreed upon percentages and benchmarks are set forth below:

_____, 2017

Page 3

<table>
<tr><td style="text-align:center">Fees as a<br>Percent of<br><u>Recovery</u></td><td style="text-align:center"><u>Benchmark Event</u></td></tr>
<tr><td style="text-align:center">33%</td><td>Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter.</td></tr>
<tr><td style="text-align:center">35%</td><td>Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter.</td></tr>
<tr><td style="text-align:center">40%</td><td>Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order.</td></tr>
</table>

The Client and the 2014 LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 2014 LP Trustee.

The term "Recovery" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 2014 LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed. The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit. For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed. If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 2014 LP with respect to the subject creditor which is released or disallowed. For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim. For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 2014 LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.** Client and the 2014 LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary. Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses. Such third party fees and expenses will be billed directly to Client. Client will be responsible for paying fees and expenses of third parties. In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

_____, 2017

Page 4


Client and the 2014 LP Trustee further acknowledge that SSG will incur various expenses in providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG. Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be reimbursed by Client solely out of Recoveries.

**Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and the 2014 LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received by Client and the 2014 LP Trustee will be conveyed to SSG for notice purposes only.

**No settlement of any nature shall be made for the Subject Matters without the approval of Client and the United States Bankruptcy Court.** Client acknowledges that all communications from adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG, as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

**Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC* (Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well, L.P.* (Bankruptcy Case No. 17-40179). While SSG does not anticipate that its prior and/or current representation of Client will adversely affect Client's or 2014 LP Trustee's interests in the Subject Matters, applicable rules of professional conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject Matters. Client acknowledges his express and informed consent to SSG's representation of Client with respect to the Subject Matters as well as SSG's continuing representation of Client in other matters, including related matters. 2014 LP Trustee acknowledges that he is aware that SSG represents Client in other matters, including the above-referenced related matters, and waives any conflict relating thereto.

If a controversy arises between you and any other client of SSG, SSG, after taking into account the applicable rules of professional ethics, may decline to represent you or such other client or both you and such other client. Following the conclusion of our representation of you in this matter, SSG reserves the right to represent other future clients on unrelated matters which may be adverse to your interests.

**Withdrawal/Termination of Representation.** Our representation may be terminated prior to the conclusion of the Subject Matters covered under this engagement letter by written notice to the other party. SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

**Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if appropriate), it is Client's and the 2014 LP Trustee's obligation to advise us as to which, if any, documents in our files they wish SSG to return. SSG may keep copies thereof for our records to the extent we believe

_____, 2017

Page 5

advisable.  SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter.  THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

       **Email Communications.**  To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail.  The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents.  We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form.  The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties.  Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

       **Approval of Terms of Engagement.**  If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature.  A copy of this agreement should be retained for your files.

       **Bankruptcy Court Approval.**  **The parties acknowledge that the Bankruptcy Court must approve this agreement.**

       Regards,

       SNOW SPENCE GREEN LLP

       By:_____
           Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:

By: _____
     Christopher J. Moser
     Chapter 7 Trustee for Payson Petroleum 3 Well 2014, L.P.

By: _____
     Jason R. Searcy
     Chapter 11 Trustee for Payson Petroleum, Inc.

# EXHIBIT 2 TO SETTLEMENT AGREEMENT

# 3 WELL LP SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT

## <u>SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT</u>
(3 Well LP)

This Subject Claims Assignment and Participation Agreement (the "<u>Agreement</u>") is entered into as of _____, 2017 by and between Payson Petroleum, Inc. ("<u>Payson Petroleum</u>") and Payson Petroleum 3 Well, L.P. ("<u>3 Well LP</u>"), referred to individually herein as a "<u>Party</u>" and collectively as, the "<u>Parties</u>."

## R E C I T A L S

**WHEREAS**, Christopher J. Moser is the duly appointed Chapter 7 Trustee in the 3 Well LP Bankruptcy Case (defined below).

**WHEREAS**, Jason R. Searcy is the duly appointed Chapter 11 Trustee in the Payson Petroleum Bankruptcy Case (defined below).

**WHEREAS**, 3 Well LP and Payson Petroleum are parties to the Settlement Agreement (defined below) which provides for entry into this Agreement.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the Parties hereby agree as follows:

## ARTICLE 1

## <u>Definitions</u>

1.01  <u>Defined Terms</u>.  The following terms, as used in this Agreement, shall have the meanings indicated below, unless the context otherwise requires:

"**<u>3 Well LP</u>**" means Payson Petroleum 3 Well, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well, L.P. and the Payson Petroleum 3 Well L.P. bankruptcy estate.

"**<u>3 Well LP Avoidance Action Claims</u>**" means all claims and causes of action of 3 Well LP arising under Chapter 5 of the Bankruptcy Code.

"**<u>3 Well LP Avoidance Action Claims Net Recovery</u>**" means any Net Recovery for or on account of the 3 Well LP Avoidance Action Claims.

"**<u>3 Well LP Bankruptcy Case</u>**" means Bankruptcy Case No. 17-40179 styled *In re Payson Petroleum 3 Well, L.P., Debtor,* pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**<u>3 Well LP Participation Interest</u>**" means an undivided fifty percent (50%) interest.

"**<u>3 Well LP Partnership Related Claims</u>**" means all rights, claims, causes of action and

rights of contribution of 3 Well LP (independent of Section 2.02 of this Agreement) against any current or former general partner or limited partner of 3 Well LP, including but not limited to claims under 11 U.S.C. § 723.

"**3 Well LP Partnership Related Claims Net Recovery**" means any Net Recovery for or on account of the 3 Well LP Partnership Related Claims.

"**Bankruptcy Code**" means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

"**Net Recovery**" means the Recovery net of all expenses and fees (including Special Counsel fees) incurred in connection with investigation, prosecution and collection of the Subject Claims.

"**Payson/3 Well LP Partnership Related Claims**" means all rights, claims and causes of action of Payson Petroleum (independent of Section 2.01 of this Agreement) against any current or former general partner or limited partner of 3 Well LP.

"**Payson/3 Well LP Partnership Related Claims Net Recovery**" means the Net Recovery for and on account of the Payson/3 Well LP Partnership Related Claims.

"**Payson Petroleum**" means Payson Petroleum, Inc., Jason Searcy in his capacity of Chapter 11 trustee of Payson Petroleum, Inc. and the Payson Petroleum, Inc. bankruptcy estate.

"**Payson Petroleum Bankruptcy Case**" means Bankruptcy Case No. 16-41044 styled *In re Payson Petroleum, Inc., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Payson Petroleum Participation Interest**" means an undivided fifty percent (50%) interest.

"**Recovery**" means (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Parties for or on account of or in satisfaction or partial satisfaction thereof with respect to the Subject Claims.

"**Settlement Agreement**" means the Settlement Agreement entered into as of August ___, 2017 by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee for the Searcy Bankruptcy Cases, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee for the Moser Bankruptcy Cases.

"**Settlement Approval Order**" has the meaning defined in the Settlement Agreement.

"**Special Counsel**" means Snow Spence Green LLP.

"**Special Counsel Engagement Agreements**" means (i) the August 15, 2016 Engagement

2

Letter Agreement by and between Snow Spence Green LLP and Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., Maricopa Resources, LLC and Payson Operating, LLC, (ii) the Engagement Letter Agreement between 2014 LP, 3 Well LP, Payson Petroleum and Snow Spence Green LLP substantially in the form of **Exhibit 1**, and (iii) the Engagement Letter Agreement between 2014 LP, Payson Petroleum and Snow Spence Green LLP in the form of **Exhibit 2**.

**"Subject Claims"** means all 3 Well LP Avoidance Action Claims, all 3 Well LP Partnership Related Claims and all Payson/3 Well LP Partnership Related Claims.

1.02    Amendment of Defined Instruments.  Unless the context otherwise requires or unless otherwise provided herein, the terms defined in this Agreement which refer to a particular agreement, instrument or document also refer to and include all renewals, extensions, modifications, amendments and restatements of such agreement, instrument or document.  Nothing contained in this Agreement will be construed to authorize any renewal, extension, modification, amendment or restatement of this Agreement or any agreement, instrument or document referred to herein.

1.03    References and Titles.  All references in this Agreement to Exhibits, Articles, Sections, subsections and other subdivisions refer to the Exhibits, Articles, Sections, subsections and other subdivisions of this Agreement unless expressly provided otherwise.  Titles appearing at the beginning of any subdivisions are for convenience only, do not constitute any part of those subdivisions and will be disregarded in construing the language contained in those subdivisions. The words "this Agreement," "this instrument," "herein," "hereof," "hereby," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.  The phrases "this section" and "this subsection" and similar phrases refer only to the sections or subsections of this Agreement in which those phrases occur.  The word "or" is not exclusive; the word "including" (in its various forms) means "including without limitation."  Pronouns in masculine, feminine and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires.  The word "will" shall be construed to have the same meaning and effect as the word "shall."  Unless the context requires otherwise (a) any reference herein to any law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time; (b) any reference herein to any person shall be construed to include such person's successors and assigns (subject to the restrictions contained herein); (c) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including;" and (d) all dollar amounts refer to United States dollars.  A reference herein to a number of "days" will be intended to refer to that number of calendar (as opposed to working) days, unless otherwise specifically provided.  No provision of this Agreement shall be interpreted or construed more strictly against any person solely because such person or its legal representative drafted such provision.

## ARTICLE 2

## Assignment

2.01    Assignment by 3 Well LP of Participation Interest. 3 Well LP hereby absolutely and unconditionally sells, transfers and assigns to Payson Petroleum, the Payson Petroleum

Participation Interest in (i) the 3 Well LP Avoidance Action Claims Net Recovery, and (ii) the 3 Well LP Partnership Related Claims Net Recovery.

2.02    <u>Assignment by Payson Petroleum of Participation Interest</u>.    Payson Petroleum hereby absolutely and unconditionally sells, transfers and assigns to 3 Well LP, the 3 Well LP Participation Interest in the Payson/3 Well LP Partnership Related Claims Net Recovery.

# ARTICLE 3

## Preservation, Prosecution and Authority

3.01    <u>Preservation</u>.    3 Well LP retains all 3 Well LP Avoidance Action Claims and all 3 Well LP Partnership Related Claims subject to the Payson Petroleum Participation Interest and Payson Petroleum's rights hereunder.    Upon entry of the Settlement Approval Order in the 3 Well LP Bankruptcy Case and execution of this Agreement, Payson Petroleum is vested with and may enforce and prosecute (or determine to do any of the foregoing) the 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims without further order of the Bankruptcy Court. Payson Petroleum's right to commence, prosecute or settle 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims shall be preserved.    No preclusion doctrine, including the doctrines of res judicata; collateral estoppel, issue preclusion, claim preclusion, estoppel shall apply to the 3 Well LP Avoidance Action Claims or 3 Well LP Partnership Related Claims by virtue of entry into this Agreement.    Payson Petroleum in connection with the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims shall constitute the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims.

3.02    <u>Standing</u>.    The Parties stipulate and agree that Payson Petroleum shall have standing to assert and prosecute on behalf of 3 Well LP all 3 Well LP Avoidance Action Claims and all 3 Well LP Partnership Related Claims.

3.03    <u>Authority</u>.    Subject to <u>Section 6.01</u>, Payson Petroleum shall have exclusive authority with respect to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3Well LP Partnership Related Claims.    The exclusive authority of Payson Petroleum includes investigation, management and settlement of all litigation related to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.

# ARTICLE 4

## Special Counsel

4.01    <u>Engagement of Counsel</u>.    Snow Spence Green LLP is engaged pursuant to the Special Counsel Engagement Agreement, dated August 15, 2016 (approved by Bankruptcy Court order dated September 19, 2016), to investigate and prosecute the Payson/3Well LP Partnership Related Claims.

4.02    Engagement Agreement.  Snow Spence Green LLP (subject to Bankruptcy Court approval) is engaged to investigate and prosecute the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims pursuant to the terms of the Special Counsel Engagement Agreement attached as **Exhibit 1**.  3 Well LP shall cause an order approving the engagement of Snow Spence Green LLP and the Special Counsel Engagement Agreement, attached as **Exhibit 1**, to be entered in the 3 Well LP Bankruptcy Case.

# ARTICLE 5

## Application of Recoveries

5.01    Fees and Expenses.  Any Recovery shall be applied first, to satisfy fees pursuant to the Special Counsel Engagement Agreements and, second, to expenses incurred by Special Counsel and Payson Petroleum in connection with investigation, prosecution and collection of the Subject Claims.

5.02    Disbursement of Net Recoveries.  Payson Petroleum is hereby assigned and shall receive the Payson Petroleum Participation Interest in all (i) 3 Well LP Partnership Related Claims Net Recoveries, (ii) 3 Well LP Avoidance Action Claims Net Recoveries, and (iii) Payson/3 Well LP Partnership Related Claims Net Recoveries.  3 Well LP is hereby assigned and shall receive the 3 Well LP Participation Interest in all (x) 3 Well LP Partnership Related Claims Net Recoveries, (y) 3 Well LP Avoidance Action Claims Net Recoveries, and (z) Payson/3 Well LP Partnership Related Claims Net Recoveries.

# ARTICLE 6

## Miscellaneous

6.01    Settlement.  Any settlement of a Subject Claim is subject to Bankruptcy Court approval.

6.02    Discretion.  Payson Petroleum shall determine in its sole discretion the Subject Claims to investigate and prosecute.  Subsequent to October 1, 2018, Payson Petroleum shall, upon the written request of 3 Well LP, release from this Agreement and assign back to 3 Well LP any 3 Well LP Partnership Related Claim or 3 Well LP Avoidance Action Claim which Payson Petroleum which it has determined that it will not prosecute.

6.03    Indemnification.  3 Well LP hereby indemnifies and holds harmless Payson Petroleum and its agents, representatives, professionals and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to its actions or omissions, or consequences of such actions or omissions, with respect to Payson Petroleum's investigation, management, prosecution or settlement of the Subject Claims; provided, however, that no such indemnification will be made to Payson Petroleum for actions or omissions resulting from willful misconduct, gross negligence or fraud.

6.04     Entire Agreement.  This Agreement, including all exhibits attached hereto and made a part hereof, constitute the entire agreement between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties with respect to such transactions.

6.05     Survival.  All representations, warranties, covenants and agreements of the Parties made in this Agreement shall survive the execution and delivery of this Agreement until such time as all of the obligations of the signatories to such document shall have lapsed in accordance with their respective terms or shall have been discharged in full.

6.06     Waiver.  No waiver by a Party of any of the provisions of this Agreement (a) shall be binding unless executed in writing by such Party, (b) shall be deemed or shall constitute a waiver by such Party of any other provision hereof (whether or not similar), and (c) shall not constitute a continuing waiver by such Party.

6.07     Further Assurances.  The Parties will take such actions and execute and deliver such other documents or agreements as may be necessary or desirable for the implementation of this Agreement and the consummation of the transactions contemplated hereby.

6.08     Notices.  Any notice, request, consent, approval, waiver or other communication provided or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by U.S. mail, overnight courier, electronic mail or fax to the appropriate addresses set forth below.  Any such communication shall be effective upon actual receipt; provided, however, that in the case of delivery by fax after the normal business hours of the recipient, such communication shall be effective on the next business day following the transmission of such fax. For purposes of notice, the addresses of the Parties shall be as follows:

If to Payson Petroleum:

Jason R. Searcy
Searcy & Searcy, P.C.
446 Forest Square
Longview, Texas  75605
Fax:   903.757.3399
Email:  jsearcy@jsearcylaw.com

with a copy to:

Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX  77019
Fax:  713.335.4848
Email:  blakehamm@snowspencelaw.com

If to 3 Well LP:

6

Christopher J. Moser
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Ste. 1800
Dallas, TX 75201
Fax: 214.871.2111
Email: cmoser@qslwm.com

with a copy to:

Keith W. Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road, Ste. 280
Dallas, TX 75231
Fax: 972.241.3970
Email: harvey@keithharveylaw.com

Each Party shall have the right, upon giving ten (10) days' prior notice to the other party in the manner provided in this section, to change its address for purposes of notice.

6.09    <u>Governing Law and Venue</u>.  This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, notwithstanding any applicable conflict of laws provision.  Any dispute regarding this Agreement shall be subject to mandatory venue in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

6.10    <u>Multiple Counterparts</u>.  The Parties agree that facsimile and electronic signatures shall have the same force and effect as original signatures.  This Agreement may be executed in counterparts and all counterparts so executed shall constitute one agreement which shall be binding on the Parties hereto.

6.11    <u>Modification</u>.  This Agreement cannot be altered, changed or modified except in writing executed by a duly authorized representative for each of the Parties.

6.12    <u>Severability</u>.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner with respect to any Party.  Upon determination of a court of competent jurisdiction that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the Parties as closely as possible.  The obligations of the Parties hereunder are severable and not joint.

6.13    <u>Costs and Attorneys' Fees</u>.  If either Party retains an attorney in connection with any default or to collect, enforce, or defend this Agreement in any lawsuit, reorganization, bankruptcy or other proceeding, the prevailing party is entitled to collect its reasonable costs and expenses incurred in any such suit or proceeding, including reasonable attorneys' fees.

7

*[Signature Pages Follow]*

**PAYSON PETROLEUM, INC.**


By:_____

      Jason R. Searcy, Chapter 11 Trustee


**PAYSON PETROLEUM 3 WELL, L.P.**


By:_____

      Christopher J. Moser, Chapter 7 Trustee

STATE OF TEXAS       §
                                §
COUNTY OF GREGG       §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON PETROLEUM, INC.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

                             _____
                             Notary Public in and for State of Texas
                             My Commission Expires: _____

STATE OF TEXAS       §
                                  §
COUNTY OF _____       §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

                             _____
                             Notary Public in and for State of Texas
                             My Commission Expires: _____

**I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement\Ex 2 3 Well LP Subject Claims Assign-Participation Agmt\20170905 3WellLP_SubjectClaimsAssignParticipationAgmt.docx**





_____, 2017

VIA EMAIL:  cmoser@qslwm.com       VIA EMAIL:  jsearcy@jsearcylaw.com

Mr. Christopher J. Moser              Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.   Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800           446 Forest Square
Dallas, TX  75201                 Longview, TX  75605

     **Re:**     **Proposed Engagement Agreement**

            **Bankruptcy Case No. 17-40179;** *In re Payson Petroleum 3 Well, L.P.* **in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")**

Mr. Moser and Mr. Searcy:

     This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well, L.P. ("3 Well LP" or "Debtor").  This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval.  Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

     **Description of Engagement**.  The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 3 Well LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 3 Well LP.  The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

     a.     3 Well LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

     b.     3 Well LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 3 Well LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

     c.     objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

_____, 2017

Page 2

(collectively, the "Subject Matters"). Claims, causes of action and/or objections with respect to a specific party are referred to as a "Specific Subject Matter"). SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful. As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 3 Well LP (the "3 Well LP Trustee") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 3 Well LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 3 Well LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 3 Well LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters. Client and the 3 Well LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

**Legal Fees.** The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below. The fees to be paid to SSG will be a percentage of the "Recovery" (as defined below) realized with respect to each Specific Subject Matter. The Client and the 3 Well LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter. The agreed upon percentages and benchmarks are set forth below:

_____, 2017

Page 3

| Fees as a Percent of Recovery | Benchmark Event |
|---|---|
| 33% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter. |
| 35% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter. |
| 40% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order. |

The Client and the 3 Well LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 3 Well LP Trustee.

The term "Recovery" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 3 Well LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed. The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit. For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed. If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 3 Well LP with respect to the subject creditor which is released or disallowed. For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim. For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 3 Well LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.** Client and the 3 Well LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary. Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses. Such third party fees and expenses will be billed directly to Client. Client will be responsible for paying fees and expenses of third parties. In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

_____, 2017

Page 4

Client and the 3 Well LP Trustee further acknowledge that SSG will incur various expenses in providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG. Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be reimbursed by Client solely out of Recoveries.

**Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and the 3 Well LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received by Client and the 3 Well LP Trustee will be conveyed to SSG for notice purposes only.

**No settlement of any nature shall be made for the Subject Matters without the approval of Client and the United States Bankruptcy Court.** Client acknowledges that all communications from adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG, as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

**Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC* (Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well 2014, L.P.* (Bankruptcy Case No. 17-40180). While SSG does not anticipate that its prior and/or current representation of Client will adversely affect Client's or 3 Well LP Trustee's interests in the Subject Matters, applicable rules of professional conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject Matters. Client acknowledges his express and informed consent to SSG's representation of Client with respect to the Subject Matters as well as SSG's continuing representation of Client in other matters, including related matters. 3 Well LP Trustee acknowledges that he is aware that SSG represents Client in other matters, including the above-referenced related matters, and waives any conflict relating thereto.

If a controversy arises between you and any other client of SSG, SSG, after taking into account the applicable rules of professional ethics, may decline to represent you or such other client or both you and such other client. Following the conclusion of our representation of you in this matter, SSG reserves the right to represent other future clients on unrelated matters which may be adverse to your interests.

**Withdrawal/Termination of Representation.** Our representation may be terminated prior to the conclusion of the Subject Matters covered under this engagement letter by written notice to the other party. SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

**Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if appropriate), it is Client's and the 3 Well LP Trustee's obligation to advise us as to which, if any, documents

_____, 2017

Page 5

in our files they wish SSG to return.  SSG may keep copies thereof for our records to the extent we believe advisable.  SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter.  THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

**Email Communications.**  To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail.  The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents.  We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form.  The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties.  Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

**Approval of Terms of Engagement.**  If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature.  A copy of this agreement should be retained for your files.

**Bankruptcy Court Approval.  The parties acknowledge that the Bankruptcy Court must approve this agreement.**

Regards,

SNOW SPENCE GREEN LLP

By:_____
      Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:

By:  _____
      Christopher J. Moser
      Chapter 7 Trustee for Payson Petroleum 3 Well, L.P.

By:  _____
      Jason R. Searcy
      Chapter 11 Trustee for Payson Petroleum, Inc.

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 2 3 Well LP Subject Claims Assign-Participation Agmt\Ex 1 to E20170905 3 Well LP Engagement Agreement.docx





_____, 2017

VIA EMAIL:  cmoser@qslwm.com                    VIA EMAIL:  jsearcy@jsearcylaw.com

Mr. Christopher J. Moser                          Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.   Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800                      446 Forest Square
Dallas, TX  75201                                 Longview, TX  75605

Re:      Proposed Engagement Agreement

Bankruptcy Case No. 17-40180; *In re Payson Petroleum 3 Well 2014, L.P.* in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")

Mr. Moser and Mr. Searcy:

This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well 2014, L.P. ("2014 LP" or "Debtor").  This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval.  Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

**Description of Engagement**.  The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 2014 LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 2014 LP.  The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

a.       2014 LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

b.       2014 LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 2014 LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

c.       objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

_____, 2017

Page 2

(collectively, the "<u>Subject Matters</u>").  Claims, causes of action and/or objections with respect to a specific party are referred to as a "<u>Specific Subject Matter</u>").  SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful.  As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 2014 LP (the "<u>2014 LP Trustee</u>") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 2014 LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 2014 LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 2014 LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters.  Client and the 2014 LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

<u>Legal Fees.</u>  The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below.  The fees to be paid to SSG will be a percentage of the "<u>Recovery</u>" (as defined below) realized with respect to each Specific Subject Matter.  The Client and the 2014 LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter. The agreed upon percentages and benchmarks are set forth below:

_____, 2017

Page 3

| Fees as a Percent of Recovery | Benchmark Event |
|---|---|
| 33% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter. |
| 35% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter. |
| 40% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order. |

The Client and the 2014 LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 2014 LP Trustee.

The term "Recovery" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 2014 LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed. The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit. For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed. If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 2014 LP with respect to the subject creditor which is released or disallowed. For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim. For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 2014 LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.** Client and the 2014 LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary. Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses. Such third party fees and expenses will be billed directly to Client. Client will be responsible for paying fees and expenses of third parties. In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

_____, 2017

Page 4

Client and the 2014 LP Trustee further acknowledge that SSG will incur various expenses in providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG. Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be reimbursed by Client solely out of Recoveries.

**Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and the 2014 LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received by Client and the 2014 LP Trustee will be conveyed to SSG for notice purposes only.

**No settlement of any nature shall be made for the Subject Matters without the approval of Client and the United States Bankruptcy Court.** Client acknowledges that all communications from adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG, as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

**Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC* (Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well, L.P.* (Bankruptcy Case No. 17-40179). While SSG does not anticipate that its prior and/or current representation of Client will adversely affect Client's or 2014 LP Trustee's interests in the Subject Matters, applicable rules of professional conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject Matters. Client acknowledges his express and informed consent to SSG's representation of Client with respect to the Subject Matters as well as SSG's continuing representation of Client in other matters, including related matters. 2014 LP Trustee acknowledges that he is aware that SSG represents Client in other matters, including the above-referenced related matters, and waives any conflict relating thereto.

If a controversy arises between you and any other client of SSG, SSG, after taking into account the applicable rules of professional ethics, may decline to represent you or such other client or both you and such other client. Following the conclusion of our representation of you in this matter, SSG reserves the right to represent other future clients on unrelated matters which may be adverse to your interests.

**Withdrawal/Termination of Representation.** Our representation may be terminated prior to the conclusion of the Subject Matters covered under this engagement letter by written notice to the other party. SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

**Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if appropriate), it is Client's and the 2014 LP Trustee's obligation to advise us as to which, if any, documents in our files they wish SSG to return. SSG may keep copies thereof for our records to the extent we believe

_____, 2017

Page 5

advisable.  SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter.  THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

 **Email Communications.**  To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail.  The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents.  We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form.  The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties.  Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

 **Approval of Terms of Engagement.**  If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature.  A copy of this agreement should be retained for your files.

 **Bankruptcy Court Approval.  The parties acknowledge that the Bankruptcy Court must approve this agreement.**

     Regards,

     SNOW SPENCE GREEN LLP

     By:_____
       Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:


By: _____
  Christopher J. Moser
  Chapter 7 Trustee for Payson Petroleum 3 Well 2014, L.P.


By: _____
  Jason R. Searcy
  Chapter 11 Trustee for Payson Petroleum, Inc.

# EXHIBIT 3 TO SETTLEMENT AGREEMENT

# AGREED FINAL JUDGMENT

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | JOINTLY ADMINISTERED |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

---

| | | |
|---|---|---|
| JASON R. SEARCY, | § | |
| CHAPTER 11 TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adversary No. 16-04106 |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P. | § | |
| & PAYSON PETROLEUM 3 WELL | § | |
| 2014, L.P., | § | |
| | § | |
| Defendants. | § | |

## AGREED FINAL JUDGMENT

ON THIS DATE, came on to be considered the above-entitled and numbered cause wherein Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 is the "Plaintiff" and Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. are the "Defendants."

After considering the Joint Motion for Entry of Agreed Final Judgment (the "Motion") filed by Plaintiff and Defendants, other pleadings on file, and argument of the parties, if any, the Court hereby finds that the Motion should be granted. The Court further finds that:

- Payson Petroleum 3 Well, L.P. ("3 Well LP") owes Payson Petroleum, Inc.

1

("Payson Petroleum") the sum of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) under that certain October 10, 2013 Subscription Turn Key Agreement between 3 Well LP and Payson Petroleum (the "3 Well LP Turnkey Agreement");

• Payson Petroleum 3 Well 2014, L.P. ("2014 LP") owes Payson Petroleum the sum of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) under that certain January 12, 2014 Subscription Turn Key Agreement between 2014 LP and Payson Petroleum (the "2014 LP Turnkey Agreement");

• On or about Marcy 28, 2016, Maricopa Resources, LLC ("Maricopa") assigned certain interests in the William #1H (API # 181-31557), the Crowe #2 (API #181-31543), and the Elaine #1 (API #181-31547) (collectively the "Subject Wells") oil and gas wells and related leaseholds to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066 and are attached hereto as **Exhibit 1** (the "Avoidable Assignments"); and

• Maricopa made the Avoidable Assignments during the 90-day period preceding the filing of Maricopa's bankruptcy petition, while Maricopa was not solvent, in furtherance of a fraudulent scheme which defrauded Maricopa's creditors, and without receiving reasonably equivalent value in return from 3 Well LP or 2014 LP and, therefore, that the Avoidable Assignments may be avoided pursuant to 11 U.S.C. § 548(a)(1)(A) & (B).

It is therefore ORDERED, ADJUDGED, AND DECREED that the Motion is Granted;

It is further ORDERED, ADJUDGED, AND DECREED that the Avoidable Assignments are constructive and actual fraudulent transfers of the interests set forth therein and are hereby

2

avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B);

It is further ORDERED, ADJUDGED, AND DECREED that **Final Judgment** is hereby granted in favor of:

- Payson Petroleum against 3 Well LP in the amount of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement;

- Payson Petroleum against 2014 LP in the principal amount of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement;

- Maricopa against 3 Well LP for the interests transferred to 3 Well LP via the Avoidable Assignments and/or the value thereof; and

- Maricopa against 2014 LP for the interests transferred to 2014 LP via the Avoidable Assignments and/or the value thereof.

It is further ORDERED, ADJUDGED, AND DECREED that:

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40179 in the amount of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement; and

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40180 in the amount of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement.

**This is a Final Judgment. All relief not ordered herein is expressly denied.**

**SUBMITTED BY:**

/s/
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

**AGREED AS TO FORM AND SUBSTANCE:**


/s/
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**


/s/
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P. AND PAYSON PETROLEUM 3 WELL 2014, L.P.**



**EXHIBIT**

**1**

## Grayson County
## Wilma Bush
## Grayson County Clerk
### Sherman, Texas 75090



70 2016 00006064

---

### Instrument Number: 2016-00006064

As

**Recordings**

**Recorded On:** March 28, 2016

**Parties:** MARICOPA RESOURCES LLC

**To** PAYSON PETROLEUM 3 WELL 2014 LP ETAL

**Billable Pages: 6**

**Number of Pages: 8**

**Comment:** ASSIGN

( Parties listed above are for Clerks reference only )

---

**\*\* Examined and Charged as Follows: \*\***

Recordings                              36.00

   **Total Recording:**          **36.00**

---

\*\*\*\*\*\*\*\*\*\*\*\*  **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT**  \*\*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

   Document Number: 2016-00006064

   Receipt Number: 447187

   Recorded Date/Time: March 28, 2016  12:09:45P

   Book-Vol/Pg: BK-OR  VL-5779  PG-389

   User / Station: G WHITE - Cashiering Station 1

**Record and Return To:**

   PAYSON PETROLEUM

   2652 FM 407 E #250

   BARTONVILLE TX 76226

---

THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GRAYSON | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.          an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.          an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective August 1, 2015 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – William #1H, dated August 15, 2014, by Maricopa Resources LLC, and recorded in Volume 5650, Page 778 of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

## ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the "Assets":

a.     The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX), collectively referred to in this Assignment as the ("Well").

b.　　The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.　　All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.　　All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.　　All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.　　<u>Excluded Assets</u>.　The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"): all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.　　<u>Operations</u>.　Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a depth not greater than the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX and plug and abandon the Well. Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.　　<u>Real property warranty</u>. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.　　<u>Assignees' Assumption of Liabilities and Obligations</u>.　Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations". The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 2

5.    <u>Indemnification</u>.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6.    <u>Royalty Payments</u>.  Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims.  Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7.    <u>Indemnification Claims</u>.  With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.  Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities.  All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8.    <u>Transfer Taxes and Recording Fees</u>.  Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9.    <u>Government Assignment Forms</u>.  Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements.  Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment.  The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10.    <u>No Third Party Beneficiaries</u>.  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11.    <u>Successors and Assigns</u>.  This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this **23rd** day of **March** 2016.


**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _William C. Griffin_
William C. Griffin, Secretary


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

ASSIGNEE:

PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

00006064     Bk    Vol    Pg
OR    5779    393


ASSIGNEE:

PAYSON PETROLEUM 3 WELL, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1.  The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX).

2.  Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the William # 1H Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|--------|--------|--------|--------|------|------|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensty, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981 | 402 | 2/1/2011 |

| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418 | 520 | 2/1/2008 |
|---------|--------------------------------------------------------------------------------|--------------------|------|-----|----------|
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980 | 156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296 | 513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296 | 506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980 | 140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760 | 92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760 | 88 | 3/6/2007 |
| Grayson | Gary Wayne Odle, dealing in his sole and separate property | Matthew Avery | 4296 | 493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760 | 92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983 | 321 | 4/10/2011 |
| Grayson | Vurlas Lane Wilson, a/k/a Verlas Lane Wilson and Marjorie Marie Wilson H/W | Matthew Avery | 4296 | 469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993 | 305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo, a married woman dealing in her sole and separate property | Matthew Avery | 4980 | 144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296 | 457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the James M Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297 | 46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296 | 461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296 | 449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296 | 466 | 6/27/2007 |
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296 | 454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo and Marty J. Garofalo, wife and husband | Matthew Avery | 4296 | 445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355 | 704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274 | 698 | 3/15/2013 |
| Grayson | PCB Trust, Philip C. Brown, Trustee, and Philip Charles Brown | Paradise Springs, LLC | 5274 | 701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367 | 400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002 | 826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002 | 830 | 8/21/2011 |
| Grayson | Philip C Brown, a/ka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002 | 834; 838 | 8/21/2011 |

*END OF EXHIBIT "A"*

# Grayson County
## Wilma Bush
## Grayson County Clerk
### Sherman, Texas 75090



70 2016 00006066

---

**Instrument Number: 2016-00006066**

As
**Recordings**

**Recorded On:** March 28, 2016

**Parties:** MARICOPA RESOURCES LLC

**To** PAYSON PETROLEUM 3 WELL 2014 LP ETAL

**Billable Pages: 5**

**Number of Pages: 7**

**Comment:** ASSIGN

*( Parties listed above are for Clerks reference only )*

---

**\*\* Examined and Charged as Follows: \*\***

Recordings                     32.00

**Total Recording:**          **32.00**

---

\*\*\*\*\*\*\*\*\*\*\* **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** \*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

Document Number: 2016-00006066

Receipt Number: 447187

Recorded Date/Time: March 28, 2016 12:09:45P

Book-Vol/Pg: BK-OR  VL-5779  PG-404

User / Station: G WHITE - Cashiering Station 1

**Record and Return To:**

PAYSON PETROLEUM

2652 FM 407 E #250

BARTONVILLE TX 76226

---



THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GRAYSON | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

| | |
|---|---|
| Payson Petroleum 3 Well 2014, L.P. | an undivided 72.210840% |
| 2652 FM 407 E #250 | |
| Bartonville, Texas 76226 | |
| | |
| Payson Petroleum 3 Well, L.P. | an undivided 27.789160% |
| 2652 FM 407 E #250 | |
| Bartonville, Texas 76226 | |

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective April 9, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Assignment of Oil and Gas Leases, dated November 23, 2010, entered into between Atoka Operating, Inc. and Barber Exploration Company, and recorded in Volume 4888, Page 924, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

### ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

a. The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

b.      The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.      All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.      All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.      All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.      <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"):  all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.      <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 11,164', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.      <u>Real property warranty</u>.  Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.      <u>Assignees' Assumption of Liabilities and Obligations</u>.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following:  (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation:  (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

5.      <u>Indemnification</u>.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6.    Royalty Payments.   Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims.   Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7.    Indemnification Claims.   With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.   Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities.   All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8.    Transfer Taxes and Recording Fees.   Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9.    Government Assignment Forms.   Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements.   Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment.   The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10.    No Third Party Beneficiaries.   The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11.    Successors and Assigns.   This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this **23rd** day of **March** 2016.


**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary


**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**

PAYSON PETROLEUM 3 WELL, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

BK 00006066    Vol OR    5779    Pg 408

STATE OF TEXAS          §
                        §
COUNTY OF DENTON        §

This instrument was acknowledged before me on _March 23 rd_, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas

STATE OF TEXAS          §
                        §
COUNTY OF DENTON        §

This instrument was acknowledged before me on _March 23 rd_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas

STATE OF TEXAS          §
                        §
COUNTY OF DENTON        §

This instrument was acknowledged before me on _March 23 rd_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

## PROPERTY DESCRIPTION:

1. The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

2. Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Crowe #2 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Instrument Filed | Volume/Page | Effective Date |
|--------|--------|--------|------------------|-------------|----------------|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas, and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operatinc, Inc. | Oil, Gas, and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr., a widower | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of The Estate Dorothy L. Darnell, Deceased | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr. Revocable Trust, Allen M. Tonkin Jr., Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust, Nancy T. Cutter and Allen M. Tonkin, Jr, Trustees | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |
| Grayson | Nancy T. Cutter Revocable Trust, Nancy T. Cutter Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust, Linley T. Solari, Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

*END OF EXHIBIT "A"*



**Grayson County**
**Wilma Bush**
**Grayson County Clerk**
**Sherman, Texas 75090**

---

**Instrument Number: 2016-00006065**

As

**Recordings**

**Recorded On:** March 28, 2016

**Parties:** MARICOPA RESOURCES LLC

**To** PAYSON PETROLEUM 3 WELL 2014 LP ETAL

**Billable Pages: 5**

**Number of Pages: 7**

**Comment: ASSIGN**

( Parties listed above are for Clerks reference only )

---

** Examined and Charged as Follows: **

Recordings                32.00

Total Recording:        32.00

---

*********** **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

Document Number: 2016-00006065

Receipt Number: 447187

Recorded Date/Time: March 28, 2016 12:09:45P

Book-Vol/Pg: BK-OR VL-5779 PG-397

User / Station: G WHITE - Cashiering Station 1

**Record and Return To:**

PAYSON PETROLEUM

2652 FM 407 E #250

BARTONVILLE TX 76226

---

THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

STATE OF TEXAS          §
                        §
COUNTY OF GRAYSON       §

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.          an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.          an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective June 2, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – Elaine #1, dated to be effective June 1, 2014, by Maricopa Resources LLC, and recorded in Volume 5530, Page 781, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

### ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

    a.    The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

b.      The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.      All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.      All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.      All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.      <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"):  all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.      <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 12,309', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.      <u>Real property warranty</u>.  Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.      <u>Assignees' Assumption of Liabilities and Obligations</u>.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

5.      <u>Indemnification</u>.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6. <u>Royalty Payments</u>. Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims. Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7. <u>Indemnification Claims</u>. With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities. All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8. <u>Transfer Taxes and Recording Fees</u>. Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9. <u>Government Assignment Forms</u>. Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment. The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10. <u>No Third Party Beneficiaries</u>. The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11. <u>Successors and Assigns</u>. This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this __23rd__ day of __March__ 2016.

**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By:_____
William C. Griffin, Secretary

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By:_____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.

_____
Notary in and for the State of Texas

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

_____
Notary in and for the State of Texas

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

_____
Notary in and for the State of Texas

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

## EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1. The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

2. Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Elaine #1 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|--------|--------|--------|--------|------|------|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464 | 910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521 | 166 | 3/24/2014 |

*END OF EXHIBIT "A"*

# EXHIBIT 4 TO SETTLEMENT AGREEMENT

# JOINT MOTION FOR ENTRY OF AGREED FINAL JUDGMENT

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | **JOINTLY ADMINISTERED** |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | **Chapter 11** |

| | | |
|---|---|---|
| JASON R. SEARCY, | § | |
| CHAPTER 11 TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **Adversary No. 16-04106** |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P. | § | |
| & PAYSON PETROLEUM 3 WELL | § | |
| 2014, L.P., | § | |
| | § | |
| Defendants. | § | |

## JOINT MOTION FOR ENTRY OF AGREED FINAL JUDGMENT

TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:

COME NOW, Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Motion for Entry of Agreed Final Judgment* (the "Joint Motion"), and in support thereof, respectfully show unto the Court the following:

1

1.      On July 13, 2017, Payson Trustee filed his First Amended Complaint in this adversary proceeding against Payson Petroleum 3 Well, L.P. ("3 Well LP") and Payson Petroleum 3 Well 2014, L.P. ("2014 LP") and asserted, *inter alia*, the following claims:

- breach of contract claims on behalf of Payson Petroleum, Inc. ("Payson Petroleum") against 3 Well LP and 2014 LP (collectively the "Defendants") for failure to pay amounts owed under certain "Turnkey Agreements;"

- actual and constructive fraudulent transfer claims on behalf of Payson Petroleum against Defendants to avoid and recover certain investment amounts Payson Petroleum transferred to Defendants;

- actual and constructive fraudulent transfer claims on behalf of Maricopa Resources, LLC ("Maricopa") against Defendants to avoid and recover certain wellbore interests that Maricopa transferred to Defendants during the 90-day period prior to June 10, 2016 in the Elaine No. 1, Crowe No. 2, and William No. 1H Wells (collectively the "Subject Wells"); and

- preferential transfer claims on behalf of Maricopa against Defendants to avoid and recover the interests in the Subject Wells that Mariocpa transferred to Defendants during the 90-day period prior to June 10, 2016.

(collectively the "Subject Claims").

2.      Following arms-length negotiations, the Payson Trustee and LP Trustee determined to settle disputes related to the Subject Claims, entered into that certain Settlement Agreement dated _____, 2017 (the "Agreement"), and filed Joint Motions to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 in Bankruptcy Case Nos. 16-40144, 17-40179, and 17-40180 (the "Joint Motions to Compromise") which sought entry of agreed orders in the applicable bankruptcy cases approving the Agreement (the "Agreed Orders").

3.      On _____, the Court entered the Agreed Orders.

4.      As more fully set forth in the Agreement, Joint Motions to Compromise, and Agreed Orders, the parties have agreed to entry of the "Agreed Final Judgment" in the form attached hereto as **Exhibit 1** in order to fully resolve the issues in the above-titled adversary

2

proceeding.

WHEREFORE, the Payson Trustee and LP Trustee respectfully request that this Court

enter the Agreed Final Judgment and grant such other and further relief as is just and proper.


Dated: ___, 2017                                   Respectfully submitted,


                                            By:   ___/s/_____
                                                  Phil Snow
                                                  State Bar No. 18812600
                                                  Blake Hamm
                                                  State Bar No. 24069869
                                                  SNOW SPENCE GREEN LLP
                                                  2929 Allen Parkway, Suite 2800
                                                  Houston, Texas 77019
                                                  (713) 335-4800
                                                  (713) 335-4848 (Fax)

                                                  **COUNSEL FOR JASON R. SEARCY,
                                                  CHAPTER 11 TRUSTEE FOR PAYSON
                                                  PETROLEUM, INC., PAYSON
                                                  OPERATING, LLC, AND MARICOPA
                                                  RESOURCES, LLC**


                                            By:   ___/s/_____
                                                  Keith W. Harvey
                                                  State Bar No. 09180100
                                                  THE HARVEY LAW FIRM, P.C.
                                                  6510 Abrams Road
                                                  Suite 280
                                                  Dallas, Texas 75231
                                                  (972) 243-3960 Phone
                                                  (972)-241-3970 Facsimile

                                                  **COUNSEL FOR CHRISTOPHER J.
                                                  MOSER, CHAPTER 7 TRUSTEE FOR
                                                  PAYSON PETROLEUM 3 WELL, L.P.
                                                  AND PAYSON PETROLEUM 3 WELL
                                                  2014, L.P.**

3

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the ___ day of _____, 2017, a true and correct copy of the above and foregoing was served on the interested parties via the Court's ECF notification system.

_____
Blake Hamm

4



**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

| | | |
|---|---|---|
| **JASON R. SEARCY,** | § | |
| **CHAPTER 11 TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **Adversary No. 16-04106** |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.** | § | |
| **& PAYSON PETROLEUM 3 WELL** | § | |
| **2014, L.P.,** | § | |
| | § | |
| Defendants. | § | |

<u>**AGREED FINAL JUDGMENT**</u>

ON THIS DATE, came on to be considered the above-entitled and numbered cause wherein Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 is the "<u>Plaintiff</u>" and Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. are the "<u>Defendants</u>."

After considering the Joint Motion for Entry of Agreed Final Judgment (the "Motion") filed by Plaintiff and Defendants, other pleadings on file, and argument of the parties, if any, the Court hereby finds that the Motion should be granted. The Court further finds that:

- Payson Petroleum 3 Well, L.P. ("<u>3 Well LP</u>") owes Payson Petroleum, Inc.

1

("Payson Petroleum") the sum of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) under that certain October 10, 2013 Subscription Turn Key Agreement between 3 Well LP and Payson Petroleum (the "3 Well LP Turnkey Agreement");

• Payson Petroleum 3 Well 2014, L.P. ("2014 LP") owes Payson Petroleum the sum of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) under that certain January 12, 2014 Subscription Turn Key Agreement between 2014 LP and Payson Petroleum (the "2014 LP Turnkey Agreement");

• On or about Marcy 28, 2016, Maricopa Resources, LLC ("Maricopa") assigned certain interests in the William #1H (API # 181-31557), the Crowe #2 (API #181-31543), and the Elaine #1 (API #181-31547) (collectively the "Subject Wells") oil and gas wells and related leaseholds to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066 and are attached hereto as **Exhibit 1** (the "Avoidable Assignments"); and

• Maricopa made the Avoidable Assignments during the 90-day period preceding the filing of Maricopa's bankruptcy petition, while Maricopa was not solvent, in furtherance of a fraudulent scheme which defrauded Maricopa's creditors, and without receiving reasonably equivalent value in return from 3 Well LP or 2014 LP and, therefore, that the Avoidable Assignments may be avoided pursuant to 11 U.S.C. § 548(a)(1)(A) & (B).

It is therefore ORDERED, ADJUDGED, AND DECREED that the Motion is Granted;

It is further ORDERED, ADJUDGED, AND DECREED that the Avoidable Assignments are constructive and actual fraudulent transfers of the interests set forth therein and are hereby

2

avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B);

It is further ORDERED, ADJUDGED, AND DECREED that **Final Judgmen**t is hereby granted in favor of:

- Payson Petroleum against 3 Well LP in the amount of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement;

- Payson Petroleum against 2014 LP in the principal amount of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement;

- Maricopa against 3 Well LP for the interests transferred to 3 Well LP via the Avoidable Assignments and/or the value thereof; and

- Maricopa against 2014 LP for the interests transferred to 2014 LP via the Avoidable Assignments and/or the value thereof.

It is further ORDERED, ADJUDGED, AND DECREED that:

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40179 in the amount of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement; and

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40180 in the amount of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement.

**This is a Final Judgment.  All relief not ordered herein is expressly denied.**

**SUBMITTED BY:**

*/s/*

Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

**AGREED AS TO FORM AND SUBSTANCE:**

*/s/*

Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

*/s/*

Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P. AND PAYSON PETROLEUM 3 WELL 2014, L.P.**



### EXHIBIT
### 1

## Grayson County
## Wilma Bush
## Grayson County Clerk
## Sherman, Texas 75090



70 2016 00006064

---

### Instrument Number: 2016-00006064

As

### Recordings

Recorded On: March 28, 2016

Parties: MARICOPA RESOURCES LLC

To     PAYSON PETROLEUM 3 WELL 2014 LP ETAL

Billable Pages: 6

Number of Pages: 8

Comment: ASSIGN

( Parties listed above are for Clerks reference only )

---

### ** Examined and Charged as Follows: **

Recordings     36.00

    Total Recording:     36.00

---

### *********** DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

File Information:                              Record and Return To:

    Document Number: 2016-00006064

    Receipt Number: 447187                    PAYSON PETROLEUM

    Recorded Date/Time: March 28, 2016 12:09:45P       2652 FM 407 E #250

    Book-Vol/Pg: BK-OR VL-5779 PG-389          BARTONVILLE TX 76226

    User / Station: G WHITE - Cashiering Station 1

THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

STATE OF TEXAS      §
                               §
COUNTY OF GRAYSON   §

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.          an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.              an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective August 1, 2015 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – William #1H, dated August 15, 2014, by Maricopa Resources LLC, and recorded in Volume 5650, Page 778 of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

## ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the "Assets":

a.       The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX), collectively referred to in this Assignment as the ("Well").

     b.    The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

     c.    All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

     d.    All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

     e.    All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

     1.    <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"): all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

     2.    <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a depth not greater than the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

     3.    <u>Real property warranty</u>. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

     4.    <u>Assignees' Assumption of Liabilities and Obligations</u>.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 2

5. **Indemnification.** Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6. **Royalty Payments.** Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims. Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7. **Indemnification Claims.** With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities. All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8. **Transfer Taxes and Recording Fees.** Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9. **Government Assignment Forms.** Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment. The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10. **No Third Party Beneficiaries.** The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11. **Successors and Assigns.** This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this **23rd** day of **March** 2016.


**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary



WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**

PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


**ASSIGNEE:**

PAYSON PETROLEUM 3 WELL, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1.  The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX).

2.  Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the William # 1H Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|---|---|---|---|---|---|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensty, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981 | 402 | 2/1/2011 |

| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418 | 520 | 2/1/2008 |
|---------|--------------------------------------------------------------------------------|--------------------|------|-----|----------|
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980 | 156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296 | 513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296 | 506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980 | 140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760 | 92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760 | 88 | 3/6/2007 |
| Grayson | Gary Wayne Odle, dealing in his sole and separate property | Matthew Avery | 4296 | 493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760 | 92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983 | 321 | 4/10/2011 |
| Grayson | Vurlas Lane Wilson, a/k/a Verlas Lane Wilson and Marjorie Marie Wilson H/W | Matthew Avery | 4296 | 469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993 | 305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo, a married woman dealing in her sole and separate property | Matthew Avery | 4980 | 144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296 | 457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the James M Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297 | 46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296 | 461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296 | 449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296 | 466 | 6/27/2007 |
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296 | 454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo and Marty J. Garofalo, wife and husband | Matthew Avery | 4296 | 445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355 | 704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274 | 698 | 3/15/2013 |
| Grayson | PCB Trust, Philip C. Brown, Trustee, and Philip Charles Brown | Paradise Springs, LLC | 5274 | 701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367 | 400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002 | 826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002 | 830 | 8/21/2011 |
| Grayson | Philip C Brown, a/ka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002 | 834; 838 | 8/21/2011 |

*END OF EXHIBIT "A"*



**Grayson County**
**Wilma Bush**
**Grayson County Clerk**
**Sherman, Texas 75090**

70 2016 00006066

Instrument Number: **2016-00006066**

As
**Recordings**

Recorded On: **March 28, 2016**

Parties: **MARICOPA RESOURCES LLC**

Billable Pages: **5**

To   **PAYSON PETROLEUM 3 WELL 2014 LP ETAL**

Number of Pages: **7**

Comment: **ASSIGN**

( Parties listed above are for Clerks reference only )

---

** ** Examined and Charged as Follows: ** **

Recordings                32.00

    **Total Recording:**    **32.00**

---

*********** **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**
  Document Number: 2016-00006066
    Receipt Number: 447187
  Recorded Date/Time: March 28, 2016 12:09:45P
    Book-Vol/Pg: BK-OR VL-5779 PG-404
    User / Station: G WHITE - Cashiering Station 1

**Record and Return To:**

PAYSON PETROLEUM
2652 FM 407 E #250
BARTONVILLE TX 76226



THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

Case 4:19-cv-00407 Doc 16-12 Filed 02/11/15 Entered 02/11/15 08:07:27 Desc Exhibit A Settlement Agreement
Page 104 of 236

Bk    Vol    Ps
4888    06066    OR    5779    405

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GRAYSON | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.      an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.      an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective April 9, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Assignment of Oil and Gas Leases, dated November 23, 2010, entered into between Atoka Operating, Inc. and Barber Exploration Company, and recorded in Volume 4888, Page 924, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

## ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

    a.      The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

b.   The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.   All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.   All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.   All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.   Excluded Assets.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"): all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.   Operations.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 11,164', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.   Real property warranty.  Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.   Assignees' Assumption of Liabilities and Obligations.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

5.   Indemnification.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 2

Case 4:19-cv-04407 Doc 16-12 Filed 02/11/15 Entered 02/11/15 18:07:43 Desc Exhibit A Settlement Agreement
Page 106 of 236

Bk Vol Ps
OR 5779 407

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6. <u>Royalty Payments</u>. Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims. Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7. <u>Indemnification Claims</u>. With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities. All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8. <u>Transfer Taxes and Recording Fees</u>. Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9. <u>Government Assignment Forms</u>. Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment. The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10. <u>No Third Party Beneficiaries</u>. The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11. <u>Successors and Assigns</u>. This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this __23rd__ day of __March__ 2016.


**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary


**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

Bk          Vol        Pg
00006066     OR        5779       408

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _March 23rd_, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _March 23rd_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _March 23rd_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

BK Vol Ps
OR 5779 409

## EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1.  The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

2.  Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Crowe #2 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Instrument Filed | Volume/Page | Effective Date |
|--------|--------|--------|------------------|-------------|----------------|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas, and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operatinc, Inc. | Oil, Gas, and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr., a widower | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of The Estate Dorothy L. Darnell, Deceased | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr. Revocable Trust, Allen M. Tonkin Jr., Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust, Nancy T. Cutter and Allen M. Tonkin, Jr, Trustees | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |
| Grayson | Nancy T. Cutter Revocable Trust, Nancy T. Cutter Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust, Linley T. Solari, Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

*END OF EXHIBIT "A"*

**Grayson County**
**Wilma Bush**
**Grayson County Clerk**
**Sherman, Texas 75090**

|||||||||| 70 2016 00006065

Instrument Number: **2016-00006065**

As
**Recordings**

Recorded On: **March 28, 2016**

Parties: **MARICOPA RESOURCES LLC**                                    Billable Pages: **5**

To      **PAYSON PETROLEUM 3 WELL 2014 LP ETAL**               Number of Pages: **7**

Comment: **ASSIGN**

( Parties listed above are for Clerks reference only )

**** Examined and Charged as Follows: ****

| | |
|---|---|
| Recordings | 32.00 |
| **Total Recording:** | **32.00** |

*********** **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                    **Record and Return To:**

Document Number: 2016-00006065

Receipt Number: 447187                              PAYSON PETROLEUM

Recorded Date/Time: March 28, 2016 12:09:45P         2652 FM 407 E #250

Book-Vol/Pg: BK-OR VL-5779 PG-397              BARTONVILLE TX 76226

User / Station: G WHITE - Cashiering Station 1

THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:   YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GRAYSON | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.              an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.                   an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective June 2, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – Elaine #1, dated to be effective June 1, 2014, by Maricopa Resources LLC, and recorded in Volume 5530, Page 781, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

## ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

a.      The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

b.      The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.      All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.      All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.      All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.      <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"):  all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.      <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 12,309', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.      <u>Real property warranty</u>. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.      <u>Assignees' Assumption of Liabilities and Obligations</u>.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

5.      <u>Indemnification</u>.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6. <u>Royalty Payments</u>. Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims. Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7. <u>Indemnification Claims</u>. With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities. All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8. <u>Transfer Taxes and Recording Fees</u>. Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9. <u>Government Assignment Forms</u>. Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment. The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10. <u>No Third Party Beneficiaries</u>. The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11. <u>Successors and Assigns</u>. This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this __23rd__ day of __March__ 2016.

**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

Bk        Vol        Pg
00006045        OR        5779        401

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.



_____
Notary in and for the State of Texas

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

_____
Notary in and for the State of Texas

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

_____
Notary in and for the State of Texas

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

## EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1.  The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

2.  Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Elaine #1 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|--------|--------|--------|--------|------|------|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464 | 910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521 | 166 | 3/24/2014 |

*END OF EXHIBIT "A"*

# EXHIBIT 5 TO SETTLEMENT AGREEMENT

# CONTRACT OPERATING
# SERVICES AGREEMENT

### CONTRACT OPERATING SERVICES AGREEMENT

This Contract Operating Services Agreement (this "*Agreement*") made and entered into this ____ day of July, 2016 by and between Traton Operating Company. (hereinafter "*Contractor*"), and Payson Operating, LLC, (hereinafter "*Owner*"). Owner and Contractor are referred to collectively as the "*Parties*" and individually as a "*Party*".

#### WITNESSETH:

WHEREAS, Owner owns undivided working interests in the oil and gas leases (the "*Leases*") located in the counties and states as described by the Subject JOAs, as defined below, and as same may be amended from time to time (the land described in such Leases is referred to herein as the "*Contract Area*");

WHEREAS, Owner desires to retain the services of Contractor to act as a contract operator for the Leases; and

WHEREAS, Contractor has the capability to and desires to render such services on behalf of Owner.

WHEREAS, Contractor will perform the services as required by the Owner (of which Payson Operating, LLC is the operator of record at the Texas RRC) under certain joint operating agreements covering the Leases in the Contract Area more particularly described on *Exhibit A*, as same may be amended from time to time (the "*Subject JOAs*");

NOW, THEREFORE, based upon the mutual covenants and considerations contained herein, the sufficiency of which is hereby acknowledged, Contractor and Owner agree as follows:

#### ARTICLE I
#### DESIGNATION AND RESPONSIBILITIES OF CONTRACTOR

1.1    Subject to the terms of this Agreement, Contractor shall conduct and direct all operations on the Leases as permitted and required by and within the limits of this Agreement (the "*Services*"). Contractor shall perform all services with due diligence and dispatch in accordance with the standards for the Operator under the Subject JOAs and generally accepted oil field practice, conforming to all applicable laws, rules, orders and regulations of any competent governmental body, which are now or may become applicable to the operations contemplated by this Agreement. Owner agrees to assist Contractor by providing Contractor with authorizations necessary for the proper performance of its services. Contractor shall use all possible care and diligence to ensure that the Services rendered pursuant to this Agreement are performed;

    1)    reasonably and prudently;

    2)    in a skillful and workmanlike manner;

1

    3)    in full compliance with all applicable local, municipal, county, state and federal laws and regulations.

Contractor shall perform all work and labor appropriate or necessary for setting, installing, handling, caring for, and maintaining all materials, equipment, and supplies furnished by Owner in connection with the Services.

1.2    Subject to the terms of this Agreement, Contractor shall manage, develop and supervise the Contract Area. Pursuant to such obligations and as required by Owner and as applicable, Contractor shall:

    (a)    Supervise contract or Contractor's pumpers, whose services will include but will not be limited to gauging tanks, recording well pressure, preparing gauge reports, treating oil, making minor repairs, and reporting unusual or abnormal occurrences.

    (b)    Review well performance and prepare for Owner monthly reports that summarize production in Contractor's standard form on a per well basis for each of the Subject JOAs. Contractor shall also note and evaluate any abnormal changes in production.

    (c)    Prepare and furnish to any duly constituted authority having jurisdiction over the Leases any and all reports, statements and information that may be required.

    (d)    Use its best efforts to establish and maintain complete and accurate well files containing information on operations performed in connection with each well.

    (e)    Review and approve all invoices and charges for all expenses incurred and credits received.

    (f)    Keep accurate books of account showing all items of cost or expense incurred in connection with the Leases, and Contract Area with respect to each of the Subject JOAs, and make and pay all charges in accordance with the provisions of this Agreement.

    (g)    Prepare and render billings to the Owner and non-operators with respect to each of the Subject JOAs for approved expenses and charges for services as Contractor as agreed herein.

1.3    Upon Owner's request, Contractor shall perform the following services in connection with general requests from partners or as otherwise instructed by the Trustee, completing, working-over, or drilling any well in the Contract Area, or reworking, deepening, or plugging back a dry hole:

    (a)    Conduct field inspection and inventory equipment

2

(b)     Locate and contract, on Owner's behalf, contract pumpers or gauges for the Contract Area

(c)     Supervise all routine well service operations and repair and maintenance operations, including onsite supervision of the installation or removal of well equipment, pumping of any treating fluid or substance into a well, and other onsite operations performed under contract by third party or with leased equipment.

(d)     Supervise all drilling and completion operations, workover operations, recompletion operations, and any type of remedial operation, whether or not it would ordinarily be considered a normal well-service operation. This includes contracting with supervisory personnel for onsite supervision as required and maintaining overall supervision of such personnel through day-to-day contact.

(e)     Prepare operating and drilling procedures.

(f)     Prepare operating cost estimates and circulate Authorizations for Expenditures for Owner's approval.

(g)     Obtain all necessary drilling permits and file all necessary and appropriate reports required prior to, during or after completion of operations.

(h)     Conduct overall supervision of drilling supervisor(s) through daily monitoring of drilling, deepening, recompletion or other critical operations.

(i)     Prepare AFEs and procedures and conduct overall supervision through daily monitoring of field personnel, of plugging and abandonment operations of any wells located in the Contract Area in compliance with all federal, state and local regulations and orders.

(j)     Provide emergency response assistance with respect to any accident, spill, upset or similar occurrence requiring immediate action to protect the health, safety and mechanical and environmental integrity of the Contract Area and equipment located thereon.

(k)     Assist Owner in responding to requests from interested parties or the Trustee including but not limited to any efforts to market its interest in the Contract Area, including making its records available and making knowledgeable personnel available to accompany potential buyers and respond to questions as they inspect and tour the properties.

(l)     Maintain land and lease documents.

(m)     Market Production.

(n)     Perform any work falling under Contractor's expertise as directed by Owner.

(o)     Unless otherwise agreed by Contractor, all contracts with third parties (excluding contracts with drilling supervisor(s) for onsite supervision), shall be in the name of Owner under master service contracts in form approved by Owner and similar in form and substance to the Master Service Agreement that has previously been established by Owner. Contractor shall have no liability with respect to third-party contracts. Provided, however, Contractor shall initiate no remedial work, repairs, replacement of equipment, etc. with an estimated total cost exceeding $25,000.00 without the prior written approval of Owner.

1.4     All personnel involved in the day-to-day lease operations shall be under the supervision of the Contractor. The selection, hiring, dismissal and work schedule of such contractors and employees of Contractor shall be determined by Contractor.

1.5     Owner shall have access at all reasonable times to the Leases, to all information pertaining to wells drilled, production secured, and oil and gas marketed, and to the books, records, and vouchers relating to the operation of the Leases. Contractor shall, upon Owner's request, furnish Owner with weekly gauge and run tickets. Notwithstanding anything to the contrary herein, all information referenced in this Section 1.6 shall be the property of Owner.

1.6     Owner will grant Contractor access to an account for revenues, operating costs, fees and expenses for each Contract Area under each of the Subject JOAs (the "*Operating Account*"). Prior to the fifteenth (15th) day of each month, Contractor will prepare and deliver to Owner an operating statement for each of the Subject JOAs (the "*Property Operating Statement*"), which Property Operating Statement shall include (a) Contractor's estimate of production volumes; (b) actual revenues received in the prior month; (c) all costs, expenses and charges billed by third parties to Contractor in the prior month, including, without limitation, all sums due under the Leases and other liquidated monetary obligations; and (d) expenditures and fees recorded by Contractor in form satisfactory to Owner. Promptly after delivery of the Property Operating Statement, Contractor shall transfer sufficient funds from the revenue account into the operating account necessary to cover operating costs, fees (including Contractor fees) and expenses set forth on the Property Operating Statement. Contractor shall have the right to withdraw funds from the Operating Account to pay for the services hereunder. The parties hereto acknowledge and agree that from time to time the funds in the Operating Account may be insufficient to cover the operating expenses for such month, in which case Contractor shall immediately notify Owner of the projected shortfall and any interim payments into the account to cover such shortfall will be evaluated by Owner and paid on a case-by-case basis. In no event shall Contractor be required to advance funds on behalf of Owner to conduct the operations or proceed with any operations, unless there are available funds in the account to cover the cost of such operations or Owner has contracted directly for such services.

1.7     At all reasonable times and upon thirty (30) days prior written notice, Contractor shall permit employees and agents of Owner to have access to its offices and work locations to examine, reproduce and retain copies of such documentation and data and to interview Contractor's personnel in connection therewith, as necessary for Owner to verify and monitor (i) the accuracy and propriety of Service fees and reimbursable expenses pursuant to this Agreement, and (ii) Contractor's compliance with the terms of this Agreement. Where Services hereunder, are billed under fixed rates, Owner's auditors shall have sufficient access to those

3

4

rates to satisfy themselves that the Services have not also been separately billed on some other basis (e.g., a reimbursable basis). The provisions of this Section 1.7 shall be applicable during the term of this Agreement and for a period of one (1) year thereafter. Any costs associated with Owner's audit requirements or procedures shall be solely for Owner's account. If errors or deficiencies are identified by an audit or otherwise, both Parties shall take prompt corrective action thereof.

## ARTICLE II
## COMPENSATION OF CONTRACTOR

2.1    During the term of this Agreement, Contractor shall be compensated:

(a)    For Services completed under Section 1.2, in accordance with the overhead rate structure set forth on *Exhibit B* hereto.

(b)    For Services completed under Section 1.3, in accordance with the hourly rate structure set forth on *Exhibit C* hereto.

2.2    The above compensation shall not include any direct costs and third-party costs that are proper charges to the Contractor Account that are incurred by the Contractor in connection with services rendered hereunder. Owner shall reimburse Contractor for any third-party charges incurred by Contractor in accordance with this Agreement within thirty (30) business days of delivery of invoice.

## ARTICLE III
## RESPONSIBILITIES OF OWNER

3.1    Owner shall be the operator of record with respect to the Leases under each of the Subject JOAs.

3.2    Owner shall be duly authorized under all laws, rules, orders and regulations of any competent governmental body, which are now or may become applicable to the operations contemplated by this Agreement and shall obtain and maintain all necessary permits, bonds and sureties as may be required thereunder.

## ARTICLE IV
## HEALTH AND SAFETY OBLIGATIONS

BY EXECUTING THIS AGREEMENT, CONTRACTOR REPRESENTS AND WARRANTS THAT IT IS QUALIFIED TO DO BUSINESS IN EACH OF THE JURISDICTIONS WITHIN THE CONTRACT AREA. CONTRACTOR FURTHER REPRESENTS AND WARRANTS THAT ITS EMPLOYEES ARE QUALIFIED AND COMPETENT AND THAT CONTRACTOR IS, AND WILL BE THROUGHOUT THE DURATION OF THIS AGREEMENT, TRAINED AND COMPLIANT TO THE STANDARDS OF A REASONABLY PRUDENT OPERATOR IN ALL MATTERS RELATED TO HEALTH, SAFETY AND WORK ENVIRONMENT.

5

## ARTICLE V
## INDEPENDENT CONTRACTOR

Contractor undertakes the performance of the provisions of this Agreement as an independent contractor, and neither Contractor nor any of its employees, contractors or agents will be deemed to be an employee, servant, agent or partner of or joint venturer with Owner. Owner shall not, in any respect, be responsible for the hiring, employment or working conditions of the persons employed or retained by Contractor in connection with the performance of Contractor's obligations under the terms of this Agreement.

## ARTICLE VI
## INSURANCE

Contractor shall maintain insurance of the type, in the amounts and with the limits set forth on *Exhibit D* hereto. Each party shall be named as an additional insured under each of the policies for the duration hereof.

## ARTICLE VII
## FORCE MAJEURE

Contractor shall not be liable to Owner for any loss on the Leases caused by war, strikes, tornadoes, floods, governmental priorities on materials or other governmental restrictions, or inability to obtain suitable equipment or labor resulting from any other causes not due to Contractor's failure to exercise reasonable diligence in the performance of Contractor's obligations hereunder. If Contractor is delayed or prevented from performing for any such cause, it shall do all things reasonably possible to remove such cause and shall resume performance hereunder as soon as such cause is removed.

## ARTICLE VIII
## BINDING EFFECT OF AGREEMENT

This Agreement shall be binding upon and inure to the benefit of the parties, their respective successors and permitted assigns. The right of either party to assign this Agreement is subject to the prior written consent of the non-assigning party, which consent shall not be unreasonably withheld or delayed. Notwithstanding the immediately preceding sentence, each party may assign and transfer this Agreement to an affiliate or pursuant to a reorganization or change in control of such party or the person that controls such party without such consent. Any assignment in contravention of this *Article VIII* shall be void.

## ARTICLE IX
## AMENDMENT, TERMINATION AND TURNOVER DATE

9.1    Either party hereto has the right to terminate this Agreement without cause by providing the other party with sixty (60) days prior written notice. In the event of a material breach of this Agreement by either party, including the failure of a party to perform any operation or action proposed hereunder that, the other party may terminate this Agreement by providing the breaching party with thirty (30) days notice. In the event of termination by Owner,

6

Owner shall pay Contractor in full all amounts due Contractor through the termination date. Upon termination of this Agreement or partial termination as to any Contract Area, Contractor will cooperate with Owner for an orderly transition of operations and will turn over all books and records regarding the Contract Area upon request. Owner shall compensate Contractor for post-termination services requested by Owner and provided in connection with the transition at Contractor's standard hourly rate as set forth on *Exhibit C*.

9.2    Upon termination of this Agreement, the Parties shall not be relieved of any liabilities arising from or incident to Services rendered. The Parties shall not be liable to either Party for any cost or loss in connection with such termination, including but not limited to loss of anticipatory profits. Upon termination of this Agreement, Contractor shall immediately remove all of its and its subcontractors' equipment and materials from Owner's premises that are not necessary for the completion of or the provision of any Service then underway and, notwithstanding anything herein to the contrary, sixty (60) days after the receipt of Contractor of notice of the termination of this Agreement by Owner, Owner shall bear no responsibility for the equipment or materials of Contractor that remain on Owner's premises but which are not necessary for the completion or the provision of any Service then underway.

9.3    If either party (a) generally fails to pay, or admits in writing its inability to pay, its debts as they become due, (b) commences any insolvency proceeding with respect to itself, (c) take any action to effectuate or authorize either (a) or (b), (d) becomes the subject of any involuntary insolvency proceeding, or has any writ, judgment, warrant of attachment, execution or similar process issued or levied against all or a substantial part of its properties, and any such proceeding or petition is not dismissed, or such writ judgment, warrant of attachment, execution or similar process is not released, vacated or fully bonded within sixty (60) days after commencement, filing or levy (e), admits the material allegation of a petition against it in any insolvency proceeding, or an order for relief is issued against it in any insolvency proceeding, or (f) consents to the appointment of a receiver, trustee, custodian, conservator, liquidator, mortgagee in possession (or agent therefore), for itself or a substantial portion of its property or business, then the other party may, by giving written notice to such party, terminate this Agreement as of the date specified in such notice.  A termination under this Section shall be deemed a termination for cause,

## ARTICLE X
## NOTICES

Until changed by appropriate notice in writing, all notices, reports, and other correspondence required by or made necessary by the terms of this Agreement shall be deemed to have been duly given or served on the date on which personally delivered, or sent by electronic transmission via email or facsimile transmission, with receipt acknowledged, or three (3) Business Days after the same shall have been sent via certified United States Mail. For purposes of this Agreement, the term *"Business Days"* means a day other than a Saturday, Sunday or legal holiday for commercial banks under the laws of the State of Texas or the laws of the United States of America.

## ARTICLE XI
## CONFIDENTIAL INFORMATION
## AND OWNERHIP OF DOCUMENTS

11.1    Any and all information, in whatever form or format, described or defined by each party as confidential and made available to the other party for the performance of the Agreement shall be and remain the exclusive property of the disclosing party and shall be treated as confidential.

11.2    With respect to such confidential information both parties agree not to disclose or divulge such information to any third party except as may be necessary for the performance of this Agreement. Both parties shall take reasonable measures to protect and preserve the confidential nature of such information and shall be responsible for any breach hereof committed by its employees, it being understood that the confidentiality obligations of both parties are of a continuing nature and shall continue for one (1) year after the termination date of this agreement

11.3    The foregoing restrictions shall not apply to any such confidential information that is:

(a)    Already known by the receiving party at the time of disclosure;

(b)    Publicly known or becomes publicly known through no fault of the receiving party;

(c)    Received from a third party that is free to disclose the information to the receiving party;

(d)    Communicated to a third party with the express prior written consent of the disclosing party; or

(e)    Lawfully required to be disclosed to a governmental agency or is otherwise required to be disclosed by law, provided that before making such disclosure the receiving Party shall give the disclosing Party reasonable opportunity to object or insure confidential treatment of the information.

11.4    Both parties acknowledge that the breach of this confidentiality obligation may cause the other party serious economic harm and that the remedies available to the injured party by law may be inadequate. Therefore, upon any breach hereof by either party, the non-breaching party shall be entitled to seek immediate injunctive relief and/or specific performance, in addition to any other appropriate forms of equitable or legal relief, including but not limited to, monetary damages and reasonable attorney's fees.

11.5    Both Owner and Contractor agree that all tracings, designs, drawings, field notes, requisitions, purchase orders, specifications, computer programs (data files and other software in whatever form), and other documents or records developed by such party in connection with this Agreement or otherwise shall be the sole property of such party.

## ARTICLE XII
## AMENDMENTS TO THE AGREEMENT
## AND GOVERNING LAWS

THIS AGREEMENT SHALL NOT BE VARIED EXCEPT WITH THE WRITTEN CONSENT OF THE PARTIES. IN THE EVENT ONE OR MORE OF THE PROVISIONS IS HELD INVALID BY ANY COURT OF COMPETENT JURISDICTION, THE SAME SHALL IN NO MANNER AFFECT THE VALIDITY OF ANY OF THE OTHER PROVISIONS. THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS.

## ARTICLE XIII
## INDEMNIFICATION

13.1   CONTRACTOR SHALL GENERALLY HAVE THE PROTECTIONS, BENEFITS, AND INDEMNIFICATIONS OF OWNER UNDER THE TERMS OF THE A.A.P.L. FORM 610 - 1989 MODEL FORM OPERATING AGREEMENT ("*JOA*") JUST AS IF CONTRACTOR WERE THE DESIGNATED OPERATOR UNDER THE JOA, AND TO THE FULLEST EXTENT POSSIBLE, OWNER HEREBY ASSIGNS AND TRANSFERS ALL OF SUCH PROTECTIONS, BENEFITS AND INDEMNIFICATIONS TO CONTRACTOR DURING THE TERM OF THIS AGREEMENT; PROVIDED, HOWEVER, THAT SUCH ASSIGNMENT SHALL NOT ENTITLE CONTRACTOR (A) TO CLAIM OR ASSERT ANY LIENS OR SECURITY INTERESTS THAT WOULD BE GRANTED TO THE OPERATOR UNDER THE JOA, OR (B) TO SETTLE ANY CLAIMS OR LAWSUITS PERTAINING TO THE CONTRACT AREA.

13.2   CONTRACTOR'S RELEASE OF OWNER:

CONTRACTOR RELEASES OWNER AND OWNER'S PARENT, SUBSIDIARIES, OFFICERS, DIRECTORS, AND EMPLOYEES ("OWNER PARTIES") OF AND FROM ANY LIABILITY AS TO ALL CLAIMS, PENALTIES, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE (EXCLUDING GROSS NEGLIGENCE AND WILLFUL MISCONDUCT) OF ANY OF THE OWNER PARTIES, ON ACCOUNT OF BODILY INJURY, DEATH AND/OR DAMAGE TO OR LOSS OF PROPERTY OF ANY KIND. CONTRACTOR'S OBLIGATIONS UNDER THIS SECTION SHALL BE PRIMARY AND WITHOUT REGARD TO AND WITHOUT ANY RIGHT TO CONTRIBUTION FROM ANY INSURANCE MAINTAINED OR MADE AVAILABLE TO OWNER. CONTRACTOR AND OWNER HEREBY AGREE THAT CONTRACTOR WILL BE COVERED BY AVAILABLE LIABILITY INSURANCE, UNDER WHICH THE INSURER HAS NO RIGHT OF SUBROGATION AGAINST OWNER OR CONTRACTOR. IT IS AGREED THAT SAID INSURANCE REQUIREMENTS SHALL AUTOMATICALLY BE AMENDED TO CONFORM TO THE MAXIMUM MONETARY LIMITS PERMITTED UNDER APPLICABLE LAW.

13.3   OWNER'S RELEASE OF CONTRACTOR:

9

OWNER RELEASES CONTRACTOR AND CONTRACTOR'S PARENT, SUBSIDIARIES, OFFICERS, DIRECTORS, AND EMPLOYEES ("CONTRACTOR PARTIES") OF AND FROM ANY LIABILITY AS TO ALL CLAIMS, PENALTIES, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE (EXCLUDING GROSS NEGLIGENCE AND WILLFUL MISCONDUCT) OF ANY OF THE CONTRACTOR PARTIES, ON ACCOUNT OF BODILY INJURY, DEATH AND/OR DAMAGE TO OR LOSS OF PROPERTY OF ANY KIND. OWNER'S OBLIGATIONS UNDER THIS SECTION SHALL BE COVERED BY AVAILABLE LIABILITY INSURANCE, UNDER WHICH THE INSURER HAS NO RIGHT OF SUBROGATION AGAINST OWNER OR CONTRACTOR. IT IS AGREED THAT SAID INSURANCE REQUIREMENTS SHALL AUTOMATICALLY BE AMENDED TO CONFORM TO THE MAXIMUM MONETARY LIMITS PERMITTED UNDER APPLICABLE LAW.

13.4   THIRD PARTY CLAIMS:

For losses, claims, demands, liabilities, or causes of action brought by or on behalf of anyone other than those claimants listed in *Sections 13.2* and *13.3* above, the Parties' respective indemnity obligations shall be as set forth in this *Section 13.4*.

(1)   Contractor's Negligence:  CONTRACTOR AGREES TO PROTECT, DEFEND (INCLUDING ALL COSTS, EXPENSES, AND REASONABLE ATTORNEYS' FEES), INDEMNIFY, RELEASE AND HOLD THE OWNER INDEMNIFIED PARTIES HARMLESS FROM AND AGAINST ANY AND ALL LOSSES, CLAIMS, DEMANDS, LIABILITIES, OR CAUSES OF ACTION OF EVERY KIND AND CHARACTER, IN FAVOR OF ANY PERSON OR PARTY, FOR INJURY TO OR ILLNESS OR DEATH OF ANY PERSON, OTHER THAN AS PROVIDED IN *SECTIONS 13.2* AND *13.3* ABOVE, OR DAMAGE TO OR LOSS OF PROPERTY OF ANY SUCH PERSON, AND WHICH SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE ARISES OUT OF OR IS INCIDENT TO ANY WORK OR SERVICE TO BE PERFORMED UNDER THIS AGREEMENT TO THE EXTENT, AND IN THE PROPORTION THAT, SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE IS CAUSED OTHER THAN BY THE NEGLIGENCE OF OWNER, ITS EMPLOYEES, AGENTS OR OTHER CONTRACTORS THAT ARE DIRECTLY RESPONSIBLE TO OWNER.

(2)   Owner's Negligence:  OWNER AGREES TO PROTECT, DEFEND (INCLUDING ALL COSTS, EXPENSES, AND ATTORNEYS' FEES), INDEMNIFY, RELEASE AND HOLD THE CONTRACTOR INDEMNIFIED PARTIES HARMLESS FROM AND AGAINST ANY AND ALL LOSSES, CLAIMS, DEMANDS, LIABILITIES, OR CAUSES OF ACTION OF EVERY KIND AND CHARACTER, IN FAVOR OF ANY PERSON OR PARTY, FOR INJURY TO OR ILLNESS OR DEATH OF ANY PERSON, OTHER THAN AS PROVIDED IN *SECTIONS 13.2* AND *13.3* ABOVE, OR DAMAGE TO OR LOSS OF PROPERTY OF ANY SUCH PERSON, AND WHICH SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE ARISES OUT OR IS

10

INCIDENT TO ANY WORK OR SERVICE TO BE PERFORMED UNDER THIS AGREEMENT, TO THE EXTENT, AND ONLY TO THE EXTENT, AND ONLY IN THE PROPORTION THAT, SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE IS CAUSED BY THE NEGLIGENCE OF OWNER, ITS EMPLOYEES, AGENTS OR OTHER CONTRACTORS THAT ARE DIRECTLY RESPONSIBLE TO OWNER.

13.5  IT IS THE INTENT OF THE PARTIES HERETO THAT ALL OBLIGATIONS, LIABILITIES, AND RISKS ALLOCATED OR ASSUMED BY THE PARTIES UNDER TERMS OF THIS CONTRACT, INCLUDING, WITHOUT LIMITATION, *SECTIONS 13.2* THROUGH *13.4*, BE WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING PREEXISTING CONDITIONS, STRICT LIABILITY, VIOLATIONS OF ANY STATE, OR FEDERAL LAW, BREACH OF CONTRACT, BREACH OF WARRANTY, TRESPASS, CONVERSION, NUISANCE, TORT, OR THE NEGLIGENCE OF ANY PARTY OR PARTIES, WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE. THE RELEASES AND ASSUMPTIONS OF LIABILITY AND ALLOCATIONS OF RISKS EXTENDED BY THE PARTIES HERETO UNDER *SECTIONS 13.2* THROUGH *13.4* SHALL INURE TO THE BENEFIT OF THE PARTIES, THEIR PARENT, HOLDING AND SUBSIDIARIES, AFFILIATES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS AND SERVANTS. THE TERMS AND PROVISIONS OF SECTIONS 13.2 THROUGH 13.4 SHALL HAVE NO APPLICATION TO CLAIMS OR CAUSES OF ACTION ASSERTED AGAINST OWNER OR CONTRACTOR BY REASON OF ANY AGREEMENT OF INDEMNITY WITH A PERSON OR ENTITY NOT A PARTY HERETO.

13.6  IT IS EXPRESSLY AGREED THAT OWNER SHALL NOT BE LIABLE TO THE CONTRACTOR PARTIES FOR ANY SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING DIRECTLY OR INDIRECTLY, OUT OR OF IN CONNECTION WITH THE SERVICES OR OPERATIONS HEREUNDER RELATED TO RESERVOIR DAMAGE, LOSS OF RESERVES, OR CRATERING OR BLOWOUT OF THE BOREHOLE, INCLUDING, WITHOUT LIMITATION, LOSS OF USE, LOSS OF DATA, LOSS OF ASSETS, LOSS OF PROFIT, LOSS OF BUSINESS, OR BUSINESS INTERRUPTION UNLESS CAUSED BY THE SOLE NEGLIGENCE (ACTIVE OR PASSIVE) OF OWNER OR ANY OF THE OWNER PARTIES.

13.7  IT IS EXPRESSLY AGREED THAT CONTRACTOR SHALL NOT BE LIABLE TO THE OWNER PARTIES FOR ANY SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING DIRECTLY OR INDIRECTLY, OUT OR OF IN CONNECTION WITH THE SERVICES OR OPERATIONS HEREUNDER RELATED TO RESERVOIR DAMAGE, LOSS OF RESERVES, OR CRATERING OR BLOWOUT OF THE BOREHOLE, INCLUDING, WITHOUT LIMITATION, LOSS OF USE, LOSS OF DATA, LOSS OF ASSETS, LOSS OF PROFIT, LOSS OF BUSINESS, OR BUSINESS INTERRUPTION UNLESS CAUSED BY THE SOLE NEGLIGENCE (ACTIVE OR PASSIVE) OF CONTRACTOR OR ANY OF THE CONTRACTOR PARTIES.

11

13.8  As a part of the consideration for this Agreement, Contractor hereby agrees that the provisions of the foregoing *Sections 13.2* through *13.7* inclusive shall extend to and be enforceable by and for the benefit of any non-operating concurrent working interest Owner, joint ventures or partners for whom Owner may be performing operations or services.

MISCELLANEOUS

14.1  This Agreement, drawn in counterpart, shall be binding upon the Parties and their respective successors, and assigns.  Notwithstanding the foregoing, this Agreement and the duties and obligations hereunder are not assignable by Contractor without the written consent of Owner.

14.2  In any dispute arising among the Parties to this Agreement, the prevailing party shall be entitled to collect all costs, including attorneys' fees.

14.3  The captions of any articles herein are intended for convenient references only and same shall not be, nor be deemed to be, interpretive of the contents of such sections.

14.4  Harris County, Texas shall be the exclusive venue and jurisdiction for any litigation between the Parties.

14.5  If any provision or part of any provision of this Agreement shall be held invalid, the remainder shall be deemed valid and effective, and the Parties shall endeavor to replace the invalid terms with terms which correspond best to the original economic and general intention of the Parties, it being the intention of the Parties hereto that each provision hereof is being stipulated separately.

14.6  EACH PARTY HERETO KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY (a) WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THIS AGREEMENT, OR DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED OR ASSOCIATED THEREWITH, BEFORE OR AFTER TERMINATION; (b) WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION ANY "SPECIAL DAMAGES," AS DEFINED BELOW; (c) CERTIFIES THAT NEITHER IT NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSELORS HAS REPRESENTED, EXPRESSLY OR OTHERWISE, OR IMPLIED THAT THE CERTIFYING PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS; AND (d) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED THEREBY, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION. AS USED IN THIS SECTION, "*SPECIAL DAMAGES*" INCLUDES ALL SPECIAL, CONSEQUENTIAL, INDIRECT, EXEMPLARY, OR PUNITIVE DAMAGES

12

(REGARDLESS OF HOW NAMED), BUT DOES NOT INCLUDE ANY PAYMENTS OR FUNDS WHICH ANY PARTY HAS EXPRESSLY PROMISED TO PAY OR DELIVER TO ANY OTHER PARTY.

14.7    This instrument embodies the whole agreement of the Parties.  There are no promises, terms, conditions, or obligations other than those contained herein.  Should Contractor provide or render any Service, then in the event of a conflict between the terms of performance for such Services or Service, whether made orally or in writing, and the terms of this Agreement, the terms of this Agreement shall prevail except for any activity-specific instructions or directions.  In the event of a conflict between the provisions hereof and the provisions of any printed or other pre-prepared form of work or service order, job, or delivery ticket, or other similar form, submitted to Contractor by Owner in connection with any Services performed hereunder, the provisions of this Agreement shall prevail and be controlling.

*[SIGNATURES APPEAR ON THE FOLLOWING PAGE]*

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the day and year first above written.

**TRATON OPERATING COMPANY**

By: _Patrick W. Merritt_

Printed Name:  Patrick W. Merritt

Title:  President

**PAYSON OPERATING, LLC,**

By: _____

Name: _____

Title: _____

13

# EXHIBIT 6 TO SETTLEMENT AGREEMENT

# SETTLEMENT APPROVAL ORDER

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ( the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC ("Debtors") in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.       The Motion is GRANTED as set forth herein.

2.       The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.       Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and all parties in interest.

4.       Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment executed by 3 Well LP and the Subject Wells Assignment executed by 2014 LP, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.       The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      The 2014 LP Subject Claims Assignment and Participation Agreement attached as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

7.      This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

8.      A general unsecured claim of 3 Well LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 27.7891% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

9.      A general unsecured claim of 2014 LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 72.21084% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

10.     The releases provided for in the Settlement Agreement are hereby approved.  Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are

released.

11.     Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the following:  (i) the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery (as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement), and (ii) the 2014 LP Avoidance Action Claims Net Recovery and the 2014 LP Partnership Related Claims Net Recovery (as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement).

12.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute the (i) 3 Well LP Avoidance Action Claims, (ii) 3 Well LP Partnership Related Claims, (iii) 2014 LP Avoidance Action Claims, and (iv) 2014 LP Partnership Related Claims, without further order of this Court.

13.     Payson Petroleum is hereby appointed (i) the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement, and (ii) the representative of the 2014 LP bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

14.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and

Participation Agreement or this Order.

15.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum has the exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims or the Payson/3 Well LP Partnership Related Claims that in its judgment would not be cost justified.

16.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of either parties entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

17.     Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims or the Payson/2014 LP Partnership Related Claims that in its judgment would not be cost justified.

18.     The Debtors and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance

with the Motion and to implement the terms of the Settlement Agreement without further notice,

hearing or order of the Court.

19.     This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.


           _____
           HONORABLE BRENDA T. RHOADES,
           UNITED STATES BANKRUPTCY JUDGE


**SUBMITTED BY:**

_/s/_____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


_/s/_____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)


AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE**
**FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,**
**AND MARICOPA RESOURCES, LLC**

*/s/*_____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE**
**FOR PAYSON PETROLEUM 3 WELL, L.P. AND**
**PAYSON PETROLEUM 3 WELL 2014, L.P.**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, LP, | § | Case No. 17-40179 |
| | § | Chapter 7 |
| DEBTOR. | § | |

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. ___]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. ("Debtor") in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.      Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4.      Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.      The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

7.      A general unsecured claim of Payson Petroleum against 3 Well LP is hereby allowed in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50).

8.      The releases provided for in the Settlement Agreement are hereby approved. Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released. Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are released.

9.      Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement.

10.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims without further order of this Court. Payson Petroleum is hereby appointed the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the

3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 3 Well LP Partnership Related Claims or the 3 Well LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

_____
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**SUBMITTED BY:**

/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

/s/ _____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, LP, | § | Case No. 17-40180 |
| | § | Chapter 7 |
| DEBTOR. | § | |

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. ("Debtor") in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "<u>Hearing</u>"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.    The Motion is GRANTED as set forth herein.

2.    The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.    Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4.    Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.    The 2014 LP Subject Claims Assignment and Participation Agreement attached as

an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

7.      A general unsecured claim of Payson Petroleum against 2014 LP is hereby allowed in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50).

8.      The releases provided for in the Settlement Agreement are hereby approved.  Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are released.

9.      Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the 2014 LP Avoidance Action Claims Net Recovery and the 2014 LP Partnership Related Claims Net Recovery as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement.

10.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims without further order of this Court.  Payson Petroleum is hereby appointed the representative of the 2014 LP bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014

LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 2014 LP Partnership Related Claims or the 2014 LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

_____
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**SUBMITTED BY:**

/s/
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

**AGREED TO IN FORM AND SUBSTANCE BY:**

/s/
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

/s/ _____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P. AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

# EXHIBIT 7 TO SETTLEMENT AGREEMENT

# SETTLEMENT MOTIONS

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | **JOINTLY ADMINISTERED** |
| MARICOPA RESOURCES, LLC, | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | **Chapter 11** |

---

## JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to

Compromise"), and in support thereof, respectfully show unto the Court the following:

# I.
# PROCEDURAL STATUS

1.    <u>Payson Debtor Bankruptcy Filings</u>.    On June 10, 2016, Payson Petroleum, Inc. ("<u>Payson Petroleum</u>"), Payson Operating, LLC ("<u>Payson Operating</u>"), and Maricopa Resources, LLC ("<u>Maricopa</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in this Bankruptcy Court.[1]    *See* Docket No. 1 in Bankruptcy Case Nos. 16-41043, 16-40144, *and* 16-40145.    On July 12, 2016, the Bankruptcy Court entered orders converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy Code.    *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket No. 41 in Case No. 16-40145.    On July 18, 2016, the Bankruptcy Court entered orders approving the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee in the Payson Debtors' bankruptcy cases.    *See* Docket No. 55 in Case No. 16-41043, Docket No. 50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045.    On August 11, 2016, the Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under Case No. 16-41044.    *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-41044, *and* Docket No. 81 in Case No. 16-41045.

2.    <u>Adversary Proceeding</u>.    On November 1, 2016, the Payson Trustee filed his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in Adversary Proceeding No. 16-04106 (the "<u>Adversary Proceeding</u>") against Payson Petroleum 3 Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>").

3.    <u>LP Debtor Bankruptcy Filings</u>.    On January 31, 2017, 3 Well LP and 2014 LP (collectively, the "<u>LP Debtors</u>") filed voluntary petitions under Chapter 7 of the Bankruptcy Code.

---

[1]    Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "<u>Payson Debtors</u>."

*See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180. LP Trustee was appointed as Chapter 7 Trustee for the LP Debtors.

4. <u>Stay Issues</u>. On February 21, 2017, LP Trustee filed his *Certificate of Notice of Bankruptcy Filing and Stay* in the Adversary Proceeding. *See* Docket No. 24 in Adversary Proceeding. On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion to Lift Stay* in LP Debtor's bankruptcy cases which, *inter alia*, provides that the parties are "granted relief from the automatic stay … to continue with and fully litigate claims that are or could be pled" in the Adversary Proceeding. Docket No. 26 in Case No. 17-40180 *and* Docket No. 29 in Case No. 17-40179.

5. <u>Amended Complaint</u>. On July 13, 2017, Payson Trustee filed his *First Amended Complaint* in the Adversary Proceeding. *See* Docket No. 25 in Adversary Proceeding.

6. <u>Jurisdiction & Venue</u>. This Court has jurisdiction over the subject matter of this Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## FACTUAL BACKGROUND

7. <u>Nature of Payson Debtors' Businesses</u>. Matthew C. Griffin ("<u>Griffin</u>") formed Payson Petroleum in 2008 to, *inter alia*, (i) promote the sale of interests in limited partnerships and (ii) operate oil and gas wells for such limited partnerships. Griffin formed Payson Operating in 2010 to act as a contract operator for Payson Petroleum. Griffin formed Maricopa in 2012 to, *inter alia*, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8. <u>Nature of 3 Well LP's and 2014 LP's Businesses</u>. Payson Petroleum Grayson, LLC formed 3 Well LP in 2013 and 2014 LP in 2014 to, *inter alia*, drill, complete, and own interests in the Subject Wells.

9. <u>Turnkey Agreements</u>. On or about October 13, 2013, Payson Petroleum and 3 Well LP entered into a Subscription Turn Key Agreement under which 3 Well LP agreed to pay Payson Petroleum certain amounts for the drilling and completion of the Subject Wells (the "<u>3 Well LP Turnkey Agreement</u>"). On or about January 12, 2014, Payson Petroleum and 2014 LP entered into a Subscription Turn Key Agreement under which 2014 LP agreed to pay Payson Petroleum certain amounts for the drilling and completion of the Subject Wells (the "<u>2014 LP Turnkey Agreement</u>" and collectively with the 3 Well LP Turnkey Agreement the "<u>Turnkey Agreements</u>"). In the Adversary Proceeding, Payson Petroleum asserts claims for breach of the Turnkey Agreements against 3 Well LP in the amount of $17,115,777 and 2014 LP in the amount of $5,343,803 (the "<u>Breach of Turnkey Agreement Claims</u>").

10. <u>Working Interest Assignments</u>. On or about Marcy 28, 2016, Maricopa assigned certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine #1 (API #181-31547) (collectively the "<u>Subject Wells</u>") to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066. The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "<u>Working Interest Assignments</u>"). In the Adversary Proceeding, Maricopa asserts claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce

Code against 3 Well LP and 2014 LP for avoidance of the Working Interest Assignments and recovery of the interests transferred or their value. Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("Traton"), the Payson Trustee's approved contract operating company.

11. _Additional Avoidable Transfers._ In addition to the Working Interest Assignments, Payson Petroleum transferred $1,274,310 to 3 Well LP and $2,862,000 to 2014 LP between January and February 2014 in exchange for interests in those limited partnerships that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "Investment Transfers"). In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfers from 3 Well LP and 2014 LP (the "Investment Transfer Claims").

### III.
### PROPOSED SETTLEMENT

12. The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties. Attached hereto as **Exhibit A** is a copy of the Settlement Agreement.[2]

13. _Agreed Final Judgment._ As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, _inter alia_, provide that the Wellbore Interest Assignments are

---

[2] To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control. This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement. Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson Petroleum on its Breach of Turnkey Agreement Claims against 3 Well LP in the amount of $8,557,888.50 and 2014 LP in the amount of $2,671,900.50.  *See* Exhibit 3 to Settlement Agreement.

14.  <u>Conveyance of Interests in Subject Wells</u>.  3 Well LP and 2014 LP will reassign the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by Traton until Maricopa sells those interests under 11 U.S.C. § 363.  As explained in further detail in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed as follows:  (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP.  Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the Subject Wells.

15.  <u>Allowed Claims</u>.  The Settlement Agreement also provides that the parties will agree to the following allowed unsecured claims:

- Payson Petroleum shall hold (i) an allowed unsecured claim in the 3 Well LP bankruptcy case in the amount of $8,557,888.50 and (ii) an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50;

- 3 Well LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement; and

- 2014 LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

16.  <u>Prosecution of and Participation in Avoidance Action Claims</u>.  The Settlement Agreement further provides that the parties will enter into (i) the 3 Well LP Subject Claims Assignment and Participation Agreement and (ii) the 2014 LP Subject Claims Assignment and

Participation Agreement (collectively the "Claims Assignment and Participation Agreements").

Pursuant to the Claims Assignment and Participation Agreements:

- 3 Well LP will assign a fifty percent (50%) interest in net recoveries from litigation of 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims, as defined in the 3 Well LP Subject Claims Assignment and Participation Agreement, with 3 Well LP retaining the remaining fifty percent (50%) interest; and

- 2014 LP will assign a fifty percent (50%) interest in net recoveries from litigation of 2014 LP Avoidance Action Claims and 2014 Partnership Related Claims, as defined in the 2014 LP Subject Claims Assignment and Participation Agreement, with 2014 LP retaining the remaining fifty percent (50%) interest.

Payson Petroleum shall be granted standing to prosecute 3 Well LP and 2014 LP Avoidance Action Claims and Partnership Related Claims in the 3 Well LP and 2014 LP bankruptcy cases, and 3 Well LP and 2014 LP shall enter into engagement agreements with special litigation counsel for the Payson Trustee to prosecute such claims for the benefit of the Payson Petroleum, 3 Well LP, and 2014 LP bankruptcy estates.

17.  **Releases.**  Except for claims expressly reserved in the Settlement Agreement, all claims or causes action between the parties will be released.

## IV.
## RATIONALE

18.  **Benefit to Maricopa Estate.**  The Maricopa bankruptcy estate receives the following benefits from the settlement:

- the interests assigned to 3 Well LP and 2014 LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 3 Well LP and/or 2014 LP.

19. <u>Benefit to Payson Petroleum Estate</u>. The Payson Petroleum bankruptcy estate receives the following benefits from the settlement:

- an allowed general unsecured claim in the 3 Well LP bankruptcy case in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 3 Well LP;

- an allowed general unsecured claim in the 2014 LP bankruptcy case in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 2014 LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 3 Well LP Avoidance Action Claims, 2014 LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, and 2014 LP Partnership Related Claims (the "<u>Subject Claims</u>") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement, 3 Well LP Subject Claims Assignment and Participation Agreement and 2014 LP Subject Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 3 Well LP and/or 2014 LP.

20. <u>Benefit to Payson Operating Estate</u>. Except for claims expressly preserved under the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which have been or could have been asserted against Payson Operating by 3 Well LP and/or 2014 LP.

21. <u>Benefit to 3 Well LP Estate</u>. The 3 Well LP bankruptcy estate receives the following benefits from the settlement:

- 3 Well LP will obtain 12.5055% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 3 Well LP will retain a fifty percent (50%) interest in all 3 Well LP Avoidance Action Claims Net Recovery and 3 Well LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and 3 Well LP Subject Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, 3 Well LP's bankruptcy estate is released from claims which have been or could have been asserted against 3 Well LP by Payson Petroleum, Payson Operating, and/or Maricopa.

22.    <u>Benefit to 2014 LP Estate</u>.  The 2014 LP bankruptcy estate receives the following benefits from the settlement:

- 2014 LP will obtain 32.4945% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 2014 LP will retain a fifty percent (50%) interest in all 2014 LP Avoidance Action Claims Net Recovery and 2014 LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and 3 Well LP Subject Claims Assignment and Participation Agreement; *and*

- except for claims expressly preserved under the Settlement Agreement, 2014 LP's bankruptcy estate is released from claims which have been or could have been asserted against 2014 LP by Payson Petroleum, Payson Operating, and/or Maricopa.

**V.**
**RELIEF REQUESTED**

23.    The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

## VI.
## BASIS FOR RELIEF

24.     Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id.* (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id.*

25.     The factors support granting the Joint Motion to Compromise. First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors. Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates. The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa, 3 Well LP, and 2014 LP. Additionally, the Settlement

Agreement (i) reduces 3 Well LP and 2014 LP's liability for failing to pay Payson Petroleum amounts owed under the Turnkey Agreements by fifty percent (50%), (ii) provides an arrangement for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii) eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar claims against partners of 3 Well LP and 2014 LP in different proceedings and forums. In sum, the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of their respective bankruptcy estates and should be approved. *See* Affidavit of Jason R. Searcy, attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

26. A proposed agreed order is attached hereto as **Exhibit D**.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estates of Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. respectfully request that the Court approve the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: ___, 2017

Respectfully submitted,

By: ___/s/_____

    Phil Snow
    State Bar No. 18812600
    Blake Hamm
    State Bar No. 24069869
    SNOW SPENCE GREEN LLP
    2929 Allen Parkway, Suite 2800
    Houston, Texas 77019
    (713) 335-4800
    (713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY,
CHAPTER 11 TRUSTEE FOR PAYSON
PETROLEUM, INC., PAYSON
OPERATING, LLC, AND MARICOPA
RESOURCES, LLC**

By: ___/s/_____

    Keith W. Harvey
    State Bar No. 09180100
    THE HARVEY LAW FIRM, P.C.
    6510 Abrams Road
    Suite 280
    Dallas, Texas 75231
    (972) 243-3960 Phone
    (972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J.
MOSER, CHAPTER 7 TRUSTEE FOR
PAYSON PETROLEUM 3 WELL, L.P.
AND PAYSON PETROLEUM 3 WELL
2014, L.P.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on __, 2017, a true and correct copy of this document was served (i) via the Court's electronic case filing system upon the parties listed below or by email listed below, (ii) via the Court's electronic case filing system for Eastern District of Texas upon all parties requesting electronic notice of all filings and (iii) via regular First Class Mail, properly addressed and postage prepaid, upon all parties listed on the Master Service List attached hereto.

| | |
|---|---|
| Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC<br>Mark A. Weisbart<br>12770 Coil Road, Suite 541<br>Dallas, TX 75251<br>weisbartm@earthlink.net,<br>TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;<br>tarah_simmons@earthlink.net | Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP<br>1757 Harpsichord Way<br>Henderson, NV 89012 |
| Dan Chern<br>The Law Offices of Dan Chern<br>12801 N. Central Expressway, Suite 1558<br>Dallas, Texas 75243<br>dbc@dchern.com | Daniel P. Winikka<br>12377 Merit Drive, Ste. 900<br>Dallas, TX 75251<br>danw@LFDSlaw.com |
| US Trustee<br>Office of the US Trustee<br>110 N. College Ave, #300<br>Tyler, TX 75702<br>USTPRegion06.TY.ECF@USDOJ.GOV | |

/s/ _____
Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\16-41044\20170905 9019 Motion-Payson Petroleum 16-41044.docx

# EXHIBIT A TO SETTLEMENT MOTION

# SETTLEMENT AGREEMENT

# [INTENTIONALLY LEFT BLANK]



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | JOINTLY ADMINISTERED |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | Case No. 17-40179 |
| | § | Chapter 7 |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, | § | Case No. 17-40180 |
| L.P., | § | Chapter 7 |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT OF JASON R. SEARCY
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GREGG | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

1

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

Further, Affiant sayeth not.

_____
Jason R. Searcy
Payson Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this _____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx



EXHIBIT
C

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | JOINTLY ADMINISTERED |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | Case No. 17-40179 |
| | § | Chapter 7 |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, | § | Case No. 17-40180 |
| L.P., | § | Chapter 7 |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT OF CHRISTOPHER J. MOSER
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement obtains for

1

the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. *Reh'g denied*, 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.)*, 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

_____
Christopher J. Moser
LP Trustee


SWORN AND SUBSCRIBED TO BEFORE ME on this ____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ( the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC ("Debtors") in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

      **ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.      Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and all parties in interest.

4.      Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment executed by 3 Well LP and the Subject Wells Assignment executed by 2014 LP, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.      The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      The 2014 LP Subject Claims Assignment and Participation Agreement attached as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

7.      This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

8.      A general unsecured claim of 3 Well LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 27.7891% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

9.      A general unsecured claim of 2014 LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 72.21084% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

10.     The releases provided for in the Settlement Agreement are hereby approved. Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released. Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are

released.

11.     Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the following:  (i) the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery (as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement), and (ii) the 2014 LP Avoidance Action Claims Net Recovery and the 2014 LP Partnership Related Claims Net Recovery (as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement).

12.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute the (i) 3 Well LP Avoidance Action Claims, (ii) 3 Well LP Partnership Related Claims, (iii) 2014 LP Avoidance Action Claims, and (iv) 2014 LP Partnership Related Claims, without further order of this Court.

13.     Payson Petroleum is hereby appointed (i) the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement, and (ii) the representative of the 2014 LP bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

14.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and

Participation Agreement or this Order.

15.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum has the exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims or the Payson/3 Well LP Partnership Related Claims that in its judgment would not be cost justified.

16.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of either parties entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

17.     Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims or the Payson/2014 LP Partnership Related Claims that in its judgment would not be cost justified.

18.     The Debtors and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance

with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

19.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

/s/
_____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

**AGREED TO IN FORM AND SUBSTANCE BY:**

/s/
_____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

/s/
_____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | Case No. 17-40179 |
| | § | |
| DEBTOR. | § | Chapter 7 |

## JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 (the "LP Trustee") to file their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to Compromise"), and in support thereof, respectfully show unto the Court the following:

# I.
# PROCEDURAL STATUS

1.     <u>Payson Debtor Bankruptcy Filings</u>.     On June 10, 2016, Payson Petroleum, Inc. ("<u>Payson Petroleum</u>"), Payson Operating, LLC ("<u>Payson Operating</u>"), and Maricopa Resources, LLC ("<u>Maricopa</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in this Bankruptcy Court.[1] *See* Docket No. 1 in Bankruptcy Case Nos. 16-41043, 16-40144, *and* 16-40145.     On July 12, 2016, the Bankruptcy Court entered orders converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy Code.     *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket No. 41 in Case No. 16-40145.     On July 18, 2016, the Bankruptcy Court entered orders approving the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee in the Payson Debtors' bankruptcy cases.     *See* Docket No. 55 in Case No. 16-41043, Docket No. 50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045.     On August 11, 2016, the Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under Case No. 16-41044.     *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-41044, *and* Docket No. 81 in Case No. 16-41045.

2.     <u>Adversary Proceeding</u>.     On November 1, 2016, the Payson Trustee filed his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in Adversary Proceeding No. 16-04106 (the "<u>Adversary Proceeding</u>") against Payson Petroleum 3 Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>").

3.     <u>LP Debtor Bankruptcy Filings</u>.     On January 31, 2017, 3 Well LP and 2014 LP (collectively, the "<u>LP Debtors</u>") filed voluntary petitions under Chapter 7 of the Bankruptcy Code. *See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180.  LP Trustee was

---

[1]     Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "<u>Payson Debtors</u>."

appointed as Chapter 7 Trustee for the LP Debtors.

4.     <u>Stay Issues</u>.  On February 21, 2017, LP Trustee filed his *Certificate of Notice of Bankruptcy Filing and Stay* in the Adversary Proceeding.  *See* Docket No. 24 in Adversary Proceeding.  On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion to Lift Stay* in LP Debtor's bankruptcy cases which, *inter alia*, provides that the parties are "granted relief from the automatic stay … to continue with and fully litigate claims that are or could be pled" in the Adversary Proceeding.  Docket No. 26 in Case No. 17-40180 *and* Docket No. 29 in Case No. 17-40179.

5.     <u>Amended Complaint</u>.  On July 13, 2017, Payson Trustee filed his *First Amended Complaint* in the Adversary Proceeding.  *See* Docket No. 25 in Adversary Proceeding.

6.     <u>Jurisdiction & Venue</u>.  This Court has jurisdiction over the subject matter of this Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## <u>FACTUAL BACKGROUND</u>

7.     <u>Nature of Payson Debtors' Businesses</u>.     Matthew C. Griffin ("<u>Griffin</u>") formed Payson Petroleum in 2008 to, *inter alia*, (i) promote the sale of interests in limited partnerships and (ii) operate oil and gas wells for such limited partnerships.  Griffin formed Payson Operating in 2010 to act as a contract operator for Payson Petroleum.  Griffin formed Maricopa in 2012 to, *inter alia*, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8.     <u>Nature of 3 Well LP's Business</u>.  Payson Petroleum Grayson, LLC formed 3 Well LP in 2013 to, *inter alia*, drill, complete, and own interests in the Subject Wells.

9.     <u>Turnkey Agreements</u>.  On or about October 13, 2013, Payson Petroleum and 3 Well LP entered into a Subscription Turn Key Agreement under which 3 Well LP agreed to pay Payson

Petroleum certain amounts for the drilling and completion of the Subject Wells (the "<u>Turnkey Agreement</u>").  In the Adversary Proceeding, Payson Petroleum asserts a claim for breach of the Turnkey Agreement against 3 Well LP in the amount of $17,115,777 (the "<u>Breach of Turnkey Agreement Claim</u>").

10.     <u>Working Interest Assignments</u>.  On or about Marcy 28, 2016, Maricopa assigned certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine #1 (API #181-31547) (collectively the "<u>Subject Wells</u>") to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers:  2016-00006064, 2016-00006065, and 2016-00006066.  The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "<u>Working Interest Assignments</u>").  In the Adversary Proceeding, Maricopa asserts claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code against 3 Well LP for avoidance of the Working Interest Assignments and recovery of the interests transferred to 3 Well LP or their value.  Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("<u>Traton</u>"), the Payson Trustee's approved contract operating company.

11.     <u>Additional Avoidable Transfers</u>.  In addition to the Working Interest Assignments, Payson Petroleum transferred $1,274,310 to 3 Well LP in January 2014 in exchange for interests

in 3 Well LP that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "Investment Transfer"). In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfer from 3 Well LP (the "Investment Transfer Claim").

## III.
## PROPOSED SETTLEMENT

12.    The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties. Attached hereto as **Exhibit A** is a copy of the Settlement Agreement.[2]

13.    Agreed Final Judgment. As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, *inter alia*, provide that the Wellbore Interest Assignments are avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson Petroleum on its Breach of Turnkey Agreement Claim against 3 Well LP in the amount of $8,557,888.50. *See* Exhibit 3 to Settlement Agreement.

14.    Conveyance of Interests in Subject Wells. 3 Well LP and 2014 LP will reassign the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by Traton until Maricopa sells those interests under 11 U.S.C. § 363. As explained in further detail

---

[2]    To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control. This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement. Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject
Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed
as follows: (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP.
Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the
Subject Wells.

15. <u>Allowed Claims</u>. The Settlement Agreement also provides that the parties will
agree to the following allowed unsecured claims:

- Payson Petroleum shall hold an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50; and

- 3 Well LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

16. <u>Prosecution of and Participation in Avoidance Action Claims</u>. The Settlement
Agreement further provides that the parties will enter into the 3 Well LP Subject Claims
Assignment and Participation Agreement (the "<u>Claims Assignment and Participation
Agreement</u>"). Pursuant to the Claims Assignment and Participation Agreement 3 Well LP will
assign a fifty percent (50%) interest in net recoveries from litigation of 3 Well LP Avoidance
Action Claims and 3 Well LP Partnership Related Claims, as defined in the Claims Assignment
and Participation Agreement, with 3 Well LP retaining the remaining fifty percent (50%) interest.
Payson Petroleum shall be granted standing to prosecute 3 Well LP Avoidance Action Claims and
Partnership Related Claims in the 3 Well LP bankruptcy case, and 3 Well LP shall enter into an
engagement agreement with special litigation counsel for the Payson Trustee to prosecute such
claims for the benefit of the Payson Petroleum and 3 Well LP bankruptcy estates.

17. <u>Releases</u>. Except for claims expressly reserved in the Settlement Agreement, all
claims or causes action between the parties will be released.

# IV.
# RATIONALE

18.     <u>Benefit to Maricopa Estate</u>.  The Maricopa bankruptcy estate receives the following

benefits from the settlement:

- the interests assigned to 3 Well LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 3 Well LP.

19.     <u>Benefit to Payson Petroleum Estate</u>.  The Payson Petroleum bankruptcy estate

receives the following benefits from the settlement:

- an allowed general unsecured claim in the 3 Well LP bankruptcy case in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 3 Well LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims (the "<u>Subject Claims</u>") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 3 Well LP.

20.     <u>Benefit to Payson Operating Estate</u>.  Except for claims expressly preserved under

the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which

have been or could have been asserted against Payson Operating by 3 Well LP.

21.     <u>Benefit to 3 Well LP Estate</u>.  The 3 Well LP bankruptcy estate receives the

following benefits from the settlement:

- 3 Well LP will obtain 12.5055% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 3 Well LP will retain a fifty percent (50%) interest in all 3 Well LP Avoidance Action Claims Net Recovery and 3 Well LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, 3 Well LP's bankruptcy estate is released from claims which have been or could have been asserted against 3 Well LP by Payson Petroleum, Payson Operating, and/or Maricopa.

## V.
## RELIEF REQUESTED

22.     The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

## VI.
## BASIS FOR RELIEF

23.     Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id.* (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the

following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id.*

24.     The factors support granting the Joint Motion to Compromise. First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors. Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates. The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa and 3 Well LP. Additionally, the Settlement Agreement (i) reduces 3 Well LP's liability for failing to pay Payson Petroleum amounts owed under the Turnkey Agreement by fifty percent (50%), (ii) provides an arrangement for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii) eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar claims against partners of 3 Well LP in different proceedings and forums. In sum, the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of their respective bankruptcy estates and should be approved. *See* Affidavit of Jason R. Searcy, attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

25.     A proposed agreed order is attached hereto as **Exhibit D**.

# PRAYER

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estate of Payson Petroleum 3 Well, L.P. respectfully request that the Court approve the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: ___, 2017                    Respectfully submitted,

By: ___/s/_____

        Phil Snow
        State Bar No. 18812600
        Blake Hamm
        State Bar No. 24069869
        SNOW SPENCE GREEN LLP
        2929 Allen Parkway, Suite 2800
        Houston, Texas 77019
        (713) 335-4800
        (713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

By: ___/s/_____

        Keith W. Harvey
        State Bar No. 09180100
        THE HARVEY LAW FIRM, P.C.
        6510 Abrams Road
        Suite 280
        Dallas, Texas 75231
        (972) 243-3960 Phone
        (972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on __, 2017, a true and correct copy of this document was served (i) via the Court's electronic case filing system upon the parties listed below or by email listed below, (ii) via the Court's electronic case filing system for Eastern District of Texas upon all parties requesting electronic notice of all filings and (iii) via regular First Class Mail, properly addressed and postage prepaid, upon all parties listed on the Master Service List attached hereto.

Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC
Mark A. Weisbart
12770 Coil Road, Suite 541
Dallas, TX 75251
weisbartm@earthlink.net,
TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;
tarah_simmons@earthlink.net

Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP
1757 Harpsichord Way
Henderson, NV 89012

Dan Chern
The Law Offices of Dan Chern
12801 N. Central Expressway, Suite 1558
Dallas, Texas 75243
dbc@dchern.com

Daniel P. Winikka
12377 Merit Drive, Ste. 900
Dallas, TX 75251
danw@LFDSlaw.com

US Trustee
Office of the US Trustee
110 N. College Ave, #300
Tyler, TX 75702
USTPRegion06.TY.ECF@USDOJ.GOV

/s/
Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\17-40179\20170905 9019 Motion-Payson Petroleum 17-40179.docx

# EXHIBIT A TO SETTLEMENT MOTION

# SETTLEMENT AGREEMENT

# [INTENTIONALLY LEFT BLANK]



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| **DEBTOR.** | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| **DEBTOR.** | § | |

## AFFIDAVIT OF JASON R. SEARCY
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF GREGG** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

1

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

Further, Affiant sayeth not.

_____
Jason R. Searcy
Payson Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this _____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| **DEBTOR.** | § | |

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| **DEBTOR.** | § | |

## AFFIDAVIT OF CHRISTOPHER J. MOSER
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement obtains for

1

the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. *Reh'g denied,* 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.),* 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

_____
Christopher J. Moser
LP Trustee


SWORN AND SUBSCRIBED TO BEFORE ME on this ____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS


I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx



UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, LP, | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

---

**AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND
SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019**

---

[Relates to Docket No. ___]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant

to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson

Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered

Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum

3 Well, L.P. ("Debtor") in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014,

L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the

Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant

to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant

to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of

the United States Constitution; and the Court having found that venue in this proceeding and the

Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having

found that the relief requested in the Motion is in the best interests of the Debtor's estate, its

creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the
Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1. The Motion is GRANTED as set forth herein.

2. The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3. Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4. Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5. The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.     This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

7.     A general unsecured claim of Payson Petroleum against 3 Well LP is hereby allowed in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50).

8.     The releases provided for in the Settlement Agreement are hereby approved.  Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are released.

9.     Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement.

10.    Payson Petroleum is hereby granted standing and authority to enforce and prosecute the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims without further order of this Court.  Payson Petroleum is hereby appointed the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the

3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 3 Well LP Partnership Related Claims or the 3 Well LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

*/s/*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

**AGREED TO IN FORM AND SUBSTANCE BY:**

*/s/*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

*/s/*
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution
Copy\Ex 7 Settlement Motions\17-40179\20170905 Agreed Order Granting 9019 Motion 17-40179.docx

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019
Page 5

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | |
| | § | |
| **DEBTOR.** | § | **Chapter 7** |

---

**JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT
TO BANKRUPTCY RULE 9019**

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION.   IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT.   IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING.   IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN.   THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to Compromise"), and in support thereof, respectfully show unto the Court the following:

**I.**

# **PROCEDURAL STATUS**

1.      <u>Payson Debtor Bankruptcy Filings</u>.   On June 10, 2016, Payson Petroleum, Inc. ("<u>Payson Petroleum</u>"), Payson Operating, LLC ("<u>Payson Operating</u>"), and Maricopa Resources, LLC ("<u>Maricopa</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in this Bankruptcy Court.[1]  *See* Docket No. 1 in Bankruptcy Case Nos. 16-41043, 16-40144, *and* 16-40145.   On July 12, 2016, the Bankruptcy Court entered orders converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy Code.  *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket No. 41 in Case No. 16-40145.   On July 18, 2016, the Bankruptcy Court entered orders approving the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee in the Payson Debtors' bankruptcy cases.  *See* Docket No. 55 in Case No. 16-41043, Docket No. 50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045.   On August 11, 2016, the Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under Case No. 16-41044.   *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-41044, *and* Docket No. 81 in Case No. 16-41045.

2.      <u>Adversary Proceeding</u>.   On November 1, 2016, the Payson Trustee filed his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in Adversary Proceeding No. 16-04106 (the "<u>Adversary Proceeding</u>") against Payson Petroleum 3 Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>").

3.      <u>LP Debtor Bankruptcy Filings</u>.   On January 31, 2017, 3 Well LP and 2014 LP (collectively, the "<u>LP Debtors</u>") filed voluntary petitions under Chapter 7 of the Bankruptcy Code.  *See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180.  LP Trustee was

---

[1]      Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "<u>Payson Debtors</u>."

appointed as Chapter 7 Trustee for the LP Debtors.

4.  <u>Stay Issues</u>.  On February 21, 2017, LP Trustee filed his *Certificate of Notice of Bankruptcy Filing and Stay* in the Adversary Proceeding.  *See* Docket No. 24 in Adversary Proceeding.  On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion to Lift Stay* in LP Debtor's bankruptcy cases which, *inter alia*, provides that the parties are "granted relief from the automatic stay … to continue with and fully litigate claims that are or could be pled" in the Adversary Proceeding.  Docket No. 26 in Case No. 17-40180 *and* Docket No. 29 in Case No. 17-40179.

5.  <u>Amended Complaint</u>.  On July 13, 2017, Payson Trustee filed his *First Amended Complaint* in the Adversary Proceeding.  *See* Docket No. 25 in Adversary Proceeding.

6.  <u>Jurisdiction & Venue</u>.  This Court has jurisdiction over the subject matter of this Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## FACTUAL BACKGROUND

7.  <u>Nature of Payson Debtors' Businesses</u>.  Matthew C. Griffin ("<u>Griffin</u>") formed Payson Petroleum in 2008 to, *inter alia*, (i) promote the sale of interests in limited partnerships and (ii) operate oil and gas wells for such limited partnerships.  Griffin formed Payson Operating in 2010 to act as a contract operator for Payson Petroleum.  Griffin formed Maricopa in 2012 to, *inter alia*, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8.  <u>Nature of 2014 LP's Businese</u>.  Payson Petroleum Grayson, LLC formed 2014 LP in 2014 to, *inter alia*, drill, complete, and own interests in the Subject Wells.

9.  <u>Turnkey Agreements</u>.  On or about January 12, 2014, Payson Petroleum and 2014 LP entered into a Subscription Turn Key Agreement under which 2014 LP agreed to pay Payson

Petroleum certain amounts for the drilling and completion of the Subject Wells (the "Turnkey Agreement"). In the Adversary Proceeding, Payson Petroleum asserts a claim for breach of the Turnkey Agreement against 2014 LP in the amount of $5,343,803 (the "Breach of Turnkey Agreement Claim").

10.    Working Interest Assignments. On or about Marcy 28, 2016, Maricopa assigned certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine #1 (API #181-31547) (collectively the "Subject Wells") to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066. The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "Working Interest Assignments"). In the Adversary Proceeding, Maricopa asserts claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code against 2014 LP for avoidance of the Working Interest Assignments and recovery of the interests transferred to 2014 LP or their value. Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("Traton"), the Payson Trustee's approved contract operating company.

11.    Additional Avoidable Transfers. In addition to the Working Interest Assignments, Payson Petroleum transferred $2,862,000 to 2014 LP between January and February 2014 in

exchange for interest in that limited partnership that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "Investment Transfers"). In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfers from 2014 LP (the "Investment Transfer Claim").

## III.
## PROPOSED SETTLEMENT

12.    The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties. Attached hereto as **Exhibit A** is a copy of the Settlement Agreement.[2]

13.    Agreed Final Judgment. As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, *inter alia*, provide that the Wellbore Interest Assignments are avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson Petroleum on its Breach of Turnkey Agreement Claim against 2014 LP in the amount of $2,671,900.50. *See* Exhibit 3 to Settlement Agreement.

14.    Conveyance of Interests in Subject Wells. 3 Well LP and 2014 LP will reassign the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by Traton until Maricopa sells those interests under 11 U.S.C. § 363. As explained in further detail

---

[2]    To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control. This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement. Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject
Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed
as follows: (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP.
Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the
Subject Wells.

       15.   <u>Allowed Claims</u>. The Settlement Agreement also provides that the parties will
agree to the following allowed unsecured claims:

- Payson Petroleum shall hold an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50; and

- 2014 LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

       16.   <u>Prosecution of and Participation in Avoidance Action Claims</u>. The Settlement
Agreement further provides that the parties will enter into the 2014 LP Subject Claims Assignment
and Participation Agreement (collectively the "<u>Claims Assignment and Participation Agreement</u>").
Pursuant to the Claims Assignment and Participation Agreements 2014 LP will assign a fifty
percent (50%) interest in net recoveries from litigation of 2014 LP Avoidance Action Claims and
2014 Partnership Related Claims, as defined in the Claims Assignment and Participation
Agreement, with 2014 LP retaining the remaining fifty percent (50%) interest. Payson Petroleum
shall be granted standing to prosecute 2014 LP Avoidance Action Claims and Partnership Related
Claims in the 2014 LP bankruptcy case, and 2014 LP shall enter into an engagement agreement
with special litigation counsel for the Payson Trustee to prosecute such claims for the benefit of
the Payson Petroleum and 2014 LP bankruptcy estates.

       17.   <u>Releases</u>. Except for claims expressly reserved in the Settlement Agreement, all
claims or causes action between the parties will be released.

# IV.
# RATIONALE

18.　　__Benefit to Maricopa Estate__.  The Maricopa bankruptcy estate receives the following benefits from the settlement:

- the interests assigned to 2014 LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 2014 LP.

19.　　__Benefit to Payson Petroleum Estate__.  The Payson Petroleum bankruptcy estate receives the following benefits from the settlement:

- an allowed general unsecured claim in the 2014 LP bankruptcy case in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 2014 LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 2014 LP Avoidance Action Claims and 2014 LP Partnership Related Claims (the "__Subject Claims__") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 2014 LP.

20.　　__Benefit to Payson Operating Estate__.  Except for claims expressly preserved under the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which have been or could have been asserted against Payson Operating by 2014 LP.

21.　　__Benefit to 2014 LP Estate__.  The 2014 LP bankruptcy estate receives the following benefits from the settlement:

- 2014 LP will obtain 32.4945% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 2014 LP will retain a fifty percent (50%) interest in all 2014 LP Avoidance Action Claims Net Recovery and 2014 LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; *and*

- except for claims expressly preserved under the Settlement Agreement, 2014 LP's bankruptcy estate is released from claims which have been or could have been asserted against 2014 LP by Payson Petroleum, Payson Operating, and/or Maricopa.

## V.
## RELIEF REQUESTED

22.    The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

## VI.
## BASIS FOR RELIEF

23.    Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id.* (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the

following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id.*

24.     The factors support granting the Joint Motion to Compromise.  First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors.  Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates.  The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa and 2014 LP.  Additionally, the Settlement Agreement (i) reduces 2014 LP's liability for failing to pay Payson Petroleum amounts owed under the Turnkey Agreement by fifty percent (50%), (ii) provides an arrangement for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii) eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar claims against partners of 2014 LP in different proceedings and forums.  In sum, the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of their respective bankruptcy estates and should be approved.  *See* Affidavit of Jason R. Searcy, attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

25.     A proposed agreed order is attached hereto as **Exhibit D**.

# PRAYER

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estate of Payson Petroleum 3 Well 2014, L.P. respectfully request that the Court approve the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: ___, 2017                    Respectfully submitted,

By: ___/s/_____

        Phil Snow
        State Bar No. 18812600
        Blake Hamm
        State Bar No. 24069869
        SNOW SPENCE GREEN LLP
        2929 Allen Parkway, Suite 2800
        Houston, Texas 77019
        (713) 335-4800
        (713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

By: ___/s/_____

        Keith W. Harvey
        State Bar No. 09180100
        THE HARVEY LAW FIRM, P.C.
        6510 Abrams Road
        Suite 280
        Dallas, Texas 75231
        (972) 243-3960 Phone
        (972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P. AND PAYSON PETROLEUM 3 WELL 2014, L.P.**

# CERTIFICATE OF SERVICE

      The undersigned certifies that on __, 2017, a true and correct copy of this document was served (i) via the Court's electronic case filing system upon the parties listed below or by email listed below, (ii) via the Court's electronic case filing system for Eastern District of Texas upon all parties requesting electronic notice of all filings and (iii) via regular First Class Mail, properly addressed and postage prepaid, upon all parties listed on the Master Service List attached hereto.

| | |
|---|---|
| <u>Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC</u><br>Mark A. Weisbart<br>12770 Coil Road, Suite 541<br>Dallas, TX 75251<br>weisbartm@earthlink.net,<br>TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;<br>tarah_simmons@earthlink.net | <u>Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP</u><br>1757 Harpsichord Way<br>Henderson, NV 89012 |
| Dan Chern<br>The Law Offices of Dan Chern<br>12801 N. Central Expressway, Suite 1558<br>Dallas, Texas 75243<br>dbc@dchern.com | Daniel P. Winikka<br>12377 Merit Drive, Ste. 900<br>Dallas, TX 75251<br>danw@LFDSlaw.com |
| US Trustee<br>Office of the US Trustee<br>110 N. College Ave, #300<br>Tyler, TX 75702<br>USTPRegion06.TY.ECF@USDOJ.GOV | |

                                                     _/s/_____
                                                     Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\17-40180\20170905 9019 Motion-Payson Petroleum 17-40180.docx

# EXHIBIT A TO SETTLEMENT MOTION

# SETTLEMENT AGREEMENT

# [INTENTIONALLY LEFT BLANK]



EXHIBIT
**B**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| **DEBTOR.** | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| **DEBTOR.** | § | |

## AFFIDAVIT OF JASON R. SEARCY
### IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
### AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF GREGG** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

1

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

      Further, Affiant sayeth not.

                         _____
                         Jason R. Searcy
                         Payson Trustee

      SWORN AND SUBSCRIBED TO BEFORE ME on this \_\_\_\_ day of _____, 2017, to certify with witness my hand and official seal.

                         _____
                         NOTARY PUBLIC, IN AND FOR
                         THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx



## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | **JOINTLY ADMINISTERED** |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | **Case No. 16-41044** |
| | § | |
| DEBTORS. | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, | § | **Case No. 17-40180** |
| L.P., | § | **Chapter 7** |
| | § | |
| DEBTOR. | § | |

### AFFIDAVIT OF CHRISTOPHER J. MOSER
### IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
### AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement obtains for

1

the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. *Reh'g denied,* 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.),* 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

_____

Christopher J. Moser
LP Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this \_\_\_\_ day of _____, 2017, to certify with witness my hand and official seal.

_____

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx

2



EXHIBIT

**D**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, LP, | § | **Case No. 17-40180** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

[Relates to Docket No. ___]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. ("Debtor") in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.      Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4.      Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.      The 2014 LP Subject Claims Assignment and Participation Agreement attached as

an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests

of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the

Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      This Order is binding upon the Parties and all other parties in interest in accordance

with the terms of the Settlement Agreement.

7.      A general unsecured claim of Payson Petroleum against 2014 LP is hereby allowed

in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S.

Dollars ($2,671,900.50).

8.      The releases provided for in the Settlement Agreement are hereby approved.  Upon

consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum,

Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined

in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all

claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum,

Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are

released.

9.      Upon consummation of the Settlement Agreement, Payson Petroleum shall own a

fifty percent (50%) participation interest in the 2014 LP Avoidance Action Claims Net Recovery

and the 2014 LP Partnership Related Claims Net Recovery as those terms are defined in the 2014

LP Subject Claims Assignment and Participation Agreement.

10.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute

the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims without further

order of this Court.  Payson Petroleum is hereby appointed the representative of the 2014 LP

bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014

LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 2014 LP Partnership Related Claims or the 2014 LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

_/s/_ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

**AGREED TO IN FORM AND SUBSTANCE BY:**

_/s/_ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

_/s/_ _____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\17-40180\20170905 Agreed Order Granting 9019 Motion 17-40180.docx

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

# EXHIBIT 8 TO SETTLEMENT AGREEMENT

# SUBJECT WELLS ASSIGNMENTS

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

<div align="center">

**ASSIGNMENT, CONVEYANCE AND BILL OF SALE**

</div>

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF GRAYSON** | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Payson Petroleum 3 Well 2014, L.P., whose address is c/o Christopher J. Moser, Chapter 7 Trustee, Quilling, Selander, Lownds, Winslett & Moser, P.C., 2001 Bryan Street, Ste. 1800, Dallas, TX 75201 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto Maricopa Resources, LLC, whose address is c/o Jason R. Searcy, Chapter 11 Trustee, Searcy & Searcy, P.C., 446 Forest Square, Longview, Texas 75605 (the "Assignee"), all of Assignor's right, title and interest in and to the wells and wellbores described herein.

<div align="center">

**DEFINITIONS**

</div>

1.01    Defined Terms.  The following terms, as used in this Assignment, shall have the meanings indicated below, unless the context otherwise requires:

"Crowe #2 Well" means the Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas.

"Elaine #1 Well" means the Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

"Effective Date" means September ___, 2017.

"Wells" means, collectively, the Crow #2 Well, the Elaine #1 Well and the Williams #1H Well.

"Williams #1H Well" means the Williams #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of Section 26, Block 1, 11, 15, 16, the JM Dodgin Survey, Abstract 378, Grayson County, Texas.

<div align="center">

**ASSIGNMENT AND AGREEMENT**

</div>

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignee the following, all of which are collectively called the "Assets".

a.    All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006066, Book OR, Vol. 5779, Pg. 404, in the Crowe #2 Well.

b.      All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006065, Book OR, Vol. 5779, Pg. 397, in the Elaine #1 Well.

c.      All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006064, Book OR, Vol. 5779, Pg. 389, in the William #1H Well.

d.      All right, title and interest in and to the oil and gas leases described in Exhibits A-1, A-2 and A-3 to this Assignment, insofar and only insofar as the leases cover the Wells, (collectively, the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Wells.

e.      All right, title and interest in all personal property and fixtures associated with the Wells, including without limitation the following:  all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

f.      All files and records relating to the items described in Paragraphs (a) through (f) maintained by Assignor and relating to the interests described in Paragraphs (a) through (f), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignee, and Assignee's heirs, successors and assigns, forever.

Assignee and Assignor further agree as follows:

1.      Title.  Assignor warrants title to the Assets from and against all persons claiming by, through and under Assignor, but not otherwise.

2.      Royalty Payments.  Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Wells to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify and hold Assignee harmless from and against all claims.  Assignee shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

3.      Indemnification Claims.  With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.  Reasonable attorneys' fees, court costs, interest, penalties and other expenses incurred in connection with the defense of claims shall be included in Assignee's and Assignor's indemnities.  All indemnities of Assignee shall extend to and cover the parent, subsidiary and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

4.     <u>No Third-Party Beneficiaries</u>.  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify or limit the rights of Assignor or Assignee, as between themselves.

5.     <u>Successors and Assigns</u>.  This Assignment and all of the terms, provisions, covenants, obligations and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignee, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignee as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

*[Signature Page Follows]*

3

EXECUTED on this _____ day of _____ 2017.

ASSIGNOR:

PAYSON PETROLEUM 3 WELL 2014, L.P.

By:_____
       Christopher J. Moser, Chapter 7 Trustee

ASSIGNEE:

MARICOPA RESOURCES, LLC

By:_____
       Jason R. Searcy, Chapter 11 Trustee

| STATE OF TEXAS | § |
|---|---|
| | § |
| COUNTY OF _____ | § |

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

| STATE OF TEXAS | § |
|---|---|
| | § |
| COUNTY OF GREGG | § |

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **MARICOPA RESOURCES, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\Assignment 1_WIs_3Well.docx

**EXHIBIT A-1**

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Crowe #2 Well (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas (from the surface of the earth down to the measured depth of 11,164').

2. All personal property and fixtures associated with the Crowe #2 Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|--------|--------|--------|------------------|--------------|----------------|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr. | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of the Estate of Dorothy L. Darnell | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr., Revocable Trust | Texas Land & Petroleum Company, LLC | Oil, Gas and Mineral Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|--------|--------|--------|------------------|--------------|----------------|
| Grayson | Nancy T. Cutter Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-1.docx

# EXHIBIT A-2

to

## WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Elaine #1 Well (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

2. All personal property and fixtures associated with the Elaine #1 Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume/Page | Effective Date |
|--------|--------|--------|-------------|----------------|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464/910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521/166 | 3/24/2014 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-2.docx

## EXHIBIT A-3

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The William #1H Well (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, Block 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, Texas.

2. All personal property and fixtures associated with the William #1H Well, including without limitation the following:  all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|--------|--------|--------|--------------|----------------|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981/402 | 2/1/2011 |
| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418/520 | 2/1/2008 |
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980/156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296/513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296/506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980/140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760/92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760/88 | 3/6/2007 |
| Grayson | Gary Wayne Odle | Matthew Avery | 4296/493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760/92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983/321 | 4/10/2011 |
| Grayson | Vurlas Land Wilson, a/ka Verlas Lane Wilson and Margorie Marie Wilson | Matthew Avery | 4296/469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993/305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4980/144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296/457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the JamesM. Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297/46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296/461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296/449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296/466 | 6/27/2007 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296/454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4296/445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355/704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274/698 | 3/15/2013 |
| Grayson | PCP Trust, Phillip C. Brown, Trustee and Philip Charles Brown | Paradise Springs, LLC | 5274/701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367/400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002/826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002/830 | 8/21/2011 |
| Grayson | Philip C. Brown, aka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002/834;838 | 8/21/2011 |

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

<div align="center">

**ASSIGNMENT, CONVEYANCE AND BILL OF SALE**
</div>

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GRAYSON | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Payson Petroleum 3 Well, L.P., whose address is c/o Christopher J. Moser, Chapter 7 Trustee, Quilling, Selander, Lownds, Winslett & Moser, P.C., 2001 Bryan Street, Ste. 1800, Dallas, TX 75201 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto Maricopa Resources, LLC, whose address is c/o Jason R. Searcy, Chapter 11 Trustee, Searcy & Searcy, P.C., 446 Forest Square, Longview, Texas 75605 (the "Assignee"), all of Assignor's right, title and interest in and to the wells and wellbores described herein.

<div align="center">

**DEFINITIONS**
</div>

1.01    Defined Terms. The following terms, as used in this Assignment, shall have the meanings indicated below, unless the context otherwise requires:

"Crowe #2 Well" means the Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas.

"Elaine #1 Well" means the Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

"Effective Date" means September ___, 2017.

"Wells" means, collectively, the Crow #2 Well, the Elaine #1 Well and the Williams #1H Well.

"Williams #1H Well" means the Williams #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of Section 26, Block 1, 11, 15, 16, the JM Dodgin Survey, Abstract 378, Grayson County, Texas.

<div align="center">

**ASSIGNMENT AND AGREEMENT**
</div>

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignee the following, all of which are collectively called the "Assets".

a.    All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006066, Book OR, Vol. 5779, Pg. 404, in the Crowe #2 Well.

b.     All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006065, Book OR, Vol. 5779, Pg. 397, in the Elaine #1 Well.

c.     All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006064, Book OR, Vol. 5779, Pg. 389, in the William #1H Well.

d.     All right, title and interest in and to the oil and gas leases described in Exhibits A-1, A-2 and A-3 to this Assignment, insofar and only insofar as the leases cover the Wells, (collectively, the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Wells.

e.     All right, title and interest in all personal property and fixtures associated with the Wells, including without limitation the following:  all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

f.     All files and records relating to the items described in Paragraphs (a) through (f) maintained by Assignor and relating to the interests described in Paragraphs (a) through (f), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignee, and Assignee's heirs, successors and assigns, forever.

Assignee and Assignor further agree as follows:

1.     Title.  Assignor warrants title to the Assets from and against all persons claiming by, through and under Assignor, but not otherwise.

2.     Royalty Payments.  Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Wells to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify and hold Assignee harmless from and against all claims.  Assignee shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

3.     Indemnification Claims.  With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.  Reasonable attorneys' fees, court costs, interest, penalties and other expenses incurred in connection with the defense of claims shall be included in Assignee's and Assignor's indemnities.  All indemnities of Assignee shall extend to and cover the parent, subsidiary and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

2

4.    No Third-Party Beneficiaries.  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify or limit the rights of Assignor or Assignee, as between themselves.

5.    Successors and Assigns.  This Assignment and all of the terms, provisions, covenants, obligations and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignee, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignee as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

*[Signature Page Follows]*

EXECUTED on this _____ day of _____ 2017.

ASSIGNOR:

PAYSON PETROLEUM 3 WELL, L.P.

By:_____
       Christopher J. Moser, Chapter 7 Trustee

ASSIGNEE:

MARICOPA RESOURCES, LLC

By:_____
       Jason R. Searcy, Chapter 11 Trustee

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF _____ | § |

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GREGG | § |

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **MARICOPA RESOURCES, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\Assignment 2_WIs_3Well.docx

**EXHIBIT A-1**

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Crowe #2 Well (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas (from the surface of the earth down to the measured depth of 11,164').

2. All personal property and fixtures associated with the Crowe #2 Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|--------|--------|--------|------------------|--------------|----------------|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr. | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of the Estate of Dorothy L. Darnell | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr., Revocable Trust | Texas Land & Petroleum Company, LLC | Oil, Gas and Mineral Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|---|---|---|---|---|---|
| Grayson | Nancy T. Cutter Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-1.docx

**EXHIBIT A-2**

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Elaine #1 Well (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

2. All personal property and fixtures associated with the Elaine #1 Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464/910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521/166 | 3/24/2014 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-2.docx

## EXHIBIT A-3

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The William #1H Well (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, Block 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, Texas.

2. All personal property and fixtures associated with the William #1H Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume /Page | Effective Date |
|--------|--------|--------|--------------|----------------|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|--------|--------|--------|--------------|----------------|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981/402 | 2/1/2011 |
| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418/520 | 2/1/2008 |
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980/156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296/513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296/506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980/140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760/92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760/88 | 3/6/2007 |
| Grayson | Gary Wayne Odle | Matthew Avery | 4296/493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760/92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983/321 | 4/10/2011 |
| Grayson | Vurlas Land Wilson, a/ka Verlas Lane Wilson and Margorie Marie Wilson | Matthew Avery | 4296/469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993/305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4980/144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296/457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the JamesM. Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297/46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296/461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296/449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296/466 | 6/27/2007 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|--------|--------|--------|--------------|----------------|
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296/454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4296/445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355/704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274/698 | 3/15/2013 |
| Grayson | PCP Trust, Phillip C. Brown, Trustee and Philip Charles Brown | Paradise Springs, LLC | 5274/701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367/400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002/826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002/830 | 8/21/2011 |
| Grayson | Philip C. Brown, aka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002/834;838 | 8/21/2011 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-3.docx



**EXHIBIT**

**B**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| **DEBTOR.** | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| **DEBTOR.** | § | |

## AFFIDAVIT OF JASON R. SEARCY
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF GREGG** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

1

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

Further, Affiant sayeth not.

_____
Jason R. Searcy
Payson Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this 20th day of Sept. , 2017, to certify with witness my hand and official seal.

_____

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

BETTY M. ALLEN
Notary Public, State of Texas
Comm. Expires 04-14-2021
Notary ID 7713174

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx


EXHIBIT
C

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

IN RE: §
§
PAYSON PETROLEUM, INC., § **JOINTLY ADMINISTERED**
MARICOPA RESOURCES, LLC §
PAYSON OPERATING, LLC, § Case No. 16-41044
§
DEBTORS. § Chapter 11

---

IN RE: §
§
PAYSON PETROLEUM 3 WELL, L.P., § Case No. 17-40179
§ Chapter 7
DEBTOR. §

---

IN RE: §
§
PAYSON PETROLEUM 3 WELL 2014, § Case No. 17-40180
L.P., § Chapter 7
§
DEBTOR. §

## AFFIDAVIT OF CHRISTOPHER J. MOSER
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

STATE OF TEXAS §
§
COUNTY OF DALLAS §

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement

1

obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. *Reh'g denied,* 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.),* 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

Christopher J. Moser
LP Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this _18th_ day of September, 2017, to certify with witness my hand and official seal.

NITA CHANCELLOR
Notary Public, State of Texas
Comm. Expires 01-09-2019
Notary ID 5162487

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx

2

# EXHIBIT D

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. ___]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ( the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC ("Debtors") in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.      Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and all parties in interest.

4.      Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment executed by 3 Well LP and the Subject Wells Assignment executed by 2014 LP, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.      The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6. The 2014 LP Subject Claims Assignment and Participation Agreement attached as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

7. This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

8. A general unsecured claim of 3 Well LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 27.7891% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

9. A general unsecured claim of 2014 LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 72.21084% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

10. The releases provided for in the Settlement Agreement are hereby approved. Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released. Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are

released.

11.     Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the following:  (i) the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery (as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement), and (ii) the 2014 LP Avoidance Action Claims Net Recovery and the 2014 LP Partnership Related Claims Net Recovery (as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement).

12.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute the (i) 3 Well LP Avoidance Action Claims, (ii) 3 Well LP Partnership Related Claims, (iii) 2014 LP Avoidance Action Claims, and (iv) 2014 LP Partnership Related Claims, without further order of this Court.

13.     Payson Petroleum is hereby appointed (i) the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement, and (ii) the representative of the 2014 LP bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

14.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and

Participation Agreement or this Order.

15.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum has the exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims or the Payson/3 Well LP Partnership Related Claims that in its judgment would not be cost justified.

16.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of either parties entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

17.     Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims or the Payson/2014 LP Partnership Related Claims that in its judgment would not be cost justified.

18.     The Debtors and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

19.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

*/s/ Blake Hamm*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


*/s/ Blake Hamm*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


*/s/ Keith W. Harvey*
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**



## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | Case No. 17-40179 |
| | § | |
| DEBTOR. | § | Chapter 7 |

---

### JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 (the "LP Trustee") to file their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to Compromise"), and in support thereof, respectfully show unto the Court the following:

---

# I.
## PROCEDURAL STATUS

1. <u>Payson Debtor Bankruptcy Filings</u>. On June 10, 2016, Payson Petroleum, Inc. ("<u>Payson Petroleum</u>"), Payson Operating, LLC ("<u>Payson Operating</u>"), and Maricopa Resources, LLC ("<u>Maricopa</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in this Bankruptcy Court.[1] *See* Docket No. 1 in Bankruptcy Case Nos. 16-41043, 16-40144, *and* 16-40145. On July 12, 2016, the Bankruptcy Court entered orders converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy Code. *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket No. 41 in Case No. 16-40145. On July 18, 2016, the Bankruptcy Court entered orders approving the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee in the Payson Debtors' bankruptcy cases. *See* Docket No. 55 in Case No. 16-41043, Docket No. 50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045. On August 11, 2016, the Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under Case No. 16-41044. *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-41044, *and* Docket No. 81 in Case No. 16-41045.

2. <u>Adversary Proceeding</u>. On November 1, 2016, the Payson Trustee filed his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in Adversary Proceeding No. 16-04106 (the "<u>Adversary Proceeding</u>") against Payson Petroleum 3 Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>").

3. <u>LP Debtor Bankruptcy Filings</u>. On January 31, 2017, 3 Well LP and 2014 LP (collectively, the "<u>LP Debtors</u>") filed voluntary petitions under Chapter 7 of the Bankruptcy Code. *See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180. LP Trustee was

---

[1] Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "<u>Payson Debtors</u>."

appointed as Chapter 7 Trustee for the LP Debtors.

4.    <u>Stay Issues</u>.  On February 21, 2017, LP Trustee filed his *Certificate of Notice of Bankruptcy Filing and Stay* in the Adversary Proceeding.  *See* Docket No. 24 in Adversary Proceeding.  On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion to Lift Stay* in LP Debtor's bankruptcy cases which, *inter alia*, provides that the parties are "granted relief from the automatic stay … to continue with and fully litigate claims that are or could be pled" in the Adversary Proceeding.  Docket No. 26 in Case No. 17-40180 *and* Docket No. 29 in Case No. 17-40179.

5.    <u>Amended Complaint</u>.  On July 13, 2017, Payson Trustee filed his *First Amended Complaint* in the Adversary Proceeding.  *See* Docket No. 25 in Adversary Proceeding.

6.    <u>Jurisdiction & Venue</u>.  This Court has jurisdiction over the subject matter of this Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## <u>FACTUAL BACKGROUND</u>

7.    <u>Nature of Payson Debtors' Businesses</u>.    Matthew C. Griffin ("<u>Griffin</u>") formed Payson Petroleum in 2008 to, *inter alia*, (i) promote the sale of interests in limited partnerships and (ii) operate oil and gas wells for such limited partnerships.  Griffin formed Payson Operating in 2010 to act as a contract operator for Payson Petroleum.  Griffin formed Maricopa in 2012 to, *inter alia*, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8.    <u>Nature of 3 Well LP's Business</u>.  Payson Petroleum Grayson, LLC formed 3 Well LP in 2013 to, *inter alia*, drill, complete, and own interests in the Subject Wells.

9.    <u>Turnkey Agreements</u>.  On or about October 13, 2013, Payson Petroleum and 3 Well LP entered into a Subscription Turn Key Agreement under which 3 Well LP agreed to pay Payson

Petroleum certain amounts for the drilling and completion of the Subject Wells (the "Turnkey Agreement"). In the Adversary Proceeding, Payson Petroleum asserts a claim for breach of the Turnkey Agreement against 3 Well LP in the amount of $17,115,777 (the "Breach of Turnkey Agreement Claim").

10.     Working Interest Assignments.  On or about Marcy 28, 2016, Maricopa assigned certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine #1 (API #181-31547) (collectively the "Subject Wells") to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers:  2016-00006064, 2016-00006065, and 2016-00006066.  The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "Working Interest Assignments").  In the Adversary Proceeding, Maricopa asserts claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code against 3 Well LP for avoidance of the Working Interest Assignments and recovery of the interests transferred to 3 Well LP or their value.  Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("Traton"), the Payson Trustee's approved contract operating company.

11.     Additional Avoidable Transfers.  In addition to the Working Interest Assignments, Payson Petroleum transferred $1,274,310 to 3 Well LP in January 2014 in exchange for interests

MOTION TO COMPROMISE                                                                                     Page 4

in 3 Well LP that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "<u>Investment Transfer</u>").  In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfer from 3 Well LP (the "<u>Investment Transfer Claim</u>").

### III.
### PROPOSED SETTLEMENT

12.    The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties.  Attached hereto as **Exhibit A** is a copy of the Settlement Agreement.[2]

13.    <u>Agreed Final Judgment</u>.  As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, *inter alia*, provide that the Wellbore Interest Assignments are avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson Petroleum on its Breach of Turnkey Agreement Claim against 3 Well LP in the amount of $8,557,888.50.  *See* Exhibit 3 to Settlement Agreement.

14.    <u>Conveyance of Interests in Subject Wells</u>.  3 Well LP and 2014 LP will reassign the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by Traton until Maricopa sells those interests under 11 U.S.C. § 363.  As explained in further detail

---

[2]    To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control.  This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement.  Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed as follows: (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP. Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the Subject Wells.

15.   <u>Allowed Claims</u>.  The Settlement Agreement also provides that the parties will agree to the following allowed unsecured claims:

- Payson Petroleum shall hold an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50; and

- 3 Well LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

16.   <u>Prosecution of and Participation in Avoidance Action Claims</u>.  The Settlement Agreement further provides that the parties will enter into the 3 Well LP Subject Claims Assignment and Participation Agreement (the "<u>Claims Assignment and Participation Agreement</u>").  Pursuant to the Claims Assignment and Participation Agreement 3 Well LP will assign a fifty percent (50%) interest in net recoveries from litigation of 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims, as defined in the Claims Assignment and Participation Agreement, with 3 Well LP retaining the remaining fifty percent (50%) interest. Payson Petroleum shall be granted standing to prosecute 3 Well LP Avoidance Action Claims and Partnership Related Claims in the 3 Well LP bankruptcy case, and 3 Well LP shall enter into an engagement agreement with special litigation counsel for the Payson Trustee to prosecute such claims for the benefit of the Payson Petroleum and 3 Well LP bankruptcy estates.

17.   <u>Releases</u>.  Except for claims expressly reserved in the Settlement Agreement, all claims or causes action between the parties will be released.

# IV.
# RATIONALE

18.     Benefit to Maricopa Estate.  The Maricopa bankruptcy estate receives the following benefits from the settlement:

- the interests assigned to 3 Well LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 3 Well LP.

19.     Benefit to Payson Petroleum Estate.  The Payson Petroleum bankruptcy estate receives the following benefits from the settlement:

- an allowed general unsecured claim in the 3 Well LP bankruptcy case in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 3 Well LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims (the "Subject Claims") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 3 Well LP.

20.     Benefit to Payson Operating Estate.  Except for claims expressly preserved under the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which have been or could have been asserted against Payson Operating by 3 Well LP.

21.     Benefit to 3 Well LP Estate.   The 3 Well LP bankruptcy estate receives the following benefits from the settlement:

- 3 Well LP will obtain 12.5055% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 3 Well LP will retain a fifty percent (50%) interest in all 3 Well LP Avoidance Action Claims Net Recovery and 3 Well LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, 3 Well LP's bankruptcy estate is released from claims which have been or could have been asserted against 3 Well LP by Payson Petroleum, Payson Operating, and/or Maricopa.

## V.
## RELIEF REQUESTED

22.    The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

## VI.
## BASIS FOR RELIEF

23.    Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id*. (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id*. at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the

following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id.*

24.     The factors support granting the Joint Motion to Compromise. First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors. Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates. The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa and 3 Well LP. Additionally, the Settlement Agreement (i) reduces 3 Well LP's liability for failing to pay Payson Petroleum amounts owed under the Turnkey Agreement by fifty percent (50%), (ii) provides an arrangement for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii) eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar claims against partners of 3 Well LP in different proceedings and forums. In sum, the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of their respective bankruptcy estates and should be approved. *See* Affidavit of Jason R. Searcy, attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

25.     A proposed agreed order is attached hereto as **Exhibit D**.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estate of Payson Petroleum 3 Well, L.P. respectfully request that the Court approve the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: September 21, 2017       Respectfully submitted,

By:    */s/ Blake Hamm*
         Phil Snow
         State Bar No. 18812600
         Blake Hamm
         State Bar No. 24069869
         SNOW SPENCE GREEN LLP
         2929 Allen Parkway, Suite 2800
         Houston, Texas 77019
         (713) 335-4800
         (713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**


By:    */s/ Keith W. Harvey*
         Keith W. Harvey
         State Bar No. 09180100
         THE HARVEY LAW FIRM, P.C.
         6510 Abrams Road
         Suite 280
         Dallas, Texas 75231
         (972) 243-3960 Phone
         (972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* was duly served as follows:

- On September 21, 2017 via the Court's electronic case filing system for the Eastern District of Texas upon all parties requesting electronic notice of all filings or by email as listed below.

- On September 21, 2017 via first class mail, properly addressed and postage prepaid, upon all parties listed on the Service List attached hereto.

| | |
|---|---|
| Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC<br>Mark A. Weisbart<br>12770 Coil Road, Suite 541<br>Dallas, TX 75251<br>weisbartm@earthlink.net,<br>TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;<br>tarah_simmons@earthlink.net | Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP<br>1757 Harpsichord Way<br>Henderson, NV 89012 |
| Dan Chern<br>The Law Offices of Dan Chern<br>12801 N. Central Expressway, Suite 1558<br>Dallas, Texas 75243<br>dbc@dchern.com | Daniel P. Winikka<br>12377 Merit Drive, Ste. 900<br>Dallas, TX 75251<br>danw@LFDSlaw.com |
| US Trustee<br>Office of the US Trustee<br>110 N. College Ave, #300<br>Tyler, TX 75702<br>USTPRegion06.TY.ECF@USDOJ.GOV | |

*/s/ Blake Hamm*
Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\17-40179\20170905 9019 Motion-Payson Petroleum 17-40179.docx

Label Matrix for local noticing
0540-4
Case 17-40179
Eastern District of Texas
Sherman
Wed Sep 20 14:40:03 CDT 2017

ACME Energy Company, LLC
1795 E. 71st Street
Tulsa, OK 74136-5108

Aki Miyasaki
1415 W. Rascher Ave.
Chicago IL 60640-1205

Alan Careddu
32 Lasky Rd.
Beacon Falls CT 06403-1242

Albert and Audrey Carse
7000 Brier Hill Court
Fort Worth TX 76132-7111

Alfred and Barbara Austin
15320 Fulton St.
Brighton CO 80602-5639

Allen and Marcia Rastede
211 S. Grove St.
Allen NE 68710-5145

Alma Foster
5316 Northcrest Rd.
Ft. Worth TX 76107-3217

Alvin and Jerry Ann McCool
1033 Creek Hollow Lane
Fort Worth TX 76131-3816

Amy Hutchison
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Anne Patterson
3725 Wakeforest
Houston TX 77098-5511

April Markovics
1620 N. Peters Lane
Stratford CT 06614-1088

Arnold Block
Blockster Investments Ltd.
2317 Clearview Ct.
Lewisville TX 75057-2108

Audrey Schwarzbein
31331 S. Coast Hwy.
Laguna Beach CA 92651-6989

B. E. Tuttle
Aquarius 2000, LLC
105 Front Street
Beaufort NC 28516-2120

Barbara Jacquin
205 Pipecreek Lane
Georgetown TX 78633-5444

Barry Brodbeck
1891 County Rd. B
Platteville WI 53818-9501

Beckie Harkins
6924 Chancery Lane
Williamsburg VA 23188-7567

Berkley Badger
324 Westgate Rd.
Tarpon Springs FL 34688-7402

Bernita Webster
2342 S. Laurel Ave.
Springfield MO 65807-8103

Betty and Harold Ackerman
Linda Walsh
9301 Neptune Drive
Mechanicsville VA 23116-2819

Betty and Joseph Brown
1648 Browns Lane
Hayes VA 23072-3904

Blake Rodgers
12454 Rendon Rd.
Burleson TX 76028-3014

Bobby Smith
3211 State Route 14
West Plains MO 65775-7469

Bobby Yates
1901 W. Loop 289, Ste 11
Lubbock TX 79407-1725

Bobby and Terri Bowland
1220 Vera Lane
Kennedale TX 76060-6002

Bradley Kubik
5639 Glen Oaks Pt.
West Des Moines IA 50266-6628

Brandon Chen
3172 Village Green Dr.
Aurora, IL 60504-7258

Brenda Henderson
4244 Summersweet Lane
Crowley TX 76036-8906

Brian Cepetelli
83 Ashwood Terrace
Stratford CT 06614-1101

Brian Fraus
4625 E State Highway 29
Bertram, TX 78605-4229

Bryan Buzbee
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Carl Brumley
4801 Washburn Ave.
Fort Worth TX 76107-3734

Cehuan Wang
5567 Gamay Way
San Diego CA 92130-5704

Charles Barry
33 Collins Street,
Worcester MA 01606-1421

Charles Cobb
Financial West Group
1022 Court Street
Lynchburg VA 24504-4502

Charles and Katherine Terry
8903 Madewood Ct.
Granbury TX 76049-4013

Charles and Sharon Henslee
4481 CR 1217
Cleburne TX 76033-8017

Cheryl Ogrodnik
6466 Watercrest Way, 301
Lakewood Ranch FL 34202-5238

Chris Lahiji
1408 Grant St.
Santa Monica CA 90405-1614

Christopher Friscia
4312 Hazy Meadow Lane
Grapevine TX 76051-5717

Christopher Kennon
2147 Inman
Nixa MO 65714-7049

Christopher Rooker
3728 Summercrest Dr
Fort Worth TX 76109-3301

Christopher Tasso
Anne Ciola-Tasso
148 Miller Rd.
Bethany CT 06524-3243

Claire Macfarland
1310 Hackberry Ln.
Winnetka IL 60093-1608

Clint Fowler
CFI Ventures, LP
127 Blush Hill Drive
Conroe TX 77304-1165

Eboney Cobb
Perdue Brandon Fielder Collins & Mott
500 E. Border Street, Suite 640
Arlington, TX 76010-7457

Crystal LeClercq
1412 Sandalwood Dr.
Murphys CA 95247-9460

Cynthia Woods
1412 Blue Quail Run
Crowley TX 76036-5778

Dana Markovics
220 Oronoque Rd.
Milford CT 06461-1831

Daniel Smeester
545 El Capitan Rd.
Danville CA 94526-4943

David Bartczak
4519 Ringrose Drive
Missouri City TX 77459-2918

David Stewart
4520 S. Harvard
Springfield MO 65804-6711

David Vednor
9861 Leatrice Dr.
Villa Park CA 92861-1315

David Zawisha
4009 Congress St.
Fairfield CT 06824-2040

David and Deborah Allnutt
8651 Canyon Crossing
Lantana TX 76226-5534

David and Lora Lyons
2121 Pinwood Circle
Arlington TX 76001-5652

David and Shirley Nolsheim
13480 88th Ave. North
Seminole FL 33776-2607

Deborah Hayden
4520 Cheval Blvd.
Lutz FL 33558-5331

Dennis Opitz
3949 Stonehenge Rd.
Fort Worth TX 76109-3415

Derik Einer Lindholm
333 Via Lido Nord
Newport Beach CA 92663-4649

Don Huntley
4804 N. Arcade Ave.
Fresno CA 93704-3013

Donald Carvello
14511 Charmeran Ave.
San Jose CA 95124-3566

Donald Chisholm
400 Lake Ave. NE Apt. C304
Largo FL 33771-1684

Donald DiFiore
2149 S. Kenton
Aurora CO 80014-1064

Donald Propst
6709 Yolanda
Fort Worth TX 76112-4129

Donald and Debra Woods
12 Foliate Way
Ladera Ranch CA 92694-1218

Douglas Hillenbrand
2102 Glenview Ln. NE
Rochester MN 55906-8398

Edward and Mary Lozito
9295 N. Star Dr.
Mechanicsville VA 23116-2821

Edwin Hardey
5670 Jasper Pointe Cir.
Castle Pines CO 80108-9151

Einer Lindholm
333 Via Lido Nord
Newport Beach CA 92663-4649

Elizabeth Williams
2374 Rosendale Village Ave.
Henderson NV 89052-8733

Elton Stone
2009 Oak Grove Rd. E
Burleson TX 76028-6997

Elwanda Santiago
137 Buchanan Court
Aledo TX 76008-3803

Eric Eaton
655 Appaloosa Rd.
Tarpon Springs FL 34688-9066

Ernest Morgan
28 Pocono Rd.
Newtown CT 06470-1248

Eve Dixon
PO Box 1510
Fort Worth TX 76101-1510

Fen V. Lee
104 Shore Dr.
Schaumburg IL 60193-4145

Francis M. Highly, Jr.
6390 Dwane Ave.
San Diego, CA 92120-3845

Frank Highly
6390 Dwane Ave.
San Diego CA 92120-3845

Garrett Flynt
Flynt Family Inc.
9944 Delamere Dr.
Fort Worth TX 76244-8536

Gary Amerson
5502 Challenger Ct.
Rockwall TX 75032-8464

Gary Baird, Jr
H. Gary Baird, Jr.
4269 Shorecrest Dr.
Dallas TX 75209-1721

Gary Donner
908 Main Street
Wayne NE 68787

Gary W. Crews
ACME Energy Company, LLC
1795 E. 71st St.
Tulsa OK 74136-5108

Gary Weiner
998 Emerald Bay
Laguna Beach CA 92651-1230

George Faris, III
6650 Trinity Heights Blvd
Ft. Worth TX 76132-3578

George Lee Weaver
11225 Northview Dr.
Aledo TX 76008-5206

George Phelps
1200 Crescent Dr.
Wayne NE 68787-1004

Gerald Meyr
33017 48th Ave. SW
Federal Way WA 98023-3311

Germaine Clarkson
1842 Cottage Dr.
Greeneville TN 37745-4388

Glen Markovics
42 Parkway Terrace
Milford CT 06461-1929

Glendal R. Dow
1320 Hardisty
Bedford TX 76021-6522

Glenn Jason Salsbury
301 Larkspur Ave.
Corona Del Mar CA 92625-3041

Gordon and Sylvia Quan
2 W. Terrace Dr.
Houston TX 77007-7039

Grace and Edward Chu
3528 Scottsdale Circle
Naperville IL 60564-4628

Grayson County
Linebarger Goggan Blair & Sampson, LLP
c/o Laurie A. Spindler
2777 N. Stemmons Frwy
Suite 1000
Dallas, TX 75207-2328

H.W. and Jill Ranelle
4917 Arbol Ct.
Fort Worth TX 76126-1847

James Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX 77019-7100

Hang Yuan and Yingzi Song
3227 N. Carriage Way
Arlington Heights IL 60004-1503

Harry and Shari Duty
424 Burton St.
Henderson NV 89015-7321

Keith William Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road
Suite 280
Dallas, TX 75231-7215

He Yuan
He Yuan and Ning Li
95177 Madison St.
Burr Ridge IL 60527

Heidi Beh
2808 Canto Nubiado
San Clemente CA 92673-6420

Helen Hale
51 Lafayette Avenue
Annapolis MD 21401-2833

Herbert and Joan Sobel
3311 Tack House Rd.
Trent Woods NC 28562-6646
Honey Duncan
136 Palm Circle
Atlantis FL 33462-6627

Howard Saretsky
233 Voltz Rd.
Northbrook IL 60062-4821

Howard and Karen Agster
5402 E. Glide Slope Ct.
Granbury TX 76049-4481

Hua Shang
77 Dunmore
Irvine CA 92620-3693

Inn Lee
104 Shore Dr.
Schaumburg IL 60193-4145

Jacalyn Goodrich
580 Miller Hodge Rd.
Inman SC 29349-8058

Jack Grumbles
204 Westfork Dt.
Fort Worth TX 76114-4364

Jack Long
2536 Highridge Drive
Chino Hills CA 91709-4890

James Burgess
JNJM, LLC
7203 Lake Mead Blvd.
Arlington TX 76016-4137

James Carroll
2505 Ridgemoor Ct.
Arlington TX 76016-1434

James Krause
500 W. 13th Street
Fort Worth TX 76102-4657

James Linden
500 River Road
Unit 13
Shelton, CT 06484-4594

James Rosemeyer
Bayley Investments, LLC
662 E. Business Hwy 151
Platteville WI 53818-3761

James and Gerlinde Stevens
1609 Browns Lane
Hayes VA 23072-3904

Jan Cheng and Ximing Yang
6912 Fieldstone Dr.
Burr Ridge IL 60527-6968

| | | |
|---|---|---|
| Janis Bridges<br>2817 Fossil Run Blvd<br>Fort Worth TX 76131-2010 | Janys Schroeder<br>39356 260th St.<br>Kingsley IA 51028-8634 | Jared Weisel<br>5423 Winsland Lane<br>Charlotte NC 28277-0527 |
| Jason R. Searcy, Ch. 11 Trustee in Jointly A<br>c/o Blake Hamm - Snow Spence Green LLP<br>2929 Allen Pkwy., Ste. 2800<br>Houston, TX 77019-7100 | Jason Searcy, Trustee<br>c/o Snow Spence Green LLP<br>2929 Allen Parkway, Suite 2800<br>Houston, TX 77019-7100 | Jay Pond<br>2729 Antero Dr.<br>Arlington TX 76006-3707 |
| Jeff Wilshire<br>4001 Kenosha Rd.<br>Plano TX 75024-7075 | Jeffrey Carter<br>2300 Bradwood Court<br>Arlington TX 76011-2241 | Jeffrey Cohen<br>24041 Swallowtail Drive<br>Laguna Niguel CA 92677-1368 |
| Jeffrey Meyer<br>7930 S. Jasmine Circle<br>Centennial CO 80112-3050 | Jeffrey T. Richard<br>4220 Bluff Point Court<br>Hazel Green, WI 53811-9360 | Jeffrey and Linda Richard<br>MidAmerica Financial Svcs, Inc.<br>35-B S. Court<br>PO Box 418<br>Platteville WI 53818-0418 |
| Jeremy Rauhauser<br>4412 Canter Way<br>Flower Mound TX 75028-8755 | Jeremy Szeto<br>24 Dupont Circle<br>Sugar Land TX 77479-2521 | Jerry and Joan Radcliff<br>5595 Thatch Cir.<br>Prescott AZ 86305-3824 |
| Jerry and Linda Hays<br>687 Cardinal Ridge Rd.<br>Burleson TX 76028-6206 | Jia Liu and Richard Z. Lu<br>120 S. Fiore Pkwy<br>Vernon Hills IL 60061-3270 | Jiangnan and Mary Chen<br>1 Newbury Ct.<br>Hawthorne Woods IL 60047-9144 |
| Jimmy and Linda Walker<br>P.O. Box 931<br>Stephenville TX 76401-0009 | Jiuzhou Wang and Meimei Xu<br>24 Butterfield Road<br>Lexington MA 02420-2585 | Jocelyn Carter<br>2175 Funston Ave.<br>San Francisco CA 94116-1904 |
| Joel Dow<br>8816 Calera Dr.<br>Austin TX 78735-1572 | Joel F. Woods<br>1412 Blue Quail Run<br>Crowley TX 76036-5778 | Joey and Ida Smith<br>3622 County Road 4660<br>Pomona MO 65789-9424 |
| Joey and Linda Jo Turner<br>7309 N. Norman Rd.<br>Warr Acres OK 73132-5723 | John Crowther<br>221 Hidden Acres Lane<br>Weatherford TX 76087-8643 | John Diaz<br>5648 N. McVicker Ave<br>Chicago IL 60646-6103 |
| John Gong<br>20603 W. Lakeridge Ct.<br>Kildeer IL 60047-8315 | John Heckler<br>Kijabe, LLC<br>3602 Vista Chase Court<br>Arlington TX 76001-6963 | John Johnson<br>6154 Haley Lane<br>Ft. Worth TX 76132-3875 |

John McElroy
109 SE Rambling Trail
Weatherford TX 76087-7631

John Miyasaki
1415 W. Rascher Ave.
Chicago IL 60640-1205

John Pollick
2336 Fir St.
Glenview IL 60025-2704

John and Christy Fonvielle
Tenants in Common
212 Casa Blanca Cir
Ft. Worth TX 76107-1804

John and Felicia King
976 Ekman Dr.
Batavia IL 60510-8940

Jonathan Alex Perkins
646 North Armstead St.
Alexandria VA 22312-2928

Joseph Bolin
3830 Rice Blvd.
Houston TX 77005-2826

Joseph Little
18646 Halff Bend Dr.
Cypress TX 77433-5090

Joseph and Arlene Seminoro
25 Washington Street
Trumbull CT 06611-4668

Joseph and Carol Arpino
104 Lavery Lane
Milford CT 06461-1624

Joseph and Caroline Schmitz
4565 Pressley Rd
Santa Rosa CA 95404-8866

Judith Watkins
3004 Steeplechase Trail
Arlington TX 76016-2317

Jun Zhou
748 Sigmund Rd.
Naperville IL 60563-1338

Kathy Adams
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Kazu Miyasaki
1415 W. Rascher Ave.
Chicago IL 60640-1205

Kazuo and Rosalyn Nanya
432 40th Ave.
San Francisco CA 94121-1510

Keith Jackson
Riverstone Resources, Ltd.
2591 Dallas Parkway, Suite 300
Frisco TX 75034-8563

Kelly Sanders
Hupakoe, LLC
3602 Vista Chase Ct.
Arlington TX 76001-6963

Kelly Sanders
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Kening Ma
3236 Pepper Tree Point
Chino Hills CA 91709-1504

Kenneth Aldrich
YKA Partners, LLC
3200 Airport Ave., Suite 16
Santa Monica CA 90405-6116

Kenneth Cheung
3902 Coulter Ct
Arlington TX 76016-3816

Kenneth and Patricia Lowe
1504 Dolorosa Ct.
The Villages FL 32159-9111

Kenneth and Terryalin Chapman
6447 S. Indianapolis Place
Tulsa OK 74136-1422

Kenneth and Tommie Dougan
1914 Briarwood Dr
Grand Prairie TX 75050-2216

Kevin and Anne Marie Peterson
305 Martins Cove Rd.
Annapolis MD 21409-5952

Kevin and Denise Potempa
KAPAA, LLC
Wailua LLC
P.O. Box 5156
Scottsdale AZ 85261-5156

Kimberly Fuller
PI Resources, LLC
5455 Honeysuckle Rd.
Midlothian TX 76065-7006

Krystle Lindholm
333 Via Lido Nord
Newport Beach CA 92663-4649

Kurt Erickson
4848 E. Milton Dr.
Cave Creek AZ 85331-5965

Laddie Zimmet
5101 FM 1187
Burleson TX 76028-3053

Lance Barlow
Barlow Investments
2727 E. Kirby DR, 9E
Houston TX 77098-1149

Lanning MacFarland
1310 Hackberry Ln.
Winnetka IL 60093-1608

Lawrence and Theodora Esposito
155 Rimmon Rd
North Haven CT 06473-2873

Lee Eggers
TMICO Lee G. Eggers
490 Camp St.
Platteville WI 53818-1707

Lei Yan
1505 Clarkson Ct.
Naperville IL 60565-1733

Leland Phillips
3709 Tumbling Trail Ct.
Fort Worth TX 76116-9328

Lewis Graham
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Lihong Huang and Xiaoli Zhang
26597 N. Kenwood Ct.
Mundelein IL 60060-3540

Liping Zhong
426 E. Sunnyside Ave.
Libertyville IL 60048-2937

Loewinsohn Flegle Deary Simon, LLP
c/o Daniel P. Winikka
12377 Merit Drive, Suite 900
Dallas,TX 75251-3102

Lucile Sims Wise
3600 Wosley Dr.
Fort Worth TX 76133-2137

Luis Gonzalez
2701 N. Grapevine Mills Blvd. 728
Grapevine TX 76051-2060

Lynne Bentsen
Barlow Investment Ltd.
2727 Kirby Dr. 9E
Houston TX 77098-1149

Malcolm V. Vye IRA
145 N. Sheridan
Winnetka IL 60093-4223

Marc Henn
Harvest Financial Advisors, LLC
440 Glendale Ave.
Cincinnati OH 45246-3815

Margaret McElroy
109 SE Rambling Trail
Burleson TX 76087-7631

Margaret Ng and Ross Chan
6112 Ascot Drive
Oakland CA 94611-2527

Margaret and David Grubbs
205 Kenmore Ave.
Elmhurst IL 60126-3517

Margarett Propst
6709 Yolanda Dr.
Fort Worth TX 76112-4129

Marisa Lindholm
333 Via Lido Nord
Newport Beach CA 92663-4649

Mark Modlin
4005 Kenosha Rd.
Plano TX 75024-7075

Mark and Romalyn Trewitt
4017 Messina Drive
Plano TX 75093-7038

Marlow and Rebecca Williams
197 Golden Crown Ave.
Henderson NV 89002-9267

Marty Prinz
Blind Canyon
1780 N. Kimball Avenue
Southlake TX 76092-4002

Marvin and Mary Van Hal
280 East Bob Jones Rd.
Southlake TX 76092-9275

Mary A. Gardecki
68 Auburn St.
Stratford CT 06614-3701

Mary Ann Swift
200 N. Matteson Ave
Republic MO 65738-1675

Mary Jane Pompa
21 Basking Ridge Rd.
Shelton CT 06484-3897

Mary Louise and Albert Edwards
778 Old Stratfield Rd.
Fairfield CT 06825-7427

Mary Russell
3111 Kelly Rd
Aledo TX 76008-4882

Meiyu Chen
913 Ashford Lane
Westmont IL 60559-2656

Michael Kudlik
4760 Highland Drive Suite 245
Holladay Utah 84117-5149

Michael Kusheba
235 Deerfield Dr
Stratford CT 06614-2767

Michael Mitchell
300 Landwyck Ln.
Flower Mound TX 75028-7144

Michael Musaraca
2414 Blue Spruce Ct.
Aurora IL 60502-6420

Michael Niemann
Julie Wakeman
14105 W. 72nd St.
Shawnee KS 66216-5520

Michael Pettis
Pettis Oil and Gas, LLC
3140 Brookhollow Ct.
Prosper TX 75078-0529

Michael Ranelle
4220 Harlanwood
Fort Worth TX 76109-2045

Michael Sobel
3311 Tack House Rd.
Trent Woods NC 28562-6646

Michael Yates
22292 Regnart Rd.
Cupertino CA 95014-4845

Michael and Pamela Spitzer
2010 Roma Ave.
Fruita CO 81521-8616

Mike Wang
390 Foothill Ave.
Sierra Madre CA 91024-1518

Molly Bayer
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Mona Fields
2006 Underwood Rd
Aledo TX 76008-2447

Monica Markovics
37 Parkway Terrace
Milford CT 06461-1930

Christopher Moser
2001 Bryan Street, Suite 1800
Dallas, TX 75201-3070

Natalia Ryndin
28832 Sean Dr.
Laguna Niguel CA 92677-4661

Nathan Sanders
BESCO Family Investments, LLC
3309 Mansfield Hwy.
Fort Worth TX 76119-6025

Neil Agrawal
2962 E. 45th Place
Tulsa OK 74105-5204

Noel and Sandra Markovics
42 Parkway Terrace
Milford CT 06461-1929

Noral and Juanita Gregory
2881 Oakbriar Trail
Fort Worth TX 76109-5556

Oklahoma City OK 73156
Julie Wakeman
14105 W. 72nd St.
Shawnee KS 66216-5520

Om and Veena Agrawal
209 Kenshire Dr.
Benbrook TX 76126-4113

Pamela Smith
481 Pecan
Burleson TX 76028-6309

Payson Petroleum 3 Well, L.P.
2652 FM 407 E, Ste. 250
Bartonville, TX 76226-7026

Peili Wu
3108 Regal Dr.
Arlington TX 76016-2028

Peter Backes
9448 Quail Ridge Dr.
Las Vegas NV 89134-8938

Peter and Monika Wettenstein
5325 E. Kathleen Rd.
Scottsdale AZ 85254-1758

Philip Zou
1065 Sanctuary Ct.
Vernon Hills IL 60061-3608

Philip and Anita Strand
1911 Nelson Ct.
DeSoto TX 75115-2142

Pottsboro ISD
% Perdue Brandon Fielder Et Al
500 E. Border Street
Suite 640
Arlington, TX 76010-7457

Pottsboro ISD
c/o Perdue Brandon Fielder et al
500 East Border Street, Suite 640
Arlington, TX 76010-7457

Prem Kumar
Wildflower LLC
817 E. San Angelo Ave.
Gilbert AZ 85234-3513

Randall McKenna
North Central Texas Holding and
Investments, Inc.
400 King Ranch Rd.
Southlake TX 76092-2026

Randall Swift
200 N. Matteson Ave
Republic MO 65738-1675

Randy Lew
4647 Sidonia Ct.
Ft. Worth TX 76126-1920

Ravindra and Kum Prakash
1170 Alderbrook Lane
San Jose CA 95129-2956

Raymond and Janet Smith
623 E. River Quarry Court
Eagle ID 83616-6351

Rebecca Lowe
643 SW T Highway
Holden MO 64040-8107

Reinhardt and Merlee Lange
136 Benedict Ave.
Fairfield CT 06825-1705

Renjie Fu
405 E. 58th St.
Westmont IL 60559-3368

Richard Graham
31331 S. Coast Hwy.
Laguna Beach CA 92651-6989

Richard Sobel
7410 Center Bay Dr.
North Bay Village FL 33141-4014

Richard and Sue Rector
5813 Wales Avenue
Fort Worth TX 76133-2711

Rick Gardner
420 Aspen Street
Prescott AZ 86303-4004

Rickey and Wendy Kelman
3120 E. Puget Ave.
Phoenix AZ 85028-5329

Robert Mendonsa
4507 Meadow Hill
McKinney TX 75070-4613

Robert Watkins
3004 Steeplechase Trail
Arlington TX 76016-2317

Robert and Carole Orsillo
60 Brierwood Drive
Watertown CT 06795-2016

Robert and Marianne Laska
73 Centennial Dr.
Milford CT 06461-1662

Robert and Peggy Yacobi
6 Chanteraine Close
Williamsburg VA 23185-8604

Rocky and Anna Howington
1 Saint Louis Lane
Pleasant Hill CA 94523-1139

Roger Damron
PO Box 21729
Chattanooga TN 37424-0729

Roland Lentz
1521 Vintage Hill Dr
Wayne NE 68787-1236

Romalyn Trewitt
4017 Messina Drive
Plano TX 75093-7038

Ron Franco
Bluepack LLC
P.O. Box 5287
Culver City CA 90231-5287

Ronald Barfield
700 W. Harwood, Suite A
Hurst TX 76054-3391

Ronald Guichard
2937 N. Talman Ave
Chicago IL 60618-7814

Ronald Oberle
30525 Fort Apache Drive
Congress AZ 85332

Ronald and Cheryl Waggoner
834 Doubletree Lane
Springfield MO 65810-3261

Ronald and Dibbie Adams
115 Ravenhill Dr.
Highlandville MO 65669-8227

Rose Marie Klein
1389 Calle de las Granvas
Livermore CA 94551-2595

Roy Williams
190 Mt. Pleasant Ave.
Stratford CT 06614-3420

Roy and Carol Ray
2000 Underwood Rd.
Aledo TX 76008-2447

Rudolph Perry
48 E. Bison Circle
Florissant CO 80816-7157

Russell Karr
8108 Modena Dr
Fort Worth TX 76126-6113

Ryan Grossman
207 Mt. Oak Pl.
Annapolis MD 21409-5868

Sandra Markovics
42 Parkway Terrace
Milford CT 06461-1929

Sara Ng
218 Wood Glen Lane
Oak Brook IL 60523-1533

Jason R Searcy
PO Box 3929
Longview, TX 75606-3929

Shannon Kmak
4005 Kenosha Rd.
Plano TX 75024-7075

Sharlene Sims Horak
4436 Overton Terrace
Fort Worth TX 76109-2517

Sharolyn Richardson
8003 Turkey Trail
Benbrook TX 76126-6101

Shawn Miller
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Shirley Nolsheim
13480 88th Ave. North
Seminole FL 33776-2607

Shrimant and Susy Ayaram
222 Glen Ridge Dr.
Murphy TX 75094-4205

Shu and Lisa Chen
5844 Golden Eye Dr.
Long Grove IL 60047-5048

Laurie A. Spindler
Linebarger, Goggan, Blair & Sampson
2777 N. Stemmons Frwy Ste 1000
Dallas, TX 75207-2328

Stephen Brown
8601 Westown Parkway 6108
West Des Moines IA 50266-1632

Steven O'Leary
Helen M. Hale - Principle
73 Conduit St.
Annapolis MD 21401-2601

Steven and Carolyn Wiesenfeld
66 Chester Rd.
Easton CT 06612-1806

Sue Chappell
5071 S. Burrows Ave.
Springfield MO 65810-2054

Sunil Agrawal
4323 S. Quincy Place
Tulsa OK 74105-4135

Suresh and Malini Kumar
5210 Pine Forest Rd.
Houston TX 77056-1313

Taher Sobhy
41 W. Mallard Lane
Lakeforest IL 60045-2902

Tami Rodgers
3309 Wild Oaks Ct
Burleson TX 76028-2333

Tammy McKain
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Tapan and Anisa Daftari
6595 Old Riverside Dr.
Altanta GA 30328-2744

Tarry Dahmer
2400 SW Wintercreek Ct.
Lee's Summit MO 64081-4085

Terry Scharig
Payson Petroleum
34601 E. Shore Rd.
Lone Jack MO 64070-9169

Theodora Esposito
155 Rimmon Rd
North Haven CT 06473-2873

Theodore Ding
1839 E 2453rd Lane
Camp Point IL 62320-2129

Thomas Clayton
26770 Sale Barn Ln
Belmont WI 53510-9725

Thomas Hayes
5115 N. Dysart Road, 202-217
Litchfield Park AZ 85340-3032

Thomas Hoppe
11051 Dormie Drive
San Antonio FL 33576-7048

Thomas and Lois Partridge
199 CR 1747
Clifton TX 76634-3990

Timothy Carman
2215 River Ridge Rd.
Arlington TX 76017-2631

Timothy Cypert
703 Jackson St.
Rockwall TX 75087-2212

Timothy Moore
313 Stonebridge Dr.
Rockwall TX 75087-3434

Timothy and Stacey Gibson
145 Links Lane
Aledo TX 76008-6917

Todd Stephens
230 Miramar Way
West Palm Beach FL 33405-4712

Todd and Melanie Gregory
600 W. Republic Road
Suite A116
Springfield MO 65807-5805

Tom Hinshaw
HRC Roofing
2845 Roadway Drive
Columbus IN 47201-7465

Toussaint Smith
2315 Legend Woods Ct.
Sugar Land TX 77479-5474

Tracy G. Ward
2313 S. Toledo Ave.
Tulsa OK 74114-3622

Travis Petree
2951 Rainbow Drive
Mason City IA 50401-8931

U.S. Attorney General
Department of Justice
Main Justice Building
10th & Constitution Ave., NW
Washington, DC 20530-0001

US Trustee
Office of the U.S. Trustee
110 N. College Ave.
Suite 300
Tyler, TX 75702-7231

Van and Mary Butler
62 Cypress Ct.
Durango CO 81301-3782

Virginia Humphrey
National Financial Services, LLC
340 S. Lemon Ave. 8337
Walnut CA 91789-2706

Virginia Rhodes
7570 E. Manley Dr.
Prescott Valley AZ 86314-5166

Warren and Fay Bush
PO Box 80140
Keller TX 76244-2902

Wendy Yang and Li Liu
Delftechpark 26, 2628
XH Delft, Netherlands

Wenzhong and Dana An
29602 N. Birch Ave.
Lake Bluff IL 60044-1176

William Cozad
10401 W. Charleston Blvd., V6
Las Vegas NV 89135-8706

William Dax Symonds
3170 Westcliff Rd. West
Fort Worth TX 76109-2128

William Kloster
112 Tres Vista Court
Cresson TX 76035-5838

William Martin
3708 Brookfield
Plano TX 75025-3780

William Ralph Westbrook
338 Park Brook Dr.
Dallas TX 75218-1152

William and Deborah Hayden
4520 Cheval Blvd.
Lutz FL 33558-5331

William and Joann Whelpley
308 Martel Ct.
Coppell TX 75019-7583

Daniel P. Winikka
Loewinsohn Flegle Deary Simon, LLP
12377 Merit Drive
Suite 900
Dallas, TX 75251-3102

Woodrow and Jo Ann Wilson
59250 E. 190 Rd
Fairland OK 74343-1753

Yang Zhao and Hong Yang
31 E. 59th St.
Westmont IL 60559-2501

Yanhua Shi
447 Lynn Ct.
Clarendon Hills IL 60514-1000

Ying Qi
2220 Joyce Lane
Naperville IL 60564-4404

Ying and Siwen Qu
1725 Holly Ct.
Long Grove IL 60047-5139

Yulduz Cohen
28264 Via Marcus
Laguna Niguel CA 92677-7527

Zhong Wu
3880 Tahoe St.
West Sacramento CA 95691-5452

Zhongwen Huang
Huifang Liang
3915 Snowbird Lane
Northbrook IL 60062
ZiJun Zhao
Kraehenbruch 60062-4269

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Grayson County
Linebarger Goggan Blair & Sampson, LLP
c/o Laurie A. Spindler
2777 N. Stemmons Frwy
Suite 1000
Dallas, TX 75207-2328

(u)HongMei Han
Kraehenbruch 4
Dortmund  44227

(u)Judy Fulton
Seven Wells Royalty, LLC
P.O. Box 21866

(d)Christopher Moser
2001 Bryan Street, Suite 1800
Dallas, TX 75201-3070

(d)Jason R. Searcy
P. O. Box 3929
Longview, TX 75606-3929

End of Label Matrix
Mailable recipients    340
Bypassed recipients      5
Total                  345

# EXHIBIT A

# SETTLEMENT AGREEMENT

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of September 20, 2017 by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee for the Searcy Bankruptcy Cases, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee for the Moser Bankruptcy Cases, referred to individually herein as a "Party" and collectively as, the "Parties."

# R E C I T A L S

**WHEREAS**, Christopher J. Moser is the duly appointed Chapter 7 Trustee in the 3 Well LP Bankruptcy Case and the 2014 LP Bankruptcy Case.

**WHEREAS**, Jason R. Searcy is the duly appointed Chapter 11 Trustee in the Payson Petroleum Bankruptcy Case, the Payson Operating Bankruptcy Case and the Maricopa Bankruptcy Case.

**WHEREAS**, on or about October 10, 2013, Payson Petroleum and 3 Well LP entered into a Subscription Turn Key Agreement under which 3 Well LP agreed to pay Payson certain amounts for the drilling and completion of the Subject Wells.

**WHEREAS**, on or about January 12, 2014, Payson Petroleum and 2014 LP entered into a Subscription Turn Key Agreement under which 2014 LP agreed to pay Payson Petroleum certain amounts for the drilling and completion of the Subject Wells.

**WHEREAS**, on or about March 28, 2016, Maricopa assigned certain interests in the Subject Wells to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066. The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

**WHEREAS**, on November 1, 2016, suit was filed against 3 Well LP and 2014 LP in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) and asserts, *inter alia*, (i) breach of contract claims against 3 Well LP and 2014 LP to recover amounts owed under

the 3 Well LP Turnkey Agreement and the 2014 LP Turnkey Agreement, and (ii) fraudulent transfer and preference claims against 3 Well LP and 2014 LP (the "<u>Adversary Proceeding</u>").

**WHEREAS**, the Parties have agreed to resolve, compromise, and settle all claims, disputes and controversies between the Parties which have been or could have been asserted in any and all of the Bankruptcy Cases or the Adversary Proceeding in accordance with the terms set forth in this Agreement.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the Parties hereby agree as follows:

## ARTICLE 1

### Definitions

1.01    <u>Defined Terms</u>.  The following terms, as used in this Agreement, shall have the meanings indicated below, unless the context otherwise requires:

"**2014 LP**" means Payson Petroleum 3 Well 2014, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well 2014, L.P. and the Payson Petroleum 3 Well 2014 L.P. bankruptcy estate.

"**2014 LP Bankruptcy Case**" means Bankruptcy Case No. 17-40180 styled *In re Payson Petroleum 3 Well 2014, L.P., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**2014 LP Subject Claims Assignment and Participation Agreement**" means an agreement between 2014 LP and Payson Petroleum, substantially in the form attached hereto as **Exhibit 1**.

"**2014 LP and 3 Well LP Retained Claims**" has the meaning set forth in <u>Section 4.04</u>.

"**3 Well LP**" means Payson Petroleum 3 Well, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well, L.P. and the Payson Petroleum 3 Well L.P. bankruptcy estate.

"**3 Well LP Bankruptcy Case**" means Bankruptcy Case No. 17-40179 styled *In re Payson Petroleum 3 Well, L.P., Debtor,* pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**3 Well LP Subject Claims Assignment and Participation Agreement**" means an agreement between 3 Well LP and Payson Petroleum, substantially in the form attached hereto as **Exhibit 2**.

"**Agreed Final Judgment**" means an Agreed Final Judgment to be filed in the Adversary

2

Proceeding, substantially in the form attached hereto as **Exhibit 3**.

"**Bankruptcy Cases**" means, collectively, the Payson Petroleum Bankruptcy Case, the Payson Operating Bankruptcy Case, the Maricopa Bankruptcy Case, the 3 Well LP Bankruptcy Case and the 2014 LP Bankruptcy Case.

"**Bankruptcy Code**" means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Business Day**" means any day that is not a Saturday, Sunday, or other day on which banks are authorized or required to close pursuant to the rules and regulations of the Federal Reserve System.

"**Closing**" shall have the meaning ascribed to it in Article 3 of this Agreement.

"**Closing Date**" shall have the meaning ascribed to it in Article 3 of this Agreement.

"**Direct Taxes**" means all ad valorem, property, gathering, transportation, pipeline regulating, gross receipts, windfall profit, severance, production, excise, eating content, carbon, value added, environmental, occupation, sales, use, fuel, and other taxes and governmental charges and assessments imposed on or as a result of all or any part of the Subject Wells, including any real or personal property, equipment or fixtures, to the extent used in connection with, or relating to, the Subject Wells, the Subject Hydrocarbons or the proceeds thereof. "**Direct Taxes**" do not include federal income taxes, state income taxes or franchise taxes or any penalty or interest surcharges thereon.

"**Execution Date**" means September 20, 2017.

"**Gas**" means natural gas and all other gaseous hydrocarbons, including casinghead gas, but excluding condensate and other liquid hydrocarbons removed by conventional mechanical field separation at the wellhead and also excluding the liquid products of any processing of Gas done prior to the sale of such Gas.

"**Hydrocarbons**" means Gas and/or Oil.

"**Joint Motion for Entry of Agreed Final Judgment**" shall mean the Joint Motion for Entry of Agreed Final Judgment, substantially in the form attached hereto as **Exhibit 4**.

"**Maricopa**" means Maricopa Resources, LLC, Jason Searcy in his capacity of Chapter 11 trustee of Maricopa Resources, LLC and the Maricopa Resources, LLC bankruptcy estate.

"**Maricopa Bankruptcy Case**" means Bankruptcy Case No. 16-41043 styled *In re Maricopa Resources, LLC, Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Marketing Expenses**" mean the costs incurred in connection with the marketing and sale of the Subject Wells, including broker fees, legal fees and other expenses incurred in connection with preparation of marketing materials, negotiation of any potential sale, preparation of documents and pleadings and/or preparation and attendance at hearings.

"**Moser Bankruptcy Cases**" means the 3 Well LP Bankruptcy Case and the 2014 LP Bankruptcy Case.

"**Oil**" means crude oil, condensate and other liquid hydrocarbons, including liquid hydrocarbons removed by conventional mechanical field separation at the wellhead and also including the liquid products of any processing of Gas done prior to the sale of such Gas.

"**Operating Agreement**" means the Contract Operating Services Agreement attached here as **Exhibit 5**.

"**Operating Reserve**" means the sum of $50,000 to be used by Maricopa exclusively to satisfy Subject Wells Operating Costs incurred subsequent to the Payson Operating bankruptcy petition date.

"**Operator**" means Traton Operating Company in its capacity as Contract Operator for Payson Operating.

"**Payson Operating**" means Payson Operating, LLC, Jason Searcy in his capacity of Chapter 11 trustee of Payson Operating, LLC and the Payson Operating, LLC bankruptcy estate.

"**Payson Operating Bankruptcy Case**" means Bankruptcy Case No. 16-41045 styled *In re Payson Operating, LLC, Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Payson Petroleum**" means Payson Petroleum, Inc., Jason Searcy in his capacity of Chapter 11 trustee of Payson Petroleum, Inc. and the Payson Petroleum, Inc. bankruptcy estate.

"**Payson Petroleum Bankruptcy Case**" means Bankruptcy Case No. 16-41044 styled *In re Payson Petroleum, Inc., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Payson Petroleum, Payson Operating and Maricopa Retained Claims**" has the meaning set forth in Section 4.05.

"**Searcy Bankruptcy Cases**" means the Maricopa Bankruptcy Case, the Payson Operating Bankruptcy Case and the Payson Petroleum Bankruptcy Case.

4

**"Settlement Approval Orders"** means Orders, substantially in the form attached hereto as **Exhibit 6**, granting the relief requested in the Settlement Motion which is to be filed in each of the Bankruptcy Cases.

**"Settlement Motions"** means the Joint Motions for Approval of Settlement and Compromise, substantially in the form attached hereto as **Exhibit 7**, which are to be filed in each of the Bankruptcy Cases.

**"Settlement Transaction Documents"** means the Operating Agreement, Agreed Final Judgment, the Joint Motion for Entry of Agreed Final Judgment, Settlement Approval Order, Settlement Motions, 3 Well LP Subject Claims Assignment and Participation Agreement, 2014 LP Subject Claims Assignment and Participation Agreement, and any other documents and instruments entered into in connection with this Agreement.

**"Subject Wells"** mean, collectively, the William #1H (API # 181-31557), the Crowe #2 (API #181-31543), and the Elaine #1 (API #181-31547) oil and gas wells and related leasehold interests.

**"Subject Wells Account"** means a segregated account established by Jason Searcy as Chapter 11 Trustee of Maricopa at a commercial banking institution.

**"Subject Wells Assignments"** means assignments in the forms attached hereto as **Exhibit 8**.

**"Subject Wells Net Proceeds"** means the (i) Subject Wells Net Production Proceeds, plus (ii) Subject Wells Net Sales Proceeds, minus (iii) Direct Taxes and the Operating Reserve, as determined on a cumulative basis.

**"Subject Wells Net Production Proceeds"** means the amount (computed on a cumulative basis) by which the gross proceeds received by Maricopa from the sale of the Subject Wells Hydrocarbons exceeds Operating Costs, and the Operating Reserve.

**"Subject Wells Net Sales Proceeds"** means the amount by which the gross proceeds from the sale of the Subject Wells exceeds Marketing Expenses, Subject Wells Operating Costs and valid perfected liens which are not subject to avoidance pursuant to Chapter 5 of the Bankruptcy Code, as determined by an order entered in the Bankruptcy Cases.

**"Subject Wells Operating Costs"** means all expenses incurred in connection with (i) insuring, operating, producing, reworking and maintaining the Subject Wells, (ii) materials, supplies, equipment and other personal property and fixtures purchased for use and actually used on, or direction in connection with the Subject Wells, (iii) gathering, treating, processing, transportation and marketing hydrocarbons produced from the Subject Wells, (iv) plugging, abandonment and remediation (including the Operating Reserve), and (v) Operator fees and expenses related to the Subject Wells.

**"Suspended Revenues"** mean the Subject Wells Net Production Proceeds as of the

Closing Date less the Operating Reserve.

       1.02   <u>Amendment of Defined Instruments</u>.  Unless the context otherwise requires or unless otherwise provided herein, the terms defined in this Agreement which refer to a particular agreement, instrument or document also refer to and include all renewals, extensions, modifications, amendments and restatements of such agreement, instrument or document. Nothing contained in this Agreement will be construed to authorize any renewal, extension, modification, amendment or restatement of this Agreement or any agreement, instrument or document referred to herein.

       1.03   <u>References and Titles</u>.  All references in this Agreement to Exhibits, Articles, Sections, subsections and other subdivisions refer to the Exhibits, Articles, Sections, subsections and other subdivisions of this Agreement unless expressly provided otherwise.  Titles appearing at the beginning of any subdivisions are for convenience only, do not constitute any part of those subdivisions and will be disregarded in construing the language contained in those subdivisions. The words "this Agreement," "this instrument," "herein," "hereof," "hereby," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.  The phrases "this section" and "this subsection" and similar phrases refer only to the sections or subsections of this Agreement in which those phrases occur.  The word "or" is not exclusive; the word "including" (in its various forms) means "including without limitation."  Pronouns in masculine, feminine and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires.  The word "will" shall be construed to have the same meaning and effect as the word "shall."  Unless the context requires otherwise (a) any reference herein to any law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time; (b) any reference herein to any person shall be construed to include such person's successors and assigns (subject to the restrictions contained herein); (c) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including;" and (d) all dollar amounts refer to United States dollars.  A reference herein to a number of "days" will be intended to refer to that number of calendar (as opposed to working) days, unless otherwise specifically provided.  No provision of this Agreement or the Settlement Transaction Documents shall be interpreted or construed more strictly against any person solely because such person or its legal representative drafted such provision.

<div align="center">

**ARTICLE 2**

**<u>Settlement Motions and Settlement Approval Orders</u>**

</div>

       2.01   <u>Execution Date Deliveries</u>.  On the Execution Date, each Party shall execute and deliver to the other Parties the following:

- The Settlement Motions;
- The proposed form of Settlement Approval Orders;
- The Joint Motion for Entry of Agreed Final Judgment; and

<div align="center">6</div>

- The proposed form of Agreed Final Judgment.

2.02    Filing of Motions.  Counsel for Payson Petroleum, Payson Operating and Maricopa shall cause the Settlement Motions and proposed Settlement Approval Orders to be filed in the respective Bankruptcy Cases.  Counsel for Payson Petroleum, Payson Operating and Maricopa shall cause the Joint Motion for Entry of Agreed Final Judgment and proposed form of Agreed Final Judgment to be filed in the Adversary Proceeding.

2.03    Prosecution of Motions.  Each Party shall cooperate with the other Parties and use their good faith best efforts to support entry by the Bankruptcy Court of (i) the Settlement Approval Orders, and (ii) the Agreed Final Judgment.  The Parties stipulate that 2014 LP and 3 Well LP consent to entry of the Agreed Final Judgment is subject to Bankruptcy Court approval of the Settlement Motions.

## ARTICLE 3

## Closing

3.01    Time and Place.  The Closing on the transactions contemplated in this Agreement shall be conducted within three (3) Business Days after entry of the Settlement Approval Orders (the "Closing Date") at the office of Snow Spence Green LLP located at 2929 Allen Parkway, Suite 2800, Houston, Texas 77019 or such later date as may be agreed upon by the Parties (the "Closing").

3.02    Delivery by Maricopa to 3 Well LP.  On the Closing Date, Maricopa shall deliver to 3 Well LP the following:  (a) a sum equal to 27.79% of forty-five percent (45%) of the Suspended Revenues by wire transfer to the following account.

> BOK Financial
> 7500 College Blvd., Ste. 1450
> Overland Park, KS  66210
> ABA:  101015101
> Account Name:  Payson Petroleum 3 Well, L.P.
> Account Number:  1151505797

3.03    Delivery by Maricopa to 2014 LP.  On the Closing Date, Maricopa shall deliver to 2014 LP the following:  (a) a sum equal to 72.21% of forty-five percent (45%) of the Suspended Revenues by wire transfer to the following account.

> BOK Financial
> 7500 College Blvd., Ste. 1450
> Overland Park, KS  66210
> ABA:  101015101
> Account Name:  Payson Petroleum 3 Well 2014, L.P.
> Account Number:  1151505775

3.04     Delivery by 3 Well LP to Maricopa.  On the Closing Date, 3 Well LP shall assign all right, title and interests in 55% of the Suspended Revenues and deliver to Maricopa the duly executed Subject Wells Assignments.

3.05     Delivery by 2014 LP to Maricopa.  On the Closing Date, 2014 LP shall assign all right, title and interests in 55% of the Suspended Revenues and deliver to Maricopa the duly executed Subject Wells Assignments.

3.06     Delivery by 3 Well LP to Payson Petroleum.  On the Closing Date, 3 Well LP shall deliver to Payson Petroleum the duly executed 3 Well LP Subject Claims Assignment and Participation Agreement.

3.07     Delivery by 2014 LP to Payson Petroleum.  On the Closing Date, 2014 LP shall deliver to Payson Petroleum a duly executed 2014 LP Subject Claims Assignment and Participation Agreement.

3.08     Delivery by Payson Petroleum to 3 Well LP.   On the Closing Date, Payson Petroleum shall deliver to 3 Well LP a duly executed 3 Well LP Subject Claims Assignment and Participation Agreement.

3.09     Delivery by Payson Petroleum to 2014 LP.  On the Closing Date, Payson Petroleum shall deliver to 2014 LP a duly executed 2014 LP Subject Claims Assignment and Participation Agreement.

## ARTICLE 4

## Claims Stipulations and Releases

4.01     Allowed Claims of Payson Petroleum.  The Parties stipulate and agree to allowance of (i) a general unsecured claim of Payson Petroleum in the 3 Well LP Bankruptcy Case in the amount of $8,557,888.50, and (ii) a general unsecured claim of Payson Petroleum in the 2014 LP Bankruptcy Case in the amount of $2,671,900.50.

4.02     Allowed Claim of 3 Well LP.  The Parties stipulate and agree to allowance of a general unsecured claim of 3 Well LP in the Maricopa Bankruptcy Case in an amount equal to 27.78916% of the Subject Wells Net Proceeds actually disbursed to Maricopa pursuant to this Agreement.

4.03     Allowed Claim of 2014 LP.  The Parties stipulate and agree to allowance of a general unsecured claim of 2014 LP in the Maricopa Bankruptcy Case in an amount equal to 72.21084% of the Subject Wells Net Proceeds actually disbursed to Maricopa pursuant to this Agreement.

4.04    Release by 2014 LP and 3 Well LP.  Effective as of the Closing Date, 2014 LP and 3 Well LP (except for the 2014 LP and 3 Well LP Retained Claims as defined in this section) hereby release, waive, and discharge Payson Petroleum, Payson Operating, Maricopa, the Operator and the bankruptcy estates of Payson Petroleum, Payson Operating and Maricopa, from and against any and all liabilities, claims, rights, debts, causes of action, suits, matters, issues, damages, costs, injuries and demands whatsoever, whether at law or in equity, whether by contract or tort, at law or under any statute, known or unknown, discovered or undiscovered, accrued or unaccrued, liquidated or non-liquidated, contingent or absolute, which 2014 LP and/or 3 Well LP ever had or now has, or may hereafter have, either directly or indirectly, individually, representatively, derivatively, by virtue of subrogation, or by virtue of any action, inaction, matter, event, representation or circumstances, transactions or occurrences prior to the Closing Date ("2014 LP and 3 Well LP Released Claims").  Notwithstanding the foregoing, the release provided for in this section does not extend to or include (i) allowed unsecured claims set forth in Sections 4.02 and 4.03, and (ii) the contractual obligations of Payson Petroleum, Payson Operating and Maricopa pursuant to this Agreement and the Settlement Transaction Documents ("2014 LP and 3 Well LP Retained Claims").

4.05    Release by Payson Petroleum, Payson Operating and Maricopa.  Effective as of the Closing Date, Payson Petroleum, Payson Operating and Maricopa (except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims as defined in this section), hereby release, waive, and discharge 2014 LP and 3 Well LP and the bankruptcy estates of 2014 LP and 3 Well LP, from and against any and all liabilities, claims, rights, debts, causes of action, suits, matters, issues, damages, costs, injuries and demands whatsoever, whether at law or in equity, whether by contract or tort, at law or under any statute, known or unknown, discovered or undiscovered, accrued or unaccrued, liquidated or non-liquidated, contingent or absolute, which Payson Petroleum, Payson Operating and/or Maricopa ever had or now has, or may hereafter have, by virtue of any action, inaction, matter, event, representation or circumstances, transactions or occurrences prior to the Closing Date.  Notwithstanding the foregoing, the release provided for in this section does not extend to or include (i) allowed unsecured claims set forth in Section 4.01, and (ii) the contractual obligations of 2014 LP and 3 Well LP pursuant to this Agreement and the Settlement Transaction Documents, (iii) claims and causes of action against any general partner or limited partner of 2014 LP or 3 Well LP, (iv) the Payson/3 Well LP Partnership Related Claims (as that term is defined in the 3 Well LP Subject Claims Assignment and Participation Agreement), (v) the Payson/2014 LP Partnership Related Claims (as that term is defined in the 2014 LP Subject Claims Assignment and Participation Agreement), and (vi) all rights with respect to all of the above, including as to third parties ("Payson Petroleum, Payson Operating and Maricopa Retained Claims").

## ARTICLE 5

## Operation of Subject Wells

5.01    Operator.  Traton Operating Company (an affiliate of Traton Engineering Associates, L.P.) ("Traton") shall serve as contract operator of the Subject Wells in accordance with the terms of the Operating Agreement until such time as Traton either resigns as Operator or

is removed as Operator by the unanimous decision of Maricopa, 2014 LP and 3 Well LP. Effective as of the Closing Date, 2014 LP and 3 Well LP ratify and agree to be bound by the terms of the Operating Agreement.

      5.02   <u>Operation Standards</u>.  The Parties agree that Operator shall not be liable for any act or omission taken or omitted to be taken in its capacity as Operator of the Subject Wells, other than acts or omissions resulting from Operator's willful misconduct, gross negligence, or fraud.  The Operator may, in connection with the performance of its operation of the Subject Wells, and in its sole absolute discretion, consult with Payson Operating and/or Payson Operating's attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Operator shall be under no obligation to consult with Payson Operating and/or Payson Operating's the attorneys, accountants, or agents, and its determination to not do so shall not result in imposition of liability on the Operator unless such determination is based on willful misconduct, gross negligence, or fraud.  The bankruptcy estates of Maricopa, 3 Well LP, and 2014 LP shall, JOINTLY AND SEVERALLY, indemnify and hold harmless the Operator and his or her agents, representatives, professionals, and employees ("<u>Operator Group</u>") from and against and in respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to attorneys' fees and costs arising out of or due to Operator Group's actions or omissions, or consequences of such actions or omissions, with respect to the operation of the Subject Wells, irrespective of cause or negligence; <u>provided</u>, <u>however</u>, that no such indemnification will be made to the Operator Group for such actions or omissions as a result of willful misconduct, gross negligence, or fraud.

## ARTICLE 6

## <u>Subject Wells Net Proceeds</u>

      6.01   <u>Establishment of Accounts</u>.  Within ten (10) Business Days following the Closing Date, Maricopa shall establish the Subject Wells Account.

      6.02   <u>Deposits into Subject Wells Account</u>.  Except to the extent otherwise ordered by the Bankruptcy Court, Maricopa shall deposit into the Subject Wells Account (i) the gross proceeds which it receives from the sale of Hydrocarbons produced from the Subject Wells, and (ii) the Subject Wells Net Sales Proceeds.

      6.03   <u>Operating Costs</u>.  Maricopa shall satisfy Subject Wells Operating Costs out of funds deposited in the Subject Wells Account.

      6.04   <u>Disbursement of Subject Wells Net Proceeds</u>.  Unless otherwise ordered by the Bankruptcy Court, within forty-five (45) days of the end of each calendar quarter, the Subject Wells Net Proceeds on deposit in the Subject Wells Account shall be disbursed as follows:

         (a)     55% to Maricopa;
         (b)     32.4945% to 2014 LP; and

        (c)      12.5055% to 3 Well LP.

      6.05   <u>Accounting and Reporting</u>.  Within thirty (30) days of the end of each calendar month, the Operator shall provide the Parties with a report itemizing (i) Subject Wells Operating Costs and proceeds received by Maricopa from the sale of the Subject Wells Hydrocarbons, and, (ii) Marketing Expenses and, if applicable, the proceeds from the sale of the Subject Wells.

## ARTICLE 7

## <u>Marketing and Sales of Subject Wells</u>

      7.01   <u>Covenant to Market and Sell Subject Wells</u>.  Maricopa will exert good faith commercially reasonable efforts to market and sell the Subject Wells.

      7.02   <u>Information</u>.  Maricopa will promptly provide a copy of any offer it receives to purchase the Subject Wells to 2014 LP and 3 Well LP.

      7.03   <u>Section 363 Sale</u>.  The Subject Wells will be sold by Maricopa under 11 U.S.C. § 363 pursuant to orders entered in the Bankruptcy Cases.

## ARTICLE 8

## <u>Representations and Warranties</u>

      8.01   <u>Review and Approval</u>.  Each Party represents to the other Party that its representatives have reviewed this Agreement together with all exhibits and they (i) understand fully the terms of this Agreement and the consequences of the issuance thereof, (ii) have been afforded an opportunity to have this Agreement reviewed by legal counsel, and (iii) have entered into this Agreement of their own free will and accord and without threat or duress.

      8.02   <u>Authority</u>.  Each Party represents to the other Party that (i) the undersigned representative is fully authorized to execute this Agreement on its behalf, and (ii) upon entry of the Settlement Approval Orders, will have full authority to consummate the transactions provided for herein.

      8.03   <u>Disclaimer.</u> Each Party represents and warrants to the other Party that in executing and entering into this Agreement, it is not relying and has not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Agreement.  Each Party understands and expressly assumes the risk that any fact not recited, contained or embodied herein or therein may turn out hereafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true.

# ARTICLE 9

## Miscellaneous

     9.01   <u>Entire Agreement</u>.  This Agreement, including all exhibits attached hereto and made a part hereof, constitute the entire agreement between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties with respect to such transactions.

     9.02   <u>Survival</u>.  All representations, warranties, covenants and agreements of the Parties made in this Agreement shall survive the execution and delivery of this Agreement until such time as all of the obligations of the signatories to such document shall have lapsed in accordance with their respective terms or shall have been discharged in full.

     9.03   <u>Waiver</u>.  No waiver by a Party of any of the provisions of this Agreement (a) shall be binding unless executed in writing by such party, (b) shall be deemed or shall constitute a waiver by such party of any other provision hereof (whether or not similar), and (c) shall not constitute a continuing waiver by such party.

     9.04   <u>Further Assurances</u>.  The Parties will take such actions and execute and deliver such other documents or agreements as may be necessary or desirable for the implementation of this Agreement and the consummation of the transactions contemplated hereby.

     9.05   <u>Notices</u>.  Any notice, request, consent, approval, waiver or other communication provided or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by U.S. mail, overnight courier, electronic mail or fax to the appropriate addresses set forth below.  Any such communication shall be effective upon actual receipt; provided, however, that in the case of delivery by fax after the normal business hours of the recipient, such communication shall be effective on the next business day following the transmission of such fax. For purposes of notice, the addresses of the Parties shall be as follows:

     If to Payson Petroleum, Payson Operating or Maricopa:

          Jason R. Searcy
          Searcy & Searcy, P.C.
          446 Forest Square
          Longview, Texas  75605
          Fax:  903.757.3399
          Email:  jsearcy@jsearcylaw.com

with a copy to:

Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX  77019
Fax:  713.335.4848
Email:  blakehamm@snowspencelaw.com

If to 3 Well LP or 2014 LP:

Christopher J. Moser
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Ste. 1800
Dallas, TX  75201
Fax:  214.871.2111
Email:  cmoser@qslwm.com

with a copy to:

Keith W. Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road, Ste. 280
Dallas, TX  75231
Fax:  972.241.3970
Email:  harvey@keithharveylaw.com

Each Party shall have the right, upon giving ten (10) days' prior notice to the other party in the manner provided in this section, to change its address for purposes of notice.

9.06    Governing Law and Venue.  This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, notwithstanding any applicable conflict of laws provision.  Any dispute regarding this Agreement shall be subject to mandatory venue in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

9.07    Multiple Counterparts.  The Parties agree that facsimile and electronic signatures shall have the same force and effect as original signatures.  This Agreement may be executed in counterparts and all counterparts so executed shall constitute one agreement which shall be binding on the Parties hereto.

9.08    Modification.  This Agreement cannot be altered, changed or modified except in writing executed by a duly authorized representative for each of the Parties.

9.09    Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions

13

of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner with respect to any Party. Upon determination of a court of competent jurisdiction that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the Parties as closely as possible. The obligations of the Parties hereunder are severable and not joint.

9.10 <u>Costs and Attorneys' Fees</u>. If either Party retains an attorney in connection with any breach of this Agreement, the prevailing party is entitled to collect its reasonable costs and expenses incurred in any such suit or proceeding, including reasonable attorneys' fees.

*[Signature Pages Follow]*

**PAYSON PETROLEUM, INC.**

By:_____

Jason R. Searcy, Chapter 11 Trustee


**PAYSON OPERATING, LLC**

By:_____

Jason R. Searcy, Chapter 11 Trustee


**MARICOPA RESOURCES, LLC**

By:_____

Jason R. Searcy, Chapter 11 Trustee


**PAYSON PETROLEUM 3 WELL, L.P.**


By:_____

Christopher J. Moser, Chapter 7 Trustee


**PAYSON PETROLEUM 3 WELL 2014, L.P.**


By:_____

Christopher J. Moser, Chapter 7 Trustee


15

**PAYSON PETROLEUM, INC.**

By:_____

      **Jason R. Searcy, Chapter 11 Trustee**

**PAYSON OPERATING, LLC**

By:_____

      **Jason R. Searcy, Chapter 11 Trustee**

**MARICOPA RESOURCES, LLC**

By:_____

      **Jason R. Searcy, Chapter 11 Trustee**

**PAYSON PETROLEUM 3 WELL, L.P.**

By:_____

      **Christopher J. Moser, Chapter 7 Trustee**

**PAYSON PETROLEUM 3 WELL 2014, L.P.**

By:_____

      **Christopher J. Moser, Chapter 7 Trustee**

STATE OF TEXAS     §
                   §
COUNTY OF GREGG    §

BEFORE ME, the undersigned authority, on this _20th_ day of _September_ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON PETROLEUM, INC.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.



Notary Public in and for State of Texas
My Commission Expires: _04-14-2021_

STATE OF TEXAS     §
                   §
COUNTY OF GREGG    §

BEFORE ME, the undersigned authority, on this _20th_ day of _September_ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON OPERATING, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.



Notary Public in and for State of Texas
My Commission Expires: _04-14-2021_

STATE OF TEXAS     §
                   §
COUNTY OF GREGG    §

BEFORE ME, the undersigned authority, on this _20th_ day of _September_ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **MARICOPA RESOURCES, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Notary Public in and for State of Texas
My Commission Expires: _04-14-2021_

16

STATE OF TEXAS      §
                           §

COUNTY OF *Dallas*    §

        BEFORE ME, the undersigned authority, on this 20th day of September 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.



                         _Nita Chancellor_
                         Notary Public in and for State of Texas
                         My Commission Expires: 1-9-2019

STATE OF TEXAS      §
                           §

COUNTY OF *Dallas*    §

        BEFORE ME, the undersigned authority, on this 20th day of September 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL 2014, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

                         _Nita Chancellor_
                         Notary Public in and for State of Texas
                         My Commission Expires: 1-9-2019

# EXHIBIT LIST

Exhibit 1      2014 LP Subject Claims Assignment and Participation Agreement
Exhibit 2      3 Well LP Subject Claims Assignment and Participation Agreement
Exhibit 3      Agreed Final Judgment
Exhibit 4      Joint Motion for Entry of Agreed Final Judgment
Exhibit 5      Contract Operating Services Agreement
Exhibit 6      Settlement Approval Order
Exhibit 7      Settlement Motions
Exhibit 8      Subject Wells Assignments

# EXHIBIT 1 TO SETTLEMENT AGREEMENT

# 2014 LP SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT

# SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT
## (2014 LP)

This Subject Claims Assignment and Participation Agreement (the "<u>Agreement</u>") is entered into as of _____, 2017 by and between Payson Petroleum, Inc. ("<u>Payson Petroleum</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>"), referred to individually herein as a "<u>Party</u>" and collectively as, the "<u>Parties</u>."

## R E C I T A L S

**WHEREAS**, Christopher J. Moser is the duly appointed Chapter 7 Trustee in the 2014 LP Bankruptcy Case (defined below).

**WHEREAS**, Jason R. Searcy is the duly appointed Chapter 11 Trustee in the Payson Petroleum Bankruptcy Case (defined below).

**WHEREAS**, 2014 LP and Payson Petroleum are parties to the Settlement Agreement (defined below) which provides for entry into this Agreement.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the Parties hereby agree as follows:

## ARTICLE 1

## Definitions

1.01 <u>Defined Terms</u>. The following terms, as used in this Agreement, shall have the meanings indicated below, unless the context otherwise requires:

"**2014 LP**" means Payson Petroleum 3 Well 2014, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well 2014, L.P. and the Payson Petroleum 3 Well 2014, L.P. bankruptcy estate.

"**2014 LP Avoidance Action Claims**" means all claims and causes of action of 2014 LP arising under Chapter 5 of the Bankruptcy Code.

"**2014 LP Avoidance Action Claims Net Recovery**" means any Net Recovery for or on account of the 2014 LP Avoidance Action Claims.

"**2014 LP Bankruptcy Case**" means Bankruptcy Case No. 17-40180 styled *In re Payson Petroleum 3 Well 2014, L.P., Debtor,* pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**2014 LP Participation Interest**" means an undivided fifty percent (50%) interest.

"**2014 LP Partnership Related Claims**" means all rights, claims, causes of action and

rights of contribution of 2014 LP (independent of <u>Section 2.02</u> of this Agreement) against any current or former general partner or limited partner of 2014 LP, including but not limited to claims under 11 U.S.C. § 723.

"**<u>2014 LP Partnership Related Claims Net Recovery</u>**" means any Net Recovery for or on account of the 2014 LP Partnership Related Claims.

"**<u>Bankruptcy Code</u>**" means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

"**<u>Net Recovery</u>**" means the Recovery net of all expenses and fees (including Special Counsel fees) incurred in connection with investigation, prosecution and collection of the Subject Claims.

"**<u>Payson/2014 LP Partnership Related Claims</u>**" means all rights, claims and causes of action of Payson Petroleum (independent of <u>Section 2.01</u> of this Agreement) against any current or former general partner or limited partner of 2014 LP.

"**<u>Payson/2014 LP Partnership Related Claims Net Recovery</u>**" means the Net Recovery for and on account of the Payson/2014 LP Partnership Related Claims.

"**<u>Payson Petroleum</u>**" means Payson Petroleum, Inc., Jason Searcy in his capacity of Chapter 11 trustee of Payson Petroleum, Inc. and the Payson Petroleum, Inc. bankruptcy estate.

"**<u>Payson Petroleum Bankruptcy Case</u>**" means Bankruptcy Case No. 16-41044 styled *In re Payson Petroleum, Inc., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**<u>Payson Petroleum Participation Interest</u>**" means an undivided fifty percent (50%) interest.

"**<u>Recovery</u>**" means (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Parties for or on account of or in satisfaction or partial satisfaction thereof with respect to the Subject Claims.

"**<u>Settlement Agreement</u>**" means the Settlement Agreement entered into as of September ___, 2017 by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee for the Searcy Bankruptcy Cases, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee for the Moser Bankruptcy Cases.

"**<u>Settlement Approval Order</u>**" has the meaning defined in the Settlement Agreement.

"**<u>Special Counsel</u>**" means Snow Spence Green LLP.

"**<u>Special Counsel Engagement Agreements</u>**" means (i) the August 15, 2016 Engagement Letter Agreement by and between Snow Spence Green LLP and Jason R. Searcy, Chapter 11

Trustee of Payson Petroleum, Inc., Maricopa Resources, LLC and Payson Operating, LLC, (ii) the Engagement Letter Agreement between 2014 LP, 3 Well LP, Payson Petroleum and Snow Spence Green LLP substantially in the form of **Exhibit 1**, and (iii) the Engagement Letter Agreement between 2014 LP, Payson Petroleum and Snow Spence Green LLP in the form of **Exhibit 2**.

  "**Subject Claims**" means all 2014 LP Avoidance Action Claims, all 2014 LP Partnership Related Claims and all Payson/2014 LP Partnership Related Claims.

  1.02  Amendment of Defined Instruments.  Unless the context otherwise requires or unless otherwise provided herein, the terms defined in this Agreement which refer to a particular agreement, instrument or document also refer to and include all renewals, extensions, modifications, amendments and restatements of such agreement, instrument or document.  Nothing contained in this Agreement will be construed to authorize any renewal, extension, modification, amendment or restatement of this Agreement or any agreement, instrument or document referred to herein.

  1.03  References and Titles.  All references in this Agreement to Exhibits, Articles, Sections, subsections and other subdivisions refer to the Exhibits, Articles, Sections, subsections and other subdivisions of this Agreement unless expressly provided otherwise.  Titles appearing at the beginning of any subdivisions are for convenience only, do not constitute any part of those subdivisions and will be disregarded in construing the language contained in those subdivisions. The words "this Agreement," "this instrument," "herein," "hereof," "hereby," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.  The phrases "this section" and "this subsection" and similar phrases refer only to the sections or subsections of this Agreement in which those phrases occur.  The word "or" is not exclusive; the word "including" (in its various forms) means "including without limitation."  Pronouns in masculine, feminine and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires.  The word "will" shall be construed to have the same meaning and effect as the word "shall."  Unless the context requires otherwise (a) any reference herein to any law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time; (b) any reference herein to any person shall be construed to include such person's successors and assigns (subject to the restrictions contained herein); (c) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including;" and (d) all dollar amounts refer to United States dollars.  A reference herein to a number of "days" will be intended to refer to that number of calendar (as opposed to working) days, unless otherwise specifically provided.  No provision of this Agreement shall be interpreted or construed more strictly against any person solely because such person or its legal representative drafted such provision.

## ARTICLE 2

### Assignment

  2.01  Assignment by 2014 LP of Participation Interest.  2014 LP hereby absolutely and unconditionally sells, transfers and assigns to Payson Petroleum, the Payson Petroleum Participation Interest in (i) the 2014 LP Avoidance Action Claims Net Recovery, and (ii) the 2014

LP Partnership Related Claims Net Recovery.

2.02    <u>Assignment by Payson Petroleum of Participation Interest</u>.    Payson Petroleum hereby absolutely and unconditionally sells, transfers and assigns to 2014 LP, the 2014 LP Participation Interest in the Payson/2014 LP Partnership Related Claims Net Recovery.

## ARTICLE 3

### Preservation, Prosecution and Authority

3.01    <u>Preservation</u>.    2014 LP retains all 2014 LP Avoidance Action Claims and all 2014 LP Partnership Related Claims subject to the Payson Petroleum Participation Interest and Payson Petroleum's rights hereunder.   Upon entry of the Settlement Approval Order in the 2014 LP Bankruptcy Case and execution of this Agreement, Payson Petroleum is vested with and may enforce and prosecute (or determine to do any of the foregoing) the 2014 LP Avoidance Action Claims and 2014 LP Partnership Related Claims without further order of the Bankruptcy Court. Payson Petroleum's right to commence, prosecute or settle 2014 LP Avoidance Action Claims and 2014 LP Partnership Related Claims shall be preserved.   No preclusion doctrine, including the doctrines of res judicata; collateral estoppel, issue preclusion, claim preclusion, estoppel shall apply to the 2014 LP Avoidance Action Claims or 2014 LP Partnership Related Claims by virtue of entry into this Agreement. Payson Petroleum in connection with the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims shall constitute the representative of the 2014 LP bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims.

3.02    <u>Standing</u>.   The Parties stipulate and agree that Payson Petroleum shall have standing to assert and prosecute on behalf of 2014 LP all 2014 LP Avoidance Action Claims and all 2014 LP Partnership Related Claims.

3.03    <u>Authority</u>.    Subject to <u>Section 6.01</u>, Payson Petroleum shall have exclusive authority with respect to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.   The exclusive authority of Payson Petroleum includes investigation, management and settlement of all litigation related to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.

## ARTICLE 4

### Special Counsel

4.01    <u>Engagement of Counsel</u>.    Snow Spence Green LLP is engaged pursuant to the Special Counsel Engagement Agreement, dated August 15, 2016 (approved by Bankruptcy Court order dated September 19, 2016), to investigate and prosecute the Payson/3Well LP Partnership Related Claims.

4.02    Engagement Agreement.  Snow Spence Green LLP (subject to Bankruptcy Court approval) is engaged to investigate and prosecute the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims pursuant to the terms of the Special Counsel Engagement Agreement attached as **Exhibit 2**.  2014 LP shall cause an order approving the engagement of Snow Spence Green LLP and the Special Counsel Engagement Agreement, attached as **Exhibit 2**, to be entered in the 2014 LP Bankruptcy Case.

# ARTICLE 5

## Application of Recoveries

5.01    Fees and Expenses.  Any Recovery shall be applied first, to satisfy fees pursuant to the Special Counsel Engagement Agreements and, second, to expenses incurred by Special Counsel and Payson Petroleum in connection with investigation, prosecution and collection of the Subject Claims.

5.02    Disbursement of Net Recoveries.  Payson Petroleum is hereby assigned and shall receive the Payson Petroleum Participation Interest in all (i) 2014 LP Partnership Related Claims Net Recoveries, (ii) 2014 LP Avoidance Action Claims Net Recoveries, and (iii) Payson/2014 LP Partnership Related Claims Net Recoveries.  2014 LP is hereby assigned and shall receive the 2014 LP Participation Interest in all (x) 2014 LP Partnership Related Claims Net Recoveries, (y) 2014 LP Avoidance Action Claims Net Recoveries, and (z) Payson/2014 LP Partnership Related Claims Net Recoveries.

# ARTICLE 6

## Miscellaneous

6.01    Settlement.  Any settlement of a Subject Claim is subject to Bankruptcy Court approval.

6.02    Discretion.  Payson Petroleum shall determine in its sole discretion the Subject Claims to investigate and prosecute.  Subsequent to October 1, 2018, Payson Petroleum shall, upon the written request of 2014 LP, release from this Agreement and assign back to 2014 LP any 2014 LP Partnership Related Claim or 2014 LP Avoidance Action Claim which Payson Petroleum which it has determined that it will not prosecute.

6.03    Indemnification.    2014 LP hereby indemnifies and holds harmless Payson Petroleum and its agents, representatives, professionals and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to its actions or omissions, or consequences of such actions or omissions, with respect to Payson Petroleum's investigation, management, prosecution or settlement of the Subject Claims; provided, however, that no such indemnification will be made to Payson Petroleum for actions or omissions resulting from willful misconduct, gross negligence or fraud.

6.04    Entire Agreement.  This Agreement, including all exhibits attached hereto and

made a part hereof, constitute the entire agreement between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties with respect to such transactions.

6.05    Survival.  All representations, warranties, covenants and agreements of the Parties made in this Agreement shall survive the execution and delivery of this Agreement until such time as all of the obligations of the signatories to such document shall have lapsed in accordance with their respective terms or shall have been discharged in full.

6.06    Waiver.  No waiver by a Party of any of the provisions of this Agreement (a) shall be binding unless executed in writing by such Party, (b) shall be deemed or shall constitute a waiver by such Party of any other provision hereof (whether or not similar), and (c) shall not constitute a continuing waiver by such Party.

6.07    Further Assurances.  The Parties will take such actions and execute and deliver such other documents or agreements as may be necessary or desirable for the implementation of this Agreement and the consummation of the transactions contemplated hereby.

6.08    Notices.  Any notice, request, consent, approval, waiver or other communication provided or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by U.S. mail, overnight courier, electronic mail or fax to the appropriate addresses set forth below.  Any such communication shall be effective upon actual receipt; provided, however, that in the case of delivery by fax after the normal business hours of the recipient, such communication shall be effective on the next business day following the transmission of such fax. For purposes of notice, the addresses of the Parties shall be as follows:

If to Payson Petroleum:

Jason R. Searcy
Searcy & Searcy, P.C.
446 Forest Square
Longview, Texas  75605
Fax:  903.757.3399
Email:  jsearcy@jsearcylaw.com

with a copy to:

Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX  77019
Fax:  713.335.4848
Email:  blakehamm@snowspencelaw.com

If to 2014 LP:

Christopher J. Moser
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Ste. 1800
Dallas, TX 75201
Fax: 214.871.2111
Email: cmoser@qslwm.com

with a copy to:

Keith W. Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road, Ste. 280
Dallas, TX 75231
Fax: 972.241.3970
Email: harvey@keithharveylaw.com

Each Party shall have the right, upon giving ten (10) days' prior notice to the other party in the manner provided in this section, to change its address for purposes of notice.

6.09    Governing Law and Venue.  This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, notwithstanding any applicable conflict of laws provision.  Any dispute regarding this Agreement shall be subject to mandatory venue in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

6.10    Multiple Counterparts.  The Parties agree that facsimile and electronic signatures shall have the same force and effect as original signatures.  This Agreement may be executed in counterparts and all counterparts so executed shall constitute one agreement which shall be binding on the Parties hereto.

6.11    Modification.  This Agreement cannot be altered, changed or modified except in writing executed by a duly authorized representative for each of the Parties.

6.12    Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner with respect to any Party.  Upon determination of a court of competent jurisdiction that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the Parties as closely as possible.  The obligations of the Parties hereunder are severable and not joint.

6.13    Costs and Attorneys' Fees.  If either Party retains an attorney in connection with any default or to collect, enforce, or defend this Agreement in any lawsuit, reorganization, bankruptcy or other proceeding, the prevailing party is entitled to collect its reasonable costs and expenses incurred in any such suit or proceeding, including reasonable attorneys' fees.

*[Signature Pages Follow]*

**PAYSON PETROLEUM, INC.**


By:_____
      **Jason R. Searcy, Chapter 11 Trustee**


**PAYSON PETROLEUM 3 WELL 2014, L.P.**


By:_____
      **Christopher J. Moser, Chapter 7 Trustee**

STATE OF TEXAS                    §
                                 §
COUNTY OF GREGG                  §


      BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON PETROLEUM, INC.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.


_____
Notary Public in and for State of Texas
My Commission Expires: _____


STATE OF TEXAS                    §
                                 §
COUNTY OF _____          §


      BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 2014, L.P.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.


_____
Notary Public in and for State of Texas
My Commission Expires: _____


I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\EX 1 2014 LP_SubjectClaimsAssignParticipationAgmt.docx

10



**SNOW SPENCE GREEN LLP**

<div style="text-align:right">

EXHIBIT

**1**

</div>

_____, 2017

VIA EMAIL:  cmoser@qslwm.com            VIA EMAIL:  jsearcy@jsearcylaw.com

Mr. Christopher J. Moser                             Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.      Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800                        446 Forest Square
Dallas, TX  75201                                   Longview, TX  75605

Re:     **Proposed Engagement Agreement**

**Bankruptcy Case No. 17-40179;** *In re Payson Petroleum 3 Well, L.P.* **in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")**

Mr. Moser and Mr. Searcy:

This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well, L.P. ("3 Well LP" or "Debtor").  This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval.  Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

**Description of Engagement**.  The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 3 Well LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 3 Well LP.  The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

a.      3 Well LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

b.      3 Well LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 3 Well LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

c.      objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

_____, 2017

Page 2

(collectively, the "<u>Subject Matters</u>").  Claims, causes of action and/or objections with respect to a specific party are referred to as a "<u>Specific Subject Matter</u>").  SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful.  As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 3 Well LP (the "<u>3 Well LP Trustee</u>") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 3 Well LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 3 Well LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 3 Well LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters.  Client and the 3 Well LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

<u>**Legal Fees.**</u>  The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below.  The fees to be paid to SSG will be a percentage of the "<u>Recovery</u>" (as defined below) realized with respect to each Specific Subject Matter.  The Client and the 3 Well LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter.  The agreed upon percentages and benchmarks are set forth below:

_____, 2017

Page 3

| Fees as a Percent of Recovery | Benchmark Event |
|---|---|
| 33% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter. |
| 35% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter. |
| 40% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order. |

The Client and the 3 Well LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 3 Well LP Trustee.

The term "Recovery" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 3 Well LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed. The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit. For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed. If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 3 Well LP with respect to the subject creditor which is released or disallowed. For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim. For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 3 Well LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.** Client and the 3 Well LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary. Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses. Such third party fees and expenses will be billed directly to Client. Client will be responsible for paying fees and expenses of third parties. In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

Client and the 3 Well LP Trustee further acknowledge that SSG will incur various expenses in providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG. Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be reimbursed by Client solely out of Recoveries.

**Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and the 3 Well LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received by Client and the 3 Well LP Trustee will be conveyed to SSG for notice purposes only.

**No settlement of any nature shall be made for the Subject Matters without the approval of Client and the United States Bankruptcy Court.** Client acknowledges that all communications from adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG, as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

**Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC* (Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well 2014, L.P.* (Bankruptcy Case No. 17-40180). While SSG does not anticipate that its prior and/or current representation of Client will adversely affect Client's or 3 Well LP Trustee's interests in the Subject Matters, applicable rules of professional conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject Matters. Client acknowledges his express and informed consent to SSG's representation of Client with respect to the Subject Matters as well as SSG's continuing representation of Client in other matters, including related matters. 3 Well LP Trustee acknowledges that he is aware that SSG represents Client in other matters, including the above-referenced related matters, and waives any conflict relating thereto.

If a controversy arises between you and any other client of SSG, SSG, after taking into account the applicable rules of professional ethics, may decline to represent you or such other client or both you and such other client. Following the conclusion of our representation of you in this matter, SSG reserves the right to represent other future clients on unrelated matters which may be adverse to your interests.

**Withdrawal/Termination of Representation.** Our representation may be terminated prior to the conclusion of the Subject Matters covered under this engagement letter by written notice to the other party. SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

**Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if appropriate), it is Client's and the 3 Well LP Trustee's obligation to advise us as to which, if any, documents

_____, 2017

Page 5

in our files they wish SSG to return.  SSG may keep copies thereof for our records to the extent we believe advisable.  SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter.  THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

**Email Communications.**  To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail.  The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents.  We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form.  The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties.  Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

**Approval of Terms of Engagement.**  If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature.  A copy of this agreement should be retained for your files.

**Bankruptcy Court Approval.  The parties acknowledge that the Bankruptcy Court must approve this agreement.**

Regards,

SNOW SPENCE GREEN LLP

By:_____
          Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:

By: _____
    Christopher J. Moser
    Chapter 7 Trustee for Payson Petroleum 3 Well, L.P.

By: _____
    Jason R. Searcy
    Chapter 11 Trustee for Payson Petroleum, Inc.





**EXHIBIT 2**

_____, 2017

VIA EMAIL: cmoser@qslwm.com                    VIA EMAIL: jsearcy@jsearcylaw.com

Mr. Christopher J. Moser                                 Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.    Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800                          446 Forest Square
Dallas, TX 75201                                      Longview, TX 75605

Re:     **Proposed Engagement Agreement**

        **Bankruptcy Case No. 17-40180;** *In re Payson Petroleum 3 Well 2014, L.P.* **in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")**

Mr. Moser and Mr. Searcy:

        This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well 2014, L.P. ("2014 LP" or "Debtor"). This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval. Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

        **Description of Engagement**. The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 2014 LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 2014 LP. The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

        a.      2014 LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

        b.      2014 LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 2014 LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

        c.      objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

_____, 2017

Page 2

(collectively, the "<u>Subject Matters</u>"). Claims, causes of action and/or objections with respect to a specific party are referred to as a "<u>Specific Subject Matter</u>"). SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful. As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 2014 LP (the "<u>2014 LP Trustee</u>") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 2014 LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 2014 LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 2014 LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters. Client and the 2014 LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

**<u>Legal Fees.</u>** The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below. The fees to be paid to SSG will be a percentage of the "<u>Recovery</u>" (as defined below) realized with respect to each Specific Subject Matter. The Client and the 2014 LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter. The agreed upon percentages and benchmarks are set forth below:

_____, 2017

Page 3

| Fees as a Percent of Recovery | Benchmark Event |
|---|---|
| 33% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter. |
| 35% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter. |
| 40% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order. |

The Client and the 2014 LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 2014 LP Trustee.

The term "Recovery" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 2014 LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed. The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit. For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed. If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 2014 LP with respect to the subject creditor which is released or disallowed. For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim. For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 2014 LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.** Client and the 2014 LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary. Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses. Such third party fees and expenses will be billed directly to Client. Client will be responsible for paying fees and expenses of third parties. In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

_____, 2017

Page 4

Client and the 2014 LP Trustee further acknowledge that SSG will incur various expenses in providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG. Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be reimbursed by Client solely out of Recoveries.

**Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and the 2014 LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received by Client and the 2014 LP Trustee will be conveyed to SSG for notice purposes only.

**No settlement of any nature shall be made for the Subject Matters without the approval of Client and the United States Bankruptcy Court.** Client acknowledges that all communications from adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG, as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

**Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC* (Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well, L.P.* (Bankruptcy Case No. 17-40179). While SSG does not anticipate that its prior and/or current representation of Client will adversely affect Client's or 2014 LP Trustee's interests in the Subject Matters, applicable rules of professional conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject Matters. Client acknowledges his express and informed consent to SSG's representation of Client with respect to the Subject Matters as well as SSG's continuing representation of Client in other matters, including related matters. 2014 LP Trustee acknowledges that he is aware that SSG represents Client in other matters, including the above-referenced related matters, and waives any conflict relating thereto.

If a controversy arises between you and any other client of SSG, SSG, after taking into account the applicable rules of professional ethics, may decline to represent you or such other client or both you and such other client. Following the conclusion of our representation of you in this matter, SSG reserves the right to represent other future clients on unrelated matters which may be adverse to your interests.

**Withdrawal/Termination of Representation.** Our representation may be terminated prior to the conclusion of the Subject Matters covered under this engagement letter by written notice to the other party. SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

**Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if appropriate), it is Client's and the 2014 LP Trustee's obligation to advise us as to which, if any, documents in our files they wish SSG to return. SSG may keep copies thereof for our records to the extent we believe

_____, 2017

Page 5

advisable.  SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter.  THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

**Email Communications.**  To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail.  The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents.  We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form.  The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties.  Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

**Approval of Terms of Engagement.**  If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature.  A copy of this agreement should be retained for your files.

**Bankruptcy Court Approval.**  The parties acknowledge that the Bankruptcy Court must approve this agreement.

Regards,

SNOW SPENCE GREEN LLP

By:_____
         Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:


By: _____
        Christopher J. Moser
        Chapter 7 Trustee for Payson Petroleum 3 Well 2014, L.P.


By: _____
        Jason R. Searcy
        Chapter 11 Trustee for Payson Petroleum, Inc.

# EXHIBIT 2 TO SETTLEMENT AGREEMENT

# 3 WELL LP SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT

# SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT
## (3 Well LP)

This Subject Claims Assignment and Participation Agreement (the "Agreement") is entered into as of _____, 2017 by and between Payson Petroleum, Inc. ("Payson Petroleum") and Payson Petroleum 3 Well, L.P. ("3 Well LP"),  referred to individually herein as a "Party" and collectively as, the "Parties."

## R E C I T A L S

**WHEREAS**, Christopher J. Moser is the duly appointed Chapter 7 Trustee in the 3 Well LP Bankruptcy Case (defined below).

**WHEREAS**, Jason R. Searcy is the duly appointed Chapter 11 Trustee in the Payson Petroleum Bankruptcy Case (defined below).

**WHEREAS**, 3 Well LP and Payson Petroleum are parties to the Settlement Agreement (defined below) which provides for entry into this Agreement.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the Parties hereby agree as follows:

## ARTICLE 1

## Definitions

1.01    Defined Terms.  The following terms, as used in this Agreement, shall have the meanings indicated below, unless the context otherwise requires:

**"3 Well LP"** means Payson Petroleum 3 Well, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well, L.P. and the Payson Petroleum 3 Well L.P. bankruptcy estate.

**"3 Well LP Avoidance Action Claims"** means all claims and causes of action of 3 Well LP arising under Chapter 5 of the Bankruptcy Code.

**"3 Well LP Avoidance Action Claims Net Recovery"** means any Net Recovery for or on account of the 3 Well LP Avoidance Action Claims.

**"3 Well LP Bankruptcy Case"** means Bankruptcy Case No. 17-40179 styled *In re Payson Petroleum 3 Well, L.P., Debtor,* pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

**"3 Well LP Participation Interest"** means an undivided fifty percent (50%) interest.

**"3 Well LP Partnership Related Claims"** means all rights, claims, causes of action and

rights of contribution of 3 Well LP (independent of <u>Section 2.02</u> of this Agreement) against any current or former general partner or limited partner of 3 Well LP, including but not limited to claims under 11 U.S.C. § 723.

"**3 Well LP Partnership Related Claims Net Recovery**" means any Net Recovery for or on account of the 3 Well LP Partnership Related Claims.

"**Bankruptcy Code**" means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

"**Net Recovery**" means the Recovery net of all expenses and fees (including Special Counsel fees) incurred in connection with investigation, prosecution and collection of the Subject Claims.

"**Payson/3 Well LP Partnership Related Claims**" means all rights, claims and causes of action of Payson Petroleum (independent of <u>Section 2.01</u> of this Agreement) against any current or former general partner or limited partner of 3 Well LP.

"**Payson/3 Well LP Partnership Related Claims Net Recovery**" means the Net Recovery for and on account of the Payson/3 Well LP Partnership Related Claims.

"**Payson Petroleum**" means Payson Petroleum, Inc., Jason Searcy in his capacity of Chapter 11 trustee of Payson Petroleum, Inc. and the Payson Petroleum, Inc. bankruptcy estate.

"**Payson Petroleum Bankruptcy Case**" means Bankruptcy Case No. 16-41044 styled *In re Payson Petroleum, Inc., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Payson Petroleum Participation Interest**" means an undivided fifty percent (50%) interest.

"**Recovery**" means (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Parties for or on account of or in satisfaction or partial satisfaction thereof with respect to the Subject Claims.

"**Settlement Agreement**" means the Settlement Agreement entered into as of August ___, 2017 by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee for the Searcy Bankruptcy Cases, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee for the Moser Bankruptcy Cases.

"**Settlement Approval Order**" has the meaning defined in the Settlement Agreement.

"**Special Counsel**" means Snow Spence Green LLP.

"**Special Counsel Engagement Agreements**" means (i) the August 15, 2016 Engagement

Letter Agreement by and between Snow Spence Green LLP and Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., Maricopa Resources, LLC and Payson Operating, LLC, (ii) the Engagement Letter Agreement between 2014 LP, 3 Well LP, Payson Petroleum and Snow Spence Green LLP substantially in the form of **Exhibit 1**, and (iii) the Engagement Letter Agreement between 2014 LP, Payson Petroleum and Snow Spence Green LLP in the form of **Exhibit 2**.

**"Subject Claims"** means all 3 Well LP Avoidance Action Claims, all 3 Well LP Partnership Related Claims and all Payson/3 Well LP Partnership Related Claims.

1.02    Amendment of Defined Instruments.  Unless the context otherwise requires or unless otherwise provided herein, the terms defined in this Agreement which refer to a particular agreement, instrument or document also refer to and include all renewals, extensions, modifications, amendments and restatements of such agreement, instrument or document.  Nothing contained in this Agreement will be construed to authorize any renewal, extension, modification, amendment or restatement of this Agreement or any agreement, instrument or document referred to herein.

1.03    References and Titles.  All references in this Agreement to Exhibits, Articles, Sections, subsections and other subdivisions refer to the Exhibits, Articles, Sections, subsections and other subdivisions of this Agreement unless expressly provided otherwise.  Titles appearing at the beginning of any subdivisions are for convenience only, do not constitute any part of those subdivisions and will be disregarded in construing the language contained in those subdivisions.  The words "this Agreement," "this instrument," "herein," "hereof," "hereby," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.  The phrases "this section" and "this subsection" and similar phrases refer only to the sections or subsections of this Agreement in which those phrases occur.  The word "or" is not exclusive; the word "including" (in its various forms) means "including without limitation."  Pronouns in masculine, feminine and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires.  The word "will" shall be construed to have the same meaning and effect as the word "shall."  Unless the context requires otherwise (a) any reference herein to any law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time; (b) any reference herein to any person shall be construed to include such person's successors and assigns (subject to the restrictions contained herein); (c) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including;" and (d) all dollar amounts refer to United States dollars.  A reference herein to a number of "days" will be intended to refer to that number of calendar (as opposed to working) days, unless otherwise specifically provided.  No provision of this Agreement shall be interpreted or construed more strictly against any person solely because such person or its legal representative drafted such provision.

**ARTICLE 2**

**Assignment**

2.01    Assignment by 3 Well LP of Participation Interest. 3 Well LP hereby absolutely and unconditionally sells, transfers and assigns to Payson Petroleum, the Payson Petroleum

3

Participation Interest in (i) the 3 Well LP Avoidance Action Claims Net Recovery, and (ii) the 3 Well LP Partnership Related Claims Net Recovery.

2.02    Assignment by Payson Petroleum of Participation Interest.  Payson Petroleum hereby absolutely and unconditionally sells, transfers and assigns to 3 Well LP, the 3 Well LP Participation Interest in the Payson/3 Well LP Partnership Related Claims Net Recovery.

# ARTICLE 3

## Preservation, Prosecution and Authority

3.01    Preservation.  3 Well LP retains all 3 Well LP Avoidance Action Claims and all 3 Well LP Partnership Related Claims subject to the Payson Petroleum Participation Interest and Payson Petroleum's rights hereunder.  Upon entry of the Settlement Approval Order in the 3 Well LP Bankruptcy Case and execution of this Agreement, Payson Petroleum is vested with and may enforce and prosecute (or determine to do any of the foregoing) the 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims without further order of the Bankruptcy Court. Payson Petroleum's right to commence, prosecute or settle 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims shall be preserved.  No preclusion doctrine, including the doctrines of res judicata; collateral estoppel, issue preclusion, claim preclusion, estoppel shall apply to the 3 Well LP Avoidance Action Claims or 3 Well LP Partnership Related Claims by virtue of entry into this Agreement.  Payson Petroleum in connection with the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims shall constitute the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims.

3.02    Standing.  The Parties stipulate and agree that Payson Petroleum shall have standing to assert and prosecute on behalf of 3 Well LP all 3 Well LP Avoidance Action Claims and all 3 Well LP Partnership Related Claims.

3.03    Authority.    Subject to Section 6.01, Payson Petroleum shall have exclusive authority with respect to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3Well LP Partnership Related Claims.  The exclusive authority of Payson Petroleum includes investigation, management and settlement of all litigation related to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.

# ARTICLE 4

## Special Counsel

4.01    Engagement of Counsel.  Snow Spence Green LLP is engaged pursuant to the Special Counsel Engagement Agreement, dated August 15, 2016 (approved by Bankruptcy Court order dated September 19, 2016), to investigate and prosecute the Payson/3Well LP Partnership Related Claims.

4.02    Engagement Agreement.  Snow Spence Green LLP (subject to Bankruptcy Court approval) is engaged to investigate and prosecute the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims pursuant to the terms of the Special Counsel Engagement Agreement attached as **Exhibit 1**.  3 Well LP shall cause an order approving the engagement of Snow Spence Green LLP and the Special Counsel Engagement Agreement, attached as **Exhibit 1**, to be entered in the 3 Well LP Bankruptcy Case.

## ARTICLE 5

## Application of Recoveries

5.01    Fees and Expenses.  Any Recovery shall be applied first, to satisfy fees pursuant to the Special Counsel Engagement Agreements and, second, to expenses incurred by Special Counsel and Payson Petroleum in connection with investigation, prosecution and collection of the Subject Claims.

5.02    Disbursement of Net Recoveries.  Payson Petroleum is hereby assigned and shall receive the Payson Petroleum Participation Interest in all (i) 3 Well LP Partnership Related Claims Net Recoveries, (ii) 3 Well LP Avoidance Action Claims Net Recoveries, and (iii) Payson/3 Well LP Partnership Related Claims Net Recoveries.  3 Well LP is hereby assigned and shall receive the 3 Well LP Participation Interest in all (x) 3 Well LP Partnership Related Claims Net Recoveries, (y) 3 Well LP Avoidance Action Claims Net Recoveries, and (z) Payson/3 Well LP Partnership Related Claims Net Recoveries.

## ARTICLE 6

## Miscellaneous

6.01    Settlement.  Any settlement of a Subject Claim is subject to Bankruptcy Court approval.

6.02    Discretion.  Payson Petroleum shall determine in its sole discretion the Subject Claims to investigate and prosecute.  Subsequent to October 1, 2018, Payson Petroleum shall, upon the written request of 3 Well LP, release from this Agreement and assign back to 3 Well LP any 3 Well LP Partnership Related Claim or 3 Well LP Avoidance Action Claim which Payson Petroleum which it has determined that it will not prosecute.

6.03    Indemnification.  3 Well LP hereby indemnifies and holds harmless Payson Petroleum and its agents, representatives, professionals and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to its actions or omissions, or consequences of such actions or omissions, with respect to Payson Petroleum's investigation, management, prosecution or settlement of the Subject Claims; provided, however, that no such indemnification will be made to Payson Petroleum for actions or omissions resulting from willful misconduct, gross negligence or fraud.

6.04    Entire Agreement.  This Agreement, including all exhibits attached hereto and made a part hereof, constitute the entire agreement between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties with respect to such transactions.

6.05    Survival.  All representations, warranties, covenants and agreements of the Parties made in this Agreement shall survive the execution and delivery of this Agreement until such time as all of the obligations of the signatories to such document shall have lapsed in accordance with their respective terms or shall have been discharged in full.

6.06    Waiver.  No waiver by a Party of any of the provisions of this Agreement (a) shall be binding unless executed in writing by such Party, (b) shall be deemed or shall constitute a waiver by such Party of any other provision hereof (whether or not similar), and (c) shall not constitute a continuing waiver by such Party.

6.07    Further Assurances.  The Parties will take such actions and execute and deliver such other documents or agreements as may be necessary or desirable for the implementation of this Agreement and the consummation of the transactions contemplated hereby.

6.08    Notices.  Any notice, request, consent, approval, waiver or other communication provided or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by U.S. mail, overnight courier, electronic mail or fax to the appropriate addresses set forth below.  Any such communication shall be effective upon actual receipt; provided, however, that in the case of delivery by fax after the normal business hours of the recipient, such communication shall be effective on the next business day following the transmission of such fax. For purposes of notice, the addresses of the Parties shall be as follows:

If to Payson Petroleum:

Jason R. Searcy
Searcy & Searcy, P.C.
446 Forest Square
Longview, Texas  75605
Fax:  903.757.3399
Email:  jsearcy@jsearcylaw.com

with a copy to:

Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX  77019
Fax:  713.335.4848
Email:  blakehamm@snowspencelaw.com

If to 3 Well LP:

6

Christopher J. Moser
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Ste. 1800
Dallas, TX 75201
Fax: 214.871.2111
Email: cmoser@qslwm.com

with a copy to:

Keith W. Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road, Ste. 280
Dallas, TX 75231
Fax: 972.241.3970
Email: harvey@keithharveylaw.com

Each Party shall have the right, upon giving ten (10) days' prior notice to the other party in the manner provided in this section, to change its address for purposes of notice.

6.09  Governing Law and Venue.  This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, notwithstanding any applicable conflict of laws provision.  Any dispute regarding this Agreement shall be subject to mandatory venue in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

6.10  Multiple Counterparts.  The Parties agree that facsimile and electronic signatures shall have the same force and effect as original signatures.  This Agreement may be executed in counterparts and all counterparts so executed shall constitute one agreement which shall be binding on the Parties hereto.

6.11  Modification.  This Agreement cannot be altered, changed or modified except in writing executed by a duly authorized representative for each of the Parties.

6.12  Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner with respect to any Party.  Upon determination of a court of competent jurisdiction that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the Parties as closely as possible.  The obligations of the Parties hereunder are severable and not joint.

6.13  Costs and Attorneys' Fees.  If either Party retains an attorney in connection with any default or to collect, enforce, or defend this Agreement in any lawsuit, reorganization, bankruptcy or other proceeding, the prevailing party is entitled to collect its reasonable costs and expenses incurred in any such suit or proceeding, including reasonable attorneys' fees.

*[Signature Pages Follow]*

**PAYSON PETROLEUM, INC.**


By: _____
      **Jason R. Searcy, Chapter 11 Trustee**


**PAYSON PETROLEUM 3 WELL, L.P.**


By: _____
      **Christopher J. Moser, Chapter 7 Trustee**

STATE OF TEXAS          §
                                §
COUNTY OF GREGG      §

         BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON PETROLEUM, INC.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

                                                _____
                                                Notary Public in and for State of Texas
                                                My Commission Expires: _____

STATE OF TEXAS          §
                                §
COUNTY OF _____      §

         BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

                                                _____
                                                Notary Public in and for State of Texas
                                                My Commission Expires: _____

**I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement\Ex 2 3 Well LP Subject Claims Assign-Participation Agmt\20170905 3WellLP_SubjectClaimsAssignParticipationAgmt.docx**





_____, 2017

VIA EMAIL:  cmoser@qslwm.com          VIA EMAIL:  jsearcy@jsearcylaw.com

Mr. Christopher J. Moser                        Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.       Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800                  446 Forest Square
Dallas, TX  75201                              Longview, TX  75605

Re:     **Proposed Engagement Agreement**

        **Bankruptcy Case No. 17-40179;** *In re Payson Petroleum 3 Well, L.P.* **in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")**

Mr. Moser and Mr. Searcy:

        This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well, L.P. ("3 Well LP" or "Debtor").  This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval.  Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

        **Description of Engagement**.  The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 3 Well LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 3 Well LP.  The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

        a.      3 Well LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

        b.      3 Well LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 3 Well LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

        c.      objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

_____, 2017
Page 2

(collectively, the "<u>Subject Matters</u>"). Claims, causes of action and/or objections with respect to a specific party are referred to as a "<u>Specific Subject Matter</u>"). SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful. As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 3 Well LP (the "<u>3 Well LP Trustee</u>") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 3 Well LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 3 Well LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 3 Well LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters. Client and the 3 Well LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

**<u>Legal Fees</u>.** The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below. The fees to be paid to SSG will be a percentage of the "<u>Recovery</u>" (as defined below) realized with respect to each Specific Subject Matter. The Client and the 3 Well LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter. The agreed upon percentages and benchmarks are set forth below:

_____, 2017

Page 3

| Fees as a Percent of Recovery | Benchmark Event |
|---|---|
| 33% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter. |
| 35% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter. |
| 40% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order. |

The Client and the 3 Well LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 3 Well LP Trustee.

The term "Recovery" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 3 Well LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed. The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit. For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed. If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 3 Well LP with respect to the subject creditor which is released or disallowed. For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim. For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 3 Well LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.** Client and the 3 Well LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary. Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses. Such third party fees and expenses will be billed directly to Client. Client will be responsible for paying fees and expenses of third parties. In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

_____, 2017

Page 4

Client and the 3 Well LP Trustee further acknowledge that SSG will incur various expenses in providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG. Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be reimbursed by Client solely out of Recoveries.

**Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and the 3 Well LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received by Client and the 3 Well LP Trustee will be conveyed to SSG for notice purposes only.

**No settlement of any nature shall be made for the Subject Matters without the approval of Client and the United States Bankruptcy Court.** Client acknowledges that all communications from adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG, as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

**Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC* (Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well 2014, L.P.* (Bankruptcy Case No. 17-40180). While SSG does not anticipate that its prior and/or current representation of Client will adversely affect Client's or 3 Well LP Trustee's interests in the Subject Matters, applicable rules of professional conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject Matters. Client acknowledges his express and informed consent to SSG's representation of Client with respect to the Subject Matters as well as SSG's continuing representation of Client in other matters, including related matters. 3 Well LP Trustee acknowledges that he is aware that SSG represents Client in other matters, including the above-referenced related matters, and waives any conflict relating thereto.

If a controversy arises between you and any other client of SSG, SSG, after taking into account the applicable rules of professional ethics, may decline to represent you or such other client or both you and such other client. Following the conclusion of our representation of you in this matter, SSG reserves the right to represent other future clients on unrelated matters which may be adverse to your interests.

**Withdrawal/Termination of Representation.** Our representation may be terminated prior to the conclusion of the Subject Matters covered under this engagement letter by written notice to the other party. SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

**Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if appropriate), it is Client's and the 3 Well LP Trustee's obligation to advise us as to which, if any, documents

_____, 2017

Page 5

in our files they wish SSG to return.  SSG may keep copies thereof for our records to the extent we believe advisable.  SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter.  THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

     **Email Communications.**  To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail.  The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents.  We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form.  The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties.  Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

     **Approval of Terms of Engagement.**  If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature.  A copy of this agreement should be retained for your files.

     **Bankruptcy Court Approval.  The parties acknowledge that the Bankruptcy Court must approve this agreement.**

                         Regards,

                         SNOW SPENCE GREEN LLP

                         By:_____
                             Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:

By: _____
     Christopher J. Moser
     Chapter 7 Trustee for Payson Petroleum 3 Well, L.P.

By: _____
     Jason R. Searcy
     Chapter 11 Trustee for Payson Petroleum, Inc.



**EXHIBIT 2**



SNOW SPENCE GREEN LLP

_____, 2017

VIA EMAIL:  cmoser@qslwm.com                    VIA EMAIL:  jsearcy@jsearcylaw.com

Mr. Christopher J. Moser                                    Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.        Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800                              446 Forest Square
Dallas, TX  75201                                         Longview, TX  75605

Re:      **Proposed Engagement Agreement**

**Bankruptcy Case No. 17-40180; _In re Payson Petroleum 3 Well 2014, L.P._ in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")**

Mr. Moser and Mr. Searcy:

This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well 2014, L.P. ("2014 LP" or "Debtor").  This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval.  Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

**Description of Engagement**.  The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 2014 LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 2014 LP.  The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

a.       2014 LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

b.       2014 LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 2014 LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

c.       objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

_____, 2017
Page 2

(collectively, the "Subject Matters").  Claims, causes of action and/or objections with respect to a specific party are referred to as a "Specific Subject Matter").  SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful.  As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 2014 LP (the "2014 LP Trustee") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 2014 LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 2014 LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 2014 LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters.  Client and the 2014 LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

**Legal Fees.**  The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below.  The fees to be paid to SSG will be a percentage of the "Recovery" (as defined below) realized with respect to each Specific Subject Matter.  The Client and the 2014 LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter. The agreed upon percentages and benchmarks are set forth below:

_____, 2017
Page 3

| Fees as a Percent of Recovery | Benchmark Event |
|---|---|
| 33% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter. |
| 35% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter. |
| 40% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order. |

The Client and the 2014 LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 2014 LP Trustee.

The term "Recovery" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 2014 LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed. The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit. For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed. If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 2014 LP with respect to the subject creditor which is released or disallowed. For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim. For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 2014 LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.** Client and the 2014 LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary. Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses. Such third party fees and expenses will be billed directly to Client. Client will be responsible for paying fees and expenses of third parties. In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

_____, 2017
Page 4

Client and the 2014 LP Trustee further acknowledge that SSG will incur various expenses in providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG. Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be reimbursed by Client solely out of Recoveries.

**Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and the 2014 LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received by Client and the 2014 LP Trustee will be conveyed to SSG for notice purposes only.

**No settlement of any nature shall be made for the Subject Matters without the approval of Client and the United States Bankruptcy Court.** Client acknowledges that all communications from adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG, as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

**Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC* (Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well, L.P.* (Bankruptcy Case No. 17-40179). While SSG does not anticipate that its prior and/or current representation of Client will adversely affect Client's or 2014 LP Trustee's interests in the Subject Matters, applicable rules of professional conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject Matters. Client acknowledges his express and informed consent to SSG's representation of Client with respect to the Subject Matters as well as SSG's continuing representation of Client in other matters, including related matters. 2014 LP Trustee acknowledges that he is aware that SSG represents Client in other matters, including the above-referenced related matters, and waives any conflict relating thereto.

If a controversy arises between you and any other client of SSG, SSG, after taking into account the applicable rules of professional ethics, may decline to represent you or such other client or both you and such other client. Following the conclusion of our representation of you in this matter, SSG reserves the right to represent other future clients on unrelated matters which may be adverse to your interests.

**Withdrawal/Termination of Representation.** Our representation may be terminated prior to the conclusion of the Subject Matters covered under this engagement letter by written notice to the other party. SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

**Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if appropriate), it is Client's and the 2014 LP Trustee's obligation to advise us as to which, if any, documents in our files they wish SSG to return. SSG may keep copies thereof for our records to the extent we believe

_____, 2017

Page 5

advisable.  SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter.  THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

      **Email Communications.**  To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail.  The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents.  We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form.  The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties.  Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

      **Approval of Terms of Engagement.**  If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature.  A copy of this agreement should be retained for your files.

      **Bankruptcy Court Approval.**  **The parties acknowledge that the Bankruptcy Court must approve this agreement.**

          Regards,

          SNOW SPENCE GREEN LLP

          By:_____
              Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:


By: _____
      Christopher J. Moser
      Chapter 7 Trustee for Payson Petroleum 3 Well 2014, L.P.


By: _____
      Jason R. Searcy
      Chapter 11 Trustee for Payson Petroleum, Inc.

# EXHIBIT 3 TO SETTLEMENT AGREEMENT

# AGREED FINAL JUDGMENT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | JOINTLY ADMINISTERED |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

---

| | | |
|---|---|---|
| JASON R. SEARCY, | § | |
| CHAPTER 11 TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adversary No. 16-04106 |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P. | § | |
| & PAYSON PETROLEUM 3 WELL | § | |
| 2014, L.P., | § | |
| | § | |
| Defendants. | § | |

## AGREED FINAL JUDGMENT

ON THIS DATE, came on to be considered the above-entitled and numbered cause wherein Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 is the "Plaintiff" and Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. are the "Defendants."

After considering the Joint Motion for Entry of Agreed Final Judgment (the "Motion") filed by Plaintiff and Defendants, other pleadings on file, and argument of the parties, if any, the Court hereby finds that the Motion should be granted. The Court further finds that:

- Payson Petroleum 3 Well, L.P. ("3 Well LP") owes Payson Petroleum, Inc.

1

("Payson Petroleum") the sum of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) under that certain October 10, 2013 Subscription Turn Key Agreement between 3 Well LP and Payson Petroleum (the "3 Well LP Turnkey Agreement");

• Payson Petroleum 3 Well 2014, L.P. ("2014 LP") owes Payson Petroleum the sum of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) under that certain January 12, 2014 Subscription Turn Key Agreement between 2014 LP and Payson Petroleum (the "2014 LP Turnkey Agreement");

• On or about Marcy 28, 2016, Maricopa Resources, LLC ("Maricopa") assigned certain interests in the William #1H (API # 181-31557), the Crowe #2 (API #181-31543), and the Elaine #1 (API #181-31547) (collectively the "Subject Wells") oil and gas wells and related leaseholds to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066 and are attached hereto as **Exhibit 1** (the "Avoidable Assignments"); and

• Maricopa made the Avoidable Assignments during the 90-day period preceding the filing of Maricopa's bankruptcy petition, while Maricopa was not solvent, in furtherance of a fraudulent scheme which defrauded Maricopa's creditors, and without receiving reasonably equivalent value in return from 3 Well LP or 2014 LP and, therefore, that the Avoidable Assignments may be avoided pursuant to 11 U.S.C. § 548(a)(1)(A) & (B).

It is therefore ORDERED, ADJUDGED, AND DECREED that the Motion is Granted;

It is further ORDERED, ADJUDGED, AND DECREED that the Avoidable Assignments are constructive and actual fraudulent transfers of the interests set forth therein and are hereby

avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B);

It is further ORDERED, ADJUDGED, AND DECREED that **Final Judgmen**t is hereby granted in favor of:

- Payson Petroleum against 3 Well LP in the amount of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement;

- Payson Petroleum against 2014 LP in the principal amount of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement;

- Maricopa against 3 Well LP for the interests transferred to 3 Well LP via the Avoidable Assignments and/or the value thereof; and

- Maricopa against 2014 LP for the interests transferred to 2014 LP via the Avoidable Assignments and/or the value thereof.

It is further ORDERED, ADJUDGED, AND DECREED that:

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40179 in the amount of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement; and

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40180 in the amount of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement.

**This is a Final Judgment. All relief not ordered herein is expressly denied.**

**SUBMITTED BY:**

/s/
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

**AGREED AS TO FORM AND SUBSTANCE:**

/s/
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

/s/
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P. AND PAYSON PETROLEUM 3 WELL 2014, L.P.**



**EXHIBIT**

**1**

## Grayson County
## Wilma Bush
## Grayson County Clerk
### Sherman, Texas 75090



70 2016 00006064

Instrument Number: 2016-00006064

As

Recordings

Recorded On: March 28, 2016

Parties: MARICOPA RESOURCES LLC

To    PAYSON PETROLEUM 3 WELL 2014 LP ETAL

Billable Pages: 6

Number of Pages: 8

Comment: ASSIGN

( Parties listed above are for Clerks reference only )

---

** Examined and Charged as Follows: **

Recordings    36.00

Total Recording:    36.00

---

************ **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** ************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

File Information:

Document Number: 2016-00006064

Receipt Number: 447187

Recorded Date/Time: March 28, 2016 12:09:45P

Book-Vol/Pg: BK-OR VL-5779 PG-389

User / Station: G WHITE - Cashiering Station 1

Record and Return To:

PAYSON PETROLEUM
2652 FM 407 E #250
BARTONVILLE TX 76226



THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF GRAYSON | § | |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.    an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.    an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective August 1, 2015 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – William #1H, dated August 15, 2014, by Maricopa Resources LLC, and recorded in Volume 5650, Page 778 of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

### ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the "Assets":

a.    The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX), collectively referred to in this Assignment as the ("Well").

b.      The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.      All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.      All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.      All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.      <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"): all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.      <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a depth not greater than the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.      <u>Real property warranty</u>. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.      <u>Assignees' Assumption of Liabilities and Obligations</u>.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 2

5.     <u>Indemnification</u>. Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6.     <u>Royalty Payments</u>. Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims. Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7.     <u>Indemnification Claims</u>. With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities. All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8.     <u>Transfer Taxes and Recording Fees</u>. Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9.     <u>Government Assignment Forms</u>. Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment. The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10.     <u>No Third Party Beneficiaries</u>. The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11.     <u>Successors and Assigns</u>. This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

    This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this **23rd** day of **March** 2016.

**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

00006064   Bk   Vol   Pg
OR   5779   393

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

STATE OF TEXAS          §
                                      §
COUNTY OF DENTON   §

This instrument was acknowledged before me on _____March 23rd_____, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas

STATE OF TEXAS          §
                                      §
COUNTY OF DENTON   §

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas

STATE OF TEXAS          §
                                      §
COUNTY OF DENTON   §

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas

## EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1. The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX).

2. Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the William # 1H Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|---|---|---|---|---|---|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensty, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981 | 402 | 2/1/2011 |

| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418 | 520 | 2/1/2008 |
|---------|------|------|------|------|------|
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980 | 156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296 | 513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296 | 506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980 | 140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760 | 92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760 | 88 | 3/6/2007 |
| Grayson | Gary Wayne Odle, dealing in his sole and separate property | Matthew Avery | 4296 | 493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760 | 92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983 | 321 | 4/10/2011 |
| Grayson | Vurlas Lane Wilson, a/k/a Verlas Lane Wilson and Marjorie Marie Wilson H/W | Matthew Avery | 4296 | 469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993 | 305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo, a married woman dealing in her sole and separate property | Matthew Avery | 4980 | 144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296 | 457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the James M Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297 | 46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296 | 461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296 | 449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296 | 466 | 6/27/2007 |
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296 | 454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo and Marty J. Garofalo, wife and husband | Matthew Avery | 4296 | 445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355 | 704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274 | 698 | 3/15/2013 |
| Grayson | PCB Trust, Philip C. Brown, Trustee, and Philip Charles Brown | Paradise Springs, LLC | 5274 | 701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367 | 400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002 | 826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002 | 830 | 8/21/2011 |
| Grayson | Philip C Brown, a/ka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002 | 834; 838 | 8/21/2011 |

***END OF EXHIBIT "A"***

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 6



## Grayson County
## Wilma Bush
## Grayson County Clerk
### Sherman, Texas 75090

70 2016 00006066

---

Instrument Number: **2016-00006066**

As

**Recordings**

**Recorded On:** March 28, 2016

**Parties:** MARICOPA RESOURCES LLC

**To** PAYSON PETROLEUM 3 WELL 2014 LP ETAL

**Billable Pages: 5**

**Number of Pages: 7**

**Comment:** ASSIGN

*( Parties listed above are for Clerks reference only )*

---

** Examined and Charged as Follows: **

Recordings                                32.00

**Total Recording:**            32.00

---

************** **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** **************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

Document Number: 2016-00006066

Receipt Number: 447187

Recorded Date/Time: March 28, 2016 12:09:45P

Book-Vol/Pg: BK-OR VL-5779 PG-404

User / Station: G WHITE - Cashiering Station 1

**Record and Return To:**

PAYSON PETROLEUM

2652 FM 407 E #250

BARTONVILLE TX 76226

---

THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma BlackLear Bush*

Wilma Blackshear Bush, Grayson County Clerk

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE,
## AND RELEASE

STATE OF TEXAS          §
                        §
COUNTY OF GRAYSON       §

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.          an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.          an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective April 9, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Assignment of Oil and Gas Leases, dated November 23, 2010, entered into between Atoka Operating, Inc. and Barber Exploration Company, and recorded in Volume 4888, Page 924, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

## ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

a.     The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

    b.    The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

    c.    All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

    d.    All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

    e.    All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

    1.    <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"):  all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

    2.    <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 11,164', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

    3.    <u>Real property warranty</u>. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

    4.    <u>Assignees' Assumption of Liabilities and Obligations</u>.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

    5.    <u>Indemnification</u>.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6.    <u>Royalty Payments</u>.  Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims.  Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7.    <u>Indemnification Claims</u>.  With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.  Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities.  All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8.    <u>Transfer Taxes and Recording Fees</u>.  Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9.    <u>Government Assignment Forms</u>.  Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements.  Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment.  The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10.    <u>No Third Party Beneficiaries</u>.  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11.    <u>Successors and Assigns</u>.  This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this **23rd** day of **March** 2016.


**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary


**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

Bk Vol Pg
00006066 OR 5779 408

By: ______________________
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

STATE OF TEXAS §
§
COUNTY OF DENTON §

This instrument was acknowledged before me on March 23rd, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

______________________
Notary in and for the State of Texas

STATE OF TEXAS §
§
COUNTY OF DENTON §

This instrument was acknowledged before me on March 23rd, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

______________________
Notary in and for the State of Texas

STATE OF TEXAS §
§
COUNTY OF DENTON §

This instrument was acknowledged before me on March 23rd, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

______________________
Notary in and for the State of Texas

## EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1. The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

2. Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Crowe #2 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Instrument Filed | Volume/Page | Effective Date |
|---|---|---|---|---|---|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas, and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operatinc, Inc. | Oil, Gas, and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr., a widower | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of The Estate Dorothy L. Darnell, Deceased | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr. Revocable Trust, Allen M. Tonkin Jr., Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust, Nancy T. Cutter and Allen M. Tonkin, Jr, Trustees | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |
| Grayson | Nancy T. Cutter Revocable Trust, Nancy T. Cutter Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust, Linley T. Solari, Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

*END OF EXHIBIT "A"*



**Grayson County**
**Wilma Bush**
**Grayson County Clerk**
**Sherman, Texas 75090**

70 2016 00006065

---

**Instrument Number: 2016-00006065**

As

**Recordings**

**Recorded On:** March 28, 2016

**Parties:** MARICOPA RESOURCES LLC

**To** PAYSON PETROLEUM 3 WELL 2014 LP ETAL

**Billable Pages:** 5

**Number of Pages:** 7

**Comment:** ASSIGN

( Parties listed above are for Clerks reference only )

---

**\*\* Examined and Charged as Follows: \*\***

Recordings                32.00

    **Total Recording:**        **32.00**

---

**\*\*\*\*\*\*\*\*\*\*\*\* DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\*\***

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

    Document Number: 2016-00006065

    Receipt Number: 447187

    Recorded Date/Time: March 28, 2016 12:09:45P

    Book-Vol/Pg: BK-OR VL-5779 PG-397

    User / Station: G WHITE - Cashiering Station 1

**Record and Return To:**

PAYSON PETROLEUM

2652 FM 407 E #250

BARTONVILLE TX 76226

---



THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE,
## AND RELEASE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GRAYSON | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.  an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.  an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective June 2, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – Elaine #1, dated to be effective June 1, 2014, by Maricopa Resources LLC, and recorded in Volume 5530, Page 781, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

## ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

a.  The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

006065   OR   5779   399

b.     The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.     All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.     All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.     All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.     <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"): all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.     <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 12,309', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.     <u>Real property warranty</u>. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.     <u>Assignees' Assumption of Liabilities and Obligations</u>.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

5.     <u>Indemnification</u>.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 2

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6. <u>Royalty Payments</u>. Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims. Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7. <u>Indemnification Claims</u>. With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities. All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8. <u>Transfer Taxes and Recording Fees</u>. Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9. <u>Government Assignment Forms</u>. Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment. The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10. <u>No Third Party Beneficiaries</u>. The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11. <u>Successors and Assigns</u>. This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this __23rd__ day of __March__ 2016.

ASSIGNOR:
MARICOPA RESOURCES, LLC

By:_____
William C. Griffin, Secretary

ASSIGNEE:
PAYSON PETROLEUM 3 WELL 2014, L.P.

By:_____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

By: 

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


STATE OF TEXAS §
§
COUNTY OF DENTON §

This instrument was acknowledged before me on _March 23rd_, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.



Notary in and for the State of Texas


STATE OF TEXAS §
§
COUNTY OF DENTON §

This instrument was acknowledged before me on _March 23rd_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

Notary in and for the State of Texas


STATE OF TEXAS §
§
COUNTY OF DENTON §

This instrument was acknowledged before me on _March 23rd_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.



Notary in and for the State of Texas


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1.  The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

2.  Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Elaine #1 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|--------|--------|--------|--------|------|------|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464 | 910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521 | 166 | 3/24/2014 |

*END OF EXHIBIT "A"*

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 5

# EXHIBIT 4 TO SETTLEMENT AGREEMENT

# JOINT MOTION FOR ENTRY OF AGREED FINAL JUDGMENT

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

| | | |
|---|---|---|
| **JASON R. SEARCY,** | § | |
| **CHAPTER 11 TRUSTEE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Adversary No. 16-04106** |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.** | § | |
| **& PAYSON PETROLEUM 3 WELL** | § | |
| **2014, L.P.,** | § | |
| | § | |
| **Defendants.** | § | |

## JOINT MOTION FOR ENTRY OF AGREED FINAL JUDGMENT

TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:

COME NOW, Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Motion for Entry of Agreed Final Judgment* (the "Joint Motion"), and in support thereof, respectfully show unto the Court the following:

1

1.      On July 13, 2017, Payson Trustee filed his First Amended Complaint in this adversary proceeding against Payson Petroleum 3 Well, L.P. ("3 Well LP") and Payson Petroleum 3 Well 2014, L.P. ("2014 LP") and asserted, *inter alia*, the following claims:

- breach of contract claims on behalf of Payson Petroleum, Inc. ("Payson Petroleum") against 3 Well LP and 2014 LP (collectively the "Defendants") for failure to pay amounts owed under certain "Turnkey Agreements;"

- actual and constructive fraudulent transfer claims on behalf of Payson Petroleum against Defendants to avoid and recover certain investment amounts Payson Petroleum transferred to Defendants;

- actual and constructive fraudulent transfer claims on behalf of Maricopa Resources, LLC ("Maricopa") against Defendants to avoid and recover certain wellbore interests that Maricopa transferred to Defendants during the 90-day period prior to June 10, 2016 in the Elaine No. 1, Crowe No. 2, and William No. 1H Wells (collectively the "Subject Wells"); and

- preferential transfer claims on behalf of Maricopa against Defendants to avoid and recover the interests in the Subject Wells that Mariocpa transferred to Defendants during the 90-day period prior to June 10, 2016.

(collectively the "Subject Claims").

2.      Following arms-length negotiations, the Payson Trustee and LP Trustee determined to settle disputes related to the Subject Claims, entered into that certain Settlement Agreement dated _____, 2017 (the "Agreement"), and filed Joint Motions to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 in Bankruptcy Case Nos. 16-40144, 17-40179, and 17-40180 (the "Joint Motions to Compromise") which sought entry of agreed orders in the applicable bankruptcy cases approving the Agreement (the "Agreed Orders").

3.      On _____, the Court entered the Agreed Orders.

4.      As more fully set forth in the Agreement, Joint Motions to Compromise, and Agreed Orders, the parties have agreed to entry of the "Agreed Final Judgment" in the form attached hereto as **Exhibit 1** in order to fully resolve the issues in the above-titled adversary

2

proceeding.

WHEREFORE, the Payson Trustee and LP Trustee respectfully request that this Court enter the Agreed Final Judgment and grant such other and further relief as is just and proper.

Dated: ___, 2017            Respectfully submitted,

By: _____/s/_____
        Phil Snow
        State Bar No. 18812600
        Blake Hamm
        State Bar No. 24069869
        SNOW SPENCE GREEN LLP
        2929 Allen Parkway, Suite 2800
        Houston, Texas 77019
        (713) 335-4800
        (713) 335-4848 (Fax)

        **COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

By: _____/s/_____
        Keith W. Harvey
        State Bar No. 09180100
        THE HARVEY LAW FIRM, P.C.
        6510 Abrams Road
        Suite 280
        Dallas, Texas 75231
        (972) 243-3960 Phone
        (972)-241-3970 Facsimile

        **COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P. AND PAYSON PETROLEUM 3 WELL 2014, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the ___ day of _____, 2017, a true and correct copy of the above and foregoing was served on the interested parties via the Court's ECF notification system.

<div style="text-align: right;">

_____

Blake Hamm
</div>



## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | **JOINTLY ADMINISTERED** |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

| | | |
|---|---|---|
| JASON R. SEARCY, | § | |
| CHAPTER 11 TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adversary No. 16-04106 |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P. | § | |
| & PAYSON PETROLEUM 3 WELL | § | |
| 2014, L.P., | § | |
| | § | |
| Defendants. | § | |

## AGREED FINAL JUDGMENT

ON THIS DATE, came on to be considered the above-entitled and numbered cause wherein Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 is the "Plaintiff" and Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. are the "Defendants."

After considering the Joint Motion for Entry of Agreed Final Judgment (the "Motion") filed by Plaintiff and Defendants, other pleadings on file, and argument of the parties, if any, the Court hereby finds that the Motion should be granted. The Court further finds that:

- Payson Petroleum 3 Well, L.P. ("3 Well LP") owes Payson Petroleum, Inc.

1

("Payson Petroleum") the sum of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) under that certain October 10, 2013 Subscription Turn Key Agreement between 3 Well LP and Payson Petroleum (the "3 Well LP Turnkey Agreement");

- Payson Petroleum 3 Well 2014, L.P. ("2014 LP") owes Payson Petroleum the sum of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) under that certain January 12, 2014 Subscription Turn Key Agreement between 2014 LP and Payson Petroleum (the "2014 LP Turnkey Agreement");

- On or about Marcy 28, 2016, Maricopa Resources, LLC ("Maricopa") assigned certain interests in the William #1H (API # 181-31557), the Crowe #2 (API #181-31543), and the Elaine #1 (API #181-31547) (collectively the "Subject Wells") oil and gas wells and related leaseholds to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066 and are attached hereto as **Exhibit 1** (the "Avoidable Assignments"); and

- Maricopa made the Avoidable Assignments during the 90-day period preceding the filing of Maricopa's bankruptcy petition, while Maricopa was not solvent, in furtherance of a fraudulent scheme which defrauded Maricopa's creditors, and without receiving reasonably equivalent value in return from 3 Well LP or 2014 LP and, therefore, that the Avoidable Assignments may be avoided pursuant to 11 U.S.C. § 548(a)(1)(A) & (B).

It is therefore Ordered, Adjudged, and Decreed that the Motion is Granted;

It is further Ordered, Adjudged, and Decreed that the Avoidable Assignments are constructive and actual fraudulent transfers of the interests set forth therein and are hereby

2

avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B);

It is further Ordered, Adjudged, and Decreed that **Final Judgmen**t is hereby granted in favor of:

- Payson Petroleum against 3 Well LP in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement;

- Payson Petroleum against 2014 LP in the principal amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement;

- Maricopa against 3 Well LP for the interests transferred to 3 Well LP via the Avoidable Assignments and/or the value thereof; and

- Maricopa against 2014 LP for the interests transferred to 2014 LP via the Avoidable Assignments and/or the value thereof.

It is further Ordered, Adjudged, and Decreed that:

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40179 in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement; and

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40180 in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement.

**This is a Final Judgment.  All relief not ordered herein is expressly denied.**

**SUBMITTED BY:**

/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

**AGREED AS TO FORM AND SUBSTANCE:**


/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**


/s/ _____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P. AND PAYSON PETROLEUM 3 WELL 2014, L.P.**



**EXHIBIT**

**1**

## Grayson County
## Wilma Bush
## Grayson County Clerk
### Sherman, Texas 75090



70 2016 00006064

### Instrument Number: 2016-00006064

As
### Recordings

Recorded On: March 28, 2016

Parties: MARICOPA RESOURCES LLC                                    Billable Pages: 6

To      PAYSON PETROLEUM 3 WELL 2014 LP ETAL          Number of Pages: 8

Comment: ASSIGN

( Parties listed above are for Clerks reference only )

### ** Examined and Charged as Follows: **

Recordings                          36.00

Total Recording:              36.00

\*\*\*\*\*\*\*\*\*\*\*\* **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** \*\*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

File Information:                                          Record and Return To:
  Document Number: 2016-00006064
  Receipt Number: 447187                                   PAYSON PETROLEUM
  Recorded Date/Time: March 28, 2016 12:09:45P             2652 FM 407 E #250
  Book-Vol/Pg: BK-OR  VL-5779  PG-389                      BARTONVILLE TX 76226
  User / Station: G WHITE - Cashiering Station 1



THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR
STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS
FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR
DRIVER'S LICENSE NUMBER.

<center>WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE,
AND RELEASE</center>

STATE OF TEXAS §
§
COUNTY OF GRAYSON §

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM
407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and
other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the
following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to
the well and wellbore described below, together with the rights associated with the wellbore as specifically described
below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.          an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.          an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective
August 1, 2015 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and
reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the
difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be
produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – William #1H, dated August 15,
2014, by Maricopa Resources LLC, and recorded in Volume 5650, Page 778 of the Official Public Records of Grayson
County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined
below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

<center>ASSIGNMENT AND AGREEMENT</center>

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns,
transfers, delivers, and conveys to Assignees the following, all of which are collectively called the "Assets":

a.      The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude
33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin
Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

Case 4:18-cv-40134-TSH Doc 12-2 Filed 09/21/17 Entered 09/21/17 15:33:27 Desc Exhibit A-Settlement Agreement Page 98 of 236

Bk Vol Ps
OR 5779 391

defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX), collectively referred to in this Assignment as the ("Well").

    b.    The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

    c.    All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

    d.    All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

    e.    All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

    1.    <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"): all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

    2.    <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a depth not greater than the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX and plug and abandon the Well. Assignees shall not have the right to deepen, sidetrack, or replace the Well.

    3.    <u>Real property warranty</u>. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

    4.    <u>Assignees' Assumption of Liabilities and Obligations</u>. Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations". The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 2

5.      Indemnification.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6.      Royalty Payments.  Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims.  Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7.      Indemnification Claims.  With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.  Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities.  All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8.      Transfer Taxes and Recording Fees.  Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9.      Government Assignment Forms.  Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements.  Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment.  The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10.     No Third Party Beneficiaries.  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11.     Successors and Assigns.  This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this  23rd  day of  March  2016.

ASSIGNOR:
MARICOPA RESOURCES, LLC

By: _____
     William C. Griffin, Secretary

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**

PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

**ASSIGNEE:**

PAYSON PETROLEUM 3 WELL, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by William C. Griffin, Secretary
of Maricopa Resources, LLC.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas

| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President
of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas

| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President
of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

## EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1. The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX).

2. Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the William # 1H Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|--------|--------|--------|--------|------|------|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensty, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981 | 402 | 2/1/2011 |

Case Case18-0400 Doc 3 Doc 12 Filed 09/21/17/15 Entered 09/21/17/15 13:27:04 Desc Exhibit A Suite Page Document 8 18 Page 102 of 236

BK      Vol      Ps
OR      5779      395

| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418 | 520 | 2/1/2008 |
|---------|------------------------------|-------------------|------|-----|----------|
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980 | 156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296 | 513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296 | 506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980 | 140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760 | 92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760 | 88 | 3/6/2007 |
| Grayson | Gary Wayne Odle, dealing in his sole and separate property | Matthew Avery | 4296 | 493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760 | 92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983 | 321 | 4/10/2011 |
| Grayson | Vurlas Lane Wilson, a/k/a Verlas Lane Wilson and Marjorie Marie Wilson H/W | Matthew Avery | 4296 | 469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993 | 305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo, a married woman dealing in her sole and separate property | Matthew Avery | 4980 | 144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296 | 457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the James M Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297 | 46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296 | 461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296 | 449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296 | 466 | 6/27/2007 |
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296 | 454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo and Marty J. Garofalo, wife and husband | Matthew Avery | 4296 | 445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355 | 704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274 | 698 | 3/15/2013 |
| Grayson | PCB Trust, Philip C. Brown, Trustee, and Philip Charles Brown | Paradise Springs, LLC | 5274 | 701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367 | 400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002 | 826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002 | 830 | 8/21/2011 |
| Grayson | Philip C Brown, a/ka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002 | 834; 838 | 8/21/2011 |

*END OF EXHIBIT "A"*

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 6



# Grayson County
# Wilma Bush
# Grayson County Clerk
### Sherman, Texas 75090

70 2016 00006066

---

### Instrument Number: 2016-00006066

As
**Recordings**

**Recorded On:** March 28, 2016

**Parties:** MARICOPA RESOURCES LLC            **Billable Pages: 5**

**To**    PAYSON PETROLEUM 3 WELL 2014 LP ETAL       **Number of Pages: 7**

**Comment:** ASSIGN

*( Parties listed above are for Clerks reference only )*

---

### ** Examined and Charged as Follows: **

| | | |
|---|---|---|
| Recordings | 32.00 | |
| **Total Recording:** | **32.00** | |

---

*********** **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                          **Record and Return To:**

Document Number: 2016-00006066

Receipt Number: 447187                      PAYSON PETROLEUM

Recorded Date/Time: March 28, 2016 12:09:45P        2652 FM 407 E #250

Book-Vol/Pg: BK-OR VL-5779 PG-404          BARTONVILLE TX 76226

User / Station: G WHITE - Cashiering Station 1

---



THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:   YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

STATE OF TEXAS               §
                             §
COUNTY OF GRAYSON            §

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.          an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.               an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective April 9, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Assignment of Oil and Gas Leases, dated November 23, 2010, entered into between Atoka Operating, Inc. and Barber Exploration Company, and recorded in Volume 4888, Page 924, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

### ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

a.       The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

0006066 OR 5779 406

b.    The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.    All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.    All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.    All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.    <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"):  all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.    <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 11,164', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.    <u>Real property warranty</u>.  Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.    <u>Assignees' Assumption of Liabilities and Obligations</u>.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following:  (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation:  (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

5.    <u>Indemnification</u>.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6.  <u>Royalty Payments</u>. Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims. Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7.  <u>Indemnification Claims</u>. With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities. All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8.  <u>Transfer Taxes and Recording Fees</u>. Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9.  <u>Government Assignment Forms</u>. Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment. The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10. <u>No Third Party Beneficiaries</u>. The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11. <u>Successors and Assigns</u>. This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this __23rd__ day of __March__ 2016.


**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary


**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _March 23 rd_, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _March 23 rd_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _March 23 rd_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas

### EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1. The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

2. Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Crowe #2 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Instrument Filed | Volume/Page | Effective Date |
|--------|--------|--------|------------------|-------------|----------------|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas, and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operatinc, Inc. | Oil, Gas, and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr., a widower | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of The Estate Dorothy L. Darnell, Deceased | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr. Revocable Trust, Allen M. Tonkin Jr., Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust, Nancy T. Cutter and Allen M. Tonkin, Jr, Trustees | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |
| Grayson | Nancy T. Cutter Revocable Trust, Nancy T. Cutter Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust, Linley T. Solari, Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

*END OF EXHIBIT "A"*



## Grayson County
## Wilma Bush
## Grayson County Clerk
### Sherman, Texas 75090

70 2016 00006065

---

### Instrument Number: 2016-00006065

As
**Recordings**

**Recorded On: March 28, 2016**

**Parties:** MARICOPA RESOURCES LLC          **Billable Pages: 5**

**To**    PAYSON PETROLEUM 3 WELL 2014 LP ETAL     **Number of Pages: 7**

**Comment: ASSIGN**

*( Parties listed above are for Clerks reference only )*

---

### ** Examined and Charged as Follows: **

| | |
|---|---|
| Recordings | 32.00 |
| **Total Recording:** | **32.00** |

---

### *********** DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                    **Record and Return To:**

   Document Number: 2016-00006065

   Receipt Number: 447187               PAYSON PETROLEUM

   Recorded Date/Time: March 28, 2016 12:09:45P     2652 FM 407 E #250

   Book-Vol/Pg: BK-OR VL-5779 PG-397       BARTONVILLE TX 76226

   User / Station: G WHITE - Cashiering Station 1

---

THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

STATE OF TEXAS             §
                          §
COUNTY OF GRAYSON          §

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.          an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.               an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective June 2, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – Elaine #1, dated to be effective June 1, 2014, by Maricopa Resources LLC, and recorded in Volume 5530, Page 781, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

## ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

a.      The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

b.     The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.     All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.     All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.     All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.     Excluded Assets.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"):  all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.     Operations.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 12,309', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.     Real property warranty.  Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.     Assignees' Assumption of Liabilities and Obligations.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

5.     Indemnification.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6. <u>Royalty Payments</u>. Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims. Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7. <u>Indemnification Claims</u>. With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities. All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8. <u>Transfer Taxes and Recording Fees</u>. Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9. <u>Government Assignment Forms</u>. Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment. The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10. <u>No Third Party Beneficiaries</u>. The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11. <u>Successors and Assigns</u>. This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this **23rd** day of *March* 2016.

**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By:_____
William C. Griffin, Secretary

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By:_____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


| STATE OF TEXAS | § |
| --- | --- |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on  _March 23rd_ , 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| --- | --- |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on  _March 23rd_ , 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| --- | --- |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on  _March 23rd_ , 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1. The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

2. Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Elaine #1 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|--------|--------|--------|--------|------|------|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464 | 910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521 | 166 | 3/24/2014 |

*END OF EXHIBIT "A"*

# EXHIBIT 5 TO SETTLEMENT AGREEMENT

# CONTRACT OPERATING
# SERVICES AGREEMENT

## CONTRACT OPERATING SERVICES AGREEMENT

This Contract Operating Services Agreement (this "*Agreement*") made and entered into this _____ day of July, 2016 by and between Traton Operating Company. (hereinafter "*Contractor*"), and Payson Operating, LLC, (hereinafter "*Owner*"). Owner and Contractor are referred to collectively as the "*Parties*" and individually as a "*Party*".

### WITNESSETH:

WHEREAS, Owner owns undivided working interests in the oil and gas leases (the "*Leases*") located in the counties and states as described in or covered by the Subject JOAs, as defined below, and as same may be amended from time to time (the land described in such Leases is referred to herein as the "*Contract Area*");

WHEREAS, Owner desires to retain the services of Contractor to act as a contract operator for the Leases; and

WHEREAS, Contractor has the capability to and desires to render such services on behalf of Owner.

WHEREAS, Contractor will perform the services as required by the Owner (of which Payson Operating, LLC is the operator of record at the Texas RRC) under certain joint operating agreements covering the Leases in the Contract Area more particularly described on *Exhibit A*, as same may be amended from time to time (the "*Subject JOAs*");

NOW, THEREFORE, based upon the mutual covenants and considerations contained herein, the sufficiency of which is hereby acknowledged, Contractor and Owner agree as follows:

### ARTICLE I
### DESIGNATION AND RESPONSIBILITIES OF CONTRACTOR

1.1    Subject to the terms of this Agreement, Contractor shall conduct and direct all operations on the Leases as permitted and required by and within the limits of this Agreement (the "*Services*").   Contractor shall perform all services with due diligence and dispatch in accordance with the standards for the Operator under the Subject JOAs and generally accepted oil field practice, conforming to all applicable laws, rules, orders and regulations of any competent governmental body, which are now or may become applicable to the operations contemplated by this Agreement.  Owner agrees to assist Contractor by providing Contractor with authorizations necessary for the proper performance of its services. Contractor shall use all possible care and diligence to ensure that the Services rendered pursuant to this Agreement are performed:

    1)    reasonably and prudently;

    2)    in a skillful and workmanlike manner;

1

    3)    in full compliance with all applicable local, municipal, county, state and federal laws and regulations.

Contractor shall perform all work and labor appropriate or necessary for setting, installing, handling, caring for, and maintaining all materials, equipment, and supplies furnished by Owner in connection with the Services.

1.2    Subject to the terms of this Agreement, Contractor shall manage, develop and supervise the Contract Area.  Pursuant to such obligations and as required by Owner and as applicable, Contractor shall:

    (a)    Supervise contract or Contractor's pumpers, whose services will include but will not be limited to gauging tanks, recording well pressure, preparing gauge reports, treating oil, making minor repairs, and reporting unusual or abnormal occurrences.

    (b)    Review well performance and prepare for Owner monthly reports that summarize production in Contractor's standard form on a per well basis for each of the Subject JOAs. Contractor shall also note and evaluate any abnormal changes in production.

    (c)    Prepare and furnish to any duly constituted authority having jurisdiction over the Leases any and all reports, statements and information that may be required.

    (d)    Use its best efforts to establish and maintain complete and accurate well files containing information on operations performed in connection with each well.

    (e)    Review and approve all invoices and charges for all expenses incurred and credits received.

    (f)    Keep accurate books of account showing all items of cost or expense incurred in connection with the Leases, and Contract Area with respect to each of the Subject JOAs, and make and pay all charges in accordance with the provisions of this Agreement.

    (g)    Prepare and render billings to the Owner and non-operators with respect to each of the Subject JOAs for approved expenses and charges for services as Contractor as agreed herein.

1.3    Upon Owner's request, Contractor shall perform the following services in connection with general requests from partners or as otherwise instructed by the Trustee, completing, working-over, or drilling any well in the Contract Area, or reworking, deepening, or plugging back a dry hole:

    (a)    Conduct field inspection and inventory equipment

2

Case Case 18-10040c doc 12-2 Filed 09/21/17/15 Entered 09/21/17/15/18 22 27 43c Exhibit A Settlement Agreement Page 117 of 818 Page

117 of 236

(b)     Locate and contract, on Owner's behalf, contract pumpers or gagues for the Contract Area

(c)     Supervise all routine well service operations and repair and maintenance operations, including onsite supervision of the installation or removal of well equipment, pumping of any treating fluid or substance into a well, and other onsite operations performed under contract by third party or with leased equipment.

(d)     Supervise all drilling and completion operations, workover operations, recompletion operations, and any type of remedial operation, whether or not it would ordinarily be considered a normal well-service operation. This includes contracting with supervisory personnel for onsite supervision as required and maintaining overall supervision of such personnel through day-to-day contact.

(e)     Prepare operating and drilling procedures.

(f)     Prepare operating cost estimates and circulate Authorizations for Expenditures for Owner's approval.

(g)     Obtain all necessary drilling permits and file all necessary and appropriate reports required prior to, during or after completion of operations.

(h)     Conduct overall supervision of drilling supervisor(s) through daily monitoring of drilling, deepening, recompletion or other critical operations.

(i)     Prepare AFEs and procedures and conduct overall supervision through daily monitoring of field personnel, of plugging and abandonment operations of any wells located in the Contract Area in compliance with all federal, state and local regulations and orders.

(j)     Provide emergency response assistance with respect to any accident, spill, upset or similar occurrence requiring immediate action to protect the health, safety and mechanical and environmental integrity of the Contract Area and equipment located thereon.

(k)     Assist Owner in responding to requests from interested parties or the Trustee including but not limited to any efforts to market its interest in the Contract Area, including making its records available and making knowledgeable personnel available to accompany potential buyers and respond to questions as they inspect and tour the properties.

(l)     Maintain land and lease documents.

(m)     Market Production.

(n)     Perform any work falling under Contractor's expertise as directed by Owner.

(o)     Unless otherwise agreed by Contractor, all contracts with third parties (excluding contracts with drilling supervisor(s) for onsite supervision), shall be in the name of Owner under master service contracts in form approved by Owner and similar in form and substance to the Master Service Agreement that has previously been established by Owner. Contractor shall have no liability with respect to third-party contracts. Provided, however, Contractor shall initiate no remedial work, repairs, replacement of equipment, etc. with an estimated total cost exceeding $25,000.00 without the prior written approval of Owner.

1.4     All personnel involved in the day-to-day lease operations shall be under the supervision of the Contractor. The selection, hiring, dismissal and work schedule of such contractors and employees of Contractor shall be determined by Contractor.

1.5     Owner shall have access at all reasonable times to the Leases, to all information pertaining to wells drilled, production secured, and oil and gas marketed, and to the books, records, and vouchers relating to the operation of the Leases. Contractor shall, upon Owner's request, furnish Owner with weekly gauge and run tickets. Notwithstanding anything to the contrary herein, all information referenced in this Section 1.6 shall be the property of Owner.

1.6     Owner will grant Contractor access to an account for revenues, operating costs, fees and expenses for each Contract Area under each of the Subject JOAs (the "*Operating Account*"). Prior to the fifteenth (15th) day of each month, Contractor will prepare and deliver to Owner an operating statement for each of the Subject JOAs (the "*Property Operating Statement*"), which Property Operating Statement shall include (a) Contractor's estimate of production volumes; (b) actual revenues received in the prior month; (c) all costs, expenses and charges billed by third parties to Contractor in the prior month, including, without limitation, all sums due under the Leases and other liquidated monetary obligations; and (d) expenditures and fees recorded by Contractor in form satisfactory to Owner. Promptly after delivery of the Property Operating Statement, Contractor shall transfer sufficient funds from the revenue account into the operating account necessary to cover operating costs, fees (including Contractor fees) and expenses set forth on the Property Operating Statement. Contractor shall have the right to withdraw funds from the Operating Account to pay for the services hereunder. The parties hereto acknowledge and agree that from time to time the funds in the Operating Account may be insufficient to cover the operating expenses for such month, in which case Contractor shall immediately notify Owner of the projected shortfall and any interim payments into the account to cover such shortfall will be evaluated by Owner and paid on a case-by-case basis. In no event shall Contractor be required to advance funds on behalf of Owner to conduct the operations or proceed with any operations, unless there are available funds in the account to cover the cost of such operations or Owner has contracted directly for such services.

1.7     At all reasonable times and upon thirty (30) days prior written notice, Contractor shall permit employees and agents of Owner to have access to its offices and work locations to examine, reproduce and retain copies of such documentation and data and to interview Contractor's personnel in connection therewith, as necessary for Owner to verify and monitor (i) the accuracy and propriety of Service fees and reimbursable expenses pursuant to this Agreement, and (ii) Contractor's compliance with the terms of this Agreement. Where Services hereunder, are billed under fixed rates, Owner's auditors shall have sufficient access to those

3

4

rates to satisfy themselves that the Services have not also been separately billed on some other basis (e.g., a reimbursable basis). The provisions of this Section 1.7 shall be applicable during the term of this Agreement and for a period of one (1) year thereafter. Any costs associated with Owner's audit requirements or procedures shall be solely for Owner's account. If errors or deficiencies are identified by an audit or otherwise, both Parties shall take prompt corrective action thereof.

## ARTICLE II
## COMPENSATION OF CONTRACTOR

2.1    During the term of this Agreement, Contractor shall be compensated:

(a)    For Services completed under Section 1.2, in accordance with the overhead rate structure set forth on *Exhibit B* hereto.

(b)    For Services completed under Section 1.3, in accordance with the hourly rate structure set forth on *Exhibit C* hereto.

2.2    The above compensation shall not include any direct costs and third-party costs that are proper charges to the Contractor Account that are incurred by the Contractor in connection with services rendered hereunder. Owner shall reimburse Contractor for any third-party charges incurred by Contractor in accordance with this Agreement within thirty (30) business days of delivery of invoice.

## ARTICLE III
## RESPONSIBILITIES OF OWNER

3.1    Owner shall be the operator of record with respect to the Leases under each of the Subject JOAs.

3.2    Owner shall be duly authorized under all laws, rules, orders and regulations of any competent governmental body, which are now or may become applicable to the operations contemplated by this Agreement and shall obtain and maintain all necessary permits, bonds and sureties as may be required thereunder.

## ARTICLE IV
## HEALTH AND SAFETY OBLIGATIONS

BY EXECUTING THIS AGREEMENT, CONTRACTOR REPRESENTS AND WARRANTS THAT IT IS QUALIFIED TO DO BUSINESS IN EACH OF THE JURISDICTIONS WITHIN THE CONTRACT AREA. CONTRACTOR FURTHER REPRESENTS AND WARRANTS THAT ITS EMPLOYEES ARE QUALIFIED AND COMPETENT AND THAT CONTRACTOR IS, AND WILL BE THROUGHOUT THE DURATION OF THIS AGREEMENT, TRAINED AND COMPLIANT TO THE STANDARDS OF A REASONABLY PRUDENT OPERATOR IN ALL MATTERS RELATED TO HEALTH, SAFETY AND WORK ENVIRONMENT.

5

## ARTICLE V
## INDEPENDENT CONTRACTOR

Contractor undertakes the performance of the provisions of this Agreement as an independent contractor, and neither Contractor nor any of its employees, contractors or agents will be deemed to be an employee, servant, agent or partner of or joint venturer with Owner. Owner shall not, in any respect, be responsible for the hiring, employment or working conditions of the persons employed or retained by Contractor in connection with the performance of Contractor's obligations under the terms of this Agreement.

## ARTICLE VI
## INSURANCE

Contractor shall maintain insurance of the type, in the amounts and with the limits set forth on *Exhibit D* hereto. Each party shall be named as an additional insured under each of the policies for the duration hereof.

## ARTICLE VII
## FORCE MAJEURE

Contractor shall not be liable to Owner for any loss on the Leases caused by war, strikes, tornadoes, floods, governmental priorities on materials or other governmental restrictions, or inability to obtain suitable equipment or labor resulting from any other causes not due to Contractor's failure to exercise reasonable diligence in the performance of Contractor's obligations hereunder. If Contractor is delayed or prevented from performing for any such cause, it shall do all things reasonably possible to remove such cause and shall resume performance hereunder as soon as such cause is removed.

## ARTICLE VIII
## BINDING EFFECT OF AGREEMENT

This Agreement shall be binding upon and inure to the benefit of the parties, their respective successors and permitted assigns. The right of either party to assign this Agreement is subject to the prior written consent of the non-assigning party, which consent shall not be unreasonably withheld or delayed. Notwithstanding the immediately preceding sentence, each party may assign and transfer this Agreement to an affiliate or pursuant to a reorganization or change in control of such party or the person that controls such party without such consent. Any assignment in contravention of this *Article VIII* shall be void.

## ARTICLE IX
## AMENDMENT, TERMINATION AND TURNOVER DATE

9.1    Either party hereto has the right to terminate this Agreement without cause by providing the other party with sixty (60) days prior written notice. In the event of a material breach of this Agreement by either party, including the failure of a party to perform any operation or action proposed hereunder that, the other party may terminate this Agreement by providing the breaching party with thirty (30) days notice. In the event of termination by Owner,

6

Owner shall pay Contractor in full all amounts due Contractor through the termination date. Upon termination of this Agreement or partial termination as to any Contract Area, Contractor will cooperate with Owner for an orderly transition of operations and will turn over all books and records regarding the Contract Area upon request. Owner shall compensate Contractor for post-termination services requested by Owner and provided in connection with the transition at Contractor's standard hourly rate as set forth on *Exhibit C*.

9.2     Upon termination of this Agreement, the Parties shall not be relieved of any liabilities arising from or incident to Services rendered. The Parties shall not be liable to either Party for any cost or loss in connection with such termination, including but not limited to loss of anticipatory profits. Upon termination of this Agreement, Contractor shall immediately remove all of its and its subcontractors' equipment and materials from Owner's premises that are not necessary for the completion of or the provision of any Service then underway and, notwithstanding anything herein to the contrary, sixty (60) days after the receipt of Contractor of notice of the termination of this Agreement by Owner, Owner shall bear no responsibility for the equipment or materials of Contractor that remain on Owner's premises but which are not necessary for the completion or the provision of any Service then underway.

9.3     If either party (a) generally fails to pay, or admits in writing its inability to pay, its debts as they become due, (b) commences any insolvency proceeding with respect to itself, (c) take any action to effectuate or authorize either (a) or (b), (d) becomes the subject of any involuntary insolvency proceeding, or has any writ, judgment, warrant of attachment, execution or similar process issued or levied against all or a substantial part of its properties, and any such proceeding or petition is not dismissed, or such writ judgment, warrant of attachment, execution or similar process is not released, vacated or fully bonded within sixty (60) days after commencement, filing or levy (e), admits the material allegation of a petition against it in any insolvency proceeding, or an order for relief is issued against it in any insolvency proceeding, or (f) consents to the appointment of a receiver, trustee, custodian, conservator, liquidator, mortgagee in possession (or agent therefore), for itself or a substantial portion of its property or business, then the other party may, by giving written notice to such party, terminate this Agreement as of the date specified in such notice. A termination under this Section shall be deemed a termination for cause,

## ARTICLE X
## NOTICES

Until changed by appropriate notice in writing, all notices, reports, and other correspondence required by or made necessary by the terms of this Agreement shall be deemed to have been duly given or served on the date on which personally delivered, or sent by electronic transmission via email or facsimile transmission, with receipt acknowledged, or three (3) Business Days after the same shall have been sent via certified United States Mail. For purposes of this Agreement, the term "**Business Days**" means a day other than a Saturday, Sunday or legal holiday for commercial banks under the laws of the State of Texas or the laws of the United States of America.

## ARTICLE XI
## CONFIDENTIAL INFORMATION
## AND OWNERHIP OF DOCUMENTS

11.1     Any and all information, in whatever form or format, described or defined by each party as confidential and made available to the other party for the performance of the Agreement shall be and remain the exclusive property of the disclosing party and shall be treated as confidential.

11.2     With respect to such confidential information both parties agree not to disclose or divulge such information to any third party except as may be necessary for the performance of this Agreement. Both parties shall take reasonable measures to protect and preserve the confidential nature of such information and shall be responsible for any breach hereof committed by its employees, it being understood that the confidentiality obligations of both parties are of a continuing nature and shall continue for one (1) year after the termination date of this agreement

11.3     The foregoing restrictions shall not apply to any such confidential information that is:

(a)     Already known by the receiving party at the time of disclosure;

(b)     Publicly known or becomes publicly known through no fault of the receiving party;

(c)     Received from a third party that is free to disclose the information to the receiving party;

(d)     Communicated to a third party with the express prior written consent of the disclosing party; or

(e)     Lawfully required to be disclosed to a governmental agency or is otherwise required to be disclosed by law, provided that before making such disclosure the receiving Party shall give the disclosing Party reasonable opportunity to object or insure confidential treatment of the information.

11.4     Both parties acknowledge that the breach of this confidentiality obligation may cause the other party serious economic harm and that the remedies available to the injured party by law may be inadequate. Therefore, upon any breach hereof by either party, the non-breaching party shall be entitled to seek immediate injunctive relief and/or specific performance, in addition to any other appropriate forms of equitable or legal relief, including but not limited to, monetary damages and reasonable attorney's fees.

11.5     Both Owner and Contractor agree that all tracings, designs, drawings, field notes, requisitions, purchase orders, specifications, computer programs (data files and other software in whatever form), and other documents or records developed by such party in connection with this Agreement or otherwise shall be the sole property of such party.

7

8

## ARTICLE XII
## AMENDMENTS TO THE AGREEMENT
## AND GOVERNING LAWS

THIS AGREEMENT SHALL NOT BE VARIED EXCEPT WITH THE WRITTEN CONSENT OF THE PARTIES. IN THE EVENT ONE OR MORE OF THE PROVISIONS IS HELD INVALID BY ANY COURT OF COMPETENT JURISDICTION, THE SAME SHALL IN NO MANNER AFFECT THE VALIDITY OF ANY OF THE OTHER PROVISIONS. THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS.

## ARTICLE XIII
## INDEMNIFICATION

13.1    CONTRACTOR SHALL GENERALLY HAVE THE PROTECTIONS, BENEFITS, AND INDEMNIFICATIONS OF OWNER UNDER THE TERMS OF THE A.A.P.L. FORM 610 - 1989 MODEL FORM OPERATING AGREEMENT ("*JOA*") JUST AS IF CONTRACTOR WERE THE DESIGNATED OPERATOR UNDER THE JOA, AND TO THE FULLEST EXTENT POSSIBLE, OWNER HEREBY ASSIGNS AND TRANSFERS ALL OF SUCH PROTECTIONS, BENEFITS AND INDEMNIFICATIONS TO CONTRACTOR DURING THE TERM OF THIS AGREEMENT; PROVIDED, HOWEVER, THAT SUCH ASSIGNMENT SHALL NOT ENTITLE CONTRACTOR (A) TO CLAIM OR ASSERT ANY LIENS OR SECURITY INTERESTS THAT WOULD BE GRANTED TO THE OPERATOR UNDER THE JOA, OR (B) TO SETTLE ANY CLAIMS OR LAWSUITS PERTAINING TO THE CONTRACT AREA.

13.2    CONTRACTOR'S RELEASE OF OWNER:

CONTRACTOR RELEASES OWNER AND OWNER'S PARENT, SUBSIDIARIES, OFFICERS, DIRECTORS, AND EMPLOYEES ("OWNER PARTIES") OF AND FROM ANY LIABILITY AS TO ALL CLAIMS, PENALTIES, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE (EXCLUDING GROSS NEGLIGENCE AND WILLFUL MISCONDUCT) OF ANY OF THE OWNER PARTIES, ON ACCOUNT OF BODILY INJURY, DEATH AND/OR DAMAGE TO OR LOSS OF PROPERTY OF ANY KIND.   CONTRACTOR'S OBLIGATIONS UNDER THIS SECTION SHALL BE PRIMARY AND WITHOUT REGARD TO AND WITHOUT ANY RIGHT TO CONTRIBUTION FROM ANY INSURANCE MAINTAINED OR MADE AVAILABLE TO OWNER. CONTRACTOR AND OWNER HEREBY AGREE THAT CONTRACTOR WILL BE COVERED BY AVAILABLE LIABILITY INSURANCE, UNDER WHICH THE INSURER HAS NO RIGHT OF SUBROGATION AGAINST OWNER OR CONTRACTOR. IT IS AGREED THAT SAID INSURANCE REQUIREMENTS SHALL AUTOMATICALLY BE AMENDED TO CONFORM TO THE MAXIMUM MONETARY LIMITS PERMITTED UNDER APPLICABLE LAW.

13.3    OWNER'S RELEASE OF CONTRACTOR:

9

OWNER RELEASES CONTRACTOR AND CONTRACTOR'S PARENT, SUBSIDIARIES, OFFICERS, DIRECTORS, AND EMPLOYEES ("CONTRACTOR PARTIES") OF AND FROM ANY LIABILITY AS TO ALL CLAIMS, PENALTIES, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE (EXCLUDING GROSS NEGLIGENCE AND WILLFUL MISCONDUCT) OF ANY OF THE CONTRACTOR PARTIES, ON ACCOUNT OF BODILY INJURY, DEATH AND/OR DAMAGE TO OR LOSS OF PROPERTY OF ANY KIND. OWNER'S OBLIGATIONS UNDER THIS SECTION SHALL BE COVERED BY AVAILABLE LIABILITY INSURANCE, UNDER WHICH THE INSURER HAS NO RIGHT OF SUBROGATION AGAINST OWNER OR CONTRACTOR. IT IS AGREED THAT SAID INSURANCE REQUIREMENTS SHALL AUTOMATICALLY BE AMENDED TO CONFORM TO THE MAXIMUM MONETARY LIMITS PERMITTED UNDER APPLICABLE LAW.

13.4    THIRD PARTY CLAIMS:

For losses, claims, demands, liabilities, or causes of action brought by or on behalf of anyone other than those claimants listed in *Sections 13.2* and *13.3* above, the Parties' respective indemnity obligations shall be as set forth in this *Section 13.4*.

    (1)    Contractor's Negligence:  CONTRACTOR AGREES TO PROTECT, DEFEND (INCLUDING ALL COSTS, EXPENSES, AND REASONABLE ATTORNEYS' FEES), INDEMNIFY, RELEASE AND HOLD THE OWNER INDEMNIFIED PARTIES HARMLESS FROM AND AGAINST ANY AND ALL LOSSES, CLAIMS, DEMANDS, LIABILITIES, OR CAUSES OF ACTION OF EVERY KIND AND CHARACTER, IN FAVOR OF ANY PERSON OR PARTY, FOR INJURY TO OR ILLNESS OR DEATH OF ANY PERSON, OTHER THAN AS PROVIDED IN *SECTIONS 13.2* AND *13.3* ABOVE, OR DAMAGE TO OR LOSS OF PROPERTY OF ANY SUCH PERSON, AND WHICH SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE ARISES OUT OF OR IS INCIDENT TO ANY WORK OR SERVICE TO BE PERFORMED UNDER THIS AGREEMENT TO THE EXTENT, AND IN THE PROPORTION THAT, SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE IS CAUSED OTHER THAN BY THE NEGLIGENCE OF OWNER, ITS EMPLOYEES, AGENTS OR OTHER CONTRACTORS THAT ARE DIRECTLY RESPONSIBLE TO OWNER.

    (2)    Owner's Negligence:  OWNER AGREES TO PROTECT, DEFEND (INCLUDING ALL COSTS, EXPENSES, AND ATTORNEYS' FEES), INDEMNIFY, RELEASE AND HOLD THE CONTRACTOR INDEMNIFIED PARTIES HARMLESS FROM AND AGAINST ANY AND ALL LOSSES, CLAIMS, DEMANDS, LIABILITIES, OR CAUSES OF ACTION OF EVERY KIND AND CHARACTER, IN FAVOR OF ANY PERSON OR PARTY, FOR INJURY TO OR ILLNESS OR DEATH OF ANY PERSON, OTHER THAN AS PROVIDED IN *SECTIONS 13.2* AND *13.3* ABOVE, OR DAMAGE TO OR LOSS OF PROPERTY OF ANY SUCH PERSON, AND WHICH SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE ARISES OUT OF OR IS

10

INCIDENT TO ANY WORK OR SERVICE TO BE PERFORMED UNDER THIS AGREEMENT, TO THE EXTENT, AND ONLY TO THE EXTENT, AND ONLY IN THE PROPORTION THAT, SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE IS CAUSED BY THE NEGLIGENCE OF OWNER, ITS EMPLOYEES, AGENTS OR OTHER CONTRACTORS THAT ARE DIRECTLY RESPONSIBLE TO OWNER.

13.5  IT IS THE INTENT OF THE PARTIES HERETO THAT ALL OBLIGATIONS, LIABILITIES, AND RISKS ALLOCATED OR ASSUMED BY THE PARTIES UNDER TERMS OF THIS CONTRACT, INCLUDING, WITHOUT LIMITATION, *SECTIONS 13.2* THROUGH *13.4*, BE WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING PREEXISTING CONDITIONS, STRICT LIABILITY, VIOLATIONS OF ANY STATE, OR FEDERAL LAW, BREACH OF CONTRACT, BREACH OF WARRANTY, TRESPASS, CONVERSION, NUISANCE, TORT, OR THE NEGLIGENCE OF ANY PARTY OR PARTIES, WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE. THE RELEASES AND ASSUMPTIONS OF LIABILITY AND ALLOCATIONS OF RISKS EXTENDED BY THE PARTIES HERETO UNDER *SECTIONS 13.2* THROUGH *13.4* SHALL INURE TO THE BENEFIT OF THE PARTIES, THEIR PARENT, HOLDING AND SUBSIDIARIES, AFFILIATES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS AND SERVANTS. THE TERMS AND PROVISIONS OF SECTIONS 13.2 THROUGH 13.4 SHALL HAVE NO APPLICATION TO CLAIMS OR CAUSES OF ACTION ASSERTED AGAINST OWNER OR CONTRACTOR BY REASON OF ANY AGREEMENT OF INDEMNITY WITH A PERSON OR ENTITY NOT A PARTY HERETO.

13.6  IT IS EXPRESSLY AGREED THAT OWNER SHALL NOT BE LIABLE TO THE CONTRACTOR PARTIES FOR ANY SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING DIRECTLY OR INDIRECTLY, OUT OR OF IN CONNECTION WITH THE SERVICES OR OPERATIONS HEREUNDER RELATED TO RESERVOIR DAMAGE, LOSS OF RESERVES, OR CRATERING OR BLOWOUT OF THE BOREHOLE, INCLUDING, WITHOUT LIMITATION, LOSS OF USE, LOSS OF DATA, LOSS OF ASSETS, LOSS OF PROFIT, LOSS OF BUSINESS, OR BUSINESS INTERRUPTION UNLESS CAUSED BY THE SOLE NEGLIGENCE (ACTIVE OR PASSIVE) OF OWNER OR ANY OF THE OWNER PARTIES.

13.7  IT IS EXPRESSLY AGREED THAT CONTRACTOR SHALL NOT BE LIABLE TO THE OWNER PARTIES FOR ANY SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING DIRECTLY OR INDIRECTLY, OUT OR OF IN CONNECTION WITH THE SERVICES OR OPERATIONS HEREUNDER RELATED TO RESERVOIR DAMAGE, LOSS OF RESERVES, OR CRATERING OR BLOWOUT OF THE BOREHOLE, INCLUDING, WITHOUT LIMITATION, LOSS OF USE, LOSS OF DATA, LOSS OF ASSETS, LOSS OF PROFIT, LOSS OF BUSINESS, OR BUSINESS INTERRUPTION UNLESS CAUSED BY THE SOLE NEGLIGENCE (ACTIVE OR PASSIVE) OF CONTRACTOR OR ANY OF THE CONTRACTOR PARTIES.

11

13.8  As a part of the consideration for this Agreement, Contractor hereby agrees that the provisions of the foregoing *Sections 13.2* through *13.7* inclusive shall extend to and be enforceable by and for the benefit of any non-operating concurrent working interest Owner, joint ventures or partners for whom Owner may be performing operations or services.

MISCELLANEOUS

14.1  This Agreement, drawn in counterpart, shall be binding upon the Parties and their respective successors, and assigns. Notwithstanding the foregoing, this Agreement and the duties and obligations hereunder are not assignable by Contractor without the written consent of Owner.

14.2  In any dispute arising among the Parties to this Agreement, the prevailing party shall be entitled to collect all costs, including attorneys' fees.

14.3  The captions of any articles herein are intended for convenient references only and same shall not be, nor be deemed to be, interpretive of the contents of such sections.

14.4  Harris County, Texas shall be the exclusive venue and jurisdiction for any litigation between the Parties.

14.5  If any provision or part of any provision of this Agreement shall be held invalid, the remainder shall be deemed valid and effective, and the Parties shall endeavor to replace the invalid terms with terms which correspond best to the original economic and general intention of the Parties, it being the intention of the Parties hereto that each provision hereof is being stipulated separately.

14.6  EACH PARTY HERETO KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY (a) WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THIS AGREEMENT, OR DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED OR ASSOCIATED THEREWITH, BEFORE OR AFTER TERMINATION; (b) WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION ANY "SPECIAL DAMAGES," AS DEFINED BELOW; (c) CERTIFIES THAT NEITHER IT NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSELORS HAS REPRESENTED, EXPRESSLY OR OTHERWISE, OR IMPLIED THAT THE CERTIFYING PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS; AND (d) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED THEREBY, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION. AS USED IN THIS SECTION, "*SPECIAL DAMAGES*" INCLUDES ALL SPECIAL, CONSEQUENTIAL, INDIRECT, EXEMPLARY, OR PUNITIVE DAMAGES

12

(REGARDLESS OF HOW NAMED), BUT DOES NOT INCLUDE ANY PAYMENTS OR FUNDS WHICH ANY PARTY HAS EXPRESSLY PROMISED TO PAY OR DELIVER TO ANY OTHER PARTY.

14.7   This instrument embodies the whole agreement of the Parties.   There are no promises, terms, conditions, or obligations other than those contained herein.  Should Contractor provide or render any Service, then in the event of a conflict between the terms of performance for such Services or Service, whether made orally or in writing, and the terms of this Agreement, the terms of this Agreement shall prevail except for any activity-specific instructions or directions.  In the event of a conflict between the provisions hereof and the provisions of any printed or other pre-prepared form of work or service order, job, or delivery ticket, or other similar form, submitted to Contractor by Owner in connection with any Services performed hereunder, the provisions of this Agreement shall prevail and be controlling.

*[SIGNATURES APPEAR ON THE FOLLOWING PAGE]*

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the day and year first above written.

**TRATON OPERATING COMPANY**

By: _Patrick W. Merritt_

Printed Name: ___Patrick W. Merritt___

Title: ___President___

**PAYSON OPERATING, LLC,**

By: _____

Name: _____

Title: ___Trustee___

13

**Signature Page to**
**Contract Operator Services Agreement**

# EXHIBIT 6 TO SETTLEMENT AGREEMENT

# SETTLEMENT APPROVAL ORDER

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. ___]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ( the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC ("Debtors") in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.      Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and all parties in interest.

4.      Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment executed by 3 Well LP and the Subject Wells Assignment executed by 2014 LP, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.      The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      The 2014 LP Subject Claims Assignment and Participation Agreement attached as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

7.      This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

8.      A general unsecured claim of 3 Well LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 27.7891% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

9.      A general unsecured claim of 2014 LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 72.21084% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

10.     The releases provided for in the Settlement Agreement are hereby approved.  Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are

released.

11.    Upon consummation of the Settlement Agreement, Payson Petroleum shall own a

fifty percent (50%) participation interest in the following:  (i) the 3 Well LP Avoidance Action

Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery (as those terms

are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement), and (ii)

the 2014 LP Avoidance Action Claims Net Recovery and the 2014 LP Partnership Related Claims

Net Recovery (as those terms are defined in the 2014 LP Subject Claims Assignment and

Participation Agreement).

12.    Payson Petroleum is hereby granted standing and authority to enforce and prosecute

the (i) 3 Well LP Avoidance Action Claims, (ii) 3 Well LP Partnership Related Claims, (iii) 2014

LP Avoidance Action Claims, and (iv) 2014 LP Partnership Related Claims, without further order

of this Court.

13.    Payson Petroleum is hereby appointed (i) the representative of the 3 Well LP

bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the 3

Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and

Participation Agreement, and (ii) the representative of the 2014 LP bankruptcy estate for purposes

of prosecuting the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims

pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

14.    No preclusion doctrine, including the doctrines of res judicata, collateral estoppel,

issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action

Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims

as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation

Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and

Participation Agreement or this Order.

15.    Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum has the exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims or the Payson/3 Well LP Partnership Related Claims that in its judgment would not be cost justified.

16.    No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of either parties entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

17.    Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims or the Payson/2014 LP Partnership Related Claims that in its judgment would not be cost justified.

18.    The Debtors and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance

with the Motion and to implement the terms of the Settlement Agreement without further notice,

hearing or order of the Court.

19.     This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.


_____
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE


**SUBMITTED BY:**

*/s/*_____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


*/s/*_____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)


AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE**
**FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,**
**AND MARICOPA RESOURCES, LLC**


*/s/*_____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE**
**FOR PAYSON PETROLEUM 3 WELL, L.P.  AND**
**PAYSON PETROLEUM 3 WELL 2014, L.P.**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, LP, | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. ___]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. ("Debtor") in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.     The Motion is GRANTED as set forth herein.

2.     The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.     Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4.     Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.     The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

7.      A general unsecured claim of Payson Petroleum against 3 Well LP is hereby allowed in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50).

8.      The releases provided for in the Settlement Agreement are hereby approved. Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released. Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are released.

9.      Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement.

10.      Payson Petroleum is hereby granted standing and authority to enforce and prosecute the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims without further order of this Court. Payson Petroleum is hereby appointed the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the

3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims. Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 3 Well LP Partnership Related Claims or the 3 Well LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

_____
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**SUBMITTED BY:**

*/s/*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


*/s/*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

/s/ _____

Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | | |
|---|---|---|---|
| IN RE: | § | | |
| | § | | |
| PAYSON PETROLEUM 3 WELL 2014, LP, | § | **Case No. 17-40180** | |
| | § | **Chapter 7** | |
| DEBTOR. | § | | |

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. ("Debtor") in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.       The Motion is GRANTED as set forth herein.

2.       The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.       Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4.       Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.       The 2014 LP Subject Claims Assignment and Participation Agreement attached as

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests

of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the

Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      This Order is binding upon the Parties and all other parties in interest in accordance

with the terms of the Settlement Agreement.

7.      A general unsecured claim of Payson Petroleum against 2014 LP is hereby allowed

in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S.

Dollars ($2,671,900.50).

8.      The releases provided for in the Settlement Agreement are hereby approved.  Upon

consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum,

Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined

in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all

claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum,

Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are

released.

9.      Upon consummation of the Settlement Agreement, Payson Petroleum shall own a

fifty percent (50%) participation interest in the 2014 LP Avoidance Action Claims Net Recovery

and the 2014 LP Partnership Related Claims Net Recovery as those terms are defined in the 2014

LP Subject Claims Assignment and Participation Agreement.

10.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute

the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims without further

order of this Court.  Payson Petroleum is hereby appointed the representative of the 2014 LP

bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 2014 LP Partnership Related Claims or the 2014 LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

<div style="text-align:right">

_____
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

</div>

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

**SUBMITTED BY:**

*/s/*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

**AGREED TO IN FORM AND SUBSTANCE BY:**

*/s/*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

/s/ _____

Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

# EXHIBIT 7 TO SETTLEMENT AGREEMENT

# SETTLEMENT MOTIONS

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | **JOINTLY ADMINISTERED** |
| MARICOPA RESOURCES, LLC, | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | **Chapter 11** |

---

### JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT
### PURSUANT TO BANKRUPTCY RULE 9019

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION.   IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT.   IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING.   IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN.   THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to

Compromise"), and in support thereof, respectfully show unto the Court the following:

# I.
## PROCEDURAL STATUS

1.    <u>Payson Debtor Bankruptcy Filings</u>.    On June 10, 2016, Payson Petroleum, Inc.

("<u>Payson Petroleum</u>"), Payson Operating, LLC ("<u>Payson Operating</u>"), and Maricopa Resources,

LLC ("<u>Maricopa</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code

(the "<u>Bankruptcy Code</u>") in this Bankruptcy Court.[1]    *See* Docket No. 1 in Bankruptcy Case Nos.

16-41043, 16-40144, *and* 16-40145.    On July 12, 2016, the Bankruptcy Court entered orders

converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy

Code.  *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket

No. 41 in Case No. 16-40145.    On July 18, 2016, the Bankruptcy Court entered orders approving

the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee

in the Payson Debtors' bankruptcy cases.  *See* Docket No. 55 in Case No. 16-41043, Docket No.

50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045.    On August 11, 2016, the

Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under

Case No. 16-41044.  *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-

41044, *and* Docket No. 81 in Case No. 16-41045.

2.    <u>Adversary Proceeding</u>.    On November 1, 2016, the Payson Trustee filed his

*Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in

Adversary Proceeding No. 16-04106 (the "<u>Adversary Proceeding</u>") against Payson Petroleum 3

Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>").

3.    <u>LP Debtor Bankruptcy Filings</u>.    On January 31, 2017, 3 Well LP and 2014 LP

(collectively, the "<u>LP Debtors</u>") filed voluntary petitions under Chapter 7 of the Bankruptcy Code.

---

[1]    Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "<u>Payson Debtors</u>."

*See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180. LP Trustee was appointed as Chapter 7 Trustee for the LP Debtors.

4.     <u>Stay Issues</u>.   On February 21, 2017, LP Trustee filed his *Certificate of Notice of Bankruptcy Filing and Stay* in the Adversary Proceeding.   *See* Docket No. 24 in Adversary Proceeding.   On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion to Lift Stay* in LP Debtor's bankruptcy cases which, *inter alia*, provides that the parties are "granted relief from the automatic stay … to continue with and fully litigate claims that are or could be pled" in the Adversary Proceeding.   Docket No. 26 in Case No. 17-40180 *and* Docket No. 29 in Case No. 17-40179.

5.     <u>Amended Complaint</u>.   On July 13, 2017, Payson Trustee filed his *First Amended Complaint* in the Adversary Proceeding.   *See* Docket No. 25 in Adversary Proceeding.

6.     <u>Jurisdiction & Venue</u>.   This Court has jurisdiction over the subject matter of this Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## FACTUAL BACKGROUND

7.     <u>Nature of Payson Debtors' Businesses</u>.     Matthew C. Griffin ("<u>Griffin</u>") formed Payson Petroleum in 2008 to, *inter alia*, (i) promote the sale of interests in limited partnerships and (ii) operate oil and gas wells for such limited partnerships.   Griffin formed Payson Operating in 2010 to act as a contract operator for Payson Petroleum.   Griffin formed Maricopa in 2012 to, *inter alia*, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8.     <u>Nature of 3 Well LP's and 2014 LP's Businesses</u>.   Payson Petroleum Grayson, LLC formed 3 Well LP in 2013 and 2014 LP in 2014 to, *inter alia*, drill, complete, and own interests in the Subject Wells.

9.      Turnkey Agreements.  On or about October 13, 2013, Payson Petroleum and 3 Well
LP entered into a Subscription Turn Key Agreement under which 3 Well LP agreed to pay Payson
Petroleum certain amounts for the drilling and completion of the Subject Wells (the "3 Well LP
Turnkey Agreement").  On or about January 12, 2014, Payson Petroleum and 2014 LP entered into
a Subscription Turn Key Agreement under which 2014 LP agreed to pay Payson Petroleum certain
amounts for the drilling and completion of the Subject Wells (the "2014 LP Turnkey Agreement"
and collectively with the 3 Well LP Turnkey Agreement the "Turnkey Agreements").  In the
Adversary Proceeding, Payson Petroleum asserts claims for breach of the Turnkey Agreements
against 3 Well LP in the amount of $17,115,777 and 2014 LP in the amount of $5,343,803 (the
"Breach of Turnkey Agreement Claims").

10.      Working Interest Assignments.  On or about Marcy 28, 2016, Maricopa assigned
certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine
#1 (API #181-31547) (collectively the "Subject Wells") to 3 Well LP and 2014 LP via three (3)
certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in
the real property records of Grayson County, Texas at Instrument Numbers:  2016-00006064,
2016-00006065, and 2016-00006066.  The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "Working Interest Assignments").  In the Adversary Proceeding, Maricopa asserts
claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce

Code against 3 Well LP and 2014 LP for avoidance of the Working Interest Assignments and recovery of the interests transferred or their value. Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("Traton"), the Payson Trustee's approved contract operating company.

11.    Additional Avoidable Transfers.  In addition to the Working Interest Assignments, Payson Petroleum transferred $1,274,310 to 3 Well LP and $2,862,000 to 2014 LP between January and February 2014 in exchange for interests in those limited partnerships that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "Investment Transfers").  In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfers from 3 Well LP and 2014 LP (the "Investment Transfer Claims").

### III.
### PROPOSED SETTLEMENT

12.    The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties.  Attached hereto as **Exhibit A** is a copy of the Settlement Agreement.[2]

13.    Agreed Final Judgment.  As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, *inter alia*, provide that the Wellbore Interest Assignments are

---

[2]    To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control.  This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement.  Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson

Petroleum on its Breach of Turnkey Agreement Claims against 3 Well LP in the amount of

$8,557,888.50 and 2014 LP in the amount of $2,671,900.50.  *See* Exhibit 3 to Settlement

Agreement.

      14.   <u>Conveyance of Interests in Subject Wells</u>.  3 Well LP and 2014 LP will reassign

the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by

Traton until Maricopa sells those interests under 11 U.S.C. § 363.  As explained in further detail

in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject

Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed

as follows:  (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP.

Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the

Subject Wells.

      15.   <u>Allowed Claims</u>.  The Settlement Agreement also provides that the parties will

agree to the following allowed unsecured claims:

- Payson Petroleum shall hold (i) an allowed unsecured claim in the 3 Well LP bankruptcy case in the amount of $8,557,888.50 and (ii) an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50;

- 3 Well LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement; and

- 2014 LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

      16.   <u>Prosecution of and Participation in Avoidance Action Claims</u>.  The Settlement

Agreement further provides that the parties will enter into (i) the 3 Well LP Subject Claims

Assignment and Participation Agreement and (ii) the 2014 LP Subject Claims Assignment and

Participation Agreement (collectively the "Claims Assignment and Participation Agreements").

Pursuant to the Claims Assignment and Participation Agreements:

- 3 Well LP will assign a fifty percent (50%) interest in net recoveries from litigation of 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims, as defined in the 3 Well LP Subject Claims Assignment and Participation Agreement, with 3 Well LP retaining the remaining fifty percent (50%) interest; and

- 2014 LP will assign a fifty percent (50%) interest in net recoveries from litigation of 2014 LP Avoidance Action Claims and 2014 Partnership Related Claims, as defined in the 2014 LP Subject Claims Assignment and Participation Agreement, with 2014 LP retaining the remaining fifty percent (50%) interest.

Payson Petroleum shall be granted standing to prosecute 3 Well LP and 2014 LP Avoidance Action Claims and Partnership Related Claims in the 3 Well LP and 2014 LP bankruptcy cases, and 3 Well LP and 2014 LP shall enter into engagement agreements with special litigation counsel for the Payson Trustee to prosecute such claims for the benefit of the Payson Petroleum, 3 Well LP, and 2014 LP bankruptcy estates.

17.    Releases.  Except for claims expressly reserved in the Settlement Agreement, all claims or causes action between the parties will be released.

# IV.
# RATIONALE

18.    Benefit to Maricopa Estate.  The Maricopa bankruptcy estate receives the following benefits from the settlement:

- the interests assigned to 3 Well LP and 2014 LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 3 Well LP and/or 2014 LP.

19.  <u>Benefit to Payson Petroleum Estate</u>.  The Payson Petroleum bankruptcy estate receives the following benefits from the settlement:

- an allowed general unsecured claim in the 3 Well LP bankruptcy case in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 3 Well LP;

- an allowed general unsecured claim in the 2014 LP bankruptcy case in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 2014 LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 3 Well LP Avoidance Action Claims, 2014 LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, and 2014 LP Partnership Related Claims (the "<u>Subject Claims</u>") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement, 3 Well LP Subject Claims Assignment and Participation Agreement and 2014 LP Subject Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 3 Well LP and/or 2014 LP.

20.  <u>Benefit to Payson Operating Estate</u>.  Except for claims expressly preserved under the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which have been or could have been asserted against Payson Operating by 3 Well LP and/or 2014 LP.

21.  <u>Benefit to 3 Well LP Estate</u>.  The 3 Well LP bankruptcy estate receives the following benefits from the settlement:

- 3 Well LP will obtain 12.5055% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 3 Well LP will retain a fifty percent (50%) interest in all 3 Well LP Avoidance Action Claims Net Recovery and 3 Well LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and 3 Well LP Subject Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, 3 Well LP's bankruptcy estate is released from claims which have been or could have been asserted against 3 Well LP by Payson Petroleum, Payson Operating, and/or Maricopa.

22.    <u>Benefit to 2014 LP Estate</u>.  The 2014 LP bankruptcy estate receives the following benefits from the settlement:

- 2014 LP will obtain 32.4945% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 2014 LP will retain a fifty percent (50%) interest in all 2014 LP Avoidance Action Claims Net Recovery and 2014 LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and 3 Well LP Subject Claims Assignment and Participation Agreement; *and*

- except for claims expressly preserved under the Settlement Agreement, 2014 LP's bankruptcy estate is released from claims which have been or could have been asserted against 2014 LP by Payson Petroleum, Payson Operating, and/or Maricopa.

**V.**
**RELIEF REQUESTED**

23.    The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

# VI.
## BASIS FOR RELIEF

24.    Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id.* (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id.*

25.    The factors support granting the Joint Motion to Compromise. First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors. Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates. The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa, 3 Well LP, and 2014 LP. Additionally, the Settlement

Agreement (i) reduces 3 Well LP and 2014 LP's liability for failing to pay Payson Petroleum amounts owed under the Turnkey Agreements by fifty percent (50%), (ii) provides an arrangement for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii) eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar claims against partners of 3 Well LP and 2014 LP in different proceedings and forums. In sum, the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of their respective bankruptcy estates and should be approved. *See* Affidavit of Jason R. Searcy, attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

26. A proposed agreed order is attached hereto as **Exhibit D**.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estates of Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. respectfully request that the Court approve the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: ___, 2017                    Respectfully submitted,

By:    /s/
          Phil Snow
          State Bar No. 18812600
          Blake Hamm
          State Bar No. 24069869
          SNOW SPENCE GREEN LLP
          2929 Allen Parkway, Suite 2800
          Houston, Texas 77019
          (713) 335-4800
          (713) 335-4848 (Fax)

          **COUNSEL FOR JASON R. SEARCY,
          CHAPTER 11 TRUSTEE FOR PAYSON
          PETROLEUM, INC., PAYSON
          OPERATING, LLC, AND MARICOPA
          RESOURCES, LLC**

By:    /s/
          Keith W. Harvey
          State Bar No. 09180100
          THE HARVEY LAW FIRM, P.C.
          6510 Abrams Road
          Suite 280
          Dallas, Texas 75231
          (972) 243-3960 Phone
          (972)-241-3970 Facsimile

          **COUNSEL FOR CHRISTOPHER J.
          MOSER, CHAPTER 7 TRUSTEE FOR
          PAYSON PETROLEUM 3 WELL, L.P.
          AND PAYSON PETROLEUM 3 WELL
          2014, L.P.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on __, 2017, a true and correct copy of this document was served (i) via the Court's electronic case filing system upon the parties listed below or by email listed below, (ii) via the Court's electronic case filing system for Eastern District of Texas upon all parties requesting electronic notice of all filings and (iii) via regular First Class Mail, properly addressed and postage prepaid, upon all parties listed on the Master Service List attached hereto.

Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC
Mark A. Weisbart
12770 Coil Road, Suite 541
Dallas, TX 75251
weisbartm@earthlink.net,
TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;
tarah_simmons@earthlink.net

Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP
1757 Harpsichord Way
Henderson, NV 89012

Dan Chern
The Law Offices of Dan Chern
12801 N. Central Expressway, Suite 1558
Dallas, Texas 75243
dbc@dchern.com

Daniel P. Winikka
12377 Merit Drive, Ste. 900
Dallas, TX 75251
danw@LFDSlaw.com

US Trustee
Office of the US Trustee
110 N. College Ave, #300
Tyler, TX 75702
USTPRegion06.TY.ECF@USDOJ.GOV

/s/ _____
Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\16-41044\20170905 9019 Motion-Payson Petroleum 16-41044.docx

# EXHIBIT A TO SETTLEMENT MOTION

# SETTLEMENT AGREEMENT

# [INTENTIONALLY LEFT BLANK]



EXHIBIT

B

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| **DEBTOR.** | § | |

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| **DEBTOR.** | § | |

## AFFIDAVIT OF JASON R. SEARCY
### IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
### AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF GREGG** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

1

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

Further, Affiant sayeth not.

_____

Jason R. Searcy
Payson Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this ____ day of _____, 2017, to certify with witness my hand and official seal.

_____

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx

2


EXHIBIT
C

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | JOINTLY ADMINISTERED |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | Case No. 17-40179 |
| | § | Chapter 7 |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, | § | Case No. 17-40180 |
| L.P., | § | Chapter 7 |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT OF CHRISTOPHER J. MOSER
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement obtains for

1

the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. *Reh'g denied,* 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.),* 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

_____
Christopher J. Moser
LP Trustee


SWORN AND SUBSCRIBED TO BEFORE ME on this ____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx

**EXHIBIT**

**D**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | JOINTLY ADMINISTERED |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

### [Relates to Docket No. ___]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ( the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC ("Debtors") in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.     The Motion is GRANTED as set forth herein.

2.     The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.     Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and all parties in interest.

4.     Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment executed by 3 Well LP and the Subject Wells Assignment executed by 2014 LP, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.     The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.     The 2014 LP Subject Claims Assignment and Participation Agreement attached as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

7.     This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

8.     A general unsecured claim of 3 Well LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 27.7891% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

9.     A general unsecured claim of 2014 LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 72.21084% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

10.     The releases provided for in the Settlement Agreement are hereby approved. Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released. Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are

released.

11.      Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the following:  (i) the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery (as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement), and (ii) the 2014 LP Avoidance Action Claims Net Recovery and the 2014 LP Partnership Related Claims Net Recovery (as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement).

12.      Payson Petroleum is hereby granted standing and authority to enforce and prosecute the (i) 3 Well LP Avoidance Action Claims, (ii) 3 Well LP Partnership Related Claims, (iii) 2014 LP Avoidance Action Claims, and (iv) 2014 LP Partnership Related Claims, without further order of this Court.

13.      Payson Petroleum is hereby appointed (i) the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement, and (ii) the representative of the 2014 LP bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

14.      No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and

Participation Agreement or this Order.

15.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum has the exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims or the Payson/3 Well LP Partnership Related Claims that in its judgment would not be cost justified.

16.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of either parties entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

17.     Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims or the Payson/2014 LP Partnership Related Claims that in its judgment would not be cost justified.

18.     The Debtors and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance

with the Motion and to implement the terms of the Settlement Agreement without further notice,

hearing or order of the Court.

19.     This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

*/s/*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


*/s/*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


*/s/*
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**


AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | Case No. 17-40179 |
| | § | |
| DEBTOR. | § | Chapter 7 |

---

### JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 (the "LP Trustee") to file their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to Compromise"), and in support thereof, respectfully show unto the Court the following:

# I.
## PROCEDURAL STATUS

1.    <u>Payson Debtor Bankruptcy Filings</u>.    On June 10, 2016, Payson Petroleum, Inc. ("<u>Payson Petroleum</u>"), Payson Operating, LLC ("<u>Payson Operating</u>"), and Maricopa Resources, LLC ("<u>Maricopa</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in this Bankruptcy Court.[1]  *See* Docket No. 1 in Bankruptcy Case Nos. 16-41043, 16-40144, *and* 16-40145.    On July 12, 2016, the Bankruptcy Court entered orders converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy Code.  *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket No. 41 in Case No. 16-40145.    On July 18, 2016, the Bankruptcy Court entered orders approving the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee in the Payson Debtors' bankruptcy cases.  *See* Docket No. 55 in Case No. 16-41043, Docket No. 50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045.    On August 11, 2016, the Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under Case No. 16-41044.  *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-41044, *and* Docket No. 81 in Case No. 16-41045.

2.    <u>Adversary Proceeding</u>.    On November 1, 2016, the Payson Trustee filed his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in Adversary Proceeding No. 16-04106 (the "<u>Adversary Proceeding</u>") against Payson Petroleum 3 Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>").

3.    <u>LP Debtor Bankruptcy Filings</u>.    On January 31, 2017, 3 Well LP and 2014 LP (collectively, the "<u>LP Debtors</u>") filed voluntary petitions under Chapter 7 of the Bankruptcy Code. *See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180.  LP Trustee was

---

[1]    Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "<u>Payson Debtors</u>."

appointed as Chapter 7 Trustee for the LP Debtors.

4.    _Stay Issues_.  On February 21, 2017, LP Trustee filed his _Certificate of Notice of Bankruptcy Filing and Stay_ in the Adversary Proceeding.  _See_ Docket No. 24 in Adversary Proceeding.  On June 21, 2017, the Bankruptcy Court entered its _Agreed Order Granting Motion to Lift Stay_ in LP Debtor's bankruptcy cases which, _inter alia_, provides that the parties are "granted relief from the automatic stay … to continue with and fully litigate claims that are or could be pled" in the Adversary Proceeding.  Docket No. 26 in Case No. 17-40180 _and_ Docket No. 29 in Case No. 17-40179.

5.    _Amended Complaint_.  On July 13, 2017, Payson Trustee filed his _First Amended Complaint_ in the Adversary Proceeding.  _See_ Docket No. 25 in Adversary Proceeding.

6.    _Jurisdiction & Venue_.  This Court has jurisdiction over the subject matter of this Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## FACTUAL BACKGROUND

7.    _Nature of Payson Debtors' Businesses_.    Matthew C. Griffin ("Griffin") formed Payson Petroleum in 2008 to, _inter alia_, (i) promote the sale of interests in limited partnerships and (ii) operate oil and gas wells for such limited partnerships.  Griffin formed Payson Operating in 2010 to act as a contract operator for Payson Petroleum.  Griffin formed Maricopa in 2012 to, _inter alia_, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8.    _Nature of 3 Well LP's Business_.  Payson Petroleum Grayson, LLC formed 3 Well LP in 2013 to, _inter alia_, drill, complete, and own interests in the Subject Wells.

9.    _Turnkey Agreements_.  On or about October 13, 2013, Payson Petroleum and 3 Well LP entered into a Subscription Turn Key Agreement under which 3 Well LP agreed to pay Payson

Petroleum certain amounts for the drilling and completion of the Subject Wells (the "Turnkey Agreement"). In the Adversary Proceeding, Payson Petroleum asserts a claim for breach of the Turnkey Agreement against 3 Well LP in the amount of $17,115,777 (the "Breach of Turnkey Agreement Claim").

10.  Working Interest Assignments. On or about Marcy 28, 2016, Maricopa assigned certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine #1 (API #181-31547) (collectively the "Subject Wells") to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066. The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "Working Interest Assignments"). In the Adversary Proceeding, Maricopa asserts claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code against 3 Well LP for avoidance of the Working Interest Assignments and recovery of the interests transferred to 3 Well LP or their value. Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("Traton"), the Payson Trustee's approved contract operating company.

11.  Additional Avoidable Transfers. In addition to the Working Interest Assignments, Payson Petroleum transferred $1,274,310 to 3 Well LP in January 2014 in exchange for interests

in 3 Well LP that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "Investment Transfer"). In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfer from 3 Well LP (the "Investment Transfer Claim").

<div align="center">

**III.**
**PROPOSED SETTLEMENT**

</div>

12.     The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties. Attached hereto as **Exhibit A** is a copy of the Settlement Agreement.[2]

13.     Agreed Final Judgment. As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, *inter alia*, provide that the Wellbore Interest Assignments are avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson Petroleum on its Breach of Turnkey Agreement Claim against 3 Well LP in the amount of $8,557,888.50. *See* Exhibit 3 to Settlement Agreement.

14.     Conveyance of Interests in Subject Wells. 3 Well LP and 2014 LP will reassign the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by Traton until Maricopa sells those interests under 11 U.S.C. § 363. As explained in further detail

---

[2]     To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control. This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement. Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed as follows: (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP. Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the Subject Wells.

15.    <u>Allowed Claims</u>.  The Settlement Agreement also provides that the parties will agree to the following allowed unsecured claims:

- Payson Petroleum shall hold an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50; and

- 3 Well LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

16.    <u>Prosecution of and Participation in Avoidance Action Claims</u>.  The Settlement Agreement further provides that the parties will enter into the 3 Well LP Subject Claims Assignment and Participation Agreement (the "<u>Claims Assignment and Participation Agreement</u>").  Pursuant to the Claims Assignment and Participation Agreement 3 Well LP will assign a fifty percent (50%) interest in net recoveries from litigation of 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims, as defined in the Claims Assignment and Participation Agreement, with 3 Well LP retaining the remaining fifty percent (50%) interest. Payson Petroleum shall be granted standing to prosecute 3 Well LP Avoidance Action Claims and Partnership Related Claims in the 3 Well LP bankruptcy case, and 3 Well LP shall enter into an engagement agreement with special litigation counsel for the Payson Trustee to prosecute such claims for the benefit of the Payson Petroleum and 3 Well LP bankruptcy estates.

17.    <u>Releases</u>.  Except for claims expressly reserved in the Settlement Agreement, all claims or causes action between the parties will be released.

# IV.
# RATIONALE

18.     <u>Benefit to Maricopa Estate</u>.  The Maricopa bankruptcy estate receives the following benefits from the settlement:

- the interests assigned to 3 Well LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 3 Well LP.

19.     <u>Benefit to Payson Petroleum Estate</u>.  The Payson Petroleum bankruptcy estate receives the following benefits from the settlement:

- an allowed general unsecured claim in the 3 Well LP bankruptcy case in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 3 Well LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims (the "<u>Subject Claims</u>") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 3 Well LP.

20.     <u>Benefit to Payson Operating Estate</u>.  Except for claims expressly preserved under the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which have been or could have been asserted against Payson Operating by 3 Well LP.

21.     <u>Benefit to 3 Well LP Estate</u>.  The 3 Well LP bankruptcy estate receives the following benefits from the settlement:

- 3 Well LP will obtain 12.5055% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 3 Well LP will retain a fifty percent (50%) interest in all 3 Well LP Avoidance Action Claims Net Recovery and 3 Well LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, 3 Well LP's bankruptcy estate is released from claims which have been or could have been asserted against 3 Well LP by Payson Petroleum, Payson Operating, and/or Maricopa.

**V.**
**RELIEF REQUESTED**

22.    The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

**VI.**
**BASIS FOR RELIEF**

23.    Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id.* (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the

following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id*.

24.     The factors support granting the Joint Motion to Compromise.  First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors.  Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates.  The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa and 3 Well LP.  Additionally, the Settlement Agreement (i) reduces 3 Well LP's liability for failing to pay Payson Petroleum amounts owed under the Turnkey Agreement by fifty percent (50%), (ii) provides an arrangement for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii) eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar claims against partners of 3 Well LP in different proceedings and forums.  In sum, the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of their respective bankruptcy estates and should be approved.  *See* Affidavit of Jason R. Searcy, attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

25.     A proposed agreed order is attached hereto as **Exhibit D**.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estate of Payson Petroleum 3 Well, L.P. respectfully request that the Court approve the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: ___, 2017                    Respectfully submitted,

                                    By: ___/s/_____

                                    Phil Snow
                                    State Bar No. 18812600
                                    Blake Hamm
                                    State Bar No. 24069869
                                    SNOW SPENCE GREEN LLP
                                    2929 Allen Parkway, Suite 2800
                                    Houston, Texas 77019
                                    (713) 335-4800
                                    (713) 335-4848 (Fax)

                                    **COUNSEL FOR JASON R. SEARCY,
                                    CHAPTER 11 TRUSTEE FOR PAYSON
                                    PETROLEUM, INC., PAYSON
                                    OPERATING, LLC, AND MARICOPA
                                    RESOURCES, LLC**


                                    By: ___/s/_____

                                    Keith W. Harvey
                                    State Bar No. 09180100
                                    THE HARVEY LAW FIRM, P.C.
                                    6510 Abrams Road
                                    Suite 280
                                    Dallas, Texas 75231
                                    (972) 243-3960 Phone
                                    (972)-241-3970 Facsimile

                                    **COUNSEL FOR CHRISTOPHER J.
                                    MOSER, CHAPTER 7 TRUSTEE FOR
                                    PAYSON PETROLEUM 3 WELL, L.P.**

# CERTIFICATE OF SERVICE

The undersigned certifies that on __, 2017, a true and correct copy of this document was served (i) via the Court's electronic case filing system upon the parties listed below or by email listed below, (ii) via the Court's electronic case filing system for Eastern District of Texas upon all parties requesting electronic notice of all filings and (iii) via regular First Class Mail, properly addressed and postage prepaid, upon all parties listed on the Master Service List attached hereto.

Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC
Mark A. Weisbart
12770 Coil Road, Suite 541
Dallas, TX 75251
weisbartm@earthlink.net,
TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;
tarah_simmons@earthlink.net

Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP
1757 Harpsichord Way
Henderson, NV 89012

Dan Chern
The Law Offices of Dan Chern
12801 N. Central Expressway, Suite 1558
Dallas, Texas 75243
dbc@dchern.com

Daniel P. Winikka
12377 Merit Drive, Ste. 900
Dallas, TX 75251
danw@LFDSlaw.com

US Trustee
Office of the US Trustee
110 N. College Ave, #300
Tyler, TX 75702
USTPRegion06.TY.ECF@USDOJ.GOV

/s/ _____
Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\17-40179\20170905 9019 Motion-Payson Petroleum 17-40179.docx

# EXHIBIT A TO SETTLEMENT MOTION

# SETTLEMENT AGREEMENT

# [INTENTIONALLY LEFT BLANK]



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| **DEBTOR.** | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| **DEBTOR.** | § | |

## AFFIDAVIT OF JASON R. SEARCY
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF GREGG** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

1

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

     Further, Affiant sayeth not.

_____
Jason R. Searcy
Payson Trustee

     SWORN AND SUBSCRIBED TO BEFORE ME on this _____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx

2



## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| **DEBTOR.** | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| **DEBTOR.** | § | |

## AFFIDAVIT OF CHRISTOPHER J. MOSER
### IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
### AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement obtains for

1

Case 16-04106 Doc 3 Filed 09/21/17 Entered 09/21/17 05:18:37 Desc Exhibit Settlement Agreement Page 185 of 236

Case 18-04040 Doc 12-2 Filed 09/11/18 Entered 09/11/18 22:27:43 Desc Exhibit A Part Eleven Page 485 of 818 Page 185 of 236

the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. *Reh'g denied,* 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.),* 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

_____
Christopher J. Moser
LP Trustee


SWORN AND SUBSCRIBED TO BEFORE ME on this _____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx



EXHIBIT

D

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, LP, | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

### [Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. ("Debtor") in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.      Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4.      Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.      The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.     This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

7.     A general unsecured claim of Payson Petroleum against 3 Well LP is hereby allowed in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50).

8.     The releases provided for in the Settlement Agreement are hereby approved.  Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are released.

9.     Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement.

10.    Payson Petroleum is hereby granted standing and authority to enforce and prosecute the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims without further order of this Court.  Payson Petroleum is hereby appointed the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 3 Well LP Partnership Related Claims or the 3 Well LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


/s/ _____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P. AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**


I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\17-40179\20170905 Agreed Order Granting 9019 Motion 17-40179.docx

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019
Page 5

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | |
| | § | |
| **DEBTOR.** | § | **Chapter 7** |

---

### JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to Compromise"), and in support thereof, respectfully show unto the Court the following:

## I.

# PROCEDURAL STATUS

1.    <u>Payson Debtor Bankruptcy Filings</u>.    On June 10, 2016, Payson Petroleum, Inc.

("<u>Payson Petroleum</u>"), Payson Operating, LLC ("<u>Payson Operating</u>"), and Maricopa Resources,

LLC ("<u>Maricopa</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code

(the "<u>Bankruptcy Code</u>") in this Bankruptcy Court.[1]  *See* Docket No. 1 in Bankruptcy Case Nos.

16-41043, 16-40144, *and* 16-40145.    On July 12, 2016, the Bankruptcy Court entered orders

converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy

Code.  *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket

No. 41 in Case No. 16-40145.    On July 18, 2016, the Bankruptcy Court entered orders approving

the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee

in the Payson Debtors' bankruptcy cases.  *See* Docket No. 55 in Case No. 16-41043, Docket No.

50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045.    On August 11, 2016, the

Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under

Case No. 16-41044.    *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-

41044, *and* Docket No. 81 in Case No. 16-41045.

2.    <u>Adversary Proceeding</u>.    On November 1, 2016, the Payson Trustee filed his

*Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in

Adversary Proceeding No. 16-04106 (the "<u>Adversary Proceeding</u>") against Payson Petroleum 3

Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>").

3.    <u>LP Debtor Bankruptcy Filings</u>.    On January 31, 2017, 3 Well LP and 2014 LP

(collectively, the "<u>LP Debtors</u>") filed voluntary petitions under Chapter 7 of the Bankruptcy Code.

*See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180.  LP Trustee was

---

[1]    Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "<u>Payson Debtors</u>."

appointed as Chapter 7 Trustee for the LP Debtors.

4. <u>Stay Issues</u>. On February 21, 2017, LP Trustee filed his *Certificate of Notice of Bankruptcy Filing and Stay* in the Adversary Proceeding. *See* Docket No. 24 in Adversary Proceeding. On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion to Lift Stay* in LP Debtor's bankruptcy cases which, *inter alia*, provides that the parties are "granted relief from the automatic stay … to continue with and fully litigate claims that are or could be pled" in the Adversary Proceeding. Docket No. 26 in Case No. 17-40180 *and* Docket No. 29 in Case No. 17-40179.

5. <u>Amended Complaint</u>. On July 13, 2017, Payson Trustee filed his *First Amended Complaint* in the Adversary Proceeding. *See* Docket No. 25 in Adversary Proceeding.

6. <u>Jurisdiction & Venue</u>. This Court has jurisdiction over the subject matter of this Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## FACTUAL BACKGROUND

7. <u>Nature of Payson Debtors' Businesses</u>. Matthew C. Griffin ("<u>Griffin</u>") formed Payson Petroleum in 2008 to, *inter alia*, (i) promote the sale of interests in limited partnerships and (ii) operate oil and gas wells for such limited partnerships. Griffin formed Payson Operating in 2010 to act as a contract operator for Payson Petroleum. Griffin formed Maricopa in 2012 to, *inter alia*, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8. <u>Nature of 2014 LP's Businese</u>. Payson Petroleum Grayson, LLC formed 2014 LP in 2014 to, *inter alia*, drill, complete, and own interests in the Subject Wells.

9. <u>Turnkey Agreements</u>. On or about January 12, 2014, Payson Petroleum and 2014 LP entered into a Subscription Turn Key Agreement under which 2014 LP agreed to pay Payson

Petroleum certain amounts for the drilling and completion of the Subject Wells (the "Turnkey Agreement"). In the Adversary Proceeding, Payson Petroleum asserts a claim for breach of the Turnkey Agreement against 2014 LP in the amount of $5,343,803 (the "Breach of Turnkey Agreement Claim").

10. **Working Interest Assignments**. On or about Marcy 28, 2016, Maricopa assigned certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine #1 (API #181-31547) (collectively the "Subject Wells") to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066. The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "Working Interest Assignments"). In the Adversary Proceeding, Maricopa asserts claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code against 2014 LP for avoidance of the Working Interest Assignments and recovery of the interests transferred to 2014 LP or their value. Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("Traton"), the Payson Trustee's approved contract operating company.

11. **Additional Avoidable Transfers**. In addition to the Working Interest Assignments, Payson Petroleum transferred $2,862,000 to 2014 LP between January and February 2014 in

Case 18-04040-dml3c Doc 12-2 Filed 09/21/17 Entered 09/21/17 16:32:27 Desc Exhibit A - Settlement Agreement Page 85 of 918 Page
Case 401890407-dml3c Doc 12-2 Filed 05/11/15 Entered 09/21/17 16:32:27 Desc Exhibit A Settlement Page 85 of 918
195 of 236

exchange for interest in that limited partnership that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "<u>Investment Transfers</u>"). In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfers from 2014 LP (the "<u>Investment Transfer Claim</u>").

## III.
## PROPOSED SETTLEMENT

12.     The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties. Attached hereto as **<u>Exhibit A</u>** is a copy of the Settlement Agreement.[2]

13.     <u>Agreed Final Judgment</u>. As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, *inter alia*, provide that the Wellbore Interest Assignments are avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson Petroleum on its Breach of Turnkey Agreement Claim against 2014 LP in the amount of $2,671,900.50. *See* Exhibit 3 to Settlement Agreement.

14.     <u>Conveyance of Interests in Subject Wells</u>. 3 Well LP and 2014 LP will reassign the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by Traton until Maricopa sells those interests under 11 U.S.C. § 363. As explained in further detail

---

[2]     To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control. This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement. Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed as follows: (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP. Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the Subject Wells.

15.     <u>Allowed Claims</u>.  The Settlement Agreement also provides that the parties will agree to the following allowed unsecured claims:

- Payson Petroleum shall hold an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50; and

- 2014 LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

16.     <u>Prosecution of and Participation in Avoidance Action Claims</u>.  The Settlement Agreement further provides that the parties will enter into the 2014 LP Subject Claims Assignment and Participation Agreement (collectively the "<u>Claims Assignment and Participation Agreement</u>"). Pursuant to the Claims Assignment and Participation Agreements 2014 LP will assign a fifty percent (50%) interest in net recoveries from litigation of 2014 LP Avoidance Action Claims and 2014 Partnership Related Claims, as defined in the Claims Assignment and Participation Agreement, with 2014 LP retaining the remaining fifty percent (50%) interest.  Payson Petroleum shall be granted standing to prosecute 2014 LP Avoidance Action Claims and Partnership Related Claims in the 2014 LP bankruptcy case, and 2014 LP shall enter into an engagement agreement with special litigation counsel for the Payson Trustee to prosecute such claims for the benefit of the Payson Petroleum and 2014 LP bankruptcy estates.

17.     <u>Releases</u>.  Except for claims expressly reserved in the Settlement Agreement, all claims or causes action between the parties will be released.

# IV.
## RATIONALE

18.  **Benefit to Maricopa Estate.**  The Maricopa bankruptcy estate receives the following benefits from the settlement:

- the interests assigned to 2014 LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 2014 LP.

19.  **Benefit to Payson Petroleum Estate.**  The Payson Petroleum bankruptcy estate receives the following benefits from the settlement:

- an allowed general unsecured claim in the 2014 LP bankruptcy case in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 2014 LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 2014 LP Avoidance Action Claims and 2014 LP Partnership Related Claims (the "Subject Claims") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 2014 LP.

20.  **Benefit to Payson Operating Estate.**  Except for claims expressly preserved under the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which have been or could have been asserted against Payson Operating by 2014 LP.

21.  **Benefit to 2014 LP Estate.**  The 2014 LP bankruptcy estate receives the following benefits from the settlement:

- 2014 LP will obtain 32.4945% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 2014 LP will retain a fifty percent (50%) interest in all 2014 LP Avoidance Action Claims Net Recovery and 2014 LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; *and*

- except for claims expressly preserved under the Settlement Agreement, 2014 LP's bankruptcy estate is released from claims which have been or could have been asserted against 2014 LP by Payson Petroleum, Payson Operating, and/or Maricopa.

## V.
## RELIEF REQUESTED

22.     The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

## VI.
## BASIS FOR RELIEF

23.     Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id.* (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the

following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id.*

24.     The factors support granting the Joint Motion to Compromise. First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors. Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates. The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa and 2014 LP. Additionally, the Settlement Agreement (i) reduces 2014 LP's liability for failing to pay Payson Petroleum amounts owed under the Turnkey Agreement by fifty percent (50%), (ii) provides an arrangement for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii) eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar claims against partners of 2014 LP in different proceedings and forums. In sum, the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of their respective bankruptcy estates and should be approved. *See* Affidavit of Jason R. Searcy, attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

25.     A proposed agreed order is attached hereto as **Exhibit D**.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estate of Payson Petroleum 3 Well 2014, L.P. respectfully request that the Court approve the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: ___, 2017                     Respectfully submitted,

                                           By:   */s/*          

                                                   Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY,
CHAPTER 11 TRUSTEE FOR PAYSON
PETROLEUM, INC., PAYSON
OPERATING, LLC, AND MARICOPA
RESOURCES, LLC**


By:   */s/*          
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J.
MOSER, CHAPTER 7 TRUSTEE FOR
PAYSON PETROLEUM 3 WELL, L.P.
AND PAYSON PETROLEUM 3 WELL
2014, L.P.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on __, 2017, a true and correct copy of this document was served (i) via the Court's electronic case filing system upon the parties listed below or by email listed below, (ii) via the Court's electronic case filing system for Eastern District of Texas upon all parties requesting electronic notice of all filings and (iii) via regular First Class Mail, properly addressed and postage prepaid, upon all parties listed on the Master Service List attached hereto.

Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC
Mark A. Weisbart
12770 Coil Road, Suite 541
Dallas, TX 75251
weisbartm@earthlink.net,
TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;
tarah_simmons@earthlink.net

Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP
1757 Harpsichord Way
Henderson, NV 89012

Dan Chern
The Law Offices of Dan Chern
12801 N. Central Expressway, Suite 1558
Dallas, Texas 75243
dbc@dchern.com

Daniel P. Winikka
12377 Merit Drive, Ste. 900
Dallas, TX 75251
danw@LFDSlaw.com

US Trustee
Office of the US Trustee
110 N. College Ave, #300
Tyler, TX 75702
USTPRegion06.TY.ECF@USDOJ.GOV

/s/_____
Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\17-40180\20170905 9019 Motion-Payson Petroleum 17-40180.docx

# EXHIBIT A TO SETTLEMENT MOTION

# SETTLEMENT AGREEMENT

# [INTENTIONALLY LEFT BLANK]



EXHIBIT

B

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| DEBTORS. | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT OF JASON R. SEARCY
### IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
### AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF GREGG** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

1

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

        Further, Affiant sayeth not.

_____

Jason R. Searcy
Payson Trustee

        SWORN AND SUBSCRIBED TO BEFORE ME on this _____ day of _____, 2017, to certify with witness my hand and official seal.

_____

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx



EXHIBIT

C

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | JOINTLY ADMINISTERED |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | Case No. 17-40179 |
| | § | Chapter 7 |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, | § | Case No. 17-40180 |
| L.P., | § | Chapter 7 |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT OF CHRISTOPHER J. MOSER
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement obtains for

1

the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. *Reh'g denied,* 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.),* 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

_____
Christopher J. Moser
LP Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this ____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx

EXHIBIT

**D**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

IN RE: §
 §
PAYSON PETROLEUM 3 WELL 2014, LP, §  **Case No. 17-40180**
 §  **Chapter 7**
 DEBTOR. §

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. ("Debtor") in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.      Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4.      Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.      The 2014 LP Subject Claims Assignment and Participation Agreement attached as

an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests

of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the

Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.　　　This Order is binding upon the Parties and all other parties in interest in accordance

with the terms of the Settlement Agreement.

7.　　　A general unsecured claim of Payson Petroleum against 2014 LP is hereby allowed

in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S.

Dollars ($2,671,900.50).

8.　　　The releases provided for in the Settlement Agreement are hereby approved.  Upon

consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum,

Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined

in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all

claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum,

Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are

released.

9.　　　Upon consummation of the Settlement Agreement, Payson Petroleum shall own a

fifty percent (50%) participation interest in the 2014 LP Avoidance Action Claims Net Recovery

and the 2014 LP Partnership Related Claims Net Recovery as those terms are defined in the 2014

LP Subject Claims Assignment and Participation Agreement.

10.　　　Payson Petroleum is hereby granted standing and authority to enforce and prosecute

the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims without further

order of this Court.  Payson Petroleum is hereby appointed the representative of the 2014 LP

bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014

LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

11.    No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

12.    Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 2014 LP Partnership Related Claims or the 2014 LP Avoidance Action Claims that in its judgment would not be cost justified.

13.    The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

/s/_____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


/s/_____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


/s/_____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**


I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution
Copy\Ex 7 Settlement Motions\17-40180\20170905 Agreed Order Granting 9019 Motion 17-40180.docx


AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

# EXHIBIT 8 TO SETTLEMENT AGREEMENT

# SUBJECT WELLS ASSIGNMENTS

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

<div align="center">

**ASSIGNMENT, CONVEYANCE AND BILL OF SALE**

</div>

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF GRAYSON** | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Payson Petroleum 3 Well 2014, L.P., whose address is c/o Christopher J. Moser, Chapter 7 Trustee, Quilling, Selander, Lownds, Winslett & Moser, P.C., 2001 Bryan Street, Ste. 1800, Dallas, TX 75201 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto Maricopa Resources, LLC, whose address is c/o Jason R. Searcy, Chapter 11 Trustee, Searcy & Searcy, P.C., 446 Forest Square, Longview, Texas 75605 (the "Assignee"), all of Assignor's right, title and interest in and to the wells and wellbores described herein.

<div align="center">

**DEFINITIONS**

</div>

1.01    Defined Terms. The following terms, as used in this Assignment, shall have the meanings indicated below, unless the context otherwise requires:

"Crowe #2 Well" means the Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas.

"Elaine #1 Well" means the Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

"Effective Date" means September ___, 2017.

"Wells" means, collectively, the Crow #2 Well, the Elaine #1 Well and the Williams #1H Well.

"Williams #1H Well" means the Williams #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of Section 26, Block 1, 11, 15, 16, the JM Dodgin Survey, Abstract 378, Grayson County, Texas.

<div align="center">

**ASSIGNMENT AND AGREEMENT**

</div>

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignee the following, all of which are collectively called the "Assets".

a.    All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006066, Book OR, Vol. 5779, Pg. 404, in the Crowe #2 Well.

b.      All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006065, Book OR, Vol. 5779, Pg. 397, in the Elaine #1 Well.

c.      All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006064, Book OR, Vol. 5779, Pg. 389, in the William #1H Well.

d.      All right, title and interest in and to the oil and gas leases described in Exhibits A-1, A-2 and A-3 to this Assignment, insofar and only insofar as the leases cover the Wells, (collectively, the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Wells.

e.      All right, title and interest in all personal property and fixtures associated with the Wells, including without limitation the following:  all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

f.      All files and records relating to the items described in Paragraphs (a) through (f) maintained by Assignor and relating to the interests described in Paragraphs (a) through (f), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignee, and Assignee's heirs, successors and assigns, forever.

Assignee and Assignor further agree as follows:

1.      Title.  Assignor warrants title to the Assets from and against all persons claiming by, through and under Assignor, but not otherwise.

2.      Royalty Payments.  Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Wells to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify and hold Assignee harmless from and against all claims.  Assignee shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

3.      Indemnification Claims.  With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.  Reasonable attorneys' fees, court costs, interest, penalties and other expenses incurred in connection with the defense of claims shall be included in Assignee's and Assignor's indemnities.  All indemnities of Assignee shall extend to and cover the parent, subsidiary and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

4.     <u>No Third-Party Beneficiaries</u>.  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify or limit the rights of Assignor or Assignee, as between themselves.

5.     <u>Successors and Assigns</u>.  This Assignment and all of the terms, provisions, covenants, obligations and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignee, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignee as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

*[Signature Page Follows]*

EXECUTED on this _____ day of _____ 2017.

ASSIGNOR:

PAYSON PETROLEUM 3 WELL 2014, L.P.

By:_____
          Christopher J. Moser, Chapter 7 Trustee

ASSIGNEE:

MARICOPA RESOURCES, LLC

By:_____
          Jason R. Searcy, Chapter 11 Trustee

STATE OF TEXAS          §
                        §
COUNTY OF _____   §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires:  _____

STATE OF TEXAS          §
                        §
COUNTY OF GREGG         §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **MARICOPA RESOURCES, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires:  _____

4

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\Assignment 1_WIs_3Well.docx

## EXHIBIT A-1

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Crowe #2 Well (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas (from the surface of the earth down to the measured depth of 11,164').

2. All personal property and fixtures associated with the Crowe #2 Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|---|---|---|---|---|---|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr. | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of the Estate of Dorothy L. Darnell | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr., Revocable Trust | Texas Land & Petroleum Company, LLC | Oil, Gas and Mineral Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|--------|--------|--------|------------------|--------------|----------------|
| Grayson | Nancy T. Cutter Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-1.docx

## EXHIBIT A-2

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Elaine #1 Well (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

2. All personal property and fixtures associated with the Elaine #1Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume /Page | Effective Date |
|--------|--------|--------|--------------|----------------|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464/910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521/166 | 3/24/2014 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-2.docx

**EXHIBIT A-3**

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The William #1H Well (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, Block 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, Texas.

2. All personal property and fixtures associated with the William #1H Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981/402 | 2/1/2011 |
| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418/520 | 2/1/2008 |
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980/156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296/513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296/506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980/140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760/92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760/88 | 3/6/2007 |
| Grayson | Gary Wayne Odle | Matthew Avery | 4296/493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760/92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983/321 | 4/10/2011 |
| Grayson | Vurlas Land Wilson, a/ka Verlas Lane Wilson and Margorie Marie Wilson | Matthew Avery | 4296/469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993/305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4980/144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296/457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the JamesM. Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297/46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296/461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296/449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296/466 | 6/27/2007 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|--------|--------|--------|--------------|----------------|
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296/454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4296/445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355/704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274/698 | 3/15/2013 |
| Grayson | PCP Trust, Phillip C. Brown, Trustee and Philip Charles Brown | Paradise Springs, LLC | 5274/701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367/400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002/826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002/830 | 8/21/2011 |
| Grayson | Philip C. Brown, aka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002/834;838 | 8/21/2011 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-3.docx

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

<div align="center">

**ASSIGNMENT, CONVEYANCE AND BILL OF SALE**
</div>

STATE OF TEXAS §
§
COUNTY OF GRAYSON §

KNOW ALL MEN BY THESE PRESENTS that the undersigned Payson Petroleum 3 Well, L.P., whose address is c/o Christopher J. Moser, Chapter 7 Trustee, Quilling, Selander, Lownds, Winslett & Moser, P.C., 2001 Bryan Street, Ste. 1800, Dallas, TX 75201 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto Maricopa Resources, LLC, whose address is c/o Jason R. Searcy, Chapter 11 Trustee, Searcy & Searcy, P.C., 446 Forest Square, Longview, Texas 75605 (the "Assignee"), all of Assignor's right, title and interest in and to the wells and wellbores described herein.

<div align="center">

**DEFINITIONS**
</div>

1.01    Defined Terms. The following terms, as used in this Assignment, shall have the meanings indicated below, unless the context otherwise requires:

"Crowe #2 Well" means the Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas.

"Elaine #1 Well" means the Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

"Effective Date" means September ___, 2017.

"Wells" means, collectively, the Crow #2 Well, the Elaine #1 Well and the Williams #1H Well.

"Williams #1H Well" means the Williams #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of Section 26, Block 1, 11, 15, 16, the JM Dodgin Survey, Abstract 378, Grayson County, Texas.

<div align="center">

**ASSIGNMENT AND AGREEMENT**
</div>

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignee the following, all of which are collectively called the "Assets".

a.    All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006066, Book OR, Vol. 5779, Pg. 404, in the Crowe #2 Well.

b.      All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006065, Book OR, Vol. 5779, Pg. 397, in the Elaine #1 Well.

c.      All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006064, Book OR, Vol. 5779, Pg. 389, in the William #1H Well.

d.      All right, title and interest in and to the oil and gas leases described in <u>Exhibits A-1</u>, <u>A-2</u> and <u>A-3</u> to this Assignment, insofar and only insofar as the leases cover the Wells, (collectively, the "<u>Leases</u>"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Wells.

e.      All right, title and interest in all personal property and fixtures associated with the Wells, including without limitation the following:  all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

f.      All files and records relating to the items described in Paragraphs (a) through (f) maintained by Assignor and relating to the interests described in Paragraphs (a) through (f), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignee, and Assignee's heirs, successors and assigns, forever.

Assignee and Assignor further agree as follows:

1.      <u>Title</u>.  Assignor warrants title to the Assets from and against all persons claiming by, through and under Assignor, but not otherwise.

2.      <u>Royalty Payments</u>.  Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Wells to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify and hold Assignee harmless from and against all claims.  Assignee shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

3.      <u>Indemnification Claims</u>.  With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.  Reasonable attorneys' fees, court costs, interest, penalties and other expenses incurred in connection with the defense of claims shall be included in Assignee's and Assignor's indemnities.  All indemnities of Assignee shall extend to and cover the parent, subsidiary and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

4.      <u>No Third-Party Beneficiaries</u>.  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify or limit the rights of Assignor or Assignee, as between themselves.

5.      <u>Successors and Assigns</u>.  This Assignment and all of the terms, provisions, covenants, obligations and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignee, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignee as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

*[Signature Page Follows]*

EXECUTED on this _____ day of _____ 2017.

ASSIGNOR:

PAYSON PETROLEUM 3 WELL, L.P.

By:_____
          Christopher J. Moser, Chapter 7 Trustee

ASSIGNEE:

MARICOPA RESOURCES, LLC

By:_____
          Jason R. Searcy, Chapter 11 Trustee

STATE OF TEXAS        §
                        §
COUNTY OF _____ §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

STATE OF TEXAS        §
                        §
COUNTY OF GREGG    §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **MARICOPA RESOURCES, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\Assignment 2_WIs_3Well.docx

## EXHIBIT A-1

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Crowe #2 Well (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas (from the surface of the earth down to the measured depth of 11,164').

2. All personal property and fixtures associated with the Crowe #2 Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|--------|--------|--------|------------------|--------------|----------------|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr. | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of the Estate of Dorothy L. Darnell | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr., Revocable Trust | Texas Land & Petroleum Company, LLC | Oil, Gas and Mineral Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|---|---|---|---|---|---|
| Grayson | Nancy T. Cutter Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-1.docx

## EXHIBIT A-2

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Elaine #1 Well (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

2. All personal property and fixtures associated with the Elaine #1 Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|--------|--------|--------|--------------|----------------|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464/910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521/166 | 3/24/2014 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-2.docx

# EXHIBIT A-3

to

## WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The William #1H Well (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, Block 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, Texas.

2. All personal property and fixtures associated with the William #1H Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981/402 | 2/1/2011 |
| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418/520 | 2/1/2008 |
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980/156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296/513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296/506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980/140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760/92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760/88 | 3/6/2007 |
| Grayson | Gary Wayne Odle | Matthew Avery | 4296/493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760/92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983/321 | 4/10/2011 |
| Grayson | Vurlas Land Wilson, a/ka Verlas Lane Wilson and Margorie Marie Wilson | Matthew Avery | 4296/469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993/305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4980/144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296/457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the JamesM. Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297/46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296/461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296/449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296/466 | 6/27/2007 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296/454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4296/445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355/704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274/698 | 3/15/2013 |
| Grayson | PCP Trust, Phillip C. Brown, Trustee and Philip Charles Brown | Paradise Springs, LLC | 5274/701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367/400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002/826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002/830 | 8/21/2011 |
| Grayson | Philip C. Brown, aka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002/834;838 | 8/21/2011 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-3.docx



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | JOINTLY ADMINISTERED |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | Case No. 17-40179 |
| | § | Chapter 7 |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, | § | Case No. 17-40180 |
| L.P., | § | Chapter 7 |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT OF JASON R. SEARCY
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GREGG | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

1

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

Further, Affiant sayeth not.

_____

Jason R. Searcy
Payson Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this 20th day of Sept. , 2017, to certify with witness my hand and official seal.

_____

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

BETTY M. ALLEN
Notary Public, State of Texas
Comm. Expires 04-14-2021
Notary ID 7713174

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx

2



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | **JOINTLY ADMINISTERED** |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | **Case No. 16-41044** |
| | § | |
| DEBTORS. | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, | § | **Case No. 17-40180** |
| L.P., | § | **Chapter 7** |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT OF CHRISTOPHER J. MOSER
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement

1

obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. *Reh'g denied,* 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.),* 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

Christopher J. Moser
LP Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this 18ᵗʰ day of September, 2017, to certify with witness my hand and official seal.

NITA CHANCELLOR
Notary Public, State of Texas
Comm. Expires 01-09-2019
Notary ID 5162487

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx

# EXHIBIT D

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

IN RE:                                    §
                                          §
PAYSON PETROLEUM 3 WELL, LP,              §          **Case No. 17-40179**
                                          §          **Chapter 7**
    DEBTOR.                               §

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. ("Debtor") in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1. The Motion is GRANTED as set forth herein.

2. The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3. Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4. Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5. The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

7.      A general unsecured claim of Payson Petroleum against 3 Well LP is hereby allowed in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50).

8.      The releases provided for in the Settlement Agreement are hereby approved. Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released. Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are released.

9.      Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement.

10.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims without further order of this Court. Payson Petroleum is hereby appointed the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 3 Well LP Partnership Related Claims or the 3 Well LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

*/s/ Blake Hamm*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

**AGREED TO IN FORM AND SUBSTANCE BY:**

*/s/ Blake Hamm*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

*/s/ Keith W. Harvey*
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P. AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

EXHIBIT

3

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, | § | Case No. 17-40180 |
| L.P., | § | |
| | § | |
| DEBTOR. | § | Chapter 7 |

---

**JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT
TO BANKRUPTCY RULE 9019**

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A
WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED
STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY
FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM
THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR
EXTENDS THE TIME FOR FILING SUCH OBJECTION.   IF NO
OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL
BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN
ORDER GRANTING THE RELIEF SOUGHT.   IF AN OBJECTION IS
FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL
THEREAFTER SET A HEARING.   IF YOU FAIL TO APPEAR AT THE
HEARING, YOUR OBJECTION MAY BE STRICKEN.   THE COURT
RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa

Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-

41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum

3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Motion*

*to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to

Compromise"), and in support thereof, respectfully show unto the Court the following:

**I.**

# PROCEDURAL STATUS

1.     <u>Payson Debtor Bankruptcy Filings</u>.  On June 10, 2016, Payson Petroleum, Inc. ("<u>Payson Petroleum</u>"), Payson Operating, LLC ("<u>Payson Operating</u>"), and Maricopa Resources, LLC ("<u>Maricopa</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in this Bankruptcy Court.[1]  *See* Docket No. 1 in Bankruptcy Case Nos. 16-41043, 16-40144, *and* 16-40145.  On July 12, 2016, the Bankruptcy Court entered orders converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy Code.  *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket No. 41 in Case No. 16-40145.  On July 18, 2016, the Bankruptcy Court entered orders approving the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee in the Payson Debtors' bankruptcy cases.  *See* Docket No. 55 in Case No. 16-41043, Docket No. 50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045.  On August 11, 2016, the Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under Case No. 16-41044.  *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-41044, *and* Docket No. 81 in Case No. 16-41045.

2.     <u>Adversary Proceeding</u>.  On November 1, 2016, the Payson Trustee filed his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in Adversary Proceeding No. 16-04106 (the "<u>Adversary Proceeding</u>") against Payson Petroleum 3 Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>").

3.     <u>LP Debtor Bankruptcy Filings</u>.  On January 31, 2017, 3 Well LP and 2014 LP (collectively, the "<u>LP Debtors</u>") filed voluntary petitions under Chapter 7 of the Bankruptcy Code. *See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180.  LP Trustee was

---

[1]    Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "<u>Payson Debtors</u>."

appointed as Chapter 7 Trustee for the LP Debtors.

4.  <u>Stay Issues</u>.  On February 21, 2017, LP Trustee filed his *Certificate of Notice of Bankruptcy Filing and Stay* in the Adversary Proceeding.  *See* Docket No. 24 in Adversary Proceeding.  On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion to Lift Stay* in LP Debtor's bankruptcy cases which, *inter alia*, provides that the parties are "granted relief from the automatic stay … to continue with and fully litigate claims that are or could be pled" in the Adversary Proceeding.  Docket No. 26 in Case No. 17-40180 *and* Docket No. 29 in Case No. 17-40179.

5.  <u>Amended Complaint</u>.  On July 13, 2017, Payson Trustee filed his *First Amended Complaint* in the Adversary Proceeding.  *See* Docket No. 25 in Adversary Proceeding.

6.  <u>Jurisdiction & Venue</u>.  This Court has jurisdiction over the subject matter of this Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## FACTUAL BACKGROUND

7.  <u>Nature of Payson Debtors' Businesses</u>.  Matthew C. Griffin ("<u>Griffin</u>") formed Payson Petroleum in 2008 to, *inter alia*, (i) promote the sale of interests in limited partnerships and (ii) operate oil and gas wells for such limited partnerships.  Griffin formed Payson Operating in 2010 to act as a contract operator for Payson Petroleum.  Griffin formed Maricopa in 2012 to, *inter alia*, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8.  <u>Nature of 2014 LP's Businesse</u>.  Payson Petroleum Grayson, LLC formed 2014 LP in 2014 to, *inter alia*, drill, complete, and own interests in the Subject Wells.

9.  <u>Turnkey Agreements</u>.  On or about January 12, 2014, Payson Petroleum and 2014 LP entered into a Subscription Turn Key Agreement under which 2014 LP agreed to pay Payson

Petroleum certain amounts for the drilling and completion of the Subject Wells (the "Turnkey Agreement"). In the Adversary Proceeding, Payson Petroleum asserts a claim for breach of the Turnkey Agreement against 2014 LP in the amount of $5,343,803 (the "Breach of Turnkey Agreement Claim").

10.  **Working Interest Assignments.**  On or about Marcy 28, 2016, Maricopa assigned certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine #1 (API #181-31547) (collectively the "Subject Wells") to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers:  2016-00006064, 2016-00006065, and 2016-00006066.  The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "Working Interest Assignments").  In the Adversary Proceeding, Maricopa asserts claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code against 2014 LP for avoidance of the Working Interest Assignments and recovery of the interests transferred to 2014 LP or their value.  Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("Traton"), the Payson Trustee's approved contract operating company.

11.  **Additional Avoidable Transfers.**  In addition to the Working Interest Assignments, Payson Petroleum transferred $2,862,000 to 2014 LP between January and February 2014 in

exchange for interest in that limited partnership that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "Investment Transfers"). In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfers from 2014 LP (the "Investment Transfer Claim").

## III.
## PROPOSED SETTLEMENT

12.     The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties. Attached hereto as **Exhibit A** is a copy of the Settlement Agreement.[2]

13.     Agreed Final Judgment. As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, *inter alia*, provide that the Wellbore Interest Assignments are avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson Petroleum on its Breach of Turnkey Agreement Claim against 2014 LP in the amount of $2,671,900.50. *See* Exhibit 3 to Settlement Agreement.

14.     Conveyance of Interests in Subject Wells. 3 Well LP and 2014 LP will reassign the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by Traton until Maricopa sells those interests under 11 U.S.C. § 363. As explained in further detail

---

[2]     To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control. This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement. Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject

Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed

as follows:  (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP.

Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the

Subject Wells.

   15. <u>Allowed Claims</u>.  The Settlement Agreement also provides that the parties will

agree to the following allowed unsecured claims:

- Payson Petroleum shall hold an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50; and

- 2014 LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

   16. <u>Prosecution of and Participation in Avoidance Action Claims</u>.  The Settlement

Agreement further provides that the parties will enter into the 2014 LP Subject Claims Assignment

and Participation Agreement (collectively the "<u>Claims Assignment and Participation Agreement</u>").

Pursuant to the Claims Assignment and Participation Agreements 2014 LP will assign a fifty

percent (50%) interest in net recoveries from litigation of 2014 LP Avoidance Action Claims and

2014 Partnership Related Claims, as defined in the Claims Assignment and Participation

Agreement, with 2014 LP retaining the remaining fifty percent (50%) interest.  Payson Petroleum

shall be granted standing to prosecute 2014 LP Avoidance Action Claims and Partnership Related

Claims in the 2014 LP bankruptcy case, and 2014 LP shall enter into an engagement agreement

with special litigation counsel for the Payson Trustee to prosecute such claims for the benefit of

the Payson Petroleum and 2014 LP bankruptcy estates.

   17. <u>Releases</u>.  Except for claims expressly reserved in the Settlement Agreement, all

claims or causes action between the parties will be released.

# IV.
# RATIONALE

18.    <u>Benefit to Maricopa Estate</u>.  The Maricopa bankruptcy estate receives the following benefits from the settlement:

- the interests assigned to 2014 LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 2014 LP.

19.    <u>Benefit to Payson Petroleum Estate</u>.  The Payson Petroleum bankruptcy estate receives the following benefits from the settlement:

- an allowed general unsecured claim in the 2014 LP bankruptcy case in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 2014 LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 2014 LP Avoidance Action Claims and 2014 LP Partnership Related Claims (the "<u>Subject Claims</u>") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 2014 LP.

20.    <u>Benefit to Payson Operating Estate</u>.  Except for claims expressly preserved under the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which have been or could have been asserted against Payson Operating by 2014 LP.

21.    <u>Benefit to 2014 LP Estate</u>.  The 2014 LP bankruptcy estate receives the following benefits from the settlement:

- 2014 LP will obtain 32.4945% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 2014 LP will retain a fifty percent (50%) interest in all 2014 LP Avoidance Action Claims Net Recovery and 2014 LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; *and*

- except for claims expressly preserved under the Settlement Agreement, 2014 LP's bankruptcy estate is released from claims which have been or could have been asserted against 2014 LP by Payson Petroleum, Payson Operating, and/or Maricopa.

## V.
## RELIEF REQUESTED

22.     The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

## VI.
## BASIS FOR RELIEF

23.     Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id.* (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the

following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id*.

24.     The factors support granting the Joint Motion to Compromise. First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors. Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates. The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa and 2014 LP. Additionally, the Settlement Agreement (i) reduces 2014 LP's liability for failing to pay Payson Petroleum amounts owed under the Turnkey Agreement by fifty percent (50%), (ii) provides an arrangement for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii) eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar claims against partners of 2014 LP in different proceedings and forums. In sum, the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of their respective bankruptcy estates and should be approved. *See* Affidavit of Jason R. Searcy, attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

25.     A proposed agreed order is attached hereto as **Exhibit D**.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estate of Payson Petroleum 3 Well 2014, L.P. respectfully request that the Court approve the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: September 21, 2017            Respectfully submitted,

By:  */s/ Blake Hamm*
         Phil Snow
         State Bar No. 18812600
         Blake Hamm
         State Bar No. 24069869
         SNOW SPENCE GREEN LLP
         2929 Allen Parkway, Suite 2800
         Houston, Texas 77019
         (713) 335-4800
         (713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

By:  */s/ Keith W. Harvey*
         Keith W. Harvey
         State Bar No. 09180100
         THE HARVEY LAW FIRM, P.C.
         6510 Abrams Road
         Suite 280
         Dallas, Texas 75231
         (972) 243-3960 Phone
         (972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P. AND PAYSON PETROLEUM 3 WELL 2014, L.P.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* was duly served as follows:

- On September 21, 2017 via the Court's electronic case filing system for the Eastern District of Texas upon all parties requesting electronic notice of all filings or by email as listed below.

- On September 21, 2017 via first class mail, properly addressed and postage prepaid, upon all parties listed on the Service List attached hereto.

| | |
|---|---|
| Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC<br>Mark A. Weisbart<br>12770 Coil Road, Suite 541<br>Dallas, TX  75251<br>weisbartm@earthlink.net,<br>TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;<br>tarah_simmons@earthlink.net | Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP<br>1757 Harpsichord Way<br>Henderson, NV  89012 |
| Dan Chern<br>The Law Offices of Dan Chern<br>12801 N. Central Expressway, Suite 1558<br>Dallas, Texas 75243<br>dbc@dchern.com | Daniel P. Winikka<br>12377 Merit Drive, Ste. 900<br>Dallas, TX  75251<br>danw@LFDSlaw.com |
| US Trustee<br>Office of the US Trustee<br>110 N. College Ave, #300<br>Tyler, TX 75702<br>USTPRegion06.TY.ECF@USDOJ.GOV | |

*/s/ Blake Hamm*
Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\17-40180\20170905 9019 Motion-Payson Petroleum 17-40180.docx

MOTION TO COMPROMISE                                                                 Page 12

Label Matrix for local noticing
0540-4
Case 17-40180
Eastern District of Texas
Sherman
Wed Sep 20 14:40:51 CDT 2017

Aki Miyasaki
1415 W. Rascher Ave.
Chicago IL 60640-1205

Alan Careddu
32 Lasky Rd.
Beacon Falls CT 06403-1242

Albert and Audrey Carse
7000 Brier Hill Court
Fort Worth TX 76132-7111

Alfred and Barbara Austin
15320 Fulton St.
Brighton CO 80602-5639

Allen and Marcia Rastede
211 S. Grove St.
Allen NE 68710-5145

Alma Foster
5316 Northcrest Rd.
Ft. Worth TX 76107-3217

Alvin and Jerry Ann McCool
1033 Creek Hollow Lane
Fort Worth TX 76131-3816

Amy Hutchison
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Anne Patterson
3725 Wakeforest
Houston TX 77098-5511

April Markovics
1620 N. Peters Lane
Stratford CT 06614-1088

Arnold Block
Blockster Investments Ltd.
2317 Clearview Ct.
Lewisville TX 75057-2108

Audrey Schwarzbein
31331 S. Coast Hwy.
Laguna Beach CA 92651-6989

B. E. Tuttle
Aquarius 2000, LLC
105 Front Street
Beaufort NC 28516-2120

Barbara Jacquin
205 Pipecreek Lane
Georgetown TX 78633-5444

Barry Brodbeck
1891 County Rd. B
Platteville WI 53818-9501

Beckie Harkins
6924 Chancery Lane
Williamsburg VA 23188-7567

Berkley Badger
324 Westgate Rd.
Tarpon Springs FL 34688-7402

Bernita Webster
2342 S. Laurel Ave.
Springfield MO 65807-8103

Betty and Harold Ackerman
Linda Walsh
9301 Neptune Drive
Mechanicsville VA 23116-2819

Betty and Joseph Brown
1648 Browns Lane
Hayes VA 23072-3904

Blake Rodgers
12454 Rendon Rd.
Burleson TX 76028-3014

Bobby Smith
3211 State Route 14
West Plains MO 65775-7469

Bobby Yates
1901 W. Loop 289, Ste 11
Lubbock TX 79407-1725

Bobby and Terri Bowland
1220 Vera Lane
Kennedale TX 76060-6002

Bradley Kubik
5639 Glen Oaks Pt.
West Des Moines IA 50266-6628

Brandon Chen
5419 Silk Oak Dr.
Naperville IL 60564-5005

Brenda Henderson
4244 Summersweet Lane
Crowley TX 76036-8906

Brian Cepetelli
83 Ashwood Terrace
Stratford CT 06614-1101

Brian Fraus
4625 E State Highway 29
Bertram, TX 78605-4229

Bryan Buzbee
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Carl Brumley
4801 Washburn Ave.
Fort Worth TX 76107-3734

Cehuan Wang
5567 Gamay Way
San Diego CA 92130-5704

Charles Barry
33 Collins Street,
Worcester MA 01606-1421

Charles Cobb
Financial West Group
1022 Court Street
Lynchburg VA 24504-4502

Charles and Katherine Terry
8903 Madewood Ct.
Granbury TX 76049-4013

Charles and Sharon Henslee
4481 CR 1217
Cleburne TX 76033-8017

Cheryl Ogrodnik
6466 Watercrest Way, 301
Lakewood Ranch FL 34202-5238

Chris Lahiji
1408 Grant St.
Santa Monica CA 90405-1614

Christopher Friscia
4312 Hazy Meadow Lane
Grapevine TX 76051-5717

Christopher Kennon
2147 Inman
Nixa MO 65714-7049

Christopher Rooker
3728 Summercrest Dr
Fort Worth TX 76109-3301

Christopher Tasso
Anne Ciola-Tasso
148 Miller Rd.
Bethany CT 06524-3243

Claire Macfarland
1310 Hackberry Ln.
Winnetka IL 60093-1608

Clint Fowler
CFI Ventures, LP
127 Blush Hill Drive
Conroe TX 77304-1165

Eboney Cobb
Perdue Brandon Fielder Collins & Mott
500 E. Border Street, Suite 640
Arlington, TX 76010-7457

Comptroller of Public Accounts
c/o Office of the Attorney General
Bankruptcy & Collections Division MC 008
PO Box 12548
Austin TX 78711-2548

Crystal LeClercq
1412 Sandalwood Dr.
Murphys CA 95247-9460

Cynthia Woods
1412 Blue Quail Run
Crowley TX 76036-5778

Dana Markovics
220 Oronoque Rd.
Milford CT 06461-1831

Daniel Smeester
545 El Capitan Rd.
Danville CA 94526-4943

David Bartczak
4519 Ringrose Drive
Missouri City TX 77459-2918

David Stewart
4520 S. Harvard
Springfield MO 65804-6711

David Vednor
9861 Leatrice Dr.
Villa Park CA 92861-1315

David Zawisha
4009 Congress St.
Fairfield CT 06824-2040

David and Deborah Allnutt
8651 Canyon Crossing
Lantana TX 76226-5534

David and Lora Lyons
2121 Pinwood Circle
Arlington TX 76001-5652

David and Shirley Nolsheim
13480 88th Ave. North
Seminole FL 33776-2607

Deborah Hayden
4520 Cheval Blvd.
Lutz FL 33558-5331

Dennis Opitz
3949 Stonehenge Rd.
Fort Worth TX 76109-3415

Derik Einer Lindholm
333 Via Lido Nord
Newport Beach CA 92663-4649

Don Huntley
4804 N. Arcade Ave.
Fresno CA 93704-3013

Donald Carvello
14511 Charmeran Ave.
San Jose CA 95124-3566

Donald Chisholm
400 Lake Ave. NE Apt. C304
Largo FL 33771-1684

Donald DiFiore
2149 S. Kenton
Aurora CO 80014-1064

Donald Propst
6709 Yolanda
Fort Worth TX 76112-4129

Donald and Debra Woods
12 Foliate Way
Ladera Ranch CA 92694-1218

Douglas Hillenbrand
2102 Glenview Ln. NE
Rochester MN 55906-8398

Edward and Mary Lozito
9295 N. Star Dr.
Mechanicsville VA 23116-2821

Edwin Hardey
5670 Jasper Pointe Cir.
Castle Pines CO 80108-9151

Einer Lindholm
333 Via Lido Nord
Newport Beach CA 92663-4649

Elizabeth Williams
2374 Rosendale Village Ave.
Henderson NV 89052-8733

Elton Stone
2009 Oak Grove Rd. E
Burleson TX 76028-6997

Elwanda Santiago
137 Buchanan Court
Aledo TX 76008-3803

Eric Eaton
655 Appaloosa Rd.
Tarpon Springs FL 34688-9066

Ernest Morgan
28 Pocono Rd.
Newtown CT 06470-1248

Eve Dixon
PO Box 1510
Fort Worth TX 76101-1510

Fen V. Lee
104 Shore Dr.
Schaumburg IL 60193-4145

Frank Highly
6390 Dwane Ave.
San Diego CA 92120-3845

Garrett Flynt
Flynt Family Inc.
9944 Delamere Dr.
Fort Worth TX 76244-8536

Gary Amerson
5502 Challenger Ct.
Rockwall TX 75032-8464

Gary Baird, Jr
H. Gary Baird, Jr.
4269 Shorecrest Dr.
Dallas TX 75209-1721

Gary Donner
908 Main Street
Wayne NE 68787

Gary W. Crews
ACME Energy Company, LLC
1795 E. 71st St.
Tulsa OK 74136-5108

Gary Weiner
998 Emerald Bay
Laguna Beach CA 92651-1230

George Faris, III
6650 Trinity Heights Blvd
Ft. Worth TX 76132-3578

George Lee Weaver
11225 Northview Dr.
Aledo TX 76008-5206

George Phelps
1200 Crescent Dr.
Wayne NE 68787-1004

Gerald Meyr
33017 48th Ave. SW
Federal Way WA 98023-3311

Germaine Clarkson
1842 Cottage Dr.
Greeneville TN 37745-4388

Glen Markovics
42 Parkway Terrace
Milford CT 06461-1929

Glendal R. Dow
1320 Hardisty
Bedford TX 76021-6522

Glenn Jason Salsbury
301 Larkspur Ave.
Corona Del Mar CA 92625-3041

Gordon and Sylvia Quan
2 W. Terrace Dr.
Houston TX 77007-7039

Grace and Edward Chu
3528 Scottsdale Circle
Naperville IL 60564-4628

Grayson County
Linebarger Goggan Blair & Sampson, LLP
c/o Laurie A. Spindler
2777 N. Stemmons Frwy
Suite 1000
Dallas, TX 75207-2328

H.W. and Jill Ranelle
4917 Arbol Ct.
Fort Worth TX 76126-1847

James Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX 77019-7100

Hang Yuan and Yingzi Song
3227 N. Carriage Way
Arlington Heights IL 60004-1503

Harry and Shari Duty
424 Burton St.
Henderson NV 89015-7321

Keith William Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road
Suite 280
Dallas, TX 75231-7215

He Yuan
He Yuan and Ning Li
95177 Madison St.
Burr Ridge IL 60527

Heidi Beh
2808 Canto Nubiado
San Clemente CA 92673-6420

Helen Hale
51 Lafayette Avenue
Annapolis MD 21401-2833

Herbert and Joan Sobel
3311 Tack House Rd.
Trent Woods NC 28562-6646
Honey Duncan
136 Palm Circle
Atlantis FL 33462-6627

Howard Saretsky
233 Voltz Rd.
Northbrook IL 60062-4821

Howard and Karen Agster
5402 E. Glide Slope Ct.
Granbury TX 76049-4481

Hua Shang
77 Dunmore
Irvine CA 92620-3693

Inn Lee
104 Shore Dr.
Schaumburg IL 60193-4145

Jacalyn Goodrich
580 Miller Hodge Rd.
Inman SC 29349-8058

Jack Grumbles
204 Westfork Dt.
Fort Worth TX 76114-4364

Jack Long
2536 Highridge Drive
Chino Hills CA 91709-4890

James Burgess
JNJM, LLC
7203 Lake Mead Blvd.
Arlington TX 76016-4137

James Carroll
2505 Ridgemoor Ct.
Arlington TX 76016-1434

James Krause
500 W. 13th Street
Fort Worth TX 76102-4657

James Linden
500 River Road
Unit 13
Shelton, CT 06484-4594

James Rosemeyer
Bayley Investments, LLC
662 E. Business Hwy 151
Platteville WI 53818-3761

James and Gerlinde Stevens
1609 Browns Lane
Hayes VA 23072-3904

Jan Cheng and Ximing Yang
6912 Fieldstone Dr.
Burr Ridge IL 60527-6968

Janis Bridges
2817 Fossil Run Blvd
Fort Worth TX 76131-2010

Janys Schroeder
39356 260th St.
Kingsley IA 51028-8634

Jared Meisel
5423 Winsland Lane
Charlotte NC 28277-0527

Jason Searcy, Trustee
c/o Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX 77019-7100

Jay Pond
2729 Antero Dr.
Arlington TX 76006-3707

Jeff Wilshire
4001 Kenosha Rd.
Plano TX 75024-7075

Jeffrey Carter
2300 Bradwood Court
Arlington TX 76011-2241

Jeffrey Cohen
24041 Swallowtail Drive
Laguna Niguel CA 92677-1368

Jeffrey Meyer
7930 S. Jasmine Circle
Centennial CO 80112-3050

Jeffrey and Linda Richard
MidAmerica Financial Svcs, Inc.
35-B S. Court
PO Box 418
Platteville WI 53818-0418

Jeremy Rauhauser
4412 Canter Way
Flower Mound TX 75028-8755

Jeremy Szeto
24 Dupont Circle
Sugar Land TX 77479-2521

Jerry and Joan Radcliff
5595 Thatch Cir.
Prescott AZ 86305-3824

Jerry and Linda Hays
687 Cardinal Ridge Rd.
Burleson TX 76028-6206

Jia Liu and Richard Z. Lu
120 S. Fiore Pkwy
Vernon Hills IL 60061-3270

Jiangnan and Mary Chen
1 Newbury Ct.
Hawthorne Woods IL 60047-9144

Jimmy and Linda Walker
P.O. Box 931
Stephenville TX 76401-0009

Jiuzhou Wang and Meimei Xu
24 Butterfield Road
Lexington MA 02420-2585

Jocelyn Carter
2175 Funston Ave.
San Francisco CA 94116-1904

Joel Dow
8816 Calera Dr.
Austin TX 78735-1572

Joel F. Woods
1412 Blue Quail Run
Crowley TX 76036-5778

Joey and Ida Smith
3622 County Road 4660
Pomona MO 65789-9424

Joey and Linda Jo Turner
7309 N. Norman Rd.
Warr Acres OK 73132-5723

John Crowther
221 Hidden Acres Lane
Weatherford TX 76087-8643

John Diaz
5648 N. McVicker Ave
Chicago IL 60646-6103

John Gong
20603 W. Lakeridge Ct.
Kildeer IL 60047-8315

John Heckler
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

John Johnson
6154 Haley Lane
Ft. Worth TX 76132-3875

John McElroy
109 SE Rambling Trail
Weatherford TX 76087-7631

John Miyasaki
1415 W. Rascher Ave.
Chicago IL 60640-1205

John Pollick
2336 Fir St.
Glenview IL 60025-2704

John and Christy Fonvielle
Tenants in Common
212 Casa Blanca Cir
Ft. Worth TX 76107-1804

John and Felicia King
976 Ekman Dr.
Batavia IL 60510-8940

Jonathan Alex Perkins
646 North Armstead St.
Alexandria VA 22312-2928


Joseph Bolin
3830 Rice Blvd.
Houston TX 77005-2826

Joseph Little
18646 Halff Bend Dr.
Cypress TX 77433-5090

Joseph and Arlene Seminoro
25 Washington Street
Trumbull CT 06611-4668


Joseph and Carol Arpino
104 Lavery Lane
Milford CT 06461-1624

Joseph and Caroline Schmitz
4565 Pressley Rd
Santa Rosa CA 95404-8866

Judith Watkins
3004 Steeplechase Trail
Arlington TX 76016-2317


Jun Zhou
748 Sigmund Rd.
Naperville IL 60563-1338

Kathy Adams
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Kazu Miyasaki
1415 W. Rascher Ave.
Chicago IL 60640-1205


Kazuo and Rosalyn Nanya
432 40th Ave.
San Francisco CA 94121-1510

Keith Jackson
Riverstone Resources, Ltd.
2591 Dallas Parkway, Suite 300
Frisco TX 75034-8563

Kelly Sanders
Hupakoe, LLC
3602 Vista Chase Ct.
Arlington TX 76001-6963


Kelly Sanders
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Kening Ma
3236 Pepper Tree Point
Chino Hills CA 91709-1504

Kenneth Aldrich
YKA Partners, LLC
3200 Airport Ave., Suite 16
Santa Monica CA 90405-6116


Kenneth Cheung
3902 Coulter Ct
Arlington TX 76016-3816

Kenneth and Patricia Lowe
1504 Dolorosa Ct.
The Villages FL 32159-9111

Kenneth and Terryalin Chapman
6447 S. Indianapolis Place
Tulsa OK 74136-1422


Kenneth and Tommie Dougan
1914 Briarwood Dr
Grand Prairie TX 75050-2216

Kevin and Anne Marie Peterson
305 Martins Cove Rd.
Annapolis MD 21409-5952

Kevin and Denise Potempa
KAPAA, LLC
Wailua LLC
P.O. Box 5156
Scottsdale AZ 85261-5156


Kimberly Fuller
PI Resources, LLC
5455 Honeysuckle Rd.
Midlothian TX 76065-7006

Krystle Lindholm
333 Via Lido Nord
Newport Beach CA 92663-4649

Kurt Erickson
4848 E. Milton Dr.
Cave Creek AZ 85331-5965


Laddie Zimmet
5101 FM 1187
Burleson TX 76028-3053

Lance Barlow
Barlow Investments
2727 E. Kirby DR, 9E
Houston TX 77098-1149

Lanning Macfarland
1310 Hackberry Ln.
Winnetka IL 60093-1608

Lawrence and Theodora Esposito
155 Rimmon Rd
North Haven CT 06473-2873

Lee Eggers
TMICO Lee G. Eggers
490 Camp St.
Platteville WI 53818-1707

Lei Yan
1505 Clarkson Ct.
Naperville IL 60565-1733

Leland Phillips
3709 Tumbling Trail Ct.
Fort Worth TX 76116-9328

Lewis Graham
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Lihong Huang and Xiaoli Zhang
26597 N. Kenwood Ct.
Mundelein IL 60060-3540

Liping Zhong
426 E. Sunnyside Ave.
Libertyville IL 60048-2937

Loewinsohn Flegle Deary Simon LLP
c/o Daniel P. Winikka
12377 Merit Drive, Suite 900
Dallas, TX 75251-3102

Lucile Sims Wise
3600 Wosley Dr.
Fort Worth TX 76133-2137

Luis Gonzalez
2701 N. Grapevine Mills Blvd. 728
Grapevine TX 76051-2060

Lynne Bentsen
Barlow Investment Ltd.
2727 Kirby Dr. 9E
Houston TX 77098-1149

Malcolm V. Vye IRA
c/o Malcolm Vye
145 N. Sheridan
Winnetka, IL 60093-4223

Malcolm Vye
145 N. Sheridan
Winnetka IL 60093-4223

Marc Henn
Harvest Financial Advisors, LLC
440 Glendale Ave.
Cincinnati OH 45246-3815

Margaret McElroy
109 SE Rambling Trail
Burleson TX 76087-7631

Margaret Ng and Ross Chan
6112 Ascot Drive
Oakland CA 94611-2527

Margaret and David Grubbs
205 Kenmore Ave.
Elmhurst IL 60126-3517

Margarett Propst
6709 Yolanda Dr.
Fort Worth TX 76112-4129

Marisa Lindholm
333 Via Lido Nord
Newport Beach CA 92663-4649

Mark Modlin
4005 Kenosha Rd.
Plano TX 75024-7075

Mark and Romalyn Trewitt
4017 Messina Drive
Plano TX 75093-7038

Marlow and Rebecca Williams
197 Golden Crown Ave.
Henderson NV 89002-9267

Marty Prinz
Blind Canyon
1780 N. Kimball Avenue
Southlake TX 76092-4002

Marvin and Mary Van Hal
280 East Bob Jones Rd.
Southlake TX 76092-9275

Mary A. Gardecki
68 Auburn St.
Stratford CT 06614-3701

Mary Ann Swift
200 N. Matteson Ave
Republic MO 65738-1675

Mary Jane Pompa
21 Basking Ridge Rd.
Shelton CT 06484-3897

Mary Louise and Albert Edwards
778 Old Stratfield Rd.
Fairfield CT 06825-7427

Mary Russell
3111 Kelly Rd
Aledo TX 76008-4882

Meiyu Chen
913 Ashford Lane
Westmont IL 60559-2656

Michael Kudlik
4760 Highland Drive Suite 245
Holladay Utah 84117-5149

Michael Musaraca
2414 Blue Spruce Ct.
Aurora IL 60502-6420

Michael Ranelle
4220 Harlanwood
Fort Worth TX 76109-2045

Michael and Pamela Spitzer
2010 Roma Ave.
Fruita CO 81521-8616

Mona Fields
2006 Underwood Rd
Aledo TX 76008-2447

Natalia Ryndin
28832 Sean Dr.
Laguna Niguel CA 92677-4661

Noel and Sandra Markovics
42 Parkway Terrace
Milford CT 06461-1929

Om and Veena Agrawal
209 Kenshire Dr.
Benbrook TX 76126-4113

Peili Wu
3108 Regal Dr.
Arlington TX 76016-2028

Philip Zou
1065 Sanctuary Ct.
Vernon Hills IL 60061-3608

Michael Musheba
235 Deerfield Dr
Stratford CT 06614-2767

Michael Niemann
Julie Wakeman
14105 W. 72nd St.
Shawnee KS 66216-5520

Michael Sobel
3311 Tack House Rd.
Trent Woods NC 28562-6646

Mike Wang
390 Foothill Ave.
Sierra Madre CA 91024-1518

Monica Markovics
37 Parkway Terrace
Milford CT 06461-1930

Nathan Sanders
BESCO Family Investments, LLC
3309 Mansfield Hwy.
Fort Worth TX 76119-6025

Noral and Juanita Gregory
2881 Oakbriar Trail
Fort Worth TX 76109-5556

Pamela Smith
481 Pecan
Burleson TX 76028-6309

Peter Backes
9448 Quail Ridge Dr.
Las Vegas NV 89134-8938

Philip and Anita Strand
1911 Nelson Ct.
DeSoto TX 75115-2142

Michael Mitchell
300 Landwyck Ln.
Flower Mound TX 75028-7144

Michael Pettis
Pettis Oil and Gas, LLC
3140 Brookhollow Ct.
Prosper TX 75078-0529

Michael Yates
22292 Regnart Rd.
Cupertino CA 95014-4845

Molly Bayer
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Christopher Moser
2001 Bryan Street, Suite 1800
Dallas, TX 75201-3070

Neil Agrawal
2962 E. 45th Place
Tulsa OK 74105-5204

Oklahoma City OK 73156
Julie Wakeman
14105 W. 72nd St.
Shawnee KS 66216-5520

Payson Petroleum 3 Well 2014, L.P.
2652 FM 407 E, Ste. 250
Bartonville, TX 76226-7026

Peter and Monika Wettenstein
5325 E. Kathleen Rd.
Scottsdale AZ 85254-1758

Pottsboro ISD
% Perdue Brandon Fielder Et Al
500 E. Border Street
Suite 640
Arlington, TX 76010-7457

Pottsboro ISD
c/o Perdue Brandon Fielder et al
500 East Border Street, Suite 640
Arlington, TX 76010-7457

Prem Kumar
Wildflower LLC
817 E. San Angelo Ave.
Gilbert AZ 85234-3513

Randall McKenna
North Central Texas Holding and
Investments, Inc.
400 King Ranch Rd.
Southlake TX 76092-2026

Randall Swift
200 N. Matteson Ave
Republic MO 65738-1675

Randy Lew
4647 Sidonia Ct.
Ft. Worth TX 76126-1920

Ravindra and Kum Prakash
1170 Alderbrook Lane
San Jose CA 95129-2956

Raymond and Janet Smith
623 E. River Quarry Court
Eagle ID 83616-6351

Rebecca Lowe
643 SW T Highway
Holden MO 64040-8107

Reinhardt and Merlee Lange
136 Benedict Ave.
Fairfield CT 06825-1705

Renjie Fu
405 E. 58th St.
Westmont IL 60559-3368

Richard Graham
31331 S. Coast Hwy.
Laguna Beach CA 92651-6989

Richard Sobel
7410 Center Bay Dr.
North Bay Village FL 33141-4014

Richard and Sue Rector
5813 Wales Avenue
Fort Worth TX 76133-2711

Rick Gardner
420 Aspen Street
Prescott AZ 86303-4004

Rickey and Wendy Kelman
3120 E. Puget Ave.
Phoenix AZ 85028-5329

Robert Mendonsa
4507 Meadow Hill
McKinney TX 75070-4613

Robert Watkins
3004 Steeplechase Trail
Arlington TX 76016-2317

Robert and Carole Orsillo
60 Brierwood Drive
Watertown CT 06795-2016

Robert and Marianne Laska
73 Centennial Dr.
Milford CT 06461-1662

Robert and Peggy Yacobi
6 Chanteraine Close
Williamsburg VA 23185-8604

Rocky and Anna Howington
1 Saint Louis Lane
Pleasant Hill CA 94523-1139

Roger Damron
PO Box 21729
Chattanooga TN 37424-0729

Roland Lentz
1521 Vintage Hill Dr
Wayne NE 68787-1236

Romalyn Trewitt
4017 Messina Drive
Plano TX 75093-7038

Ron Franco
Bluepack LLC
P.O. Box 5287
Culver City CA 90231-5287

Ronald Barfield
700 W. Harwood, Suite A
Hurst TX 76054-3391

Ronald Guichard
2937 N. Talman Ave
Chicago IL 60618-7814

Ronald Oberle
30525 Fort Apache Drive
Congress AZ 85332

Ronald and Cheryl Waggoner
834 Doubletree Lane
Springfield MO 65810-3261

Ronald and Libbie Adams
115 Ravenhill Dr.
Highlandville MO 65669-8227

Rose Marie Klein
1389 Calle de las Granvas
Livermore CA 94551-2595

Roy Williams
190 Mt. Pleasant Ave.
Stratford CT 06614-3420

Roy and Carol Ray
2000 Underwood Rd.
Aledo TX 76008-2447

Rudolph Perry
48 E. Bison Circle
Florissant CO 80816-7157

Russell Karr
8108 Modena Dr
Fort Worth TX 76126-6113

Ryan Grossman
207 Mt. Oak Pl.
Annapolis MD 21409-5868

Sandra Markovics
42 Parkway Terrace
Milford CT 06461-1929

Sara Ng
218 Wood Glen Lane
Oak Brook IL 60523-1533

Jason R Searcy
PO Box 3929
Longview, TX 75606-3929

Shannon Kmak
4005 Kenosha Rd.
Plano TX 75024-7075

Sharlene Sims Horak
4436 Overton Terrace
Fort Worth TX 76109-2517

Sharolyn Richardson
8003 Turkey Trail
Benbrook TX 76126-6101

Shawn Miller
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Shirley Nolsheim
13480 88th Ave. North
Seminole FL 33776-2607

Shrimant and Susy Ayaram
222 Glen Ridge Dr.
Murphy TX 75094-4205

Shu and Lisa Chen
5844 Golden Eye Dr.
Long Grove IL 60047-5048

Laurie A. Spindler
Linebarger, Goggan, Blair & Sampson
2777 N. Stemmons Frwy Ste 1000
Dallas, TX 75207-2328

Stephen Brown
8601 Westown Parkway 6108
West Des Moines IA 50266-1632

Steven O'Leary
Helen M. Hale - Principle
73 Conduit St.
Annapolis MD 21401-2601

Steven and Carolyn Wiesenfeld
66 Chester Rd.
Easton CT 06612-1806

Sue Chappell
5071 S. Burrows Ave.
Springfield MO 65810-2054

Sunil Agrawal
4323 S. Quincy Place
Tulsa OK 74105-4135

Suresh and Malini Kumar
5210 Pine Forest Rd.
Houston TX 77056-1313

Taher Sobhy
41 W. Mallard Lane
Lakeforest IL 60045-2902

Tami Rodgers
3309 Wild Oaks Ct
Burleson TX 76028-2333

Tammy McKain
Kijabe, LLC
3602 Vista Chase Court
Arlington TX 76001-6963

Tapan and Anisa Daftari
6595 Old Riverside Dr.
Altanta GA 30328-2744

Tarry Dahmer
2400 SW Wintercreek Ct.
Lee's Summit MO 64081-4085

Terry Scharig
Payson Petroleum
34601 E. Shore Rd.
Lone Jack MO 64070-9169

The Allan and Marcia Rastede Family
Revocable Living Trust
211 S. Grove Street
Allen, NE 68710-5145

The Radcliff Living Trust
Jerry & Joan Radcliff, TTEE
c/o Jerry M. Radcliff
5595 Thatch Ct.
Prescott, AZ 86305-3824

Theodora Esposito
155 Rimmon Rd
North Haven CT 06473-2873

Theodore Lung
1839 E 2453rd Lane
Camp Point IL 62320-2129

Thomas Clayton
26770 Sale Barn Ln
Belmont WI 53510-9725

Thomas Hayes
5115 N. Dysart Road, 202-217
Litchfield Park AZ 85340-3032

Thomas Hoppe
11051 Dormie Drive
San Antonio FL 33576-7048

Thomas and Lois Partridge
199 CR 1747
Clifton TX 76634-3990

Timothy Carman
2215 River Ridge Rd.
Arlington TX 76017-2631

Timothy Cypert
703 Jackson St.
Rockwall TX 75087-2212

Timothy Moore
313 Stonebridge Dr.
Rockwall TX 75087-3434

Timothy and Stacey Gibson
145 Links Lane
Aledo TX 76008-6917

Todd Stephens
230 Miramar Way
West Palm Beach FL 33405-4712

Todd and Melanie Gregory
600 W. Republic Road
Suite A116
Springfield MO 65807-5805

Tom Hinshaw
HRC Roofing
2845 Roadway Drive
Columbus IN 47201-7465

Toussaint Smith
2315 Legend Woods Ct.
Sugar Land TX 77479-5474

Tracy G. Ward
2313 S. Toledo Ave.
Tulsa OK 74114-3622

Travis Petree
2951 Rainbow Drive
Mason City IA 50401-8931

U.S. Attorney General
Department of Justice
Main Justice Building
10th & Constitution Ave., NW
Washington, DC 20530-0001

US Trustee
Office of the U.S. Trustee
110 N. College Ave.
Suite 300
Tyler, TX 75702-7231

Van and Mary Butler
62 Cypress Ct.
Durango CO 81301-3782

Virginia Humphrey
National Financial Services, LLC
340 S. Lemon Ave. 8337
Walnut CA 91789-2706

Virginia Rhodes
7570 E. Manley Dr.
Prescott Valley AZ 86314-5166

Warren and Fay Bush
PO Box 80140
Keller TX 76244-2902

Wendy Yang and Li Liu
Delftechpark 26, 2628
XH Delft, Netherlands

Wenzhong and Dana An
29602 N. Birch Ave.
Lake Bluff IL 60044-1176

William Cozad
10401 W. Charleston Blvd., V6
Las Vegas NV 89135-8706

William Dax Symonds
3170 Westcliff Rd. West
Fort Worth TX 76109-2128

William Kloster
112 Tres Vista Court
Cresson TX 76035-5838

William Martin
3708 Brookfield
Plano TX 75025-3780

William Ralph Westbrook
338 Park Brook Dr.
Dallas TX 75218-1152

William and Deborah Hayden
4520 Cheval Blvd.
Lutz FL 33558-5331

William and JoAnn Whelpley
308 Martel Ct.
Coppell TX 75019-7583

Daniel P. Winikka
Loewinsohn Flegle Deary Simon, LLP
12377 Merit Drive
Suite 900
Dallas, TX 75251-3102

Woodrow and Jo Ann Wilson
59250 E. 190 Rd
Fairland OK 74343-1753

Yang Zhao and Hong Yang
31 E. 59th St.
Westmont IL 60559-2501

Yanhua Shi
447 Lynn Ct.
Clarendon Hills IL 60514-1000

Ying Qi
2220 Joyce Lane
Naperville IL 60564-4404

Ying and Siwen Qu
1725 Holly Ct.
Long Grove IL 60047-5139

Yulduz Cohen
28264 Via Marcus
Laguna Niguel CA 92677-7527

Zhong Wu
3880 Tahoe St.
West Sacramento CA 95691-5452

Zhongwen Huang
Huifang Liang
3915 Snowbird Lane
Northbrook IL 60062
ZiJun Zhao
Kraehenbruch 60062-4269

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Grayson County
Linebarger Goggan Blair & Sampson, LLP
c/o Laurie A. Spindler
2777 N. Stemmons Frwy
Suite 1000
Dallas, TX 75207-2328

(u)HongMei Han
Kraehenbruch 4
Dortmund  44227

(u)Judy Fulton
Seven Wells Royalty, LLC
P.O. Box 21866

(d)Christopher Moser
2001 Bryan Street, Suite 1800
Dallas, TX 75201-3070

(d)Jason R. Searcy
P. O. Box 3929
Longview, TX 75606-3929

End of Label Matrix
Mailable recipients   340
Bypassed recipients     5
Total                 345

# EXHIBIT A

# SETTLEMENT AGREEMENT

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "<u>Agreement</u>") is entered into as of September 20, 2017 by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee for the Searcy Bankruptcy Cases, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee for the Moser Bankruptcy Cases, referred to individually herein as a "<u>Party</u>" and collectively as, the "<u>Parties</u>."

# R E C I T A L S

**WHEREAS**, Christopher J. Moser is the duly appointed Chapter 7 Trustee in the 3 Well LP Bankruptcy Case and the 2014 LP Bankruptcy Case.

**WHEREAS**, Jason R. Searcy is the duly appointed Chapter 11 Trustee in the Payson Petroleum Bankruptcy Case, the Payson Operating Bankruptcy Case and the Maricopa Bankruptcy Case.

**WHEREAS**, on or about October 10, 2013, Payson Petroleum and 3 Well LP entered into a Subscription Turn Key Agreement under which 3 Well LP agreed to pay Payson certain amounts for the drilling and completion of the Subject Wells.

**WHEREAS**, on or about January 12, 2014, Payson Petroleum and 2014 LP entered into a Subscription Turn Key Agreement under which 2014 LP agreed to pay Payson Petroleum certain amounts for the drilling and completion of the Subject Wells.

**WHEREAS**, on or about March 28, 2016, Maricopa assigned certain interests in the Subject Wells to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066. The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

**WHEREAS**, on November 1, 2016, suit was filed against 3 Well LP and 2014 LP in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) and asserts, *inter alia*, (i) breach of contract claims against 3 Well LP and 2014 LP to recover amounts owed under

the 3 Well LP Turnkey Agreement and the 2014 LP Turnkey Agreement, and (ii) fraudulent transfer and preference claims against 3 Well LP and 2014 LP (the "<u>Adversary Proceeding</u>").

**WHEREAS**, the Parties have agreed to resolve, compromise, and settle all claims, disputes and controversies between the Parties which have been or could have been asserted in any and all of the Bankruptcy Cases or the Adversary Proceeding in accordance with the terms set forth in this Agreement.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the Parties hereby agree as follows:

## ARTICLE 1

### Definitions

1.01    <u>Defined Terms</u>.  The following terms, as used in this Agreement, shall have the meanings indicated below, unless the context otherwise requires:

"**2014 LP**" means Payson Petroleum 3 Well 2014, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well 2014, L.P. and the Payson Petroleum 3 Well 2014 L.P. bankruptcy estate.

"**2014 LP Bankruptcy Case**" means Bankruptcy Case No. 17-40180 styled *In re Payson Petroleum 3 Well 2014, L.P., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**2014 LP Subject Claims Assignment and Participation Agreement**" means an agreement between 2014 LP and Payson Petroleum, substantially in the form attached hereto as **Exhibit 1**.

"**2014 LP and 3 Well LP Retained Claims**" has the meaning set forth in <u>Section 4.04</u>.

"**3 Well LP**" means Payson Petroleum 3 Well, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well, L.P. and the Payson Petroleum 3 Well L.P. bankruptcy estate.

"**3 Well LP Bankruptcy Case**" means Bankruptcy Case No. 17-40179 styled *In re Payson Petroleum 3 Well, L.P., Debtor,* pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**3 Well LP Subject Claims Assignment and Participation Agreement**" means an agreement between 3 Well LP and Payson Petroleum, substantially in the form attached hereto as **Exhibit 2**.

"**Agreed Final Judgment**" means an Agreed Final Judgment to be filed in the Adversary

2

Proceeding, substantially in the form attached hereto as **Exhibit 3**.

**"Bankruptcy Cases"** means, collectively, the Payson Petroleum Bankruptcy Case, the Payson Operating Bankruptcy Case, the Maricopa Bankruptcy Case, the 3 Well LP Bankruptcy Case and the 2014 LP Bankruptcy Case.

**"Bankruptcy Code"** means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

**"Business Day"** means any day that is not a Saturday, Sunday, or other day on which banks are authorized or required to close pursuant to the rules and regulations of the Federal Reserve System.

**"Closing"** shall have the meaning ascribed to it in Article 3 of this Agreement.

**"Closing Date"** shall have the meaning ascribed to it in Article 3 of this Agreement.

**"Direct Taxes"** means all ad valorem, property, gathering, transportation, pipeline regulating, gross receipts, windfall profit, severance, production, excise, eating content, carbon, value added, environmental, occupation, sales, use, fuel, and other taxes and governmental charges and assessments imposed on or as a result of all or any part of the Subject Wells, including any real or personal property, equipment or fixtures, to the extent used in connection with, or relating to, the Subject Wells, the Subject Hydrocarbons or the proceeds thereof. **"Direct Taxes"** do not include federal income taxes, state income taxes or franchise taxes or any penalty or interest surcharges thereon.

**"Execution Date"** means September 20, 2017.

**"Gas"** means natural gas and all other gaseous hydrocarbons, including casinghead gas, but excluding condensate and other liquid hydrocarbons removed by conventional mechanical field separation at the wellhead and also excluding the liquid products of any processing of Gas done prior to the sale of such Gas.

**"Hydrocarbons"** means Gas and/or Oil.

**"Joint Motion for Entry of Agreed Final Judgment"** shall mean the Joint Motion for Entry of Agreed Final Judgment, substantially in the form attached hereto as **Exhibit 4**.

**"Maricopa"** means Maricopa Resources, LLC, Jason Searcy in his capacity of Chapter 11 trustee of Maricopa Resources, LLC and the Maricopa Resources, LLC bankruptcy estate.

"**Maricopa Bankruptcy Case**" means Bankruptcy Case No. 16-41043 styled *In re Maricopa Resources, LLC, Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Marketing Expenses**" mean the costs incurred in connection with the marketing and sale of the Subject Wells, including broker fees, legal fees and other expenses incurred in connection with preparation of marketing materials, negotiation of any potential sale, preparation of documents and pleadings and/or preparation and attendance at hearings.

"**Moser Bankruptcy Cases**" means the 3 Well LP Bankruptcy Case and the 2014 LP Bankruptcy Case.

"**Oil**" means crude oil, condensate and other liquid hydrocarbons, including liquid hydrocarbons removed by conventional mechanical field separation at the wellhead and also including the liquid products of any processing of Gas done prior to the sale of such Gas.

"**Operating Agreement**" means the Contract Operating Services Agreement attached here as **Exhibit 5**.

"**Operating Reserve**" means the sum of $50,000 to be used by Maricopa exclusively to satisfy Subject Wells Operating Costs incurred subsequent to the Payson Operating bankruptcy petition date.

"**Operator**" means Traton Operating Company in its capacity as Contract Operator for Payson Operating.

"**Payson Operating**" means Payson Operating, LLC, Jason Searcy in his capacity of Chapter 11 trustee of Payson Operating, LLC and the Payson Operating, LLC bankruptcy estate.

"**Payson Operating Bankruptcy Case**" means Bankruptcy Case No. 16-41045 styled *In re Payson Operating, LLC, Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Payson Petroleum**" means Payson Petroleum, Inc., Jason Searcy in his capacity of Chapter 11 trustee of Payson Petroleum, Inc. and the Payson Petroleum, Inc. bankruptcy estate.

"**Payson Petroleum Bankruptcy Case**" means Bankruptcy Case No. 16-41044 styled *In re Payson Petroleum, Inc., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Payson Petroleum, Payson Operating and Maricopa Retained Claims**" has the meaning set forth in Section 4.05.

"**Searcy Bankruptcy Cases**" means the Maricopa Bankruptcy Case, the Payson Operating Bankruptcy Case and the Payson Petroleum Bankruptcy Case.

**"Settlement Approval Orders"** means Orders, substantially in the form attached hereto as **Exhibit 6**, granting the relief requested in the Settlement Motion which is to be filed in each of the Bankruptcy Cases.

**"Settlement Motions"** means the Joint Motions for Approval of Settlement and Compromise, substantially in the form attached hereto as **Exhibit 7**, which are to be filed in each of the Bankruptcy Cases.

**"Settlement Transaction Documents"** means the Operating Agreement, Agreed Final Judgment, the Joint Motion for Entry of Agreed Final Judgment, Settlement Approval Order, Settlement Motions, 3 Well LP Subject Claims Assignment and Participation Agreement, 2014 LP Subject Claims Assignment and Participation Agreement, and any other documents and instruments entered into in connection with this Agreement.

**"Subject Wells"** mean, collectively, the William #1H (API # 181-31557), the Crowe #2 (API #181-31543), and the Elaine #1 (API #181-31547) oil and gas wells and related leasehold interests.

**"Subject Wells Account"** means a segregated account established by Jason Searcy as Chapter 11 Trustee of Maricopa at a commercial banking institution.

**"Subject Wells Assignments"** means assignments in the forms attached hereto as **Exhibit 8**.

**"Subject Wells Net Proceeds"** means the (i) Subject Wells Net Production Proceeds, plus (ii) Subject Wells Net Sales Proceeds, minus (iii) Direct Taxes and the Operating Reserve, as determined on a cumulative basis.

**"Subject Wells Net Production Proceeds"** means the amount (computed on a cumulative basis) by which the gross proceeds received by Maricopa from the sale of the Subject Wells Hydrocarbons exceeds Operating Costs, and the Operating Reserve.

**"Subject Wells Net Sales Proceeds"** means the amount by which the gross proceeds from the sale of the Subject Wells exceeds Marketing Expenses, Subject Wells Operating Costs and valid perfected liens which are not subject to avoidance pursuant to Chapter 5 of the Bankruptcy Code, as determined by an order entered in the Bankruptcy Cases.

**"Subject Wells Operating Costs"** means all expenses incurred in connection with (i) insuring, operating, producing, reworking and maintaining the Subject Wells, (ii) materials, supplies, equipment and other personal property and fixtures purchased for use and actually used on, or direction in connection with the Subject Wells, (iii) gathering, treating, processing, transportation and marketing hydrocarbons produced from the Subject Wells, (iv) plugging, abandonment and remediation (including the Operating Reserve), and (v) Operator fees and expenses related to the Subject Wells.

**"Suspended Revenues"** mean the Subject Wells Net Production Proceeds as of the

Closing Date less the Operating Reserve.

       1.02   <u>Amendment of Defined Instruments</u>.  Unless the context otherwise requires or unless otherwise provided herein, the terms defined in this Agreement which refer to a particular agreement, instrument or document also refer to and include all renewals, extensions, modifications, amendments and restatements of such agreement, instrument or document.  Nothing contained in this Agreement will be construed to authorize any renewal, extension, modification, amendment or restatement of this Agreement or any agreement, instrument or document referred to herein.

       1.03   <u>References and Titles</u>.  All references in this Agreement to Exhibits, Articles, Sections, subsections and other subdivisions refer to the Exhibits, Articles, Sections, subsections and other subdivisions of this Agreement unless expressly provided otherwise.  Titles appearing at the beginning of any subdivisions are for convenience only, do not constitute any part of those subdivisions and will be disregarded in construing the language contained in those subdivisions. The words "this Agreement," "this instrument," "herein," "hereof," "hereby," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.  The phrases "this section" and "this subsection" and similar phrases refer only to the sections or subsections of this Agreement in which those phrases occur.  The word "or" is not exclusive; the word "including" (in its various forms) means "including without limitation."  Pronouns in masculine, feminine and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires.  The word "will" shall be construed to have the same meaning and effect as the word "shall."  Unless the context requires otherwise (a) any reference herein to any law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time; (b) any reference herein to any person shall be construed to include such person's successors and assigns (subject to the restrictions contained herein); (c) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including;" and (d) all dollar amounts refer to United States dollars.  A reference herein to a number of "days" will be intended to refer to that number of calendar (as opposed to working) days, unless otherwise specifically provided.  No provision of this Agreement or the Settlement Transaction Documents shall be interpreted or construed more strictly against any person solely because such person or its legal representative drafted such provision.

<center>**ARTICLE 2**</center>

<center>**<u>Settlement Motions and Settlement Approval Orders</u>**</center>

       2.01   <u>Execution Date Deliveries</u>.  On the Execution Date, each Party shall execute and deliver to the other Parties the following:

- The Settlement Motions;
- The proposed form of Settlement Approval Orders;
- The Joint Motion for Entry of Agreed Final Judgment; and

<center>6</center>

•   The proposed form of Agreed Final Judgment.

2.02   <u>Filing of Motions</u>.  Counsel for Payson Petroleum, Payson Operating and Maricopa shall cause the Settlement Motions and proposed Settlement Approval Orders to be filed in the respective Bankruptcy Cases.  Counsel for Payson Petroleum, Payson Operating and Maricopa shall cause the Joint Motion for Entry of Agreed Final Judgment and proposed form of Agreed Final Judgment to be filed in the Adversary Proceeding.

2.03   <u>Prosecution of Motions</u>.  Each Party shall cooperate with the other Parties and use their good faith best efforts to support entry by the Bankruptcy Court of (i) the Settlement Approval Orders, and (ii) the Agreed Final Judgment.  The Parties stipulate that 2014 LP and 3 Well LP consent to entry of the Agreed Final Judgment is subject to Bankruptcy Court approval of the Settlement Motions.

# ARTICLE 3

## <u>Closing</u>

3.01   <u>Time and Place</u>.  The Closing on the transactions contemplated in this Agreement shall be conducted within three (3) Business Days after entry of the Settlement Approval Orders (the "<u>Closing Date</u>") at the office of Snow Spence Green LLP located at 2929 Allen Parkway, Suite 2800, Houston, Texas 77019 or such later date as may be agreed upon by the Parties (the "<u>Closing</u>").

3.02   <u>Delivery by Maricopa to 3 Well LP</u>.  On the Closing Date, Maricopa shall deliver to 3 Well LP the following:  (a) a sum equal to 27.79% of forty-five percent (45%) of the Suspended Revenues by wire transfer to the following account.

> BOK Financial
> 7500 College Blvd., Ste. 1450
> Overland Park, KS  66210
> ABA:  101015101
> Account Name:  Payson Petroleum 3 Well, L.P.
> Account Number:  1151505797

3.03   <u>Delivery by Maricopa to 2014 LP</u>.  On the Closing Date, Maricopa shall deliver to 2014 LP the following:  (a) a sum equal to 72.21% of forty-five percent (45%) of the Suspended Revenues by wire transfer to the following account.

> BOK Financial
> 7500 College Blvd., Ste. 1450
> Overland Park, KS  66210
> ABA:  101015101
> Account Name:  Payson Petroleum 3 Well 2014, L.P.
> Account Number:  1151505775

3.04     Delivery by 3 Well LP to Maricopa.  On the Closing Date, 3 Well LP shall assign all right, title and interests in 55% of the Suspended Revenues and deliver to Maricopa the duly executed Subject Wells Assignments.

3.05     Delivery by 2014 LP to Maricopa.  On the Closing Date, 2014 LP shall assign all right, title and interests in 55% of the Suspended Revenues and deliver to Maricopa the duly executed Subject Wells Assignments.

3.06     Delivery by 3 Well LP to Payson Petroleum.  On the Closing Date, 3 Well LP shall deliver to Payson Petroleum the duly executed 3 Well LP Subject Claims Assignment and Participation Agreement.

3.07     Delivery by 2014 LP to Payson Petroleum.  On the Closing Date, 2014 LP shall deliver to Payson Petroleum a duly executed 2014 LP Subject Claims Assignment and Participation Agreement.

3.08     Delivery by Payson Petroleum to 3 Well LP.   On the Closing Date, Payson Petroleum shall deliver to 3 Well LP a duly executed 3 Well LP Subject Claims Assignment and Participation Agreement.

3.09     Delivery by Payson Petroleum to 2014 LP.  On the Closing Date, Payson Petroleum shall deliver to 2014 LP a duly executed 2014 LP Subject Claims Assignment and Participation Agreement.

# ARTICLE 4

## Claims Stipulations and Releases

4.01     Allowed Claims of Payson Petroleum.  The Parties stipulate and agree to allowance of (i) a general unsecured claim of Payson Petroleum in the 3 Well LP Bankruptcy Case in the amount of $8,557,888.50, and (ii) a general unsecured claim of Payson Petroleum in the 2014 LP Bankruptcy Case in the amount of $2,671,900.50.

4.02     Allowed Claim of 3 Well LP.  The Parties stipulate and agree to allowance of a general unsecured claim of 3 Well LP in the Maricopa Bankruptcy Case in an amount equal to 27.78916% of the Subject Wells Net Proceeds actually disbursed to Maricopa pursuant to this Agreement.

4.03     Allowed Claim of 2014 LP.  The Parties stipulate and agree to allowance of a general unsecured claim of 2014 LP in the Maricopa Bankruptcy Case in an amount equal to 72.21084% of the Subject Wells Net Proceeds actually disbursed to Maricopa pursuant to this Agreement.

4.04    Release by 2014 LP and 3 Well LP.  Effective as of the Closing Date, 2014 LP and 3 Well LP (except for the 2014 LP and 3 Well LP Retained Claims as defined in this section) hereby release, waive, and discharge Payson Petroleum, Payson Operating, Maricopa, the Operator and the bankruptcy estates of Payson Petroleum, Payson Operating and Maricopa, from and against any and all liabilities, claims, rights, debts, causes of action, suits, matters, issues, damages, costs, injuries and demands whatsoever, whether at law or in equity, whether by contract or tort, at law or under any statute, known or unknown, discovered or undiscovered, accrued or unaccrued, liquidated or non-liquidated, contingent or absolute, which 2014 LP and/or 3 Well LP ever had or now has, or may hereafter have, either directly or indirectly, individually, representatively, derivatively, by virtue of subrogation, or by virtue of any action, inaction, matter, event, representation or circumstances, transactions or occurrences prior to the Closing Date ("2014 LP and 3 Well LP Released Claims").  Notwithstanding the foregoing, the release provided for in this section does not extend to or include (i) allowed unsecured claims set forth in Sections 4.02 and 4.03, and (ii) the contractual obligations of Payson Petroleum, Payson Operating and Maricopa pursuant to this Agreement and the Settlement Transaction Documents ("2014 LP and 3 Well LP Retained Claims").

4.05    Release by Payson Petroleum, Payson Operating and Maricopa.  Effective as of the Closing Date, Payson Petroleum, Payson Operating and Maricopa (except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims as defined in this section), hereby release, waive, and discharge 2014 LP and 3 Well LP and the bankruptcy estates of 2014 LP and 3 Well LP, from and against any and all liabilities, claims, rights, debts, causes of action, suits, matters, issues, damages, costs, injuries and demands whatsoever, whether at law or in equity, whether by contract or tort, at law or under any statute, known or unknown, discovered or undiscovered, accrued or unaccrued, liquidated or non-liquidated, contingent or absolute, which Payson Petroleum, Payson Operating and/or Maricopa ever had or now has, or may hereafter have, by virtue of any action, inaction, matter, event, representation or circumstances, transactions or occurrences prior to the Closing Date.  Notwithstanding the foregoing, the release provided for in this section does not extend to or include (i) allowed unsecured claims set forth in Section 4.01, and (ii) the contractual obligations of 2014 LP and 3 Well LP pursuant to this Agreement and the Settlement Transaction Documents, (iii) claims and causes of action against any general partner or limited partner of 2014 LP or 3 Well LP, (iv) the Payson/3 Well LP Partnership Related Claims (as that term is defined in the 3 Well LP Subject Claims Assignment and Participation Agreement), (v) the Payson/2014 LP Partnership Related Claims (as that term is defined in the 2014 LP Subject Claims Assignment and Participation Agreement), and (vi) all rights with respect to all of the above, including as to third parties ("Payson Petroleum, Payson Operating and Maricopa Retained Claims").

## ARTICLE 5

## Operation of Subject Wells

5.01    Operator.  Traton Operating Company (an affiliate of Traton Engineering Associates, L.P.) ("Traton") shall serve as contract operator of the Subject Wells in accordance with the terms of the Operating Agreement until such time as Traton either resigns as Operator or

is removed as Operator by the unanimous decision of Maricopa, 2014 LP and 3 Well LP. Effective as of the Closing Date, 2014 LP and 3 Well LP ratify and agree to be bound by the terms of the Operating Agreement.

5.02    Operation Standards.  The Parties agree that Operator shall not be liable for any act or omission taken or omitted to be taken in its capacity as Operator of the Subject Wells, other than acts or omissions resulting from Operator's willful misconduct, gross negligence, or fraud.  The Operator may, in connection with the performance of its operation of the Subject Wells, and in its sole absolute discretion, consult with Payson Operating and/or Payson Operating's attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Operator shall be under no obligation to consult with Payson Operating and/or Payson Operating's the attorneys, accountants, or agents, and its determination to not do so shall not result in imposition of liability on the Operator unless such determination is based on willful misconduct, gross negligence, or fraud.  The bankruptcy estates of Maricopa, 3 Well LP, and 2014 LP shall, JOINTLY AND SEVERALLY, indemnify and hold harmless the Operator and his or her agents, representatives, professionals, and employees ("Operator Group") from and against and in respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to attorneys' fees and costs arising out of or due to Operator Group's actions or omissions, or consequences of such actions or omissions, with respect to the operation of the Subject Wells, irrespective of cause or negligence; provided, however, that no such indemnification will be made to the Operator Group for such actions or omissions as a result of willful misconduct, gross negligence, or fraud.

# ARTICLE 6

## Subject Wells Net Proceeds

6.01    Establishment of Accounts.  Within ten (10) Business Days following the Closing Date, Maricopa shall establish the Subject Wells Account.

6.02    Deposits into Subject Wells Account.  Except to the extent otherwise ordered by the Bankruptcy Court, Maricopa shall deposit into the Subject Wells Account (i) the gross proceeds which it receives from the sale of Hydrocarbons produced from the Subject Wells, and (ii) the Subject Wells Net Sales Proceeds.

6.03    Operating Costs.  Maricopa shall satisfy Subject Wells Operating Costs out of funds deposited in the Subject Wells Account.

6.04    Disbursement of Subject Wells Net Proceeds.  Unless otherwise ordered by the Bankruptcy Court, within forty-five (45) days of the end of each calendar quarter, the Subject Wells Net Proceeds on deposit in the Subject Wells Account shall be disbursed as follows:

(a)    55% to Maricopa;
(b)    32.4945% to 2014 LP; and

10

(c)     12.5055% to 3 Well LP.

6.05    <u>Accounting and Reporting</u>.  Within thirty (30) days of the end of each calendar month, the Operator shall provide the Parties with a report itemizing (i) Subject Wells Operating Costs and proceeds received by Maricopa from the sale of the Subject Wells Hydrocarbons, and, (ii) Marketing Expenses and, if applicable, the proceeds from the sale of the Subject Wells.

## ARTICLE 7

## <u>Marketing and Sales of Subject Wells</u>

7.01    <u>Covenant to Market and Sell Subject Wells</u>.  Maricopa will exert good faith commercially reasonable efforts to market and sell the Subject Wells.

7.02    <u>Information</u>.  Maricopa will promptly provide a copy of any offer it receives to purchase the Subject Wells to 2014 LP and 3 Well LP.

7.03    <u>Section 363 Sale</u>.  The Subject Wells will be sold by Maricopa under 11 U.S.C. § 363 pursuant to orders entered in the Bankruptcy Cases.

## ARTICLE 8

## <u>Representations and Warranties</u>

8.01    <u>Review and Approval</u>.  Each Party represents to the other Party that its representatives have reviewed this Agreement together with all exhibits and they (i) understand fully the terms of this Agreement and the consequences of the issuance thereof, (ii) have been afforded an opportunity to have this Agreement reviewed by legal counsel, and (iii) have entered into this Agreement of their own free will and accord and without threat or duress.

8.02    <u>Authority</u>.  Each Party represents to the other Party that (i) the undersigned representative is fully authorized to execute this Agreement on its behalf, and (ii) upon entry of the Settlement Approval Orders, will have full authority to consummate the transactions provided for herein.

8.03    <u>Disclaimer.</u>  Each Party represents and warrants to the other Party that in executing and entering into this Agreement, it is not relying and has not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Agreement.  Each Party understands and expressly assumes the risk that any fact not recited, contained or embodied herein or therein may turn out hereafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true.

# ARTICLE 9

## Miscellaneous

     9.01    <u>Entire Agreement</u>.  This Agreement, including all exhibits attached hereto and made a part hereof, constitute the entire agreement between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties with respect to such transactions.

     9.02    <u>Survival</u>.  All representations, warranties, covenants and agreements of the Parties made in this Agreement shall survive the execution and delivery of this Agreement until such time as all of the obligations of the signatories to such document shall have lapsed in accordance with their respective terms or shall have been discharged in full.

     9.03    <u>Waiver</u>.  No waiver by a Party of any of the provisions of this Agreement (a) shall be binding unless executed in writing by such party, (b) shall be deemed or shall constitute a waiver by such party of any other provision hereof (whether or not similar), and (c) shall not constitute a continuing waiver by such party.

     9.04    <u>Further Assurances</u>.  The Parties will take such actions and execute and deliver such other documents or agreements as may be necessary or desirable for the implementation of this Agreement and the consummation of the transactions contemplated hereby.

     9.05    <u>Notices</u>.  Any notice, request, consent, approval, waiver or other communication provided or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by U.S. mail, overnight courier, electronic mail or fax to the appropriate addresses set forth below.  Any such communication shall be effective upon actual receipt; provided, however, that in the case of delivery by fax after the normal business hours of the recipient, such communication shall be effective on the next business day following the transmission of such fax. For purposes of notice, the addresses of the Parties shall be as follows:

     If to Payson Petroleum, Payson Operating or Maricopa:

          Jason R. Searcy
          Searcy & Searcy, P.C.
          446 Forest Square
          Longview, Texas  75605
          Fax:  903.757.3399
          Email:  jsearcy@jsearcylaw.com

with a copy to:

Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX  77019
Fax:  713.335.4848
Email:  blakehamm@snowspencelaw.com

If to 3 Well LP or 2014 LP:

Christopher J. Moser
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Ste. 1800
Dallas, TX  75201
Fax:  214.871.2111
Email:  cmoser@qslwm.com

with a copy to:

Keith W. Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road, Ste. 280
Dallas, TX  75231
Fax:  972.241.3970
Email:  harvey@keithharveylaw.com

Each Party shall have the right, upon giving ten (10) days' prior notice to the other party in the manner provided in this section, to change its address for purposes of notice.

9.06    Governing Law and Venue.  This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, notwithstanding any applicable conflict of laws provision.  Any dispute regarding this Agreement shall be subject to mandatory venue in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

9.07    Multiple Counterparts.  The Parties agree that facsimile and electronic signatures shall have the same force and effect as original signatures.  This Agreement may be executed in counterparts and all counterparts so executed shall constitute one agreement which shall be binding on the Parties hereto.

9.08    Modification.  This Agreement cannot be altered, changed or modified except in writing executed by a duly authorized representative for each of the Parties.

9.09    Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions

13

of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner with respect to any Party.  Upon determination of a court of competent jurisdiction that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the Parties as closely as possible.  The obligations of the Parties hereunder are severable and not joint.

9.10   Costs and Attorneys' Fees.  If either Party retains an attorney in connection with any breach of this Agreement, the prevailing party is entitled to collect its reasonable costs and expenses incurred in any such suit or proceeding, including reasonable attorneys' fees.

*[Signature Pages Follow]*

**PAYSON PETROLEUM, INC.**

By:_____
    Jason R. Searcy, Chapter 11 Trustee


**PAYSON OPERATING, LLC**

By:_____
    Jason R. Searcy, Chapter 11 Trustee


**MARICOPA RESOURCES, LLC**

By:_____
    Jason R. Searcy, Chapter 11 Trustee


**PAYSON PETROLEUM 3 WELL, L.P.**


By:_____
    Christopher J. Moser, Chapter 7 Trustee


**PAYSON PETROLEUM 3 WELL 2014, L.P.**


By:_____
    Christopher J. Moser, Chapter 7 Trustee

**PAYSON PETROLEUM, INC.**

By:_____
       Jason R. Searcy, Chapter 11 Trustee


**PAYSON OPERATING, LLC**

By:_____
       Jason R. Searcy, Chapter 11 Trustee


**MARICOPA RESOURCES, LLC**

By:_____
       Jason R. Searcy, Chapter 11 Trustee


**PAYSON PETROLEUM 3 WELL, L.P.**

By:_____
       Christopher J. Moser, Chapter 7 Trustee


**PAYSON PETROLEUM 3 WELL 2014, L.P.**

By:_____
       Christopher J. Moser, Chapter 7 Trustee


15

STATE OF TEXAS       §
                                §

COUNTY OF GREGG    §

        BEFORE ME, the undersigned authority, on this _20th_ day of _September_ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON PETROLEUM, INC.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.



                               Notary Public in and for State of Texas
                               My Commission Expires: _04-14-2021_

STATE OF TEXAS       §
                                §

COUNTY OF GREGG    §

        BEFORE ME, the undersigned authority, on this _20th_ day of _September_ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON OPERATING, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.



                               Notary Public in and for State of Texas
                               My Commission Expires: _04-14-2021_

STATE OF TEXAS       §
                                §

COUNTY OF GREGG    §

        BEFORE ME, the undersigned authority, on this _20th_ day of _September_ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **MARICOPA RESOURCES, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.



                               Notary Public in and for State of Texas
                               My Commission Expires: _04-14-2021_

STATE OF TEXAS     §
                           §

COUNTY OF Dallas     §

BEFORE ME, the undersigned authority, on this 20th day of September 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.



Nita Chancellor
Notary Public in and for State of Texas
My Commission Expires: 1-9-2019

STATE OF TEXAS     §
                           §

COUNTY OF Dallas     §

BEFORE ME, the undersigned authority, on this 20th day of September 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL 2014, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Nita Chancellor
Notary Public in and for State of Texas
My Commission Expires: 1-9-2019

## EXHIBIT LIST

Exhibit 1      2014 LP Subject Claims Assignment and Participation Agreement
Exhibit 2      3 Well LP Subject Claims Assignment and Participation Agreement
Exhibit 3      Agreed Final Judgment
Exhibit 4      Joint Motion for Entry of Agreed Final Judgment
Exhibit 5      Contract Operating Services Agreement
Exhibit 6      Settlement Approval Order
Exhibit 7      Settlement Motions
Exhibit 8      Subject Wells Assignments

# EXHIBIT 1 TO SETTLEMENT AGREEMENT

# 2014 LP SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT

# SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT
## (2014 LP)

This Subject Claims Assignment and Participation Agreement (the "<u>Agreement</u>") is entered into as of _____, 2017 by and between Payson Petroleum, Inc. ("<u>Payson Petroleum</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>"), referred to individually herein as a "<u>Party</u>" and collectively as, the "<u>Parties</u>."

## R E C I T A L S

**WHEREAS**, Christopher J. Moser is the duly appointed Chapter 7 Trustee in the 2014 LP Bankruptcy Case (defined below).

**WHEREAS**, Jason R. Searcy is the duly appointed Chapter 11 Trustee in the Payson Petroleum Bankruptcy Case (defined below).

**WHEREAS**, 2014 LP and Payson Petroleum are parties to the Settlement Agreement (defined below) which provides for entry into this Agreement.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the Parties hereby agree as follows:

## ARTICLE 1

## Definitions

1.01    <u>Defined Terms</u>.  The following terms, as used in this Agreement, shall have the meanings indicated below, unless the context otherwise requires:

"<u>**2014 LP**</u>" means Payson Petroleum 3 Well 2014, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well 2014, L.P. and the Payson Petroleum 3 Well 2014, L.P. bankruptcy estate.

"<u>**2014 LP Avoidance Action Claims**</u>" means all claims and causes of action of 2014 LP arising under Chapter 5 of the Bankruptcy Code.

"<u>**2014 LP Avoidance Action Claims Net Recovery**</u>" means any Net Recovery for or on account of the 2014 LP Avoidance Action Claims.

"<u>**2014 LP Bankruptcy Case**</u>" means Bankruptcy Case No. 17-40180 styled *In re Payson Petroleum 3 Well 2014, L.P., Debtor,* pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"<u>**2014 LP Participation Interest**</u>" means an undivided fifty percent (50%) interest.

"<u>**2014 LP Partnership Related Claims**</u>" means all rights, claims, causes of action and

rights of contribution of 2014 LP (independent of <u>Section 2.02</u> of this Agreement) against any current or former general partner or limited partner of 2014 LP, including but not limited to claims under 11 U.S.C. § 723.

**"2014 LP Partnership Related Claims Net Recovery"** means any Net Recovery for or on account of the 2014 LP Partnership Related Claims.

**"Bankruptcy Code"** means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

**"Net Recovery"** means the Recovery net of all expenses and fees (including Special Counsel fees) incurred in connection with investigation, prosecution and collection of the Subject Claims.

**"Payson/2014 LP Partnership Related Claims"** means all rights, claims and causes of action of Payson Petroleum (independent of <u>Section 2.01</u> of this Agreement) against any current or former general partner or limited partner of 2014 LP.

**"Payson/2014 LP Partnership Related Claims Net Recovery"** means the Net Recovery for and on account of the Payson/2014 LP Partnership Related Claims.

**"Payson Petroleum"** means Payson Petroleum, Inc., Jason Searcy in his capacity of Chapter 11 trustee of Payson Petroleum, Inc. and the Payson Petroleum, Inc. bankruptcy estate.

**"Payson Petroleum Bankruptcy Case"** means Bankruptcy Case No. 16-41044 styled *In re Payson Petroleum, Inc., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

**"Payson Petroleum Participation Interest"** means an undivided fifty percent (50%) interest.

**"Recovery"** means (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Parties for or on account of or in satisfaction or partial satisfaction thereof with respect to the Subject Claims.

**"Settlement Agreement"** means the Settlement Agreement entered into as of September ___, 2017 by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee for the Searcy Bankruptcy Cases, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee for the Moser Bankruptcy Cases.

**"Settlement Approval Order"** has the meaning defined in the Settlement Agreement.

**"Special Counsel"** means Snow Spence Green LLP.

**"Special Counsel Engagement Agreements"** means (i) the August 15, 2016 Engagement Letter Agreement by and between Snow Spence Green LLP and Jason R. Searcy, Chapter 11

Trustee of Payson Petroleum, Inc., Maricopa Resources, LLC and Payson Operating, LLC, (ii) the Engagement Letter Agreement between 2014 LP, 3 Well LP, Payson Petroleum and Snow Spence Green LLP substantially in the form of **Exhibit 1**, and (iii) the Engagement Letter Agreement between 2014 LP, Payson Petroleum and Snow Spence Green LLP in the form of **Exhibit 2**.

**"Subject Claims"** means all 2014 LP Avoidance Action Claims, all 2014 LP Partnership Related Claims and all Payson/2014 LP Partnership Related Claims.

1.02    Amendment of Defined Instruments.    Unless the context otherwise requires or unless otherwise provided herein, the terms defined in this Agreement which refer to a particular agreement, instrument or document also refer to and include all renewals, extensions, modifications, amendments and restatements of such agreement, instrument or document.  Nothing contained in this Agreement will be construed to authorize any renewal, extension, modification, amendment or restatement of this Agreement or any agreement, instrument or document referred to herein.

1.03    References and Titles.    All references in this Agreement to Exhibits, Articles, Sections, subsections and other subdivisions refer to the Exhibits, Articles, Sections, subsections and other subdivisions of this Agreement unless expressly provided otherwise.  Titles appearing at the beginning of any subdivisions are for convenience only, do not constitute any part of those subdivisions and will be disregarded in construing the language contained in those subdivisions.  The words "this Agreement," "this instrument," "herein," "hereof," "hereby," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.  The phrases "this section" and "this subsection" and similar phrases refer only to the sections or subsections of this Agreement in which those phrases occur.  The word "or" is not exclusive; the word "including" (in its various forms) means "including without limitation."  Pronouns in masculine, feminine and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires.  The word "will" shall be construed to have the same meaning and effect as the word "shall."  Unless the context requires otherwise (a) any reference herein to any law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time; (b) any reference herein to any person shall be construed to include such person's successors and assigns (subject to the restrictions contained herein); (c) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including;" and (d) all dollar amounts refer to United States dollars.  A reference herein to a number of "days" will be intended to refer to that number of calendar (as opposed to working) days, unless otherwise specifically provided.  No provision of this Agreement shall be interpreted or construed more strictly against any person solely because such person or its legal representative drafted such provision.

**ARTICLE 2**

**Assignment**

2.01    Assignment by 2014 LP of Participation Interest.    2014 LP hereby absolutely and unconditionally sells, transfers and assigns to Payson Petroleum, the Payson Petroleum Participation Interest in (i) the 2014 LP Avoidance Action Claims Net Recovery, and (ii) the 2014

3

LP Partnership Related Claims Net Recovery.

2.02    Assignment by Payson Petroleum of Participation Interest.  Payson Petroleum hereby absolutely and unconditionally sells, transfers and assigns to 2014 LP, the 2014 LP Participation Interest in the Payson/2014 LP Partnership Related Claims Net Recovery.

## ARTICLE 3

## Preservation, Prosecution and Authority

3.01    Preservation.  2014 LP retains all 2014 LP Avoidance Action Claims and all 2014 LP Partnership Related Claims subject to the Payson Petroleum Participation Interest and Payson Petroleum's rights hereunder.  Upon entry of the Settlement Approval Order in the 2014 LP Bankruptcy Case and execution of this Agreement, Payson Petroleum is vested with and may enforce and prosecute (or determine to do any of the foregoing) the 2014 LP Avoidance Action Claims and 2014 LP Partnership Related Claims without further order of the Bankruptcy Court. Payson Petroleum's right to commence, prosecute or settle 2014 LP Avoidance Action Claims and 2014 LP Partnership Related Claims shall be preserved.  No preclusion doctrine, including the doctrines of res judicata; collateral estoppel, issue preclusion, claim preclusion, estoppel shall apply to the 2014 LP Avoidance Action Claims or 2014 LP Partnership Related Claims by virtue of entry into this Agreement. Payson Petroleum in connection with the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims shall constitute the representative of the 2014 LP bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims.

3.02    Standing.  The Parties stipulate and agree that Payson Petroleum shall have standing to assert and prosecute on behalf of 2014 LP all 2014 LP Avoidance Action Claims and all 2014 LP Partnership Related Claims.

3.03    Authority.    Subject to Section 6.01, Payson Petroleum shall have exclusive authority with respect to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  The exclusive authority of Payson Petroleum includes investigation, management and settlement of all litigation related to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.

## ARTICLE 4

## Special Counsel

4.01    Engagement of Counsel.  Snow Spence Green LLP is engaged pursuant to the Special Counsel Engagement Agreement, dated August 15, 2016 (approved by Bankruptcy Court order dated September 19, 2016), to investigate and prosecute the Payson/3Well LP Partnership Related Claims.

4.02    Engagement Agreement.  Snow Spence Green LLP (subject to Bankruptcy Court approval) is engaged to investigate and prosecute the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims pursuant to the terms of the Special Counsel Engagement Agreement attached as **Exhibit 2**.  2014 LP shall cause an order approving the engagement of Snow Spence Green LLP and the Special Counsel Engagement Agreement, attached as **Exhibit 2**, to be entered in the 2014 LP Bankruptcy Case.

## ARTICLE 5

### Application of Recoveries

5.01    Fees and Expenses.  Any Recovery shall be applied first, to satisfy fees pursuant to the Special Counsel Engagement Agreements and, second, to expenses incurred by Special Counsel and Payson Petroleum in connection with investigation, prosecution and collection of the Subject Claims.

5.02    Disbursement of Net Recoveries.  Payson Petroleum is hereby assigned and shall receive the Payson Petroleum Participation Interest in all (i) 2014 LP Partnership Related Claims Net Recoveries, (ii) 2014 LP Avoidance Action Claims Net Recoveries, and (iii) Payson/2014 LP Partnership Related Claims Net Recoveries.  2014 LP is hereby assigned and shall receive the 2014 LP Participation Interest in all (x) 2014 LP Partnership Related Claims Net Recoveries, (y) 2014 LP Avoidance Action Claims Net Recoveries, and (z) Payson/2014 LP Partnership Related Claims Net Recoveries.

## ARTICLE 6

### Miscellaneous

6.01    Settlement.  Any settlement of a Subject Claim is subject to Bankruptcy Court approval.

6.02    Discretion.  Payson Petroleum shall determine in its sole discretion the Subject Claims to investigate and prosecute.  Subsequent to October 1, 2018, Payson Petroleum shall, upon the written request of 2014 LP, release from this Agreement and assign back to 2014 LP any 2014 LP Partnership Related Claim or 2014 LP Avoidance Action Claim which Payson Petroleum which it has determined that it will not prosecute.

6.03    Indemnification.    2014 LP hereby indemnifies and holds harmless Payson Petroleum and its agents, representatives, professionals and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to its actions or omissions, or consequences of such actions or omissions, with respect to Payson Petroleum's investigation, management, prosecution or settlement of the Subject Claims; provided, however, that no such indemnification will be made to Payson Petroleum for actions or omissions resulting from willful misconduct, gross negligence or fraud.

6.04    Entire Agreement.  This Agreement, including all exhibits attached hereto and

made a part hereof, constitute the entire agreement between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties with respect to such transactions.

6.05    Survival.  All representations, warranties, covenants and agreements of the Parties made in this Agreement shall survive the execution and delivery of this Agreement until such time as all of the obligations of the signatories to such document shall have lapsed in accordance with their respective terms or shall have been discharged in full.

6.06    Waiver.  No waiver by a Party of any of the provisions of this Agreement (a) shall be binding unless executed in writing by such Party, (b) shall be deemed or shall constitute a waiver by such Party of any other provision hereof (whether or not similar), and (c) shall not constitute a continuing waiver by such Party.

6.07    Further Assurances.  The Parties will take such actions and execute and deliver such other documents or agreements as may be necessary or desirable for the implementation of this Agreement and the consummation of the transactions contemplated hereby.

6.08    Notices.  Any notice, request, consent, approval, waiver or other communication provided or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by U.S. mail, overnight courier, electronic mail or fax to the appropriate addresses set forth below.  Any such communication shall be effective upon actual receipt; provided, however, that in the case of delivery by fax after the normal business hours of the recipient, such communication shall be effective on the next business day following the transmission of such fax. For purposes of notice, the addresses of the Parties shall be as follows:

If to Payson Petroleum:

Jason R. Searcy
Searcy & Searcy, P.C.
446 Forest Square
Longview, Texas  75605
Fax:  903.757.3399
Email:  jsearcy@jsearcylaw.com

with a copy to:

Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX  77019
Fax:  713.335.4848
Email:  blakehamm@snowspencelaw.com

If to 2014 LP:

Christopher J. Moser
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Ste. 1800
Dallas, TX 75201
Fax: 214.871.2111
Email: cmoser@qslwm.com

with a copy to:

Keith W. Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road, Ste. 280
Dallas, TX 75231
Fax: 972.241.3970
Email: harvey@keithharveylaw.com

Each Party shall have the right, upon giving ten (10) days' prior notice to the other party in the manner provided in this section, to change its address for purposes of notice.

6.09    Governing Law and Venue.  This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, notwithstanding any applicable conflict of laws provision.  Any dispute regarding this Agreement shall be subject to mandatory venue in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

6.10    Multiple Counterparts.  The Parties agree that facsimile and electronic signatures shall have the same force and effect as original signatures.  This Agreement may be executed in counterparts and all counterparts so executed shall constitute one agreement which shall be binding on the Parties hereto.

6.11    Modification.  This Agreement cannot be altered, changed or modified except in writing executed by a duly authorized representative for each of the Parties.

6.12    Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner with respect to any Party.  Upon determination of a court of competent jurisdiction that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the Parties as closely as possible.  The obligations of the Parties hereunder are severable and not joint.

6.13    Costs and Attorneys' Fees.  If either Party retains an attorney in connection with any default or to collect, enforce, or defend this Agreement in any lawsuit, reorganization, bankruptcy or other proceeding, the prevailing party is entitled to collect its reasonable costs and expenses incurred in any such suit or proceeding, including reasonable attorneys' fees.

*[Signature Pages Follow]*

**PAYSON PETROLEUM, INC.**


By:_____
       **Jason R. Searcy, Chapter 11 Trustee**


**PAYSON PETROLEUM 3 WELL 2014, L.P.**


By:_____
       **Christopher J. Moser, Chapter 7 Trustee**

STATE OF TEXAS       §
      §
COUNTY OF GREGG       §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON PETROLEUM, INC.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

STATE OF TEXAS       §
      §
COUNTY OF _____       §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 2014, L.P.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\EX 1 2014 LP_SubjectClaimsAssignParticipationAgmt.docx

10



**SNOW SPENCE GREEN LLP**

<div style="text-align:right">

EXHIBIT

**1**

</div>

_____, 2017

VIA EMAIL:  cmoser@qslwm.com            VIA EMAIL:  jsearcy@jsearcylaw.com

Mr. Christopher J. Moser                               Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.   Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800                          446 Forest Square
Dallas, TX  75201                                     Longview, TX  75605

Re:     **Proposed Engagement Agreement**

**Bankruptcy Case No. 17-40179;** *In re Payson Petroleum 3 Well, L.P.* **in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")**

Mr. Moser and Mr. Searcy:

This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well, L.P. ("3 Well LP" or "Debtor").  This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval.  Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

**Description of Engagement**.  The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 3 Well LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 3 Well LP.  The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

a.      3 Well LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

b.      3 Well LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 3 Well LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

c.      objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

_____, 2017

Page 2

(collectively, the "Subject Matters").  Claims, causes of action and/or objections with respect to a specific party are referred to as a "Specific Subject Matter").  SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful.  As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 3 Well LP (the "3 Well LP Trustee") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 3 Well LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 3 Well LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 3 Well LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters.  Client and the 3 Well LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

**Legal Fees.**  The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below.  The fees to be paid to SSG will be a percentage of the "Recovery" (as defined below) realized with respect to each Specific Subject Matter.  The Client and the 3 Well LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter. The agreed upon percentages and benchmarks are set forth below:

_____, 2017

Page 3

| Fees as a Percent of Recovery | Benchmark Event |
|---|---|
| 33% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter. |
| 35% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter. |
| 40% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order. |

The Client and the 3 Well LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 3 Well LP Trustee.

The term "Recovery" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 3 Well LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed. The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit. For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed. If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 3 Well LP with respect to the subject creditor which is released or disallowed. For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim. For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 3 Well LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.** Client and the 3 Well LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary. Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses. Such third party fees and expenses will be billed directly to Client. Client will be responsible for paying fees and expenses of third parties. In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

_____, 2017

Page 4

Client and the 3 Well LP Trustee further acknowledge that SSG will incur various expenses in providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG. Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be reimbursed by Client solely out of Recoveries.

**Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and the 3 Well LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received by Client and the 3 Well LP Trustee will be conveyed to SSG for notice purposes only.

**No settlement of any nature shall be made for the Subject Matters without the approval of Client and the United States Bankruptcy Court.** Client acknowledges that all communications from adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG, as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

**Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC* (Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well 2014, L.P.* (Bankruptcy Case No. 17-40180). While SSG does not anticipate that its prior and/or current representation of Client will adversely affect Client's or 3 Well LP Trustee's interests in the Subject Matters, applicable rules of professional conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject Matters. Client acknowledges his express and informed consent to SSG's representation of Client with respect to the Subject Matters as well as SSG's continuing representation of Client in other matters, including related matters. 3 Well LP Trustee acknowledges that he is aware that SSG represents Client in other matters, including the above-referenced related matters, and waives any conflict relating thereto.

If a controversy arises between you and any other client of SSG, SSG, after taking into account the applicable rules of professional ethics, may decline to represent you or such other client or both you and such other client. Following the conclusion of our representation of you in this matter, SSG reserves the right to represent other future clients on unrelated matters which may be adverse to your interests.

**Withdrawal/Termination of Representation.** Our representation may be terminated prior to the conclusion of the Subject Matters covered under this engagement letter by written notice to the other party. SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

**Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if appropriate), it is Client's and the 3 Well LP Trustee's obligation to advise us as to which, if any, documents

_____, 2017

Page 5

in our files they wish SSG to return. SSG may keep copies thereof for our records to the extent we believe advisable. SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter. THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

**Email Communications.** To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail. The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents. We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form. The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties. Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

**Approval of Terms of Engagement.** If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature. A copy of this agreement should be retained for your files.

**Bankruptcy Court Approval. The parties acknowledge that the Bankruptcy Court must approve this agreement.**

Regards,

SNOW SPENCE GREEN LLP

By:_____
    Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:

By: _____
    Christopher J. Moser
    Chapter 7 Trustee for Payson Petroleum 3 Well, L.P.

By: _____
    Jason R. Searcy
    Chapter 11 Trustee for Payson Petroleum, Inc.

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 1 to EX 1-3 Well LP Engagement Agreement.docx





**SNOW SPENCE GREEN LLP**

_____, 2017

VIA EMAIL:  cmoser@qslwm.com          VIA EMAIL:  jsearcy@jsearcylaw.com

Mr. Christopher J. Moser                        Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.    Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800                   446 Forest Square
Dallas, TX  75201                              Longview, TX  75605

Re:      Proposed Engagement Agreement

Bankruptcy Case No. 17-40180; *In re Payson Petroleum 3 Well 2014, L.P.* in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")

Mr. Moser and Mr. Searcy:

This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well 2014, L.P. ("2014 LP" or "Debtor").  This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval.  Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

**Description of Engagement**.  The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 2014 LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 2014 LP.  The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

a.      2014 LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

b.      2014 LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 2014 LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

c.      objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

_____, 2017

Page 2

(collectively, the "<u>Subject Matters</u>"). Claims, causes of action and/or objections with respect to a specific party are referred to as a "<u>Specific Subject Matter</u>"). SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful. As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 2014 LP (the "<u>2014 LP Trustee</u>") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 2014 LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 2014 LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 2014 LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters. Client and the 2014 LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

<u>Legal Fees.</u> The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below. The fees to be paid to SSG will be a percentage of the "<u>Recovery</u>" (as defined below) realized with respect to each Specific Subject Matter. The Client and the 2014 LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter. The agreed upon percentages and benchmarks are set forth below:

_____, 2017
Page 3

|  Fees as a<br>Percent of<br><u>Recovery</u> | <u>Benchmark Event</u> |
|---|---|

33%    Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter.

35%    Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter.

40%    Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order.

The Client and the 2014 LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 2014 LP Trustee.

The term "<u>Recovery</u>" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 2014 LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed.  The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit.  For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed.  If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 2014 LP with respect to the subject creditor which is released or disallowed.  For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim.  For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 2014 LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.**  Client and the 2014 LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary.  Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses.  Such third party fees and expenses will be billed directly to Client.  Client will be responsible for paying fees and expenses of third parties.  In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

Client and the 2014 LP Trustee further acknowledge that SSG will incur various expenses in providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG. Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be reimbursed by Client solely out of Recoveries.

**Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and the 2014 LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received by Client and the 2014 LP Trustee will be conveyed to SSG for notice purposes only.

**No settlement of any nature shall be made for the Subject Matters without the approval of Client and the United States Bankruptcy Court.** Client acknowledges that all communications from adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG, as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

**Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC* (Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well, L.P.* (Bankruptcy Case No. 17-40179). While SSG does not anticipate that its prior and/or current representation of Client will adversely affect Client's or 2014 LP Trustee's interests in the Subject Matters, applicable rules of professional conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject Matters. Client acknowledges his express and informed consent to SSG's representation of Client with respect to the Subject Matters as well as SSG's continuing representation of Client in other matters, including related matters. 2014 LP Trustee acknowledges that he is aware that SSG represents Client in other matters, including the above-referenced related matters, and waives any conflict relating thereto.

If a controversy arises between you and any other client of SSG, SSG, after taking into account the applicable rules of professional ethics, may decline to represent you or such other client or both you and such other client. Following the conclusion of our representation of you in this matter, SSG reserves the right to represent other future clients on unrelated matters which may be adverse to your interests.

**Withdrawal/Termination of Representation.** Our representation may be terminated prior to the conclusion of the Subject Matters covered under this engagement letter by written notice to the other party. SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

**Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if appropriate), it is Client's and the 2014 LP Trustee's obligation to advise us as to which, if any, documents in our files they wish SSG to return. SSG may keep copies thereof for our records to the extent we believe

_____, 2017

Page 5

advisable.  SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter.  THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

       **Email Communications.**  To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail.  The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents.  We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form.  The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties.  Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

       **Approval of Terms of Engagement.**  If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature.  A copy of this agreement should be retained for your files.

       **Bankruptcy Court Approval.  The parties acknowledge that the Bankruptcy Court must approve this agreement.**

                  Regards,

                  SNOW SPENCE GREEN LLP

                  By:_____
                       Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:

By: _____
      Christopher J. Moser
      Chapter 7 Trustee for Payson Petroleum 3 Well 2014, L.P.

By: _____
      Jason R. Searcy
      Chapter 11 Trustee for Payson Petroleum, Inc.

# EXHIBIT 2 TO SETTLEMENT AGREEMENT

# 3 WELL LP SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT

### SUBJECT CLAIMS ASSIGNMENT AND PARTICIPATION AGREEMENT
(3 Well LP)

This Subject Claims Assignment and Participation Agreement (the "<u>Agreement</u>") is entered into as of _____, 2017 by and between Payson Petroleum, Inc. ("<u>Payson Petroleum</u>") and Payson Petroleum 3 Well, L.P. ("<u>3 Well LP</u>"), referred to individually herein as a "<u>Party</u>" and collectively as, the "<u>Parties</u>."

### R E C I T A L S

**WHEREAS**, Christopher J. Moser is the duly appointed Chapter 7 Trustee in the 3 Well LP Bankruptcy Case (defined below).

**WHEREAS**, Jason R. Searcy is the duly appointed Chapter 11 Trustee in the Payson Petroleum Bankruptcy Case (defined below).

**WHEREAS**, 3 Well LP and Payson Petroleum are parties to the Settlement Agreement (defined below) which provides for entry into this Agreement.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the Parties hereby agree as follows:

### ARTICLE 1

### Definitions

1.01   <u>Defined Terms</u>.  The following terms, as used in this Agreement, shall have the meanings indicated below, unless the context otherwise requires:

"**3 Well LP**" means Payson Petroleum 3 Well, L.P., Christopher J. Moser in his capacity of Chapter 7 trustee of Payson Petroleum 3 Well, L.P. and the Payson Petroleum 3 Well L.P. bankruptcy estate.

"**3 Well LP Avoidance Action Claims**" means all claims and causes of action of 3 Well LP arising under Chapter 5 of the Bankruptcy Code.

"**3 Well LP Avoidance Action Claims Net Recovery**" means any Net Recovery for or on account of the 3 Well LP Avoidance Action Claims.

"**3 Well LP Bankruptcy Case**" means Bankruptcy Case No. 17-40179 styled *In re Payson Petroleum 3 Well, L.P., Debtor,* pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**3 Well LP Participation Interest**" means an undivided fifty percent (50%) interest.

"**3 Well LP Partnership Related Claims**" means all rights, claims, causes of action and

rights of contribution of 3 Well LP (independent of <u>Section 2.02</u> of this Agreement) against any current or former general partner or limited partner of 3 Well LP, including but not limited to claims under 11 U.S.C. § 723.

**"3 Well LP Partnership Related Claims Net Recovery"** means any Net Recovery for or on account of the 3 Well LP Partnership Related Claims.

**"Bankruptcy Code"** means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

**"Net Recovery"** means the Recovery net of all expenses and fees (including Special Counsel fees) incurred in connection with investigation, prosecution and collection of the Subject Claims.

**"Payson/3 Well LP Partnership Related Claims"** means all rights, claims and causes of action of Payson Petroleum (independent of <u>Section 2.01</u> of this Agreement) against any current or former general partner or limited partner of 3 Well LP.

**"Payson/3 Well LP Partnership Related Claims Net Recovery"** means the Net Recovery for and on account of the Payson/3 Well LP Partnership Related Claims.

**"Payson Petroleum"** means Payson Petroleum, Inc., Jason Searcy in his capacity of Chapter 11 trustee of Payson Petroleum, Inc. and the Payson Petroleum, Inc. bankruptcy estate.

**"Payson Petroleum Bankruptcy Case"** means Bankruptcy Case No. 16-41044 styled *In re Payson Petroleum, Inc., Debtor*, pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

**"Payson Petroleum Participation Interest"** means an undivided fifty percent (50%) interest.

**"Recovery"** means (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Parties for or on account of or in satisfaction or partial satisfaction thereof with respect to the Subject Claims.

**"Settlement Agreement"** means the Settlement Agreement entered into as of August ___, 2017 by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee for the Searcy Bankruptcy Cases, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee for the Moser Bankruptcy Cases.

**"Settlement Approval Order"** has the meaning defined in the Settlement Agreement.

**"Special Counsel"** means Snow Spence Green LLP.

**"Special Counsel Engagement Agreements"** means (i) the August 15, 2016 Engagement

Letter Agreement by and between Snow Spence Green LLP and Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., Maricopa Resources, LLC and Payson Operating, LLC, (ii) the Engagement Letter Agreement between 2014 LP, 3 Well LP, Payson Petroleum and Snow Spence Green LLP substantially in the form of **Exhibit 1**, and (iii) the Engagement Letter Agreement between 2014 LP, Payson Petroleum and Snow Spence Green LLP in the form of **Exhibit 2**.

**"Subject Claims"** means all 3 Well LP Avoidance Action Claims, all 3 Well LP Partnership Related Claims and all Payson/3 Well LP Partnership Related Claims.

1.02 <u>Amendment of Defined Instruments</u>. Unless the context otherwise requires or unless otherwise provided herein, the terms defined in this Agreement which refer to a particular agreement, instrument or document also refer to and include all renewals, extensions, modifications, amendments and restatements of such agreement, instrument or document. Nothing contained in this Agreement will be construed to authorize any renewal, extension, modification, amendment or restatement of this Agreement or any agreement, instrument or document referred to herein.

1.03 <u>References and Titles</u>. All references in this Agreement to Exhibits, Articles, Sections, subsections and other subdivisions refer to the Exhibits, Articles, Sections, subsections and other subdivisions of this Agreement unless expressly provided otherwise. Titles appearing at the beginning of any subdivisions are for convenience only, do not constitute any part of those subdivisions and will be disregarded in construing the language contained in those subdivisions. The words "this Agreement," "this instrument," "herein," "hereof," "hereby," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited. The phrases "this section" and "this subsection" and similar phrases refer only to the sections or subsections of this Agreement in which those phrases occur. The word "or" is not exclusive; the word "including" (in its various forms) means "including without limitation." Pronouns in masculine, feminine and neuter genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires. The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless the context requires otherwise (a) any reference herein to any law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time; (b) any reference herein to any person shall be construed to include such person's successors and assigns (subject to the restrictions contained herein); (c) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including;" and (d) all dollar amounts refer to United States dollars. A reference herein to a number of "days" will be intended to refer to that number of calendar (as opposed to working) days, unless otherwise specifically provided. No provision of this Agreement shall be interpreted or construed more strictly against any person solely because such person or its legal representative drafted such provision.

## ARTICLE 2

## <u>Assignment</u>

2.01 <u>Assignment by 3 Well LP of Participation Interest</u>. 3 Well LP hereby absolutely and unconditionally sells, transfers and assigns to Payson Petroleum, the Payson Petroleum

Participation Interest in (i) the 3 Well LP Avoidance Action Claims Net Recovery, and (ii) the 3 Well LP Partnership Related Claims Net Recovery.

2.02 _Assignment by Payson Petroleum of Participation Interest_. Payson Petroleum hereby absolutely and unconditionally sells, transfers and assigns to 3 Well LP, the 3 Well LP Participation Interest in the Payson/3 Well LP Partnership Related Claims Net Recovery.

## ARTICLE 3

## Preservation, Prosecution and Authority

3.01 _Preservation_. 3 Well LP retains all 3 Well LP Avoidance Action Claims and all 3 Well LP Partnership Related Claims subject to the Payson Petroleum Participation Interest and Payson Petroleum's rights hereunder. Upon entry of the Settlement Approval Order in the 3 Well LP Bankruptcy Case and execution of this Agreement, Payson Petroleum is vested with and may enforce and prosecute (or determine to do any of the foregoing) the 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims without further order of the Bankruptcy Court. Payson Petroleum's right to commence, prosecute or settle 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims shall be preserved. No preclusion doctrine, including the doctrines of res judicata; collateral estoppel, issue preclusion, claim preclusion, estoppel shall apply to the 3 Well LP Avoidance Action Claims or 3 Well LP Partnership Related Claims by virtue of entry into this Agreement. Payson Petroleum in connection with the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims shall constitute the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims.

3.02 _Standing_. The Parties stipulate and agree that Payson Petroleum shall have standing to assert and prosecute on behalf of 3 Well LP all 3 Well LP Avoidance Action Claims and all 3 Well LP Partnership Related Claims.

3.03 _Authority_. Subject to Section 6.01, Payson Petroleum shall have exclusive authority with respect to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3Well LP Partnership Related Claims. The exclusive authority of Payson Petroleum includes investigation, management and settlement of all litigation related to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.

## ARTICLE 4

## Special Counsel

4.01 _Engagement of Counsel_. Snow Spence Green LLP is engaged pursuant to the Special Counsel Engagement Agreement, dated August 15, 2016 (approved by Bankruptcy Court order dated September 19, 2016), to investigate and prosecute the Payson/3Well LP Partnership Related Claims.

4.02    Engagement Agreement.  Snow Spence Green LLP (subject to Bankruptcy Court approval) is engaged to investigate and prosecute the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims pursuant to the terms of the Special Counsel Engagement Agreement attached as **Exhibit 1**.  3 Well LP shall cause an order approving the engagement of Snow Spence Green LLP and the Special Counsel Engagement Agreement, attached as **Exhibit 1**, to be entered in the 3 Well LP Bankruptcy Case.

# ARTICLE 5

## Application of Recoveries

5.01    Fees and Expenses.  Any Recovery shall be applied first, to satisfy fees pursuant to the Special Counsel Engagement Agreements and, second, to expenses incurred by Special Counsel and Payson Petroleum in connection with investigation, prosecution and collection of the Subject Claims.

5.02    Disbursement of Net Recoveries.  Payson Petroleum is hereby assigned and shall receive the Payson Petroleum Participation Interest in all (i) 3 Well LP Partnership Related Claims Net Recoveries, (ii) 3 Well LP Avoidance Action Claims Net Recoveries, and (iii) Payson/3Well LP Partnership Related Claims Net Recoveries.  3 Well LP is hereby assigned and shall receive the 3 Well LP Participation Interest in all (x) 3 Well LP Partnership Related Claims Net Recoveries, (y) 3 Well LP Avoidance Action Claims Net Recoveries, and (z) Payson/3 Well LP Partnership Related Claims Net Recoveries.

# ARTICLE 6

## Miscellaneous

6.01    Settlement.  Any settlement of a Subject Claim is subject to Bankruptcy Court approval.

6.02    Discretion.  Payson Petroleum shall determine in its sole discretion the Subject Claims to investigate and prosecute.  Subsequent to October 1, 2018, Payson Petroleum shall, upon the written request of 3 Well LP, release from this Agreement and assign back to 3 Well LP any 3 Well LP Partnership Related Claim or 3 Well LP Avoidance Action Claim which Payson Petroleum which it has determined that it will not prosecute.

6.03    Indemnification.  3 Well LP hereby indemnifies and holds harmless Payson Petroleum and its agents, representatives, professionals and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to its actions or omissions, or consequences of such actions or omissions, with respect to Payson Petroleum's investigation, management, prosecution or settlement of the Subject Claims; provided, however, that no such indemnification will be made to Payson Petroleum for actions or omissions resulting from willful misconduct, gross negligence or fraud.

6.04    Entire Agreement.  This Agreement, including all exhibits attached hereto and made a part hereof, constitute the entire agreement between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties with respect to such transactions.

6.05    Survival.  All representations, warranties, covenants and agreements of the Parties made in this Agreement shall survive the execution and delivery of this Agreement until such time as all of the obligations of the signatories to such document shall have lapsed in accordance with their respective terms or shall have been discharged in full.

6.06    Waiver.  No waiver by a Party of any of the provisions of this Agreement (a) shall be binding unless executed in writing by such Party, (b) shall be deemed or shall constitute a waiver by such Party of any other provision hereof (whether or not similar), and (c) shall not constitute a continuing waiver by such Party.

6.07    Further Assurances.  The Parties will take such actions and execute and deliver such other documents or agreements as may be necessary or desirable for the implementation of this Agreement and the consummation of the transactions contemplated hereby.

6.08    Notices.  Any notice, request, consent, approval, waiver or other communication provided or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by U.S. mail, overnight courier, electronic mail or fax to the appropriate addresses set forth below.  Any such communication shall be effective upon actual receipt; provided, however, that in the case of delivery by fax after the normal business hours of the recipient, such communication shall be effective on the next business day following the transmission of such fax. For purposes of notice, the addresses of the Parties shall be as follows:

If to Payson Petroleum:

Jason R. Searcy
Searcy & Searcy, P.C.
446 Forest Square
Longview, Texas  75605
Fax:   903.757.3399
Email:  jsearcy@jsearcylaw.com

with a copy to:

Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX  77019
Fax:  713.335.4848
Email:  blakehamm@snowspencelaw.com

If to 3 Well LP:

Christopher J. Moser
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Ste. 1800
Dallas, TX 75201
Fax: 214.871.2111
Email: cmoser@qslwm.com

with a copy to:

Keith W. Harvey
The Harvey Law Firm, P.C.
6510 Abrams Road, Ste. 280
Dallas, TX 75231
Fax: 972.241.3970
Email: harvey@keithharveylaw.com

Each Party shall have the right, upon giving ten (10) days' prior notice to the other party in the manner provided in this section, to change its address for purposes of notice.

6.09    Governing Law and Venue.  This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, notwithstanding any applicable conflict of laws provision.  Any dispute regarding this Agreement shall be subject to mandatory venue in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

6.10    Multiple Counterparts.  The Parties agree that facsimile and electronic signatures shall have the same force and effect as original signatures.  This Agreement may be executed in counterparts and all counterparts so executed shall constitute one agreement which shall be binding on the Parties hereto.

6.11    Modification.  This Agreement cannot be altered, changed or modified except in writing executed by a duly authorized representative for each of the Parties.

6.12    Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic and legal substance of the transactions contemplated hereby is not affected in any adverse manner with respect to any Party.  Upon determination of a court of competent jurisdiction that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to affect the original intent of the Parties as closely as possible.  The obligations of the Parties hereunder are severable and not joint.

6.13    Costs and Attorneys' Fees.  If either Party retains an attorney in connection with any default or to collect, enforce, or defend this Agreement in any lawsuit, reorganization, bankruptcy or other proceeding, the prevailing party is entitled to collect its reasonable costs and expenses incurred in any such suit or proceeding, including reasonable attorneys' fees.

*[Signature Pages Follow]*

**PAYSON PETROLEUM, INC.**


By:_____
    **Jason R. Searcy, Chapter 11 Trustee**


**PAYSON PETROLEUM 3 WELL, L.P.**


By:_____
    **Christopher J. Moser, Chapter 7 Trustee**

STATE OF TEXAS         §
                          §
COUNTY OF GREGG     §

      BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **PAYSON PETROLEUM, INC.,** whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

                              _____
                              Notary Public in and for State of Texas
                              My Commission Expires: _____

STATE OF TEXAS         §
                          §
COUNTY OF _____ §

      BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

                              _____
                              Notary Public in and for State of Texas
                              My Commission Expires: _____

**I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement\Ex 2 3 Well LP Subject Claims Assign-Participation Agmt\20170905 3WellLP_SubjectClaimsAssignParticipationAgmt.docx**





_____, 2017

VIA EMAIL: cmoser@qslwm.com          VIA EMAIL: jsearcy@jsearcylaw.com

Mr. Christopher J. Moser                      Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.   Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800                  446 Forest Square
Dallas, TX 75201                              Longview, TX 75605

Re:     **Proposed Engagement Agreement**

**Bankruptcy Case No. 17-40179;** *In re Payson Petroleum 3 Well, L.P.* **in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")**

Mr. Moser and Mr. Searcy:

This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well, L.P. ("3 Well LP" or "Debtor"). This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval. Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

**Description of Engagement**. The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 3 Well LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 3 Well LP. The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

    a.    3 Well LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

    b.    3 Well LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 3 Well LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

    c.    objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

_____, 2017
Page 2

(collectively, the "Subject Matters"). Claims, causes of action and/or objections with respect to a specific party are referred to as a "Specific Subject Matter"). SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful. As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 3 Well LP (the "3 Well LP Trustee") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 3 Well LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 3 Well LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 3 Well LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters. Client and the 3 Well LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

**Legal Fees.** The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below. The fees to be paid to SSG will be a percentage of the "Recovery" (as defined below) realized with respect to each Specific Subject Matter. The Client and the 3 Well LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter. The agreed upon percentages and benchmarks are set forth below:

_____, 2017
Page 3

| Fees as a Percent of Recovery | Benchmark Event |
|---|---|
| 33% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter. |
| 35% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter. |
| 40% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order. |

The Client and the 3 Well LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 3 Well LP Trustee.

The term "Recovery" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 3 Well LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed. The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit. For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed. If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 3 Well LP with respect to the subject creditor which is released or disallowed. For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim. For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 3 Well LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.** Client and the 3 Well LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary. Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses. Such third party fees and expenses will be billed directly to Client. Client will be responsible for paying fees and expenses of third parties. In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

_____, 2017

Page 4

Client and the 3 Well LP Trustee further acknowledge that SSG will incur various expenses in providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG. Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be reimbursed by Client solely out of Recoveries.

**Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and the 3 Well LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received by Client and the 3 Well LP Trustee will be conveyed to SSG for notice purposes only.

**No settlement of any nature shall be made for the Subject Matters without the approval of Client and the United States Bankruptcy Court.** Client acknowledges that all communications from adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG, as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

**Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC* (Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well 2014, L.P.* (Bankruptcy Case No. 17-40180). While SSG does not anticipate that its prior and/or current representation of Client will adversely affect Client's or 3 Well LP Trustee's interests in the Subject Matters, applicable rules of professional conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject Matters. Client acknowledges his express and informed consent to SSG's representation of Client with respect to the Subject Matters as well as SSG's continuing representation of Client in other matters, including related matters. 3 Well LP Trustee acknowledges that he is aware that SSG represents Client in other matters, including the above-referenced related matters, and waives any conflict relating thereto.

If a controversy arises between you and any other client of SSG, SSG, after taking into account the applicable rules of professional ethics, may decline to represent you or such other client or both you and such other client. Following the conclusion of our representation of you in this matter, SSG reserves the right to represent other future clients on unrelated matters which may be adverse to your interests.

**Withdrawal/Termination of Representation.** Our representation may be terminated prior to the conclusion of the Subject Matters covered under this engagement letter by written notice to the other party. SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

**Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if appropriate), it is Client's and the 3 Well LP Trustee's obligation to advise us as to which, if any, documents

_____, 2017
Page 5

in our files they wish SSG to return. SSG may keep copies thereof for our records to the extent we believe advisable. SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter. THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

**Email Communications.** To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail. The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents. We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form. The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties. Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

**Approval of Terms of Engagement.** If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature. A copy of this agreement should be retained for your files.

**Bankruptcy Court Approval.** **The parties acknowledge that the Bankruptcy Court must approve this agreement.**

Regards,

SNOW SPENCE GREEN LLP

By:_____
       Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:

By: _____
     Christopher J. Moser
     Chapter 7 Trustee for Payson Petroleum 3 Well, L.P.

By: _____
     Jason R. Searcy
     Chapter 11 Trustee for Payson Petroleum, Inc.

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 2 3 Well LP Subject Claims Assign-Participation Agmt\Ex 1 to E20170905 3 Well LP Engagement Agreement.docx





_____, 2017

VIA EMAIL:  cmoser@qslwm.com          VIA EMAIL:  jsearcy@jsearcylaw.com

Mr. Christopher J. Moser                        Mr. Jason R. Searcy
Quilling, Selander, Lownds, Winslett & Moser, P.C.   Searcy & Searcy, P.C.
2001 Bryan Street, Ste. 1800                    446 Forest Square
Dallas, TX  75201                               Longview, TX  75605

**Re:** **Proposed Engagement Agreement**

**Bankruptcy Case No. 17-40180;** *In re Payson Petroleum 3 Well 2014, L.P.* **in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division (the "Bankruptcy Case")**

Mr. Moser and Mr. Searcy:

This letter sets forth the terms of engagement of Snow Spence Green LLP ("SSG") to analyze and pursue at the discretion of Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc. certain claims and causes of action and objections on behalf of the bankruptcy estate of Payson Petroleum 3 Well 2014, L.P. ("2014 LP" or "Debtor").  This agreement is entered into pursuant to the terms of a Settlement Agreement by and between (a) Payson Petroleum, Inc., Payson Operating, LLC, Maricopa Resources, LLC, Jason Searcy, Chapter 11 Trustee, and (b) Payson Petroleum 3 Well, L.P., Payson Petroleum 3 Well 2014, L.P. and Christopher J. Moser, Chapter 7 Trustee, dated _____, 2017, and is subject to Bankruptcy Court approval.  Upon the execution of this letter agreement, we will prepare for your review and approval a motion to employ SSG as special litigation counsel under 11 U.S.C. §§ 327(e) and 328.

**Description of Engagement**.  The client pursuant to this Engagement Agreement is Jason R. Searcy, Chapter 11 Trustee of Payson Petroleum, Inc., acting in his capacity as a representative of the 2014 LP bankruptcy estate ("Client") pursuant to the terms of the Subject Claims Assignment and Participation Agreement between Payson Petroleum, Inc. and 2014 LP.  The representation by SSG pursuant to this Agreement would be limited to investigation and prosecution (to the extent determined by SSG to be cost justified) of the following:

a.   2014 LP's claims and causes of action under either chapter 5 of the United States Bankruptcy Code or any applicable state fraudulent transfer ("Avoidance Actions"); and

b.   2014 LP's rights, claims, causes of action, and rights of contribution against any current or former general partner or limited partner of 2014 LP, including but not limited to claims under 11 U.S.C. § 723 ("Partnership Related Claims"); and

c.   objections to the allowance of claims asserted against Debtor as to which claims and causes of action are asserted by Client.

_____, 2017

Page 2

(collectively, the "<u>Subject Matters</u>").  Claims, causes of action and/or objections with respect to a specific party are referred to as a "<u>Specific Subject Matter</u>").  SSG's representation of Client pursuant to this agreement will be limited to the specific matters referenced herein, and SSG is not undertaking, absent a specific engagement letter to the contrary, to represent Client in other matters or in any general counsel capacity.

SSG will be responsible for the drafting of documents, preparation of pleadings, attending court hearings and trials, participating in negotiations, performing legal research, and conducting conferences, and consultations as may be necessary to represent you with respect to each claim for which litigation is commenced.

Although SSG will endeavor to obtain results satisfactory to Client, we cannot guarantee that we will be successful.  As part of this agreement, Client and Christopher J. Moser, Chapter 7 Trustee of 2014 LP (the "<u>2014 LP Trustee</u>") acknowledge that (i) neither SSG nor any of its respective professionals have made any promises or guarantees regarding any outcome of the Subject Matters and that no guarantees or promises can be made regarding the outcome thereof; (ii) neither SSG nor any of its respective professionals have made any promises or guarantees regarding the length of time required to obtain the resolution of the Subject Matters; and (iii) either at the beginning or during the course of its representation, SSG may express its opinions or beliefs concerning the Subject Matters and the results that might be anticipated; but that any such statement(s) are intended to be an expression of opinion only, based on information available at the time, and must not be construed by Client or 2014 LP Trustee as a promise or guarantee, as no such promises or guarantees are possible.

Client and 2014 LP Trustee acknowledge and agree that SSG is under no obligation to represent them with respect to a Subject Matter if SSG determines, in its sole discretion, that pursuit of any particular Subject Matter is not cost justified.

To enable SSG to effectively perform the contemplated services, it is essential that Client and the 2014 LP Trustee disclose fully and accurately all facts and keep us apprised of all developments relating to the Subject Matters.  Client and the 2014 LP Trustee agree to cooperate fully with SSG and to make themselves and their representatives available to attend meetings, conferences, hearings and other proceedings.

**<u>Legal Fees.</u>**  The representation will be handled on a contingency fee basis with SSG's fee being dependent upon recovery through settlement or trial, except in the event of discharge or withdrawal from representation as provided below.  The fees to be paid to SSG will be a percentage of the "<u>Recovery</u>" (as defined below) realized with respect to each Specific Subject Matter.  The Client and the 2014 LP Trustee agree to pay SSG a contingent fee based upon (i) the outcome achieved with respect to each Specific Subject Matter, and (ii) the occurrence of specified benchmark events with respect to each Specific Subject Matter.  The agreed upon percentages and benchmarks are set forth below:

_____, 2017

Page 3

| Fees as a Percent of Recovery | Benchmark Event |
|---|---|
| 33% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter prior to the earlier of (i) submission of a proposed joint pre-trial order, or (ii) submission of a position statement to an agreed upon or court appointed mediator for the Specific Subject Matter. |
| 35% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after submission of a position statement to an agreed upon or court appointed mediator for a Specific Subject Matter. |
| 40% | Of the amount of any Recovery obtained with respect to a Specific Subject Matter after the earlier of (i) conclusion of an unsuccessful mediation, or (ii) submission of a proposed joint pre-trial order. |

The Client and the 2014 LP Trustee acknowledge that the foregoing contingency fee terms are not set by law, but are negotiable, and have been negotiated, between the Client, the 2014 LP Trustee.

The term "Recovery" shall mean (i) the amount of cash, plus (ii) the fair market value of any other property recovered by the Client and/or the 2014 LP Trustee as of the date of recovery, plus (iii) the value of any claim that is released or disallowed, plus (iv) the value of any potential unsecured claim based upon § 502(h) of the Bankruptcy Code that is released or disallowed. The dollar amount of each Recovery with respect to a Specific Subject Matter will be calculated before deduction of any applicable expenses of the lawsuit. For purposes of this agreement, if a proof of claim was filed by the subject creditor, the dollar amount of a the claim released or disallowed (other than any claim under § 506(h) of the Bankruptcy Code) will be determined based upon the dollar amount set forth in the proof of claim filed by the subject creditor which is released or disallowed. If a proof of claim was not filed by the subject creditor, the dollar amount released or disallowed will be determined based upon the dollar amount set forth in the Schedules and Assets and Liabilities filed in the bankruptcy cases by 2014 LP with respect to the subject creditor which is released or disallowed. For purposes of this agreement, the value of each dollar of each pre-petition claim or administrative claim released or disallowed will be determined based on the projected percentage recovery of the applicable class of claim. For example, if the projected recovery by unsecured claim holders was 25% on the dollar, then the value of each dollar of unsecured claim released or discharged would be .25¢.

Subject to the terms of this Agreement, the Client and the 2014 LP Trustee hereby convey, transfer, and assign to SSG an undivided interest in the Subject Matters, such interest being equal to the amount of the percentages therein described above.

**Out-of-Pocket Expenses.** Client and the 2014 LP Trustee acknowledge and agree that in connection with investigation and prosecution of the Subject Matters, the services of third parties will be necessary. Such other persons and entities may include, but are not limited to, court reporters, accountants, investigators and expert witnesses. Such third party fees and expenses will be billed directly to Client. Client will be responsible for paying fees and expenses of third parties. In the event that there are insufficient funds in the estate to timely pay for the third party services, SSG will advance the amount necessary and such advances will be treated as reimbursable expenses.

_____, 2017

Page 4

        Client and the 2014 LP Trustee further acknowledge that SSG will incur various expenses in
providing services to Client. Client agrees to reimburse SSG for all out-of-pocket expenses paid by SSG.
Such expenses include, but are not limited to, charges for serving and filing papers, courier or messenger
services, recording and certifying documents, depositions, transcripts, investigations, witnesses, long
distance telephone calls, copying materials, and travel expenses. Expenses advanced by SSG would be
reimbursed by Client solely out of Recoveries.

        **Settlements.** Any settlement offer received by SSG will be immediately conveyed to Client and
the 2014 LP Trustee with our recommendation for acceptance or rejection. Any settlement offer received
by Client and the 2014 LP Trustee will be conveyed to SSG for notice purposes only.

        **No settlement of any nature shall be made for the Subject Matters without the approval of
Client and the United States Bankruptcy Court.** Client acknowledges that all communications from
adverse parties or their counsel in connection with the Subject Matters are required to be directed to SSG,
as counsel, pursuant to Texas Disciplinary Rule of Professional Conduct 4.02; and Client agrees to instruct
all adverse parties and their counsel to communicate only through SSG, unless SSG agrees otherwise.

        **Conflict Matters.** SSG has represented and currently represents Client on an ongoing basis with
matters related to this Bankruptcy Case and other cases including, but not limited to, matters in the
following bankruptcy cases: (i) *In re Payson Petroleum, Inc.* (Bankruptcy Case No. 16-41044); (ii) *In re
Payson Operating, LLC* (Bankruptcy Case No. 16-41045); (iii) *In re Maricopa Resources, LLC*
(Bankruptcy Case No. 16-41043); and (iv) *In re Payson Petroleum 3 Well, L.P.* (Bankruptcy Case No. 17-
40179). While SSG does not anticipate that its prior and/or current representation of Client will adversely
affect Client's or 2014 LP Trustee's interests in the Subject Matters, applicable rules of professional
conduct require that SSG obtain Client's consent to its representation of Client with respect to the Subject
Matters. Client acknowledges his express and informed consent to SSG's representation of Client with
respect to the Subject Matters as well as SSG's continuing representation of Client in other matters,
including related matters. 2014 LP Trustee acknowledges that he is aware that SSG represents Client in
other matters, including the above-referenced related matters, and waives any conflict relating thereto.

        If a controversy arises between you and any other client of SSG, SSG, after taking into account the
applicable rules of professional ethics, may decline to represent you or such other client or both you and
such other client. Following the conclusion of our representation of you in this matter, SSG reserves the
right to represent other future clients on unrelated matters which may be adverse to your interests.

        **Withdrawal/Termination of Representation.** Our representation may be terminated prior to the
conclusion of the Subject Matters covered under this engagement letter by written notice to the other party.
SSG reserves the right to withdraw from its representation if, among other things, Client fails to honor the
terms of this engagement letter or fails to cooperate or follow SSG's advice on a material matter, or if any
fact or circumstance would, in SSG's view, render our continuing representation unlawful, unethical or
ineffective. No such termination or withdrawal, however, will relieve Client of the obligation to pay the
legal fees owed for services performed and other charges owing to SSG as set forth in this agreement.

        **Work Files – Retention and Disposition.** SSG will maintain all documents furnished to us in our
files for this matter. At the conclusion of the matter covered under this engagement letter (or earlier, if
appropriate), it is Client's and the 2014 LP Trustee's obligation to advise us as to which, if any, documents
in our files they wish SSG to return. SSG may keep copies thereof for our records to the extent we believe

_____, 2017
Page 5

advisable.  SSG will retain any remaining documents in our files for a period of one (1) year following conclusion of our representation in this matter.  THEREAFTER, SUCH FILES MAY, AT OUR SOLE DISCRETION AND WITHOUT FURTHER NOTICE TO YOU, BE DESTROYED.

**Email Communications.**  To the extent appropriate, SSG communicates with respective clients (and others) by means of electronic mail.  The use of email has proven over time to be an effective and efficient means of exchanging both messages and documents.  We are mindful of the concerns of some clients that email transmission could be compromised, and thus prohibit its use or prohibit its use in an unencrypted form.  The use of encryption, however, though intended to be "seamless" in use, has caused difficulties in communication with some parties.  Thus, to avoid the possibility of disruptions in the flow of information, and prompted by the near-unanimity on the part of bar associations throughout the country, as well as the American Bar Association, in support of the preservation of attorney-client privileges in unencrypted email communications, unless specifically instructed by you, we will assume your consent to use of unencrypted email as a means of communication.

**Approval of Terms of Engagement.**  If the above and foregoing meets with your understanding, please so indicate by executing this agreement in the place provided below for your signature.  A copy of this agreement should be retained for your files.

**Bankruptcy Court Approval.**  The parties acknowledge that the Bankruptcy Court must approve this agreement.

Regards,

SNOW SPENCE GREEN LLP

By:_____
        Phil F. Snow

Accepted and Agreed this _____ day of _____, 2017:


By: _____
        Christopher J. Moser
        Chapter 7 Trustee for Payson Petroleum 3 Well 2014, L.P.


By: _____
        Jason R. Searcy
        Chapter 11 Trustee for Payson Petroleum, Inc.

# EXHIBIT 3 TO SETTLEMENT AGREEMENT

# AGREED FINAL JUDGMENT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | JOINTLY ADMINISTERED |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

_____

| | | |
|---|---|---|
| JASON R. SEARCY, | § | |
| CHAPTER 11 TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adversary No. 16-04106 |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P. | § | |
| & PAYSON PETROLEUM 3 WELL | § | |
| 2014, L.P., | § | |
| | § | |
| Defendants. | § | |

## AGREED FINAL JUDGMENT

ON THIS DATE, came on to be considered the above-entitled and numbered cause wherein Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 is the "Plaintiff" and Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. are the "Defendants."

After considering the Joint Motion for Entry of Agreed Final Judgment (the "Motion") filed by Plaintiff and Defendants, other pleadings on file, and argument of the parties, if any, the Court hereby finds that the Motion should be granted. The Court further finds that:

- Payson Petroleum 3 Well, L.P. ("3 Well LP") owes Payson Petroleum, Inc.

1

("Payson Petroleum") the sum of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) under that certain October 10, 2013 Subscription Turn Key Agreement between 3 Well LP and Payson Petroleum (the "3 Well LP Turnkey Agreement");

- Payson Petroleum 3 Well 2014, L.P. ("2014 LP") owes Payson Petroleum the sum of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) under that certain January 12, 2014 Subscription Turn Key Agreement between 2014 LP and Payson Petroleum (the "2014 LP Turnkey Agreement");

- On or about Marcy 28, 2016, Maricopa Resources, LLC ("Maricopa") assigned certain interests in the William #1H (API # 181-31557), the Crowe #2 (API #181-31543), and the Elaine #1 (API #181-31547) (collectively the "Subject Wells") oil and gas wells and related leaseholds to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066 and are attached hereto as **Exhibit 1** (the "Avoidable Assignments"); and

- Maricopa made the Avoidable Assignments during the 90-day period preceding the filing of Maricopa's bankruptcy petition, while Maricopa was not solvent, in furtherance of a fraudulent scheme which defrauded Maricopa's creditors, and without receiving reasonably equivalent value in return from 3 Well LP or 2014 LP and, therefore, that the Avoidable Assignments may be avoided pursuant to 11 U.S.C. § 548(a)(1)(A) & (B).

It is therefore Ordered, Adjudged, and Decreed that the Motion is Granted;

It is further Ordered, Adjudged, and Decreed that the Avoidable Assignments are constructive and actual fraudulent transfers of the interests set forth therein and are hereby

2

avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B);

It is further ORDERED, ADJUDGED, AND DECREED that **Final Judgmen**t is hereby granted

in favor of:

- Payson Petroleum against 3 Well LP in the amount of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement;

- Payson Petroleum against 2014 LP in the principal amount of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement;

- Maricopa against 3 Well LP for the interests transferred to 3 Well LP via the Avoidable Assignments and/or the value thereof; and

- Maricopa against 2014 LP for the interests transferred to 2014 LP via the Avoidable Assignments and/or the value thereof.

It is further ORDERED, ADJUDGED, AND DECREED that:

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40179 in the amount of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement; and

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40180 in the amount of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement.

**This is a Final Judgment. All relief not ordered herein is expressly denied.**

**SUBMITTED BY:**

/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

**AGREED AS TO FORM AND SUBSTANCE:**


/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**


/s/ _____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P. AND PAYSON PETROLEUM 3 WELL 2014, L.P.**

4



## EXHIBIT
## 1

**Grayson County**
**Wilma Bush**
**Grayson County Clerk**
**Sherman, Texas 75090**



70 2016 00006064

Instrument Number: 2016-00006064

As

Recorded On: March 28, 2016                    Recordings

Parties: MARICOPA RESOURCES LLC                         Billable Pages: 6

To       PAYSON PETROLEUM 3 WELL 2014 LP ETAL          Number of Pages: 8

Comment: ASSIGN

( Parties listed above are for Clerks reference only )

**\*\* Examined and Charged as Follows: \*\***

Recordings                    36.00

Total Recording:          36.00

\*\*\*\*\*\*\*\*\*\*\*\* **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** \*\*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                   **Record and Return To:**

Document Number: 2016-00006064
Receipt Number: 447187                          PAYSON PETROLEUM
Recorded Date/Time: March 28, 2016 12:09:45P    2652 FM 407 E #250
Book-Vol/Pg: BK-OR  VL-5779  PG-389             BARTONVILLE TX 76226
User / Station: G WHITE - Cashiering Station 1



THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GRAYSON | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.        an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.        an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective August 1, 2015 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – William #1H, dated August 15, 2014, by Maricopa Resources LLC, and recorded in Volume 5650, Page 778 of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

## ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the "Assets":

    a.      The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX), collectively referred to in this Assignment as the ("Well").

     b.     The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

     c.     All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

     d.     All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

     e.     All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

     To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

     Assignees and Assignor further agree as follows:

     1.     <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"): all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

     2.     <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a depth not greater than the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX and plug and abandon the Well. Assignees shall not have the right to deepen, sidetrack, or replace the Well.

     3.     <u>Real property warranty</u>. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

     4.     <u>Assignees' Assumption of Liabilities and Obligations</u>. Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations". The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 2

5.    **Indemnification.**  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6.    **Royalty Payments.**  Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims.  Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7.    **Indemnification Claims.**  With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.  Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities.  All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8.    **Transfer Taxes and Recording Fees.**  Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9.    **Government Assignment Forms.**  Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements.  Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment.  The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10.    **No Third Party Beneficiaries.**  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11.    **Successors and Assigns.**  This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this __23rd__ day of __March__ 2016.


**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by William C. Griffin, Secretary
of Maricopa Resources, LLC.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President
of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President
of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1.  The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX).

2.  Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the William # 1H Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|--------|--------|--------|--------|------|------|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensty, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981 | 402 | 2/1/2011 |

| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418 | 520 | 2/1/2008 |
|---|---|---|---|---|---|
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980 | 156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296 | 513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296 | 506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980 | 140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760 | 92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760 | 88 | 3/6/2007 |
| Grayson | Gary Wayne Odle, dealing in his sole and separate property | Matthew Avery | 4296 | 493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760 | 92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983 | 321 | 4/10/2011 |
| Grayson | Vurlas Lane Wilson, a/k/a Verlas Lane Wilson and Marjorie Marie Wilson H/W | Matthew Avery | 4296 | 469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993 | 305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo, a married woman dealing in her sole and separate property | Matthew Avery | 4980 | 144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296 | 457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the James M Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297 | 46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296 | 461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296 | 449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296 | 466 | 6/27/2007 |
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296 | 454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo and Marty J. Garofalo, wife and husband | Matthew Avery | 4296 | 445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355 | 704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274 | 698 | 3/15/2013 |
| Grayson | PCB Trust, Philip C. Brown, Trustee, and Philip Charles Brown | Paradise Springs, LLC | 5274 | 701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367 | 400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002 | 826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002 | 830 | 8/21/2011 |
| Grayson | Philip C Brown, a/ka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002 | 834; 838 | 8/21/2011 |

*END OF EXHIBIT "A"*

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 6

# Grayson County
# Wilma Bush
# Grayson County Clerk
## Sherman, Texas 75090



70 2016 00006066

---

### Instrument Number: 2016-00006066

As

**Recordings**

**Recorded On:** March 28, 2016

**Parties:** MARICOPA RESOURCES LLC                    **Billable Pages: 5**

To      PAYSON PETROLEUM 3 WELL 2014 LP ETAL    **Number of Pages: 7**

**Comment:** ASSIGN

( Parties listed above are for Clerks reference only )

---

### ** Examined and Charged as Follows: **

Recordings                 32.00

**Total Recording:**       **32.00**

---

************ **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** ************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                          **Record and Return To:**

Document Number: 2016-00006066

Receipt Number: 447187                    PAYSON PETROLEUM

Recorded Date/Time: March 28, 2016 12:09:45P    2652 FM 407 E #250

Book-Vol/Pg: BK-OR  VL-5779  PG-404       BARTONVILLE TX 76226

User / Station: G WHITE - Cashiering Station 1

---



THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GRAYSON | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

| | |
|---|---|
| Payson Petroleum 3 Well 2014, L.P. 2652 FM 407 E #250 Bartonville, Texas 76226 | an undivided 72.210840% |
| | |
| Payson Petroleum 3 Well, L.P. 2652 FM 407 E #250 Bartonville, Texas 76226 | an undivided 27.789160% |

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective April 9, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Assignment of Oil and Gas Leases, dated November 23, 2010, entered into between Atoka Operating, Inc. and Barber Exploration Company, and recorded in Volume 4888, Page 924, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

### ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

a.     The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

00006064    OR    5779    406

b.     The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.     All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.     All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.     All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.     <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"):  all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.     <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 11,164', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.     <u>Real property warranty</u>. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.     <u>Assignees' Assumption of Liabilities and Obligations</u>.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

5.     <u>Indemnification</u>.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 2

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6. <u>Royalty Payments</u>. Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims. Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7. <u>Indemnification Claims</u>. With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities. All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8. <u>Transfer Taxes and Recording Fees</u>. Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9. <u>Government Assignment Forms</u>. Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment. The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10. <u>No Third Party Beneficiaries</u>. The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11. <u>Successors and Assigns</u>. This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this __23rd__ day of __March__ 2016.


**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary


**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

BK     Vol     Ps
00006066    OR     5779    408

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _**March 23rd**_, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _**March 23rd**_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _**March 23rd**_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

BK Vol Pg
OR 5779 409

## EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1. The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

2. Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Crowe #2 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Instrument Filed | Volume/Page | Effective Date |
|---|---|---|---|---|---|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas, and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operatinc, Inc. | Oil, Gas, and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr., a widower | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of The Estate Dorothy L. Darnell, Deceased | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr. Revocable Trust, Allen M. Tonkin Jr., Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust, Nancy T. Cutter and Allen M. Tonkin, Jr, Trustees | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |
| Grayson | Nancy T. Cutter Revocable Trust, Nancy T. Cutter Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust, Linley T. Solari, Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

*END OF EXHIBIT "A"*



**Grayson County**
**Wilma Bush**
**Grayson County Clerk**
**Sherman, Texas 75090**

70 2016 00006065

---

**Instrument Number: 2016-00006065**

As

**Recorded On: March 28, 2016**                              **Recordings**

Parties: MARICOPA RESOURCES LLC                              **Billable Pages: 5**

To    PAYSON PETROLEUM 3 WELL 2014 LP ETAL                   **Number of Pages: 7**

Comment: **ASSIGN**

( Parties listed above are for Clerks reference only )

---

**** Examined and Charged as Follows: ****

Recordings                        32.00

   **Total Recording:**           **32.00**

---

*********** **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                          **Record and Return To:**
   Document Number: 2016-00006065
   Receipt Number: 447187                      PAYSON PETROLEUM
   Recorded Date/Time: March 28, 2016 12:09:45P   2652 FM 407 E #250
   Book-Vol/Pg: BK-OR  VL-5779  PG-397         BARTONVILLE TX 76226
   User / Station: G WHITE - Cashiering Station 1

---

THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GRAYSON | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.      an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.      an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective June 2, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – Elaine #1, dated to be effective June 1, 2014, by Maricopa Resources LLC, and recorded in Volume 5530, Page 781, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

## ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

a.      The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

b.    The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.    All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.    All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.    All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.    Excluded Assets.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"):  all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.    Operations.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 12,309', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.    Real property warranty. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.    Assignees' Assumption of Liabilities and Obligations.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

5.    Indemnification.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 2

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6.   <u>Royalty Payments</u>.  Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims.  Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7.   <u>Indemnification Claims</u>.  With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.  Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities.  All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8.   <u>Transfer Taxes and Recording Fees</u>.  Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9.   <u>Government Assignment Forms</u>.  Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements.  Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment.  The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10.   <u>No Third Party Beneficiaries</u>.  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11.   <u>Successors and Assigns</u>.  This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this _23rd_ day of _March_ 2016.

**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By:_____
William C. Griffin, Secretary

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By:_____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


| STATE OF TEXAS | § |
| --- | --- |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____*March 23rd*_____, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.



JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| --- | --- |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____*March 23rd*_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


| STATE OF TEXAS | § |
| --- | --- |
| | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _____*March 23rd*_____, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.



JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1. The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

2. Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Elaine #1 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|--------|--------|--------|--------|------|------|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464 | 910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521 | 166 | 3/24/2014 |

*END OF EXHIBIT "A"*

# EXHIBIT 4 TO SETTLEMENT AGREEMENT

# JOINT MOTION FOR ENTRY OF
# AGREED FINAL JUDGMENT

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

| | | |
|---|---|---|
| **JASON R. SEARCY,** | § | |
| **CHAPTER 11 TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **Adversary No. 16-04106** |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.** | § | |
| **& PAYSON PETROLEUM 3 WELL** | § | |
| **2014, L.P.,** | § | |
| | § | |
| Defendants. | § | |

## JOINT MOTION FOR ENTRY OF AGREED FINAL JUDGMENT

TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:

COME NOW, Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Motion for Entry of Agreed Final Judgment* (the "Joint Motion"), and in support thereof, respectfully show unto the Court the following:

1

1.    On July 13, 2017, Payson Trustee filed his First Amended Complaint in this

adversary proceeding against Payson Petroleum 3 Well, L.P. ("3 Well LP") and Payson Petroleum

3 Well 2014, L.P. ("2014 LP") and asserted, *inter alia*, the following claims:

- breach of contract claims on behalf of Payson Petroleum, Inc. ("Payson Petroleum") against 3 Well LP and 2014 LP (collectively the "Defendants") for failure to pay amounts owed under certain "Turnkey Agreements;"

- actual and constructive fraudulent transfer claims on behalf of Payson Petroleum against Defendants to avoid and recover certain investment amounts Payson Petroleum transferred to Defendants;

- actual and constructive fraudulent transfer claims on behalf of Maricopa Resources, LLC ("Maricopa") against Defendants to avoid and recover certain wellbore interests that Maricopa transferred to Defendants during the 90-day period prior to June 10, 2016 in the Elaine No. 1, Crowe No. 2, and William No. 1H Wells (collectively the "Subject Wells"); and

- preferential transfer claims on behalf of Maricopa against Defendants to avoid and recover the interests in the Subject Wells that Mariocpa transferred to Defendants during the 90-day period prior to June 10, 2016.

(collectively the "Subject Claims").

2.    Following arms-length negotiations, the Payson Trustee and LP Trustee determined

to settle disputes related to the Subject Claims, entered into that certain Settlement Agreement

dated _____, 2017 (the "Agreement"), and filed Joint Motions to Approve Compromise and

Settlement Pursuant to Bankruptcy Rule 9019 in Bankruptcy Case Nos. 16-40144, 17-40179, and

17-40180 (the "Joint Motions to Compromise") which sought entry of agreed orders in the

applicable bankruptcy cases approving the Agreement (the "Agreed Orders").

3.    On _____, the Court entered the Agreed Orders.

4.    As more fully set forth in the Agreement, Joint Motions to Compromise, and

Agreed Orders, the parties have agreed to entry of the "Agreed Final Judgment" in the form

attached hereto as **Exhibit 1** in order to fully resolve the issues in the above-titled adversary

proceeding.

WHEREFORE, the Payson Trustee and LP Trustee respectfully request that this Court

enter the Agreed Final Judgment and grant such other and further relief as is just and proper.


Dated: ___, 2017                                  Respectfully submitted,


                                        By:  ___/s/_____
                                             Phil Snow
                                             State Bar No. 18812600
                                             Blake Hamm
                                             State Bar No. 24069869
                                             SNOW SPENCE GREEN LLP
                                             2929 Allen Parkway, Suite 2800
                                             Houston, Texas 77019
                                             (713) 335-4800
                                             (713) 335-4848 (Fax)

                                             **COUNSEL FOR JASON R. SEARCY,
                                             CHAPTER 11 TRUSTEE FOR PAYSON
                                             PETROLEUM, INC., PAYSON
                                             OPERATING, LLC, AND MARICOPA
                                             RESOURCES, LLC**


                                        By:  ___/s/_____
                                             Keith W. Harvey
                                             State Bar No. 09180100
                                             THE HARVEY LAW FIRM, P.C.
                                             6510 Abrams Road
                                             Suite 280
                                             Dallas, Texas 75231
                                             (972) 243-3960 Phone
                                             (972)-241-3970 Facsimile

                                             **COUNSEL FOR CHRISTOPHER J.
                                             MOSER, CHAPTER 7 TRUSTEE FOR
                                             PAYSON PETROLEUM 3 WELL, L.P.
                                             AND PAYSON PETROLEUM 3 WELL
                                             2014, L.P.**

## CERTIFICATE OF SERVICE

I certify that on the ___ day of _____, 2017, a true and correct copy of the above and

foregoing was served on the interested parties via the Court's ECF notification system.

_____

Blake Hamm



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | **Chapter 11** |

---

| | | |
|---|---|---|
| **JASON R. SEARCY,** | § | |
| **CHAPTER 11 TRUSTEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **Adversary No. 16-04106** |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.** | § | |
| **& PAYSON PETROLEUM 3 WELL** | § | |
| **2014, L.P.,** | § | |
| | § | |
| Defendants. | § | |

## AGREED FINAL JUDGMENT

ON THIS DATE, came on to be considered the above-entitled and numbered cause wherein Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 is the "Plaintiff" and Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. are the "Defendants."

After considering the Joint Motion for Entry of Agreed Final Judgment (the "Motion") filed by Plaintiff and Defendants, other pleadings on file, and argument of the parties, if any, the Court hereby finds that the Motion should be granted. The Court further finds that:

- Payson Petroleum 3 Well, L.P. ("3 Well LP") owes Payson Petroleum, Inc.

1

("Payson Petroleum") the sum of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT

HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) under that certain October

10, 2013 Subscription Turn Key Agreement between 3 Well LP and Payson Petroleum (the "3

Well LP Turnkey Agreement");

- Payson Petroleum 3 Well 2014, L.P. ("2014 LP") owes Payson Petroleum the sum

of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S.

DOLLARS ($2,671,900.50) under that certain January 12, 2014 Subscription Turn Key Agreement

between 2014 LP and Payson Petroleum (the "2014 LP Turnkey Agreement");

- On or about Marcy 28, 2016, Maricopa Resources, LLC ("Maricopa") assigned

certain interests in the William #1H (API # 181-31557), the Crowe #2 (API #181-31543), and the

Elaine #1 (API #181-31547) (collectively the "Subject Wells") oil and gas wells and related

leaseholds to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances,

Bills of Sale, and Releases, which were recorded in the real property records of Grayson County,

Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066 and are

attached hereto as **Exhibit 1** (the "Avoidable Assignments"); and

- Maricopa made the Avoidable Assignments during the 90-day period preceding the

filing of Maricopa's bankruptcy petition, while Maricopa was not solvent, in furtherance of a

fraudulent scheme which defrauded Maricopa's creditors, and without receiving reasonably

equivalent value in return from 3 Well LP or 2014 LP and, therefore, that the Avoidable

Assignments may be avoided pursuant to 11 U.S.C. § 548(a)(1)(A) & (B).

It is therefore ORDERED, ADJUDGED, AND DECREED that the Motion is Granted;

It is further ORDERED, ADJUDGED, AND DECREED that the Avoidable Assignments are

constructive and actual fraudulent transfers of the interests set forth therein and are hereby

avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B);

It is further ORDERED, ADJUDGED, AND DECREED that **Final Judgment** is hereby granted in favor of:

- Payson Petroleum against 3 Well LP in the amount of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement;

- Payson Petroleum against 2014 LP in the principal amount of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement;

- Maricopa against 3 Well LP for the interests transferred to 3 Well LP via the Avoidable Assignments and/or the value thereof; and

- Maricopa against 2014 LP for the interests transferred to 2014 LP via the Avoidable Assignments and/or the value thereof.

It is further ORDERED, ADJUDGED, AND DECREED that:

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40179 in the amount of EIGHT MILLION FIVE HUNDRED FIFTY-SEVEN THOUSAND EIGHT HUNDRED EIGHTY-EIGHT AND 50/100 U.S. DOLLARS ($8,557,888.50) on account of 3 Well LP's breach of the 3 Well LP Turnkey Agreement; and

- Payson Petroleum shall have an allowed unsecured claim in Bankruptcy Case No. 17-40180 in the amount of TWO MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED AND 50/100 U.S. DOLLARS ($2,671,900.50) on account of 2014 LP's breach of the 2014 LP Turnkey Agreement.

**This is a Final Judgment. All relief not ordered herein is expressly denied.**

**SUBMITTED BY:**

/s/
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM,
INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

**AGREED AS TO FORM AND SUBSTANCE:**


/s/
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM,
INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**



/s/
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON
PETROLEUM 3 WELL, L.P. AND PAYSON PETROLEUM 3 WELL 2014, L.P.**



## Grayson County
## Wilma Bush
## Grayson County Clerk
### Sherman, Texas 75090



70 2016 00006064

<div style="text-align:center">

**Instrument Number: 2016-00006064**

As
**Recordings**
</div>

**Recorded On: March 28, 2016**

**Parties:** MARICOPA RESOURCES LLC

**To** PAYSON PETROLEUM 3 WELL 2014 LP ETAL

**Billable Pages: 6**

**Number of Pages: 8**

**Comment: ASSIGN**

<div style="text-align:center">( Parties listed above are for Clerks reference only )</div>

<div style="text-align:center">** Examined and Charged as Follows: **</div>

Recordings                          36.00

**Total Recording:**          **36.00**

*********** **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** ***********

<div style="text-align:center">
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.
</div>

**File Information:**

Document Number: 2016-00006064

Receipt Number: 447187

Recorded Date/Time: March 28, 2016 12:09:45P

Book-Vol/Pg: BK-OR  VL-5779  PG-389

User / Station: G WHITE - Cashiering Station 1

**Record and Return To:**

PAYSON PETROLEUM
2652 FM 407 E #250
BARTONVILLE TX 76226



THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:   YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

STATE OF TEXAS              §
                           §
COUNTY OF GRAYSON          §

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.              an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.                   an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective August 1, 2015 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – William #1H, dated August 15, 2014, by Maricopa Resources LLC, and recorded in Volume 5650, Page 778 of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

### ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the "Assets":

a.      The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone

Bk Vol Ps
OR 5779 391

defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX), collectively referred to in this Assignment as the ("Well").

b.     The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.     All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.     All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.     All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.     <u>Excluded Assets</u>.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"): all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.     <u>Operations</u>.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a depth not greater than the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.     <u>Real property warranty</u>. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.     <u>Assignees' Assumption of Liabilities and Obligations</u>.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 2

BK Vol Pg
06064 OR 5779 392

5.     Indemnification.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6.     Royalty Payments.  Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims.  Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7.     Indemnification Claims.  With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.  Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities.  All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8.     Transfer Taxes and Recording Fees.  Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9.     Government Assignment Forms.  Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements.  Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment.  The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10.    No Third Party Beneficiaries.  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11.    Successors and Assigns.  This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this __23rd__ day of __March__ 2016.


ASSIGNOR:
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary



WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

00006064    BK    Vol    Pg
            OR    5779   393


**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


STATE OF TEXAS        §
                      §
COUNTY OF DENTON      §

This instrument was acknowledged before me on _____March 23rd_____, 2016 by William C. Griffin, Secretary
of Maricopa Resources, LLC.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas


STATE OF TEXAS        §
                      §
COUNTY OF DENTON      §

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President
of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas


STATE OF TEXAS        §
                      §
COUNTY OF DENTON      §

This instrument was acknowledged before me on _____March 23rd_____, 2016 by Matthew C. Griffin, President
of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

> JANICE SEYDEL
> NOTARY PUBLIC-STATE OF TEXAS
> COMM. EXP. 04-19-2020
> NOTARY ID 128960971

_____
Notary in and for the State of Texas


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1. The William #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, BLK 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, TX, (from the surface of the earth down to the base of the Viola Limestone defined as the stratigraphic equivalent of 11,835' as found in the Brown Gas Unit No. 1 well located in the P. R. Wertz Survey, Abstract 1387, Grayson County, TX).

2. Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the William # 1H Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|--------|--------|--------|--------|------|------|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensty, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981 | 402 | 2/1/2011 |

| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418 | 520 | 2/1/2008 |
|---------|-------------------------------------------------------------------------------|--------------------|------|-----|----------|
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980 | 156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296 | 513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296 | 506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980 | 140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760 | 92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760 | 88 | 3/6/2007 |
| Grayson | Gary Wayne Odle, dealing in his sole and separate property | Matthew Avery | 4296 | 493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760 | 92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983 | 321 | 4/10/2011 |
| Grayson | Vurlas Lane Wilson, a/k/a Verlas Lane Wilson and Marjorie Marie Wilson H/W | Matthew Avery | 4296 | 469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993 | 305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo, a married woman dealing in her sole and separate property | Matthew Avery | 4980 | 144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296 | 457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the James M Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297 | 46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296 | 461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296 | 449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296 | 466 | 6/27/2007 |
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296 | 454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart W/H | Matthew Avery | 4296 | 441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo and Marty J. Garofalo, wife and husband | Matthew Avery | 4296 | 445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355 | 704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274 | 698 | 3/15/2013 |
| Grayson | PCB Trust, Philip C. Brown, Trustee, and Philip Charles Brown | Paradise Springs, LLC | 5274 | 701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367 | 400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002 | 826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002 | 830 | 8/21/2011 |
| Grayson | Philip C Brown, a/ka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002 | 834; 838 | 8/21/2011 |

*END OF EXHIBIT "A"*

# Grayson County
## Wilma Bush
### Grayson County Clerk
#### Sherman, Texas 75090



70 2016 00006066

---

**Instrument Number: 2016-00006066**

As
**Recordings**

**Recorded On:** March 28, 2016

**Parties:** MARICOPA RESOURCES LLC

**To**  PAYSON PETROLEUM 3 WELL 2014 LP ETAL

**Billable Pages: 5**

**Number of Pages: 7**

**Comment:** ASSIGN

*( Parties listed above are for Clerks reference only )*

---

**** Examined and Charged as Follows: ****

Recordings                          32.00

**Total Recording:**          **32.00**

---

*********** **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                              **Record and Return To:**

Document Number: 2016-00006066

Receipt Number: 447187                          PAYSON PETROLEUM

Recorded Date/Time: March 28, 2016 12:09:45P   2652 FM 407 E #250

Book-Vol/Pg: BK-OR  VL-5779  PG-404            BARTONVILLE TX 76226

User / Station: G WHITE - Cashiering Station 1

---



THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

<div align="center">

**WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE,
AND RELEASE**

</div>

STATE OF TEXAS        §
                      §
COUNTY OF GRAYSON     §


KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.        an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.             an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226


This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective April 9, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Assignment of Oil and Gas Leases, dated November 23, 2010, entered into between Atoka Operating, Inc. and Barber Exploration Company, and recorded in Volume 4888, Page 924, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

<div align="center">

**ASSIGNMENT AND AGREEMENT**

</div>

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

a.       The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

00006066      OR      5779      406

b.     The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.     All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.     All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.     All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.     Excluded Assets.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"): all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.     Operations.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 11,164', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.     Real property warranty.  Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.     Assignees' Assumption of Liabilities and Obligations.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

5.     Indemnification.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6. **Royalty Payments.** Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims. Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7. **Indemnification Claims.** With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities. All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8. **Transfer Taxes and Recording Fees.** Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9. **Government Assignment Forms.** Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment. The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10. **No Third Party Beneficiaries.** The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11. **Successors and Assigns.** This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this __23rd__ day of __March__ 2016.

**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

ASSIGNEE:
PAYSON PETROLEUM 3 WELL, L.P.

BK          Vol          Ps
00006066     OR          5779         408

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


STATE OF TEXAS          §
                        §
COUNTY OF DENTON        §

This instrument was acknowledged before me on ___March 23rd___, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


STATE OF TEXAS          §
                        §
COUNTY OF DENTON        §

This instrument was acknowledged before me on ___March 23rd___, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


STATE OF TEXAS          §
                        §
COUNTY OF DENTON        §

This instrument was acknowledged before me on ___March 23rd___, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

_____
Notary in and for the State of Texas


WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 4

# EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

## PROPERTY DESCRIPTION:

1. The Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, BLK 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, TX, (from the surface of the earth down to the measured depth of 11,164'), collectively referred to in this Assignment as the ("Well").

2. Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Crowe #2 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Instrument Filed | Volume/Page | Effective Date |
|--------|--------|--------|------------------|-------------|----------------|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas, and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operatinc, Inc. | Oil, Gas, and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr., a widower | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of The Estate Dorothy L. Darnell, Deceased | Atoka Operating, Inc. | Oil, Gas, and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr. Revocable Trust, Allen M. Tonkin Jr., Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust, Nancy T. Cutter and Allen M. Tonkin, Jr, Trustees | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |
| Grayson | Nancy T. Cutter Revocable Trust, Nancy T. Cutter Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust, Linley T. Solari, Trustee | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

*END OF EXHIBIT "A"*

**Grayson County**
**Wilma Bush**
**Grayson County Clerk**
**Sherman, Texas 75090**



70 2016 00006065

---

**Instrument Number: 2016-00006065**

As

**Recorded On: March 28, 2016**                    **Recordings**

Parties:  MARICOPA RESOURCES LLC                              Billable Pages: 5

To      PAYSON PETROLEUM 3 WELL 2014 LP ETAL         Number of Pages: 7

Comment:  **ASSIGN**

( Parties listed above are for Clerks reference only )

---

**\*\* Examined and Charged as Follows: \*\***

Recordings                    32.00

  **Total Recording:**           **32.00**

---

\*\*\*\*\*\*\*\*\*\*\*\* **DO NOT REMOVE. THIS PAGE IS PART OF THE INSTRUMENT** \*\*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                              **Record and Return To:**

   Document Number:  2016-00006065
   Receipt Number:  447187                         PAYSON PETROLEUM
   Recorded Date/Time:  March 28, 2016 12:09:45P   2652 FM 407 E #250
   Book-Vol/Pg:  BK-OR  VL-5779  PG-397            BARTONVILLE TX 76226
   User / Station:  G WHITE - Cashiering Station 1

---

THE STATE OF TEXAS
COUNTY OF GRAYSON
I hereby certify that this instrument was FILED in the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Grayson County, Texas.

*Wilma Blackshear Bush*

Wilma Blackshear Bush, Grayson County Clerk

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GRAYSON | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Maricopa Resources, LLC, whose address is 2652 FM 407 E #250, Bartonville, Texas, 76226 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto the following parties (the "Assignees") in the percentages as listed below, all of Assignor's right, title and interest in and to the well and wellbore described below, together with the rights associated with the wellbore as specifically described below (collectively the "Assets," as that term is defined below).

Payson Petroleum 3 Well 2014, L.P.       an undivided 72.210840%
2652 FM 407 E #250
Bartonville, Texas 76226

Payson Petroleum 3 Well, L.P.       an undivided 27.789160%
2652 FM 407 E #250
Bartonville, Texas 76226

This Wellbore Assignment, Conveyance, Bill of Sale, and Release (the "Assignment"), dated to be effective June 2, 2014 (the "Effective Date"), is subject to all instruments of record, including land owners royalty interests and reserved overriding royalty interests.

Assignor excepts from this Assignment and reserves unto itself an overriding royalty interest that is equal to the difference between the lease burdens and twenty-five percent (25%) of all oil, gas and other minerals that may be produced from the lands under the terms of the Leases, as that term is defined below.

This Assignment is further subject to that certain Declaration of Pooled Unit – Elaine #1, dated to be effective June 1, 2014, by Maricopa Resources LLC, and recorded in Volume 5530, Page 781, of the Official Public Records of Grayson County, Texas.

Assignor does not assign to Assignees any of its interest in and to the Excluded Assets, as that term is defined below.

To accomplish the foregoing, Assignor and Assignees agree as follows:

### ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignees the following, all of which are collectively called the ("Assets"):

a.      The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 1

b.      The rights in and to the oil and gas leases described in Exhibit "A," insofar and only insofar as the leases cover the Well, (the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Well.

c.      All personal property and fixtures associated with the Well, including without limitation the following: all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities.

d.      All existing and effective contracts, agreements, and instruments, insofar as they relate to the properties and interests described in Paragraphs (a) through (c), all of which are identified in Exhibit "B" to this Agreement.

e.      All files and records relating to the items described in Paragraphs (a) through (d) maintained by Assignor and relating to the interests described in Paragraphs (a) through (d), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignees, and Assignees' heirs, successors and assigns, forever.

Assignees and Assignor further agree as follows:

1.      Excluded Assets.  The Assets do not include, and Assignor does not intend to assign or Assignees to receive any interest in the following, all of which are collectively called the ("Excluded Assets"):  all lands, minerals, oil and gas leases and lands pooled with them, units, working interests, executory interests, reversionary interests, net profits interests, net revenue interests, term interests, royalty and overriding royalty interests, fee interests, surface interests, and any other interests of a similar nature, all contracts, agreements, licenses, and servitudes, all salt water or other disposal rights, all easements, leases, surface use, and right-of-way agreements, all pipelines and flow lines, all other property and equipment not directly used in connection with the operation and production of the Well, and any and all rights not expressly conveyed as part of the Assets.

2.      Operations.  Assignees agree that they shall only have the right to operate, produce, maintain, repair, recomplete at a measured depth not greater than 12,309', and plug and abandon the Well.  Assignees shall not have the right to deepen, sidetrack, or replace the Well.

3.      Real property warranty. Assignor warrants title to the assets from and against all persons claiming by, through and under assignor, but not otherwise, and except for that warranty, this assignment is made without warranty of any kind, express, implied or statutory.

4.      Assignees' Assumption of Liabilities and Obligations.  Assignees specifically assume and agree to pay, perform, fulfill, and discharge all obligations, liabilities, costs, damages, and claims after the Effective Date related directly or indirectly to the following: (i) leasehold obligations related to the Well and the Leases, including the accounting and payment of all shut-in royalties, royalties, overriding royalties and other leasehold burdens and all ad valorem and other taxes attributable to or arising from ownership or operation of the Assets; (ii) all post-drilling and completion claims, costs, expenses, liabilities, and obligations accruing or relating to the owning, operating and/or maintaining of the Assets; (iii) all obligations arising under agreements covering or relating to the Assets; (iv) all obligations and liability attributable to or resulting from pollution or contamination of soil, groundwater, or air, and any other contamination of or adverse effect on the environment; (v) the noncompliance with applicable land use, permitting, surface disturbance, licensing, or notification requirements; and, (vi) violation of any federal, state, or local environmental laws, rules or regulations, all referred to as the "Assumed Liabilities and Obligations".  The Assumed Liabilities and Obligations include, without limitation: (a) all future plugging, abandonment, removal, disposal, and restoration obligations associated with the Well and equipment associated with the Well; (b) the necessary and proper capping and burying of all associated flowlines located on the Lease; (c) all necessary disposal of naturally occurring radioactive material (NORM); and, (d) removal of any structures and equipment associated with the Well.

5.      Indemnification.  Subject to prior agreements between Assignor and/or its affiliates and Assignees related to the drilling and completion of the Well, Assignees agree to indemnify, hold harmless and defend Assignor from all

BK Vol Ps
OR 5779 400

claims, demands, losses, damages, punitive damages, costs, expenses, causes of action, or judgments of any kind or character with respect to the Assumed Liabilities and Obligations.

6. <u>Royalty Payments</u>. Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Well to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify, and hold Assignees harmless from and against all claims. Assignees shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

7. <u>Indemnification Claims</u>. With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties, and other expenses incurred in connection with the defense of claims shall be included in Assignees' and Assignor's indemnities. All indemnities of Assignees shall extend to and cover the parent, subsidiary, and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

8. <u>Transfer Taxes and Recording Fees</u>. Assignees shall bear and pay: (i) all State or local government sales, documentation, transfer, gross proceeds, or similar taxes incident to or caused by the transfer of the Assets to Assignees; and, (ii) all filing, recording or registration fees for this Assignment.

9. <u>Government Assignment Forms</u>. Assignor and Assignees may execute separate governmental form assignments of the Assets in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, warranties, rights, titles, powers, and privileges set forth in this Assignment as fully as though they were set forth in each assignment. The assets and interests conveyed by those separate assignments are the same, and not in addition to, the Assets conveyed in this Assignment.

10. <u>No Third Party Beneficiaries</u>. The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify, or limit the rights of Assignor or Assignees, as between themselves.

11. <u>Successors and Assigns</u>. This Assignment and all of the terms, provisions, covenants, obligations, and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignees, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignees as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

EXECUTED on this __23rd__ day of __March__ 2016.

**ASSIGNOR:**
MARICOPA RESOURCES, LLC

By: _____
William C. Griffin, Secretary

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____
Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 3

**ASSIGNEE:**
PAYSON PETROLEUM 3 WELL, L.P.

By: _____

Payson Petroleum Grayson, LLC, General Partner
Matthew C. Griffin, President


| STATE OF TEXAS | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _March 23rd_, 2016 by William C. Griffin, Secretary of Maricopa Resources, LLC.



Notary in and for the State of Texas


| STATE OF TEXAS | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _March 23rd_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well 2014, L.P.



Notary in and for the State of Texas


| STATE OF TEXAS | § |
| COUNTY OF DENTON | § |

This instrument was acknowledged before me on _March 23rd_, 2016 by Matthew C. Griffin, President of Payson Petroleum Grayson, LLC, General Partner of Payson Petroleum 3 Well, L.P.

Notary in and for the State of Texas

JANICE SEYDEL
NOTARY PUBLIC-STATE OF TEXAS
COMM. EXP. 04-19-2020
NOTARY ID 128960971

EXHIBIT "A" TO WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE

**PROPERTY DESCRIPTION:**

1.  The Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, BLK 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, TX, (from the surface of the earth down to the measured depth of 12,309'), collectively referred to in this Assignment as the ("Well").

2.  Whether now owned or acquired in the future, all personal property, all tubing, casing, and other equipment in the wellbore, wellhead equipment, gathering lines, and surface production facilities and other equipment or property of any kind acquired or used for the operation of the Elaine #1 Well, or used for the production or sale of oil, natural gas and other products from the well.

**THE FOLLOWING DESCRIBED LEASES, ONLY INSOFAR AS THEY COVER AND ARE NECESSARY TO OPERATE, MAINTAIN, PRODUCE AND PLUG AND ABANDON BUT NOT DEEPEN OR SIDETRACK THE PROPERTY DESCRIBED HEREINABOVE:**

*EXHIBIT "A"*

| County | Lessor | Lessee | Volume | Page | Date |
|--------|--------|--------|--------|------|------|
| Grayson | Linda Buechner Byrne, as her separate property | TLPC Holdings, Ltd. | 5411 | 536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411 | 532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of the Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411 | 540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049 | 747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061 | 139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057 | 937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031 | 870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031 | 846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031 | 854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031 | 862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031 | 398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031 | 390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034 | 673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034 | 665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036 | 856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031 | 406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031 | 414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464 | 919 | 2/24/2014 |
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464 | 927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464 | 931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464 | 915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464 | 923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464 | 910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521 | 166 | 3/24/2014 |

*END OF EXHIBIT "A"*

WELLBORE ASSIGNMENT, CONVEYANCE, BILL OF SALE, AND RELEASE – Page 5

# EXHIBIT 5 TO SETTLEMENT AGREEMENT

## CONTRACT OPERATING
## SERVICES AGREEMENT

### CONTRACT OPERATING SERVICES AGREEMENT

This Contract Operating Services Agreement (this "*Agreement*") made and entered into this ___ day of July, 2016 by and between Traton Operating Company. (hereinafter "*Contractor*"), and Payson Operating, LLC, (hereinafter "*Owner*"). Owner and Contractor are referred to collectively as the "*Parties*" and individually as a "*Party*".

#### WITNESSETH:

WHEREAS, Owner owns undivided working interests in the oil and gas leases (the "*Leases*") located in the counties and states as described in or covered by the Subject JOAs, as defined below, and as same may be amended from time to time (the land described in such Leases is referred to herein as the "*Contract Area*");

WHEREAS, Owner desires to retain the services of Contractor to act as a contract operator for the Leases; and

WHEREAS, Contractor has the capability to and desires to render such services on behalf of Owner.

WHEREAS, Contractor will perform the services as required by the Owner (of which Payson Operating, LLC is the operator of record at the Texas RRC) under certain joint operating agreements covering the Leases in the Contract Area more particularly described on *Exhibit A*, as same may be amended from time to time (the "*Subject JOAs*");

NOW, THEREFORE, based upon the mutual covenants and considerations contained herein, the sufficiency of which is hereby acknowledged, Contractor and Owner agree as follows:

#### ARTICLE I
#### DESIGNATION AND RESPONSIBILITIES OF CONTRACTOR

1.1 Subject to the terms of this Agreement, Contractor shall conduct and direct all operations on the Leases as permitted and required by and within the limits of this Agreement (the "*Services*"). Contractor shall perform all services with due diligence and dispatch in accordance with the standards for the Operator under the Subject JOAs and generally accepted oil field practice, conforming to all applicable laws, rules, orders and regulations of any competent governmental body, which are now or may become applicable to the operations contemplated by this Agreement. Owner agrees to assist Contractor by providing Contractor with authorizations necessary for the proper performance of its services. Contractor shall use all possible care and diligence to ensure that the Services rendered pursuant to this Agreement are performed:

1) reasonably and prudently;

2) in a skillful and workmanlike manner;

3) in full compliance with all applicable local, municipal, county, state and federal laws and regulations.

Contractor shall perform all work and labor appropriate or necessary for setting, installing, handling, caring for, and maintaining all materials, equipment, and supplies furnished by Owner in connection with the Services.

1.2 Subject to the terms of this Agreement, Contractor shall manage, develop and supervise the Contract Area. Pursuant to such obligations and as required by Owner and as applicable, Contractor shall:

(a) Supervise contract or Contractor's pumpers, whose services will include but will not be limited to gauging tanks, recording well pressure, preparing gauge reports, treating oil, making minor repairs, and reporting unusual or abnormal occurrences.

(b) Review well performance and prepare for Owner monthly reports that summarize production in Contractor's standard form on a per well basis for each of the Subject JOAs. Contractor shall also note and evaluate any abnormal changes in production.

(c) Prepare and furnish to any duly constituted authority having jurisdiction over the Leases any and all reports, statements and information that may be required.

(d) Use its best efforts to establish and maintain complete and accurate well files containing information on operations performed in connection with each well.

(e) Review and approve all invoices and charges for all expenses incurred and credits received.

(f) Keep accurate books of account showing all items of cost or expense incurred in connection with the Leases, and Contract Area with respect to each of the Subject JOAs, and make and pay all charges in accordance with the provisions of this Agreement.

(g) Prepare and render billings to the Owner and non-operators with respect to each of the Subject JOAs for approved expenses and charges for services as Contractor as agreed herein.

1.3 Upon Owner's request, Contractor shall perform the following services in connection with general requests from partners or as otherwise instructed by the Trustee, completing, working-over, or drilling any well in the Contract Area, or reworking, deepening, or plugging back a dry hole:

(a) Conduct field inspection and inventory equipment

1

2

(b)     Locate and contract, on Owner's behalf, contract pumpers or gagues for the Contract Area

(c)     Supervise all routine well service operations and repair and maintenance operations, including onsite supervision of the installation or removal of well equipment, pumping of any treating fluid or substance into a well, and other onsite operations performed under contract by third party or with leased equipment.

(d)     Supervise all drilling and completion operations, workover operations, recompletion operations, and any type of remedial operation, whether or not it would ordinarily be considered a normal well-service operation. This includes contracting with supervisory personnel for onsite supervision as required and maintaining overall supervision of such personnel through day-to-day contact.

(e)     Prepare operating and drilling procedures.

(f)     Prepare operating cost estimates and circulate Authorizations for Expenditures for Owner's approval.

(g)     Obtain all necessary drilling permits and file all necessary and appropriate reports required prior to, during or after completion of operations.

(h)     Conduct overall supervision of drilling supervisor(s) through daily monitoring of drilling, deepening, recompletion or other critical operations.

(i)     Prepare AFEs and procedures and conduct overall supervision through daily monitoring of field personnel, of plugging and abandonment operations of any wells located in the Contract Area in compliance with all federal, state and local regulations and orders.

(j)     Provide emergency response assistance with respect to any accident, spill, upset or similar occurrence requiring immediate action to protect the health, safety and mechanical and environmental integrity of the Contract Area and equipment located thereon.

(k)     Assist Owner in responding to requests from interested parties or the Trustee including but not limited to any efforts to market its interest in the Contract Area, including making its records available and making knowledgeable personnel available to accompany potential buyers and respond to questions as they inspect and tour the properties.

(l)     Maintain land and lease documents.

(m)     Market Production.

(n)     Perform any work falling under Contractor's expertise as directed by Owner.

(o)     Unless otherwise agreed by Contractor, all contracts with third parties (excluding contracts with drilling supervisor(s) for onsite supervision), shall be in the name of Owner under master service contracts in form approved by Owner and similar in form and substance to the Master Service Agreement that has previously been established by Owner. Contractor shall have no liability with respect to third-party contracts. Provided, however, Contractor shall initiate no remedial work, repairs, replacement of equipment, etc. with an estimated total cost exceeding $25,000.00 without the prior written approval of Owner.

1.4     All personnel involved in the day-to-day lease operations shall be under the supervision of the Contractor. The selection, hiring, dismissal and work schedule of such contractors and employees of Contractor shall be determined by Contractor.

1.5     Owner shall have access at all reasonable times to the Leases, to all information pertaining to wells drilled, production secured, and oil and gas marketed, and to the books, records, and vouchers relating to the operation of the Leases. Contractor shall, upon Owner's request, furnish Owner with weekly gauge and run tickets. Notwithstanding anything to the contrary herein, all information referenced in this Section 1.6 shall be the property of Owner.

1.6     Owner will grant Contractor access to an account for revenues, operating costs, fees and expenses for each Contract Area under each of the Subject JOAs (the "*Operating Account*"). Prior to the fifteenth (15th) day of each month, Contractor will prepare and deliver to Owner an operating statement for each of the Subject JOAs (the "*Property Operating Statement*"), which Property Operating Statement shall include (a) Contractor's estimate of production volumes; (b) actual revenues received in the prior month; (c) all costs, expenses and charges billed by third parties to Contractor in the prior month, including, without limitation, all sums due under the Leases and other liquidated monetary obligations; and (d) expenditures and fees recorded by Contractor in form satisfactory to Owner. Promptly after delivery of the Property Operating Statement, Contractor shall transfer sufficient funds from the revenue account into the operating account necessary to cover operating costs, fees (including Contractor fees) and expenses set forth on the Property Operating Statement. Contractor shall have the right to withdraw funds from the Operating Account to pay for the services hereunder. The parties hereto acknowledge and agree that from time to time the funds in the Operating Account may be insufficient to cover the operating expenses for such month, in which case Contractor shall immediately notify Owner of the projected shortfall and any interim payments into the account to cover such shortfall will be evaluated by Owner and paid on a case-by-case basis. In no event shall Contractor be required to advance funds on behalf of Owner to conduct the operations or proceed with any operations, unless there are available funds in the account to cover the cost of such operations or Owner has contracted directly for such services.

1.7     At all reasonable times and upon thirty (30) days prior written notice, Contractor shall permit employees and agents of Owner to have access to its offices and work locations to examine, reproduce and retain copies of such documentation and data and to interview Contractor's personnel in connection therewith, as necessary for Owner to verify and monitor (i) the accuracy and propriety of Service fees and reimbursable expenses pursuant to this Agreement, and (ii) Contractor's compliance with the terms of this Agreement. Where Services hereunder, are billed under fixed rates, Owner's auditors shall have sufficient access to those

3

4

rates to satisfy themselves that the Services have not also been separately billed on some other basis (e.g., a reimbursable basis). The provisions of this Section 1.7 shall be applicable during the term of this Agreement and for a period of one (1) year thereafter. Any costs associated with Owner's audit requirements or procedures shall be solely for Owner's account. If errors or deficiencies are identified by an audit or otherwise, both Parties shall take prompt corrective action thereof.

## ARTICLE II
### COMPENSATION OF CONTRACTOR

2.1     During the term of this Agreement, Contractor shall be compensated:

    (a)     For Services completed under Section 1.2, in accordance with the overhead rate structure set forth on *Exhibit B* hereto.

    (b)     For Services completed under Section 1.3, in accordance with the hourly rate structure set forth on *Exhibit C* hereto.

2.2     The above compensation shall not include any direct costs and third-party costs that are proper charges to the Contractor Account that are incurred by the Contractor in connection with services rendered hereunder. Owner shall reimburse Contractor for any third-party charges incurred by Contractor in accordance with this Agreement within thirty (30) business days of delivery of invoice.

## ARTICLE III
### RESPONSIBILITIES OF OWNER

3.1     Owner shall be the operator of record with respect to the Leases under each of the Subject JOAs.

3.2     Owner shall be duly authorized under all laws, rules, orders and regulations of any competent governmental body, which are now or may become applicable to the operations contemplated by this Agreement and shall obtain and maintain all necessary permits, bonds and sureties as may be required thereunder.

## ARTICLE IV
### HEALTH AND SAFETY OBLIGATIONS

BY EXECUTING THIS AGREEMENT, CONTRACTOR REPRESENTS AND WARRANTS THAT IT IS QUALIFIED TO DO BUSINESS IN EACH OF THE JURISDICTIONS WITHIN THE CONTRACT AREA. CONTRACTOR FURTHER REPRESENTS AND WARRANTS THAT ITS EMPLOYEES ARE QUALIFIED AND COMPETENT AND THAT CONTRACTOR IS, AND WILL BE THROUGHOUT THE DURATION OF THIS AGREEMENT, TRAINED AND COMPLIANT TO THE STANDARDS OF A REASONABLY PRUDENT OPERATOR IN ALL MATTERS RELATED TO HEALTH, SAFETY AND WORK ENVIRONMENT.

5

## ARTICLE V
### INDEPENDENT CONTRACTOR

Contractor undertakes the performance of the provisions of this Agreement as an independent contractor, and neither Contractor nor any of its employees, contractors or agents will be deemed to be an employee, servant, agent or partner of or joint venturer with Owner. Owner shall not, in any respect, be responsible for the hiring, employment or working conditions of the persons employed or retained by Contractor in connection with the performance of Contractor's obligations under the terms of this Agreement.

## ARTICLE VI
### INSURANCE

Contractor shall maintain insurance of the type, in the amounts and with the limits set forth on *Exhibit D* hereto. Each party shall be named as an additional insured under each of the policies for the duration hereof.

## ARTICLE VII
### FORCE MAJEURE

Contractor shall not be liable to Owner for any loss on the Leases caused by war, strikes, tornadoes, floods, governmental priorities on materials or other governmental restrictions, or inability to obtain suitable equipment or labor resulting from any other causes not due to Contractor's failure to exercise reasonable diligence in the performance of Contractor's obligations hereunder. If Contractor is delayed or prevented from performing for any such cause, it shall do all things reasonably possible to remove such cause and shall resume performance hereunder as soon as such cause is removed.

## ARTICLE VIII
### BINDING EFFECT OF AGREEMENT

This Agreement shall be binding upon and inure to the benefit of the parties, their respective successors and permitted assigns. The right of either party to assign this Agreement is subject to the prior written consent of the non-assigning party, which consent shall not be unreasonably withheld or delayed. Notwithstanding the immediately preceding sentence, each party may assign and transfer this Agreement to an affiliate or pursuant to a reorganization or change in control of such party or the person that controls such party without such consent. Any assignment in contravention of this *Article VIII* shall be void.

## ARTICLE IX
### AMENDMENT, TERMINATION AND TURNOVER DATE

9.1     Either party hereto has the right to terminate this Agreement without cause by providing the other party with sixty (60) days prior written notice. In the event of a material breach of this Agreement by either party, including the failure of a party to perform any operation or action proposed hereunder that, the other party may terminate this Agreement by providing the breaching party with thirty (30) days notice. In the event of termination by Owner,

6

Owner shall pay Contractor in full all amounts due Contractor through the termination date. Upon termination of this Agreement or partial termination as to any Contract Area, Contractor will cooperate with Owner for an orderly transition of operations and will turn over all books and records regarding the Contract Area upon request. Owner shall compensate Contractor for post-termination services requested by Owner and provided in connection with the transition at Contractor's standard hourly rate as set forth on *Exhibit C.*

9.2    Upon termination of this Agreement, the Parties shall not be relieved of any liabilities arising from or incident to Services rendered. The Parties shall not be liable to either Party for any cost or loss in connection with such termination, including but not limited to loss of anticipatory profits. Upon termination of this Agreement, Contractor shall immediately remove all of its and its subcontractors' equipment and materials from Owner's premises that are not necessary for the completion of or the provision of any Service then underway and, notwithstanding anything herein to the contrary, sixty (60) days after the receipt of Contractor of notice of the termination of this Agreement by Owner, Owner shall bear no responsibility for the equipment or materials of Contractor that remain on Owner's premises but which are not necessary for the completion or the provision of any Service then underway.

9.3    If either party (a) generally fails to pay, or admits in writing its inability to pay, its debts as they become due, (b) commences any insolvency proceeding with respect to itself, (c) take any action to effectuate or authorize either (a) or (b), (d) becomes the subject of any involuntary insolvency proceeding, or has any writ, judgment, warrant of attachment, execution or similar process issued or levied against all or a substantial part of its properties, and any such proceeding or petition is not dismissed, or such writ judgment, warrant of attachment, execution or similar process is not released, vacated or fully bonded within sixty (60) days after commencement, filing or levy (e), admits the material allegation of a petition against it in any insolvency proceeding, or an order for relief is issued against it in any insolvency proceeding, or (f) consents to the appointment of a receiver, trustee, custodian, conservator, liquidator, mortgagee in possession (or agent therefore), for itself or a substantial portion of its property or business, then the other party may, by giving written notice to such party, terminate this Agreement as of the date specified in such notice.   A termination under this Section shall be deemed a termination for cause,

## ARTICLE X
## NOTICES

Until changed by appropriate notice in writing, all notices, reports, and other correspondence required by or made necessary by the terms of this Agreement shall be deemed to have been duly given or served on the date on which personally delivered, or sent by electronic transmission via email or facsimile transmission, with receipt acknowledged, or three (3) Business Days after the same shall have been sent via certified United States Mail. For purposes of this Agreement, the term *Business Days* means a day other than a Saturday, Sunday or legal holiday for commercial banks under the laws of the State of Texas or the laws of the United States of America.

## ARTICLE XI
## CONFIDENTIAL INFORMATION
## AND OWNERSHIP OF DOCUMENTS

11.1    Any and all information, in whatever form or format, described or defined by each party as confidential and made available to the other party for the performance of the Agreement shall be and remain the exclusive property of the disclosing party and shall be treated as confidential.

11.2    With respect to such confidential information both parties agree not to disclose or divulge such information to any third party except as may be necessary for the performance of this Agreement.   Both parties shall take reasonable measures to protect and preserve the confidential nature of such information and shall be responsible for any breach hereof committed by its employees, it being understood that the confidentiality obligations of both parties are of a continuing nature and shall continue for one (1) year after the termination date of this agreement

11.3    The foregoing restrictions shall not apply to any such confidential information that is:

(a)    Already known by the receiving party at the time of disclosure;

(b)    Publicly known or becomes publicly known through no fault of the receiving party;

(c)    Received from a third party that is free to disclose the information to the receiving party;

(d)    Communicated to a third party with the express prior written consent of the disclosing party; or

(e)    Lawfully required to be disclosed to a governmental agency or is otherwise required to be disclosed by law, provided that before making such disclosure the receiving Party shall give the disclosing Party reasonable opportunity to object or insure confidential treatment of the information.

11.4    Both parties acknowledge that the breach of this confidentiality obligation may cause the other party serious economic harm and that the remedies available to the injured party by law may be inadequate. Therefore, upon any breach hereof by either party, the non-breaching party shall be entitled to seek immediate injunctive relief and/or specific performance, in addition to any other appropriate forms of equitable or legal relief, including but not limited to, monetary damages and reasonable attorney's fees.

11.5    Both Owner and Contractor agree that all tracings, designs, drawings, field notes, requisitions, purchase orders, specifications, computer programs (data files and other software in whatever form), and other documents or records developed by such party in connection with this Agreement or otherwise shall be the sole property of such party.

7

8

ARTICLE XII
AMENDMENTS TO THE AGREEMENT
AND GOVERNING LAWS

THIS AGREEMENT SHALL NOT BE VARIED EXCEPT WITH THE WRITTEN CONSENT OF THE PARTIES. IN THE EVENT ONE OR MORE OF THE PROVISIONS IS HELD INVALID BY ANY COURT OF COMPETENT JURISDICTION, THE SAME SHALL IN NO MANNER AFFECT THE VALIDITY OF ANY OF THE OTHER PROVISIONS. THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS.

ARTICLE XIII
INDEMNIFICATION

13.1    CONTRACTOR SHALL GENERALLY HAVE THE PROTECTIONS, BENEFITS, AND INDEMNIFICATIONS OF OWNER UNDER THE TERMS OF THE A.A.P.L. FORM 610 - 1989 MODEL FORM OPERATING AGREEMENT ("*JOA*") JUST AS IF CONTRACTOR WERE THE DESIGNATED OPERATOR UNDER THE JOA, AND TO THE FULLEST EXTENT POSSIBLE, OWNER HEREBY ASSIGNS AND TRANSFERS ALL OF SUCH PROTECTIONS, BENEFITS AND INDEMNIFICATIONS TO CONTRACTOR DURING THE TERM OF THIS AGREEMENT; PROVIDED, HOWEVER, THAT SUCH ASSIGNMENT SHALL NOT ENTITLE CONTRACTOR (A) TO CLAIM OR ASSERT ANY LIENS OR SECURITY INTERESTS THAT WOULD BE GRANTED TO THE OPERATOR UNDER THE JOA, OR (B) TO SETTLE ANY CLAIMS OR LAWSUITS PERTAINING TO THE CONTRACT AREA.

13.2    CONTRACTOR'S RELEASE OF OWNER:

CONTRACTOR RELEASES OWNER AND OWNER'S PARENT, SUBSIDIARIES, OFFICERS, DIRECTORS, AND EMPLOYEES ("OWNER PARTIES") OF AND FROM ANY LIABILITY AS TO ALL CLAIMS, PENALTIES, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE (EXCLUDING GROSS NEGLIGENCE AND WILLFUL MISCONDUCT) OF ANY OF THE OWNER PARTIES, ON ACCOUNT OF BODILY INJURY, DEATH AND/OR DAMAGE TO OR LOSS OF PROPERTY OF ANY KIND. CONTRACTOR'S OBLIGATIONS UNDER THIS SECTION SHALL BE PRIMARY AND WITHOUT REGARD TO AND WITHOUT ANY RIGHT TO CONTRIBUTION FROM ANY INSURANCE MAINTAINED OR MADE AVAILABLE TO OWNER. CONTRACTOR AND OWNER HEREBY AGREE THAT CONTRACTOR WILL BE COVERED BY AVAILABLE LIABILITY INSURANCE, UNDER WHICH THE INSURER HAS NO RIGHT OF SUBROGATION AGAINST OWNER OR CONTRACTOR. IT IS AGREED THAT SAID INSURANCE REQUIREMENTS SHALL AUTOMATICALLY BE AMENDED TO CONFORM TO THE MAXIMUM MONETARY LIMITS PERMITTED UNDER APPLICABLE LAW.

13.3    OWNER'S RELEASE OF CONTRACTOR:

OWNER RELEASES CONTRACTOR AND CONTRACTOR'S PARENT, SUBSIDIARIES, OFFICERS, DIRECTORS, AND EMPLOYEES ("CONTRACTOR PARTIES") OF AND FROM ANY LIABILITY AS TO ALL CLAIMS, PENALTIES, DEMANDS, AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE (EXCLUDING GROSS NEGLIGENCE AND WILLFUL MISCONDUCT) OF ANY OF THE CONTRACTOR PARTIES, ON ACCOUNT OF BODILY INJURY, DEATH AND/OR DAMAGE TO OR LOSS OF PROPERTY OF ANY KIND. OWNER'S OBLIGATIONS UNDER THIS SECTION SHALL BE COVERED BY AVAILABLE LIABILITY INSURANCE, UNDER WHICH THE INSURER HAS NO RIGHT OF SUBROGATION AGAINST OWNER OR CONTRACTOR. IT IS AGREED THAT SAID INSURANCE REQUIREMENTS SHALL AUTOMATICALLY BE AMENDED TO CONFORM TO THE MAXIMUM MONETARY LIMITS PERMITTED UNDER APPLICABLE LAW.

13.4    THIRD PARTY CLAIMS:

For losses, claims, demands, liabilities, or causes of action brought by or on behalf of anyone other than those claimants listed in *Sections 13.2* and *13.3* above, the Parties' respective indemnity obligations shall be as set forth in this *Section 13.4.*

(1)    Contractor's Negligence: CONTRACTOR AGREES TO PROTECT, DEFEND (INCLUDING ALL COSTS, EXPENSES, AND REASONABLE ATTORNEYS' FEES), INDEMNIFY, RELEASE AND HOLD THE OWNER INDEMNIFIED PARTIES HARMLESS FROM AND AGAINST ANY AND ALL LOSSES, CLAIMS, DEMANDS, LIABILITIES, OR CAUSES OF ACTION OF EVERY KIND AND CHARACTER, IN FAVOR OF ANY PERSON OR PARTY, FOR INJURY TO OR ILLNESS OR DEATH OF ANY PERSON, OTHER THAN AS PROVIDED IN *SECTIONS 13.2* AND *13.3* ABOVE, OR DAMAGE TO OR LOSS OF PROPERTY OF ANY SUCH PERSON, AND WHICH SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE ARISES OUT OF OR IS INCIDENT TO ANY WORK OR SERVICE TO BE PERFORMED UNDER THIS AGREEMENT TO THE EXTENT, AND IN THE PROPORTION THAT, SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE IS CAUSED OTHER THAN BY THE NEGLIGENCE OF OWNER, ITS EMPLOYEES, AGENTS OR OTHER CONTRACTORS THAT ARE DIRECTLY RESPONSIBLE TO OWNER.

(2)    Owner's Negligence: OWNER AGREES TO PROTECT, DEFEND (INCLUDING ALL COSTS, EXPENSES, AND ATTORNEYS' FEES), INDEMNIFY, RELEASE AND HOLD THE CONTRACTOR INDEMNIFIED PARTIES HARMLESS FROM AND AGAINST ANY AND ALL LOSSES, CLAIMS, DEMANDS, LIABILITIES, OR CAUSES OF ACTION OF EVERY KIND AND CHARACTER, IN FAVOR OF ANY PERSON OR PARTY, FOR INJURY TO OR ILLNESS OR DEATH OF ANY PERSON, OTHER THAN AS PROVIDED IN *SECTIONS 13.2* AND *13.3* ABOVE, OR DAMAGE TO OR LOSS OF PROPERTY OF ANY SUCH PERSON, AND WHICH SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE ARISES OUT OF OR IS

9

10

INCIDENT TO ANY WORK OR SERVICE TO BE PERFORMED UNDER THIS AGREEMENT, TO THE EXTENT, AND ONLY TO THE EXTENT, AND ONLY IN THE PROPORTION THAT, SUCH INJURY, ILLNESS, DEATH OR PROPERTY DAMAGE IS CAUSED BY THE NEGLIGENCE OF OWNER, ITS EMPLOYEES, AGENTS OR OTHER CONTRACTORS THAT ARE DIRECTLY RESPONSIBLE TO OWNER.

13.5   IT IS THE INTENT OF THE PARTIES HERETO THAT ALL OBLIGATIONS, LIABILITIES, AND RISKS ALLOCATED OR ASSUMED BY THE PARTIES UNDER TERMS OF THIS CONTRACT, INCLUDING, WITHOUT LIMITATION, *SECTIONS 13.2* THROUGH *13.4*, BE WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING PREEXISTING CONDITIONS, STRICT LIABILITY, VIOLATIONS OF ANY STATE, OR FEDERAL LAW, BREACH OF CONTRACT, BREACH OF WARRANTY, TRESPASS, CONVERSION, NUISANCE, TORT, OR THE NEGLIGENCE OF ANY PARTY OR PARTIES, WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE. THE RELEASES AND ASSUMPTIONS OF LIABILITY AND ALLOCATIONS OF RISKS EXTENDED BY THE PARTIES HERETO UNDER *SECTIONS 13.2* THROUGH *13.4* SHALL INURE TO THE BENEFIT OF THE PARTIES, THEIR PARENT, HOLDING AND SUBSIDIARIES, AFFILIATES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS AND SERVANTS. THE TERMS AND PROVISIONS OF SECTIONS 13.2 THROUGH 13.4 SHALL HAVE NO APPLICATION TO CLAIMS OR CAUSES OF ACTION ASSERTED AGAINST OWNER OR CONTRACTOR BY REASON OF ANY AGREEMENT OF INDEMNITY WITH A PERSON OR ENTITY NOT A PARTY HERETO.

13.6   IT IS EXPRESSLY AGREED THAT OWNER SHALL NOT BE LIABLE TO THE CONTRACTOR PARTIES FOR ANY SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING DIRECTLY OR INDIRECTLY, OUT OR OF IN CONNECTION WITH THE SERVICES OR OPERATIONS HEREUNDER RELATED TO RESERVOIR DAMAGE, LOSS OF RESERVES, OR CRATERING OR BLOWOUT OF THE BOREHOLE, INCLUDING, WITHOUT LIMITATION, LOSS OF USE, LOSS OF DATA, LOSS OF ASSETS, LOSS OF PROFIT, LOSS OF BUSINESS, OR BUSINESS INTERRUPTION UNLESS CAUSED BY THE SOLE NEGLIGENCE (ACTIVE OR PASSIVE) OF OWNER OR ANY OF THE OWNER PARTIES.

13.7   IT IS EXPRESSLY AGREED THAT CONTRACTOR SHALL NOT BE LIABLE TO THE OWNER PARTIES FOR ANY SPECIAL, PUNITIVE, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING DIRECTLY OR INDIRECTLY, OUT OR OF IN CONNECTION WITH THE SERVICES OR OPERATIONS HEREUNDER RELATED TO RESERVOIR DAMAGE, LOSS OF RESERVES, OR CRATERING OR BLOWOUT OF THE BOREHOLE, INCLUDING, WITHOUT LIMITATION, LOSS OF USE, LOSS OF DATA, LOSS OF ASSETS, LOSS OF PROFIT, LOSS OF BUSINESS, OR BUSINESS INTERRUPTION UNLESS CAUSED BY THE SOLE NEGLIGENCE (ACTIVE OR PASSIVE) OF CONTRACTOR OR ANY OF THE CONTRACTOR PARTIES.

13.8   As a part of the consideration for this Agreement, Contractor hereby agrees that the provisions of the foregoing *Sections 13.2* through *13.7* inclusive shall extend to and be enforceable by and for the benefit of any non-operating concurrent working interest Owner, joint ventures or partners for whom Owner may be performing operations or services.

MISCELLANEOUS

14.1   This Agreement, drawn in counterpart, shall be binding upon the Parties and their respective successors, and assigns. Notwithstanding the foregoing, this Agreement and the duties and obligations hereunder are not assignable by Contractor without the written consent of Owner.

14.2   In any dispute arising among the Parties to this Agreement, the prevailing party shall be entitled to collect all costs, including attorneys' fees.

14.3   The captions of any articles herein are intended for convenient references only and same shall not be, nor be deemed to be, interpretive of the contents of such sections.

14.4   Harris County, Texas shall be the exclusive venue and jurisdiction for any litigation between the Parties.

14.5   If any provision or part of any provision of this Agreement shall be held invalid, the remainder shall be deemed valid and effective, and the Parties shall endeavor to replace the invalid terms with terms which correspond best to the original economic and general intention of the Parties, it being the intention of the Parties hereto that each provision hereof is being stipulated separately.

14.6   EACH PARTY HERETO KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY (a) WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THIS AGREEMENT, OR DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED OR ASSOCIATED THEREWITH, BEFORE OR AFTER TERMINATION; (b) WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION ANY "SPECIAL DAMAGES," AS DEFINED BELOW; (c) CERTIFIES THAT NEITHER IT NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSELORS HAS REPRESENTED, EXPRESSLY OR OTHERWISE, OR IMPLIED THAT THE CERTIFYING PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS; AND (d) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED THEREBY, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION. AS USED IN THIS SECTION, "*SPECIAL DAMAGES*" INCLUDES ALL SPECIAL, CONSEQUENTIAL, INDIRECT, EXEMPLARY, OR PUNITIVE DAMAGES

11

12

(REGARDLESS OF HOW NAMED), BUT DOES NOT INCLUDE ANY PAYMENTS OR FUNDS WHICH ANY PARTY HAS EXPRESSLY PROMISED TO PAY OR DELIVER TO ANY OTHER PARTY.

    14.7   This instrument embodies the whole agreement of the Parties. There are no promises, terms, conditions, or obligations other than those contained herein. Should Contractor provide or render any Service, then in the event of a conflict between the terms of performance for such Services or Service, whether made orally or in writing, and the terms of this Agreement, the terms of this Agreement shall prevail except for any activity-specific instructions or directions. In the event of a conflict between the provisions hereof and the provisions of any printed or other pre-prepared form of work or service order, job, or delivery ticket, or other similar form, submitted to Contractor by Owner in connection with any Services performed hereunder, the provisions of this Agreement shall prevail and be controlling.

*[SIGNATURES APPEAR ON THE FOLLOWING PAGE]*

13

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the day and year first above written.

**TRATON OPERATING COMPANY**

By: _Patrick W. Merritt_
Printed Name: _Patrick W. Merritt_
Title: _President_

**PAYSON OPERATING, LLC,**

By: _____
Name: _____
Title: _____

**Signature Page to**
**Contract Operator Services Agreement**

# EXHIBIT 6 TO SETTLEMENT AGREEMENT

# SETTLEMENT APPROVAL ORDER

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ( the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC ("Debtors") in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.      Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and all parties in interest.

4.      Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment executed by 3 Well LP and the Subject Wells Assignment executed by 2014 LP, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.      The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      The 2014 LP Subject Claims Assignment and Participation Agreement attached as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

7.      This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

8.      A general unsecured claim of 3 Well LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 27.7891% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

9.      A general unsecured claim of 2014 LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 72.21084% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

10.     The releases provided for in the Settlement Agreement are hereby approved.  Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are

released.

11.    Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the following:  (i) the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery (as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement), and (ii) the 2014 LP Avoidance Action Claims Net Recovery and the 2014 LP Partnership Related Claims Net Recovery (as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement).

12.    Payson Petroleum is hereby granted standing and authority to enforce and prosecute the (i) 3 Well LP Avoidance Action Claims, (ii) 3 Well LP Partnership Related Claims, (iii) 2014 LP Avoidance Action Claims, and (iv) 2014 LP Partnership Related Claims, without further order of this Court.

13.    Payson Petroleum is hereby appointed (i) the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement, and (ii) the representative of the 2014 LP bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

14.    No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and

Participation Agreement or this Order.

15.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum has the exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims or the Payson/3 Well LP Partnership Related Claims that in its judgment would not be cost justified.

16.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of either parties entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

17.     Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or take any action with respect to the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims or the Payson/2014 LP Partnership Related Claims that in its judgment would not be cost justified.

18.     The Debtors and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance

with the Motion and to implement the terms of the Settlement Agreement without further notice,

hearing or order of the Court.

     19.     This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.


                               _____
                               HONORABLE BRENDA T. RHOADES,
                               UNITED STATES BANKRUPTCY JUDGE


**SUBMITTED BY:**

*/s/*_____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


*/s/*_____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)


AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE**
**FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,**
**AND MARICOPA RESOURCES, LLC**


*/s/*_____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE**
**FOR PAYSON PETROLEUM 3 WELL, L.P.  AND**
**PAYSON PETROLEUM 3 WELL 2014, L.P.**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, LP, | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. \_\_]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. ("Debtor") in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.      Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4.      Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.      The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.        This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

7.        A general unsecured claim of Payson Petroleum against 3 Well LP is hereby allowed in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50).

8.        The releases provided for in the Settlement Agreement are hereby approved. Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released. Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are released.

9.        Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement.

10.        Payson Petroleum is hereby granted standing and authority to enforce and prosecute the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims without further order of this Court. Payson Petroleum is hereby appointed the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the

3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 3 Well LP Partnership Related Claims or the 3 Well LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

_____
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**SUBMITTED BY:**

/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE**
**FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,**
**AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE**
**FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,**
**AND MARICOPA RESOURCES, LLC**

/s/ _____

Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, LP, | § | Case No. 17-40180 |
| | § | Chapter 7 |
| DEBTOR. | § | |

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

[Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. ("Debtor") in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1. The Motion is GRANTED as set forth herein.

2. The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3. Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4. Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5. The 2014 LP Subject Claims Assignment and Participation Agreement attached as

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

7.      A general unsecured claim of Payson Petroleum against 2014 LP is hereby allowed in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50).

8.      The releases provided for in the Settlement Agreement are hereby approved. Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released. Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are released.

9.      Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the 2014 LP Avoidance Action Claims Net Recovery and the 2014 LP Partnership Related Claims Net Recovery as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement.

10.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims without further order of this Court. Payson Petroleum is hereby appointed the representative of the 2014 LP bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014

LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 2014 LP Partnership Related Claims or the 2014 LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

_____
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**SUBMITTED BY:**

*/s/* _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


*/s/* _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

/s/_____

Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

# EXHIBIT 7 TO SETTLEMENT AGREEMENT

# SETTLEMENT MOTIONS

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | **JOINTLY ADMINISTERED** |
| MARICOPA RESOURCES, LLC, | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | **Chapter 11** |

---

### JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION.  IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT.  IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING.  IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN.  THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to

Compromise"), and in support thereof, respectfully show unto the Court the following:

# I.
## PROCEDURAL STATUS

1.    <u>Payson Debtor Bankruptcy Filings</u>.  On June 10, 2016, Payson Petroleum, Inc. ("<u>Payson Petroleum</u>"), Payson Operating, LLC ("<u>Payson Operating</u>"), and Maricopa Resources, LLC ("<u>Maricopa</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in this Bankruptcy Court.[1]  *See* Docket No. 1 in Bankruptcy Case Nos. 16-41043, 16-40144, *and* 16-40145.  On July 12, 2016, the Bankruptcy Court entered orders converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy Code.  *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket No. 41 in Case No. 16-40145.  On July 18, 2016, the Bankruptcy Court entered orders approving the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee in the Payson Debtors' bankruptcy cases.  *See* Docket No. 55 in Case No. 16-41043, Docket No. 50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045.  On August 11, 2016, the Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under Case No. 16-41044.  *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-41044, *and* Docket No. 81 in Case No. 16-41045.

2.    <u>Adversary Proceeding</u>.  On November 1, 2016, the Payson Trustee filed his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in Adversary Proceeding No. 16-04106 (the "<u>Adversary Proceeding</u>") against Payson Petroleum 3 Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>").

3.    <u>LP Debtor Bankruptcy Filings</u>.  On January 31, 2017, 3 Well LP and 2014 LP (collectively, the "<u>LP Debtors</u>") filed voluntary petitions under Chapter 7 of the Bankruptcy Code.

---

[1]   Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "<u>Payson Debtors</u>."

*See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180.  LP Trustee was

appointed as Chapter 7 Trustee for the LP Debtors.

4.     <u>Stay Issues</u>.  On February 21, 2017, LP Trustee filed his *Certificate of Notice of*

*Bankruptcy Filing and Stay* in the Adversary Proceeding.  *See* Docket No. 24 in Adversary

Proceeding.  On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion*

*to Lift Stay* in LP Debtor's bankruptcy cases which, *inter alia*, provides that the parties are "granted

relief from the automatic stay … to continue with and fully litigate claims that are or could be

pled" in the Adversary Proceeding.  Docket No. 26 in Case No. 17-40180 *and* Docket No. 29 in

Case No. 17-40179.

5.     <u>Amended Complaint</u>.  On July 13, 2017, Payson Trustee filed his *First Amended*

*Complaint* in the Adversary Proceeding.  *See* Docket No. 25 in Adversary Proceeding.

6.     <u>Jurisdiction & Venue</u>.  This Court has jurisdiction over the subject matter of this

Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## FACTUAL BACKGROUND

7.     <u>Nature of Payson Debtors' Businesses</u>.     Matthew C. Griffin ("<u>Griffin</u>") formed

Payson Petroleum in 2008 to, *inter alia*, (i) promote the sale of interests in limited partnerships

and (ii) operate oil and gas wells for such limited partnerships.  Griffin formed Payson Operating

in 2010 to act as a contract operator for Payson Petroleum.  Griffin formed Maricopa in 2012 to,

*inter alia*, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8.     <u>Nature of 3 Well LP's and 2014 LP's Businesses</u>.  Payson Petroleum Grayson, LLC

formed 3 Well LP in 2013 and 2014 LP in 2014 to, *inter alia*, drill, complete, and own interests in

the Subject Wells.

9.      Turnkey Agreements.  On or about October 13, 2013, Payson Petroleum and 3 Well

LP entered into a Subscription Turn Key Agreement under which 3 Well LP agreed to pay Payson

Petroleum certain amounts for the drilling and completion of the Subject Wells (the "3 Well LP

Turnkey Agreement").  On or about January 12, 2014, Payson Petroleum and 2014 LP entered into

a Subscription Turn Key Agreement under which 2014 LP agreed to pay Payson Petroleum certain

amounts for the drilling and completion of the Subject Wells (the "2014 LP Turnkey Agreement"

and collectively with the 3 Well LP Turnkey Agreement the "Turnkey Agreements").  In the

Adversary Proceeding, Payson Petroleum asserts claims for breach of the Turnkey Agreements

against 3 Well LP in the amount of $17,115,777 and 2014 LP in the amount of $5,343,803 (the

"Breach of Turnkey Agreement Claims").

10.      Working Interest Assignments.  On or about Marcy 28, 2016, Maricopa assigned

certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine

#1 (API #181-31547) (collectively the "Subject Wells") to 3 Well LP and 2014 LP via three (3)

certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in

the real property records of Grayson County, Texas at Instrument Numbers:  2016-00006064,

2016-00006065, and 2016-00006066.  The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "Working Interest Assignments").  In the Adversary Proceeding, Maricopa asserts

claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce

Code against 3 Well LP and 2014 LP for avoidance of the Working Interest Assignments and recovery of the interests transferred or their value. Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("Traton"), the Payson Trustee's approved contract operating company.

11. _Additional Avoidable Transfers._ In addition to the Working Interest Assignments, Payson Petroleum transferred $1,274,310 to 3 Well LP and $2,862,000 to 2014 LP between January and February 2014 in exchange for interests in those limited partnerships that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "Investment Transfers"). In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfers from 3 Well LP and 2014 LP (the "Investment Transfer Claims").

### III.
### PROPOSED SETTLEMENT

12. The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties. Attached hereto as **Exhibit A** is a copy of the Settlement Agreement.[2]

13. _Agreed Final Judgment._ As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, _inter alia_, provide that the Wellbore Interest Assignments are

---

[2] To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control. This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement. Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson

Petroleum on its Breach of Turnkey Agreement Claims against 3 Well LP in the amount of

$8,557,888.50 and 2014 LP in the amount of $2,671,900.50.  *See* Exhibit 3 to Settlement

Agreement.

      14.    <u>Conveyance of Interests in Subject Wells</u>.  3 Well LP and 2014 LP will reassign

the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by

Traton until Maricopa sells those interests under 11 U.S.C. § 363.  As explained in further detail

in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject

Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed

as follows:  (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP.

Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the

Subject Wells.

      15.    <u>Allowed Claims</u>.  The Settlement Agreement also provides that the parties will

agree to the following allowed unsecured claims:

- Payson Petroleum shall hold (i) an allowed unsecured claim in the 3 Well LP bankruptcy case in the amount of $8,557,888.50 and (ii) an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50;

- 3 Well LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement; and

- 2014 LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

      16.    <u>Prosecution of and Participation in Avoidance Action Claims</u>.  The Settlement

Agreement further provides that the parties will enter into (i) the 3 Well LP Subject Claims

Assignment and Participation Agreement and (ii) the 2014 LP Subject Claims Assignment and

Participation Agreement (collectively the "Claims Assignment and Participation Agreements").

Pursuant to the Claims Assignment and Participation Agreements:

- 3 Well LP will assign a fifty percent (50%) interest in net recoveries from litigation of 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims, as defined in the 3 Well LP Subject Claims Assignment and Participation Agreement, with 3 Well LP retaining the remaining fifty percent (50%) interest; and

- 2014 LP will assign a fifty percent (50%) interest in net recoveries from litigation of 2014 LP Avoidance Action Claims and 2014 Partnership Related Claims, as defined in the 2014 LP Subject Claims Assignment and Participation Agreement, with 2014 LP retaining the remaining fifty percent (50%) interest.

Payson Petroleum shall be granted standing to prosecute 3 Well LP and 2014 LP Avoidance Action Claims and Partnership Related Claims in the 3 Well LP and 2014 LP bankruptcy cases, and 3 Well LP and 2014 LP shall enter into engagement agreements with special litigation counsel for the Payson Trustee to prosecute such claims for the benefit of the Payson Petroleum, 3 Well LP, and 2014 LP bankruptcy estates.

17. **Releases.** Except for claims expressly reserved in the Settlement Agreement, all claims or causes action between the parties will be released.

# IV.
## RATIONALE

18. **Benefit to Maricopa Estate.** The Maricopa bankruptcy estate receives the following benefits from the settlement:

- the interests assigned to 3 Well LP and 2014 LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 3 Well LP and/or 2014 LP.

19. <u>Benefit to Payson Petroleum Estate</u>. The Payson Petroleum bankruptcy estate receives the following benefits from the settlement:

- an allowed general unsecured claim in the 3 Well LP bankruptcy case in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 3 Well LP;

- an allowed general unsecured claim in the 2014 LP bankruptcy case in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 2014 LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 3 Well LP Avoidance Action Claims, 2014 LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, and 2014 LP Partnership Related Claims (the "<u>Subject Claims</u>") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement, 3 Well LP Subject Claims Assignment and Participation Agreement and 2014 LP Subject Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 3 Well LP and/or 2014 LP.

20. <u>Benefit to Payson Operating Estate</u>. Except for claims expressly preserved under the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which have been or could have been asserted against Payson Operating by 3 Well LP and/or 2014 LP.

21. <u>Benefit to 3 Well LP Estate</u>. The 3 Well LP bankruptcy estate receives the following benefits from the settlement:

- 3 Well LP will obtain 12.5055% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 3 Well LP will retain a fifty percent (50%) interest in all 3 Well LP Avoidance Action Claims Net Recovery and 3 Well LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and 3 Well LP Subject Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, 3 Well LP's bankruptcy estate is released from claims which have been or could have been asserted against 3 Well LP by Payson Petroleum, Payson Operating, and/or Maricopa.

22.    <u>Benefit to 2014 LP Estate</u>.  The 2014 LP bankruptcy estate receives the following benefits from the settlement:

- 2014 LP will obtain 32.4945% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 2014 LP will retain a fifty percent (50%) interest in all 2014 LP Avoidance Action Claims Net Recovery and 2014 LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and 3 Well LP Subject Claims Assignment and Participation Agreement; *and*

- except for claims expressly preserved under the Settlement Agreement, 2014 LP's bankruptcy estate is released from claims which have been or could have been asserted against 2014 LP by Payson Petroleum, Payson Operating, and/or Maricopa.

## V.
## RELIEF REQUESTED

23.    The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

# VI.
## BASIS FOR RELIEF

24.      Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id.* (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id.*

25.      The factors support granting the Joint Motion to Compromise. First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors. Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates. The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa, 3 Well LP, and 2014 LP. Additionally, the Settlement

Agreement (i) reduces 3 Well LP and 2014 LP's liability for failing to pay Payson Petroleum

amounts owed under the Turnkey Agreements by fifty percent (50%), (ii) provides an arrangement

for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii)

eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar

claims against partners of 3 Well LP and 2014 LP in different proceedings and forums.  In sum,

the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of

their respective bankruptcy estates and should be approved.  *See* Affidavit of Jason R. Searcy,

attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

26.     A proposed agreed order is attached hereto as **Exhibit D**.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the

bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources,

LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estates of Payson Petroleum

3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. respectfully request that the Court approve

the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: ___, 2017                    Respectfully submitted,

By:   /s/
          Phil Snow
          State Bar No. 18812600
          Blake Hamm
          State Bar No. 24069869
          SNOW SPENCE GREEN LLP
          2929 Allen Parkway, Suite 2800
          Houston, Texas 77019
          (713) 335-4800
          (713) 335-4848 (Fax)

          **COUNSEL FOR JASON R. SEARCY,**
          **CHAPTER 11 TRUSTEE FOR PAYSON**
          **PETROLEUM, INC., PAYSON**
          **OPERATING, LLC, AND MARICOPA**
          **RESOURCES, LLC**


By:   /s/
          Keith W. Harvey
          State Bar No. 09180100
          THE HARVEY LAW FIRM, P.C.
          6510 Abrams Road
          Suite 280
          Dallas, Texas 75231
          (972) 243-3960 Phone
          (972)-241-3970 Facsimile

          **COUNSEL FOR CHRISTOPHER J.**
          **MOSER, CHAPTER 7 TRUSTEE FOR**
          **PAYSON PETROLEUM 3 WELL, L.P.**
          **AND PAYSON PETROLEUM 3 WELL**
          **2014, L.P.**

## CERTIFICATE OF SERVICE

   The undersigned certifies that on __, 2017, a true and correct copy of this document was served (i) via the Court's electronic case filing system upon the parties listed below or by email listed below, (ii) via the Court's electronic case filing system for Eastern District of Texas upon all parties requesting electronic notice of all filings and (iii) via regular First Class Mail, properly addressed and postage prepaid, upon all parties listed on the Master Service List attached hereto.

| | |
|---|---|
| Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC | Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP |
| Mark A. Weisbart | 1757 Harpsichord Way |
| 12770 Coil Road, Suite 541 | Henderson, NV 89012 |
| Dallas, TX 75251 | |
| weisbartm@earthlink.net, TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com; tarah_simmons@earthlink.net | |

| | |
|---|---|
| Dan Chern | Daniel P. Winikka |
| The Law Offices of Dan Chern | 12377 Merit Drive, Ste. 900 |
| 12801 N. Central Expressway, Suite 1558 | Dallas, TX 75251 |
| Dallas, Texas 75243 | danw@LFDSlaw.com |
| dbc@dchern.com | |

US Trustee
Office of the US Trustee
110 N. College Ave, #300
Tyler, TX 75702
USTPRegion06.TY.ECF@USDOJ.GOV

       /s/ _____
       Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\16-41044\20170905 9019 Motion-Payson Petroleum 16-41044.docx

MOTION TO COMPROMISE                  Page 13

# EXHIBIT A TO SETTLEMENT MOTION

# SETTLEMENT AGREEMENT

# [INTENTIONALLY LEFT BLANK]



EXHIBIT

**B**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| **DEBTOR.** | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| **DEBTOR.** | § | |

## AFFIDAVIT OF JASON R. SEARCY
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF GREGG** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

1

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

     Further, Affiant sayeth not.

                      _____

                      Jason R. Searcy
                      Payson Trustee

     SWORN AND SUBSCRIBED TO BEFORE ME on this \_\_\_\_ day of _____, 2017, to certify with witness my hand and official seal.

                      _____

                      NOTARY PUBLIC, IN AND FOR
                      THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx



EXHIBIT
C

<div align="center">

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

</div>

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| DEBTORS. | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| DEBTOR. | § | |

<div align="center">

### AFFIDAVIT OF CHRISTOPHER J. MOSER
### IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
### AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

</div>

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement obtains for

<div align="center">1</div>

the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. *Reh'g denied,* 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.),* 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

_____
Christopher J. Moser
LP Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this _____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx

**EXHIBIT**

**D**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

---

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

[Relates to Docket No. ___]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ( the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC ("Debtors") in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1. The Motion is GRANTED as set forth herein.

2. The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3. Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and all parties in interest.

4. Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment executed by 3 Well LP and the Subject Wells Assignment executed by 2014 LP, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5. The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      The 2014 LP Subject Claims Assignment and Participation Agreement attached as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtors, their bankruptcy estates and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

7.      This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

8.      A general unsecured claim of 3 Well LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 27.7891% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

9.      A general unsecured claim of 2014 LP against Maricopa Resources, LLC is hereby allowed in an amount equal to 72.21084% of the Subject Net Well Proceeds, as that term is defined in the Settlement Agreement, in Bankruptcy Case No. 16-41043, styled as *In re Maricopa Resources, LLC*.

10.      The releases provided for in the Settlement Agreement are hereby approved.  Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are

released.

11.     Upon consummation of the Settlement Agreement, Payson Petroleum shall own a
fifty percent (50%) participation interest in the following:  (i) the 3 Well LP Avoidance Action
Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery (as those terms
are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement), and (ii)
the 2014 LP Avoidance Action Claims Net Recovery and the 2014 LP Partnership Related Claims
Net Recovery (as those terms are defined in the 2014 LP Subject Claims Assignment and
Participation Agreement).

12.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute
the (i) 3 Well LP Avoidance Action Claims, (ii) 3 Well LP Partnership Related Claims, (iii) 2014
LP Avoidance Action Claims, and (iv) 2014 LP Partnership Related Claims, without further order
of this Court.

13.     Payson Petroleum is hereby appointed (i) the representative of the 3 Well LP
bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the 3
Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and
Participation Agreement, and (ii) the representative of the 2014 LP bankruptcy estate for purposes
of prosecuting the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims
pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

14.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel,
issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action
Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims
as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation
Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and

Participation Agreement or this Order.

15.    Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement
and this Order, Payson Petroleum has the exclusive authority to file suit, prosecute and settle the
3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3
Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation
or take any action with respect to the 3 Well LP Partnership Related Claims, the 3 Well LP
Avoidance Action Claims or the Payson/3 Well LP Partnership Related Claims that in its judgment
would not be cost justified.

16.    No preclusion doctrine, including the doctrines of res judicata, collateral estoppel,
issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action
Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as
those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement
by virtue of either parties entry into the 2014 LP Subject Claims Assignment and Participation
Agreement or this Order.

17.    Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement
and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle
the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the
Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any
litigation or take any action with respect to the 2014 LP Partnership Related Claims, the 2014 LP
Avoidance Action Claims or the Payson/2014 LP Partnership Related Claims that in its judgment
would not be cost justified.

18.    The Debtors and all other Parties to the Settlement Agreement are authorized and
directed to take all actions necessary to effectuate the relief granted in this Order in accordance

with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

     19.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

**AGREED TO IN FORM AND SUBSTANCE BY:**

/s/ _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

/s/ _____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | Case No. 17-40179 |
| | § | |
| DEBTOR. | § | Chapter 7 |

## JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 (the "LP Trustee") to file their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to Compromise"), and in support thereof, respectfully show unto the Court the following:

# I.
## PROCEDURAL STATUS

1.      <u>Payson Debtor Bankruptcy Filings</u>.  On June 10, 2016, Payson Petroleum, Inc. ("<u>Payson Petroleum</u>"), Payson Operating, LLC ("<u>Payson Operating</u>"), and Maricopa Resources, LLC ("<u>Maricopa</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") in this Bankruptcy Court.[1]  *See* Docket No. 1 in Bankruptcy Case Nos. 16-41043, 16-40144, *and* 16-40145.  On July 12, 2016, the Bankruptcy Court entered orders converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy Code.  *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket No. 41 in Case No. 16-40145.  On July 18, 2016, the Bankruptcy Court entered orders approving the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee in the Payson Debtors' bankruptcy cases.  *See* Docket No. 55 in Case No. 16-41043, Docket No. 50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045.  On August 11, 2016, the Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under Case No. 16-41044.  *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-41044, *and* Docket No. 81 in Case No. 16-41045.

2.      <u>Adversary Proceeding</u>.  On November 1, 2016, the Payson Trustee filed his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in Adversary Proceeding No. 16-04106 (the "<u>Adversary Proceeding</u>") against Payson Petroleum 3 Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, L.P. ("<u>2014 LP</u>").

3.      <u>LP Debtor Bankruptcy Filings</u>.  On January 31, 2017, 3 Well LP and 2014 LP (collectively, the "<u>LP Debtors</u>") filed voluntary petitions under Chapter 7 of the Bankruptcy Code. *See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180.  LP Trustee was

---

[1]     Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "<u>Payson Debtors</u>."

appointed as Chapter 7 Trustee for the LP Debtors.

4.  <u>Stay Issues</u>.  On February 21, 2017, LP Trustee filed his *Certificate of Notice of Bankruptcy Filing and Stay* in the Adversary Proceeding.  *See* Docket No. 24 in Adversary Proceeding.  On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion to Lift Stay* in LP Debtor's bankruptcy cases which, *inter alia*, provides that the parties are "granted relief from the automatic stay … to continue with and fully litigate claims that are or could be pled" in the Adversary Proceeding.  Docket No. 26 in Case No. 17-40180 *and* Docket No. 29 in Case No. 17-40179.

5.  <u>Amended Complaint</u>.  On July 13, 2017, Payson Trustee filed his *First Amended Complaint* in the Adversary Proceeding.  *See* Docket No. 25 in Adversary Proceeding.

6.  <u>Jurisdiction & Venue</u>.  This Court has jurisdiction over the subject matter of this Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## <u>FACTUAL BACKGROUND</u>

7.  <u>Nature of Payson Debtors' Businesses</u>.  Matthew C. Griffin ("<u>Griffin</u>") formed Payson Petroleum in 2008 to, *inter alia*, (i) promote the sale of interests in limited partnerships and (ii) operate oil and gas wells for such limited partnerships.  Griffin formed Payson Operating in 2010 to act as a contract operator for Payson Petroleum.  Griffin formed Maricopa in 2012 to, *inter alia*, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8.  <u>Nature of 3 Well LP's Business</u>.  Payson Petroleum Grayson, LLC formed 3 Well LP in 2013 to, *inter alia*, drill, complete, and own interests in the Subject Wells.

9.  <u>Turnkey Agreements</u>.  On or about October 13, 2013, Payson Petroleum and 3 Well LP entered into a Subscription Turn Key Agreement under which 3 Well LP agreed to pay Payson

Petroleum certain amounts for the drilling and completion of the Subject Wells (the "Turnkey Agreement"). In the Adversary Proceeding, Payson Petroleum asserts a claim for breach of the Turnkey Agreement against 3 Well LP in the amount of $17,115,777 (the "Breach of Turnkey Agreement Claim").

10. **Working Interest Assignments.** On or about Marcy 28, 2016, Maricopa assigned certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine #1 (API #181-31547) (collectively the "Subject Wells") to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066. The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "Working Interest Assignments"). In the Adversary Proceeding, Maricopa asserts claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code against 3 Well LP for avoidance of the Working Interest Assignments and recovery of the interests transferred to 3 Well LP or their value. Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("Traton"), the Payson Trustee's approved contract operating company.

11. **Additional Avoidable Transfers.** In addition to the Working Interest Assignments, Payson Petroleum transferred $1,274,310 to 3 Well LP in January 2014 in exchange for interests

in 3 Well LP that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "<u>Investment Transfer</u>"). In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfer from 3 Well LP (the "<u>Investment Transfer Claim</u>").

<div align="center">

### III.
### PROPOSED SETTLEMENT

</div>

12.     The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties. Attached hereto as **<u>Exhibit A</u>** is a copy of the Settlement Agreement.[2]

13.     <u>Agreed Final Judgment</u>. As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, *inter alia*, provide that the Wellbore Interest Assignments are avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson Petroleum on its Breach of Turnkey Agreement Claim against 3 Well LP in the amount of $8,557,888.50. *See* Exhibit 3 to Settlement Agreement.

14.     <u>Conveyance of Interests in Subject Wells</u>. 3 Well LP and 2014 LP will reassign the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by Traton until Maricopa sells those interests under 11 U.S.C. § 363. As explained in further detail

---

[2]     To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control. This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement. Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject

Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed

as follows:  (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP.

Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the

Subject Wells.

15.     <u>Allowed Claims</u>.  The Settlement Agreement also provides that the parties will

agree to the following allowed unsecured claims:

- Payson Petroleum shall hold an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50; and

- 3 Well LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

16.     <u>Prosecution of and Participation in Avoidance Action Claims</u>.  The Settlement

Agreement further provides that the parties will enter into the 3 Well LP Subject Claims

Assignment and Participation Agreement (the "<u>Claims Assignment and Participation</u>

<u>Agreement</u>").  Pursuant to the Claims Assignment and Participation Agreement 3 Well LP will

assign a fifty percent (50%) interest in net recoveries from litigation of 3 Well LP Avoidance

Action Claims and 3 Well LP Partnership Related Claims, as defined in the Claims Assignment

and Participation Agreement, with 3 Well LP retaining the remaining fifty percent (50%) interest.

Payson Petroleum shall be granted standing to prosecute 3 Well LP Avoidance Action Claims and

Partnership Related Claims in the 3 Well LP bankruptcy case, and 3 Well LP shall enter into an

engagement agreement with special litigation counsel for the Payson Trustee to prosecute such

claims for the benefit of the Payson Petroleum and 3 Well LP bankruptcy estates.

17.     <u>Releases</u>.  Except for claims expressly reserved in the Settlement Agreement, all

claims or causes action between the parties will be released.

# IV.
## RATIONALE

18.    <u>Benefit to Maricopa Estate</u>.  The Maricopa bankruptcy estate receives the following benefits from the settlement:

- the interests assigned to 3 Well LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 3 Well LP.

19.    <u>Benefit to Payson Petroleum Estate</u>.  The Payson Petroleum bankruptcy estate receives the following benefits from the settlement:

- an allowed general unsecured claim in the 3 Well LP bankruptcy case in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 3 Well LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims (the "<u>Subject Claims</u>") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 3 Well LP.

20.    <u>Benefit to Payson Operating Estate</u>.  Except for claims expressly preserved under the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which have been or could have been asserted against Payson Operating by 3 Well LP.

21.    <u>Benefit to 3 Well LP Estate</u>.  The 3 Well LP bankruptcy estate receives the following benefits from the settlement:

- 3 Well LP will obtain 12.5055% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 27.78916% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 3 Well LP will retain a fifty percent (50%) interest in all 3 Well LP Avoidance Action Claims Net Recovery and 3 Well LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, 3 Well LP's bankruptcy estate is released from claims which have been or could have been asserted against 3 Well LP by Payson Petroleum, Payson Operating, and/or Maricopa.

## V.
## RELIEF REQUESTED

22.     The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

## VI.
## BASIS FOR RELIEF

23.     Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id.* (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the

following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id.*

24.     The factors support granting the Joint Motion to Compromise.  First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors.  Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates.  The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa and 3 Well LP.  Additionally, the Settlement Agreement (i) reduces 3 Well LP's liability for failing to pay Payson Petroleum amounts owed under the Turnkey Agreement by fifty percent (50%), (ii) provides an arrangement for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii) eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar claims against partners of 3 Well LP in different proceedings and forums.  In sum, the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of their respective bankruptcy estates and should be approved.  *See* Affidavit of Jason R. Searcy, attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

25.     A proposed agreed order is attached hereto as **Exhibit D**.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estate of Payson Petroleum 3 Well, L.P. respectfully request that the Court approve the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: ___, 2017               Respectfully submitted,

By:   ___/s/_____
      Phil Snow
      State Bar No. 18812600
      Blake Hamm
      State Bar No. 24069869
      SNOW SPENCE GREEN LLP
      2929 Allen Parkway, Suite 2800
      Houston, Texas 77019
      (713) 335-4800
      (713) 335-4848 (Fax)

      **COUNSEL FOR JASON R. SEARCY,
      CHAPTER 11 TRUSTEE FOR PAYSON
      PETROLEUM, INC., PAYSON
      OPERATING, LLC, AND MARICOPA
      RESOURCES, LLC**


By:   ___/s/_____
      Keith W. Harvey
      State Bar No. 09180100
      THE HARVEY LAW FIRM, P.C.
      6510 Abrams Road
      Suite 280
      Dallas, Texas 75231
      (972) 243-3960 Phone
      (972)-241-3970 Facsimile

      **COUNSEL FOR CHRISTOPHER J.
      MOSER, CHAPTER 7 TRUSTEE FOR
      PAYSON PETROLEUM 3 WELL, L.P.**

## CERTIFICATE OF SERVICE

       The undersigned certifies that on __, 2017, a true and correct copy of this document was served (i) via the Court's electronic case filing system upon the parties listed below or by email listed below, (ii) via the Court's electronic case filing system for Eastern District of Texas upon all parties requesting electronic notice of all filings and (iii) via regular First Class Mail, properly addressed and postage prepaid, upon all parties listed on the Master Service List attached hereto.


Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC
Mark A. Weisbart
12770 Coil Road, Suite 541
Dallas, TX 75251
weisbartm@earthlink.net,
TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;
tarah_simmons@earthlink.net

Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP
1757 Harpsichord Way
Henderson, NV 89012


Dan Chern
The Law Offices of Dan Chern
12801 N. Central Expressway, Suite 1558
Dallas, Texas 75243
dbc@dchern.com

Daniel P. Winikka
12377 Merit Drive, Ste. 900
Dallas, TX 75251
danw@LFDSlaw.com


US Trustee
Office of the US Trustee
110 N. College Ave, #300
Tyler, TX 75702
USTPRegion06.TY.ECF@USDOJ.GOV


                    /s/_____
                    Blake Hamm


I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\17-40179\20170905 9019 Motion-Payson Petroleum 17-40179.docx

# EXHIBIT A TO SETTLEMENT MOTION

# SETTLEMENT AGREEMENT

# [INTENTIONALLY LEFT BLANK]



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | JOINTLY ADMINISTERED |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | Case No. 16-41044 |
| | § | |
| DEBTORS. | § | Chapter 11 |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | Case No. 17-40179 |
| | § | Chapter 7 |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, | § | Case No. 17-40180 |
| L.P., | § | Chapter 7 |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT OF JASON R. SEARCY
### IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
### AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GREGG | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

Further, Affiant sayeth not.

_____
Jason R. Searcy
Payson Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this ____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx

2



EXHIBIT

**C**

<div align="center">

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

</div>

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

---

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| **DEBTOR.** | § | |

---

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| **DEBTOR.** | § | |

<div align="center">

### AFFIDAVIT OF CHRISTOPHER J. MOSER
### IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
### AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

</div>

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement obtains for

<div align="center">1</div>

the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. *Reh'g denied,* 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.),* 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

_____
Christopher J. Moser
LP Trustee


SWORN AND SUBSCRIBED TO BEFORE ME on this ____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx

2

EXHIBIT

**D**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, LP, | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

[Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. ("Debtor") in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.      Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4.      Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.      The 3 Well LP Subject Claims Assignment and Participation Agreement attached

as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.     This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

7.     A general unsecured claim of Payson Petroleum against 3 Well LP is hereby allowed in the amount of Eight Million Five Hundred Fifty-Seven Thousand Eight Hundred Eighty-Eight and 50/100 U.S. Dollars ($8,557,888.50).

8.     The releases provided for in the Settlement Agreement are hereby approved. Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released. Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are released.

9.     Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the 3 Well LP Avoidance Action Claims Net Recovery and the 3 Well LP Partnership Related Claims Net Recovery as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement.

10.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute the 3 Well LP Avoidance Action Claims and the 3 Well LP Partnership Related Claims without further order of this Court. Payson Petroleum is hereby appointed the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting the 3 Well LP Avoidance Action Claims and the

3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 3 Well LP Partnership Related Claims or the 3 Well LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

*/s/* _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

**AGREED TO IN FORM AND SUBSTANCE BY:**

*/s/* _____
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

*/s/* _____
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution
Copy\Ex 7 Settlement Motions\17-40179\20170905 Agreed Order Granting 9019 Motion 17-40179.docx

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | |
| | § | |
| **DEBTOR.** | § | **Chapter 7** |

---

## JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

---

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION.   IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT.   IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING.   IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN.   THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Joint Motion to Compromise"), and in support thereof, respectfully show unto the Court the following:

**I.**

# PROCEDURAL STATUS

1.     Payson Debtor Bankruptcy Filings.   On June 10, 2016, Payson Petroleum, Inc. ("Payson Petroleum"), Payson Operating, LLC ("Payson Operating"), and Maricopa Resources, LLC ("Maricopa") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") in this Bankruptcy Court.[1]  *See* Docket No. 1 in Bankruptcy Case Nos. 16-41043, 16-40144, *and* 16-40145.   On July 12, 2016, the Bankruptcy Court entered orders converting the Payson Debtors' bankruptcy cases to cases under Chapter 11 of the Bankruptcy Code.  *See* Docket No. 39 in Case No. 16-41043, Docket No. 33 in Case No. 16-40144, *and* Docket No. 41 in Case No. 16-40145.   On July 18, 2016, the Bankruptcy Court entered orders approving the United States Trustee's applications to appoint the Payson Trustee as the Chapter 11 Trustee in the Payson Debtors' bankruptcy cases.  *See* Docket No. 55 in Case No. 16-41043, Docket No. 50 in Case No. 16-40144, *and* Docket No. 57 in Case No. 16-41045.   On August 11, 2016, the Bankruptcy Court ordered the joint administration of the Payson Debtors' bankruptcy cases under Case No. 16-41044.   *See* Docket No. 75 in Case No. 16-41043, Docket No. 73 in Case No. 16-41044, *and* Docket No. 81 in Case No. 16-41045.

2.     Adversary Proceeding.   On November 1, 2016, the Payson Trustee filed his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* in Adversary Proceeding No. 16-04106 (the "Adversary Proceeding") against Payson Petroleum 3 Well, LP ("3 Well LP") and Payson Petroleum 3 Well 2014, L.P. ("2014 LP").

3.     LP Debtor Bankruptcy Filings.   On January 31, 2017, 3 Well LP and 2014 LP (collectively, the "LP Debtors") filed voluntary petitions under Chapter 7 of the Bankruptcy Code.  *See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180.  LP Trustee was

---

[1]     Collectively, Payson Petroleum, Payson Operating, and Maricopa are the "Payson Debtors."

appointed as Chapter 7 Trustee for the LP Debtors.

4.     <u>Stay Issues</u>.  On February 21, 2017, LP Trustee filed his *Certificate of Notice of Bankruptcy Filing and Stay* in the Adversary Proceeding.  *See* Docket No. 24 in Adversary Proceeding.  On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion to Lift Stay* in LP Debtor's bankruptcy cases which, *inter alia*, provides that the parties are "granted relief from the automatic stay … to continue with and fully litigate claims that are or could be pled" in the Adversary Proceeding.  Docket No. 26 in Case No. 17-40180 *and* Docket No. 29 in Case No. 17-40179.

5.     <u>Amended Complaint</u>.  On July 13, 2017, Payson Trustee filed his *First Amended Complaint* in the Adversary Proceeding.  *See* Docket No. 25 in Adversary Proceeding.

6.     <u>Jurisdiction & Venue</u>.  This Court has jurisdiction over the subject matter of this Joint Motion to Compromise pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## <u>FACTUAL BACKGROUND</u>

7.     <u>Nature of Payson Debtors' Businesses</u>.     Matthew C. Griffin ("<u>Griffin</u>") formed Payson Petroleum in 2008 to, *inter alia*, (i) promote the sale of interests in limited partnerships and (ii) operate oil and gas wells for such limited partnerships.  Griffin formed Payson Operating in 2010 to act as a contract operator for Payson Petroleum.  Griffin formed Maricopa in 2012 to, *inter alia*, engage in the acquisition and sale of Grayson County, Texas oil and gas leases.

8.     <u>Nature of 2014 LP's Businese</u>.  Payson Petroleum Grayson, LLC formed 2014 LP in 2014 to, *inter alia*, drill, complete, and own interests in the Subject Wells.

9.     <u>Turnkey Agreements</u>.  On or about January 12, 2014, Payson Petroleum and 2014 LP entered into a Subscription Turn Key Agreement under which 2014 LP agreed to pay Payson

Petroleum certain amounts for the drilling and completion of the Subject Wells (the "Turnkey Agreement"). In the Adversary Proceeding, Payson Petroleum asserts a claim for breach of the Turnkey Agreement against 2014 LP in the amount of $5,343,803 (the "Breach of Turnkey Agreement Claim").

10. **Working Interest Assignments.** On or about Marcy 28, 2016, Maricopa assigned certain interests in the William #1H (API # 181-31557), Crowe #2 (API #181-31543), and Elaine #1 (API #181-31547) (collectively the "Subject Wells") to 3 Well LP and 2014 LP via three (3) certain Wellbore Assignments, Conveyances, Bills of Sale, and Releases, which were recorded in the real property records of Grayson County, Texas at Instrument Numbers: 2016-00006064, 2016-00006065, and 2016-00006066. The working interests assigned are set forth below:

| Subject Well | Assignee | Working Interest Assigned |
|---|---|---|
| Williams #1H Well | 2014 LP | 72.210840% |
| Williams #1H Well | 3 Well LP | 27.789160% |
| Crowe #2 Well | 2014 LP | 72.210840% |
| Crowe #2 Well | 3 Well LP | 27.789160% |
| Elaine #1 Well | 2014 LP | 72.210840% |
| Elaine #1 Well | 3 Well LP | 27.789160% |

(collectively the "Working Interest Assignments"). In the Adversary Proceeding, Maricopa asserts claims under 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code against 2014 LP for avoidance of the Working Interest Assignments and recovery of the interests transferred to 2014 LP or their value. Post-bankruptcy petition production revenue attributable to the Working Interest Assignments has been held by Traton Operating Company ("Traton"), the Payson Trustee's approved contract operating company.

11. **Additional Avoidable Transfers.** In addition to the Working Interest Assignments, Payson Petroleum transferred $2,862,000 to 2014 LP between January and February 2014 in

exchange for interest in that limited partnership that Payson Petroleum knew or should have known were worth far less than the amounts transferred (the "<u>Investment Transfers</u>"). In the Adversary Proceeding, the Payson Trustee asserts claims under 11 U.S.C. § 544 and 550 and Chapter 24 of the Texas Business and Commerce Code to avoid and recover the Investment Transfers from 2014 LP (the "<u>Investment Transfer Claim</u>").

<div align="center">

**III.**
**PROPOSED SETTLEMENT**

</div>

12.    The Payson Trustee, Payson Debtors, LP Trustee, and LP Debtors have reached a settlement of issues asserted in the Adversary Proceeding and other claims that have our could have been asserted between the parties. Attached hereto as **<u>Exhibit A</u>** is a copy of the Settlement Agreement.[2]

13.    <u>Agreed Final Judgment</u>. As explained in the Settlement Agreement, the parties will resolve the Adversary Proceeding by filing a Joint Motion for Entry of Agreed Final Judgment and will use their best efforts to have the Agreed Final Judgment entered by the Bankruptcy Court. The Agreed Final Judgment will, *inter alia*, provide that the Wellbore Interest Assignments are avoided and set aside under 11 U.S.C. § 548(a)(1)(A) & (B) and grant judgment in favor of Payson Petroleum on its Breach of Turnkey Agreement Claim against 2014 LP in the amount of $2,671,900.50. *See* Exhibit 3 to Settlement Agreement.

14.    <u>Conveyance of Interests in Subject Wells</u>. 3 Well LP and 2014 LP will reassign the avoided interests in the Subject Wells to Maricopa, which will continue to be operated by Traton until Maricopa sells those interests under 11 U.S.C. § 363. As explained in further detail

---

[2]    To the extent of any inconsistency between the Settlement Agreement and the summary of that agreement set forth in this Joint Motion to Compromise, the terms of the Settlement Agreement control. This outline is not intended to repeat all terms of the Settlement Agreement and persons reading this Joint Motion to Compromise are encouraged to read the Settlement Agreement. Capitalized Terms used but not otherwise defined herein have the meaning ascribed to them in the Joint Motion to Compromise or the Settlement Agreement as applicable.

in the Settlement Agreement, the net proceeds obtained from the operation and sale of the Subject Wells (defined in the Settlement Agreement as the Subject Wells Net Proceeds) will be distributed as follows: (i) 55% to Maricopa, (ii) 32.4945% to 2014 LP, and (iii) 12.5055% to 3 Well LP. Maricopa will retain a $50,000 Operating Reserve to satisfy costs related to operation of the Subject Wells.

15.    <u>Allowed Claims</u>.  The Settlement Agreement also provides that the parties will agree to the following allowed unsecured claims:

- Payson Petroleum shall hold an allowed unsecured claim in the 2014 LP bankruptcy case in the amount of $2,671,900.50; and

- 2014 LP shall hold an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Net Well Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement.

16.    <u>Prosecution of and Participation in Avoidance Action Claims</u>.  The Settlement Agreement further provides that the parties will enter into the 2014 LP Subject Claims Assignment and Participation Agreement (collectively the "<u>Claims Assignment and Participation Agreement</u>"). Pursuant to the Claims Assignment and Participation Agreements 2014 LP will assign a fifty percent (50%) interest in net recoveries from litigation of 2014 LP Avoidance Action Claims and 2014 Partnership Related Claims, as defined in the Claims Assignment and Participation Agreement, with 2014 LP retaining the remaining fifty percent (50%) interest. Payson Petroleum shall be granted standing to prosecute 2014 LP Avoidance Action Claims and Partnership Related Claims in the 2014 LP bankruptcy case, and 2014 LP shall enter into an engagement agreement with special litigation counsel for the Payson Trustee to prosecute such claims for the benefit of the Payson Petroleum and 2014 LP bankruptcy estates.

17.    <u>Releases</u>.  Except for claims expressly reserved in the Settlement Agreement, all claims or causes action between the parties will be released.

# IV.
## RATIONALE

18.     <u>Benefit to Maricopa Estate</u>.  The Maricopa bankruptcy estate receives the following benefits from the settlement:

- the interests assigned to 2014 LP via the Working Interest Assignments will be reassigned to Maricopa, and Maricopa will 55% of the Subject Wells Net Proceeds, plus a $50,000 Operating Reserve to satisfy costs associated with operation of the Subject Wells; and

- except for claims expressly preserved under the Settlement Agreement, Maricopa's bankruptcy estate is released from claims which have been or could have been asserted against Maricopa by 2014 LP.

19.     <u>Benefit to Payson Petroleum Estate</u>. The Payson Petroleum bankruptcy estate receives the following benefits from the settlement:

- an allowed general unsecured claim in the 2014 LP bankruptcy case in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50) on account of Payson Petroleum's Breach of Turnkey Agreement claim against 2014 LP;

- Payson Petroleum is (i) granted standing and authority to enforce and prosecute 2014 LP Avoidance Action Claims and 2014 LP Partnership Related Claims (the "<u>Subject Claims</u>") and (ii) will hold a fifty percent (50%) participation interest in net recoveries from the Subject Claims as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; and

- except for claims expressly preserved under the Settlement Agreement, Payson Petroleum's bankruptcy estate is released from claims which have been or could have been asserted against Payson Petroleum by 2014 LP.

20.     <u>Benefit to Payson Operating Estate</u>.  Except for claims expressly preserved under the Settlement Agreement, Payson Operating's bankruptcy estate is released from claims which have been or could have been asserted against Payson Operating by 2014 LP.

21.     <u>Benefit to 2014 LP Estate</u>.  The 2014 LP bankruptcy estate receives the following benefits from the settlement:

- 2014 LP will obtain 32.4945% of the Subject Wells Net Proceeds;

- an allowed general unsecured claim in the Maricopa bankruptcy case in an amount equal to 72.21084% of the Subject Wells Net Proceeds actually delivered to Maricopa pursuant to the Settlement Agreement;

- 2014 LP will retain a fifty percent (50%) interest in all 2014 LP Avoidance Action Claims Net Recovery and 2014 LP Partnership Related Claims Net Recovery as further described in the Settlement Agreement and Claims Assignment and Participation Agreement; *and*

- except for claims expressly preserved under the Settlement Agreement, 2014 LP's bankruptcy estate is released from claims which have been or could have been asserted against 2014 LP by Payson Petroleum, Payson Operating, and/or Maricopa.

## V.
## RELIEF REQUESTED

22.     The Payson Trustee and LP Trustee respectfully request that the Court approve the proposed Settlement Agreement attached hereto as Exhibit A and grant them such other and further relief to which they may be entitled.

## VI.
## BASIS FOR RELIEF

23.     Bankruptcy Courts are "empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a)." *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). "Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." *Id.* (internal quotes & cite omitted). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at 356 (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts consider the

following factors in determining whether a settlement is fair and equitable "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id*.

24.     The factors support granting the Joint Motion to Compromise. First, the disputes are hotly contested and would require lengthy and likely expensive litigation to resolve, and the Settlement Agreement was reached after good-faith, contentious, and arms-length negotiations. The Payson Trustee and LP Trustee desire to avoid lengthy litigation between the respective bankruptcy estates so they can focus on enhancing the value of those estates for the benefit of creditors. Litigation would be expensive and involve, *inter alia*, complex factual issues regarding the value of the property transferred and solvency of the various bankruptcy estates. The Settlement Agreement, on the other hand, allows the Payson Trustee to distribute hydrocarbon proceeds currently held in suspense and initiate a sales process to monetize the Subject Wells for the benefit of creditors of Maricopa and 2014 LP. Additionally, the Settlement Agreement (i) reduces 2014 LP's liability for failing to pay Payson Petroleum amounts owed under the Turnkey Agreement by fifty percent (50%), (ii) provides an arrangement for coordinated prosecution of avoidance actions and sharing in the proceeds of the same, and (iii) eliminates the potential that the LP Trustee and Payson Trustee would pursue substantially similar claims against partners of 2014 LP in different proceedings and forums. In sum, the Payson Trustee and LP Trustee believe the Settlement Agreement is in the best interests of their respective bankruptcy estates and should be approved. *See* Affidavit of Jason R. Searcy, attached as **Exhibit B** *and* Affidavit of Christopher J. Moser, attached as **Exhibit C**.

25.     A proposed agreed order is attached hereto as **Exhibit D**.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 11 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estate of Payson Petroleum 3 Well 2014, L.P. respectfully request that the Court approve the Agreement and grant them such other and further relief to which they may be justly entitled.

Dated: ___, 2017

Respectfully submitted,

By: ___/s/_____

    Phil Snow
    State Bar No. 18812600
    Blake Hamm
    State Bar No. 24069869
    SNOW SPENCE GREEN LLP
    2929 Allen Parkway, Suite 2800
    Houston, Texas 77019
    (713) 335-4800
    (713) 335-4848 (Fax)

    **COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC**

By: ___/s/_____

    Keith W. Harvey
    State Bar No. 09180100
    THE HARVEY LAW FIRM, P.C.
    6510 Abrams Road
    Suite 280
    Dallas, Texas 75231
    (972) 243-3960 Phone
    (972)-241-3970 Facsimile

    **COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM 3 WELL, L.P. AND PAYSON PETROLEUM 3 WELL 2014, L.P.**

# CERTIFICATE OF SERVICE

The undersigned certifies that on __, 2017, a true and correct copy of this document was served (i) via the Court's electronic case filing system upon the parties listed below or by email listed below, (ii) via the Court's electronic case filing system for Eastern District of Texas upon all parties requesting electronic notice of all filings and (iii) via regular First Class Mail, properly addressed and postage prepaid, upon all parties listed on the Master Service List attached hereto.

Debtors Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC
Mark A. Weisbart
12770 Coil Road, Suite 541
Dallas, TX 75251
weisbartm@earthlink.net,
TX56@ecfcbis.com;mweisbart@ecf.epiqsystems.com;
tarah_simmons@earthlink.net

Debtors Payson Petroleum 3 Well , LP and Payson Petroleum 3 Well 2014, LP
1757 Harpsichord Way
Henderson, NV 89012

Dan Chern
The Law Offices of Dan Chern
12801 N. Central Expressway, Suite 1558
Dallas, Texas 75243
dbc@dchern.com

Daniel P. Winikka
12377 Merit Drive, Ste. 900
Dallas, TX 75251
danw@LFDSlaw.com

US Trustee
Office of the US Trustee
110 N. College Ave, #300
Tyler, TX 75702
USTPRegion06.TY.ECF@USDOJ.GOV

/s/ _____
Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\17-40180\20170905 9019 Motion-Payson Petroleum 17-40180.docx

# EXHIBIT A TO SETTLEMENT MOTION

# SETTLEMENT AGREEMENT

# [INTENTIONALLY LEFT BLANK]



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | **JOINTLY ADMINISTERED** |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | **Case No. 16-41044** |
| | § | |
| DEBTORS. | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, | § | **Case No. 17-40180** |
| L.P., | § | **Chapter 7** |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT OF JASON R. SEARCY
### IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
### AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GREGG | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

1

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

Further, Affiant sayeth not.

_____
Jason R. Searcy
Payson Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this ____ day of _____, 2017, to certify with witness my hand and official seal.

_____
NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx



**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| DEBTORS. | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| DEBTOR. | § | |

**AFFIDAVIT OF CHRISTOPHER J. MOSER**
**IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE**
**AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019**

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement obtains for

1

the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. *Reh'g denied,* 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.),* 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

_____

Christopher J. Moser
LP Trustee


SWORN AND SUBSCRIBED TO BEFORE ME on this ____ day of _____, 2017, to certify with witness my hand and official seal.

_____

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx

EXHIBIT

D

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

IN RE: §
§
PAYSON PETROLEUM 3 WELL 2014, LP, § Case No. 17-40180
§ Chapter 7
DEBTOR. §

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

[Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. ("Debtor") in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1. The Motion is GRANTED as set forth herein.

2. The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3. Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4. Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5. The 2014 LP Subject Claims Assignment and Participation Agreement attached as

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests

of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the

Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.      This Order is binding upon the Parties and all other parties in interest in accordance

with the terms of the Settlement Agreement.

7.      A general unsecured claim of Payson Petroleum against 2014 LP is hereby allowed

in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S.

Dollars ($2,671,900.50).

8.      The releases provided for in the Settlement Agreement are hereby approved.  Upon

consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum,

Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined

in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all

claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum,

Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are

released.

9.      Upon consummation of the Settlement Agreement, Payson Petroleum shall own a

fifty percent (50%) participation interest in the 2014 LP Avoidance Action Claims Net Recovery

and the 2014 LP Partnership Related Claims Net Recovery as those terms are defined in the 2014

LP Subject Claims Assignment and Participation Agreement.

10.     Payson Petroleum is hereby granted standing and authority to enforce and prosecute

the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims without further

order of this Court.  Payson Petroleum is hereby appointed the representative of the 2014 LP

bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014

LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

11.     No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

12.     Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims.  Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 2014 LP Partnership Related Claims or the 2014 LP Avoidance Action Claims that in its judgment would not be cost justified.

13.     The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

/s/
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

**AGREED TO IN FORM AND SUBSTANCE BY:**

/s/
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE
FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,
AND MARICOPA RESOURCES, LLC**

/s/
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE
FOR PAYSON PETROLEUM 3 WELL, L.P.  AND
PAYSON PETROLEUM 3 WELL 2014, L.P.**

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution
Copy\Ex 7 Settlement Motions\17-40180\20170905 Agreed Order Granting 9019 Motion 17-40180.docx

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

# EXHIBIT 8 TO SETTLEMENT AGREEMENT

# SUBJECT WELLS ASSIGNMENTS

NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## ASSIGNMENT, CONVEYANCE AND BILL OF SALE

STATE OF TEXAS              §
                           §
COUNTY OF GRAYSON           §

KNOW ALL MEN BY THESE PRESENTS that the undersigned Payson Petroleum 3 Well 2014, L.P., whose address is c/o Christopher J. Moser, Chapter 7 Trustee, Quilling, Selander, Lownds, Winslett & Moser, P.C., 2001 Bryan Street, Ste. 1800, Dallas, TX  75201 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto Maricopa Resources, LLC, whose address is c/o Jason R. Searcy, Chapter 11 Trustee, Searcy & Searcy, P.C., 446 Forest Square, Longview, Texas  75605 (the "Assignee"), all of Assignor's right, title and interest in and to the wells and wellbores described herein.

## DEFINITIONS

1.01    Defined Terms.  The following terms, as used in this Assignment, shall have the meanings indicated below, unless the context otherwise requires:

"Crowe #2 Well" means the Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas.

"Elaine #1 Well" means the Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

"Effective Date" means September ___, 2017.

"Wells" means, collectively, the Crow #2 Well, the Elaine #1 Well and the Williams #1H Well.

"Williams #1H Well" means the Williams #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of Section 26, Block 1, 11, 15, 16, the JM Dodgin Survey, Abstract 378, Grayson County, Texas.

## ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignee the following, all of which are collectively called the "Assets".

a.        All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006066, Book OR, Vol. 5779, Pg. 404, in the Crowe #2 Well.

b.        All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006065, Book OR, Vol. 5779, Pg. 397, in the Elaine #1 Well.

c.        All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006064, Book OR, Vol. 5779, Pg. 389, in the William #1H Well.

d.        All right, title and interest in and to the oil and gas leases described in Exhibits A-1, A-2 and A-3 to this Assignment, insofar and only insofar as the leases cover the Wells, (collectively, the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Wells.

e.        All right, title and interest in all personal property and fixtures associated with the Wells, including without limitation the following:  all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

f.        All files and records relating to the items described in Paragraphs (a) through (f) maintained by Assignor and relating to the interests described in Paragraphs (a) through (f), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignee, and Assignee's heirs, successors and assigns, forever.

Assignee and Assignor further agree as follows:

1.        Title.  Assignor warrants title to the Assets from and against all persons claiming by, through and under Assignor, but not otherwise.

2.        Royalty Payments.  Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Wells to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify and hold Assignee harmless from and against all claims.  Assignee shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

3.        Indemnification Claims.  With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim.  Reasonable attorneys' fees, court costs, interest, penalties and other expenses incurred in connection with the defense of claims shall be included in Assignee's and Assignor's indemnities.  All indemnities of Assignee shall extend to and cover the parent, subsidiary and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

4.      No Third-Party Beneficiaries.  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify or limit the rights of Assignor or Assignee, as between themselves.

5.      Successors and Assigns.  This Assignment and all of the terms, provisions, covenants, obligations and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignee, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignee as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

*[Signature Page Follows]*

EXECUTED on this _____ day of _____ 2017.

ASSIGNOR:

PAYSON PETROLEUM 3 WELL 2014, L.P.

By: _____
          Christopher J. Moser, Chapter 7 Trustee

ASSIGNEE:

MARICOPA RESOURCES, LLC

By: _____
          Jason R. Searcy, Chapter 11 Trustee

STATE OF TEXAS        §
                        §
COUNTY OF _____   §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

STATE OF TEXAS        §
                        §
COUNTY OF GREGG     §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **MARICOPA RESOURCES, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

4

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\Assignment 1_WIs_3Well.docx

# EXHIBIT A-1

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Crowe #2 Well (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas (from the surface of the earth down to the measured depth of 11,164').

2. All personal property and fixtures associated with the Crowe #2 Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|--------|--------|--------|------------------|--------------|----------------|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr. | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of the Estate of Dorothy L. Darnell | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr., Revocable Trust | Texas Land & Petroleum Company, LLC | Oil, Gas and Mineral Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|---|---|---|---|---|---|
| Grayson | Nancy T. Cutter Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

## EXHIBIT A-2

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Elaine #1 Well (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

2. All personal property and fixtures associated with the Elaine #1 Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume /Page | Effective Date |
|--------|--------|--------|--------------|----------------|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|--------|--------|--------|--------------|----------------|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464/910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521/166 | 3/24/2014 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-2.docx

# EXHIBIT A-3

to

## WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The William #1H Well (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the Section 26, Block 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, Texas.

2. All personal property and fixtures associated with the William #1H Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|--------|--------|--------|--------------|----------------|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981/402 | 2/1/2011 |
| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418/520 | 2/1/2008 |
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980/156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296/513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296/506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980/140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760/92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760/88 | 3/6/2007 |
| Grayson | Gary Wayne Odle | Matthew Avery | 4296/493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760/92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983/321 | 4/10/2011 |
| Grayson | Vurlas Land Wilson, a/ka Verlas Lane Wilson and Margorie Marie Wilson | Matthew Avery | 4296/469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993/305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4980/144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296/457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the JamesM. Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297/46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296/461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296/449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296/466 | 6/27/2007 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296/454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4296/445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355/704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274/698 | 3/15/2013 |
| Grayson | PCP Trust, Phillip C. Brown, Trustee and Philip Charles Brown | Paradise Springs, LLC | 5274/701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367/400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002/826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002/830 | 8/21/2011 |
| Grayson | Philip C. Brown, aka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002/834;838 | 8/21/2011 |

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## ASSIGNMENT, CONVEYANCE AND BILL OF SALE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GRAYSON | § |

KNOW ALL MEN BY THESE PRESENTS that the undersigned Payson Petroleum 3 Well, L.P., whose address is c/o Christopher J. Moser, Chapter 7 Trustee, Quilling, Selander, Lownds, Winslett & Moser, P.C., 2001 Bryan Street, Ste. 1800, Dallas, TX 75201 (the "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, does hereby BARGAIN, SELL, GRANT, ASSIGN and CONVEY unto Maricopa Resources, LLC, whose address is c/o Jason R. Searcy, Chapter 11 Trustee, Searcy & Searcy, P.C., 446 Forest Square, Longview, Texas 75605 (the "Assignee"), all of Assignor's right, title and interest in and to the wells and wellbores described herein.

## DEFINITIONS

1.01    Defined Terms.  The following terms, as used in this Assignment, shall have the meanings indicated below, unless the context otherwise requires:

"Crowe #2 Well" means the Crowe #2 (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas.

"Elaine #1 Well" means the Elaine #1 (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

"Effective Date" means September ___, 2017.

"Wells" means, collectively, the Crow #2 Well, the Elaine #1 Well and the Williams #1H Well.

"Williams #1H Well" means the Williams #1H (API #181-31557) and associated wellbore, with a surface location situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of Section 26, Block 1, 11, 15, 16, the JM Dodgin Survey, Abstract 378, Grayson County, Texas.

## ASSIGNMENT AND AGREEMENT

For valuable consideration, the receipt and sufficiency of which is acknowledged, Assignor sells, assigns, transfers, delivers, and conveys to Assignee the following, all of which are collectively called the "Assets".

a.    All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006066, Book OR, Vol. 5779, Pg. 404, in the Crowe #2 Well.

b. All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006065, Book OR, Vol. 5779, Pg. 397, in the Elaine #1 Well.

c. All right, title an interest acquired pursuant to the Wellbore, Assignment, Conveyance, Bill of Sale, and Release by and between Maricopa Resources, LLC, as assignor, and Payson Petroleum 3 Well, L.P., as assignee, recorded in the real property records of Grayson County, Texas at Instrument Number 2016-00006064, Book OR, Vol. 5779, Pg. 389, in the William #1H Well.

d. All right, title and interest in and to the oil and gas leases described in Exhibits A-1, A-2 and A-3 to this Assignment, insofar and only insofar as the leases cover the Wells, (collectively, the "Leases"), together with the leasehold rights as are necessary to operate, maintain, produce, and plug and abandon the Wells.

e. All right, title and interest in all personal property and fixtures associated with the Wells, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

f. All files and records relating to the items described in Paragraphs (a) through (f) maintained by Assignor and relating to the interests described in Paragraphs (a) through (f), but only to the extent not subject to unaffiliated third party contractual restrictions on disclosure or transfer.

To have and to hold the Assets unto Assignee, and Assignee's heirs, successors and assigns, forever.

Assignee and Assignor further agree as follows:

1. Title. Assignor warrants title to the Assets from and against all persons claiming by, through and under Assignor, but not otherwise.

2. Royalty Payments. Assignor shall be responsible for any and all liabilities, claims, and demands arising out of the accounting and payment of proceeds of production from the Wells to royalty owners and working interest owners, insofar as the same relate to or arise out of actions of Assignor or events prior to the Effective Date and shall defend, indemnify and hold Assignee harmless from and against all claims. Assignee shall be responsible for all types of claims insofar as they relate to periods of time from and after the Effective Date of this Assignment and shall indemnify and hold Assignor harmless therefrom.

3. Indemnification Claims. With respect to any claim for which an indemnifying party may be required to provide partial or full indemnity, the party shall have the right, but not the obligation, to participate fully in the defense of any claim. Reasonable attorneys' fees, court costs, interest, penalties and other expenses incurred in connection with the defense of claims shall be included in Assignee's and Assignor's indemnities. All indemnities of Assignee shall extend to and cover the parent, subsidiary and affiliated companies and the officers, directors, employees and agents of Assignor, and its subsidiary and affiliated companies.

2

4.      <u>No Third-Party Beneficiaries</u>.  The references in this Assignment to liens, encumbrances, burdens, defects, and other matters shall not be deemed to ratify or create any rights in any third parties or merge with, modify or limit the rights of Assignor or Assignee, as between themselves.

5.      <u>Successors and Assigns</u>.  This Assignment and all of the terms, provisions, covenants, obligations and indemnities it contains shall be binding on and inure to the benefit of and be enforceable by the Assignor, Assignee, and their respective successors and assigns.

This Assignment is executed by Assignor and Assignee as of the date of acknowledgment of their signatures below, but shall be deemed effective for all purposes as of the Effective Date stated above.

*[Signature Page Follows]*

EXECUTED on this _____ day of _____ 2017.

ASSIGNOR:

PAYSON PETROLEUM 3 WELL, L.P.

By:_____
       Christopher J. Moser, Chapter 7 Trustee

ASSIGNEE:

MARICOPA RESOURCES, LLC

By:_____
       Jason R. Searcy, Chapter 11 Trustee

STATE OF TEXAS       §
                       §
COUNTY OF _____  §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Christopher J. Moser, the Chapter 7 Trustee of **PAYSON PETROLEUM 3 WELL, L.P.**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

STATE OF TEXAS       §
                       §
COUNTY OF GREGG    §

BEFORE ME, the undersigned authority, on this _____ day of _____ 2017, personally appeared Jason R. Searcy, the Chapter 11 Trustee of **MARICOPA RESOURCES, LLC**, whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public in and for State of Texas
My Commission Expires: _____

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\Assignment 2_WIs_3Well.docx

# EXHIBIT A-1

to

## WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Crowe #2 Well (API #181-31543) and associated wellbore, with a surface location situated at latitude 33° 49' 10" – north, longitude 96° 41' 55" – west, in Section 11, Block 1, 11, 15, 16, the South 79 acres of the Wood & Buckles Survey, Abstract 1373, Grayson County, Texas (from the surface of the earth down to the measured depth of 11,164').

2. All personal property and fixtures associated with the Crowe #2 Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|--------|--------|--------|------------------|--------------|----------------|
| Grayson | Marilyn Teresa Morrow | RWJ Exploration, LLC | Oil, Gas and Mineral Lease | 4724/434 | 6/12/2009 |
| Grayson | Samuel Louis Crow | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/579 | 1/7/2008 |
| Grayson | Linda Darnell Lott, acting as Agent and Attorney-in-Fact for Frank L. Darnell, Sr. | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/566 | 4/3/2008 |
| Grayson | Linda Darnell Lott, as Independent Executrix of the Estate of Dorothy L. Darnell | Atoka Operating, Inc. | Oil, Gas and Mineral Lease | 4536/583 | 4/1/2008 |
| Grayson | Allen M. Tonkin, Jr., Revocable Trust | Texas Land & Petroleum Company, LLC | Oil, Gas and Mineral Lease | 4956/294 | 5/1/2011 |
| Grayson | Nancy P. Tonkin Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/287 | 5/1/2011 |

| County | Lessor | Lessee | Instrument Filed | Volume /Page | Effective Date |
|--------|--------|--------|------------------|--------------|----------------|
| Grayson | Nancy T. Cutter Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/291 | 5/1/2011 |
| Grayson | Linley T. Solari Revocable Trust | Texas Land & Petroleum Company, LLC | Memorandum of Oil and Gas Lease | 4956/284 | 5/1/2011 |
| Grayson | Solari Luz, LLC | Texas Land & Petroleum Company, LLC | Ratification of Oil and Gas Lease | 5043/663 | 5/1/2011 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-1.docx

# EXHIBIT A-2

to

## WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1. The Elaine #1 Well (API #181-31547) and associated wellbore, with a surface location situated at latitude 33° 44' 55" – north, longitude 96° 41' 02" – west, in Section 26, Block 1, 11, 15, 16, the East half of the J.C. Wade Survey, Abstract 1382, Grayson County, Texas.

2. All personal property and fixtures associated with the Elaine #1 Well, including without limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner, Deceased | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Carin Isabel Knoop | Maricopa Resources, LLC | 5464/910 | 4/7/2014 |
| Grayson | Preston 150 Joint Venture | Maricopa Resources, LLC | 5521/166 | 3/24/2014 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-2.docx

**EXHIBIT A-3**

to

WELLBORE ASSIGNMENT, CONVEYANCE AND BILL OF SALE

Property Description:

1.  The William #1H Well (API #181-31557) and associated wellbore, with a surface location
    situated at latitude 33° 44' 41" – north, longitude 96° 41' 01" – west, in the east half of the
    Section 26, Block 1, 11, 15, 16, JM Dodgin Survey, Abstract 378, Grayson County, Texas.

2.  All personal property and fixtures associated with the William #1H Well, including without
    limitation the following: all tubing, casing, and other equipment in the wellbores, wellhead
    equipment, gathering lines and surface production facilities.

THE FOLLOWING DESCRIBED LEASES

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Linda Buechner Byrne | TLPC Holdings, Ltd. | 5411/536 | 11/18/2013 |
| Grayson | Steven Buechner | TLPC Holdings, Ltd. | 5411/532 | 11/18/2013 |
| Grayson | C. Suzanne Buechner, Individually and as Executor of Estate of Barry L. Buechner | TLPC Holdings, Ltd. | 5411/540 | 11/18/2013 |
| Grayson | Kennedy & Minshew, PC | TLPC Holdings, Ltd. | 5049/747 | 11/10/2011 |
| Grayson | Kenneth Dolezalek | TLPC Holdings, Ltd. | 5061/139 | 9/30/2011 |
| Grayson | Louie A. Hattensy, Jr. | TLPC Holdings, Ltd. | 5057/937 | 11/10/2011 |
| Grayson | Bessie M. Dolezalek | TLPC Holdings, Ltd. | 5031/870 | 9/30/2011 |
| Grayson | Barbara B. Vogelsang | TLPC Holdings, Ltd. | 5031/846 | 9/30/2011 |
| Grayson | Burgess E. Buchanan, Jr. | TLPC Holdings, Ltd. | 5031/854 | 9/30/2011 |
| Grayson | John Yates Buchanan | TLPC Holdings, Ltd. | 5031/862 | 9/30/2011 |
| Grayson | Susan R. Greene | TLPC Holdings, Ltd. | 5031/398 | 8/18/2011 |
| Grayson | Hugh Ringgold | TLPC Holdings, Ltd. | 5031/390 | 8/18/2011 |
| Grayson | Kathryn Michelle Looney | TLPC Holdings, Ltd. | 5034/673 | 9/30/2011 |
| Grayson | Anita Anderson, Power of Attorney for Gary Michael Looney | TLPC Holdings, Ltd. | 5034/665 | 9/30/2011 |
| Grayson | Charles Evans | TLPC Holdings, Ltd. | 5036/856 | 9/30/2011 |
| Grayson | John F. Evans | TLPC Holdings, Ltd. | 5031/406 | 9/30/2011 |
| Grayson | Robert Yates Evans Jr. | TLPC Holdings, Ltd. | 5031/414 | 9/30/2011 |
| Grayson | SH Productions, Inc. | Maricopa Resources, LLC | 5464/919 | 2/24/2014 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|---|---|---|---|---|
| Grayson | Kathy Reed | Maricopa Resources, LLC | 5464/927 | 2/24/2014 |
| Grayson | Kirk E Reed | Maricopa Resources, LLC | 5464/931 | 2/24/2014 |
| Grayson | Southstar Energy Corp | Maricopa Resources, LLC | 5464/915 | 2/24/2014 |
| Grayson | Washita Mineral Co | Maricopa Resources, LLC | 5464/923 | 2/24/2014 |
| Grayson | Endeavor Energy Resources, L.P. | OKT Resources, LLC | 4981/402 | 2/1/2011 |
| Grayson | Thomas W. Lett, Individually and as Trustee of the Sam Lett Testamentary Trust | OKT Resources, LLC | 4418/520 | 2/1/2008 |
| Grayson | Castello Enterprises, Inc. | OKT Resources, LLC | 4980/156 | 2/1/2011 |
| Grayson | Wilbur Lee Dean III | Matthew Avery | 4296/513 | 4/18/2007 |
| Grayson | Joseph Glen Dean | Matthew Avery | 4296/506 | 4/18/2007 |
| Grayson | Paula Marie Dean Halbach, aka Paula Marie Dean | Matthew Avery | 4980/140 | 4/18/2007 |
| Grayson | Landon Boyd Odle | Matthew Avery | 4760/92 | 1/31/2007 |
| Grayson | Douglas Kent Odle | Matthew Avery | 4760/88 | 3/6/2007 |
| Grayson | Gary Wayne Odle | Matthew Avery | 4296/493 | 5/10/2007 |
| Grayson | LaJuan Odle | Matthew Avery | 4760/92 | 1/30/2007 |
| Grayson | Pottsboro Church of Christ | Matthew Avery | 4983/321 | 4/10/2011 |
| Grayson | Vurlas Land Wilson, a/ka Verlas Lane Wilson and Margorie Marie Wilson | Matthew Avery | 4296/469 | 4/27/2007 |
| Grayson | John Robert Hooper | Paradise Springs, LLC | 4993/305 | 2/12/2011 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4980/144 | 1/2/2011 |
| Grayson | Ann W. Tracy, Trustee under the Ann W. Tracy Revocable Trust dated January 8, 1991 | Matthew Avery | 4296/457 | 6/27/2007 |
| Grayson | Ilva Wilson, Ind and as Trustee of the JamesM. Wilson Jr and Ilva Wilson Family Trust | Matthew Avery | 4297/46 | 6/27/2007 |
| Grayson | Bobby C Wilson | Matthew Avery | 4296/461 | 6/27/2007 |
| Grayson | Peggy Ann Gehrig | Matthew Avery | 4296/449 | 6/27/2007 |
| Grayson | Thomas J. Wilson | Matthew Avery | 4296/466 | 6/27/2007 |

| County | Lessor | Lessee | Volume /Page | Effective Date |
|--------|--------|--------|--------------|----------------|
| Grayson | Lee Marjorie Hooper | Matthew Avery | 4296/454 | 4/27/2007 |
| Grayson | Berdine Eberhart and Tom Eberhart | Matthew Avery | 4296/441 | 4/27/2007 |
| Grayson | Terry Lee Garofalo | Matthew Avery | 4296/445 | 4/27/2007 |
| Grayson | Anadarko E&P Onshore, LLC | Paradise Springs, LLC | 5355/704 | 8/28/2013 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5274/698 | 3/15/2013 |
| Grayson | PCP Trust, Phillip C. Brown, Trustee and Philip Charles Brown | Paradise Springs, LLC | 5274/701 | 3/15/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5367/400 | 9/10/2013 |
| Grayson | Norman D. O'Neal | Paradise Springs, LLC | 5002/826 | 8/21/2011 |
| Grayson | Wel-Mar Investments | Paradise Springs, LLC | 5002/830 | 8/21/2011 |
| Grayson | Philip C. Brown, aka Philip Charles Brown; PCB Trust | Paradise Springs, LLC | 5002/834;838 | 8/21/2011 |

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 8 Subject Wells Assignments\EXHIBIT A-3.docx

EXHIBIT

**B**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM, INC., | § | **JOINTLY ADMINISTERED** |
| MARICOPA RESOURCES, LLC | § | |
| PAYSON OPERATING, LLC, | § | **Case No. 16-41044** |
| | § | |
| DEBTORS. | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL, L.P., | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, | § | **Case No. 17-40180** |
| L.P., | § | **Chapter 7** |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT OF JASON R. SEARCY
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GREGG | § |

BEFORE ME, the undersigned authority, on this day personally appeared Jason R. Searcy, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Jason R. Searcy. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas, the United States Fifth Circuit Court of Appeals and the United States Supreme Court. I am the Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 ("Payson Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 and based on my best belief and information, the

1

proposed settlement obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

Further, Affiant sayeth not.

_____

Jason R. Searcy
Payson Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this 20th day of Sept., 2017, to certify with witness my hand and official seal.

_____

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

BETTY M. ALLEN
Notary Public, State of Texas
Comm. Expires 04-14-2021
Notary ID 7713174

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Searcy Affidavit.docx

2



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM, INC.,** | § | **JOINTLY ADMINISTERED** |
| **MARICOPA RESOURCES, LLC** | § | |
| **PAYSON OPERATING, LLC,** | § | **Case No. 16-41044** |
| | § | |
| DEBTORS. | § | **Chapter 11** |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, L.P.,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL 2014,** | § | **Case No. 17-40180** |
| **L.P.,** | § | **Chapter 7** |
| | § | |
| DEBTOR. | § | |

## AFFIDAVIT OF CHRISTOPHER J. MOSER
## IN SUPPORT OF JOINT MOTION TO APPROVE COMPROMISE
## AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Moser, known to be the person whose name is subscribed hereto, who, having been duly sworn, did depose and on oath state:

My name is Christopher J. Moser. I am an attorney duly licensed to practice law in the State of Texas. I am admitted to practice in all courts in the State of Texas, the United States District Court for the Eastern District of Texas and the United States Fifth Circuit of Appeals. I am the Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 ("LP Trustee"). As set forth in the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 ("Motion") and based on my best belief and information, the proposed settlement

1

obtains for the estate the most effective recovery of greater value than that which could be obtained by other liquidation measures.

It is my professional opinion that the settlement agreement reflected in the Motion is in the best interest of the estate and comports with the settlement standards of *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. *Reh'g denied,* 391 U.S. 909 (1968) and of *River City vs. Herpel, (In re Jackson Brewing Co.),* 624 F.2d 599, 602-603 (5th Cir. 1980). Accordingly, the settlement should be approved.

Further, Affiant sayeth not.

Christopher J. Moser
LP Trustee

SWORN AND SUBSCRIBED TO BEFORE ME on this 18th day of September, 2017, to certify with witness my hand and official seal.

NITA CHANCELLOR
Notary Public. State of Texas
Comm. Expires 01-09-2019
Notary ID 5162487

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution Copy\Ex 7 Settlement Motions\Moser Affidavit.docx

# EXHIBIT D

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PAYSON PETROLEUM 3 WELL 2014, LP, | § | Case No. 17-40180 |
| | § | Chapter 7 |
| DEBTOR. | § | |

## AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

[Relates to Docket No. __]

Upon consideration of the Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion")[1] between Jason R. Searcy, Chapter 11 Trustee for Payson Petroleum, Inc., Maricopa Resources, LLC, and Payson Operating, LLC in jointly administered Bankruptcy Case No. 16-41044 and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. ("Debtor") in Bankruptcy Case No. 17-40180 for entry of an order (this "Order") approving the Settlement Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue in this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Settlement Agreement, as applicable.

AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.        The Motion is GRANTED as set forth herein.

2.        The Settlement Agreement, a copy of which is attached as an exhibit to the Motion, is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

3.        Approval of the Joint Motion for Entry of Agreed Final Judgment and entry of the proposed form of Agreed Final Judgment in Adversary Proceeding No. 16-04106, styled *Jason R. Searcy, Chapter 11 Trustee v. Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.* (as amended) as provided for in the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and all parties in interest.

4.        Upon consummation of the Settlement Agreement (i) fifty-five (55%) of the Suspended Revenues, (ii) the Operating Reserve (as those terms are defined in the Settlement Agreement), and (iii) the mineral interests assigned pursuant to the Subject Wells Assignment attached as an exhibit to the Motion, shall be property of the Maricopa Resources, LLC bankruptcy estate.

5.        The 2014 LP Subject Claims Assignment and Participation Agreement attached as

an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of the Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.

6.    This Order is binding upon the Parties and all other parties in interest in accordance with the terms of the Settlement Agreement.

7.    A general unsecured claim of Payson Petroleum against 2014 LP is hereby allowed in the amount of Two Million Six Hundred Seventy-One Thousand Nine Hundred and 50/100 U.S. Dollars ($2,671,900.50).

8.    The releases provided for in the Settlement Agreement are hereby approved.  Upon consummation of the Settlement Agreement all claims by 3 Well LP against Payson Petroleum, Payson Operating or Maricopa except for the 2014 LP and 3 Well LP Retained Claims (as defined in the Settlement Agreement) are released.  Upon consummation of the Settlement Agreement all claims of Payson Petroleum, Payson Operating and Maricopa, except for the Payson Petroleum, Payson Operating and Maricopa Retained Claims (as defined in the Settlement Agreement) are released.

9.    Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the 2014 LP Avoidance Action Claims Net Recovery and the 2014 LP Partnership Related Claims Net Recovery as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement.

10.    Payson Petroleum is hereby granted standing and authority to enforce and prosecute the 2014 LP Avoidance Action Claims and the 2014 LP Partnership Related Claims without further order of this Court.  Payson Petroleum is hereby appointed the representative of the 2014 LP bankruptcy estate for purposes of prosecuting the 2014 LP Avoidance Action Claims and the 2014

LP Partnership Related Claims pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement.

11. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 2014 LP Avoidance Action Claims, 2014 LP Partnership Related Claims, or Payson/2014 LP Partnership Related Claims as those terms are defined in the 2014 LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 2014 LP Subject Claims Assignment and Participation Agreement or this Order.

12. Pursuant to the 2014 LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 2014 LP Partnership Related Claims, the 2014 LP Avoidance Action Claims and the Payson/2014 LP Partnership Related Claims. Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 2014 LP Partnership Related Claims or the 2014 LP Avoidance Action Claims that in its judgment would not be cost justified.

13. The Debtor and all other Parties to the Settlement Agreement are authorized and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

14. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SUBMITTED BY:**

*/s/ Blake Hamm*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE**
**FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,**
**AND MARICOPA RESOURCES, LLC**


**AGREED TO IN FORM AND SUBSTANCE BY:**


*/s/ Blake Hamm*
Phil Snow
State Bar No. 18812600
Blake Hamm
State Bar No. 24069869
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
(713) 335-4848 (Fax)

**COUNSEL FOR JASON R. SEARCY, CHAPTER 11 TRUSTEE**
**FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC,**
**AND MARICOPA RESOURCES, LLC**


*/s/ Keith W. Harvey*
Keith W. Harvey
State Bar No. 09180100
THE HARVEY LAW FIRM, P.C.
6510 Abrams Road
Suite 280
Dallas, Texas 75231
(972) 243-3960 Phone
(972)-241-3970 Facsimile

**COUNSEL FOR CHRISTOPHER J. MOSER, CHAPTER 7 TRUSTEE**
**FOR PAYSON PETROLEUM 3 WELL, L.P.  AND**
**PAYSON PETROLEUM 3 WELL 2014, L.P.**


I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\16-04106 3 Well LP & 3 Well 2014 LP\Settlement\Settlement Agreement-Execution
Copy\Ex 7 Settlement Motions\17-40180\20170905 Agreed Order Granting 9019 Motion 17-40180.docx


AGREED ORDER GRANTING JOINT MOTION TO APPROVE COMPROMISE
 AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019



## The Document Group

Phone # 713-343-4000
Tax ID # 11-3798060
1010 Lamar, Suite 120
Houston, Texas  77002

**EXHIBIT 4**

# Invoice

| Date | Invoice # |
|---|---|
| 9/29/2017 | 1702856 |

**BILL TO:**

Snow Spence Green LLP
Attn: Rhonda Rackley
2929 Allen Parkway, Suite 2800
Houston Texas 77019

**REMIT PAYMENT TO:**

The Document Group
1010 Lamar, Suite 120
Houston Texas 77002

| Ordered By | Terms | Rep | P. O. #/Client Matter |
|---|---|---|---|
| Janis Sherrill | Net 30 | PC | SEAj1001 |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 21,390 | Digital Prints | B/W Digital Prints | 0.07 | 1,497.30T |
| 310 | Mailout Services | Mailout Services, Large Envelopes | 0.42 | 130.20T |
| 310 | Postage | Domestic Postage Applied | 2.24 | 694.40T |
| | | Sales Tax | 8.25% | 191.56 |

**Approval**

Initial _____
T-Code _____
Client # _____
Firm/Description _____
_____

PLEASE PAY FROM THIS INVOICE. THANK YOU FOR YOUR BUSINESS!

**Total**  $2,513.46

*Your signature below is an agreement that the above described work has been authorized and received.  The party above assures payment of this invoice within 30 days.*

Received By: _____     Date: _____



# The Document Group

Phone # 713-343-4000
Tax ID # 11-3798060
1010 Lamar, Suite 120
Houston, Texas  77002

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/29/2017 | 1702857 |

**BILL TO:**

Snow Spence Green LLP
Attn: Rhonda Rackley
2929 Allen Parkway, Suite 2800
Houston Texas 77019

**REMIT PAYMENT TO:**

The Document Group
1010 Lamar, Suite 120
Houston Texas 77002

| Ordered By | Terms | Rep | P. O. #/Client Matter |
|------------|-------|-----|------------------------|
| Janis Sherrill | Net 30 | PC | SEAj1001 |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|-----------|--------|
| 46,240 | Digital Prints | B/W Digital Prints | 0.07 | 3,236.80T |
| 340 | Mailout Services | Mailout Services, Large Envelopes | 0.42 | 142.80T |
| 340 | Postage | Domestic Postage Applied | 3.29 | 1,118.60T |
| | | Sales Tax | 8.25% | 371.10 |

*Approval*

Initial _____
T-Code _____
Client # _____
Firm/Description _____

PLEASE PAY FROM THIS INVOICE. THANK YOU FOR YOUR BUSINESS!

**Total**  $4,869.30

*Your signature below is an agreement that the above described work has been authorized and received.  The party above assures payment of this invoice within 30 days.*

Received By: _____    Date: _____