# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PAYSON PETROLEUM 3 WELL, LP,** | § | **Case No. 17-40179** |
| | § | **Chapter 7** |
| DEBTOR. | § | |

| | | |
|---|---|---|
| **JASON R. SEARCY, CHAPTER 11,** | § | |
| **TRUSTEE FOR PAYSON** | § | |
| **PETROLEUM, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **Adversary No. 18-04074** |
| | § | |
| **ACME ENERGY COMPANY, LLC, ET AL.,** | § | |
| | § | |
| Defendants. | § | |

## JOINT RESPONSE IN OPPOSITION TO MOTION OF VARIOUS DEFENDANTS TO DISMISS AND BRIEF IN SUPPORT

**[Relates to Docket No. 10]**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ iii

I.      NOTE REGARDING CITATIONS ................................................................................1

II.     BACKGROUND FACTS.................................................................................................2

III.    ARGUMENT & AUTHORITIES .................................................................................12

        A.      The Court's Grant of Derivative Standing to the Payson
                Trustee was Appropriate .....................................................................................13

        B.      Responses to Ancillary Arguments.......................................................................17

                1.      No Stay Violation .....................................................................................17

                2.      No Due Process Violation.........................................................................18

                3.      No Collateral Estoppel or Res Judicata Regarding Movants' Status as
                        General Partners........................................................................................20

        PRAYER......................................................................................................................21

## **TABLE OF AUTHORITIES**

### **CASES**

*In re Channel 64 Joint Venture*, 61 B.R. 255 (Bank. S.D. Oh. 1986) ............................................20

*In re Dierschke*, 975 F.2d 181 (5th Cir. 1992)..............................................................................15

*Hartford Underwriters Ins. Co. v. Union Planters Bank N.A.*, 503 U.S. 1 (2000)........................14

*Henkel v. Lickman (In re Lickman)*, 297 B.R. 162 (Bank. M.D. Fla. 2003)..................................18

*Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.* (In re Trailer Sources, Inc.),
555 F.3d 231 (6th Cir. 2009) .........................................................................................................18

*Jolly v. Pittore*, 170 B.R. 793 (S.D.N.Y. 1994) ...........................................................................20

*Lutterodt v. Potter*, Civil Action No. 4:17-CV-00058-ALM-CAN., 2017 U.S. Dist. LEXIS
21,64839 (E.D. Tex. Mar. 31, 2017)...............................................................................................18

*Martin v. Sanderson Farms, Inc.*, 222 Fed. Appx. 360 (5th Cir. 2007) .......................................15

*In re Natchez Corp. of W. Va.*, 953 F.2d 184 (5th Cir. 1992).............................................14, 15, 17

*Phillips v. First City* (*In re Phillips*), 966 F.2d 933 (5th Cir. 1992).............................................20

*In re Pointer*, 952 F.2d 82 (5th Cir. 1992)....................................................................................14

*Price v. Gurney*, 324 U.S. 100 (1945) ..........................................................................................20

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001)..............................................................12

*Robert v. Bell Helicopter Textron, Inc.*, No. 3:01-CV-1576-L, 2002 U.S. Dist. LEXIS 9904
(N.D. Tex. May 31, 2002)................................................................................................................18

*Smith v. Select Portfolio Servicing, Inc.*, 2017 U.S. Dist. LEXIS 23778
(E.D. Tex. Jan. 31, 2017).........................................................................................................12, 13

*St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533 (5th Cir. 2009)..................................17

*Union Planters Nat'l Bank v. Hunters Horn Assocs.* (*In re Hunters Horn Assocs.*), 158 B.R.
779 (Bank. M.D. Ten. 1993)............................................................................................................20

## STATUTES AND RULES

11 U.S.C. § 303(b)(3)(A) ...................................................................................................20

11 U.S.C. § 506(c) ............................................................................................................14

11 U.S.C. §541(a) ...............................................................................................................4

11 U.S.C. § 544 .................................................................................................................15

11 U.S.C. § 547 ...................................................................................................................2

11 U.S.C. § 547(b) ..............................................................................................................5

11 U.S.C. § 548 ...................................................................................................................2

11 U.S.C. § 548(a)(1)(A) ....................................................................................................4

11 U.S.C. § 548(a)(1)(B) ....................................................................................................4

11 U.S.C. §550 ....................................................................................................................2

11 U.S.C. § 550(a) ..............................................................................................................5

11 U.S.C. § 723 .......................................................................................................4, 7, 11, 13

11 U.S.C. § 9014-1(a) .......................................................................................................19

FED. R. BANKR. P. 1004 ....................................................................................................20

FED. R. BANKR. P. 9014 ....................................................................................................19

FED. R. BANKR. P. 9014(a) ...............................................................................................19

FED. R. CIV. P. 12(b)(1) ...............................................................................................12, 17

TEX. BUS. & COM. CODE § 24.005(a)(1) ..........................................................................4, 5

TEX. BUS. & COM. CODE § 24.005(a)(2) ..........................................................................4, 5

## RESPONSE TO MOTION TO DISMISS AND BRIEF IN SUPPORT

**TO THE HONORABLE BRENDA RHOADES, U. S. BANKRUPTCY JUDGE:**

COME NOW Jason R. Searcy, Chapter 7 Trustee for Payson Petroleum, Inc. in substantively consolidated Bankruptcy Case No. 16-41044 (the "Payson Trustee") and Christopher J. Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. in Bankruptcy Case No. 17-40179 and Payson Petroleum 3 Well 2014, L.P. in Bankruptcy Case No. 17-40180 (the "LP Trustee") to file their *Joint Response to Motion of Various Defendants to Dismiss and Brief in Support*, and respectfully show unto the Court the following:

**I.**
**NOTE REGARDING CITATIONS TO RECORD**

1.      Movants assert their Rule 12(b)(1) motion to dismiss is a "factual attack" on the Payson Trustee's standing to assert the claim in this lawsuit (the "Section 723 Claim") and that the only evidence required to prove their factual attack "appears of record." *Motion of Various Defendants to Dismiss and Brief in Support* (the "Subject Motion") at pp. 4-5. For ease of reference and to avoid attaching documents already in the Court's record, the Payson Trustee and LP Trustee (the "Trustees") cite to pages of pleadings and orders filed in Bankruptcy Case Nos. (i) 16-41044 (*In re Payson Petroleum, Inc.*), (ii) 17-40179 (*In re Payson Petroleum 3 Well, LP*), *and* (iii) 17-40180 (*In re Payson Petroleum 3 Well 2014, LP*) by referencing the numbers the Clerk added to the top of each document filed. For example, the Trustees' citation to the first page of Exhibit A to their *Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019*, filed in Bankruptcy Case No. 16-41044, would be "Docket No. 154-1 in Case No. 16-41044 at p. 2." Similarly, the Trustees' citation to pages four and five of the order approving that motion would be "Docket No. 265 in Case No. 16-41044 at pp. 4-5."

1

## II.
## BACKGROUND FACTS

2.      <u>Payson Debtors File Bankruptcy</u>.   On June 10, 2016, Payson Petroleum, Inc. ("<u>PPI</u>"), Payson Operating, LLC ("<u>PO</u>"), and Maricopa Resources, LLC ("<u>Maricopa</u>" and collectively with PPI and PO the "<u>Payson Debtors</u>") filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>").  *See* Docket No. 1 in Case Nos. 16-41043, 16-40144, *and* 16-40145.   On July 12, 2016, the Court entered orders converting these bankruptcy cases to cases under Chapter 11 of the United States Bankruptcy Code.  *See* Docket No. 39 in Case No. 16-41043; Docket No. 33 in Case No. 16-41044; *and* Docket No. 41 in Case No. 16-41045.  On July 18, 2016, the Court entered orders approving the United States Trustee's applications to appoint the Payson Trustee as Chapter 11 Trustee in these bankruptcy cases.  *See* Docket No. 55 in Case No. 16-41043; Docket No. 50 in Case No. 16-41044; *and* Docket No. 57 in Case No. 16-41045.  On August 11, 2016, the Court ordered the joint administration of these debtors' bankruptcy cases under Case No. 16-41044.  *See* Docket No. 75 in Case No. 16-41043; Docket No. 73 in Case No. 16-41044; *and* Docket No. 81 in Case No. 16-41045.

3.      <u>LP Adversary Proceeding</u>.   On November 1, 2016, the Payson Trustee filed his *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548, 547, and 550* (the "<u>Original Complaint</u>") in Adversary Proceeding No. 16-04106 (the "<u>LP Adversary Proceeding</u>") against Payson Petroleum 3 Well, LP ("<u>3 Well LP</u>") and Payson Petroleum 3 Well 2014, LP ("<u>2014 LP</u>") to recover certain oil and gas interests transferred from Maricopa to 3 Well LP and 2014 LP during the 90-day preference period.  *See* Docket No. 1 in Adv. Proceeding 16-04106.

4.      <u>Answer to LP Adversary</u>.   On December 19, 2016, 3 Well LP and 2014 LP answered the Original Complaint.  *See* Docket No. 17 in LP Adversary Proceeding.  3 Well LP

and 2014 LP were originally represented by attorney Daniel P. Winnika from the law firm of Loewinsohn Flegle Deary Simon, LLP.  *See id*. at p. 10.

5.　　　LP Debtors File Bankruptcy.　On January 31, 2017, 3 Well LP and 2014 LP (collectively the "LP Debtors") filed voluntary petitions under Chapter 7 of the Bankruptcy Code. *See* Docket No. 1 in Case No. 17-40179 *and* Docket No. 1 in Case No. 17-40180.  Jeff Cohen signed each voluntary petition as "Managing Member of 3 Well MGP, LLC, managing general partner of debtor."  *See* Docket No. 1 in Case No. 17-40179 at p. 4 and Docket No. 1 in Case No. 17-40180 at p. 4.  Mr. Winnika represented the LP Debtors in connection with their bankruptcy filings. *See id*.  The parties who filed the Subject Motion (the "Movants") were served with 3 Well LP's bankruptcy petition.  *See* Movant Chart, attached as **Exhibit A**.  LP Trustee was appointed as Chapter 7 Trustee for the LP Debtors.

6.　　　Stay Issues.　On February 21, 2017, LP Trustee filed his *Certificate of Notice of Bankruptcy Filing and Stay* in the Adversary Proceeding.  *See* Docket No. 24 in LP Adversary Proceeding.　On March 31, 2017, the Payson Trustee filed his *Motion to Lift Stay* in the LP Debtors' bankruptcy cases which, *inter alia*, explained that the Payson Trustee had "identified additional claims against the Debtor LPs" and "numerous general partners of those limited partnerships who the Payson Trustee believes are jointly and severally liable to the Payson Debtors for damages arising from" the Payson Debtors' claims."  Docket No. 16 in Case No. 17-40179 at p. 3 *and* Docket No. 14 in Case No. 17-40180 at p. 3.  The Payson Trustee's lift stay motion also explained that the LP Trustee was opposed to the Payson Trustee proceeding with claims against the LP Debtors' general partners.  *See id*. at p. 4.  On April 4, 2017, the LP Trustee filed his *Amended Joint Objection, Response, and Request for Hearing to Jason Searcy, Chapter 11 Trustee of Payson Petroleum, Inc.'s Motion to Lift Stay* in which the LP Trustee advised, *inter alia*, that

"Trustee Moser asserts that the causes of action that the Movant wishes to assert against the general partners of the Debtor Defendants belong to him under the auspices of Sections 723 and 541(a) of the Bankruptcy Code and that any pursuit of those partners by the Movant would be improper." *See* Docket No. 19 in Case No. 17-40179 at p. 3 *and* Docket No. 17 in Case No. 17-40180 at p. 3. On June 21, 2017, the Bankruptcy Court entered its *Agreed Order Granting Motion to Lift Stay* in LP Debtor's bankruptcy cases. *See* Docket No. 29 in Case No. 17-40179 *and* Docket No. 26 in Case No. 17-40180. The Court's Order provided that:

> It is further **ORDERED, ADJUDGED, AND DECREED** that (i) the Payson Trustee may assert state law claims against general partners of Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P., to [the] extent allowed under applicable state law, and (ii) Christopher Moser, Chapter 7 Trustee for Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. … may also assert state law claims to the extent allowed under applicable state law and claims under 11 U.S.C. § 723 against the general partners of Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P.

*See id*. at p.1.

7. <u>Amended LP Adversary Complaint</u>. On July 13, 2017, the Payson Trustee filed his *First Amended Complaint* in the LP Adversary Proceeding. *See* Docket No. 25 in LP Adversary Proceeding. The Payson Trustee asserted the following claims against the LP Debtors:

| Cause of Action | Nature of Claim | Relief Sought |
|---|---|---|
| 1 | Constructive Fraudulent Transfer of Maricopa's Interests in Subject Wells<br><br>(11 U.S.C. § 548(a)(1)(B) & TEX. BUS. & COM. CODE § 24.005(a)(2)) | Avoidance of Subject Wellbore Assignments |
| 2 | Actual Fraudulent Transfer of Maricopa's Interests in Subject Wells<br><br>(11 U.S.C. § 548(a)(1)(A) & TEX. BUS. & COM. CODE § 24.005(a)(1)) | Avoidance of Subject Wellbore Assignments |

| Cause of Action | Nature of Claim | Relief Sought |
|---|---|---|
| 3 | Preferential Transfer of Maricopa's Interests in Subject Wells<br><br>(11 U.S.C. § 547(b)) | Avoidance of Subject Wellbore Assignments |
| 4 | Actual Fraudulent Transfer of "Investment Funds"<br><br>(TEX. BUS. & COM. CODE § 24.005(a)(1)) | Avoidance of PPI Transfers to LP Debtors<br><br>($1,274,310 to 3 Well LP & $2,862,000 to 2014 LP) |
| 5 | Constructive Fraudulent Transfer of "Investment Funds"<br><br>(TEX. BUS. & COM. CODE § 24.005(a)(2)) | Avoidance of PPI Transfers to LP Debtors<br><br>($1,274,310 to 3 Well LP & $2,862,000 to 2014 LP) |
| 6 | Recovery of Avoided Transfers<br><br>(11 U.S.C. § 550(a)) | Recovery of Avoided Transfers |
| 7 | Breach of Contract Against 3 Well LP | $17,115,777 |
| 8 | Breach of Contract Against 2014 LP | $5,343,803 |

*See id.*

8.     <u>Negotiated Resolution of LP Adversary</u>. The Trustees met several times to discuss resolving the Payson Trustee's claims.  After exchanging not less than five (5) proposed term sheets, the Trustees agreed to terms on or about August 8, 2017.  On September 20, 2017, the Trustees executed the "<u>Proposed Settlement Agreement</u>."  *See* Proposed Settlement Agreement, attached as Exhibit A to the *Joint Motions to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* filed at (i) Docket No. 34-1 in Case No. 17-40179; (ii) Docket No. 31-1 in Case No. 17-40180; and (iii) Docket No. 154-1 in Case No. 16-41044.  Under the Proposed Settlement, the Trustees agree to resolve the Payson Trustee's claims by, *inter alia*, agreeing that:

- the LP Debtors would reassign their interests in the Subject Wells to Maricopa <u>and</u>

- o the Payson Trustee would market and sell the operating and working interests in the Subject Wells;

- o 55% of the Net Suspended Revenues and Sales Proceeds would be paid to Maricopa;

- o 12.5055% of the Net Suspended Revenues and Sales Proceeds would be paid to 3 Well LP; and

- o 32.4945% of the Net Suspended Revenues and Sales Proceeds would be paid to 2014 LP.

- 3 Well LP and 2014 LP would hold allowed unsecured claims in Maricopa's bankruptcy case in amounts equal to the value of the interests in the Subject Wells that each LP Debtor reassigns to Maricopa;

- PPI would hold allowed unsecured claims in 3 Well LP's bankruptcy case in the amount of $8,557,888.50 and in 2014 LP's bankruptcy case in the amount of $2,671,900;[1]

- PPI and 3 Well LP would each hold a 50% participation interest in 3 Well LP Avoidance Action Claims and 3 Well LP Partnership Related Claims, and the Payson Trustee would have standing to assert such claims in the 3 Well LP bankruptcy case; and

- PPI and 2014 LP would each hold a 50% participation interest in 2014 LP Avoidance Action Claims and 2014 Partnership Related Claims, and the Payson Trustee would have standing to assert such claims in the 2014 LP bankruptcy case.

*See, e.g.,* "Joint 9019 Motions" at pp. 5-9 filed at (i) Docket No. 154 in Case No. 16-41044; (ii) Docket No. 34 in Case No. 17-40179; *and* (iii) Docket No. 31 in Case No. 17-40180 (explaining settlement terms and rationale for same); *see also* Proposed Settlement Agreements (setting forth proposed settlement terms in more detail).

9.   **Joint 9019 Motions Filed & Served**.  On September 21, 2017, the Trustees filed their Joint 9019 Motions.  *See id*.  The Trustees served the Joint 9019 Motions and all exhibits

---

[1]   The Trustees additionally agreed that PPI's unsecured claims in the LP Debtor bankruptcy cases would be subordinate to all timely filed, allowed general unsecured claims.

thereto in accordance with the Certificates of Service attached to the Joint 9019 Motions.  *See* Affidavit of Pat Carpenter, attached as **Exhibit B** (affidavit testimony that Joint 9019 Motions and exhibits thereto were served "in accordance with the Certificates of Service attached to the 9019 Motions").  Movants were served with the Joint 9019 Motion in the 3 Well LP bankruptcy case (and the exhibits thereto).  *See* Ex. A.  The Proposed Settlement Agreements, served along with the Joint 9019 Motions, define and attach the "2014 LP Subject Claims Assignment and Participation Agreement" and the "3 Well LP Subject Claims Assignment and Participation Agreement."  Docket No. 34-1 in Case No. 17-40179 at p. 3.  The 3 Well LP Subject Claims Assignment and Participation Agreement defines, *inter alia*, "3 Well LP Partnership Related Claims" as "all rights, claims, causes of action and rights of contribution of 3 Well LP … against any current or former general partner or limited partner of 3 Well LP, including but not limited to claims under 11 U.S.C. § 723."  *Id*. at pp. 43-44.

10.     Partner Objections to Joint 9019 Motions.  Prior to the hearing on the Trustees' Joint 9019 Motions, partners of the LP Debtors filed 104 objections in Case No. 16-41044.  *See* Docket Nos. 156-164, 166-214, 216-240, 242-245, 247, 249, 250, 252-264, and 271 in Case No. 16-41044 (the "Partner Objections").  All but three (3) of the Partner Objections stated, *inter alia*, that:

> Here are the simple facts.  First, approximately 300 investors invested approximately $22 million into two partnerships with the intent of developing three oil wells.  Second, the partnerships paid the promoter the entire amount required by the partners' contributions for the turnkey contract.  Third, one of the promoter's companies, Maricopa Resources, LLC, was required to assign the wellbore interest to the partnerships once the wells were completed.  Fourth, that company ultimately assigned the wellbore interest to the partnership, however, after Matt Griffin's companies filed for bankruptcy, the trustee alleged that the transfer was inappropriate, even though it was contractually required to do so and all funds required to be paid were paid, since it was not assigned on what is alleged to be a timely basis. Fifth, consequently the Payson trustee, pursuant to the joint operating

agreement, began to operate the wells and failed to turn over the net proceeds of that operation to the partnerships as required by the JOA. Sixth, his failure to turn over those proceeds purposely denied the partnership the funds necessary to defend his meritless allegations and attempt to obtain the wellbore interests. **Seventh, our partnership's legal counsel suggested our partnership file bankruptcy in order to force those proceeds to be turned over to the partnership's bankruptcy estate, as well as, allow our trustee to cancel the joint operating agreement as provided for in bankruptcy rules, which would then provide our partnership the necessary funds to defend against the Payson trustee's meritless allegations. Eighth, the partnership took counsel's advice, however, the new trustee never took any action to retrieve those funds or to cancel the joint operating agreement, which would have provided us adequate funds to defend the action.** Ninth, the trustee merely entered into a proposed settlement agreement with the Payson trustee, which in effect, gives the Payson trustee all of he partnership's assets, of course, after he and our trustee take their percentage from the estate. This is accomplished by giving 55% of the wellbore interests to the Maricopa estate which it is alleged failed to timely assign the interests and then grant a claim to the Payson Petroleum estate for failure to pay the entire turnkey price.

*See, e.g.,* Docket Nos. 156-164, 166-214, and 216-240 in Case No. 16-41044 at pp. 1-3 (emphasis added).

11.     <u>Trustees' Response to Partner Objections</u>. On October 20, 2017, the Trustees filed their *Joint Response to Objections to Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "<u>Joint Response</u>"). *See* Docket No. 248 in Case No. 16-41044. Among other things, the Joint Response again outlined the terms of the proposed settlement and explained that the proposed settlement would "allow[] PPI Creditors to share in the proceeds (if any) of claims the LP Debtors may have against … LP Debtor partners." *See id.* at pp. 9-11 & 17.

12.     <u>Contested Hearing on Joint 9019 Motions</u>. On October 25, 2017, the Court held a contested hearing regarding the Joint 9019 Motions. *See* Transcript of Proceedings, attached hereto as **<u>Exhibit C</u>**. During the contested hearing, the Court heard argument from attorneys for

the Trustees, the attorney for JMW Recovery, LLC, and several objecting partners. *See, generally, id.* The Trustees provided testimony under both direct and cross examination. *See id.* at p. 2 (identifying transcript page numbers for direct and cross examination). Mr. Searcy was cross-examined by Mr. Reed (the attorney for JMW Recovery, LLC), and four objecting partners. *See id.* Mr. Moser was also cross-examined by Mr. Reed. The Court allowed closing argument from the attorneys for the Trustees, Mr. Reed, and three objecting partners. *See id.* at pp. 62-77. At the end of the contested hearing, the Court issued its ruling and approved the Joint 9019 Motions. *See id.* at pp. 77-80. After issuing its ruling, the Court provided further explanation as follows:

> All we're doing is settling the lawsuits and the causes of action between the respective estates. It does not release non-parties to the settlement from whatever obligations they may have. It does not create obligations that they don't have. If the estates have claims against you for something, like against general partners, those issues still remain. If they don't have claims against you because you are a limited partner or don't otherwise have liability, the settlement doesn't create obligations.
>
> I believe, based on the evidence the Court has seen in this case and the testimony of the respective parties, I don't believe there's going to be any funds available in any of the estates to make distributions to investors.
>
> Am I mistaken in that understanding, gentlemen?
>
> Okay. So I guess the reality is, based on the funds that are available, investors are not going to see money from these estates, because there's not enough money to pay the creditors. As I understand it, there was at least a $5 million haircut that took place not too long before bankruptcy, because the well did not -- for whatever reason, I don't know if it was a dry well, or they just didn't complete it, but there was no money flowing from that well. And there was a lot of money that's owed. But at the end of the day, there's not going to be any money from the bankruptcy estates to you, if you're an investor. If you are a creditor, that's different. Because it depends on what priority you have and what secured claims you have in all of those issues. If you have liability, especially if you're a general partner personally, there may be some issues there. And I think the Trustees have indicated they're going to be looking at those and at least have some interest in pursuing those, perhaps. So you all should contact lawyers. All I'm giving you at this point is just information. You all need to go contact your own lawyers to understand the ramifications of these issues, as it affects you.

*Id*. at pp. 81:2-82:11.

13.    9019 Orders.  On October 27, 2017, the Court entered the *Agreed Orders Granting Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019*.  *See* (i) Docket No. 37 in Case No. 17-40179; (ii) Docket No. 34 in Case No. 17-40180; and (iii) Docket No. 265 in Case No. 16-41044.  The 9019 Order entered in Case No, 17-40179 provides, *inter alia*, that the Court found "notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided" and:

> The 3 Well LP Subject Claims Assignment and Participation Agreement attached as an exhibit to the Motion is approved in its entirety as being fair, reasonable and in the best interests of Debtor, its bankruptcy estate and parties in interest, and is effective and binding on the Parties and all parties in interest according to its terms as if set forth fully in this Order.
>
> **Upon consummation of the Settlement Agreement, Payson Petroleum shall own a fifty percent (50%) participation interest in the following** the 3 Well LP Avoidance Action Claims Net Recovery and **the 3 Well LP Partnership Related Claims Net Recovery** as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement.
>
> **Payson Petroleum is hereby granted standing and authority to enforce and prosecute the** 3 Well LP Avoidance Action Claims and the **3 Well LP Partnership Related Claims** without further order of this Court.  **Payson Petroleum is hereby appointed the representative of the 3 Well LP bankruptcy estate** for purposes of prosecuting the 3 Well LP Avoidance Action Claims and **the 3 Well LP Partnership Related Claims pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement**.
>
> No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, or estoppel shall apply to the 3 Well LP Avoidance Action Claims, 3 Well LP Partnership Related Claims, or Payson/3 Well LP Partnership Related Claims as those terms are defined in the 3 Well LP Subject Claims Assignment and Participation Agreement by virtue of any parties' entry into the 3 Well LP Subject Claims Assignment and Participation Agreement or this Order.
>
> Pursuant to the 3 Well LP Subject Claims Assignment and Participation Agreement and this Order, Payson Petroleum shall have exclusive authority to file suit,

prosecute and settle the 3 Well LP Partnership Related claims, the 3 Well LP Avoidance Action Claims and the Payson/3 Well LP Partnership Related claims. Payson Petroleum is under no duty to initiate any litigation or to take any action with respect to the 3 Well LP Partnership Related Claims or the 3 Well LP Avoidance Action Claims that in its judgment would not be cost justified.

Docket No. 37 in Case No. 17-40179 at pp. 1-4.

14.     <u>Performance of Approved Settlement</u>.  Since the Court entered the 9019 Orders, the Trustees have, *inter alia*, (i) sold the oil and gas interests recovered by Payson Petroleum and (ii) distributed the hydrocarbon and property sale proceeds pursuant to the approved settlement.

15.     <u>Deficiencies Determined</u>.  On August 28, 2018, the LP Trustee informed the Payson Trustee that after distributing all current estate assets he expected deficiencies of (i) $2,671,900.50 in the 3 Well LP case and (ii) $8,557,888.50 in the 2014 LP case.

16.     <u>General Partner Adversary Proceedings Filed</u>.  Pursuant to the derivative standing granted to him under the 9019 Orders, the Payson Trustee, on September 12, 2018, filed (i) Adversary Proceeding No. 18-04074, which asserts a claim under 11 U.S.C. § 723 against general partners of 3 Well LP to recover the deficiency in this adversary proceeding (the "<u>Section 723 Claim</u>"), and (ii) Adversary Proceeding No. 18-04076, which asserts a claim under 11 U.S.C. § 723 against general partners of 2014 LP to recover the deficiency in that case.  *See* Docket No. 1 in Adversary Proceeding Nos. 18-04074 & 18-04076.

17.     <u>Motions to Dismiss</u>.  On November 6, 2018, Movants, represented by the law firm of Whitaker Chalk Swindle & Schwarz PLLC, filed their *Motion of Various Defendants to Dismiss and Brief in Support* and their *Motion of Various Defendants to Withdraw the Reference*.  *See* Docket No. 10 in Adv. Pro. No. 18-04074 (the "<u>Subject Motion</u>").

# III.
## ARGUMENT & AUTHORITIES

18.    <u>Law Regarding Rule 12(b)(1) Motions to Dismiss.</u>    "Motions filed under Rule

12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter

jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th

Cir. 2001) (citing FED. R. CIV. P. 12(b)(1)).  "Proper grounds for a Rule 12(b)(1) motion to dismiss

include a plaintiff's lack of standing to bring suit." *Smith v. Select Portfolio Servicing, Inc.*, Civil

Action No. 9:15CV61, 2017 U.S. Dist. LEXIS 23778 at **7-8 (E.D. Tex. Jan. 31, 2017).  "Lack

of subject matter jurisdiction may be found in any one of three instances:  (1) the complaint alone;

(2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming,* 281

F.3d at 161.  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting

jurisdiction."  *Id*.  "In examining a Rule 12(b)(1) motion, the district court is empowered to

consider matters of fact which may be in dispute."  *Id*.  "Ultimately, a motion to dismiss for lack

of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot

prove any set of facts in support of his claim that would entitle plaintiff to relief."  *Id*.  "The court's

dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a

determination on the merits and does not prevent the plaintiff from pursuing a claim in a court that

does have proper jurisdiction."  *Id.*

19.    "When challenging subject matter jurisdiction under Rule 12(b)(1), a party can

make a 'facial attack' or a 'factual attack.'"  *Smith*, 2017 U.S. Dist. LEXIS 23778 at *8.  "If the

party merely files a Rule 12(b)(1) motion it is considered a facial attack, and the court looks only

at the sufficiency of the allegations in the pleading and assumes them to be true."  *Id*.  "If a party

submits evidence (such as affidavits or testimony) in support of its Rule 12(b)(1) motion, however,

the moving party makes a factual attack on the subject matter jurisdiction, and the nonmovant must submit evidence and prove by a preponderance of the evidence that the court has jurisdiction." *Id*.

20.　　In this case, Movants assert that they factually attack the Payson Trustee's standing to assert the Section 723 Claim but state that "[t]he only evidence needed is evidence that appears of record …."  Subject Motion at p. 5.

**A.　　The Court's Grant of Derivative Standing to the Payson Trustee Was Appropriate.**

21.　　Movants argue the Payson Trustee lacks standing because "the plain language of the statute provides that the [LP Trustee], and only the [LP Trustee], has standing to assert a claim under section 723(a)."  Subject Motion at p. 7.  In this case, the Payson Trustee obtained derivative standing to prosecute the Section 723 Claim via the 9019 Orders.  *See* Docket No. 265 in Case No. 16-41044 *and* Docket No. 37 in Case No. 17-40179.  The 9019 Order in Case No. 17-40179 provides, *inter alia*, that (i) the 3 Well LP Subject Claims Assignment and Participation Agreement … is approved in its entirety;" (ii) "Payson Petroleum shall own a fifty percent (50%) participation interest in … the 3 Well LP Partnership Related Claims Net Recovery;" (iii) "Payson Petroleum is hereby granted standing and authority to enforce and prosecute the … 3 Well Partnership Related Claims;" (iv) "Payson Petroleum is hereby appointed the representative of the 3 Well LP bankruptcy estate for purposes of prosecuting … the 3 Well LP Partnership Related Claims; and (v) "Payson Petroleum shall have exclusive authority to file suit, prosecute and settle the 3 Well LP Partnership Related Claims."  Docket No. 37 in Case No. 17-40179 at pp. 1-4.  The 3 Well LP Subject Claims Assignment and Participation Agreement explains that "3 Well LP Partnership Related Claims" include the 3 Well LP bankruptcy estate's "rights, claims, causes of action and rights of contribution … against any current or former general partner or limited partner of 3 Well LP, including but not limited to claims under 11 U.S.C. § 723."  Docket No. 34-1 in Case No. 17-

40179 at pp. 43-44.  Thus, the Court granted the Payson Trustee derivative standing to prosecute

the Section 723 Claim against 3 Well LP's general partners.

22.     Movants cite to *Hartford Underwriters Ins. Co. v. Union Planters Bank N.A.* for

the proposition that United States Supreme Court precedent prevents this Court from granting the

Payson Trustee derivative standing to assert the Section 723 Claim.  *See* Subject Motion at p. 7

(quoting 503 U.S. 1 (2000)).  In *Hartford Underwriters*, Justice Scalia wrote an opinion addressing

whether an administrative claimant could independently assert 11 U.S.C. § 506(c) to recover funds

from a secured party's collateral.  *See Hartford Underwriters Ins. Co.*, 503 U.S. at 3.  After

addressing the petitioner's arguments, the Supreme Court held that "11 U.S.C. § 506(c) does not

provide an administrative claimant an independent right to use the section to seek payment of its

claim."  *Id*. at 14.  The Supreme Court, however, expressly noted that:

> We do not address whether a bankruptcy court can allow other interested parties to
> act in the trustee's stead in pursuing recovery under § 506(c).  *Amici* American
> Insurance Association and National Union Fire Insurance Co. draw our attention to
> the practice of some courts of allowing creditors or creditors' committees a
> derivative right to bring avoidance actions when the trustee refuses to do so, even
> though the applicable Code provisions … mention only the trustee.  Whatever the
> validity of that practice, it has no analogous application here, since petitioner did
> not ask the trustee to pursue payment under § 506(c) and did not seek permission
> from the Bankruptcy Court to take such action in the trustee's stead.  Petitioner
> asserted an independent right to use § 506(c), which is what we reject today.

*Id*. at 13, fn. 5.  Thus, *Hartford Underwriters* does not stand for Movants' proposition.

23.     There was nothing improper about the Court's grant of derivative standing under

Fifth Circuit precedent.  In *In re Natchez Corp. of W. Va.*, the Fifth Circuit explained that a creditor

may obtain derivative standing to assert estate claims "if it has moved the bankruptcy court for

authorization to do so and has shown appropriate circumstances which would permit such action."

953 F.2d 184, 187 (5th Cir. 1992) (citing to *In re Pointer*, 952 F.2d 82 (5th Cir. 1992)).  In *In re*

*Dierschke*, the Fifth Circuit expressly noted that it would not question "a creditor's ability to pursue

relief from a fraudulent transfer pursuant to 11 U.S.C. § 544 … because the record indicates that the bankruptcy court authorized the creditor's exercise of the trustee's right to reach fraudulent transfers …." 975 F.2d 181, 182 fn. 1 (5th Cir. 1992) (citing *In re Natchez Corp. of W. Va.*, 953 F.2d at 187). And, in *Martin v. Sanderson Farms, Inc. (In re Martin)*, the Fifth Circuit again explained that bankruptcy courts may grant derivative standing to pursue causes of action that would otherwise "apply to only the Trustee." 222 Fed. Appx. 360, 363 (5th Cir. 2007) (citing to *In re Dierschke*, 975 F.2d at 182 and *In re Natchez Corp. of W. Va.*, 953 F.2d at 187). This Court had good reason to grant derivative standing to the Payson Trustee because (i) derivative standing was a component of a larger settlement that the Court found was "in the best interests of the Debtor's estate, its creditors, and other parties in interest," (ii) eliminated the potential that the Payson Trustee and LP Trustee would each assert claims against 3 Well LP's general partners, and (iii) granted standing to a panel trustee who remains subject to this Court's oversight. Docket No. 37 in Case No. 17-40179 at p. 1; *see also* Docket Nos. 16 & 19 in Case No. 17-40179 (Payson Trustee's lift stay motion and LP Trustee's response explaining that each trustee held competing claims against general partners).

24.    The evidence justified the Court's decision to grant the Payson Trustee derivative standing to pursue the Section 723 Claim. As explained above, the Trustees fully disclosed their intent to seek derivative standing and reasons for doing so in the Joint 9019 Motion, exhibits to the Joint 9019 Motion, proposed order, their Joint Response to objections, and *via* the exhibits, demonstratives, and argument at the October 23, 2017 hearing. For example, in the Joint 9019 Motion, the Trustees advised parties in interest that (i) "Payson Petroleum shall be granted standing to prosecute … Partnership Related Claims in the 3 Well LP bankruptcy case" and (ii) derivative standing would "eliminate[] the potential that the LP Trustee and Payson Trustee would pursue

15

substantially similar claims against partners of 3 Well LP in different proceedings and forums."
Docket No. 34 in Case No. 17-40179 at pp. 5 & 9.   In their Joint Response to the Partner
Objections, the Trustees advised that (i) "PPI and 3 Well LP will each hold a 50% participation
interest in … 3 Well LP Partnership Related Claims, and the Payson Trustee will have standing to
assert such claims in the 3 Well LP bankruptcy case" and (ii) that they could not predict the value
of "claims against general partners because the value depends on (i) facts that must be determined
through negotiation or discovery and (ii) the financial wherewithal of litigation targets."   Docket
No. 248 in Case No. 16-41044 at pp. 10 & 19.

     25.     At the October 25, 2017 hearing, the Payson Trustee testified that:

> Both the debtors, for which I am a Trustee, and the debtors, for which Mr. Moser
> [is] Trustee, have certain causes of action and claims against general partners.  And
> rather than be the first to the courthouse and fight over who gets whatever recovery
> there is, we agreed that those would be divided 50/50.  And that I would have the
> standing to pursue those claims on behalf of both.

Ex. C at p. 26:9-16.  During his cross-examination by the trustee for the "Dow Living Trust,
general partner," the Payson Trustee testified as follows:

> Q:  So, it's been indicated that we would be liable, the general partners would be
> liable for debts.  Does this agreement that we're working on today, or hoping to get
> through, does that relieve us from this liability?
>
> A:  No.

*Id*. at pp. 42:12 to 43:13.  Likewise, counsel for the LP Trustee explained that the majority of the
parties objecting to the Joint 9019 Motions were "GPs, which means they also have potential
liability in this case and there may be demands made against them to contribute monies to this
case."  *Id*. at p. 18:2-6.  And the LP Trustee himself testified that that he intended to sell fifty
percent (50%) of his interests in the Section 723 Claims which were "general partner claims" based
on what "general partners could possibly owe … to the estate for … unpaid funds."  *Id*. at p. 61:7-

17. Finally, after issuing its ruling, the Court advised that the Trustees indicated they may pursue claims against general partners and that persons who could be liable for such claims should "contact your own lawyers to understand the ramifications of these issues …." *Id.* at p. 82:4-11.

26.    Accordingly, the pleadings, argument and evidence (i) notified parties that the Trustees were asking the Court to grant the Payson Trustee derivative standing to pursue the Section 723 Claim and (ii) gave the Court good reason to grant the derivative standing.  Given the Trustees' competing claims against general partners, it made sense to grant the Payson Trustee (who routinely practices in front of this Court) standing to be the sole Trustee to prosecute the various estate claims against general partners of the LP Debtors, especially when the Trustees agreed to split the net proceeds of those claims 50/50 between their respective estates.  Thus, the Court's action was appropriate under Fifth Circuit precedent.  *In re Natchez Corp. of W. Va.*, 953 F.2d at 187 (explaining that Bankruptcy Courts may grant derivative standing to pursue estate claims in appropriate circumstances).

**B.    Responses to Ancillary Arguments.**

27.    The Trustees believe the following arguments raise no subject matter jurisdiction issues and, therefore, do not apply to this Rule 12(b)(1) Motion to Dismiss.  Nevertheless, the Trustees respond to Movants' ancillary arguments as set forth below.

*1.    No Stay Violation.*

28.    Movants incorrectly assert that the Payson Trustee violated the automatic stay by asserting the Subject Claims.[2]  *See* Subject Motion at p. 8.  To the contrary, the Payson Trustee asserts the Section 723 Claim pursuant to the derivative standing granted by this Court.  "The

---

[2]    Movants—who are equity owners of 3 Well LP—probably lack standing to assert a stay violation.  *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 545 (5th Cir. 2009) (Accordingly, to the extent the Labuzans' claims are based on their status as *owners/equity holders* of CTL, § 362(k) cannot be invoked.") (emphasis in original).

purpose of the automatic stay is to 'protect creditors in a manner consistent with the bankruptcy goal of equal treatment,' and to prevent a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncontrolled proceedings in different courts.'" *Lutterodt v. Potter*, Civil Action No. 4:17-CV-00058-ALM-CAN., 2017 U.S. Dist. LEXIS 64839 at *14 (E.D. Tex. Mar. 31, 2017) (quoting *Robert v. Bell Helicopter Textron, Inc.*, No. 3:01-CV-1576-L, 2002 U.S. Dist. LEXIS 9904, at *12 (N.D. Tex. May 31, 2002)).   Moreover, once a party has been granted derivative standing to pursue claims on behalf of a bankruptcy estate, "relief from the stay is no necessary to provide 'adequate protection' of" an estate's interests in a cause of action.   *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Sources, Inc.)*, 555 F.3d 231, 246 (6th Cir. 2009).   And as one bankruptcy court explained:

> The automatic stay ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court.  The [bankruptcy] case is the basis for taking control of all pertinent interests in property, dealing with that property, determining entitlements to distributions, the procedures for administering the mechanism, and discharging the debtor.
>
> Generally, the automatic stay, therefore, does not protect the debtor or property of the debtor's estate from actions taken in the bankruptcy case itself.

*Henkel v. Lickman (In re Lickman)*, 297 B.R. 162, 187 (Bankr. M.D. Fla. 2003) (quoting & citing cases).   Thus, the stay is not required to protect 3 Well LP's interests in the Section 723 Claim and, in fact, this Court's 9019 Order fulfilled the purpose of the automatic stay by preventing the Payson Trustee and LP Trustee from racing to the courthouse to assert separate causes of action against general partners of the LP Debtors.

*2.*     _No Due Process Violation_.

29.     Movants also incorrectly assert that the 9019 Order is void because:  (i) Movants were not served with a summons along with the Joint 9019 Motion and (ii) the exhibits to the Joint 9019 Motion were not served.  *See* the Subject Motion at pp. 14-18.  First, the Trustees were not

required to serve Movants with a summons along with their Joint 9019 Motions.  *See* FED. R. BANKR. P. 9014(a) ("In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."); LBR 9014-1(a) ("A summons is not required in a contested matter, but service otherwise shall comply with FED. R. BANKR. P. 9014.").   In fact, it is questionable whether any of the Movants were entitled to service of the Joint 9019 Motion since the Joint 9019 Motion sought no relief against Movants.  *See, e.g.,* Ex. C at p. 81:2-3 ("All we're doing is settling the lawsuits and the causes of action between the respective estates."). Additionally, the Court found that "notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided …."  Docket No. 37 in Bankruptcy Case No. 17-40179 at p. 2.  Second, the exhibits to the Joint 9019 Motions were served with those motions.  *See* Ex. B.  Movants' argument relies on the certificates of service to the Joint 9019 Motions which do not expressly state that the exhibits to the Joint 9019 Motions were served along with the motions themselves.  *See, e.g.,* Docket No. 34 in Case No. 17-40179 at p. 12 (certifying that "a true and correct copy of the foregoing Joint Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019 was duly served as follows …").  It is not surprising that Movants offer no evidence in the form of affidavit testimony or otherwise to suggest that the exhibits to the Joint 9019 Motions were not served because the exhibits were served along with the Joint 9019 Motions.  *See* Ex. B.  Even if the exhibits had not been served, however, no due process violation would have occurred because, as explained above, the Joint 9019 Motions themselves notified parties that the Trustees were asking the Court to grant the Payson Trustee derivative standing to pursue 3 Well LP's claims against general partners.

*3.*        *No Collateral Estoppel or Res Judicata Regarding Movants' Status as General Partners.*

30.        Finally, Movants argue that the Court must conclude that either (i) Movants are not general partners or (ii) the Court lacked jurisdiction to enter any orders in Case No. 17-40179 because only 3 Well MGP, LLC signed the bankruptcy petition.  *See* Subject Motion at pp. 18-21. Movants' argument fails because it is based on the incorrect premise that "a case involving a partnership is an involuntary case if the petition is signed 'by fewer than all of the general partners in such partnership.'"  *Id*. at p. 18 (quoting 11 U.S.C. § 303(b)(3)(A)).  Movants' premise is incorrect because 11 U.S.C. § 303(b)(3)(A) applies only to involuntary partnership bankruptcy cases.  "The general rule has emerged that authority to bind an entity to a voluntary petition in bankruptcy is determined by state law."  *Union Planters Nat'l Bank v. Hunters Horn Assocs. (In re Hunters Horn Assocs.)*, 158 B.R. 779, 730 (Bank. M.D. Ten. 1993) (citing, *inter alia*, *Phillips v. First City (In re Phillips)*, 966 F.2d 933 (5th Cir. 1992)).  This rule is bolstered by the Advisory Committee notes to Rule 1004 which explain:

> Section 303(b)(3)(A) of the Code provides that fewer than all of the general partners in a partnership may commence an involuntary case against the partnership.  **There is no counterpart provision in the Code setting out the manner in which a partnership commences a voluntary case.**  The Supreme Court has held in the corporate context that applicable nonbankruptcy law determines whether authority exists for a particular debtor to commence a bankruptcy case.  *See Price v. Gurney, 324 U.S. 100 [89 L. Ed. 776]* (1945).  The lower courts have followed this rule in the partnership context as well.  *See, e.g., Jolly v. Pittore, 170 B.R. 793 (S.D.N.Y. 1994)*; *Union Planters National Bank v. Hunters Horn Associates, 158 B.R. 729 (Bankr. M.D. Tenn. 1993)*; *In re Channel 64 Joint Venture, 61 B.R. 255 (Bankr. S.D. Oh. 1986)*.

Notes of Advisory Committee on 2002 Amendments to Fed. R. Bankr. P. 1004 (emphasis added). Here, 3 Well LP's **<u>voluntary</u>** bankruptcy petition was filed by "Jeff Cohen" as "Managing Member of 3 Well MGP, LLC as managing general partner of debtor."  Docket No. 1 in Case No. 17-40179 at p. 4.  What's more, the Movants who filed objections to the Joint 9019 Motions explained that

they voluntarily asked 3 Well LP's attorney to file for bankruptcy protection to obtain "necessary funds to defend against" the claims asserted in the LP Adversary Proceeding.  *See* Docket Nos. 156, 157, 164, 189, 177, 208, 219, 234, 242-245, & 257 in Case No. 16-41044.  In short, Movants provide no valid reason for the Court to consider Movants' estoppel and res judicata arguments.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Jason R. Searcy, Chapter 7 Trustee for the bankruptcy estates of Payson Petroleum, Inc., Payson Operating, LLC, and Maricopa Resources, LLC and Christopher J. Moser, Chapter 7 Trustee for the bankruptcy estates of Payson Petroleum 3 Well, L.P. and Payson Petroleum 3 Well 2014, L.P. respectfully request that the Court deny Movants' Motion to Dismiss and grant them such other and further relief to which they may be justly entitled.

Dated: November 20, 2018                    Respectfully submitted,

**SNOW SPENCE GREEN LLP**

By:   */s/ Blake Hamm*
    Blake Hamm, SBN 24069869
    blakehamm@snowspencelaw.com
    Aaron Guerrero, SBN 24050698
    aaronguerrero@snowspencelaw.com
    Bryan Prentice, SBN 24099787
    bryanprentice@snowspencelaw.com
    2929 Allen Parkway, Suite 2800
    Houston, Texas 77019
    (713) 335-4800
    (713) 335-4848 (Fax)

    **COUNSEL FOR JASON R. SEARCY, CHAPTER 7 TRUSTEE FOR PAYSON PETROLEUM, INC., PAYSON OPERATING, LLC, AND MARICOPA RESOURCES, LLC AND FOR**

**CHRISTOPHER J. MOSER, CHAPTER 7
TRUSTEE FOR PAYSON PETROLEUM
3 WELL, L.P. AND PAYSON
PETROLEUM 3 WELL 2014, L.P.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 20, 2018, a true and correct copy of this the foregoing ***Joint Response to Motion of Various Defendants to Dismiss and Brief in Support*** was served via the Court's electronic case filing system and via email upon all counsel of record as indicated below.

Davor Rukavina
drukavina@munsch.com
Julian P. Vasek
jvasek@munsch.com
Munsch Hardt Kopf & Harr P.C.
500 N. Akard St., Ste. 3800
Dallas, Texas 75201

Robert A. Simon
rsimon@whitakerchalk.com
Whitaker Chalk Swindle & Schwarz PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102

*/s/ Blake Hamm*
Blake Hamm

I:\Client\SEAJ1001-Searcy-Payson\Adversary Proceedings\18-04074 3 Well LP-GP\Response to Simon MTD\Response to Simon MTD in 18-04074.docx